# EXHIBIT A

**Capitol Corporate Services, Inc.**
PO Box 1831
Austin, TX 78767
Phone: (800) 345-4647  Fax: (800) 432-3622
rassop@capitolservices.com

# Service Of Process Transmittal Notice

| | |
|---|---|
| JASON C BRUZIK<br>CORE CONSTRUCTION SERVICES LLC<br>3131 N I-10 SERVICES RD E STE 401<br>METAIRIE LOUISIANA 70002 | **Date Processed:** 02/27/2019 |
| | **Completed By:** TIARA HOWARD |
| | **Delivery Method to Client:** FEDEX 2 DAY LETTER |
| | **Tracking Number:** 467169069076 |

Enclosed please find legal documents received on behalf of the client named below. These documents are being forwarded in accordance with your instructions.

| Date / Time Received | Transmittal # | Delivered to Agent by |
|---|---|---|
| 02/27/2019 10:30 AM in GEORGIA | GA-163541 | PROCESS SERVER |

**With Regard to Client**
CORE CONSTRUCTION SERVICES, L.L.C.

**Title of Case or Action**
FP AUGUSTA II, LLC, ET AL. VS. CORE CONSTRUCTION SERVICES, LLC, ET AL.

| Case Number | Type of Document Served |
|---|---|
| 2019RCCV00055 | CITATION/SUMMONS |

**Court Name**
SUPERIOR COURT OF RICHMOND COUNTY STATE OF GEORGIA

**Note**
Summons & Compliant scanned, the exhibits included are at least 300+ pages.

1-163541E

# SUPERIOR COURT OF RICHMOND COUNTY
## STATE OF GEORGIA

🏛 **EFILED IN OFFICE**
CLERK OF SUPERIOR COURT
RICHMOND COUNTY, GEORGIA

**2019RCCV00055**
CARL C. BROWN JR.
JAN 29, 2019 04:42 PM

*Hattie Holmes Sullivan*
Hattie Holmes Sullivan, Clerk
Richmond County, Georgia

CIVIL ACTION NUMBER   <u>2019RCCV00055</u>

FP Augusta II, LLC
Freedom's Path Limited Partnership

**PLAINTIFF**

**VS.**

CORE Construction Services, LLC, DBA
CORE Construction

**DEFENDANT**

## SUMMONS

TO THE ABOVE NAMED DEFENDANT:

You are hereby summoned and required to file with the Clerk of said court and serve upon the Plaintiff's attorney, whose name and address is:

**L. Bruce Stout**
**L. Bruce Stout, Attorney at Law**
**7130 Cedar Knoll Dr**
**Gainesville, Georgia 30506**

an answer to the complaint which is herewith served upon you, within 30 days after service of this summons upon you, exclusive of the day of service. If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint.

**This 29th day of January, 2019.**

Clerk of Superior Court

*Hattie Holmes Sullivan*

Hattie Holmes Sullivan, Clerk
Richmond County, Georgia

⚖ **EFILED IN OFFICE**
CLERK OF SUPERIOR COURT
RICHMOND COUNTY, GEORGIA

**2019RCCV00055**
**CARL C. BROWN JR.**
JAN 29, 2019 04:42 PM

*Hattie Holmes Sullivan*
Hattie Holmes Sullivan, Clerk
Richmond County, Georgia

IN THE SUPERIOR COURT OF RICHMOND COUNTY
STATE OF GEORGIA

| | |
|---|---|
| FP AUGUSTA II, LLC, a Georgia limited liability company, and FREEDOM'S PATH LIMITED PARTNERSHIP, a Florida limited partnership,<br><br>Plaintiffs,<br><br>v.<br><br>CORE CONSTRUCTION SERVICES, LLC, a Louisiana limited liability company,<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | CIVIL ACTION FILE No.:<br><br>_____ |

## COMPLAINT

**COME NOW** FP AUGUSTA II, LLC ("FP"), a Georgia limited liability company, and FREEDOM'S PATH LIMITED PARTNERSHIP ("Freedom"), a Florida limited partnership, and states this their complaint against CORE CONSTRUCTION SERVICES, LLC, a Louisiana limited liability company d/b/a CORE Construction ("CORE"), respectively showing the court as follows:

## GENERAL ALLEGATIONS

### Parties, Jurisdiction, And Venue

1.      This is an action for damages in excess of $45,000 exclusive of attorneys' fees, costs, and interest.

2.      CORE is a Louisiana limited liability company authorized to do, and actually doing, business in the state of Georgia. CORE may be served by delivering the Summons and Complaint to its registered agent for service of process, Capitol Corporate Services, Inc., 3675 Crestwood

Parkway, N.W., Suite 350, Duluth, Georgia, 30096, or by any other method allowed and authorized by the Georgia Civil Practice Act or other applicable Georgia law.

3.      Upon information and belief, CORE Construction Services, LLC, does business as "CORE Construction."

4.      FP is a Georgia limited liability company.

5.      Freedom is a Florida limited partnership authorized to do business in Georgia.

6.      Venue is proper in Richmond County, Georgia, because that is where a substantial part of the business at issue in this action was transacted, and where the real property upon which construction took place is located. O.C.G.A. § 9-10-93.

7.      This Court has personal jurisdiction over CORE because, among other things, it has transacted substantial business in the State of Georgia, including CORE's work under the contracts at issue in this action. O.C.G.A. § 9-10-91.

## Background To This Action

8.      This action concerns construction work on two contracts for the renovation of three buildings with related site and utilities work on the Charlie Norwood Veterans Administration Campus situated in Augusta, Georgia (collectively, the "Project").

9.      The first contract was executed by FP and CORE on June 6, 2016, and concerned renovation of a structure known as Building No. 7 (the "First Contract").  A true and correct copy of the First Contract as attached as **Exhibit A**.

10.     The second contract was executed by Freedom and CORE on June 6, 2016, and concerned the renovation of structures known as Building Nos. 18 and 76 (the "Second Contract").  A true and correct copy of the Second Contract is attached as **Exhibit B**.

11.     Over the course of the project, FP and Freedom encountered numerous problems in the quality and progress of CORE's work, which have now culminated in CORE's delayed delivery of an incomplete Project with work not performed in accordance with the First Contract and the Second Contract.  CORE's deficient performance includes, but is not limited to:

a.      CORE's persistent failure to diligently prosecute the work on the Project, and failure to employ reasonable care and diligence to investigate the site upon which the Project would be constructed; for example, rather than review the site collectively and confer with the civil engineer to develop comprehensive solutions, CORE would note a single issue, would then delay in resolving it over months, then move a few feet on the site and highlight another purported issue, and so forth;

b.      CORE has failed to submit progress schedules since October, 2017, interfering with FP and Freedom's ability to monitor the work on the Project;

c.      CORE has habitually exaggerated and overstated percentages of Work actually completed in applications for payment, requiring extensive review and revision by FP and Freedom to determine the actual amounts properly due;

d.      CORE has failed to complete significant scopes of work in accordance with the First Contract and the Second Contract, and has failed to perform corrections and punch list work to remedy deficiencies;

e.      CORE has failed to manage its subcontractors or maintain the progress of the work.

3

12.     CORE has unjustifiably and inexcusably delayed completion of the Project in accordance with the terms and conditions of the First and Second Contracts. For Building No. 7, substantial completion was not declared until February 12, 2018, which was 67 days after the contractual completion date of December 8, 2017. For Building No. 18, substantial completion was not declared until April 24, 2018, which was 112 days after the contractual date required for substantial completion of January 3, 2018. And for Building No. 76, substantial completion was not declared until June 8, 2018, which was 112 days after the contractual date required for substantial completion of February 16, 2018. CORE has failed to properly and timely submit materials required by the First and Second Contracts for FP to evaluate CORE's requests for excusable delays that would extend substantial completion to the dates actually achieved. FP and Freedom delivered notice to CORE of these substantial delays and the associated delays; true and correct copies of these notices are attached as **Exhibit C**.

13.     CORE has also refused to satisfactorily and/or timely complete items within the scope of Work, forcing FP and Freedom to take action to complete and repair CORE's work. This unfinished or deficiently-installed work includes, without limitation, the following:

    a.     Repair of damaged fiber optic lines;

    b.     Building No. 76 exterior water proofing and related grading;

    c.     Correcting a non-compliant ADA work, as reported by an ADA consultant, including the ADA ramp on Building No. 76;

    d.     Fire department required installation of Knox boxes for Building No. 76;

    e.     Failure to provide certified as-built documents for Building No. 76;

    f.     Failure to regrade all surrounding soil away from Building No. 76, causing water damage;

4

g.      Failure to remove all construction debris from landscape beds and failure to provide new topsoil required for landscaping for Building No. 76;

h.      Failure to comply with kitchen hood manufacturer's clearance and installation requirements, leading to inadequate and unsafe clearance from cooking surface to kitchen hood in Building No. 76;

i.      Elevator repairs in Building No. 18 resulting from nonperformance and deficiencies in the roof structure;

j.      Roof repairs at Building No. 18;

k.      Repair of damaged irrigation lines at Building No. 18;

l.      Blinds in Building No. 18;

m.      Repairs to the façade brick at Building No. 18;

n.      Fire department required installation of Knox boxes for Building No. 18;

o.      Failure to provide certified as-built documents for Building No. 18;

p.      Failure to regrade all surrounding soil away from Building No. 18, causing water damage;

q.      Failure to remove all construction debris from landscape beds and failure to provide new topsoil required for landscaping for Building No. 18;

r.      Failure to comply with kitchen hood manufacturer's clearance and installation requirements, leading to inadequate and unsafe clearance from cooking surface to kitchen hood in Building No. 18;

s.      Fire department required installation of Knox boxes for Building No. 7;

t.      Blinds in Building No. 7;

u.      Landscaping around air conditioning units at Building No. 7;

5

v.      Electric repairs at Building No. 7;

w.      Failure to provide certified as-built drawings for Building No. 7;

x.      Failure to regrade all surrounding soil away from Building No. 7, causing water damage; and

y.      Failure to remove all construction debris from landscape beds and failure to provide new topsoil required for landscaping for Building No. 7; and

z.      Failure to comply with kitchen hood manufacturer's clearance and installation requirements, leading to inadequate and unsafe clearance from cooking surface to kitchen hood in Building No. 7.

14.     FP and Freedom have incurred significant damages addressing and completing the items above and other deficiencies in CORE's work on the Project; FP and Freedom are also entitled to reduce CORE's contract balance for work within the scopes of the First and Second Contract that CORE failed to perform.

15.     All conditions precedent to the maintenance of this cause have been met, waived, or satisfied.


## COUNT I (FIRST CONTRACT)

16.     FP reasserts and restates the allegations of Paragraphs 1 through 14 as if set forth fully herein.

17.     This is an action for breach of contract.

18.     FP and CORE executed and are parties to the First Contract.

19.     CORE has breached the First Contract by failing to timely or properly perform the work according to its terms. Among other things, CORE has failed to deliver the work under the

6

First Contract in accordance with the contract schedule, and has failed to timely or properly complete or correct nonconforming work.

20.     FP is entitled to liquidated damages under the First Contract for CORE's delay in completion according to the terms of the First Contract; FP has also incurred damages arising from CORE's failure to complete or correct nonconforming work, including the cost of the work itself and additional supervision.

**WHEREFORE**, FP respectfully demands judgment against CORE for damages, costs, and interest as allowed by the First Contract and/or Georgia law in an amount to be determined at trial, and such further relief at law or in equity as this Court deems just and proper.


## COUNT II (SECOND CONTRACT)

21.     Freedom reasserts and restates the allegations of Paragraphs 1 through 14 as if set forth fully herein.

22.     This is an action for breach of contract.

23.     Freedom and CORE executed and are parties to the Second Contract.

24.     CORE has breached the Second Contract by failing to timely or properly perform the work according to its terms.  Among other things, CORE has failed to deliver the work under the Second Contract in accordance with the contract schedule, and has failed to timely or properly complete or correct nonconforming work.

25.     Freedom is entitled to liquidated damages under the Second Contract for CORE's delay in completion according to the terms of the Second Contract; Freedom has also incurred damages arising from CORE's failure to complete or correct nonconforming work, including the cost of the work itself and additional supervision.

7

**WHEREFORE**, Freedom respectfully demands judgment against CORE for damages, costs, and interest as allowed by the Second Contract and/or Georgia law in an amount to be determined at trial, and such further relief at law or in equity as this Court deems just and proper.

## COUNT III – EXPENSES OF LITIGATION (FP)

26.    FP reasserts and restates the allegations contained in paragraphs 1 through 24 as if set forth fully herein.

27.    CORE has acted in bad faith, has been stubbornly litigious, and has caused FP unnecessary trouble and expense.

28.    FP is entitled to recover its expenses of litigation, including but not limited to attorneys' and experts' fees in an amount to be proven at trial.

**WHEREFORE**, FP respectfully demands judgment against CORE for its expenses of litigation, including reasonable attorneys' and expert fees, expenses, and costs of this action in an amount to be determined at trial.

## COUNT IV – EXPENSES OF LITIGATION (FREEDOM)

29.    Freedom reasserts and restates the allegations contained in paragraphs 1 through 24 as if set forth fully herein.

30.    CORE has acted in bad faith, has been stubbornly litigious, and has caused Freedom unnecessary trouble and expense.

31.    Freedom is entitled to recover its expenses of litigation, including but not limited to attorneys' and experts' fees in an amount to be proven at trial.

**WHEREFORE**, Freedom respectfully demands judgment against CORE for its expenses of litigation, including reasonable attorneys' and expert fees, expenses, and costs of this action in an amount to be determined at trial.

**Respectfully submitted** this 29th day of January, 2019.

**L. Bruce Stout, Attorney at Law**


/s/ L. Bruce Stout
L. Bruce Stout, GA Bar 685708
Attorney for FP AUGUSTA II, LLC
and FREEDOM'S PATH LIMITED
PARTNERSHIP

7130 Cedar Knoll Dr.
Gainesville, GA  30506
404-932-3263
BStout@StoutLawAtl.com

9

# Exhibit A



# AIA® Document A101™ – 2007

**Standard Form of Agreement Between Owner and Contractor** where the basis of payment is a Stipulated Sum

AGREEMENT made as of the 10 day of June in the year 2016
*(In words, indicate day, month and year.)*

BETWEEN the Owner:
*(Name, legal status, address and other information)*

FP Augusta II, LLC, as the assignee of
Freedom's Path First Step Limited Partnership
Attn: Donald Paxton, Manager
3550 South Tamiami Trail, Suite 301
Sarasota, FL 34239

and the Contractor:
*(Name, legal status, address and other information)*

CORE Construction,
3131 N. I-10 Service Road East, Suite 401
Metairie, LA 70002-6054

for the following Project:
*(Name, location and detailed description)*

Freedom's Path – Historic Rehabilitation of the Existing Structure:
Building #7 – Transitional Housing – Approximately 20 units – Single Story
Veterans Administration Campus, Augusta, Georgia 30904

The Architect:
*(Name, legal status, address and other information)*

Gruber & Associates, LLC
Attn: Morton M. Gruber, AIA, Manager
245 Peachtree Center Ave. NE, Suite 2445
Atlanta, GA 30303

The Owner and Contractor agree as follows.

**ADDITIONS AND DELETIONS:**
The author of this document has added information needed for its completion. The author may also have revised the text of the original AIA standard form. An *Additions and Deletions Report* that notes added information as well as revisions to the standard form text is available from the author and should be reviewed. A vertical line in the left margin of this document indicates where the author has added necessary information and where the author has added to or deleted from the original AIA text.

This document has important legal consequences. Consultation with an attorney is encouraged with respect to its completion or modification.

AIA Document A201™–2007, General Conditions of the Contract for Construction, is adopted in this document by reference. Do not use with other general conditions unless this document is modified.

AIA Document A101™ – 2007. Copyright © 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1967, 1974, 1977, 1987, 1991, 1997 and 2007 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 13:36:33 on 06/06/2016 under Order No.7898458378_1 which expires on 04/22/2017, and is not for resale.
User Notes:                                                                                                      (1516459092)

Init.

/

1

Complaint, Exh. A

TABLE OF ARTICLES

1       THE CONTRACT DOCUMENTS

2       THE WORK OF THIS CONTRACT

3       DATE OF COMMENCEMENT AND SUBSTANTIAL COMPLETION

4       CONTRACT SUM

5       PAYMENTS

6       DISPUTE RESOLUTION

7       TERMINATION OR SUSPENSION

8       MISCELLANEOUS PROVISIONS

9       ENUMERATION OF CONTRACT DOCUMENTS

10      INSURANCE AND BONDS

## ARTICLE 1   THE CONTRACT DOCUMENTS

The Contract Documents consist of this Agreement, Conditions of the Contract (General, Supplementary and other Conditions), Drawings, Specifications, qualifications and clarifications, Addenda issued prior to execution of this Agreement, other documents listed in this Agreement and Modifications issued after execution of this Agreement, all of which form the Contract, and are as fully a part of the Contract as if attached to this Agreement or repeated herein. The Contract represents the entire and integrated agreement between the parties hereto and supersedes prior negotiations, representations or agreements, either written or oral. An enumeration of the Contract Documents, other than a Modification, appears in Article 9.

## ARTICLE 2   THE WORK OF THIS CONTRACT

The Contractor shall fully execute the Work as outlined in Exhibit "A" attached hereto in conformance with the Contract Documents and according to the Plans, Specifications, and manufacturer's specifications and generally accepted industry standards. If there is a conflict between the Plans, specifications and normal industry standards, the document establishing the better quality shall govern. Any and all modifications to the Work must be approved in writing by the Owner's representative, before the modification is performed.

## ARTICLE 3   DATE OF COMMENCEMENT AND SUBSTANTIAL COMPLETION

§ 3.1 The date of commencement of the Work shall be the date of this Agreement unless a different date is stated below or provision is made for the date to be fixed in a notice to proceed issued by the Owner.
*(Paragraph deleted)*
Upon issuance of a Notice to Proceed by Owner.

If, prior to the commencement of the Work, the Owner requires time to file mortgages and other security interests, the Owner's time requirement shall be as follows:

N/A

§ 3.2 The Contract Time shall be measured from the date of commencement.

§ 3.3 The Contractor shall achieve Substantial Completion of the entire Work not later than
*(Paragraphs deleted)*
August 31, 2017..

**Init.**

**/**

AIA Document A101™ – 2007. Copyright © 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1967, 1974, 1977, 1987, 1991, 1997 and 2007 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 13:30:33 on 06/06/2016 under Order No.7898458378_1 which expires on 04/22/2017, and is not for resale.
User Notes:                                                                                                      (1516459092)

**2**

Complaint, Exh. A

## ARTICLE 4   CONTRACT SUM

§ 4.1 The Owner shall pay the Contractor the Contract Sum in current funds for the Contractor's performance of the Contract. The Contract Sum shall be two million, four hundred fifty-six thousand dollars   ($ 2,456,000.00   ), established following the value engineering/buy out process outlined in Section 4.6.

§ 4.2 The Contract Sum is based upon the following alternates, if any, which are described in the Contract Documents and are hereby accepted by the Owner:
*(Paragraph deleted)*
The Contract Sum includes $25,000.00 to compensate Contractor for Contractor to perform preconstruction investigation of the Project: the Building, the Site and utilities, and to perform testing that Contractor may wish to perform, to thoroughly investigate and acquaint itself to the greatest extent, with all existing conditions of the Project, so as to be able to include in the Contract Sum amounts that are reasonably necessary to construct the Project in accordance with the latest revision of the Plans and Specifications, applicable codes, and any other related investigative reports.

All amounts associated with any alternates are intended to be not-to-exceed amounts.   If Owner elects in writing to have Contractor perform any alternate(s), then the Work associated with such alternate(s) shall be bid on an open-book basis with Owner having full audit rights with respect to such Work.   In the event the actual cost of any such alternate(s) is less than the not-to-exceed amount identified in the Contract Documents, such difference ("Alternate Savings") shall not be shared between Owner and Contractor.   Contractor hereby acknowledges and agrees that Owner shall receive 100% of any Alternate Savings.

§ 4.3 Unit prices, if any:
*(Identify and state the unit price; state quantity limitations, if any, to which the unit price will be applicable.)*

| Item | Units and Limitations | Price Per Unit ($0.00) |
|------|----------------------|------------------------|
| n/a  |                      |                        |

§ 4.4 Allowances included in the Contract Sum, if any:
*(Identify allowance and state exclusions, if any, from the allowance price.)*

| Item | Price |
|------|-------|
| See Schedule of Values, Exhibit G | |

## ARTICLE 5   PAYMENTS
### § 5.1 PROGRESS PAYMENTS
§ 5.1.1 Based upon Applications for Payment submitted to the Architect by the Contractor and Certificates for Payment issued by the Architect, the Owner shall make progress payments on account of the Contract Sum to the Contractor as provided below and elsewhere in the Contract Documents.

§ 5.1.2 The period covered by each Application for Payment shall be one calendar month ending on the last day of the month.   Each Application for Payment shall include the following documents:

   a.   Signed Application for Payment (AIA G702 and G703)
   b.   G702 and G703 in Excel Format (to be forwarded to Owner's lender)
   c.   General Contractor's notarized lien waivers reflecting the total funds paid to date.
   d.   G701 Change Orders, executed with appropriate backup documentation
   e.   Pending Change Order Log (PCO Log), and the Prime Contract Change Order Log (PCCO Log)
   f.   Updated Project Schedule
   g.   Contractor's Vendor Payee List with invoices and Subcontractor's lien waivers for the current month's Application for Payment
   h.   Any additional documents requested by Owner's lender (e.g. surveys, inspection reports, permits or updated insurance certificates)

§ 5.1.3 Provided that an Application for Payment is received by the Architect not later than the last   day of a month, the Owner shall make payment to the Contractor not later than the 15   day of the following   month. If an

**Init.**

**/**

AIA Document A101™ – 2007. Copyright © 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1967, 1974, 1977, 1987, 1991, 1997 and 2007 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 13:36:33 on 06/06/2016 under Order No.7898458378_1 which expires on 04/22/2017, and is not for resale.
User Notes:                                                                                                                    (1516459092)

**3**

Complaint, Exh. A

Application for Payment is received by the Architect after the application date fixed above, payment shall be made by the Owner not later than thirty   ( 30   ) days after the Architect receives the Application for Payment.

§ 5.1.4 Each Application for Payment shall be based on the most recent schedule of values submitted by the Contractor in accordance with the Contract Documents. The schedule of values shall allocate the entire Contract Sum among the various portions of the Work. The schedule of values shall be prepared in such form and supported by such data to substantiate its accuracy as the Architect may require, and shall establish separate line items for labor and material costs.   This schedule, unless objected to by the Architect, shall be used as a basis for reviewing the Contractor's Applications for Payment.

§ 5.1.5 Applications for Payment shall indicate the percentage of completion of each portion of the Work as of the end of the period covered by the Application for Payment.

§ 5.1.6 Subject to other provisions of the Contract Documents, the amount of each progress payment shall be computed as follows:

   .1   Take that portion of the Contract Sum properly allocable to completed Work as determined by multiplying the percentage completion of each portion of the Work by the share of the Contract Sum allocated to that portion of the Work in the schedule of values, less retainage of ten     percent ( 10 %). Pending final determination of cost to the Owner of changes in the Work, amounts not in dispute shall be included as provided in Section 7.3.9 of AIA Document A201™–2007, General Conditions of the Contract for Construction;

   .2   Add that portion of the Contract Sum properly allocable to materials and equipment delivered and suitably stored at the site for subsequent incorporation in the completed construction, less retainage of ten     percent ( 10    %) when the project reaches fifty percent complete, the Owner will reduce the retainage on subsequent applications for payment to 5%, assuming that the Project, in the Owner's opinion is progressing in accordance with the approved schedule, and the quality of the work is acceptable to Owner.  Owner reserves the right to reinstate ten percent retainage withholding at any time that it determines in its reasonable discretion that the Project is not proceeding in accordance with the approved schedule, the specified quality of the work is not being met, or there is evidence that Contractor is not timely paying Subcontractors and/or suppliers;

   .3   Subtract the aggregate of previous payments made by the Owner; and

   .4   Subtract amounts, if any, for which the Architect has withheld or nullified a Certificate for Payment as provided in Section 9.5 of AIA Document A201–2007.

§ 5.1.7 The progress payment amount determined in accordance with Section 5.1.6 shall be further modified under the following circumstances:

   .1   Add, upon Substantial Completion of the Work, a sum sufficient to increase the total payments to the full amount of the Contract Sum, less such amounts as the Architect shall determine for incomplete Work, retainage applicable to such work and unsettled claims; and

*(Paragraph deleted)*

   .2   Add, if final completion of the Work is thereafter materially delayed through no fault of the Contractor, any additional amounts payable in accordance with Section 9.10.3 of AIA Document A201–2007.

§ 5.1.8 Reduction or limitation of retainage, if any, shall be as follows:

See Section 5.1.6 above

§ 5.1.9 Except with the Owner's prior approval, the Contractor shall not make advance payments to suppliers for materials or equipment which have not been delivered and stored at the site.

### § 5.2 FINAL PAYMENT
§ 5.2.1 Final payment, constituting the entire unpaid balance of the Contract Sum, shall be made by the Owner to the Contractor when

   .1   the Contractor has fully performed the Contract except for the Contractor's responsibility to correct Work as provided in Section 12.2.2 of AIA Document A201–2007, and to satisfy other requirements stated herein, if any, which extend beyond final payment;

**Init.**

**/**

AIA Document A101™ – 2007. Copyright © 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1967, 1974, 1977, 1987, 1991, 1997 and 2007 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 13:36:33 on 06/06/2016 under Order No.7898456378_1 which expires on 04/22/2017, and is not for resale.
User Notes:                                                                                                                    (1516459092)

4

Complaint, Exh. A

.2    a final Certificate for Payment has been issued by the Architect; and
.3    the other conditions for final payment as set forth in the AIA Document A201-2007, as amended have been met.

**§ 5.2.2** The Owner's final payment to the Contractor shall be made no later than 30 days after the issuance of the Architect's final Certificate for Payment, and after the other conditions for final payment contained in Article 9.10 of the General Conditions have been met.

## ARTICLE 6   DISPUTE RESOLUTION

**§ 6.1 BINDING DISPUTE RESOLUTION**
For any Claim subject to, but not resolved by, mediation pursuant to Section 15.3 of AIA Document A201-2007, the method of binding dispute resolution shall be as follows:
*(Check the appropriate box. If the Owner and Contractor do not select a method of binding dispute resolution below, or do not subsequently agree in writing to a binding dispute resolution method other than litigation, Claims will be resolved by litigation in a court of competent jurisdiction.)*

[   ]   Arbitration pursuant to Section 15.4 of AIA Document A201-2007

[ X ]   Litigation in a court of competent jurisdiction, by judge.   Jury trial is specifically waived by the parties.

[   ]   Other *(Specify)*

**§ 6.2 ATTORNEYS' FEES**
The parties agree that in any litigation arising from or relating to this Agreement, the prevailing party in such litigation shall recover its reasonable attorney's fees and costs, including all such fees and costs incurred at trial and appellate level.

**§ 6.3 JURY TRIAL WAIVER**
*(Paragraphs deleted)*
The parties hereto consent to trial by Judge of all disputes arising from or relating to this Agreement, and waive all rights to trial by jury as to any and all such claims and disputes.

## ARTICLE 7   TERMINATION OR SUSPENSION
**§ 7.1** The Contract may be terminated by the Owner or the Contractor as provided in Article 14 of AIA Document A201-2007.

**§ 7.2** The Work may be suspended by the Owner as provided in Article 14 of AIA Document A201-2007.

## ARTICLE 8   MISCELLANEOUS PROVISIONS
**§ 8.1** Where reference is made in this Agreement to a provision of AIA Document A201-2007 or another Contract Document, the reference refers to that provision as amended or supplemented by other provisions of the Contract Documents.

**§ 8.2** Payments due and unpaid under the Contract, which remain unpaid, shall bear interest from the date payment is due at the rate stated below, or in the absence thereof, at the legal rate prevailing from time to time at the place where the Project is located.
*(Insert rate of interest agreed upon, if any.)*

ten percent     % (10)

**§ 8.3** The Owner's representative:
*(Name, address and other information)*

Init.

/

AIA Document A101™ – 2007. Copyright © 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1967, 1974, 1977, 1987, 1991, 1997 and 2007 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 13:36:33 on 06/06/2016 under Order No.7896458378_1 which expires on 04/22/2017, and is not for resale.
User Notes:                                                                                       (1516459092)

5

Complaint, Exh. A

Robert Smith
Beneficial Communities
3550 S. Tamiami Trail, Suite 301
Sarasota, FL 34239


§ 8.4 The Contractor's representative:
*(Name, address and other information)*

Jason Bruzik
CORE Construction
3131 N. I-10 Service Road East, Suite 401
Metairie, LA 70002-6054


§ 8.5 Neither the Owner's nor the Contractor's representative shall be changed without ten days written notice to the other party.

§ 8.6 Other provisions:

§ 8.6.1 NOTICES.   All notices, demands or other communications required under this Agreement shall be in writing and shall be deemed to have been duly given upon mailing by United States registered or certified mail, return receipt requested, postage prepaid, or by facsimile transmission to:

| | |
|---|---|
| if to Contractor, to:<br>CORE Construction | Jason Bruzik<br>3131 N. I-10 Service Road East, Suite 401<br>Metairie, LA 70002-6054 |
| if to Owner, to: | Robert Smith<br>Beneficial Communities<br>3550 S. Tamiami Trail, Suite 301<br>Sarasota, FL 34239 |

§ 8.6.2 Contractor shall prepare the job site for storms, protection of property adjacent to and below the Work, and secure any opening into the buildings as related to the Work.   In the event an unexpected storm threatens during non-working hours, Contractor will respond immediately to use its best efforts to protect the job site and adjacent areas from damage.

§8.6.3   Contractor shall provide Owner with emergency telephone numbers of its management team at all times during the Project.

§8.6.4   The Contractor shall keep full and detailed accounts and exercise such controls as may be necessary for proper financial management under this Contract, and the accounting and control systems shall be satisfactory to the Owner.

§ 8.6.5   Contractor shall take reasonable actions to prevent any actions or conditions which could result in a conflict with Owner's best interests.   These obligations shall apply to the activities of Contractor's employees, agents, subcontractors, etc., in their dealings and relations with Owner's current and former employees and their relatives. For example, Contractor's employees, agents, or subcontractors should not make or provide to be made any gifts, extravagant entertainment, trips, payments, loans, or other consideration to Owner's representatives, employees, or their relatives.

§8.6.6   Notwithstanding anything in the Contract Documents to the contrary, Owner shall have the right to audit and copy Contractor's Project books and records, at any time, and from time to time.   Contractor shall make all such books and records available for Owner's auditing and copying, including "read only" access to any software or

**Init.**

**/**

AIA Document A101™ – 2007. Copyright © 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1967, 1974, 1977, 1987, 1991, 1997 and 2007 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 13:36:33 on 06/06/2016 under Order No.7898458378_1 which expires on 04/22/2017, and is not for resale.
**User Notes:**                                                                                                               (1516450092)

**6**

documents to audit information or records maintained in electronic format, during normal business hours as requested by Owner upon thirty (30) days prior notice.  Provided, however, Contractor's general conditions expenses, Unit Prices and insurance and bond premiums are not subject to audit.

§8.6.7  A failure to assert any rights or remedies available to a party under the terms of the Contract, or a waiver of the right to remedies available to a party by a course of dealing or otherwise shall not be deemed to be a waiver of any other right of remedy under the Contract, unless such waiver of such right or remedy is contained in a writing signed by the party alleged to have waived his other rights or remedies.

§8.6.8  Contractor agrees to comply, at its own expense, with all federal, state and local laws, codes, statutes, ordinances, rules, administrative orders, regulations and requirements applicable to the Project, including but not limited to those dealing with safety.  If Contractor observes that the Contract Documents are at variance therewith, it shall promptly notify Owner and Architect in writing.

§8.6.9  No modification, alteration or waiver of the terms of this Contract shall be binding unless the same shall be in writing, dated subsequent to the date of this Contract and duly executed by the party or parties intended to be bound by it.

§8.6.10  Contractor acknowledges and agrees that Owner is obtaining financing for this Project from Owner's lender ("Lender").  Notwithstanding anything in the Contract Documents to the contrary, Contractor agrees, at no additional cost or expense to Owner, to comply (and to cause all lower tier Subcontractors and suppliers to comply) with any and all requirements reasonable and customary of Owner's Lender, whether such requirements are instituted before or after execution of the Agreement, including execution of Lender consents or assignments. Contractor acknowledges and agrees that this Contract, including Owner's issuance of a notice to proceed hereunder, is contingent upon Owner obtaining a mortgage commitment from a Lender.  In the event Owner is unable to procure such a commitment within one hundred eighty (180) calendar days from the date of full execution of this Agreement, either party may terminate this Contract subject to the terms and conditions enumerated in Article 14 of the AIA A201 (2007) as modified by Owner, upon written notice to the other party with no obligation or liability under this Contract to the other party resulting from such termination.  Contractor acknowledges and agrees that Owner's obligation to make payments of any amounts otherwise be due and owing under the Contract Documents is not conditioned upon Lender's approval of those payments unless Lender's non-approval is due to the acts or omission of Contractor, any of its Subcontractors or anyone from whom any of them are liable.  Owner will provide notice to Contractor within two business days of Lender's notice that it has not approved an Application for Payment for reasons due to Contractor, any of its Subcontractors or anyone for whom any of them are liable.

## § 8.7  LIQUIDATED DAMAGES

Contractor shall achieve Substantial Completion of the Work or any portion of the Work by no later August 31, 2017 (the "Substantial Completion Date").  Time is of the essence to the Contract Documents and all obligations thereunder, including but not limited to the date of Substantial Completion.

In the event the Contractor does not achieve Substantial Completion of the Work on or before the Substantial Completion Date Contractor shall pay Owner, as agreed liquidated damages and not as a penalty, the sum of Forty Five Dollars ($45.00) per residential apartment unit per day for each calendar day beyond Substantial Completion Date  set forth herein that the Work is not "substantially completed" (as hereinafter defined by the applicable date unless such delays could be categorized as not within the control of the Contractor, i.e., Owner delays or Weather delays.  Contractor acknowledges and agrees that the actual delay damages which Owner will suffer in the event of a delay in achieving Substantial Completion of all or a portion of the project, are difficult, if not impossible, to determine and that the liquidated damages described above are a fair and reasonable estimate of the lost profits and revenue which the Owner is expected to suffer in the event of such delay.

## § 8.8  SPECIAL PROVISIONS APPLICABLE TO LOAN
Contractor agrees that all publicity and advertisements prepared and released by Contractor during construction of the Complex, recognize Owner's Lender as a participant in the funding for the Project.

**Init.**

**/**

AIA Document A101™ – 2007. Copyright © 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1967, 1974, 1977, 1987, 1991, 1997 and 2007 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 13:36:33 on 06/06/2016 under Order No.7898458378_1 which expires on 04/22/2017, and is not for resale.
User Notes:                                                                                                      (1515459092)

**7**

## ARTICLE 9   ENUMERATION OF CONTRACT DOCUMENTS

§ 9.1 The Contract Documents, except for Modifications issued after execution of this Agreement, are enumerated in the sections below.

§ 9.1.1 The Agreement is this executed AIA Document A101–2007, Standard Form of Agreement Between Owner and Contractor.

§ 9.1.2 The General Conditions are AIA Document A201–2007, General Conditions of the Contract for Construction.

§ 9.1.3 The Supplementary and other Conditions of the Contract are those contained in the Project Manual *(Table deleted)*

§ 9.1.4 The Specifications:
*(Either list the Specifications here or refer to an exhibit attached to this Agreement.)*
List of Plans and Specifications as reflected on Exhibit "C" attached hereto.

| Section | Title | Date | Pages |
|---------|-------|------|-------|

§ 9.1.5 The Drawings:
*(Either list the Drawings here or refer to an exhibit attached to this Agreement.)*
Title of Drawings and specifications attached hereto as Exhibit "C".

| Number | Title | Date |
|--------|-------|------|

§ 9.1.6 The Addenda, if any:

| Number | Date | Pages |
|--------|------|-------|
| n/a | | |

Portions of Addenda relating to bidding requirements are not part of the Contract Documents unless the bidding requirements are also enumerated in this Article 9.

§ 9.1.7 Additional documents, if any, forming part of the Contract Documents:

    .1    AIA Document E201™–2007, Digital Data Protocol Exhibit, if completed by the parties, or the following:

    .2    Other documents, if any, listed below:
*(Paragraph deleted)*

| | |
|---|---|
| Scope of Work | Exhibit "A" |
| A201-2007 General Conditions, as modified | Exhibit "B" |
| Title of Specifications and Drawings | Exhibit "C" |
| Qualifications and Clarifications | Exhibit "D" |
| Construction Schedule | Exhibit "E" |
| Application and Certificate of Payment | Exhibit "F" |
| Schedule of Values | Exhibit "G" |
| Payment Bond | Exhibit "H" |
| Performance Bond | Exhibit "I" |
| Contractor's Certificate of General Liability and Workers Compensation Insurance | Exhibit "J" |
| Sample Contractor and Subcontractor Waivers for Partial and Final Payment | Composite Exhibit "K" |

Init.

AIA Document A101™ – 2007. Copyright © 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1967, 1974, 1977, 1987, 1991, 1997 and 2007 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 13:36:33 on 08/05/2016 under Order No.7898458378_1 which expires on 04/22/2017, and is not for resale.
User Notes:    (1516459092)

Complaint, Exh. A

These documents form the Contract Documents and are as fully a part of the Contract as if repeated herein.   The Contract Documents represent the entire agreement between the parties hereto and supersede prior negotiations, representations or agreement, either written or oral.

ARTICLE 10   INSURANCE AND BONDS
The Contractor shall purchase and maintain insurance and provide bonds as set forth in Article 11 of AIA Document A201–2007.
*(Paragraph deleted)*

| Type of Insurance or bond | Limit of liability or bond amount ($0.00) |
| --- | --- |
| | |

This Agreement entered into as of the day and year first written above and is executed in at least three original copies, of which one is to be delivered to the Contractor, one to the Architect for use in the administration of the Contract, and the remainder to the Owner.

_____
OWNER *(Signature)*

Donald W. Paxton,
as Manager of General Partnership
*(Printed name and title)*

_____
CONTRACTOR *(Signature)*

Brad Roberts, President
*(Printed name and title)*

AIA Document A101™ – 2007. Copyright © 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1967, 1974, 1977, 1987, 1991, 1997 and 2007 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 13:38:33 on 08/06/2016 under Order No.7898458378_1 which expires on 04/22/2017, and is not for resale.
User Notes:                                                                              (1816459092)

Init.

9

Complaint, Exh. A

## *Additions and Deletions Report for*

*AIA® Document A101™ – 2007*

This Additions and Deletions Report, as defined on page 1 of the associated document, reproduces below all text the author has added to the standard form AIA document in order to complete it, as well as any text the author may have added to or deleted from the original AIA text. Added text is shown underlined. Deleted text is indicated with a horizontal line through the original AIA text.

Note:  This Additions and Deletions Report is provided for information purposes only and is not incorporated into or constitute any part of the associated AIA document. This Additions and Deletions Report and its associated document were generated simultaneously by AIA software at 13:36:33 on 06/06/2016.

## PAGE 1

AGREEMENT made as of the _____ day of June  in the year 2016

...

FP Augusta II, LLC, as the assignee of
Freedom's Path First Step Limited Partnership
Attn: Donald Paxton, Manager
3550 South Tamiami Trail, Suite 301
 Sarasota, FL 34239

...

CORE Construction
3131 N. I-10 Service Road East, Suite 401
Metairie, LA 70002-6054

...

Freedom's Path – Historic Rehabilitation of the Existing Structure;
Building #7 – Transitional Housing – Approximately 20 units – Single Story
Veterans Administration Campus, Augusta, Georgia 30904

...

Gruber & Associates, LLC
Attn: Morton M. Gruber, AIA, Manager
245 Peachtree Center Ave, NE, Suite 2445
Atlanta, GA 30303

## PAGE 2

The Contract Documents consist of this Agreement, Conditions of the Contract (General, Supplementary and other Conditions), Drawings, Specifications, qualifications and clarifications, Addenda issued prior to execution of this Agreement, other documents listed in this Agreement and Modifications issued after execution of this Agreement, all of which form the Contract, and are as fully a part of the Contract as if attached to this Agreement or repeated herein. The Contract represents the entire and integrated agreement between the parties hereto and supersedes prior negotiations, representations or agreements, either written or oral. An enumeration of the Contract Documents, other than a Modification, appears in Article 9.

...

Additions and Deletions Report for AIA Document A101™ – 2007. Copyright © 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1967, 1974, 1977, 1987, 1991, 1997 and 2007 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 13:36:33 on 06/06/2016 under Order No.7898458376_1 which expires on 04/22/2017, and is not for resale.
User Notes:                                                                                          (1516459082)

**1**

The Contractor shall fully execute the Work ~~described in the Contract Documents, except as specifically indicated in the Contract Documents to be the responsibility of others~~ as outlined in Exhibit "A" attached hereto in conformance with the Contract Documents and according to the Plans, Specifications, and manufacturer's specifications and generally accepted industry standards.   If there is a conflict between the Plans, specifications and normal industry standards, the document establishing the better quality shall govern.    Any and all modifications to the Work must be approved in writing by the Owner's representative, before the modification is performed.

...

~~(Insert the date of commencement if it differs from the date of this Agreement or, if applicable, state that the date will be fixed in a notice to proceed.)~~

Upon issuance of a Notice to Proceed by Owner.

...

N/A

...

§ 3.3 The Contractor shall achieve Substantial Completion of the entire Work not later than ~~(    ) days from the date of commencement, or as follows:~~
~~(Insert number of calendar days. Alternatively, a calendar date may be used when coordinated with the date of commencement. If appropriate, insert requirements for earlier Substantial Completion of certain portions of the Work.)~~

~~**Portion of Work**~~                    ~~**Substantial Completion Date**~~

~~, subject to adjustments of this Contract Time as provided in the Contract Documents.~~
~~(Insert provisions, if any, for liquidated damages relating to failure to achieve Substantial Completion on time or for bonus payments for early completion of the Work.)~~

August 31, 2017..

**PAGE 3**

§ 4.1 The Owner shall pay the Contractor the Contract Sum in current funds for the Contractor's performance of the Contract. The Contract Sum shall be ~~($    ), subject to additions and deductions as provided in the Contract Documents.~~ two million, four hundred fifty-six thousand dollars     ($ 2,456,000.00     ), established following the value engineering/buy out process outlined in Section 4.6.

...

~~(State the numbers or other identification of accepted alternates. If the bidding or proposal documents permit the Owner to accept other alternates subsequent to the execution of this Agreement, attach a schedule of such other alternates showing the amount for each and the date when that amount expires.)~~

 The Contract Sum includes $25,000.00 to compensate Contractor for Contractor to perform preconstruction investigation of the Project: the Building, the Site and utilities, and to perform testing that Contractor may wish to perform, to thoroughly investigate and acquaint itself to the greatest extent, with all existing conditions of the Project, so as to be able to include in the Contract Sum amounts that are reasonably necessary to construct the Project in accordance with the latest revision of the Plans and Specifications, applicable codes, and any other related investigative reports.

Additions and Deletions Report for AIA Document A101™ – 2007. Copyright © 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1967, 1974, 1977, 1987, 1991, 1997 and 2007 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 13:38:33 on 06/06/2016 under Order No.7898458378_1 which expires on 04/22/2017, and is not for resale.
User Notes:                                                                    (1516459092)

Complaint, Exh. A

All amounts associated with any alternates are intended to be not-to-exceed amounts.   If Owner elects in writing to have Contractor perform any alternate(s), then the Work associated with such alternate(s) shall be bid on an open-book basis with Owner having full audit rights with respect to such Work.   In the event the actual cost of any such alternate(s) is less than the not-to-exceed amount identified in the Contract Documents, such difference ("Alternate Savings") shall not be shared between Owner and Contractor.   Contractor hereby acknowledges and agrees that Owner shall receive 100% of any Alternate Savings.

...

       n/a

...

       See Schedule of Values, Exhibit G

...

§ 5.1.2 The period covered by each Application for Payment shall be one calendar month ending on the last day of the month, or as follows:month.   Each Application for Payment shall include the following documents:

    a.   Signed Application for Payment (AIA G702 and G703)
    b.   G702 and G703 in Excel Format (to be forwarded to Owner's lender)
    c.   General Contractor's notarized lien waivers reflecting the total funds paid to date.
    d.   G701 Change Orders, executed with appropriate backup documentation
    e.   Pending Change Order Log (PCO Log), and the Prime Contract Change Order Log (PCCO Log)
    f.   Updated Project Schedule
    g.   Contractor's Vendor Payee List with invoices and Subcontractor's lien waivers for the current month's
        Application for Payment
    h.   Any additional documents requested by Owner's lender (e.g. surveys, inspection reports, permits or
        updated insurance certificates)

§ 5.1.3 Provided that an Application for Payment is received by the Architect not later than the last___ day of a month, the Owner shall make payment of the certified amount to the Contractor not later than the 15___ day of the following___ month. If an Application for Payment is received by the Architect after the application date fixed above, payment shall be made by the Owner not later than thirty___ ( 30___ ) days after the Architect receives the Application for Payment.
(Federal, state, or local laws may require payment within a certain period of time.)

§ 5.1.4 Each Application for Payment shall be based on the most recent schedule of values submitted by the Contractor in accordance with the Contract Documents. The schedule of values shall allocate the entire Contract Sum among the various portions of the Work. The schedule of values shall be prepared in such form and supported by such data to substantiate its accuracy as the Architect may require,require, and shall establish separate line items for labor and material costs.  This schedule, unless objected to by the Architect, shall be used as a basis for reviewing the Contractor's Applications for Payment.

§ 5.1.5 Applications for Payment shall show indicate the percentage of completion of each portion of the Work as of the end of the period covered by the Application for Payment.

PAGE 4

     .1    Take that portion of the Contract Sum properly allocable to completed Work as determined by
         multiplying the percentage completion of each portion of the Work by the share of the Contract Sum
         allocated to that portion of the Work in the schedule of values, less retainage of ten___ percent ( 10
         %). Pending final determination of cost to the Owner of changes in the Work, amounts not in dispute
         shall be included as provided in Section 7.3.9 of AIA Document A201™–2007, General Conditions
         of the Contract for Construction;

Additions and Deletions Report for AIA Document A101™ – 2007. Copyright © 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1967, 1974, 1977, 1987, 1991, 1997 and 2007 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 13:36:33 on 06/06/2016 under Order No.7898458378_1 which expires on 04/22/2017, and is not for resale.
User Notes:                                    (1516459092)

                                    **3**

Complaint, Exh. A

.2    Add that portion of the Contract Sum properly allocable to materials and equipment delivered and suitably stored at the site for subsequent incorporation in the completed construction (or, if approved in advance by the Owner, suitably stored off the site at a location agreed upon in writing), less retainage of ~~percent ( %);~~construction, less retainage of ten ~~percent ( 10 %) when the project reaches fifty percent complete, the Owner will reduce the retainage on subsequent applications for payment to 5%, assuming that the Project, in the Owner's opinion is progressing in accordance with the approved schedule, and the quality of the work is acceptable to Owner. Owner reserves the right to reinstate ten percent retainage withholding at any time that it determines in its reasonable discretion that the Project is not proceeding in accordance with the approved schedule, the specified quality of the work is not being met, or there is evidence that Contractor is not timely paying Subcontractors and/or suppliers:

...

*(Section 9.8.5 of AIA Document A201–2007 requires release of applicable retainage upon Substantial Completion of Work with consent of surety, if any.)*

...

~~(If it is intended, prior to Substantial Completion of the entire Work, to reduce or limit the retainage resulting from the percentages inserted in Sections 5.1.6.1 and 5.1.6.2 above, and this is not explained elsewhere in the Contract Documents, insert here provisions for such reduction or limitation.)~~
See Section 5.1.6 above

...

.1    the Contractor has fully performed the Contract except for the Contractor's responsibility to correct Work as provided in Section 12.2.2 of AIA Document A201–2007, and to satisfy other ~~requirements,~~ requirements stated herein, if any, which extend beyond final payment;~~and~~

.2    a final Certificate for Payment has been issued by the ~~Architect.~~Architect; and

.3    the other conditions for final payment as set forth in the AIA Document A201-2007, as amended have been met.

**§ 5.2.2** The Owner's final payment to the Contractor shall be made no later than 30 days after the issuance of the Architect's final Certificate for Payment, ~~or as follows:~~
and after the other conditions for final payment contained in Article 9.10 of the General Conditions have been met.

**PAGE 5**

**§ 6.1** ~~INITIAL DECISION MAKER~~BINDING DISPUTE RESOLUTION
~~The Architect will serve as Initial Decision Maker pursuant to Section 15.2 of AIA Document A201–2007, unless the parties appoint below another individual, not a party to this Agreement, to serve as Initial Decision Maker.~~For any Claim subject to, but not resolved by, mediation pursuant to Section 15.3 of AIA Document A201–2007, the method of binding dispute resolution shall be as follows:
~~*(If the parties mutually agree, insert the name, address and other contact information of the Initial Decision Maker, if other than the Architect.)*~~*(Check the appropriate box. If the Owner and Contractor do not select a method of binding dispute resolution below, or do not subsequently agree in writing to a binding dispute resolution method other than litigation, Claims will be resolved by litigation in a court of competent jurisdiction.)*

[   ]    Arbitration pursuant to Section 15.4 of AIA Document A201–2007

[ X ]    Litigation in a court of competent jurisdiction, by judge. Jury trial is specifically waived by the parties.

[   ]    Other *(Specify)*

Additions and Deletions Report for AIA Document A101™ – 2007. Copyright © 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1967, 1974, 1977, 1987, 1991, 1997 and 2007 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 13:36:33 on 06/06/2016 under Order No.7898458378_1 which expires on 04/22/2017, and is not for resale.
User Notes:                                                     (1518459092)

**4**

Complaint, Exh. A

**§ 6.2 ~~BINDING  DISPUTE  RESOLUTION~~ATTORNEYS' FEES**
~~For any Claim subject to, but not resolved by, mediation pursuant to Section 15.3 of AIA Document A201-2007, the method of binding dispute resolution shall be as follows:~~The parties agree that in any litigation arising from or relating to this Agreement, the prevailing party in such litigation shall recover its reasonable attorney's fees and costs, including all such fees and costs incurred at trial and appellate level.

**§ 6.3 JURY TRIAL WAIVER**
*~~(Check the appropriate box. If the Owner and Contractor do not select a method of binding dispute resolution below, or do not subsequently agree in writing to a binding dispute resolution method other than litigation, Claims will be resolved by litigation in a court of competent jurisdiction.)~~*

~~[   ]   Arbitration pursuant to Section 15.4 of AIA Document A201-2007~~

~~[   ]   Litigation in a court of competent jurisdiction~~

~~[   ]   Other (Specify)~~

The parties hereto consent to trial by Judge of all disputes arising from or relating to this Agreement, and waive all rights to trial by jury as to any and all such claims and disputes.

...

**§ 8.2** Payments due and unpaid under the ~~Contract~~ Contract, which remain unpaid, shall bear interest from the date payment is due at the rate stated below, or in the absence thereof, at the legal rate prevailing from time to time at the place where the Project is located.

...

ten percent    % (10)

**PAGE 6**

Robert Smith
Beneficial Communities
3550 S. Tamiami Trail, Suite 301
Sarasota, FL 34239

...

Jason Bruzik
CORE Construction
3131 N. I-10 Service Road East, Suite 401
Metairie, LA 70002-6054

...

**§ 8.6.1  NOTICES.**   All notices, demands or other communications required under this Agreement shall be in writing and shall be deemed to have been duly given upon mailing by United States registered or certified mail, return receipt requested, postage prepaid, or by facsimile transmission to:

| if to Contractor, to: | Jason Bruzik | |
|---|---|---|
| CORE Construction | | 3131 N. I-10 Service Road East, Suite 401 |
| | Metairie, LA 70002-6054 | |

| if to Owner, to: | Robert Smith |
|---|---|
| | Beneficial Communities |
| | 3550 S. Tamiami Trail, Suite 301 |

Additions and Deletions Report for AIA Document A101™ – 2007. Copyright © 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1967, 1974, 1977, 1987, 1991, 1997 and 2007 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 13:36:33 on 06/06/2016 under Order No.7898458378_1 which expires on 04/22/2017, and is not for resale.
User Notes:                                                                                                      (1516459092)

5

Complaint, Exh. A

Sarasota, FL 34239

§ 8.6.2 Contractor shall prepare the job site for storms, protection of property adjacent to and below the Work, and secure any opening into the buildings as related to the Work.  In the event an unexpected storm threatens during non-working hours, Contractor will respond immediately to use its best efforts to protect the job site and adjacent areas from damage.

§8.6.3   Contractor shall provide Owner with emergency telephone numbers of its management team at all times during the Project.

§8.6.4   The Contractor shall keep full and detailed accounts and exercise such controls as may be necessary for proper financial management under this Contract, and the accounting and control systems shall be satisfactory to the Owner.

§ 8.6.5   Contractor shall take reasonable actions to prevent any actions or conditions which could result in a conflict with Owner's best interests.  These obligations shall apply to the activities of Contractor's employees, agents, subcontractors, etc., in their dealings and relations with Owner's current and former employees and their relatives. For example, Contractor's employees, agents, or subcontractors should not make or provide to be made any gifts, extravagant entertainment, trips, payments, loans, or other consideration to Owner's representatives, employees, or their relatives.

§8.6.6   Notwithstanding anything in the Contract Documents to the contrary, Owner shall have the right to audit and copy Contractor's Project books and records, at any time, and from time to time.   Contractor shall make all such books and records available for Owner's auditing and copying, including "read only" access to any software or documents to audit information or records maintained in electronic format, during normal business hours as requested by Owner upon thirty (30) days prior notice.   Provided, however, Contractor's general conditions expenses, Unit Prices and insurance and bond premiums are not subject to audit.

§8.6.7   A failure to assert any rights or remedies available to a party under the terms of the Contract, or a waiver of the right to remedies available to a party by a course of dealing or otherwise shall not be deemed to be a waiver of any other right of remedy under the Contract, unless such waiver of such right or remedy is contained in a writing signed by the party alleged to have waived his other rights or remedies.

§8.6.8   Contractor agrees to comply, at its own expense, with all federal, state and local laws, codes, statutes, ordinances, rules, administrative orders, regulations and requirements applicable to the Project, including but not limited to those dealing with safety.   If Contractor observes that the Contract Documents are at variance therewith, it shall promptly notify Owner and Architect in writing.

§8.6.9   No modification, alteration or waiver of the terms of this Contract shall be binding unless the same shall be in writing, dated subsequent to the date of this Contract and duly executed by the party or parties intended to be bound by it.

§8.6.10   Contractor acknowledges and agrees that Owner is obtaining financing for this Project from Owner's lender ("Lender").   Notwithstanding anything in the Contract Documents to the contrary, Contractor agrees, at no additional cost or expense to Owner, to comply (and to cause all lower tier Subcontractors and suppliers to comply) with any and all requirements reasonable and customary of Owner's Lender, whether such requirements are instituted before or after execution of the Agreement, including execution of Lender consents or assignments. Contractor acknowledges and agrees that this Contract, including Owner's issuance of a notice to proceed hereunder, is contingent upon Owner obtaining a mortgage commitment from a Lender.  In the event Owner is unable to procure such a commitment within one hundred eighty (180) calendar days from the date of full execution of this Agreement, either party may terminate this Contract subject to the terms and conditions enumerated in Article 14 of the AIA A201 (2007) as modified by Owner, upon written notice to the other party with no obligation or liability under this Contract to the other party resulting from such termination.   Contractor acknowledges and agrees that Owner's obligation to make payments of any amounts otherwise be due and owing under the Contract Documents is not conditioned upon Lender's approval of those payments unless Lender's non-approval is due to the acts or omission of Contractor, any of its Subcontractors or anyone from whom any of them are liable.   Owner will

Additions and Deletions Report for AIA Document A101™ – 2007. Copyright © 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1967, 1974, 1977, 1987, 1991, 1997 and 2007 by The American Institute of Architects. All rights reserved. WARNING: This AIA®  Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA®  Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 13:36:33 on 06/08/2016 under Order No.7698458378_1 which expires on 04/22/2017, and is not for resale.
User Notes:                                                                                                                                                 (1516459092)

Complaint, Exh. A

provide notice to Contractor within two business days of Lender's notice that it has not approved an Application for Payment for reasons due to Contractor, any of its Subcontractors or anyone for whom any of them are liable.

## § 8.7   LIQUIDATED DAMAGES

Contractor shall achieve Substantial Completion of the Work or any portion of the Work by no later August 31, 2017 (the "Substantial Completion Date").   Time is of the essence to the Contract Documents and all obligations thereunder, including but not limited to the date of Substantial Completion.

In the event the Contractor does not achieve Substantial Completion of the Work on or before the Substantial Completion Date Contractor shall pay Owner, as agreed liquidated damages and not as a penalty, the sum of Forty Five Dollars ($45.00) per residential apartment unit per day for each calendar day beyond Substantial Completion Date   set forth herein that the Work is not "substantially completed" (as hereinafter defined) by the applicable date unless such delays could be categorized as not within the control of the Contractor, i.e., Owner delays or Weather delays.   Contractor acknowledges and agrees that the actual delay damages which Owner will suffer in the event of a delay in achieving Substantial Completion of all or a portion of the project, are difficult, if not impossible, to determine and that the liquidated damages described above are a fair and reasonable estimate of the lost profits and revenue which the Owner is expected to suffer in the event of such delay.

## § 8.8   SPECIAL PROVISIONS APPLICABLE TO LOAN
Contractor agrees that all publicity and advertisements prepared and released by Contractor during construction of the Complex, recognize Owner's Lender as a participant in the funding for the Project.

## PAGE 8

§ 9.1.3 The Supplementary and other Conditions of the ~~Contract:~~
~~Contract~~ are those contained in the Project Manual

| ~~Document~~ | ~~Title~~ | ~~Date~~ | ~~Pages~~ |
|---|---|---|---|

...

List of Plans and Specifications as reflected on Exhibit "C" attached hereto.

...

Title of Drawings and specifications attached hereto as Exhibit "C".

...

n/a

...

*(List here any additional documents that are intended to form part of the Contract Documents. AIA Document A201–2007 provides that bidding requirements such as advertisement or invitation to bid, Instructions to Bidders, sample forms and the Contractor's bid are not part of the Contract Documents unless enumerated in this Agreement.   They should be listed here only if intended to be part of the Contract Documents.)*

| Scope of Work | Exhibit "A" |
|---|---|
| A201-2007 General Conditions, as modified | Exhibit "B" |
| Title of Specifications and Drawings | Exhibit "C" |
| Qualifications and Clarifications | Exhibit "D" |
| Construction Schedule | Exhibit "E" |

Additions and Deletions Report for AIA Document A101™ – 2007. Copyright © 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1967, 1974, 1977, 1987, 1991, 1997 and 2007 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 13:36:33 on 08/08/2016 under Order No.7898458378_1 which expires on 04/22/2017, and is not for resale.
User Notes:                                                                                                                                        (1516459092)

Complaint, Exh. A

| Application and Certificate of Payment | Exhibit "F" |
| Schedule of Values | Exhibit "G" |
| Payment Bond | Exhibit "H" |
| Performance Bond | Exhibit "I" |
| Contractor's Certificate of General Liability and | |
| Workers Compensation Insurance | Exhibit "J" |
| Sample Contractor and Subcontractor Waivers for | |
| Partial and Final Payment | Composite Exhibit "K" |

These documents form the Contract Documents and are as fully a part of the Contract as if repeated herein. The Contract Documents represent the entire agreement between the parties hereto and supersede prior negotiations, representations or agreement, either written or oral.

**PAGE 9**

*(State bonding requirements, if any, and limits of liability for insurance required in Article 11 of AIA Document A201–2007.)*

...

This Agreement entered into as of the day and year first written above.above and is executed in at least three original copies, of which one is to be delivered to the Contractor, one to the Architect for use in the administration of the Contract, and the remainder to the Owner.

...

Donald W. Paxton,
as Manager of General Partnership                    Jason Bruzik,   Secretary

Additions and Deletions Report for AIA Document A101™ – 2007. Copyright © 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1967, 1974, 1977, 1987, 1991, 1997 and 2007 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 13:36:33 on 06/06/2016 under Order No.7898458378_1 which expires on 04/22/2017, and is not for resale.
User Notes:                                                                                          (1516459092)

8

Complaint, Exh. A

## *Certification of Document's Authenticity*
*AIA® Document D401™ – 2003*

I, Michael K. Wilson, hereby certify, to the best of my knowledge, information and belief, that I created the attached final document simultaneously with its associated Additions and Deletions Report and this certification at 13:36:33 on 06/06/2016 under Order No. 7898458378_1 from AIA Contract Documents software and that in preparing the attached final document I made no changes to the original text of AIA® Document A101™ – 2007, Standard Form of Agreement Between Owner and Contractor   where the basis of payment is a Stipulated Sum, as published by the AIA in its software, other than those additions and deletions shown in the associated Additions and Deletions Report.

_____
(Signed)


_____
(Title)


_____
(Dated)

AIA Document D401™ – 2003. Copyright © 1992 and 2003 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 13:36:33 on 06/06/2016 under Order No.7898458378_1 which expires on 04/22/2017, and is not for resale.
User Notes:                                                                                                                  (1518459092)

1

Complaint, Exh. A



# AIA® Document A201™ – 2007

## General Conditions of the Contract for Construction

for the following PROJECT:
*(Name and location or address)*
Freedom's Path – Historic Rehabilitation of the Existing Structure:
Building # 7 – Transitional Housing – Approximately 20 units – Single Story
Veterans Administration Campus, Augusta, Georgia 30904

**THE OWNER:**
*(Name, legal status and address)*
FP Augusta II, LLC, as assignee of
Freedom's Path First Step Limited Partnership
Attn: Donald Paxton, Manager
3550 South Tamiami Trail, Suite 301
Sarasota, FL 34239

**THE ARCHITECT:**
*(Name, legal status and address)*
Gruber & Associates Architects, LLC
Attn: Morton M. Gruber, AIA, Manager
245 Peachtree Center Ave. NE, Suite 2445
Atlanta, GA 30303

**ADDITIONS AND DELETIONS:**
The author of this document has added information needed for its completion. The author may also have revised the text of the original AIA standard form. An *Additions and Deletions Report* that notes added information as well as revisions to the standard form text is available from the author and should be reviewed. A vertical line in the left margin of this document indicates where the author has added necessary information and where the author has added to or deleted from the original AIA text.

This document has important legal consequences. Consultation with an attorney is encouraged with respect to its completion or modification.

## TABLE OF ARTICLES

1    GENERAL PROVISIONS

2    OWNER

3    CONTRACTOR

4    ADMINISTRATION OF THE CONTRACT

5    SUBCONTRACTORS

6    CONSTRUCTION BY OWNER OR BY SEPARATE CONTRACTORS

7    CHANGES IN THE WORK

8    TIME

9    PAYMENTS AND COMPLETION

10   PROTECTION OF PERSONS AND PROPERTY

11   INSURANCE AND BONDS

12   UNCOVERING AND CORRECTION OF WORK

13   MISCELLANEOUS PROVISIONS

Init.

/

AIA Document A201™ – 2007. Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987, 1997 and 2007 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 08:44:02 on 08/06/2016 under Order No.7898458378_1 which expires on 04/22/2017, and is not for resale.
User Notes:                                                                    (2017881168)

1

14   TERMINATION OR SUSPENSION OF THE CONTRACT

Init.

AIA Document A201™ – 2007. Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987, 1997 and 2007 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 08:44:02 on 06/06/2016 under Order No.7898468378_1 which expires on 04/22/2017, and is not for resale.
User Notes:                                                                                                      (2017881160)

2

**INDEX**
(Topics and numbers in bold are section headings.)

**Acceptance of Nonconforming Work**
9.6.6, 9.9.3, 12.3
Acceptance of Work
9.6.6, 9.8.2, 9.9.3, 9.10.1, 9.10.3, 12.3
Access to Work
3.16, 6.2.1, 12.1
Accident Prevention
10
Acts and Omissions
3.2, 3.3.2, 3.12.8, 3.18, 4.2.3, 8.3.1, 9.5.1, 10.2.5,
10.2.8, 13.4.2, 13.7, 14.1, 15.2
Addenda
1.1.1, 3.11
Additional Costs, Claims for
3.7.4, 3.7.5, 6.1.1, 7.3.7.5, 10.3, 15.1.4
**Additional Inspections and Testing**
9.4.2, 9.8.3, 12.2.1, 13.5
Additional Insured
11.1.4
**Additional Time, Claims for**
3.2.4, 3.7.4, 3.7.5, 3.10.2, 8.3.2, 15.1.5
**Administration of the Contract**
3.1.3, 4.2, 9.4, 9.5
Advertisement or Invitation to Bid
1.1.1
Aesthetic Effect
4.2.13
Allowances
3.8, 7.3.8
All-risk Insurance
11.3.1, 11.3.1.1
Applications for Payment
4.2.5, 7.3.9, 9.2, 9.3, 9.4, 9.5.1, 9.6.3, 9.7, 9.10,
11.1.3
Approvals
2.1.1, 2.2.2, 2.4, 3.1.3, 3.10.2, 3.12.8, 3.12.9, 3.12.10,
4.2.7, 9.3.2, 13.5.1
**Arbitration**
8.3.1, 11.3.10, 13.1, 15.3.2, 15.4
**ARCHITECT**
4
**Architect, Definition of**
4.1.1
**Architect, Extent of Authority**
2.4, 3.12.7, 4.1, 4.2, 5.2, 6.3, 7.1.2, 7.3.7, 7.4, 9.2,
9.3.1, 9.4, 9.5, 9.6.3, 9.8, 9.10.1, 9.10.3, 12.1, 12.2.1,
13.5.1, 13.5.2, 14.2.2, 14.2.4, 15.1.3, 15.2.1
Architect, Limitations of Authority and
Responsibility
2.1.1, 3.12.4, 3.12.8, 3.12.10, 4.1.2, 4.2.1, 4.2.2,
4.2.3, 4.2.6, 4.2.7, 4.2.10, 4.2.12, 4.2.13, 5.2.1, 7.4,
9.4.2, 9.5.3, 9.6.4, 15.1.3, 15.2

Architect's Additional Services and Expenses
2.4, 11.3.1.1, 12.2.1, 13.5.2, 13.5.3, 14.2.4
Architect's Administration of the Contract
3.1.3, 4.2, 3.7.4, 15.2, 9.4.1, 9.5
Architect's Approvals
2.4, 3.1.3, 3.5, 3.10.2, 4.2.7
Architect's Authority to Reject Work
3.5, 4.2.6, 12.1.2, 12.2.1
Architect's Copyright
1.1.7, 1.5
Architect's Decisions
3.7.4, 4.2.6, 4.2.7, 4.2.11, 4.2.12, 4.2.13, 4.2.14, 6.3,
7.3.7, 7.3.9, 8.1.3, 8.3.1, 9.2, 9.4.1, 9.5, 9.8.4, 9.9.1,
13.5.2, 15.2, 15.3
Architect's Inspections
3.7.4, 4.2.2, 4.2.9, 9.4.2, 9.8.3, 9.9.2, 9.10.1, 13.5
Architect's Instructions
3.2.4, 3.3.1, 4.2.6, 4.2.7, 13.5.2
Architect's Interpretations
4.2.11, 4.2.12
Architect's Project Representative
4.2.10
Architect's Relationship with Contractor
1.1.2, 1.5, 3.1.3, 3.2.2, 3.2.3, 3.2.4, 3.3.1, 3.4.2, 3.5,
3.7.4, 3.7.5, 3.9.2, 3.9.3, 3.10, 3.11, 3.12, 3.16, 3.18,
4.1.2, 4.1.3, 4.2, 5.2, 6.2.2, 7, 8.3.1, 9.2, 9.3, 9.4, 9.5,
9.7, 9.8, 9.9, 10.2.6, 10.3, 11.3.7, 12, 13.4.2, 13.5,
15.2
Architect's Relationship with Subcontractors
1.1.2, 4.2.3, 4.2.4, 4.2.6, 9.6.3, 9.6.4, 11.3.7
Architect's Representations
9.4.2, 9.5.1, 9.10.1
Architect's Site Visits
3.7.4, 4.2.2, 4.2.9, 9.4.2, 9.5.1, 9.9.2, 9.10.1, 13.5
Asbestos
10.3.1
Attorneys' Fees
3.18.1, 9.10.2, 10.3.3
Award of Separate Contracts
6.1.1, 6.1.2
**Award of Subcontracts and Other Contracts for
Portions of the Work**
5.2
**Basic Definitions**
1.1
Bidding Requirements
1.1.1, 5.2.1, 11.4.1
Binding Dispute Resolution
9.7, 11.3.9, 11.3.10, 13.1, 15.2.5, 15.2.6.1, 15.3.1,
15.3.2, 15.4.1
**Boiler and Machinery Insurance**
11.3.2
Bonds, Lien
7.3.7.4, 9.10.2, 9.10.3
**Bonds, Performance, and Payment**
7.3.7.4, 9.6.7, 9.10.3, 11.3.9, 11.4

Init.

/

AIA Document A201™ – 2007. Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1959, 1961, 1963, 1966, 1970, 1976, 1987, 1997 and 2007 by The American
Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized
reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to
the maximum extent possible under the law. This document was produced by AIA software at 08:44:02 on 06/06/2016 under Order No 7898458378_1 which
expires on 04/22/2017, and is not for resale.
User Notes:                                                                                                              (2017861166)

3

Complaint, Exh. A

Building Permit
3.7.1
Capitalization
1.3
Certificate of Substantial Completion
9.8.3, 9.8.4, 9.8.5
Certificates for Payment
4.2.1, 4.2.5, 4.2.9, 9.3.3, 9.4, 9.5, 9.6.1, 9.6.6, 9.7,
9.10.1, 9.10.3, 14.1.1.3, 14.2.4, 15.1.3
Certificates of Inspection, Testing or Approval
13.5.4
Certificates of Insurance
9.10.2, 11.1.3
Change Orders
1.1.1, 2.4, 3.4.2, 3.7.4, 3.8.2.3, 3.11, 3.12.8, 4.2.8,
5.2.3, 7.1.2, 7.1.3, 7.2, 7.3.2, 7.3.6, 7.3.9, 7.3.10,
8.3.1, 9.3.1.1, 9.10.3, 10.3.2, 11.3.1.2, 11.3.4, 11.3.9,
12.1.2, 15.1.3
Change Orders, Definition of
7.2.1
CHANGES IN THE WORK
2.2.1, 3.11, 4.2.8, 7, 7.2.1, 7.3.1, 7.4, 8.3.1, 9.3.1.1,
11.3.9
Claims, Definition of
15.1.1
CLAIMS AND DISPUTES
3.2.4, 6.1.1, 6.3, 7.3.9, 9.3.3, 9.10.4, 10.3.3, 15, 15.4
Claims and Timely Assertion of Claims
15.4.1
Claims for Additional Cost
3.2.4, 3.7.4, 6.1.1, 7.3.9, 10.3.2, 15.1.4
Claims for Additional Time
3.2.4, 3.7.4, 6.1.1, 8.3.2, 10.3.2, 15.1.5
Concealed or Unknown Conditions, Claims for
3.7.4
Claims for Damages
3.2.4, 3.18, 6.1.1, 8.3.3, 9.5.1, 9.6.7, 10.3.3, 11.1.1,
11.3.5, 11.3.7, 14.1.3, 14.2.4, 15.1.6
Claims Subject to Arbitration
15.3.1, 15.4.1
Cleaning Up
3.15, 6.3
Commencement of the Work, Conditions Relating to
2.2.1, 3.2.2, 3.4.1, 3.7.1, 3.10.1, 3.12.6, 5.2.1, 5.2.3,
6.2.2, 8.1.2, 8.2.2, 8.3.1, 11.1, 11.3.1, 11.3.6, 11.4.1,
15.1.4
Commencement of the Work, Definition of
8.1.2
Communications Facilitating Contract
Administration
3.9.1, 4.2.4
Completion, Conditions Relating to
3.4.1, 3.11, 3.15, 4.2.2, 4.2.9, 8.2, 9.4.2, 9.8, 9.9.1,
9.10, 12.2, 13.7, 14.1.2
COMPLETION, PAYMENTS AND
9

Completion, Substantial
4.2.9, 8.1.1, 8.1.3, 8.2.3, 9.4.2, 9.8, 9.9.1, 9.10.3,
12.2, 13.7
Compliance with Laws
1.6, 3.2.3, 3.6, 3.7, 3.12.10, 3.13, 4.1.1, 9.6.4, 10.2.2,
11.1, 11.3, 13.1, 13.4, 13.5.1, 13.5.2, 13.6, 14.1.1,
14.2.1.3, 15.2.8, 15.4.2, 15.4.3
Concealed or Unknown Conditions
3.7.4, 4.2.8, 8.3.1, 10.3
Conditions of the Contract
1.1.1, 6.1.1, 6.1.4
Consent, Written
3.4.2, 3.7.4, 3.12.8, 3.14.2, 4.1.2, 9.3.2, 9.8.5, 9.9.1,
9.10.2, 9.10.3, 11.3.1, 13.2, 13.4.2, 15.4.4.2
Consolidation or Joinder
15.4.4
CONSTRUCTION BY OWNER OR BY
SEPARATE CONTRACTORS
1.1.4, 6
Construction Change Directive, Definition of
7.3.1
Construction Change Directives
1.1.1, 3.4.2, 3.12.8, 4.2.8, 7.1.1, 7.1.2, 7.1.3, 7.3,
9.3.1.1
Construction Schedules, Contractor's
3.10, 3.12.1, 3.12.2, 6.1.3, 15.1.5.2
Contingent Assignment of Subcontracts
5.4, 14.2.2.2
Continuing Contract Performance
15.1.3
Contract, Definition of
1.1.2
CONTRACT, TERMINATION OR
SUSPENSION OF THE
5.4.1.1, 11.3.9, 14
Contract Administration
3.1.3, 4, 9.4, 9.5
Contract Award and Execution, Conditions Relating
to
3.7.1, 3.10, 5.2, 6.1, 11.1.3, 11.3.6, 11.4.1
Contract Documents, Copies Furnished and Use of
1.5.2, 2.2.5, 5.3
Contract Documents, Definition of
1.1.1
Contract Sum
3.7.4, 3.8, 5.2.3, 7.2, 7.3, 7.4, 9.1, 9.4.2, 9.5.1.4,
9.6.7, 9.7, 10.3.2, 11.3.1, 14.2.4, 14.3.2, 15.1.4,
15.2.5
Contract Sum, Definition of
9.1
Contract Time
3.7.4, 3.7.5, 3.10.2, 5.2.3, 7.2.1.3, 7.3.1, 7.3.5, 7.4,
8.1.1, 8.2.1, 8.3.1, 9.5.1, 9.7, 10.3.2, 12.1.1, 14.3.2,
15.1.5.1, 15.2.5
Contract Time, Definition of
8.1.1

AIA Document A201™ – 2007. Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987, 1997 and 2007 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 08:44:02 on 06/06/2016 under Order No.7898458378_1 which expires on 04/22/2017, and is not for resale.
User Notes:                                                                                                      (2017881168)

Init.

/

4

Complaint, Exh. A

**CONTRACTOR**
3
**Contractor, Definition of**
3.1, 6.1.2
**Contractor's Construction Schedules**
3.10, 3.12.1, 3.12.2, 6.1.3, 15.1.5.2
Contractor's Employees
3.3.2, 3.4.3, 3.8.1, 3.9, 3.18.2, 4.2.3, 4.2.6, 10.2, 10.3,
11.1.1, 11.3.7, 14.1, 14.2.1.1
**Contractor's Liability Insurance**
**11.1**
Contractor's Relationship with Separate Contractors
and Owner's Forces
3.12.5, 3.14.2, 4.2.4, 6, 11.3.7, 12.1.2, 12.2.4
Contractor's Relationship with Subcontractors
1.2.2, 3.3.2, 3.18.1, 3.18.2, 5, 9.6.2, 9.6.7, 9.10.2,
11.3.1.2, 11.3.7, 11.3.8
Contractor's Relationship with the Architect
1.1.2, 1.5, 3.1.3, 3.2.2, 3.2.3, 3.2.4, 3.3.1, 3.4.2, 3.5,
3.7.4, 3.10, 3.11, 3.12, 3.16, 3.18, 4.1.3, 4.2, 5.2,
6.2.2, 7, 8.3.1, 9.2, 9.3, 9.4, 9.5, 9.7, 9.8, 9.9, 10.2.6,
10.3, 11.3.7, 12, 13.5, 15.1.2, 15.2.1
Contractor's Representations
3.2.1, 3.2.2, 3.5, 3.12.6, 6.2.2, 8.2.1, 9.3.3, 9.8.2
Contractor's Responsibility for Those Performing the
Work
3.3.2, 3.18, 5.3, 6.1.3, 6.2, 9.5.1, 10.2.8
Contractor's Review of Contract Documents
3.2
Contractor's Right to Stop the Work
9.7
Contractor's Right to Terminate the Contract
14.1, 15.1.6
Contractor's Submittals
3.10, 3.11, 3.12.4, 4.2.7, 5.2.1, 5.2.3, 9.2, 9.3, 9.8.2,
9.8.3, 9.9.1, 9.10.2, 9.10.3, 11.1.3, 11.4.2
Contractor's Superintendent
3.9, 10.2.6
Contractor's Supervision and Construction
Procedures
1.2.2, 3.3, 3.4, 3.12.10, 4.2.2, 4.2.7, 6.1.3, 6.2.4,
7.1.3, 7.3.5, 7.3.7, 8.2, 10, 12, 14, 15.1.3
Contractual Liability Insurance
11.1.1.8, 11.2
Coordination and Correlation
1.2, 3.2.1, 3.3.1, 3.10, 3.12.6, 6.1.3, 6.2.1
Copies Furnished of Drawings and Specifications
1.5, 2.2.5, 3.11
Copyrights
1.5, 3.17
Correction of Work
2.3, 2.4, 3.7.3, 9.4.2, 9.8.2, 9.8.3, 9.9.1, 12.1.2, 12.2
**Correlation and Intent of the Contract Documents**
**1.2**
Cost, Definition of
7.3.7

Costs
2.4, 3.2.4, 3.7.3, 3.8.2, 3.15.2, 5.4.2, 6.1.1, 6.2.3,
7.3.3.3, 7.3.7, 7.3.8, 7.3.9, 9.10.2, 10.3.2, 10.3.6,
11.3, 12.1.2, 12.2.1, 12.2.4, 13.5, 14
**Cutting and Patching**
**3.14, 6.2.5**
Damage to Construction of Owner or Separate
Contractors
3.14.2, 6.2.4, 10.2.1.2, 10.2.5, 10.4, 11.1.1, 11.3,
12.2.4
Damage to the Work
3.14.2, 9.9.1, 10.2.1.2, 10.2.5, 10.4, 11.3.1, 12.2.4
Damages, Claims for
3.2.4, 3.18, 6.1.1, 8.3.3, 9.5.1, 9.6.7, 10.3.3, 11.1.1,
11.3.5, 11.3.7, 14.1.3, 14.2.4, 15.1.6
Damages for Delay
6.1.1, 8.3.3, 9.5.1.6, 9.7, 10.3.2
**Date of Commencement of the Work, Definition of**
**8.1.2**
**Date of Substantial Completion, Definition of**
**8.1.3**
Day, Definition of
8.1.4
Decisions of the Architect
3.7.4, 4.2.6, 4.2.7, 4.2.11, 4.2.12, 4.2.13, 15.2, 6.3,
7.3.7, 7.3.9, 8.1.3, 8.3.1, 9.2, 9.4, 9.5.1, 9.8.4, 9.9.1,
13.5.2, 14.2.2, 14.2.4, 15.1, 15.2
**Decisions to Withhold Certification**
**9.4.1, 9.5, 9.7, 14.1.1.3**
Defective or Nonconforming Work, Acceptance,
Rejection and Correction of
2.3, 2.4, 3.5, 4.2.6, 6.2.5, 9.5.1, 9.5.2, 9.6.6, 9.8.2,
9.9.3, 9.10.4, 12.2.1
Definitions
1.1, 2.1.1, 3.1.1, 3.5, 3.12.1, 3.12.2, 3.12.3, 4.1.1,
15.1.1, 5.1, 6.1.2, 7.2.1, 7.3.1, 8.1, 9.1, 9.8.1
Delays and Extensions of Time
3.2, 3.7.4, 5.2.3, 7.2.1, 7.3.1, 7.4, 8.3, 9.5.1, 9.7,
10.3.2, 10.4, 14.3.2, 15.1.5, 15.2.5
Disputes
6.3, 7.3.9, 15.1, 15.2
**Documents and Samples at the Site**
**3.11**
**Drawings, Definition of**
**1.1.5**
Drawings and Specifications, Use and Ownership of
3.11
Effective Date of Insurance
8.2.2, 11.1.2
**Emergencies**
**10.4, 14.1.1.2, 15.1.4**
Employees, Contractor's
3.3.2, 3.4.3, 3.8.1, 3.9, 3.18.2, 4.2.3, 4.2.6, 10.2,
10.3.3, 11.1.1, 11.3.7, 14.1, 14.2.1.1

AIA Document A201™ – 2007. Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987, 1997 and 2007 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 08:44:02 on 06/08/2016 under Order No.7898458378_1 which expires on 04/22/2017, and is not for resale.
User Notes:                                                                                                  (2017881166)

Init.

/

Complaint, Exh. A

Equipment, Labor, Materials or
1.1.3, 1.1.6, 3.4, 3.5, 3.8.2, 3.8.3, 3.12, 3.13, 3.15.1,
4.2.6, 4.2.7, 5.2.1, 6.2.1, 7.3.7, 9.3.2, 9.3.3, 9.5.1.3,
9.10.2, 10.2.1, 10.2.4, 14.2.1.1, 14.2.1.2
Execution and Progress of the Work
1.1.3, 1.2.1, 1.2.2, 2.2.3, 2.2.5, 3.1, 3.3.1, 3.4.1, 3.5,
3.7.1, 3.10.1, 3.12, 3.14, 4.2, 6.2.2, 7.1.3, 7.3.5, 8.2,
9.5.1, 9.9.1, 10.2, 10.3, 12.2, 14.2, 14.3.1, 15.1.3
Extensions of Time
3.2.4, 3.7.4, 5.2.3, 7.2.1, 7.3, 7.4, 9.5.1, 9.7, 10.3.2,
10.4, 14.3, 15.1.5, 15.2.5
Failure of Payment
9.5.1.3, 9.7, 9.10.2, 13.6, 14.1.1.3, 14.2.1.2
Faulty Work
(See Defective or Nonconforming Work)
Final Completion and Final Payment
4.2.1, 4.2.9, 9.8.2, 9.10, 11.1.2, 11.1.3, 11.3.1, 11.3.5,
12.3, 14.2.4, 14.4.3
Financial Arrangements, Owner's
2.2.1, 13.2.2, 14.1.1.4
Fire and Extended Coverage Insurance
11.3.1.1
GENERAL PROVISIONS
1
Governing Law
13.1
Guarantees (See Warranty)
Hazardous Materials
10.2.4, 10.3
Identification of Subcontractors and Suppliers
5.2.1
Indemnification
3.17, 3.18, 9.10.2, 10.3.3, 10.3.5, 10.3.6, 11.3.1.2,
11.3.7
Information and Services Required of the Owner
2.1.2, 2.2, 3.2.2, 3.12.4, 3.12.10, 6.1.3, 6.1.4, 6.2.5,
9.6.1, 9.6.4, 9.9.2, 9.10.3, 10.3.3, 11.2, 11.4, 13.5.1,
13.5.2, 14.1.1.4, 14.1.4, 15.1.3
Initial Decision
15.2
Initial Decision Maker, Definition of
1.1.8
Initial Decision Maker, Decisions
14.2.2, 14.2.4, 15.2.1, 15.2.2, 15.2.3, 15.2.4, 15.2.5
Initial Decision Maker, Extent of Authority
14.2.2, 14.2.4, 15.1.3, 15.2.1, 15.2.2, 15.2.3, 15.2.4,
15.2.5
Injury or Damage to Person or Property
10.2.8, 10.4
Inspections
3.1.3, 3.3.3, 3.7.1, 4.2.2, 4.2.6, 4.2.9, 9.4.2, 9.8.3,
9.9.2, 9.10.1, 12.2.1, 13.5
Instructions to Bidders
1.1.1
Instructions to the Contractor
3.2.4, 3.3.1, 3.8.1, 5.2.1, 7, 8.2.2, 12, 13.5.2

Instruments of Service, Definition of
1.1.7
Insurance
3.18.1, 6.1.1, 7.3.7, 9.3.2, 9.8.4, 9.9.1, 9.10.2, 11
Insurance, Boiler and Machinery
11.3.2
Insurance, Contractor's Liability
11.1
Insurance, Effective Date of
8.2.2, 11.1.2
Insurance, Loss of Use
11.3.3
Insurance, Owner's Liability
11.2
Insurance, Property
10.2.5, 11.3
Insurance, Stored Materials
9.3.2
INSURANCE AND BONDS
11
Insurance Companies, Consent to Partial Occupancy
9.9.1
Intent of the Contract Documents
1.2.1, 4.2.7, 4.2.12, 4.2.13, 7.4
Interest
13.6
Interpretation
1.2.3, 1.4, 4.1.1, 5.1, 6.1.2, 15.1.1
Interpretations, Written
4.2.11, 4.2.12, 15.1.4
Judgment on Final Award
15.4.2
Labor and Materials, Equipment
1.1.3, 1.1.6, 3.4, 3.5, 3.8.2, 3.8.3, 3.12, 3.13, 3.15.1,
4.2.6, 4.2.7, 5.2.1, 6.2.1, 7.3.7, 9.3.2, 9.3.3, 9.5.1.3,
9.10.2, 10.2.1, 10.2.4, 14.2.1.1, 14.2.1.2
Labor Disputes
8.3.1
Laws and Regulations
1.5, 3.2.3, 3.6, 3.7, 3.12.10, 3.13, 4.1.1, 9.6.4, 9.9.1,
10.2.2, 11.1.1, 11.3, 13.1, 13.4, 13.5.1, 13.5.2, 13.6,
14, 15.2.8, 15.4
Liens
2.1.2, 9.3.3, 9.10.2, 9.10.4, 15.2.8
Limitations, Statutes of
12.2.5, 13.7, 15.4.1.1
Limitations of Liability
2.3, 3.2.2, 3.5, 3.12.10, 3.17, 3.18.1, 4.2.6, 4.2.7,
4.2.12, 6.2.2, 9.4.2, 9.6.4, 9.6.7, 10.2.5, 10.3.3,
11.1.2, 11.2, 11.3.7, 12.2.5, 13.4.2
Limitations of Time
2.1.2, 2.2, 2.4, 3.2.2, 3.10, 3.11, 3.12.5, 3.15.1, 4.2.7,
5.2, 5.3, 5.4.1, 6.2.4, 7.3, 7.4, 8.2, 9.2, 9.3.1, 9.3.3,
9.4.1, 9.5, 9.6, 9.7, 9.8, 9.9, 9.10, 11.1.3, 11.3.1.5,
11.3.6, 11.3.10, 12.2, 13.5, 13.7, 14, 15
Loss of Use Insurance
11.3.3

AIA Document A201™ – 2007. Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987, 1997 and 2007 by The American
Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized
reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to
the maximum extent possible under the law. This document was produced by AIA software at 08:44:02 on 06/06/2016 under Order No.7898458378_1 which
expires on 04/22/2017, and is not for resale.
User Notes:                                                                                                      (2017881168)

Complaint, Exh. A

Material Suppliers
1.5, 3.12.1, 4.2.4, 4.2.6, 5.2.1, 9.3, 9.4.2, 9.6, 9.10.5
Materials, Hazardous
10.2.4, 10.3
Materials, Labor, Equipment and
1.1.3, 1.1.6, 1.5.1, 3.4.1, 3.5, 3.8.2, 3.8.3, 3.12, 3.13,
3.15.1, 4.2.6, 4.2.7, 5.2.1, 6.2.1, 7.3.7, 9.3.2, 9.3.3,
9.5.1.3, 9.10.2, 10.2.1.2, 10.2.4, 14.2.1.1, 14.2.1.2
Means, Methods, Techniques, Sequences and
Procedures of Construction
3.3.1, 3.12.10, 4.2.2, 4.2.7, 9.4.2
Mechanic's Lien
2.1.2, 15.2.8
Mediation
8.3.1, 10.3.5, 10.3.6, 15.2.1, 15.2.5, 15.2.6, 15.3,
15.4.1
Minor Changes in the Work
1.1.1, 3.12.8, 4.2.8, 7.1, 7.4
MISCELLANEOUS PROVISIONS
13
Modifications, Definition of
1.1.1
Modifications to the Contract
1.1.1, 1.1.2, 3.11, 4.1.2, 4.2.1, 5.2.3, 7, 8.3.1, 9.7,
10.3.2, 11.3.1
Mutual Responsibility
6.2
Nonconforming Work, Acceptance of
9.6.6, 9.9.3, 12.3
Nonconforming Work, Rejection and Correction of
2.3, 2.4, 3.5, 4.2.6, 6.2.4, 9.5.1, 9.8.2, 9.9.3, 9.10.4,
12.2.1
Notice
2.2.1, 2.3, 2.4, 3.2.4, 3.3.1, 3.7.2, 3.12.9, 5.2.1, 9.7,
9.10, 10.2.2, 11.1.3, 12.2.2.1, 13.3, 13.5.1, 13.5.2,
14.1, 14.2, 15.2.8, 15.4.1
Notice, Written
2.3, 2.4, 3.3.1, 3.9.2, 3.12.9, 3.12.10, 5.2.1, 9.7, 9.10,
10.2.2, 10.3, 11.1.3, 11.3.6, 12.2.2.1, 13.3, 14, 15.2.8,
15.4.1
Notice of Claims
3.7.4, 10.2.8, 15.1.2, 15.4
Notice of Testing and Inspections
13.5.1, 13.5.2
Observations, Contractor's
3.2, 3.7.4
Occupancy
2.2.2, 9.6.6, 9.8, 11.3.1.5
Orders, Written
1.1.1, 2.3, 3.9.2, 7, 8.2.2, 11.3.9, 12.1, 12.2.2.1,
13.5.2, 14.3.1
OWNER
2
Owner, Definition of
2.1.1

Owner, Information and Services Required of the
2.1.2, 2.2, 3.2.2, 3.12.10, 6.1.3, 6.1.4, 6.2.5, 9.3.2,
9.6.1, 9.6.4, 9.9.2, 9.10.3, 10.3.3, 11.2, 11.3, 13.5.1,
13.5.2, 14.1.1.4, 14.1.4, 15.1.3
Owner's Authority
1.5, 2.1.1, 2.3, 2.4, 3.4.2, 3.8.1, 3.12.10, 3.14.2, 4.1.2,
4.1.3, 4.2.4, 4.2.9, 5.2.1, 5.2.4, 5.4.1, 6.1, 6.3, 7.2.1,
7.3.1, 8.2.2, 8.3.1, 9.3.1, 9.3.2, 9.5.1, 9.6.4, 9.9.1,
9.10.2, 10.3.2, 11.1.3, 11.3.3, 11.3.10, 12.2.2, 12.3,
13.2.2, 14.3, 14.4, 15.2.7
Owner's Financial Capability
2.2.1, 13.2.2, 14.1.1.4
Owner's Liability Insurance
11.2
Owner's Relationship with Subcontractors
1.1.2, 5.2, 5.3, 5.4, 9.6.4, 9.10.2, 14.2.2
Owner's Right to Carry Out the Work
2.4, 14.2.2
Owner's Right to Clean Up
6.3
Owner's Right to Perform Construction and to
Award Separate Contracts
6.1
Owner's Right to Stop the Work
2.3
Owner's Right to Suspend the Work
14.3
Owner's Right to Terminate the Contract
14.2
Ownership and Use of Drawings, Specifications
and Other Instruments of Service
1.1.1, 1.1.6, 1.1.7, 1.5, 2.2.5, 3.2.2, 3.11, 3.17, 4.2.12,
5.3
Partial Occupancy or Use
9.6.6, 9.9, 11.3.1.5
Patching, Cutting and
3.14, 6.2.5
Patents
3.17
Payment, Applications for
4.2.5, 7.3.9, 9.2, 9.3, 9.4, 9.5, 9.6.3, 9.7, 9.8.5, 9.10.1,
14.2.3, 14.2.4, 14.4.3
Payment, Certificates for
4.2.5, 4.2.9, 9.3.3, 9.4, 9.5, 9.6.1, 9.6.6, 9.7, 9.10.1,
9.10.3, 13.7, 14.1.1.3, 14.2.4
Payment, Failure of
9.5.1.3, 9.7, 9.10.2, 13.6, 14.1.1.3, 14.2.1.2
Payment, Final
4.2.1, 4.2.9, 9.8.2, 9.10, 11.1.2, 11.1.3, 11.4.1, 12.3,
13.7, 14.2.4, 14.4.3
Payment Bond, Performance Bond and
7.3.7.4, 9.6.7, 9.10.3, 11.4
Payments, Progress
9.3, 9.6, 9.8.5, 9.10.3, 13.6, 14.2.3, 15.1.3
PAYMENTS AND COMPLETION
9

AIA Document A201™ – 2007. Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987, 1997 and 2007 by The American
Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized
reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to
the maximum extent possible under the law. This document was produced by AIA software at 08:44:02 on 05/06/2016 under Order No.7898458378_1 which
expires on 04/22/2017, and is not for resale.
User Notes:                                                                                                    (2017881168)

Complaint, Exh. A

Payments to Subcontractors
5.4.2, 9.5.1.3, 9.6.2, 9.6.3, 9.6.4, 9.6.7, 14.2.1.2
PCB
10.3.1
Performance Bond and Payment Bond
7.3.7.4, 9.6.7, 9.10.3, 11.4
Permits, Fees, Notices and Compliance with Laws
2.2.2, 3.7, 3.13, 7.3.7.4, 10.2.2
PERSONS AND PROPERTY, PROTECTION
OF
10
Polychlorinated Biphenyl
10.3.1
Product Data, Definition of
3.12.2
Product Data and Samples, Shop Drawings
3.11, 3.12, 4.2.7
Progress and Completion
4.2.2, 8.2, 9.8, 9.9.1, 14.1.4, 15.1.3
Progress Payments
9.3, 9.6, 9.8.5, 9.10.3, 13.6, 14.2.3, 15.1.3
Project, Definition of
1.1.4
Project Representatives
4.2.10
Property Insurance
10.2.5, 11.3
PROTECTION OF PERSONS AND PROPERTY
10
Regulations and Laws
1.5, 2.2.3, 3.6, 3.7, 3.12.10, 3.13, 4.1.1, 9.6.4, 9.9.1,
10.2.2, 11.1, 11.4, 13.1, 13.4, 13.5.1, 13.5.2, 13.6, 14,
15.2.8, 15.4
Rejection of Work
3.5, 4.2.6, 12.2.1
Releases and Waivers of Liens
9.10.2
Representations
3.2.1, 3.5, 3.12.6, 6.2.2, 8.2.1, 9.3.3, 9.4.2, 9.5.1,
9.8.2, 9.10.1
Representatives
2.1.1, 3.1.1, 3.9, 4.1.1, 4.2.1, 4.2.2, 4.2.10, 5.1.1,
5.1.2, 13.2.1
Responsibility for Those Performing the Work
3.3.2, 3.18, 4.2.3, 5.3, 6.1.3, 6.2, 6.3, 9.5.1, 10
Retainage
9.3.1, 9.6.2, 9.8.5, 9.9.1, 9.10.2, 9.10.3
Review of Contract Documents and Field
Conditions by Contractor
3.2, 3.12.7, 6.1.3
Review of Contractor's Submittals by Owner and
Architect
3.10.1, 3.10.2, 3.11, 3.12, 4.2, 5.2, 6.1.3, 9.2, 9.8.2
Review of Shop Drawings, Product Data and
Samples by Contractor
3.12

Rights and Remedies
1.1.2, 2.3, 2.4, 3.5, 3.7.4, 3.15.2, 4.2.6, 5.3, 5.4, 6.1,
6.3, 7.3.1, 8.3, 9.5.1, 9.7, 10.2.5, 10.3, 12.2.2, 12.2.4,
13.4, 14, 15.4
Royalties, Patents and Copyrights
3.17
Rules and Notices for Arbitration
15.4.1
Safety of Persons and Property
10.2, 10.4
Safety Precautions and Programs
3.3.1, 4.2.2, 4.2.7, 5.3, 10.1, 10.2, 10.4
Samples, Definition of
3.12.3
Samples, Shop Drawings, Product Data and
3.11, 3.12, 4.2.7
Samples at the Site, Documents and
3.11
Schedule of Values
9.2, 9.3.1
Schedules, Construction
3.10, 3.12.1, 3.12.2, 6.1.3, 15.1.5.2
Separate Contracts and Contractors
1.1.4, 3.12.5, 3.14.2, 4.2.4, 4.2.7, 6, 8.3.1, 12.1.2
Shop Drawings, Definition of
3.12.1
Shop Drawings, Product Data and Samples
3.11, 3.12, 4.2.7
Site, Use of
3.13, 6.1.1, 6.2.1
Site Inspections
3.2.2, 3.3.3, 3.7.1, 3.7.4, 4.2, 9.4.2, 9.10.1, 13.5
Site Visits, Architect's
3.7.4, 4.2.2, 4.2.9, 9.4.2, 9.5.1, 9.9.2, 9.10.1, 13.5
Special Inspections and Testing
4.2.6, 12.2.1, 13.5
Specifications, Definition of
1.1.6
Specifications
1.1.1, 1.1.6, 1.2.2, 1.5, 3.11, 3.12.10, 3.17, 4.2.14
Statute of Limitations
13.7, 15.4.1.1
Stopping the Work
2.3, 9.7, 10.3, 14.1
Stored Materials
6.2.1, 9.3.2, 10.2.1.2, 10.2.4
Subcontractor, Definition of
5.1.1
SUBCONTRACTORS
5
Subcontractors, Work by
1.2.2, 3.3.2, 3.12.1, 4.2.3, 5.2.3, 5.3, 5.4, 9.3.1.2,
9.6.7
Subcontractual Relations
5.3, 5.4, 9.3.1.2, 9.6, 9.10, 10.2.1, 14.1, 14.2.1

Init.

/

AIA Document A201™ – 2007. Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987, 1997 and 2007 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 08:44:02 on 06/08/2016 under Order No.7808458378_1 which expires on 04/22/2017, and is not for resale.
User Notes:                                                                                                                 (2017881168)

8

Complaint, Exh. A

Submittals
3.10, 3.11, 3.12, 4.2.7, 5.2.1, 5.2.3, 7.3.7, 9.2, 9.3,
9.8, 9.9.1, 9.10.2, 9.10.3, 11.1.3
Submittal Schedule
3.10.2, 3.12.5, 4.2.7
Subrogation, Waivers of
6.1.1, 11.3.7
Substantial Completion
4.2.9, 8.1.1, 8.1.3, 8.2.3, 9.4.2, 9.8, 9.9.1, 9.10.3,
12.2, 13.7
Substantial Completion, Definition of
9.8.1
Substitution of Subcontractors
5.2.3, 5.2.4
Substitution of Architect
4.1.3
Substitutions of Materials
3.4.2, 3.5, 7.3.8
Sub-subcontractor, Definition of
5.1.2
Subsurface Conditions
3.7.4
Successors and Assigns
13.2
Superintendent
3.9, 10.2.6
Supervision and Construction Procedures
1.2.2, 3.3, 3.4, 3.12.10, 4.2.2, 4.2.7, 6.1.3, 6.2.4,
7.1.3, 7.3.7, 8.2, 8.3.1, 9.4.2, 10, 12, 14, 15.1.3
Surety
5.4.1.2, 9.8.5, 9.10.2, 9.10.3, 14.2.2, 15.2.7
Surety, Consent of
9.10.2, 9.10.3
Surveys
2.2.3
Suspension by the Owner for Convenience
14.3
Suspension of the Work
5.4.2, 14.3
Suspension or Termination of the Contract
5.4.1.1, 14
Taxes
3.6, 3.8.2.1, 7.3.7.4
Termination by the Contractor
14.1, 15.1.6
Termination by the Owner for Cause
5.4.1.1, 14.2, 15.1.6
Termination by the Owner for Convenience
14.4
Termination of the Architect
4.1.3
Termination of the Contractor
14.2.2
TERMINATION OR SUSPENSION OF THE
CONTRACT
14

Tests and Inspections
3.1.3, 3.3.3, 4.2.2, 4.2.6, 4.2.9, 9.4.2, 9.8.3, 9.9.2,
9.10.1, 10.3.2, 11.4.1, 12.2.1, 13.5
TIME
8
Time, Delays and Extensions of
3.2.4, 3.7.4, 5.2.3, 7.2.1, 7.3.1, 7.4, 8.3, 9.5.1, 9.7,
10.3.2, 10.4, 14.3.2, 15.1.5, 15.2.5
Time Limits
2.1.2, 2.2, 2.4, 3.2.2, 3.10, 3.11, 3.12.5, 3.15.1, 4.2,
5.2, 5.3, 5.4, 6.2.4, 7.3, 7.4, 8.2, 9.2, 9.3.1, 9.3.3,
9.4.1, 9.5, 9.6, 9.7, 9.8, 9.9, 9.10, 11.1.3, 12.2, 13.5,
13.7, 14, 15.1.2, 15.4
Time Limits on Claims
3.7.4, 10.2.8, 13.7, 15.1.2
Title to Work
9.3.2, 9.3.3
Transmission of Data in Digital Form
1.6
UNCOVERING AND CORRECTION OF
WORK
12
Uncovering of Work
12.1
Unforeseen Conditions, Concealed or Unknown
3.7.4, 8.3.1, 10.3
Unit Prices
7.3.3.2, 7.3.4
Use of Documents
1.1.1, 1.5, 2.2.5, 3.12.6, 5.3
Use of Site
3.13, 6.1.1, 6.2.1
Values, Schedule of
9.2, 9.3.1
Waiver of Claims by the Architect
13.4.2
Waiver of Claims by the Contractor
9.10.5, 13.4.2, 15.1.6
Waiver of Claims by the Owner
9.9.3, 9.10.3, 9.10.4, 12.2.2.1, 13.4.2, 14.2.4, 15.1.6
Waiver of Consequential Damages
14.2.4, 15.1.6
Waiver of Liens
9.10.2, 9.10.4
Waivers of Subrogation
6.1.1, 11.3.7
Warranty
3.5, 4.2.9, 9.3.3, 9.8.4, 9.9.1, 9.10.4, 12.2.2, 13.7
Weather Delays
15.1.5.2
Work, Definition of
1.1.3
Written Consent
1.5.2, 3.4.2, 3.7.4, 3.12.8, 3.14.2, 4.1.2, 9.3.2, 9.8.5,
9.9.1, 9.10.2, 9.10.3, 11.4.1, 13.2, 13.4.2, 15.4.4.2
Written Interpretations
4.2.11, 4.2.12

Init.

/

AIA Document A201™ – 2007. Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987, 1997 and 2007 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 08:44:02 on 06/06/2016 under Order No.7898458378_1 which expires on 04/22/2017, and is not for resale.
User Notes:                                                                                                          (2017881158)

9

Complaint, Exh. A

Written Notice
2.3, 2.4, 3.3.1, 3.9, 3.12.9, 3.12.10, 5.2.1, 8.2.2, 9.7, 9.10, 10.2.2, 10.3, 11.1.3, 12.2.2, 12.2.4, 13.3, 14, 15.4.1

Written Orders
1.1.1, 2.3, 3.9, 7, 8.2.2, 12.1, 12.2, 13.5.2, 14.3.1, 15.1.2

Init.

/

AIA Document A201™ – 2007. Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987, 1997 and 2007 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 08:44:02 on 08/06/2016 under Order No.7868456378_1 which expires on 04/22/2017, and is not for resale.
User Notes:                                                                                    (2017881168)

10

# ARTICLE 1   GENERAL PROVISIONS
## § 1.1 BASIC DEFINITIONS
### § 1.1.1 THE CONTRACT DOCUMENTS
The Contract Documents consist of the Agreement between Owner and Contractor (hereinafter the Agreement), Conditions of the Contract (General, Supplementary and other Conditions), Drawings, Specifications, Qualifications and Clarifications, Addenda issued prior to execution of the Contract, other documents listed in the Agreement and Modifications issued in writing after execution of the Contract. A Modification is (1) a written amendment to the Contract signed by both parties, (2) a Change Order, (3) a Construction Change Directive or (4) a written order for a minor change in the Work issued by the Architect. Unless specifically enumerated in the Agreement, the Contract Documents do not include other documents such as bidding requirements (advertisement or invitation to bid, Instructions to Bidders, sample forms, the Contractor's bid or portions of Addenda relating to bidding requirements.

### § 1.1.2 THE CONTRACT
The Contract Documents form the Contract for Construction. The Contract represents the entire and integrated agreement between the parties hereto and supersedes prior negotiations, representations or agreements, either written or oral. The Contract may be amended or modified only by a written Modification. The Contract Documents shall not be construed to create a contractual relationship of any kind (1) between the Architect and Contractor, (2) between the Owner and a Subcontractor or Sub-subcontractor, (3) between the Owner and Architect or (4) between any persons or entities other than the Owner and Contractor. The Architect shall, however, be entitled to performance and enforcement of obligations under the Contract intended to facilitate performance of the Architect's duties.

### § 1.1.3 THE WORK
The term "Work" means the construction and services required by the Contract Documents, whether completed or partially completed, and includes all other labor, materials, equipment and services provided or to be provided by the Contractor to fulfill the Contractor's obligations. The Work may constitute the whole or a part of the Project. Contractor acknowledges and agrees that the Contract Documents are adequate and sufficient to provide for the commencement of the Work, and include all Work, whether or not shown or described, which reasonably may be inferred to be required or useful for the completion of the Work in accordance with all applicable laws, codes, and professional standards. Contractor also acknowledges that it has included in the Contract Sum sufficient money to compensate Contractor for any impacts or delays encountered during performance of the Work as a result of the activities or lack of activity of other Contractors on the site under separate contract with the Owner, and Contractor warrants that it waives any and all claims against Owner arising from the timeliness of the Work of those contractors, and any coordination between Contractor's work and the work of such contractors.

### § 1.1.4 THE PROJECT
The Project is the total construction of which the Work performed under the Contract Documents may be the whole or a part and which may include construction by the Owner or by separate contractors.

### § 1.1.5 THE DRAWINGS
The Drawings are the graphic and pictorial portions of the Contract Documents showing the design, location and dimensions of the Work, generally including plans, elevations, sections, details, schedules and diagrams.

### § 1.1.6 THE SPECIFICATIONS
The Specifications are that portion of the Contract Documents consisting of the written requirements for materials, equipment, systems, standards and workmanship for the Work, and performance of related services.

### § 1.1.7 INSTRUMENTS OF SERVICE
Instruments of Service are representations, in any medium of expression now known or later developed, of the tangible and intangible creative work performed by the Architect and the Architect's consultants under their respective professional services agreements. Instruments of Service may include, without limitation, studies, surveys, models, sketches, drawings, specifications, and other similar materials.

*(Paragraphs deleted)*

Init.

/

AIA Document A201™ – 2007. Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987, 1997 and 2007 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 08:44:02 on 06/06/2016 under Order No.7908458378_1 which expires on 04/22/2017, and is not for resale.
User Notes:                                                                        (2017881166)

11

**§ 1.2 CORRELATION AND INTENT OF THE CONTRACT DOCUMENTS**

**§ 1.2.1** The intent of the Contract Documents is to include all items necessary for the proper execution and completion of the Work by the Contractor. Contractor acknowledges that it has carefully reviewed the Contract Documents and that they appear to be complete and consistent, and are sufficient to permit Contractor to establish the Contract Sum, the Project Schedule, and to prepare any required shop drawings. The Contract Documents are complementary, and what is required by one shall be as binding as if required by all; performance by the Contractor shall be required only to the extent consistent with the Contract Documents and reasonably inferable from them as being necessary to produce the indicated results.

**§ 1.2.2** Organization of the Specifications into divisions, sections and articles, and arrangement of Drawings shall not control the Contractor in dividing the Work among Subcontractors or in establishing the extent of Work to be performed by any trade.

**§ 1.2.3** Unless otherwise stated in the Contract Documents, words which have well-known technical or construction industry meanings are used in the Contract Documents in accordance with such recognized meanings.

**§ 1.2.4** Conflicts or discrepancies among the Contract Documents shall be resolved in the following order of priority:

   1. AIA A101 (2007) Agreement (as amended);

   2. Amendments and revisions of later date take precedence over those of earlier dates;

   3. The A201 General Conditions, as amended;

   4. Drawings and Specifications; Drawings govern Specifications for quantity and location, and Specifications govern Drawings for quality and performance. In the event of ambiguity in quantity or quality, the greater quantity and the better quality shall govern; and

   5. Figure dimensions govern scale dimensions and large scale Drawings govern small scale Drawings.

**§ 1.3 CAPITALIZATION**

**§ 1.3.1** Terms capitalized in these General Conditions include those which are (1) specifically defined, (2) the titles of numbered articles or (3) the titles of other documents published by the American Institute of Architects.

**§ 1.4 INTERPRETATION**

**§ 1.4.1** In the interest of brevity the Contract Documents frequently omit modifying words such as "all" and "any" and articles such as "the" and "an," but the fact that a modifier or an article is absent from one statement and appears in another is not intended to affect the interpretation of either statement.

**§ 1.5 EXECUTION OF CONTRACT DOCUMENTS**

**§ 1.5.1** The Architect and the Architect's consultants shall be deemed the authors and owners of their respective Instruments of Service, including the Drawings and Specifications, and will retain all common law, statutory and other reserved rights, including copyrights. The Contractor, Subcontractors, Sub-subcontractors, and material or equipment suppliers shall not own or claim a copyright in the Instruments of Service. Submittal or distribution to meet official regulatory requirements or for other purposes in connection with this Project is not to be construed as publication in derogation of the Architect's or Architect's consultants' reserved rights.

**§ 1.5.2** The Contractor warrants and represents that, prior to the commencement of the Work, it shall: make an inspection of the site, including but not limited to the physical condition of the site, all structures, all conditions and structures on adjoining properties, the nature and location of the general area, including weather and labor availability; make an inspection of site utilities and utility connection and only subsoil reports available from Owner. The Contractor shall report any discovered conditions to the Owner. The Owner shall have no responsibility or liability for the physical condition or safety of the Project site or any improvements located on the Project site. The Contractor shall be solely responsible for providing safe conditions for the performance of the Work.

Init.

/

AIA Document A201™ – 2007. Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987, 1997 and 2007 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 09:44:30 on 06/07/2016 under Order No.7698458378_1 which expires on 04/22/2017, and is not for resale.
User Notes:                                                                              (1298822263)

12

**§ 1.6 OWNERSHIP AND USE OF DRAWINGS, SPECIFICATIONS AND OTHER INSTRUMENTS OF SERVICE**
**§ 1.6.1** All Drawings, Specifications and other documents prepared by the Architect are and shall remain the property of the Owner, and Owner shall retain all common law, statutory and other reserved rights with respect thereto. They shall not be used on any other project without the prior written consent of the Owner, and Contractor shall take such action as may be necessary to prevent their use on any other project or for additions to the Project outside the scope of the Work by any Subcontractor, Sub-subcontractor or material or equipment supplier. The Contractor, Subcontractor, Sub-subcontractors and material and equipment suppliers are granted a limited license to use and reproduce applicable portions of the Drawings, Specifications and other documents prepared by the Architect appropriate to and for use in the execution of their Work under the Contract Documents. All copies made under this license shall bear the statutory copyright notice, if any, shown on the Drawings, Specifications and other documents prepared by the Architect. Submittals or distributions necessary to meet official regulatory requirements or for other purposes relating to completion of the Project are not to be construed as a publication in derogation of the Owner's copyright or other reserved rights.

**ARTICLE 2   OWNER**
**§ 2.1 GENERAL**
**§ 2.1.1** The Owner is the person or entity identified as such in the Agreement and is referred to throughout the Contract Documents as if singular in number. The Owner shall designate in writing a representative who shall have express authority to bind the Owner with respect to all matters requiring the Owner's approval or authorization. Except as otherwise provided in Section 4.2.1, the Architect does not have such authority. The term "Owner" means the Owner or the Owner's authorized representative.

**§ 2.1.2** The Owner shall furnish to the Contractor within fifteen days after receipt of a written request, information necessary and relevant for the Contractor to evaluate, give notice of or enforce mechanic's lien rights. Such information shall include a correct statement of the record legal title to the property on which the Project is located, usually referred to as the site, and the Owner's interest therein.

**§ 2.2 INFORMATION AND SERVICES REQUIRED OF THE OWNER**
**§ 2.2.1** The Owner shall, at the written request of the Contractor, prior to commencement of the Work, furnish to the Contractor reasonable evidence that financial arrangements have been made to fulfill the Owner's obligations under the Contract. Furnishing of such evidence shall be a condition precedent to commencement or continuation of the Work. After such evidence has been furnished, the Owner shall not materially vary such financial arrangements without prior notice to the Contractor.

**§ 2.2.2** Except for permits and fees, including those required under Section 3.7.1, which are the responsibility of the Contractor under the Contract Documents, the Owner shall secure and pay for necessary approvals, easements, assessments and charges required for construction, use or occupancy of permanent structures or for permanent changes in existing facilities.

**§ 2.2.3** The Owner shall furnish surveys describing physical characteristics, legal limitations and utility locations for the site of the Project, and a legal description of the site. The Contractor shall be entitled to rely on the accuracy of information furnished by the Owner but shall exercise proper precautions relating to the safe performance of the Work.

**§ 2.2.4** Upon receipt of a written request from the Contractor, information or services required of the Owner by the Contract Documents shall be furnished by the Owner with reasonable promptness. Any other information or services relevant to the Contractor's performance of the Work under the Owner's control shall be furnished by the Owner after receipt from the Contractor of a written request for such information or services.

**§ 2.2.5** Unless otherwise provided in the Contract Documents, the Contractor will be furnished, free of charge, such copies of Drawings and Project Manuals as are reasonably necessary for execution of the Work.

**§ 2.3 OWNER'S RIGHT TO STOP THE WORK**
**§ 2.3.1** If the Contractor fails to correct Work which is not in accordance with the requirements of the Contract Documents as required by Section 12.2 or persistently fails to carry out Work in accordance with the Contract Documents, the Owner may issue a written order to the Contractor to stop the Work, or any portion thereof, until the

Init.

/

AIA Document A201™ – 2007. Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987, 1997 and 2007 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 08:44:02 on 08/06/2015 under Order No.7898458378_1 which expires on 04/22/2017, and is not for resale.
User Notes:                                                                (2017881168)

cause for such order has been eliminated; however, the right of the Owner to stop the Work shall not give rise to a duty on the part of the Owner to exercise this right for the benefit of the Contractor or any other person or entity. This right shall be in addition to, and not in restriction of, the Owner's rights under Subparagraph 12.2 and Article 14.

§ 2.3.2  If suspension of the Work is warranted by reason of unforeseen conditions that could not be anticipated by a reasonable contractor which may adversely affect the quality of the work if such Work were continued, the Owner may suspend the Work by written notice to the Contractor.  In such event, the Contract Time shall be adjusted accordingly, and the Contract Sum shall be adjusted to the extent, if any, that additional costs are incurred by reason of such suspension.  If the Contractor, in its reasonable judgment, believes that a suspension is warranted by reason of unforeseen circumstances which may adversely affect the quality of the Work if the Work were continued, the Contractor shall immediately notify the Owner and the Architect of such belief and describe with particularity the reasons therefore.

§ 2.4 OWNER'S RIGHT TO CARRY OUT THE WORK
§ 2.4.1 If the Contractor defaults or neglects to carry out the Work in accordance with the Contract Documents and fails within a seven (7) day period after receipt of written notice from the Owner to commence and continue correction of such default or neglect with diligence and promptness, the Owner may, without waiving its rights against Contractor's Performance Bond, and without prejudice to other remedies, correct such deficiencies or commence and continue to carry out the Work. If payments then or thereafter due the Contractor are not sufficient to cover such amounts, the Contractor shall pay the difference to the Owner.

ARTICLE 3   CONTRACTOR
§ 3.1 GENERAL
§ 3.1.1 The Contractor is the person or entity identified as such in the Agreement and is referred to throughout the Contract Documents as if singular in number. The term "Contractor" means the Contractor or the Contractor's authorized representative.

§ 3.1.2 The Contractor shall perform the Work in accordance with the Contract Documents.

§ 3.1.3 The Contractor shall not be relieved of obligations to perform the Work in accordance with the Contract Documents either by activities or duties of the Architect in the Architect's administration of the Contract, or by tests, inspections or approvals required or performed by persons other than the Contractor.

§ 3.1.4  Prior to commencing Work, Contractor shall designate in writing an individual for the project who shall have full authority to bind Contractor on all matters arising out of or relating to this Agreement.

§ 3.2 REVIEW OF CONTRACT DOCUMENTS AND FIELD CONDITIONS BY CONTRACTOR
§ 3.2.1 Since the Contract Documents are complementary,  before starting each portion of the Work, the Contractor shall carefully study and compare the various Drawings and other Contract Documents relative to that portion of the Work, as well as the information furnished by the Owner pursuant to Section 2.2.3, shall take field measurements of any existing conditions related to that portion of the Work and shall observe any conditions at the site affecting it. These obligations are for the purpose of facilitating construction by the Contractor and are not for the purpose of discovering errors, omissions, or inconsistencies in the Contract Documents; however, any errors, inconsistencies or omissions discovered by the Contractor shall be reported promptly to the Architect and the Owner as a request for information in such form as the Architect and the Owner may require.
§ 3.2.2 Any design errors or omissions noted by the Contractor during this review shall be reported promptly to the Architect, but, except as provided in Subparagraph 3.7.3,  it is recognized that the Contractor's review is made in the Contractor's capacity as a contractor and not as a licensed design professional unless otherwise specifically provided in the Contract Documents. The Contractor is not required to ascertain that the Contract Documents are in accordance with applicable laws, statutes, ordinances, building codes, and rules and regulations, but any nonconformity discovered by or made known to the Contractor shall be reported promptly to the Architect.

§ 3.2.3 If the Contractor believes that additional cost or time is involved because of clarifications or instructions issued by the Architect in response to the Contractor's notices or requests for information pursuant to Sections 3.2.1 and 3.2.2, the Contractor shall make Claims as provided in Sections 4.3.6 and 4.3.7.  The Contractor shall not be liable to the Owner or Architect for damages resulting from errors, inconsistencies or omissions in the Contract

Init.

/

AIA Document A201™ – 2007. Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987, 1997 and 2007 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 08:44:02 on 06/08/2016 under Order No.7896458378_1 which expires on 04/22/2017, and is not for resale.
User Notes:                                                                                          (2017881168)

Complaint, Exh. A

Documents or for differences between field measurements or conditions and the Contract Documents unless the Contractor recognized such error, inconsistency, omission or difference and knowingly failed to report it to the Architect.

§ 3.2.4 Notwithstanding anything in Subparagraph 3.2.1 to the contrary, if Contractor discovers through the use of reasonable care and diligence, errors, inconsistencies, or omissions in the Contract Documents yet proceeds without written notice to the Architect and Owner, Contractor shall bear all costs for the damage resulting from any such errors, inconsistencies or omissions and to the extent Owner is required to incur costs or expenses to correct such issues, Contractor shall pay Owner such cost or expenses upon Owner's request. Contractor shall promptly notify the Architect and Owner of any ambiguity, inconsistency or error which it may discover upon examination of the Contract Documents or of the site and local conditions.

§ 3.2.5  Notwithstanding anything herein to the contrary, the Contractor shall be responsible for the satisfactory and complete execution of the Work as described in the Contract Documents. The Contractor represents that he has carefully examined all Drawings and Specifications for the Work to be performed; and has notified Owner of any defects or omissions he has noted or observed, and that he has the experience and necessary personnel, equipment, and material at his disposal to complete the Work in a good workmanlike manner in accordance with the Contract Documents without any material defects in the work.

### § 3.3 SUPERVISION AND CONSTRUCTION PROCEDURES

§ 3.3.1 The Contractor shall supervise and direct the Work, using the Contractor's reasonable skill and attention. The Contractor shall be solely responsible for and have control over construction means, methods, techniques, sequences and procedures and for coordinating all portions of the Work under the Contract, unless the Contract Documents give other specific instructions concerning these matters. If the Contract Documents give specific instructions concerning construction means, methods, techniques, sequences or procedures, the Contractor shall evaluate the jobsite safety thereof and, except as stated below, shall be fully and solely responsible for the jobsite safety of such means, methods, techniques, sequences or procedures. If the Contractor determines that such means, methods, techniques, sequences or procedures may not be safe, the Contractor shall give timely written notice to the Owner and Architect and shall not proceed with that portion of the Work without further written instructions from the Architect. If the Contractor is then instructed to proceed with the required means, methods, techniques, sequences or procedures without acceptance of changes proposed by the Contractor, the Owner shall be solely responsible for any resulting loss or damage.

§ 3.3.2 The Contractor shall be responsible to the Owner for acts and omissions of the Contractor's employees, Subcontractors and their agents and employees, and other persons or entities performing portions of the Work for or on behalf of the Contractor or any of its Subcontractors.

§ 3.3.3 The Contractor shall be responsible for inspection of portions of Work already performed to determine that such portions are in proper condition to receive subsequent Work.

§ 3.3.4  If any of the Work is required to be inspected or approved by any public authority, the Contractor shall cause such inspection or approval to be performed.

### § 3.4 LABOR AND MATERIALS

§ 3.4.1 Unless otherwise provided in the Contract Documents, the Contractor shall provide and pay for labor, materials, equipment, tools, construction equipment and machinery, water, heat, utilities, transportation, and other facilities and services necessary for proper execution and completion of the Work, whether temporary or permanent and whether or not incorporated or to be incorporated in the Work.

§ 3.4.2 The Contractor may make substitutions only with the consent of the Owner, after evaluation by the Architect and Owner and in accordance with a Change Order.

§ 3.4.3 The Contractor shall enforce strict discipline and good order among the Contractor's employees and other persons carrying out the Contract. The Contractor shall not permit employment of unfit persons or persons not skilled in tasks assigned to them.

§ 3.4.4  The Contractor acknowledges that it is the Contractor's responsibility to hire all personnel for the proper

Init.

/

AIA Document A201™ – 2007. Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987, 1997 and 2007 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 08:44:02 on 06/06/2016 under Order No.7896456378_1 which expires on 04/22/2017, and is not for resale.
User Notes:                                                                                                                           (2017881168)

Complaint, Exh. A

and diligent prosecution of the Work and the Contractor shall use its best efforts to maintain labor peace for the duration of the Project.  In the event of a labor dispute, the Contractor shall not be entitled to any increase in the Contract Sum or Time.

## § 3.5 WARRANTY
§ 3.5.1 The Contractor warrants that it will furnish all of the materials and labor necessary to complete the Project and all materials and equipment furnished by Contractor will be new and all Work performed and all materials and equipment furnished by Contractor will be of good quality, free from faults and defects and will conform to the Contract Documents in all respects, including, but no limited to kind, quality of materials and workmanship specified.  The Contractor shall obtain and deliver to Owner such standard manufacturers' warranties as each equipment manufacturer may furnish with any equipment.  The Contractor does not warrant or guarantee the design or sufficiency of the design of the improvements or that the materials and equipment furnished, assuming that they are the materials and equipment specified, will accomplish the purpose intended.

All written warranties shall be addressed and delivered to the Owner as a condition precedent to Contractor's entitlement to Final Payment.  At that time, Contractor shall also deliver to Owner a written "Contractor Warranty" representing to Owner that all labor, materials and/or services, all other components of the work shall be free of defect from the time of Substantial Completion for the Work and shall extend for one (1) year from the date of Final Completion and as warranties and guarantees on work, labor, equipment and materials, together with any other warranties or guarantees required by the Contract Documents.    Nothing in this Contract shall operate to waive, release or compromise the statutory implied warranties of the Contractor for the Project, its subcontractors and suppliers to the Owner.

The Contractor will indemnify and hold the Owner harmless and defend Owner from and against any loss, damage or expense incurred as a result of a breach of any warranties.    All warranties referenced in the Contract Documents shall survive the making of Final Payment to the Contractor or any earlier termination of the Contract.  These warranties shall not operate to extinguish or compromise any claim for latent defects or other items of defective work which could not be discovered by Owner upon reasonable inspection; in such case the limitations period for latent defects shall run from the date of discovery in accordance with Florida law.

Contractor warrants that it shall, within forty-eight (48) hours of notice (verbal or written), diligently and continuously pursue any necessary warranty repairs or replacements of defects until corrected and will restore the Work to the condition required by the Contract Documents.  Contractor shall restore both surface, subsurface and both collateral and primary conditions disturbed the performance by Contractor during warranty work to their prior pre-warranty work condition.

The Contractor's warranty obligations as specified herein shall apply to encompass and provide coverage for claims associated with water intrusion, water infiltration through the roof, and/or mold and mildew resulting therefrom.  However, this provision shall not include warranty coverage for acts of third parties whom the Contractor has not employed, hired, retained or supervised.  In addition to the foregoing stipulations, the Contractor shall comply with all other warranties referenced to in any portions of the Contract Documents or otherwise provided by law or in equity, and where warranties overlap, the more stringent requirements shall govern.

## § 3.6 TAXES
§ 3.6.1 The Contractor shall pay sales, consumer, use and similar taxes for the Work provided by the Contractor which are legally enacted when bids are received or negotiations concluded, whether or not yet effective or merely scheduled to go into effect.

## § 3.7 PERMITS, FEES AND NOTICES
§ 3.7.1 Unless otherwise provided in the Contract Documents, the Contractor shall assist the Owner in the procurement of all permits, licenses, and certifications necessary for the proper execution and completion of the Work.  The Owner shall reimburse the Contractor for all costs incurred to procure the permits, licenses, and certifications, which are customarily secured after execution of the Contract and which are legally required when bids are received or negotiations concluded.  The Contractor shall assist the Owner in the procure all certificates of inspection, use, occupancy, permits and licenses, pay all charges and fees and give all notice necessary and incidental to the due and lawful prosecution of the Work.  Certificates of inspection, use and occupancy shall be

Init.

/

AIA Document A201™ – 2007. Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987, 1997 and 2007 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 08:44:02 on 06/06/2016 under Order No.7899458378_1 which expires on 04/22/2017, and is not for resale.
User Notes:                                                                                                          (2017881168)

Complaint, Exh. A

delivered to the Owner upon Substantial Completion of the Project in accordance with the approved schedule for the Work. The costs of such procurement, payment and delivery are included within the Contract Sum.

§ 3.7.2 The Contractor shall comply with and give notices required by laws, ordinances, rules, regulations and lawful orders of public authorities applicable to performance of the Work.

§ 3.7.3 If the Contractor performs Work knowing it to be contrary to applicable laws, statutes, ordinances, codes, rules and regulations, or lawful orders of public authorities, the Contractor shall assume appropriate responsibility for such Work and shall bear the costs attributable to correction.

§ 3.7.4 Concealed or Unknown Conditions. If the Contractor encounters conditions at the site that are (1) subsurface or otherwise concealed physical conditions that differ materially from those indicated in the Contract Documents or (2) unknown physical conditions of an unusual nature, that differ materially from those ordinarily found to exist and generally recognized as inherent in construction activities of the character provided for in the Contract Documents, the Contractor shall promptly provide notice to the Owner and the Architect before conditions are disturbed and in no event later than ten (10) days after first observance of the conditions. The Architect will promptly investigate such conditions and, if the Architect determines that they differ materially and cause an increase or decrease in the Contractor's cost of, or time required for, performance of any part of the Work, will recommend an equitable adjustment in the Contract Sum or Contract Time, or both. If the Architect determines that the conditions at the site are not materially different from those indicated in the Contract Documents and that no change in the terms of the Contract is justified, the Architect shall promptly notify the Owner and Contractor in writing, stating the reasons. If either party disputes the Architect's determination or recommendation, that party may proceed as provided in Article 4.3.

*(Paragraph deleted)*
### § 3.8 ALLOWANCES
§ 3.8.1 The Contractor shall include in the Contract Sum all allowances stated in the Contract Documents. Items covered by allowances shall be supplied for such amounts and by such persons or entities as the Owner may direct, but the Contractor shall not be required to employ persons or entities to whom the Contractor has reasonable objection.

§ 3.8.2 Unless otherwise provided in the Contract Documents:
   .1    Allowances shall cover the cost to the Contractor of materials and equipment delivered at the site and all required taxes, less applicable trade discounts;
   .2    Contractor's costs for unloading and handling at the site, labor, installation costs, overhead, profit and other expenses contemplated for stated allowance amounts shall include taxes, transportation, installation, labor, materials, profit and overhead; and
   .3    Whenever costs are more than or less than allowances, the Contract Sum shall be adjusted accordingly by Change Order. The amount of the Change Order shall reflect (1) the difference between actual costs and the allowances under Section 3.8.2.1 and (2) changes in Contractor's costs under Section 3.8.2.2.

§ 3.8.3 Materials and equipment under an allowance shall be selected by the Owner in sufficient time to avoid delay in the Work.

### § 3.9 SUPERINTENDENT
§ 3.9.1 The Contractor shall employ a competent superintendent and necessary assistants who shall be in attendance at the Project site during performance of the Work. The superintendent shall represent the Contractor, and communications given to the superintendent shall be as binding as if given to the Contractor. Important communications shall be confirmed in writing. Other communications shall be similarly confirmed on written request in each case. The superintendent shall be reasonably satisfactory to the Owner in all respects, and Owner shall have the right for cause, require Contractor to dismiss from the Project any superintendent whose performance is not reasonable satisfactory to Owner, and to replace such superintendent with a superintendent reasonably satisfactory to Owner. The Contractor shall not replace the superintendent without the consent of the Owner except with another superintendent reasonably satisfactory to the Owner in all respects.

Init.

/

AIA Document A201™ – 2007. Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987, 1997 and 2007 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 08:44:02 on 06/06/2016 under Order No.7898458378_1 which expires on 04/22/2017, and is not for resale.
User Notes:                                                                                                                (2017881168)

Complaint, Exh. A

§ 3.9.2 The list of all supervisory personnel, including the Project manager and superintendent, that the Contractor intends to use on the Project and a chain-of-command organizational chart shall be submitted to the Owner for approval at the start of the Work. The Contractor shall not engage supervisory personnel or utilize an organization and chain-of-command other than as approved by Owner in writing, and shall not change the Project Manager and superintendent or form of organization without the written approval of the Owner.

§ 3.9.3  The Contractor shall conduct at the site of the Project regular progress meetings to be attended by the Contractor, Architect, major Subcontractors and any other Subcontractors, material suppliers or persons required by the Owner or Architect from time to time during the Project. Unless the Owner directs otherwise, the Contractor shall take minutes of the progress meetings and shall provide copies to all attendees within seven (7) days after the date of the meeting.

§ 3.10 CONTRACTOR'S CONSTRUCTION SCHEDULES
§ 3.10.1  The Contractor, prior to commencement of the Construction Phase, shall prepare and submit to the Owner and to the Architect, the Contractor's construction schedule (hereinafter the "Original Construction Schedule") for the Work. The Original Construction Schedule shall be based on a time precedence method of scheduling that details the critical path Work items on the schedule and shall be of such form and content as is required by the Owner. The Original Construction Schedule will be prepared in sufficient detail to properly reflect the scope and individual work items and will be sub-divided by building area, site or other major component as deemed necessary by the Owner. The Original Construction Schedule shall delineate the proposed progress of the Work and with such reasonable progress in the Work which will result in all of the Work attaining Substantial Completion within the Contract Time. No Progress Payment shall be due and payable to Contractor unless and until the Owner has received the Original Construction Schedule as required in this paragraph. The Contractor may generate and utilize other schedules with the subcontractors (hereinafter the "Trade Schedules"). These Trade Schedules are solely for Contractor's purposes and shall have no bearing on the Original Construction Schedule.

§ 3.10.2  At the time the Contractor submits each Application for Progress Payment, the Contractor shall submit to the Owner and to the Architect a written Project update in narrative form with progress photographs, and a  revised Original Construction Schedule (hereinafter the "Updated Construction Schedule") which indicates future scheduling and performance of the Work sufficient to indicate the manner and time in and at which the Work, if represented to be delayed from the schedule shown on the most recent updated schedule, will be back on schedule and will comport with the Original Construction Schedule. The Updated Construction Schedule shall be of such form and content as is required herein. The Updated Construction Schedule shall incorporate into it all extensions and reductions of the Contract Time which have previously been approved by duly executed Change Orders.

§ 3.10.3  The Contractor shall prepare and submit to the Owner and to the Architect, simultaneous with submission of the Construction Schedule prior to commencement of the Work, a schedule (hereinafter "Original Submittal Schedule") for the submittal of all required Shop Drawings, Product Data and Samples indicating the dates same will be submitted by the Contractor. The Original Submittal Schedule shall be coordinated with the Construction Schedule and allow the Architect adequate time to review submittals. The Contractor shall prepare and keep current, for the Architect's approval, a schedule of submittals (the "Submittal Schedule") tracking the actual receipt and review of all submittals.

§ 3.10.4 The Contractor shall perform the Work in general accordance with the most recent schedules submitted to the Owner and Architect.

§ 3.10.5 The Owner or its representative and the Architect shall review the schedule for completing the Work, but the Contractor shall have the sole and exclusive responsibility for completing the Work according to the schedule. Any proposed revisions to the original Construction Schedule, or subsequent updated Construction Schedule, shall be submitted by the Contractor pursuant to the Change Order procedure set forth in Article 7. The Contractor shall complete each phase of the work in strict conformance with the Construction Schedule, and shall expedite and/or accelerate the Work at its expense if construction falls behind the dates and times set forth in the updated Construction Schedule, unless the date of Substantial Completion has been extended by Change Order prior to the date of the updated Construction Schedule.

Init.

/

AIA Document A201™ – 2007. Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987, 1997 and 2007 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 08:44:02 on 06/06/2016 under Order No.7898458378_1 which expires on 04/22/2017, and is not for resale.
User Notes:                                                                                              (2017881168)

Complaint, Exh. A

## § 3.11 DOCUMENTS AND SAMPLES AT THE SITE

§ 3.11.1 The Contractor shall maintain at the site for the Owner one record copy of the Drawings, Specifications, Addenda, Change Orders and other Modifications, in good order and marked currently to record field changes and selections made during construction, and one record copy of approved Shop Drawings, Product Data, Samples and similar required submittals. These shall be available to the Architect and shall be delivered to the Architect for submittal to the Owner upon completion of the Work, signed by Contractor, certifying that they show complete and exact "as-built" conditions, starting sizes, kind of materials, vital piping, conduit locations and similar matters.

§ 3.11.2 The Contractor shall maintain all approved permit drawings in a manner so as to make them accessible to governmental inspectors and other authorized agencies.  All approved drawings shall be wrapped, marked and delivered to the Owner within 30 days of Final Completion of the Work.

## § 3.12 SHOP DRAWINGS, PRODUCT DATA AND SAMPLES

§ 3.12.1 Shop Drawings are drawings, diagrams, schedules and other data specially prepared for the Work by the Contractor or a Subcontractor, Sub-subcontractor, manufacturer, supplier or distributor to illustrate some portion of the Work.

§ 3.12.2 Product Data are illustrations, standard schedules, performance charts, instructions, brochures, diagrams and other information furnished by the Contractor to illustrate materials or equipment for some portion of the Work.

§ 3.12.3 Samples are physical examples which illustrate materials, equipment or workmanship and establish standards by which the Work will be judged.

§ 3.12.4 Shop Drawings, Product Data, Samples and similar submittals are not Contract Documents. The purpose of their submittal is to demonstrate for those portions of the Work for which submittals are required by the Contract Documents the way by which the Contractor proposes to conform to the information given and the design concept expressed in the Contract Documents. Informational submittals upon which the Architect is not expected to take responsive action may be so identified in the Contract Documents. Submittals which are not required by the Contract Documents may be returned by the Architect without action.

§ 3.12.5 The Contractor shall review for compliance with the Contract Documents, approve and submit to the Architect Shop Drawings, Product Data, Samples and similar submittals required by the Contract Documents with reasonable promptness and in such sequence as to cause no delay in the Work or in the activities of the Owner or of separate contractors.  Submittals which are not marked as reviewed for compliance with the Contract Documents and approved by the Contractor may be returned by the Architect without action.

§ 3.12.6 By approving and submitting Shop Drawings, Product Data, Samples and similar submittals, the Contractor represents that the Contractor has determined and verified materials, field measurements and field construction criteria related thereto, or will do so, and has checked and coordinated the information contained within such submittals with the requirements of the Work and of the Contract Documents.

§ 3.12.7 The Contractor shall perform no portion of the Work for which the Contract Documents require submittal and review of Shop Drawings, Product Data, Samples or similar submittals until the respective submittal has been approved by the Architect.

§ 3.12.8 The Work shall be in accordance with approved submittals except that the Contractor shall not be relieved of responsibility for deviations from requirements of the Contract Documents by the Architect's approval of Shop Drawings, Product Data, Samples or similar submittals unless the Contractor has specifically informed the Architect in writing of such deviation at the time of submittal and (1) the Architect has given written approval to the specific deviation as a minor change in the Work, or (2) a Change Order or Construction Change Directive has been issued authorizing the deviation. The Contractor shall not be relieved of responsibility for errors or omissions in Shop Drawings, Product Data, Samples or similar submittals by the Architect's approval thereof.

§ 3.12.9 The Contractor shall direct specific attention, in writing or on resubmitted Shop Drawings, Product Data, Samples or similar submittals, to revisions other than those requested by the Architect on previous submittals. In the absence of such written notice, the Architect's approval of a resubmission shall not apply to such revisions.

AIA Document A201™ – 2007. Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987, 1997 and 2007 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 09:44:02 on 06/06/2016 under Order No.7898458378_1 which expires on 04/22/2017, and is not for resale.
User Notes:                                                                                                     (2017861168)

Init. / 19

**§ 3.12.10** The Contractor shall not be required to provide professional services which constitute the practice of architecture or engineering unless such services are specifically required by the Contract Documents for a portion of the Work or unless the Contractor needs to provide such services in order to carry out the Contractor's responsibilities for construction means, methods, techniques, sequences and procedures. The Contractor shall not be required to provide professional services in violation of applicable law. If professional design services or certifications by a design professional related to systems, materials or equipment are specifically required of the Contractor by the Contract Documents, the Owner and the Architect will specify all performance and design criteria that such services must satisfy. The Contractor shall cause such services or certifications to be provided by a properly licensed design professional, whose signature and seal shall appear on all drawings, calculations, specifications, certifications, Shop Drawings and other submittals prepared by such professional. Shop Drawings and other submittals related to the Work designed or certified by such professional, if prepared by others, shall bear such professional's written approval when submitted to the Architect. The Owner and the Architect shall be entitled to rely upon the adequacy, accuracy and completeness of the services, certifications or approvals performed by such design professionals, provided the Owner and Architect have specified to the Contractor all performance and design criteria that such services must satisfy. Pursuant to this Section 3.12.10, the Architect will review, approve or take other appropriate action on submittals only for the limited purpose of checking for conformance with information given and the design concept expressed in the Contract Documents. The Contractor shall not be responsible for the adequacy of the performance or design criteria required by the Contract Documents.

### § 3.13 USE OF SITE
**§ 3.13.1** The Contractor shall confine operations at the site to areas permitted by law, ordinances, permits and the Contract Documents and shall not unreasonably encumber the site with materials or equipment, and shall coordinate and not hinder the activities of other contractors at the site.

### § 3.14 CUTTING AND PATCHING
**§ 3.14.1** The Contractor shall be responsible for cutting, fitting or patching required to complete the Work or to make its parts fit together properly.

**§ 3.14.2** The Contractor shall not damage or endanger a portion of the Work or fully or partially completed construction of the Owner or separate contractors by cutting, patching or otherwise altering such construction, or by excavation. The Contractor shall not cut or otherwise alter such construction by the Owner or a separate contractor except with written consent of the Owner and of such separate contractor; such consent shall not be unreasonably withheld. The Contractor shall not unreasonably withhold from the Owner or a separate contractor the Contractor's consent to cutting or otherwise altering the Work.

### § 3.15 CLEANING UP
**§ 3.15.1** The Contractor shall keep the premises and surrounding area free from accumulation of waste materials or rubbish caused by operations under the Contract. At completion of the Work, the Contractor shall remove from and about the Project waste materials, rubbish, the Contractor's tools, construction equipment, machinery and surplus materials. The Contractor shall develop and monitor programs to control dust, dirt, noise, vibration, odor, or any other attributes of the construction process which might adversely affect any use of any property areas adjacent to or in the vicinity of the Project site, in accordance with applicable laws and regulations.

**§ 3.15.2** If the Contractor fails to clean up as provided in the Contract Documents, the Owner may do so and the cost thereof shall be charged to the Contractor after a reasonable written notification period.

### § 3.16 ACCESS TO WORK
**§ 3.16.1** The Contractor shall provide the Owner and Architect access to the Work in preparation and progress wherever located.

### § 3.17 ROYALTIES, PATENTS AND COPYRIGHTS
**§ 3.17.1** The Contractor shall pay all royalties and license fees. The Contractor shall defend suits or claims for infringement of copyrights and patent rights and shall hold the Owner and Architect harmless from loss on account thereof, but shall not be responsible for such defense or loss when a particular design, process or product of a particular manufacturer or manufacturers is required by the Contract Documents or where the copyright violations are contained in Drawings, Specifications or other documents prepared by the Owner or Architect. However, if the

**Init.**

**/**

AIA Document A201™ – 2007. Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987, 1997 and 2007 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 08:44:02 on 08/08/2016 under Order No.7698458378_1 which expires on 04/22/2017, and is not for resale.
User Notes: (2017881166)

Contractor has reason to believe that the required design, process or product is an infringement of a copyright or a patent, the Contractor shall be responsible for such loss unless such information is promptly furnished to the Architect.

§ 3.18 INDEMNIFICATION
§ 3.18.1 The Contractor shall be responsible for initialing, maintaining, and supervising all safety precautions and programs in connection with the Work.   Contractor shall take or shall require its subcontractors to take all reasonable precautions for the safety of, and shall provide all reasonable protection to prevent damages, injury or loss to (1) all employees performing the Work and other persons who may be affect thereby, (2) all the Work and all materials and equipment to be incorporated therein, and (3) other property at the site or adjacent thereto.   Contractor shall provide all notices and persons and property and their protection from damage, injury or loss.

§ 3.18.2 To the fullest extent permitted by law, the Contractor shall defend, indemnify and hold harmless the Owner, its agents and employees from and against all claims, damages, losses and expenses, arising from the performance of the Work.  The provision also applies to any such claim, damages, loss or expense that (1) is attributable to bodily injury, sickness, disease or death, or to injury to or destruction of tangible property including the loss of use resulting therefrom, and (2) is caused in whole or in part by any negligent acts or omissions of the Contractor, any subcontractor, and sub-subcontractor, any material or equipment supplier, or anyone directly or indirectly employed by any of them.  Such obligations shall not be construed to negate, abridge, compromise or otherwise reduce any other rights or obligations of indemnity which would otherwise exist as to any party or person described in this paragraph.  In any and all claims against the Owner, or any of their agents or employees by any employee of the Contractor, any subcontractor, anyone directly or indirectly employed by any of them, or anyone for whose acts any of them may be liable, the indemnification obligation under this paragraph shall not be limited in any way by any limitation on the amount or type of damages, compensation or benefits payable by or for the Contractor or any subcontractor under workers' or workmen's compensation acts, disability benefit acts or other employee benefit acts.  The foregoing indemnity from Contractor shall be applicable to all losses, damages, expenses or claims for damage or injury to any person or property resulting from the negligence, recklessness or intentional wrongful misconduct of Contractor, and persons employed or hired by Contractor relating to the performance of Work as described in this Contract.  This indemnification provision is incorporated by reference into the Contract Documents.  The indemnification as provided in this paragraph shall be subject to a monetary limitation of the combined amount of the total of the required insurance liability limits under this contract, or Five Million Dollars ($5,000,000.00), whichever is greater, and which the Owner and Contractor both acknowledge that this amount bears a reasonable commercial relationship to this Contract.  The Contractor shall promptly remedy all damage or loss to any property caused by the act or omission by the Contractor, any subcontractor, and sub-subcontractor, or anyone directly or indirectly employed by any of them, or by anyone for whose acts any of them may be liable.  This indemnification provision shall only be operable to apply to these acts and omissions of the Contractor, it subcontractors, suppliers and consultants that perform labor or provide materials or services relative to this Work.  The foregoing obligations of the Contractor are in addition to its other obligations under this Contract.  This provision shall survive the termination or expiration of this Contract.

§ 3.18.3 In claims against any person or entity indemnified under this Section 3.18 by an employee of the Contractor, a Subcontractor, anyone directly or indirectly employed by them or anyone for whose acts they may be liable, the indemnification obligation under Section 3.18.2 shall not be limited by a limitation on amount or type of damages, compensation or benefits payable by or for the Contractor or a Subcontractor under workers' compensation acts, disability benefit acts or other employee benefit acts.

§ 3.18.4 If any claim of lien or stop-notice or any other demand for payment or security therefore, including claims or demands upon performance and payment bond sureties for this Contract, is made or filed with the Owner or the Project by any person claiming that Contractor or any Subcontractor or supplier or any other person claiming under any of them has failed to perform its contractual obligations or to make payment for any labor, services, trust fund contribution, materials, equipment, taxes or other item furnished or obligation uncured for, or in connection with the Work, or if at any time there shall be evidence of such non performance or non payment of any claim or lien or stop-notice or other demand for which, if established, the Owner or the Project might become liable, then the Owner shall have the right to retain from any payment then due or thereafter to become due under the Contract or to be reimbursed by the Contractor for an amount sufficient to satisfy, discharge and defend against any such claim or lien or stop-notice or other demand, or any action or proceeding thereon which may be brought to judgment or award.

**Init.**

**/**

AIA Document A201™ – 2007. Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987, 1997 and 2007 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 08:44:02 on 06/06/2016 under Order No.7896458378_1 which expires on 04/22/2017, and is not for resale.
User Notes:                                                                                                                    (2017851188)

Complaint, Exh. A

§3.18.5  The Contractor is responsible for all construction personnel and traffic routing logistics required in the performance of the Work. The Contractor will provide watchmen, barricades, barrels and any other means necessary to control traffic in order to protect the Work and safety of personnel and property.  Contractor acknowledges that portions of the Project will be occupied as buildings are completed and turned over to Owner.  Owner and its residents will have access to access roads, parking areas and completed buildings at all times following completion of the respective building.

## ARTICLE 4    ADMINISTRATION OF THE CONTRACT
## § 4.1 ARCHITECT
§ 4.1.1  The Architect is the person lawfully licensed to practice architecture or any entity lawfully practicing architecture identified as such in the Agreement and is referred to throughout the Contract Documents as if singular in number. architects, or such successor Architect as the Owner may appoint by written notice to the Contractor from time to time.

The term "Architect" means the Architect or the Architect's authorized representative.

§ 4.1.2 Duties, responsibilities and limitations of authority of the Architect as set forth in the Contract Documents shall not be restricted, modified or extended without written consent of the Owner, Contractor and Architect. Consent shall not be unreasonably withheld.  The Architect shall reduce to writing via revisions to its drawings and specifications all changes and modifications in the Work, including substitutions, value engineering changes and adjustments, before the Contractor will be deemed to be required to make such changes in the Work.  Additionally, the Architect shall assist with all efforts being undertaken to obtain certificates and approvals of cognizant authorities including the preparation of Conformance Drawings.

*(Paragraph deleted)*
## § 4.2 ARCHITECT'S ADMINISTRATION OF THE CONTRACT
§ 4.2.1 The Architect will provide administration of the Contract as described in the Contract Documents,  and may be the Owner's representative (1) during construction, (2) until final payment is due and (3) with the Owner's concurrence, from time to time during the one-year period for correction of Work described in Section 12.2. The Architect will have authority to act on behalf of the Owner only to the extent provided in the Contract Documents, unless otherwise modified in writing in accordance with other provisions of the Contract.  The structural engineer to be designated by the Architect may perform certain functions that would otherwise be performed by Architect.

§ 4.2.2 The Architect, as a representative of the Owner, will visit the site at intervals appropriate to the stage of the Contractor's operations (1) to become generally familiar with and to keep the Owner informed about the progress and quality of the portion of the Work completed, (2) to endeavor to guard the Owner against defects and deficiencies in the Work, and (3) to determine in general if the Work is being performed in a manner indicating that the Work, when fully completed, will be in accordance with the Contract Documents. However, the Architect will not be required to make exhaustive or continuous on-site inspections to check the quality or quantity of the Work. The Architect will neither have control over or charge of, nor be responsible for, the construction means, methods, techniques, sequences or procedures, or for the safety precautions and programs in connection with the Work, since these are solely the Contractor's rights and responsibilities under the Contract Documents, except as provided in Section 3.3.1.  Further, the Architect shall not be empowered to order changes in the Work unless the Owner has expressly agreed to the change in writing.

§ 4.2.3 The Architect will not be responsible for the Contractor's failure to perform the Work in accordance with the requirements of the Contract Documents. The Architect will not have control over or charge of and will not be responsible for acts or omissions of the Contractor, Subcontractors, or their agents or employees, or any other persons or entities performing portions of the Work.

**Init.**

**/**

AIA Document A201™ – 2007. Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987, 1997 and 2007 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 08:44:02 on 06/08/2016 under Order No.7898458378_1 which expires on 04/22/2017, and is not for resale.
User Notes:                                                                                    (2017861168)

**22**

§ 4.2.4 Communications Facilitating Contract Administration.  Except as otherwise provided in the Contract Documents, the Owner and Contractor shall endeavor to communicate with each other through the Architect about matters arising out of or relating to the Contract. The Contractor shall provide Owner with a copy of all correspondence it sends to Architect.   Communications by and with the Architect's consultants shall be through the Architect. Communications by and with Subcontractors and material suppliers shall be through the Contractor. Communications by and with separate contractors shall be through the Owner.

§ 4.2.5 Based on the Architect's evaluations of the Contractor's Applications for Payment, the Architect will review and certify the amounts due the Contractor and will issue Certificates for Payment in such amounts.

§ 4.2.6 The Architect will not have authority to reject Work that does not conform to the Contract Documents without the Owner's Agreement. Whenever the Architect considers it necessary or advisable, the Architect will have authority to require inspection or testing of the Work in accordance with Sections 13.5.2 and 13.5.3, whether or not such Work is fabricated, installed or completed. However, neither this authority of the Architect nor a decision made in good faith either to exercise or not to exercise such authority shall give rise to a duty or responsibility of the Architect to the Contractor, Subcontractors, material and equipment suppliers, their agents or employees, or other persons or entities performing portions of the Work.

§ 4.2.7 The Architect will review and approve or take other appropriate action upon the Contractor's submittals such as Shop Drawings, Product Data and Samples, but only for the limited purpose of checking for conformance with information given and the design concept expressed in the Contract Documents. The Architect's action will be taken with such reasonable promptness as to cause no delay in the Work or in the activities of the Owner, Contractor or separate contractors, while allowing sufficient time in the Architect's professional judgment to permit adequate review. Review of such submittals is not conducted for the purpose of determining the accuracy and completeness of other details such as dimensions and quantities, or for substantiating instructions for installation or performance of equipment or systems, all of which remain the responsibility of the Contractor as required by the Contract Documents. The Architect's review of the Contractor's submittals shall not relieve the Contractor of the obligations under Sections 3.3, 3.5 and 3.12. The Architect's review shall not constitute approval of safety precautions or, unless otherwise specifically stated by the Architect, of any construction means, methods, techniques, sequences or procedures. The Architect's approval of a specific item shall not indicate approval of an assembly of which the item is a component.

§ 4.2.8 The Architect may prepare Change Orders and Construction Change Directives for the Owner's signature, but the Architect cannot order changes in the Work without the Owner's written agreement with the proposed document.

§ 4.2.9 The Architect will conduct inspections to determine the date or dates of Substantial Completion and the date of final completion, will receive and forward to the Owner, for the Owner's review and records, written warranties and related documents required by the Contract and assembled by the Contractor, and will issue a final Certificate for Payment upon compliance with the requirements of the Contract Documents.

§ 4.2.10 If the Owner and Architect agree, the Architect will provide one or more project representatives to assist in carrying out the Architect's responsibilities at the site. The duties, responsibilities and limitations of authority of such project representatives shall be as set forth in an exhibit to be incorporated in the Contract Documents.

§ 4.2.11 The Architect will interpret and decide matters concerning performance under and requirements of, the Contract Documents on written request of either the Owner or Contractor. The Architect's response to such requests will be made in writing within any time limits agreed upon or otherwise with reasonable promptness. If no agreement is made concerning the time within which interpretations required of the Architect shall be furnished in compliance with this Section 4.2, then delay shall not be recognized on account of failure by the Architect to furnish such interpretations until 15 days after written request is made for them.

§ 4.2.12 Interpretations and decisions of the Architect will be consistent with the intent of and reasonably inferable from the Contract Documents and will be in writing or in the form of drawings. When making such interpretations and initial decisions, the Architect will endeavor to secure faithful performance by both Owner and Contractor, will not show partiality to either and will not be liable for results of interpretations or decisions so rendered in good faith.

AIA Document A201™ – 2007. Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987, 1997 and 2007 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 08:44:02 on 06/06/2016 under Order No.7898468378_1 which expires on 04/22/2017, and is not for resale.
User Notes:                                                                                                    (2017881188)

Init.

/

23

## § 4.3 CLAIMS AND DISPUTES

§ 4.3.1 Definition.  A Claim is a demand or assertion by one of the parties seeking, as a matter of right, adjustment or interpretation of Contract terms, payment of money, extension of time or other relief with respect to the terms of the Contract. The term "Claim" also includes other disputes and matters in question between the Owner and Contractor arising out of or relating to the Contract on only those disputes which arose prior to the date final payment is due. Claims must be initiated by written notice. The responsibility to substantiate Claims shall rest with the party making the Claim.

§ 4.3.2 Time Limits on Claims. Claims by either party must be initiated within 21 days after occurrence of the event giving rise to such Claim or within 21 days after the claimant first recognizes the condition giving rise to the Claim, whichever is later. Claims must be initiated by written notice to the Architect and the other party.  Any claim(s) not initiated within the time limits set forth herein are waived.

*(Paragraph deleted)*
§ 4.3.3 Continuing Contract Performance. Pending final resolution of a Claim except as otherwise agreed in writing or as provided in Section 9.7.1 and Article 14, the Contractor shall proceed diligently with performance of the Contract and the Owner shall continue to make payments in accordance with the Contract Documents.

*(Paragraph deleted)*
§ 4.3.4 Claims for Concealed or Unknown Conditions. If conditions are encountered at the site which are (1) subsurface or otherwise concealed physical conditions which differ materially from those indicated in the Contract Documents or (2) unknown physical conditions of an unusual nature, which differ materially from those ordinarily found to exist and generally recognized as inherent in construction activities of the character provided for in the Contract Documents, then notice by the observing party shall be given to the other party promptly before conditions are disturbed and in no event later than ten (10) days after first observance of the conditions. The Architect will promptly investigate such conditions and, if they differ materially and cause an increase or decrease in the Contractor's cost of, or time required for, performance of any part of the Work, will recommend an equitable adjustment in the Contract Sum or Contract Time, or both. If the Architect determines that the conditions at the site are not materially different from those indicated in the Contract Documents and that no change in the terms of the Contract is justified, the Architect shall so notify the Owner and Contractor in writing, stating the reasons. Claims by either party in opposition to such determination must be made within 21 days after the Architect has given notice of the decision. If the conditions encountered are materially different, the Contract Sum and Contract Time shall be equitably adjusted, but if the Owner and Contractor cannot agree on an adjustment in the Contract Sum or Contract Time, the adjustment shall be referred to the Architect for initial determination, subject to further proceedings pursuant to Section 4.4.

§ 4.3.5 Claims for Additional Cost.   If the Contractor wishes to make Claim for an increase in the Contract Sum, written notice as provided herein shall be given before proceeding to execute the Work. Prior notice is not required for Claims relating to an emergency endangering life or property arising under Section 10.6.

§ 4.3.5.1  Notwithstanding anything to the contrary contained in the Contract Documents, no change in the Work, whether by way of alteration or addition to the Work, or otherwise, shall be the basis for an addition to the Contract Sum or shall result in a change to the Contract Time unless and until such alteration or addition has been authorized by a Change Order or Construction Change Directive executed and issued in accordance with and in strict compliance with the requirements of the Contract Documents.   Accordingly, no course of conduct or dealings between the parties, nor express nor implied acceptance of alterations nor additions to the Work, and no claim that the Owner has been unjustly enriched by any alteration or addition to the Work, whether or not there is in fact such unjust enrichment, shall be the basis for any claim to an increase in the Contract Sum or change in the Contract Time.

§ 4.3.6 If the Contractor believes additional cost is involved for reasons including but not limited to (1) a written interpretation from the Architect, (2) an order by the Owner to stop the Work where the Contractor was not at fault, (3) a written order for a minor change in the Work issued by the Architect, (4) failure of payment by the Owner, (5) termination of the Contract by the Owner, (6) Owner's suspension or (7) other reasonable grounds, Claim shall be filed in accordance with this Section 4.3.

§ 4.3.7 Claims for Additional Time

Init.

/

AIA Document A201™ – 2007. Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987, 1997 and 2007 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 08:44:02 on 06/06/2016 under Order No.7896456378_1 which expires on 04/22/2017, and is not for resale.
User Notes:                                                                                                          (2017881166)

24

Complaint, Exh. A

§ 4.3.7.1 If the Contractor wishes to make Claim for an increase in the Contract Time, written notice as provided herein shall be given. The Contractor's Claim shall include a fragnet analysis utilizing the most current updated Construction Schedule, establishing the impact on the Project's critical path. In the case of a continuing delay only one Claim is necessary. All claims for time extensions not meeting these requirements are waived.

§ 4.3.7.2 If adverse weather conditions are the basis for a Claim for additional time, such Claim shall be documented by data substantiating that weather conditions were abnormal for the period of time could not have been reasonably anticipated and had an adverse effect on the scheduled construction.

§ 4.3.8 Injury or Damage to Person or Property. If either party to the Contract suffers injury or damage to person or property because of an act or omission of the other party, or of others for whose acts such party is legally responsible, written notice of such injury or damage, whether or not insured, shall be given to the other party within a reasonable time not exceeding 21 days after discovery. The notice shall provide sufficient detail to enable the other party to investigate the matter.

§ 4.3.9 If unit prices are stated in the Contract Documents or subsequently agreed upon, and if quantities originally contemplated are materially changed in a proposed Change Order or Construction Change Directive so that application of such unit prices to quantities of Work proposed will cause substantial inequity to the Owner or Contractor, the applicable unit prices shall be equitably adjusted.

§ 4.3.10 If any Claim by the Contractor against the Owner for monetary damages and/or an increase in the Contract Sum results in litigation, the amount of such Claim, damages or increase will not be shown or proven by the Contractor's use of a "total cost" approach thereto, and the monetary difference between the Contractor's estimated cost of the Work (prepared and utilized by the Contractor in preparing his bid for the Work) and the actual costs incurred by the Contractor in performing the Work shall not be valid, creditable, cognizable, competent or relevant proof of the amount of such Claim, damages or increase; and, additionally, the cumulative effect of Change Orders on the costs incurred by the Contractor in performing the Work shall not be valid, creditable, cognizable, competent or relevant proof of the amount of all or any part of such Claim, damages or increase. Thus, for any calculation or allegation of damages by the Contractor to be valid and compensable, time and material records exclusively and directly tracking the extra costs as they are incurred must be maintained, kept available for the Owner's timely review and submitted by the Contractor. Nothing herein shall prevent Contractor from presenting evidence of his total costs and related matters for merely demonstrative or illustrative purposes.

§ 4.4 RESOLUTION OF CLAIMS AND DISPUTES
§ 4.4.1 The Contractor shall continue work during the pendency of any dispute or claim that originates during the Project, and shall not stop or slow the progress of the work pending resolution of such claim or dispute provided Owner pays Contractor undisputed sums due for work performed.

§ 4.5 MEDIATION
§ 4.5.1 Any Claim arising out of or related to the Contract, except Claims relating to aesthetic effect and except those waived as provided for in Sections 4.3.10, 9.10.4 and 9.10.5 shall, be subject to mediation as a condition precedent to arbitration or the institution of legal or equitable proceedings by either party.

§ 4.5.2 The parties shall endeavor to resolve their Claims by mediation which, unless the parties mutually agree otherwise, shall be in accordance with the Construction Industry Mediation Rules currently in effect or other rules and procedures by agreement by the parties at the time the mediation is scheduled. Request for mediation shall be filed in writing with the other party to the Contract. The request may be made concurrently with the filing of a demand for arbitration but, in such event, mediation shall proceed in advance of legal or equitable proceedings, which shall be stayed pending mediation for a period of 60 days from the date of filing, unless stayed for a longer period by agreement of the parties or court order.

§ 4.5.3 The parties shall share the mediator's fee and any filing fees equally. The mediation and any subsequent hearings shall be held in the place where the Project is located, unless another location is mutually agreed upon. Agreements reached in mediation shall be enforceable as settlement agreements in any court having jurisdiction thereof.

Init.

/

AIA Document A201™ – 2007. Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987, 1997 and 2007 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 08:44:02 on 06/06/2016 under Order No.7898458378_1 which expires on 04/22/2017, and is not for resale.
User Notes:                                                                                                     (2017881168)

25

**§ 4.6 LITIGATION OF CLAIMS**
**§ 4.6.1** Any Claim arising out of or related to the Contract, except Claims relating to aesthetic effect and except those waived as provided for in Sections 4.3.2, 9.10.4 and 9.10.5, shall, after decision by the Architect or 30 days after submission of the Claim to the Architect, be subject to litigation exclusively in the County where the project is located. Prior to litigation, the parties shall endeavor to resolve disputes by mediation in accordance with the provisions of Section 4.5.

**ARTICLE 5   SUBCONTRACTORS**
**§ 5.1 DEFINITIONS**
**§ 5.1.1** A Subcontractor is a person or entity who has a direct contract with the Contractor to perform a portion of the Work at the site. The term "Subcontractor" is referred to throughout the Contract Documents as if singular in number and means a Subcontractor or an authorized representative of the Subcontractor. The term "Subcontractor" does not include a separate contractor or subcontractors of a separate contractor.

**§ 5.1.2** A Sub-subcontractor is a person or entity who has a direct or indirect contract with a Subcontractor to perform a portion of the Work at the site. The term "Sub-subcontractor" is referred to throughout the Contract Documents as if singular in number and means a Sub-subcontractor or an authorized representative of the Sub-subcontractor.

**§ 5.2 AWARD OF SUBCONTRACTS AND OTHER CONTRACTS FOR PORTIONS OF THE WORK**
**§ 5.2.1** Unless otherwise stated in the Contract Documents or the bidding requirements, the Contractor, as soon as practicable after award of the Contract, shall furnish in writing to the Owner and the Architect the names of persons or entities (including those who are to furnish materials or equipment fabricated to a special design) proposed for each principal portion of the Work. The Architect will promptly reply to the Contractor in writing stating whether or not the Owner or the Architect, after due investigation, has reasonable objection to any such proposed person or entity. Failure of the Owner or Architect to reply promptly shall constitute notice of no reasonable objection. Copies of all bids or other proposals from subcontractors and sub-subcontractors shall, upon the request of the Owner, be submitted to the Owner for review. All subcontractors and sub-subcontractors shall be subject to the reasonable approval of Owner's lender, if any, which approval or denial to be provided within ten days of submission of list of subcontractors.

**§ 5.2.2** The Contractor shall not contract with a proposed person or entity to whom the Owner or Architect has made reasonable and timely objection. The Contractor shall not be required to contract with anyone to whom the Contractor has made reasonable objection.

**§ 5.2.3** If the Owner or Architect has reasonable objection to a person or entity proposed by the Contractor, the Contractor shall propose another to whom the Owner or Architect has no reasonable objection. If the proposed but rejected Subcontractor was reasonably capable of performing the Work, the Contract Sum and Contract Time shall be increased or decreased by the difference, if any, occasioned by such change, and an appropriate Change Order shall be issued before commencement of the substitute Subcontractor's Work. However, no increase in the Contract Sum or Contract Time shall be allowed for such change unless the Contractor has acted promptly and responsively in submitting names as required.

**§ 5.2.4** The Contractor shall not change a Subcontractor, person or entity previously selected if the Owner or Architect makes reasonable objection to such substitute.

**§ 5.2.5** Contractor shall contract solely in its own name and behalf, and not in the name or behalf of Owner, with the specified Subcontractor or supplier. No contractual relation between Owner and Subcontractor shall be created by the Contract Documents or by any subcontract or purchase order except Owner's position as a third party beneficiary of each subcontract or purchase order. Contractor's subcontract form shall be subject to reasonable approval by Owner. Upon written request, Contractor shall submit to Owner value engineering data reflecting subcontracting pricing.

**§ 5.3 SUBCONTRACTUAL RELATIONS**
**§ 5.3.1** By appropriate agreement, written where legally required for validity, the Contractor shall require each Subcontractor, to the extent of the Work to be performed by the Subcontractor, to be bound to the Contractor by terms of the Contract Documents, and to assume toward the Contractor all the obligations and responsibilities,

AIA Document A201™ – 2007. Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987, 1997 and 2007 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 08:44:02 on 06/06/2016 under Order No.7898456378_1 which expires on 04/22/2017, and is not for resale.
User Notes:                                                                              (2017861166)

Init.

/

26

Complaint, Exh. A

including the responsibility for safety of the Subcontractor's Work, which the Contractor, by these Documents, assumes toward the Owner and Architect. Each subcontract agreement shall preserve and protect the rights of the Owner and Architect under the Contract Documents with respect to the Work to be performed by the Subcontractor so that subcontracting thereof will not prejudice such rights, and shall allow to the Subcontractor, unless specifically provided otherwise in the subcontract agreement, the benefit of all rights, remedies and redress against the Contractor that the Contractor, by the Contract Documents, has against the Owner. Where appropriate, the Contractor shall require each Subcontractor to enter into similar agreements with Sub-subcontractors. The Contractor shall make available to each proposed Subcontractor, prior to the execution of the subcontract agreement, copies of the Contract Documents to which the Subcontractor will be bound, and, upon written request of the Subcontractor, identify to the Subcontractor terms and conditions of the proposed Subcontract agreement which may be at variance with the Contract Documents. Subcontractors will similarly make copies of applicable portions of such documents available to their respective proposed Sub-subcontractors.

§ 5.3.2  Notwithstanding any provision of Subparagraph 5.3.1, any part of the Work performed for the Contractor by a Subcontractor or its Sub-subcontractor shall be pursuant to a written Subcontract between the Contractor and such Subcontractor (or the Subcontractor and its Sub-subcontractor at any tier), which shall be prepared on a form of subcontract reasonably satisfactory to the Owner in all respects.  Each such subcontract shall, where the context so requires, contain provisions that:

    .1      require that such Work be performed in accordance with the requirements of the Contract Documents;

    .2      require the Subcontractor to carry and maintain insurance coverage in accordance with the Contact Documents, and to file certificates of such coverage with the Contractor;

    .3      require the Subcontractor to submit certificates and waivers of liens for work completed and paid to it and by its Sub-subcontractors paid in a prior payment application as a condition to the disbursement of the progress payment next due and owing;

    .4      require each Subcontractor to remove all debris created by its activities.

§ 5.4 CONTINGENT ASSIGNMENT OF SUBCONTRACTS
§ 5.4.1 Each subcontract agreement for a portion of the Work is assigned by the Contractor to the Owner provided that:

    .1      assignment is effective only after termination of the Contract by the Owner for cause pursuant to Section 14.2 and only for those subcontract agreements which the Owner accepts by notifying the Subcontractor and Contractor in writing; and

    .2      assignment is subject to the prior rights of the surety, if any, obligated under bond relating to the Contract.

If any subcontract is assigned to Owner pursuant to the foregoing provision, then Owner shall be substituted for the Contractor under any such subcontract, and the Subcontractor shall complete all of its obligations under the Subcontract for the benefit of Owner.

§ 5.4.2 Upon such assignment, if the Work has been suspended for more than 30 days, the Subcontractor's compensation shall be equitably adjusted for increases in cost resulting from the suspension.

*(Paragraph deleted)*
ARTICLE 6   CONSTRUCTION BY OWNER OR BY SEPARATE CONTRACTORS
§ 6.1 OWNER'S RIGHT TO PERFORM CONSTRUCTION AND TO AWARD SEPARATE CONTRACTS
§ 6.1.1 The Owner reserves the right to perform construction or operations related to and adjacent to the Project with the Owner's own forces, and to award separate contracts in connection with other portions of the Project or other construction or operations on the site under Conditions of the Contract substantially similar to these, including those portions related to insurance and waiver of subrogation.

Init.

*I*

AIA Document A201™ – 2007. Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987, 1997 and 2007 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 08:44:02 on 06/06/2016 under Order No.7808458378_1 which expires on 04/22/2017, and is not for resale.
User Notes:                                                                                                                    (2017861169)

27

§ 6.1.2 When separate contracts are awarded for different portions of the Project or other construction or operations on the site, the term "Contractor" in the Contract Documents in each case shall mean the Contractor who executes each separate Owner-Contractor Agreement.

§ 6.1.3 The Owner shall provide for coordination of the activities of the Owner's own forces and of each separate contractor with the Work of the Contractor, who shall cooperate with them. The Contractor shall coordinate and participate with other separate contractors and the Owner in reviewing their construction schedules when directed to do so. The Contractor shall make any revisions to the construction schedule deemed necessary after a joint review and mutual agreement. The construction schedules shall then constitute the schedules to be used by the Contractor, separate contractors and the Owner until subsequently revised.

*(Paragraph deleted)*
§ 6.2 MUTUAL RESPONSIBILITY
§ 6.2.1 The Contractor shall afford the Owner and separate contractors reasonable opportunity for introduction and storage of their materials and equipment and performance of their activities, and shall connect and coordinate the Contractor's construction and operations with theirs as required by the Contract Documents.

§ 6.2.2 If part of the Contractor's Work depends for proper execution or results upon construction or operations by the Owner or a separate contractor, the Contractor shall, prior to proceeding with that portion of the Work, promptly report to the Architect apparent discrepancies or defects in such other construction that would render it unsuitable for such proper execution and results. Failure of the Contractor so to report shall constitute an acknowledgment that the Owner's or separate contractor's completed or partially completed construction is fit and proper to receive the Contractor's Work, except as to defects not then reasonably discoverable.

§ 6.2.3 The Contractor shall reimburse the Owner for costs incurred by the Owner that are payable to a separate contractor because of the Contractor's delays, improperly timed activities or defective construction. The Owner shall be responsible to the Contractor for costs the Contractor incurs because of a separate contractor's delays, improperly timed activities, damage to the Work or defective construction.

§ 6.2.4 The Contractor shall promptly remedy damage wrongfully caused by the Contractor to completed or partially completed construction or to property of the Owner or separate contractors as provided in Section 10.2.5.

§ 6.2.5 The Owner and each separate contractor shall have the same responsibilities for cutting and patching as are described for the Contractor in Section 3.14.

§ 6.3 OWNER'S RIGHT TO CLEAN UP
§ 6.3.1 If a dispute arises among the Contractor, separate contractors and the Owner as to the responsibility under their respective contracts for maintaining the premises and surrounding area free from waste materials and rubbish, the Owner may clean up and the Architect will recommend an allocation of the cost among those responsible, subject to each party's right to seek a review of that determination under Article 4.4.

ARTICLE 7   CHANGES IN THE WORK
§ 7.1 GENERAL
§ 7.1.1 Changes in the Work may be accomplished after execution of the Contract, and without invalidating the Contract, by Change Order, Construction Change Directive or order for a minor change in the Work, subject to the limitations stated in this Article 7 and elsewhere in the Contract Documents.

§ 7.1.2 A Change Order shall be based upon agreement among the Owner, Contractor and Architect; a Construction Change Directive requires agreement by the Owner and Architect and may or may not be agreed to by the Contractor.

§ 7.1.3 Changes in the Work shall be performed under applicable provisions of the Contract Documents, and the Contractor shall proceed promptly, unless otherwise provided in the Change Order, Construction Change Directive or order for a minor change in the Work.

**Init.**

**/**

AIA Document A201™ – 2007. Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987, 1997 and 2007 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 08:44:02 on 08/06/2016 under Order No.7898458378_1 which expires on 04/22/2017, and is not for resale.
User Notes:                                                                                                          (2017681168)

**28**

§ 7.2 CHANGE ORDERS
§ 7.2.1 A Change Order is a written instrument prepared by the Architect and signed by the Owner, Contractor and Architect, stating their agreement upon all of the following:
    .1    Change in the Work;
    .2    The amount of the adjustment, if any, in the Contract Sum; and
    .3    The extent of the adjustment, if any, in the Contract Time.

§ 7.2.2 Methods used in determining adjustments to the Contract Sum may include those listed in Section 7.3.3.

§ 7.2.3 If any Change Order, signed by the Owner and the Contractor, results in or contains an increase in the Contract Sum, the amount of such increase shall be conclusively deemed and held to include the Contractor's costs of and for all applicable taxes, bond premiums, insurance premiums, supervision, overhead, profit, labor, labor impact and materials related to the Change Order and the additional work required and/or contemplated thereby, and Contractor shall be conclusively deemed and held to have waived any known Claim for any additional sum for delays, disruption, acceleration, loss of productivity, ripple effect, inefficiency or any other matter arising out of or in any way related to such Change Order and the additional work contemplated thereby, unless such claim is specifically reserved in such change order.

§ 7.3 CONSTRUCTION CHANGE DIRECTIVES
§ 7.3.1 A Construction Change Directive is a written order prepared by the Architect and signed by the Owner and Architect, directing a change in the Work prior to agreement on adjustment, if any, in the Contract Sum or Contract Time, or both. The Owner may by Construction Change Directive, without invalidating the Contract, order changes in the Work within the general scope of the Contract consisting of additions, deletions or other revisions, the Contract Sum and Contract Time being adjusted accordingly.

§ 7.3.2 A Construction Change Directive shall be used in the absence of total agreement on the terms of a Change Order.

§ 7.3.3 If the Construction Change Directive provides for an adjustment to the Contract Sum, the adjustment shall be based on one of the following methods:
    .1    Mutual acceptance of a lump sum properly itemized and supported by sufficient substantiating data to permit evaluation;
    .2    Unit prices stated in the Contract Documents or subsequently agreed upon;
    .3    Cost to be determined in a manner agreed upon by the parties and a mutually acceptable fixed or percentage fee; or
    .4    As provided in Section 7.3.6.

§ 7.3.4 Upon receipt of a Construction Change Directive, the Contractor shall promptly proceed with the change in the Work involved and advise the Architect of the Contractor's agreement or disagreement with the method, if any, provided in the Construction Change Directive for determining the proposed adjustment in the Contract Sum or Contract Time.

§ 7.3.5 A Construction Change Directive signed by the Contractor indicates the agreement of the Contractor therewith, including adjustment in Contract Sum and Contract Time or the method for determining them. Such agreement shall be effective immediately and shall be recorded as a Change Order.

§ 7.3.6 If the Contractor does not respond promptly or disagrees with the method for adjustment in the Contract Sum, the method and the adjustment shall be determined by the Architect on the basis of reasonable expenditures and savings of those performing the Work attributable to the change, including, in case of an increase in the Contract Sum, a reasonable allowance for overhead and profit. In such case, and also under Section 7.3.3.3, the Contractor shall keep and present, in such form as the Architect may prescribe, an itemized accounting together with appropriate supporting data. Unless otherwise provided in the Contract Documents, costs for the purposes of this Section 7.3.6 shall be limited to the following:
    .1    Costs of labor, including social security, old age and unemployment insurance, fringe benefits required by agreement or custom, and workers' compensation insurance;

**Init.**

**/**

AIA Document A201™ – 2007. Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987, 1997 and 2007 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 08:44:02 on 08/06/2016 under Order No.7896456378_1 which expires on 04/22/2017, and is not for resale.
User Notes:    (2017881168)

**29**

.2    Costs of materials, supplies and equipment, including cost of transportation, whether incorporated or consumed;

.3    Rental costs of machinery and equipment, exclusive of hand tools, whether rented from the Contractor or others;

.4    Costs of premiums for all bonds and insurance, permit fees, and sales, use or similar taxes related to the Work; and

.5    Additional costs of supervision and field office personnel directly attributable to the change.

**§ 7.3.7**
*(Paragraphs deleted)*
The amount of credit to be allowed by the Contractor to the Owner for a deletion or change which results in a net decrease in the Contract Sum shall be actual net cost as confirmed by the Architect. When both additions and credits covering related Work or substitutions are involved in a change, the allowance for overhead and profit shall be figured on the basis of net increase, if any, with respect to that change.

**§ 7.3.8** Pending final determination of the total cost of a Construction Change Directive to the Owner, amounts not in dispute for such changes in the Work shall be included in Applications for Payment accompanied by a Change Order indicating the parties' agreement with part or all of such costs. For any portion of such cost that remains in dispute, the Architect will make an interim determination for purposes of monthly certification for payment for those costs. That determination of cost shall adjust the Contract Sum on the same basis as a Change Order, subject to the right of either party to disagree and assert a claim in accordance with Article 4.

**§ 7.3.9** When the Owner and Contractor agree with the determination made by the Architect concerning the adjustments in the Contract Sum and Contract Time, or otherwise reach agreement upon the adjustments, such agreement shall be effective immediately and shall be recorded by preparation and execution of an appropriate Change Order.
*(Paragraph deleted)*

**§ 7.4 MINOR CHANGES IN THE WORK**
**§ 7.4.1** The Architect will have authority to order minor changes in the Work not involving adjustment in the Contract Sum or extension of the Contract Time and not inconsistent with the intent of the Contract Documents. Such changes shall be effected by written order and shall be binding on the Owner and Contractor. The Contractor shall carry out such written orders promptly.

**§ 7.5 OVERHEAD AND PROFIT**
Notwithstanding any provision herein to the contrary, the amounts for combined overhead and profit for Change Orders and Construction Change Directives are as follows:

1.    For the Contractor, for Work performed by the Contractor's own forces or increases in any bond premiums, insurance; five percent (5%) of the cost.

2.    For the Contractor, the Work performed by the Contractor's Subcontractor; five percent (5%) of the amount due the Subcontractor.

3.    For each Subcontractor or Sub-subcontractors involved, the Work performed by that Subcontractor or Sub-subcontractor's own forces; ten percent (10%) of the cost.

4.    For each Subcontractor, the Work performed by the Subcontractor's Sub-subcontractor's; ten percent (10%) of the amount due the Sub-subcontractor.

5.    No further tiering of the Sub-subcontractors will be allowed mark-up for overhead and profit.

6.    Cost to which overhead and fee is to be applied shall be determined in accordance with Subparagraph 7.3.6.

7.    In order to facilitate checking of quotations for extras or credits, all proposals, except those so minor that their propriety can be seen by inspection, shall be accompanied by a complete itemization of costs including labor, materials and Subcontracts. Labor and materials shall be

Init.

/
AIA Document A201™ – 2007. Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987, 1997 and 2007 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 06:44:02 on 06/06/2016 under Order No.7898456378_1 which expires on 04/22/2017, and is not for resale.
User Notes:    (2017881168)

Complaint, Exh. A

itemized in the manner prescribed above. Where major cost items are Subcontracts, they shall be itemized also.   In no case will be a change involving over $100.00 be approved without such itemization.

8.      Notwithstanding the above, no mark up for overhead and profit will be allowed for intangible costs such as overhead and profit on lower tier subcontractor.

## ARTICLE 8   TIME
### § 8.1 DEFINITIONS
§ 8.1.1 Unless otherwise provided, Contract Time is the period of time, including authorized adjustments, allotted in the Contract Documents for Substantial Completion of the Work.

§ 8.1.2 The date of commencement of the Work is the date established in the Agreement.

§ 8.1.3 The date of Substantial Completion is the date certified by the Architect in accordance with Section 9.8.

§ 8.1.4 The term "day" as used in the Contract Documents shall mean calendar day unless otherwise specifically defined.

### § 8.2 PROGRESS AND COMPLETION
§ 8.2.1 Time limits stated in the Contract Documents are of the essence of the Contract. By executing the Agreement the Contractor confirms that the Contract Time is a reasonable period for performing the Work.

§ 8.2.2 The Contractor shall not knowingly, except by agreement or instruction of the Owner in writing, prematurely commence operations on the site or elsewhere prior to the effective date of insurance required by Article 11 to be furnished by the Contractor and Owner. The date of commencement of the Work shall not be changed by the effective date of such insurance. Unless the date of commencement is established by the Contract Documents or a notice to proceed given by the Owner, the Contractor shall notify the Owner in writing not less than five days or other agreed period before commencing the Work to permit the timely filing of mortgages, mechanic's liens and other security interests.

§ 8.2.3 The Contractor shall proceed expeditiously with adequate forces and shall achieve Substantial Completion within the Contract Time.   In that this Project will be constructed in phases, with certain buildings being occupied before other buildings are completed, the Contractor represents and agrees that the Contract Time has been determined and adjusted with respect to Contractor's need for access.   The Contractor shall ascertain, coordinate and minimize the impact of interruption of the operations on the adjacent buildings or occupied buildings. Such interruptions have been anticipated and included in the Contract sum.

### § 8.3 DELAYS AND EXTENSIONS OF TIME
§ 8.3.1 If the Contractor is delayed at any time in the progress of the Work due to causes outside of its control or the control of its subcontractors or suppliers, the Contractor may submit a Change Order requesting an extension of the Contract Time in accordance with the procedures established in Article 7 and 4.3.7.   The Contractor warrants by execution of the Contract that the Contractor has accounted for and anticipated foreseeable delays and that the Work can be completed within the Contract Time.   The Owner shall not unreasonably withhold approval of a Change Order requesting additional time due to delay when (a) the delay was unforeseeable at the time of the execution of the Contract, (b) the delay was not caused by the Contractor or its subcontractors or suppliers, and (c) the delay could not have been avoided by the Contractor's timely notice to the Owner and (d) the Contractor was not concurrently delaying the project's critical path at the time the delay which is subject of the proposed Change Order occurred.   Any extension of the Contract Time shall be net of any foreseeable delays or other delays attributable to the Contractor.

§ 8.3.2 Claims relating to time shall be made in accordance with applicable provisions of Section 4.3.

§ 8.3.3 This Section 8.3 does not preclude recovery of damages for delay by either party under other provisions of the Contract Documents.   However, Contractor shall not seek an increase in the Contract Sum on account of delays, for any delay, unless such delay is caused by the actions or omissions of the Owner, or the Architect, and its consultants.

**Init.**

**/**

AIA Document A201™ – 2007. Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987, 1997 and 2007 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 08:44:02 on 08/08/2016 under Order No.7698458378_1 which expires on 04/22/2017, and is not for resale.
User Notes:                                                                          (2017881168)

Complaint, Exh. A

§ 8.3.4   Contractor's written claims for extension of Contract Time shall be accompanied by detailed dates, correspondence, notices, and any other data which provides proof of the events which are the basis for the claim, that details the critical path Work items on the schedule, justifying the time extension.   Said request shall specifically detail the extension of the critical path of the Project caused by the events which underlie the time extension request. Any claim not including said data shall be deemed waived, until such time as contractor provides such data in accordance with the contract documents.

§ 8.3.5   Delays due to tardy shop drawing submittal, tardy material ordering or shipment, or any other delays caused by a supplier or a Subcontractor shall not be deemed a valid cause for delay and shall not be accepted as a basis for Claims for extension of time, as the scheduling and control of suppliers and Subcontractors is a part of the Contractor's responsibility.

§ 8.3.6   Permitting the Contractor to continue and finish the Work or any part of the Work after the dates fixed for completion, or after the dates to which the time for completion may have been extended, shall in no way operate as a waiver on the part of the Owner of any of his rights under the Contract.

§ 8.3.7   Upon request from Owner, Contractor shall develop and submit to Owner for its review and consideration, an early completion acceleration program. Said program shall include an estimate of all additional costs that might be incurred in accelerating the Work, as well as any bonus incentives to be paid to Contractor and its Subcontractors in the event Substantial Completion of the Work by the early completion date requested by Owner.   The acceptance of any such early completion program shall be at Owner's sole discretion.   If Owner so elects to accept Contractor's program, an appropriate amendment to the Contract shall be prepared and executed by the parties.

§ 8.3.8   The Owner may, in its sole discretion and for any reason, direct Contractor to accelerate the schedule of performance by providing overtime, extra shifts, Saturday, Sunday and/or holiday Work and/or by having all or any subcontractors or sub-subcontractors designated by the Owner provide overtime, extra shifts, Saturday, Sunday and/or holiday Work to meet any of the scheduled milestones. To the extent such acceleration is required due to Contractor's negligence or failure to timely or properly progress the work, Contractor shall not be compensated for costs associated with a said direction to accelerate, but will be compensated if such acceleration is due to other causes outside the control of the Contractor.

## ARTICLE 9   PAYMENTS AND COMPLETION
### § 9.1 CONTRACT SUM
§ 9.1.1 The Contract Sum is stated in the Agreement and, including authorized adjustments, is the total amount payable by the Owner to the Contractor for performance of the Work under the Contract Documents.

### § 9.2 SCHEDULE OF VALUES
§ 9.2.1 Before the first Application for Payment, the Contractor shall submit to the Architect a schedule of values allocated to various portions of the Work, prepared in such form and supported by such data to substantiate its accuracy as the Architect may require. This schedule, unless objected to by the Architect, shall be used as a basis for reviewing the Contractor's Applications for Payment.

### § 9.3 APPLICATIONS FOR PAYMENT
§ 9.3.1 At least ten days before the date established for each progress payment, the Contractor shall submit to the Owner an itemized Application for Payment for operations completed in accordance with the schedule of values. Such applications shall be notarized, if required, and supported by such data substantiating the Contractor's right to payment as the Owner or Architect may require, such as copies of requisitions from Subcontractors and material suppliers, and reflecting retainage if provided for in the Contract Documents.   Such Application for Payment shall be certified as correct by Contractor and shall be accompanied by waivers of liens and other documentation from Subcontractors and Sub-subcontractors as reasonably may be required by the Owner for monies previously paid to Contractor. In addition, such Application for Payment shall contain a certification by the Contractor that there are no written claims of mechanics' or materialmen's liens submitted to the Contractor at the date of such Application for Payment, for which Contractor has received payment previously, that the Contractor has no knowledge of any filed mechanics' or materialmen's liens with respect to the Work for which Contractor has received payment previously, that all due and payable bills with respect to the Work have been paid to date or shall be paid from the

**Init.**

**/**

AIA Document A201™ – 2007. Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987, 1997 and 2007 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 08:44:02 on 06/08/2016 under Order No.7898458376_1 which expires on 04/22/2017, and is not for resale.
User Notes:                                                                                                    (2017881168)

Complaint, Exh. A

proceeds of such Application for Payment, that there is no known basis for the filing of any mechanics' or materialmen's liens on the work, and that waivers from all Subcontractors constitute an effective waiver of lien under the laws of the jurisdiction in which the Project is located to the extent of payments that have been made or are to be made concurrently with payment pursuant to such Application for Payment. Upon request by Owner, copies of all Applications for Payment shall be submitted by Contractor directly to Owner.

§ 9.3.1.1 As provided in Section 7.3.8, such applications may include requests for payment on account of changes in the Work which have been properly authorized by Construction Change Directives, or by interim determinations of the Architect, but not yet included in Change Orders.

§ 9.3.1.2 Such applications may not include requests for payment for portions of the Work for which the Contractor does not intend to pay to a Subcontractor or material supplier, unless such Work has been performed by others whom the Contractor intends to pay.

§ 9.3.2 Unless otherwise provided in the Contract Documents, payments shall be made on account of materials and equipment delivered and suitably stored at the site for subsequent incorporation in the Work. If approved in advance by the Owner, payment may similarly be made for materials and equipment suitably stored off the site at a location agreed upon in writing. Payment for materials and equipment stored on or off the site shall be conditioned upon compliance by the Contractor with procedures satisfactory to the Owner to establish the Owner's title to such materials and equipment or otherwise protect the Owner's interest, and shall include the costs of applicable insurance, storage and transportation to the site for such materials and equipment stored off the site.

§ 9.3.3 The Contractor warrants that title to all Work covered by an Application for Payment will pass to the Owner no later than the time of payment. The Contractor further warrants that upon submittal of an Application for Payment all Work for which Certificates for Payment have been previously issued and payments received from the Owner shall, to the best of the Contractor's knowledge, information and belief, be free and clear of liens, claims, security interests or encumbrances in favor of the Contractor, Subcontractors, material suppliers, or other persons or entities making a claim by reason of having provided labor, materials and equipment relating to the Work.

§ 9.3.4 Each Application for Payment shall be accompanied by waiver and release upon progress payment forms acceptable to Owner which conform to Florida State law for all work, labor, equipment and material for which payment has been previously mad by prior applications, executed by the Contractor, and each subcontractor that has filed a Notice to Owner. No payment under the Agreement shall be made, except at Owner's option, until and unless such waiver and release forms from the Contractor has been furnished. In the event a Lien has been filed in the mortgage and conveyance records in the jurisdiction of the project by a subcontractor, sub-subcontractor, materialman, rental company or supplier, Owner shall have the option to withhold 125% of the recorded lien amount from the next applicable payment application after notice of the lien has been served on the Owner. Owner's exercise of its option to withhold lien amounts shall not derogate from the obligation to otherwise pay undisputed amounts.

§ 9.3.5 Notwithstanding anything to the contrary herein or elsewhere contained in the Contract Documents, no payment of or towards the Contract Sum shall be due, owing or payable to the Contractor at any time when the Contractor is in material default in or under the Contract.

## § 9.4 CERTIFICATES FOR PAYMENT

§ 9.4.1 The Architect will, within ten (10) days after receipt of the Contractor's Application for Payment, either issue to the Owner a Certificate for Payment, with a copy to the Contractor, for such amount as the Architect determines is properly due, or notify the Contractor and Owner in writing of the Architect's reasons for withholding certification in whole or in part as provided in Section 9.5.1.

§ 9.4.2 The issuance of a Certificate for Payment will constitute a representation by the Architect to the Owner, based on the Architect's evaluation of the Work and the data comprising the Application for Payment, that the Work has progressed to the point indicated and that the information and belief, the quality of the Work is in accordance with the Contract Documents. The foregoing representations are subject to an evaluation of the Work for conformance with the Contract Documents upon Substantial Completion, to results of subsequent tests and inspections, to correction of minor deviations from the Contract Documents prior to completion and to specific qualifications expressed by the Architect. The issuance of a Certificate for Payment will further constitute a

**AIA Document A201™ – 2007.** Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987, 1997 and 2007 by The American Institute of Architects. **All rights reserved. WARNING: This AIA®  Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA®  Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law.** This document was produced by AIA software at 08:44:02 on 06/06/2016 under Order No.7508458378_1 which expires on 04/22/2017, and is not for resale.
User Notes:                                                                                              (2017881168)

Init.

/

**33**

representation that the Contractor is entitled to payment in the amount certified. However, the issuance of a Certificate for Payment will not be a representation that the Architect has (1) made exhaustive or continuous on-site inspections to check the quality or quantity of the Work, (2) reviewed construction means, methods, techniques, sequences or procedures, (3) reviewed copies of requisitions received from Subcontractors and material suppliers and other data requested by the Owner to substantiate the Contractor's right to payment, or (4) made examination to ascertain how or for what purpose the Contractor has used money previously paid on account of the Contract Sum.

## § 9.5 DECISIONS TO WITHHOLD CERTIFICATION

§ 9.5.1 The Architect may withhold a Certificate for Payment in whole or in part, to the extent reasonably necessary to protect the Owner, if in the Architect's opinion the representations to the Owner required by Section 9.4.2 cannot be made. If the Architect is unable to certify payment in the amount of the Application, the Architect will notify the Contractor and Owner as provided in Section 9.4.1. If the Contractor and Architect cannot agree on a revised amount, the Architect will promptly issue a Certificate for Payment for the amount for which the Architect is able to make such representations to the Owner. The Architect may also withhold a Certificate for Payment or, because of subsequently discovered evidence, may nullify the whole or a part of a Certificate for Payment previously issued, to such extent as may be necessary in the Architect's opinion to protect the Owner from loss for which the Contractor is responsible, including loss resulting from acts and omissions described in Section 3.3.2, because of:

.1   defective Work not remedied following written notice from the Owner or Architect;

.2   third party claims filed or reasonable evidence indicating probable filing of such claims unless security acceptable to the Owner is provided by the Contractor;

.3   failure of the Contractor to make payments when due to Subcontractors or for labor, materials or equipment;

.4   reasonable evidence that the Work cannot be completed for the unpaid balance of the Contract Sum including retainage;

.5   damage to the Owner or another contractor;

.6   reasonable evidence that the Work will not be completed within the Contract Time, and that the unpaid balance would not be adequate to cover actual or liquidated damages for the anticipated delay; or

.7   persistent failure to carry out the Work in accordance with the Contract Documents.

§ 9.5.2 When the above reasons for withholding certification are removed, certification will be made for amounts previously withheld.

*(Paragraph deleted)*
## § 9.6 PROGRESS PAYMENTS

§ 9.6.1 After the Architect has issued a Certificate for Payment, the Owner shall make payment in the manner and within the time provided in the Contract Documents, and shall so notify the Architect.

§ 9.6.2 The Contractor shall promptly pay each Subcontractor, upon receipt of payment from the Owner, out of the amount paid to the Contractor on account of such Subcontractor's portion of the Work, the amount to which said Subcontractor is entitled, reflecting percentages actually retained from payments to the Contractor on account of such Subcontractor's portion of the Work. The Contractor shall, by appropriate agreement with each Subcontractor, require each Subcontractor to make payments to Sub-subcontractors in a similar manner.

§ 9.6.3 The Architect will, on request, furnish to a Subcontractor, if practicable, information regarding percentages of completion or amounts applied for by the Contractor and action taken thereon by the Architect and Owner on account of portions of the Work done by such Subcontractor.

§ 9.6.4 Neither the Owner nor Architect shall have an obligation to pay or to see to the payment of money to a Subcontractor except as may otherwise be required by law.

§ 9.6.5 Payment to material suppliers shall be treated in a manner similar to that provided in Sections 9.6.2, 9.6.3 and 9.6.4.

§ 9.6.6 A Certificate for Payment, a progress payment, or partial or entire use or occupancy of the Project by the Owner shall not constitute acceptance of Work not in accordance with the Contract Documents.

Init.

/

AIA Document A201™ – 2007. Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987, 1997 and 2007 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 08:44:02 on 06/06/2016 under Order No.7898458378_1 which expires on 04/22/2017, and is not for resale.
User Notes:                                                                                      (2017861168)

34

§ 9.6.7 Unless the Contractor provides the Owner with a payment bond in the full penal sum of the Contract Sum, payments received by the Contractor for Work properly performed by Subcontractors and suppliers shall be held by the Contractor for those Subcontractors or suppliers who performed Work or furnished materials, or both, under contract with the Contractor for which payment was made by the Owner. Nothing contained herein shall require money to be placed in a separate account and not commingled with money of the Contractor, shall create any fiduciary liability or tort liability on the part of the Contractor for breach of trust or shall entitle any person or entity to an award of punitive damages against the Contractor for breach of the requirements of this provision.

§9.6.8 Unless Contractor is not in default and otherwise requests Owner not to do so as a result of Contractor's good faith dispute with a Subcontractor or supplier, Owner may make payments jointly to the order of Contractor and its Subcontractor or supplier after giving ten days' notice to Contractor of Owner's intention to pay the subcontractor(s).

### § 9.7 FAILURE OF PAYMENT
§ 9.7.1 If the Architect does not issue a Certificate for Payment, through no fault of the Contractor, within seven days after receipt of the Contractor's Application for Payment, or if the Owner does not pay the Contractor within seven days after the date established in the Contract Documents the amount certified by the Architect or awarded by arbitration, then the Contractor may, upon fifteen additional days' written notice to the Owner and Architect, stop the Work until payment of the amount owing has been received. The Contract Time shall be extended appropriately and the Contract Sum shall be increased by the amount of the Contractor's reasonable costs of shut-down, delay and start-up, plus interest as provided for in the Contract Documents.

### § 9.8 SUBSTANTIAL COMPLETION
§ 9.8.1 Substantial Completion is the stage in the progress of the Work when the Work or designated portion thereof is sufficiently complete in accordance with the Contract Documents so that the Owner can occupy or utilize the Work for its intended use, and a temporary Certificate of Occupancy has been obtained from the applicable governmental authority. The Contractor shall secure and deliver to the Owner written warranties and guarantees from its Subcontractors, Sub-subcontractors and suppliers bearing the date of Substantial Completion or some other date as may be agreed to by the Owner and stating the period of warranty as required by the Contract Documents. The Contractor is responsible for the warranty of all Work following Substantial Completion, whether performed by it or by its Subcontractors at any tier.

§ 9.8.2 When the Contractor considers that the Work, or a portion thereof which the Owner agrees to accept separately, is substantially complete, the Contractor shall prepare and submit to the Architect a comprehensive list of items to be completed or corrected prior to final payment. Failure to include an item on such list does not alter the responsibility of the Contractor to complete all Work in accordance with the Contract Documents.

§ 9.8.3 Upon receipt of the Contractor's list, the Architect will make an inspection to determine whether the Work or designated portion thereof is substantially complete. If the Architect's inspection discloses any item, whether or not included on the Contractor's list, which is not sufficiently complete in accordance with the Contract Documents so that the Owner can occupy or utilize the Work or designated portion thereof for its intended use, the Contractor shall, before issuance of the Certificate of Substantial Completion, complete or correct such item upon notification by the Architect. In such case, the Contractor shall then submit a request for another inspection by the Architect to determine Substantial Completion.

§ 9.8.4 When the Work or designated portion thereof is substantially complete, the Architect will prepare a Certificate of Substantial Completion which shall establish the date of Substantial Completion, shall establish responsibilities of the Owner and Contractor for security, maintenance, heat, utilities, damage to the Work and insurance, and shall fix the time within which the Contractor shall finish all items on the list accompanying the Certificate. Warranties required by the Contract Documents shall commence on the date of Substantial Completion of the Work or designated portion thereof unless otherwise provided in the Certificate of Substantial Completion.

§ 9.8.5 The Certificate of Substantial Completion shall be submitted to the Owner and Contractor for their written acceptance of responsibilities assigned to them in such Certificate. Upon such acceptance and consent of surety, if any, the Owner shall make payment of retainage applying to such Work or designated portion thereof. Such payment

Init.

/

AIA Document A201™ – 2007. Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987, 1997 and 2007 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 08:44:02 on 00/00/2016 under Order No.7896456376_1 which expires on 04/22/2017, and is not for resale.
User Notes:                                                                                                                      (2017681168)

Complaint, Exh. A

shall be adjusted for Work that is incomplete or not in accordance with the requirements of the Contract Documents, as provided for in the Contract Documents.

## § 9.9 PARTIAL OCCUPANCY OR USE

§ 9.9.1 The Owner may occupy or use any completed or partially completed portion of the Work at any stage when such portion is designated by separate agreement with the Contractor, provided such occupancy or use is consented to by the insurer as required under Section 11.4.1.5 and authorized by public authorities having jurisdiction over the Work. Such partial occupancy or use may commence whether or not the portion is substantially complete, provided the Owner and Contractor have accepted in writing the responsibilities assigned to each of them for payments, retainage, if any, security, maintenance, heat, utilities, damage to the Work and insurance, and have agreed in writing concerning the period for correction of the Work and commencement of warranties required by the Contract Documents. When the Contractor considers a portion substantially complete, the Contractor shall prepare and submit a list to the Architect as provided under Section 9.8.2. Consent of the Contractor to partial occupancy or use shall not be unreasonably withheld. The stage of the progress of the Work shall be determined by written agreement between the Owner and Contractor or, if no agreement is reached, by decision of the Architect.

§ 9.9.2 Immediately prior to such partial occupancy or use, the Owner, Contractor and Architect shall jointly inspect the area to be occupied or portion of the Work to be used in order to determine and record the condition of the Work.

§ 9.9.3 Unless otherwise agreed upon, partial occupancy or use of a portion or portions of the Work shall not constitute acceptance of Work not complying with the requirements of the Contract Documents.

## § 9.10 FINAL COMPLETION AND FINAL PAYMENT

§ 9.10.1 Upon receipt of written notice that the Work is ready for final inspection and acceptance and upon receipt of a final Application for Payment, the Architect will promptly make such inspection and, when the Architect finds the Work acceptable under the Contract Documents and the Contract fully performed, the Architect will promptly issue a final Certificate for Payment stating that to the best of the Architect's knowledge, information and belief, and on the basis of the Architect's on-site visits and inspections, the Work has been completed in accordance with terms and conditions of the Contract Documents and that the entire balance found to be due the Contractor and noted in the final Certificate is due and payable. The Architect's final Certificate for Payment will constitute a further representation that conditions listed in Section 9.10.2 as precedent to the Contractor's being entitled to final payment have been fulfilled. Neither Final Payment nor the release of any remaining retained percentage shall be due to the Contractor until the Owner has accepted the Work. The Owner shall accept the Work only after all conditions for Final Payment and release of the retained percentage set forth in the Contract Documents have been satisfied, and each of the following events have occurred:

(1)     All labor has been performed and material supplied and incorporated into the Work in a good workmanlike manner consistent with the Contract Documents.

(2)     The Work, premises and surrounding area have been cleaned up consistent with Subparagraph 3.15.1.

(3)     All persons, firms and corporations, including all laborers, materialpersons, suppliers and Subcontractors who have furnished equipment, supplied materials or performed work for or in connection with the Work, including but not limited to those persons who could file a claim of lien, have been paid or will be paid in full out of the remaining retained percentage; and those persons, firms and corporations have submitted their final statements with a waiver of all rights to mechanics' lien, stop notice, or recourse against surety of the bond, subject to final payment. The Contractor shall make these waivers available to the Owner for inspection by the Owner. In the event a dispute has arisen between the Contractor and one of the parties listed above in this Article which prevents the Contractor from obtaining the waiver of rights required by this Article from that party, the Contractor may satisfy the requirements of this Article by (a) supplying a payment bond issued by a surety licensed to do business in the State of Florida and acceptable to the Owner to remove the effect of any lien, stop notice or related claim against the Work or the real property upon which the Work is built, and (b) agreeing to defend and indemnify the Owner against all actions filed by persons who have supplied materials to or performed work for or in connection to the Work. The Contractor shall also have submitted an affidavit to the Owner and lender that all waivers

Init.

/

AIA Document A201™ – 2007. Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987, 1997 and 2007 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 08:44:02 on 08/08/2016 under Order No.7888458378_1 which expires on 04/22/2017, and is not for resale.
User Notes:                                                                                                              (2017681166)

36

described in this Article have been obtained from all parties described in this Article or that the claims of such parties have been satisfied by the obtaining of a bond.

(4)     All portions of the Work requiring inspection by any governmental authority have been inspected and approved by such authority, and any requisite certificates of occupancy, approvals, licenses and permits have been issued.

(5)     The Owner has received assignments of warranties of all Subcontractors and materialpersons.

**§ 9.10.2** Neither final payment nor any remaining retained percentage shall become due until the Contractor submits to the Architect (1) a final affidavit stating that payrolls, bills for materials and equipment, and other indebtedness connected with the Work for which the Owner or the Owner's property might be responsible or encumbered   have been paid or otherwise satisfied, (2) a certificate evidencing that insurance required by the Contract Documents to remain in force after final payment is currently in effect and will not be canceled or allowed to expire until at least 30 days' prior written notice has been given to the Owner, (3) a written statement that the Contractor knows of no substantial reason that the insurance will not be renewable to cover the period required by the Contract Documents, (4) consent of surety, if any, to final payment and (5), if required by the Owner, other data establishing payment or satisfaction of obligations, such as receipts, releases and waivers of liens for which the Contractor has been paid, claims, security interests or encumbrances arising out of the Contract, to the extent and in such form as may be designated by the Owner. If a Subcontractor refuses to furnish a release or waiver required by the Owner, the Contractor may furnish a bond satisfactory to the Owner to indemnify the Owner against such lien. If such lien remains unsatisfied after payments are made, the Contractor shall refund to the Owner all money that the Owner may be compelled to pay in discharging such lien, including all costs and reasonable attorneys' fees.   In no event shall final payment become due until the  Project Architect has issued a Certificate of Substantial Completion (AIA Form G704 or a similar form satisfactory to Owner), unless Owner has received full and unconditional releases of liens from Contractor and all subcontractors and materialmen performing work or supplying materials to the Project that filed a notice to owner, all in form and content satisfactory to Owner.

**§ 9.10.3** If, after Substantial Completion of the Work, final completion thereof is materially delayed through no fault of the Contractor or by issuance of Change Orders affecting final completion, and the Architect so confirms, the Owner shall, upon application by the Contractor and certification by the Architect, and without terminating the Contract, make payment of the balance due for that portion of the Work fully completed and accepted. If the remaining balance for Work not fully completed or corrected is less than retainage stipulated in the Contract Documents, and if bonds have been furnished, the written consent of surety to payment of the balance due for that portion of the Work fully completed and accepted shall be submitted by the Contractor to the Architect prior to certification of such payment. Such payment shall be made under terms and conditions governing final payment, except that it shall not constitute a waiver of claims.

**§ 9.10.4** The making of final payment shall constitute a waiver of Claims by the Owner except those arising from:
  .1     liens, Claims, security interests or encumbrances arising out of the Contract and unsettled;
  .2     failure of the Work to comply with the requirements of the Contract Documents; or
  .3     terms of special warranties required by the Contract Documents.

**§ 9.10.5** Acceptance of final payment by the Contractor, a Subcontractor or material supplier shall constitute a waiver of claims by that payee except those previously made in writing and identified by that payee as unsettled at the time of final Application for Payment.

**ARTICLE 10    PROTECTION OF PERSONS AND PROPERTY**
**§ 10.1 SAFETY PRECAUTIONS AND PROGRAMS**
**§ 10.1.1** The Contractor shall be responsible for initiating, maintaining and supervising all safety precautions and programs in connection with the performance of the Contract.

**§ 10.2 SAFETY OF PERSONS AND PROPERTY**
**§ 10.2.1** The Contractor shall take reasonable precautions for safety of, and shall provide reasonable protection to prevent damage, injury or loss to:
  .1     employees on the Work and other persons who may be affected thereby;

Init.

/

AIA Document A201™ – 2007. Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987, 1997 and 2007 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 08:44:02 on 06/06/2016 under Order No.7898458378_1 which expires on 04/22/2017, and is not for resale.
User Notes:                                                                                     (2017861168)

Complaint, Exh. A

.2     the Work and materials and equipment to be incorporated therein, whether in storage on or off the site, under care, custody or control of the Contractor or the Contractor's Subcontractors or Sub-subcontractors; and

.3     other property at the site or adjacent thereto, such as trees, shrubs, lawns, walks, pavements, roadways, structures and utilities not designated for removal, relocation or replacement in the course of construction.

§ 10.2.2 The Contractor shall give notices and comply with applicable laws, ordinances, rules, regulations and lawful orders of public authorities bearing on safety of persons or property or their protection from damage, injury or loss.

§ 10.2.3 The Contractor shall erect and maintain, as required by existing conditions and performance of the Contract, reasonable safeguards for safety and protection, including posting danger signs and other warnings against hazards, promulgating safety regulations and notifying owners and users of adjacent sites and utilities.

§ 10.2.4 When use or storage of explosives or other hazardous materials or equipment or unusual methods are necessary for execution of the Work, the Contractor shall exercise utmost care and carry on such activities under supervision of properly qualified personnel.

§ 10.2.5 The Contractor shall promptly remedy damage and loss (other than damage or loss to be insured under property insurance required by the Contract Documents) to property referred to in Sections 10.2.1.2 and 10.2.1.3 caused in whole or in part by the Contractor, a Subcontractor, a Sub-subcontractor, or anyone directly or indirectly employed by any of them, or by anyone for whose acts they may be liable and for which the Contractor is responsible under Sections 10.2.1.2 and 10.2.1.3, except damage or loss attributable to acts or omissions of the Owner or Architect or anyone directly or indirectly employed by either of them, or by anyone for whose acts either of them may be liable, and not attributable to the fault or negligence of the Contractor. The foregoing obligations of the Contractor are separate from and are not to be construed as being included in the Contractor's obligations under Section 3.18.

§ 10.2.6 The Contractor shall designate a responsible member of the Contractor's organization at the site whose duty shall be the prevention of accidents. This person shall be the Contractor's superintendent unless otherwise designated by the Contractor in writing to the Owner and Architect.

§ 10.2.7 The Contractor shall not load or permit any part of the construction or site to be loaded so as to endanger its safety.

§ 10.2.8 The Contractor shall provide and maintain in good operating condition suitable and adequate fire protection equipment and services, and shall comply with all reasonable recommendations regarding fire protection made by the representatives of the fire insurance company carrying insurance on the work or by the local fire chief or fire marshal. The area within the site limits shall be kept orderly and clean, and all combustible rubbish shall be promptly removed from the site.

§ 10.3 HAZARDOUS MATERIALS
§ 10.3.1 If reasonable precautions will be inadequate to prevent foreseeable bodily injury or death to persons resulting from a material or substance, including but not limited to asbestos or polychlorinated biphenyl (PCB), encountered on the site by the Contractor, the Contractor shall, upon recognizing the condition, immediately stop Work in the affected area and report the condition to the Owner and Architect in writing.

§ 10.3.2 The Owner shall obtain the services of a licensed laboratory to verify the presence or absence of the material or substance reported by the Contractor and, in the event such material or substance is found to be present, to verify that it has been rendered harmless. Unless otherwise required by the Contract Documents, the Owner shall furnish in writing to the Contractor and Architect the names and qualifications of persons or entities who are to perform tests verifying the presence or absence of such material or substance or who are to perform the task of removal or safe containment of such material or substance. The Contractor and the Architect will promptly reply to the Owner in writing stating whether or not either has reasonable objection to the persons or entities proposed by the Owner. If either the Contractor or Architect has an objection to a person or entity proposed by the Owner, the Owner shall propose another to whom the Contractor and the Architect have no reasonable objection. When the material or

Init.

/

AIA Document A201™ – 2007. Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987, 1997 and 2007 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 08:44:02 on 08/08/2016 under Order No.7899458379_1 which expires on 04/22/2017, and is not for resale.
User Notes:                                            (2017661168)

38

substance has been rendered harmless, Work in the affected area shall resume upon written agreement of the Owner and Contractor. The Contract Time shall be extended appropriately and the Contract Sum shall be increased in the amount of the Contractor's reasonable additional costs of shut-down, delay and start-up, which adjustments shall be accomplished as provided in Article 7.

§ 10.3.3 To the fullest extent permitted by law, the Owner shall indemnify and hold harmless the Contractor, Subcontractors, Architect, Architect's consultants and agents and employees of any of them from and against claims, damages, losses and expenses, including but not limited to attorneys' fees, arising out of or resulting from performance of the Work in the affected area if in fact the material or substance presents the risk of bodily injury or death as described in Section 10.3.1 and has not been rendered harmless, provided that such claim, damage, loss or expense is attributable to bodily injury, sickness, disease or death, or to injury to or destruction of tangible property (other than the Work itself) and provided that such damage, loss or expense is not due in whole or in part to the sole negligence of a party seeking indemnity.

§ 10.3.4 The Owner shall not be responsible under Section 10.3 for materials and substances brought to the site by the Contractor unless such materials or substances were required by the Contract Documents.

§ 10.3.5 If, without negligence on the part of the Contractor, the Contractor is held liable for the cost of remediation of a hazardous material or substance solely by reason of performing Work as required by the Contract Documents, the Owner shall indemnify the Contractor for all cost and expense thereby incurred.

*(Paragraphs deleted)*
## ARTICLE 11   INSURANCE AND BONDS
### § 11.1 CONTRACTOR'S LIABILITY INSURANCE
§ 11.1.1 The Contractor shall purchase from and maintain in a company or companies lawfully authorized to do business in the jurisdiction in which the Project is located such insurance as will protect the Contractor from claims set forth below which may arise out of or result from the Contractor's operations under the Contract and for which the Contractor may be legally liable,   such operations be by the Contractor or by a Subcontractor or by anyone directly or indirectly employed by any of them, or by anyone for whose acts any of them may be liable:

 .1 Claims under workers' compensation, disability benefit and other similar employee benefit acts which are applicable to the Work to be performed including private entities performing Work at the site and exempt from coverage on account of number of employees or occupation, which entities shall maintain voluntary compensation coverage at the same limits specified for mandatory coverage for the duration of the Project;

 .2 Contractor's employees or persons or entities excluded by statute from the requirements of clause but required by the Contract Documents to provide the insurance required by the clause;

 .3 Claims for damages because of bodily injury, sickness or disease, or death of any person other than the Contractor's employees;

 .4 Claims for damages insured by usual personal injury liability coverage;

 .5 Claims for damages, other than to the Work itself, because of injury to or destruction of tangible property, including loss of use resulting therefrom;

 .6 Claims for damages because of bodily injury, death of a person or property damage arising out of ownership, maintenance or use of a motor vehicle;

 .7 Claims for bodily injury or property damage arising out of completed operations; and

 .8 Claims involving contractual liability insurance applicable to the Contractor's obligations under Section 3.18.

 .9 The Contractor and its Subcontractors (unless otherwise agreed to in writing by the Owner) shall purchase and maintain the following insurance for the life of the Contract:

| COMMERCIAL GENERAL LIABILITY | Contractor | Subcontractors |
|---|---|---|
| Limits of Liability: | | |
| General Aggregate | $2,000,000 | $1,000,000 |
| Products/Completed Operations Aggregate | $2,000,000 | $1,000,000 |
| Contractual Liability | $2,000,000 | $1,000,000 |
| Each Occurrence | $1,000,000 | $1,000,000 |

AIA Document A201™ – 2007. Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987, 1997 and 2007 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 08:44:02 on 06/06/2016 under Order No.7898458378_1 which expires on 04/22/2017, and is not for resale.
User Notes:                     (2017881168)

Init.

/

**39**

| | | |
|---|---|---|
| Personal and Advertising Injury | $1,000,000 | $1,000,000 |
| Fire Legal Liability | $50,000 | $50,000 |
| Medical Payments | $5,000 | $5,000 |

Commercial General Liability Form to be used is CG00 01 10 01
Form includes S, C & U and Contractual Liability.

COMMERCIAL UMBRELLA LIABILITY

Limits of Liability:

| | | |
|---|---|---|
| General Aggregate | $5,000,000 | $1,000,000 |
| Each Occurrence | $5,000,000 | $1,000,000 |
| Max. Self-Insured Retention / Deductible | $50,000 | $50,000 |

AUTOMOBILE LIABILITY

Limits of Liability:

| | | |
|---|---|---|
| Bodily Injury or Property Damage Combined Single Limit | $1,000,000 | $1,000,000 |
| Personal Injury Protection (No Fault) | $10,000 | $10,000 |
| Hired – Non-Owned Liability | $1,000,000 | $1,000,000 |

| | Contractor | Subcontractors |
|---|---|---|
| WORKERS COMPENSATION | | |

Limits of Liability:

| | | Statutory | Statutory |
|---|---|---|---|
| Workers Compensation | | $100,000 | $100,000 |
| Employer's Liability – Each Accident | | $500,000 | $500,000 |
| Employer's Liability – Policy Limit by | Disease | $100,000 | $100,000 |
| Employer's Liability – Each Employee by | Disease | | |

**§ 11.1.2** The insurance required by Section 11.1.1 shall be written for not less than limits of liability specified in the Contract Documents or required by law, whichever coverage is greater. Coverages shall be written on an "occurrence" basis and shall be maintained without interruption from date of commencement of the Work, until Final Completion of the Work.

Such coverages shall be maintained by insurance carriers acceptable to Owner in all respects.

**§ 11.1.3** Certificates of insurance containing endorsements required herein acceptable to the Owner shall be filed with the Owner prior to commencement of the Work. These certificates and the insurance policies required by this Section 11.1 shall contain a provision that coverages afforded under the policies will not be canceled or allowed to expire until at least 30 days' prior written notice has been given to the Owner. If any of the foregoing insurance coverages are required to remain in force after final payment and are reasonably available, an additional certificate evidencing continuation of such coverage shall be submitted with the final Application for Payment as required by Section 9.10.2. Information concerning reduction of coverage on account of revised limits or claims paid under the General Aggregate, or both, shall be furnished by the Contractor with reasonable promptness in accordance with the Contractor's information and belief.   All written notices to be given to Owner shall be given by registered mail, return receipt requested   The Contractor shall furnish to the Owner or Owner's Representative with copies of any endorsements that are subsequently issued amending coverage or limits. Failure of the Contractor to obtain and maintain required insurance shall be grounds for termination of the Contract by the Owner.   The Owner shall be listed as a named additional insured by appropriate endorsements concerning all insurance coverages furnished by Contractor with the exception of Worker's Compensation. The Contractor shall provide Certificates of Insurance evidencing the named additional insured status of the Owner.

**§ 11.1.4**   The insurance required by this Paragraph for the Contractor shall be written with a company having at least an "A" policyholder's rating and a minimum Class 15 financial rating as listed in the latest edition of Best's

Init.

/

AIA Document A201™ – 2007. Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987, 1997 and 2007 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 08:44:02 on 06/06/2016 under Order No.7898458378_1 which expires on 04/22/2017, and is not for resale.
User Notes:                                                                                                                     (2017881168)

40

Complaint, Exh. A

Insurance Guide. The insurance required by this Paragraph for the each Subcontractor shall be written with a company having at least an "B+" policyholder's rating and a minimum Class 5 financial rating as listed in the latest edition of Best's Insurance Guide.

§11.1.5  The Contractor shall carry sufficient comprehensive insurance on equipment at the site and in transit to and from the site. It is expressly understood that the Owner and Architect shall have no liability from damage to equipment.

§11.1.6  The Contractor shall remain fully liable and responsible for all obligations under the Contract Documents, whether or not the insurance provided by him is approved by the Owner or Architect and whether or not it is sufficient in amount, quality and coverage to protect him against such liability, and shall pay and make good all such obligations to the full extent such insurance does not cover them.

## § 11.2 OWNER'S LIABILITY INSURANCE
§ 11.2.1  The Owner shall be responsible for purchasing and maintaining the Owner's usual liability insurance.

## § 11.3 PROJECT MANAGEMENT PROTECTIVE LIABILITY INSURANCE
§ 11.3.1  Optionally, the Owner may require the Contractor to purchase and maintain Project Management Protective Liability insurance from the Contractor's usual sources as primary coverage for the Owner's, Contractor's and Architect's vicarious liability for construction operations under the Contract. Unless otherwise required by the Contract Documents, the Owner shall reimburse the Contractor by increasing the Contract Sum to pay the cost of purchasing and maintaining such optional insurance coverage, and the Contractor shall not be responsible for purchasing any other liability insurance on behalf of the Owner. The minimum limits of liability purchased with such coverage shall be equal to the aggregate of the limits required for Contractor's Liability Insurance under Sections 11.1.1.2 through 11.1.1.5.

*(Paragraphs deleted)*
§ 11.3.2  To the extent damages are covered by Project Management Protective Liability insurance, the Owner, Contractor and Architect waive all rights against each other for damages, except such rights as they may have to the proceeds of such insurance. The policy shall provide for such waivers of subrogation by endorsement or otherwise.

§ 11.3.3  The Owner shall not require the Contractor to include the Owner, Architect or other persons or entities as additional insureds on the Contractor's Liability Insurance coverage under Section 11.1.

*(Paragraphs deleted)*
## § 11.4 PROPERTY INSURANCE
§ 11.4.1  Unless otherwise provided, the Contractor shall purchase and maintain, in a company or companies lawfully authorized to do business in the jurisdiction in which the Project is located, property insurance written on a builder's risk "all-risk" or equivalent policy form in the amount of the initial Contract Sum, plus value of subsequent Contract Modifications and cost of materials supplied or installed by others, comprising total value for the entire Project at the site on a replacement cost basis without optional deductibles. Such property insurance shall be maintained, unless otherwise provided in the Contract Documents or otherwise agreed in writing by all persons and entities who are beneficiaries of such insurance, until final payment has been made as provided in Section 9.10 or until no person or entity other than the Owner has an insurable interest in the property required by this Section 11.4 to be covered, whichever is later. This insurance shall include interests of the Owner, the Contractor, Subcontractors and Sub-subcontractors in the Project.

§ 11.4.1.1  Property insurance shall be on an "all-risk" or equivalent policy form and shall include, without limitation, insurance against the perils of fire (with extended coverage) and physical loss or damage including, without duplication of coverage, theft, vandalism, malicious mischief, collapse, earthquake, flood, windstorm, falsework, testing and startup, temporary buildings and debris removal including demolition occasioned by enforcement of any applicable legal requirements, and shall cover reasonable compensation for Architect's and Contractor's services and expenses required as a result of such insured loss.

§ 11.4.1.2  If the Owner does not intend to purchase such property insurance required by the Contract and with all of the coverages in the amount described above, then the Owner shall so inform the Contractor in writing prior to commencement of the Work. The Contractor may then effect insurance which will protect the interests of the

AIA Document A201™ – 2007. Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987, 1997 and 2007 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 08:44:02 on 06/06/2016 under Order No.7668456378_1 which expires on 04/22/2017, and is not for resale.
User Notes: (2017881168)

Init.

/

41

Complaint, Exh. A

Contractor, Subcontractors and Sub-subcontractors in the Work, and by appropriate Change Order the cost thereof shall be charged to the Owner. If the Contractor is damaged by the failure or neglect of the Owner to purchase or maintain insurance as described above, without so notifying the Contractor in writing, then the Owner shall bear all reasonable costs properly attributable thereto.

§ 11.4.1.3 If the property insurance requires deductibles, the Owner shall pay costs not covered because of such deductibles.

§ 11.4.1.4 This property insurance shall cover portions of the Work stored off the site, and also portions of the Work in transit.

§ 11.4.1.5 Partial occupancy or use in accordance with Section 9.9 shall not commence until the insurance company or companies providing property insurance have consented to such partial occupancy or use by endorsement or otherwise. The Owner and the Contractor shall take reasonable steps to obtain consent of the insurance company or companies and shall, without mutual written consent, take no action with respect to partial occupancy or use that would cause cancellation, lapse or reduction of insurance.

§ 11.4.2 LOSS OF USE INSURANCE
§ 11.4.2.1 If during the Project construction period the Owner insures properties, real or personal or both, at or adjacent to the site by property insurance under policies separate from those insuring the Project, or if after final payment property insurance is to be provided on the completed Project through a policy or policies other than those insuring the Project during the construction period, the Owner shall waive all rights in accordance with the terms of Section 11.4.7 for damages caused by fire or other causes of loss covered by this separate property insurance. All separate policies shall provide this waiver of subrogation by endorsement or otherwise.

§ 11.4.2.2 Before an exposure to loss may occur, the Owner shall file with the Contractor a copy of each policy that includes insurance coverages required by this Section 11.4. Each policy shall contain all generally applicable conditions, definitions, exclusions and endorsements related to this Project. Each policy shall contain a provision that the policy will not be canceled or allowed to expire, and that its limits will not be reduced, until at least 30 days' prior written notice has been given to the Contractor.

§ 11.4.2.3 WAIVERS OF SUBROGATION
The Owner and Contractor waive all rights against (1) each other and any of their subcontractors, sub-subcontractors, agents and employees, each of the other, and (2) the Architect, Architect's consultants, separate contractors described in Article 6, if any, and any of their subcontractors, sub-subcontractors, agents and employees, for damages caused by fire or other causes of loss to the extent covered by property insurance obtained pursuant to this Section 11.4 or other property insurance applicable to the Work, except such rights as they have to proceeds of such insurance held by the Owner as fiduciary. The Owner or Contractor, as appropriate, shall require of the Architect, Architect's consultants, separate contractors described in Article 6, if any, and the subcontractors, sub-subcontractors, agents and employees of any of them, by appropriate agreements, written where legally required for validity, similar waivers each in favor of other parties enumerated herein. The policies shall provide such waivers of subrogation by endorsement or otherwise. A waiver of subrogation shall be effective as to a person or entity even though that person or entity would otherwise have a duty of indemnification, contractual or otherwise, did not pay the insurance premium directly or indirectly, and whether or not the person or entity had an insurable interest in the property damaged.

§ 11.4.2.4 A loss insured under Owner's property insurance shall be adjusted by the Owner as fiduciary and made payable to the Owner as fiduciary for the insureds, as their interests may appear, subject to requirements of any applicable mortgagee clause and of Section 11.4.10. The Contractor shall pay Subcontractors their just shares of insurance proceeds received by the Contractor, and by appropriate agreements, written where legally required for validity, shall require Subcontractors to make payments to their Sub-subcontractors in similar manner.

§ 11.4.2.5 If required in writing by a party in interest, the Owner as fiduciary shall, upon occurrence of an insured loss, give bond for proper performance of the Owner's duties. The cost of required bonds shall be charged against proceeds received as fiduciary. The Owner shall deposit in a separate account proceeds so received, which the Owner shall distribute in accordance with such agreement as the parties in interest may reach, or in accordance with an arbitration award in which case the procedure shall be as provided in Section 4.6. If after such loss no other

Init.

/

AIA Document A201™ – 2007. Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987, 1997 and 2007 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 08:44:02 on 06/06/2016 under Order No.7698456378_1 which expires on 04/22/2017, and is not for resale.
User Notes:                                                                                          (2017881168)

42

special agreement is made and unless the Owner terminates the Contract for convenience, replacement of damaged property shall be performed by the Contractor after notification of a Change in the Work in accordance with Article 7.

§ 11.4.2.6 The Owner as fiduciary shall have power to adjust and settle a loss with insurers unless one of the parties in interest shall object in writing within five days after occurrence of loss to the Owner's exercise of this power; if such objection is made, the dispute shall be resolved as provided in Sections 4.5 and 4.6.  The Owner as fiduciary shall, in the case of arbitration, make settlement with insurers in accordance with directions of the arbitrators.  If distribution of insurance proceeds by arbitration is required, the arbitrators will direct such distribution.

### § 11.5 PERFORMANCE BOND AND PAYMENT BOND
§ 11.5.1 The Contractor shall furnish bonds covering faithful performance of the Contract and payment of obligations arising thereunder as stipulated in bidding requirements or specifically required in the Contract Documents on the date of execution of the Contract.  The bonds and the surety shall be satisfactory to the Owner.  Conditional Payment Bonds are not acceptable, and will not be used on the Project.

§ 11.5.2 Upon the request of any person or entity appearing to be a potential beneficiary of bonds covering payment of obligations arising under the Contract, the Contractor shall promptly furnish a copy of the bonds or shall authorize a copy to be furnished, and shall name Owner's lender(s) as dual obliges under the bonds by appropriate rider.

## ARTICLE 12   UNCOVERING AND CORRECTION OF WORK
### § 12.1 UNCOVERING OF WORK
§ 12.1.1 If a portion of the Work is covered contrary to the Architect's request or to requirements specifically expressed in the Contract Documents, it must, if required in writing by the Architect, be uncovered for the Architect's examination and be replaced at the Contractor's expense without change in the Contract Time.

§ 12.1.2 If a portion of the Work has been covered which the Architect has not specifically requested to examine prior to its being covered, the Architect may request to see such Work and it shall be uncovered by the Contractor. If such Work is in accordance with the Contract Documents, costs of uncovering and replacement shall, by appropriate Change Order, be at the Owner's expense. If such Work is not in accordance with the Contract Documents, correction shall be at the Contractor's expense unless the condition was caused by the Owner or a separate contractor in which event the Owner shall be responsible for payment of such costs.

### § 12.2 CORRECTION OF WORK
### § 12.2.1 BEFORE OR AFTER SUBSTANTIAL COMPLETION
§ 12.2.1.1 The Contractor shall promptly correct Work rejected by the Owner and Architect or failing to conform to the requirements of the Contract Documents, whether discovered before or after Substantial Completion and whether or not fabricated, installed or completed. Costs of correcting such rejected Work, including additional testing and inspections and compensation for the Architect's services and expenses made necessary thereby, shall be at the Contractor's expense.

### § 12.2.2 AFTER SUBSTANTIAL COMPLETION
§ 12.2.2.1 Contractor shall be solely responsible and pay for any loss, cost, damage or expense of any sort, including, without limitation, injury to or death of persons and loss or damage to property or other work, arising out of, resulting from or caused by any defective materials or workmanship occurring within one year of Substantial Completion.  Within one year of Substantial Completion, Contractor shall, without cost or expense to Owner and without limitation of Owner's other rights and remedies under the Contract Documents with respect to defective work, remedy all such defects.  In addition to the Contractor's obligations under Section 3.5, if, within one year after the date of Substantial Completion of the Work or designated portion thereof or after the date for commencement of warranties established under Section 9.9.1, or by terms of an applicable special warranty required by the Contract Documents, any of the Work is found to be not in accordance with the requirements of the Contract Documents, the Contractor shall correct it promptly after receipt of written notice from the Owner to do so unless the Owner has previously given the Contractor a written acceptance of such condition. The Owner shall give such notice promptly after discovery of the condition. During the one-year period for correction of Work, if the Owner fails to notify the Contractor and give the Contractor an opportunity to make the correction, the Owner waives the rights to require correction by the Contractor and to make a claim for breach of warranty. If the Contractor fails to

Init.

/

AIA Document A201™ – 2007. Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987, 1997 and 2007 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 08:44:02 on 06/06/2016 under Order No.7898458378_1 which expires on 04/22/2017, and is not for resale.
User Notes:                                                                (2017861166)

43

Complaint, Exh. A

correct nonconforming Work within a reasonable time during that period after receipt of notice from the Owner or Architect, the Owner may correct it in accordance with Section 2.4. When called upon to perform under this Warranty, Contractor shall commence such performance within seven (7) working days of notification and shall complete all work relating thereto with due diligence. Upon failure of Contractor to do so, Owner may cause such defects to be remedied by a person other than Contractor at Contractor's expense, including furnishing such supervision, materials and/or labor as are necessary to bring the Work up to the required standard. In the event such defect is in the nature of or causes an emergency condition, Owner may undertake the work of correction and replacement on behalf of and without notice to Contractor. All reasonable and necessary costs incurred by Owner to remedy such defects (including, without limitation, the cost of emergency work) shall be deducted from any amounts due Contractor, or if such costs exceed the amounts due, Contractor shall promptly pay Owner such excess immediately upon demand and presentation of supporting documentation per 7.3.6. Contractor shall, at Owner's request, assign to Owner all assignable warranties it obtains from manufacturers or suppliers with respect to any materials, equipment or fixtures incorporated in the Work

§ 12.2.2.2 The one-year period for correction of Work shall be extended with respect to portions of Work first performed after Substantial Completion by the period of time between Substantial Completion and the actual performance of the Work.

§ 12.2.2.3 The one-year period for correction of Work shall not be extended by corrective Work performed by the Contractor pursuant to this Section 12.2.

§ 12.2.3 The Contractor shall remove from the site portions of the Work which are not in accordance with the requirements of the Contract Documents and are neither corrected by the Contractor nor accepted by the Owner.

§ 12.2.4 The Contractor shall bear the cost, unless covered by insurance, of correcting destroyed or damaged construction, whether completed or partially completed, of the Owner or separate contractors caused by the Contractor's correction or removal of Work which is not in accordance with the requirements of the Contract Documents.

§ 12.2.5 Nothing contained in this Section 12.2 shall be construed to establish a period of limitation with respect to other obligations which the Contractor might have under the Contract Documents. Establishment of the one-year period for correction of Work as described in Section 12.2.2 relates only to the specific obligation of the Contractor to correct the Work, and has no relationship to the time within which the obligation to comply with the Contract Documents may be sought to be enforced, nor to the time within which proceedings may be commenced to establish the Contractor's liability with respect to the Contractor's obligations other than specifically to correct the Work.

§ 12.3 ACCEPTANCE OF NONCONFORMING WORK
§ 12.3.1 If the Owner prefers to accept Work which is not in accordance with the requirements of the Contract Documents, the Owner may do so instead of requiring its removal and correction, in which case the Contract Sum will be reduced as appropriate and equitable. Such adjustment shall be effected whether or not final payment has been made.

ARTICLE 13   MISCELLANEOUS PROVISIONS
§ 13.1 GOVERNING LAW
§ 13.1.1 The Contract shall be governed by the law of the place where the Project is located.

§ 13.1.2 This Agreement is contingent upon Owner obtaining acceptable financing and successful closing of such financing. Contractor agrees that if Owner is not successful in obtaining acceptable financing prior to the issuance of a Notice to Proceed, this Agreement is null and void, and contractor shall be reimbursed his actual costs incurred before it receives notice from Owner of its failure to obtain financing.

§ 13.2 SUCCESSORS AND ASSIGNS
§ 13.2.1 The Owner and Contractor respectively bind themselves, their partners, successors, assigns and legal representatives to the other party hereto and to partners, successors, assigns and legal representatives of such other party in respect to covenants, agreements and obligations contained in the Contract Documents. The Contractor's duties under this Contract are not assignable without the written consent of the Owner. The Contractor may not assign any right to any money due or to become due under this Contract without written consent of Owner. The

AIA Document A201™ – 2007. Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987, 1997 and 2007 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 08:44:02 on 06/06/2016 under Order No.7698458378_1 which expires on 04/22/2017, and is not for resale.
User Notes: (2017881168)

Init.

/

Complaint, Exh. A

Contractor understands and acknowledges that the Owner may assign it rights under this Contract to its lender and the Contractor agrees that following such assignment, all rights of the Owner under this Contract shall be enforceable by the lenders. The Contractor acknowledges that it will enter into an agreement with such lender pursuant to which, at the lender's request, the Contractor shall complete the Work upon payment of the balance of the Contract Sum.

§ 13.2.2 The Owner may, without consent of the Contractor, assign the Contract to an institutional lender providing construction financing for the Project. In such event, the lender shall assume the Owner's rights and obligations under the Contract Documents. The Contractor shall execute all consents reasonably required to facilitate such assignment.

### § 13.3 WRITTEN NOTICE
§ 13.3.1 Written notice shall be deemed to have been duly served if delivered in person to the individual or a member of the firm or entity or to an officer of the corporation for which it was intended, or if delivered at or sent by registered or certified mail to the last business address known to the party giving notice.

### § 13.4 RIGHTS AND REMEDIES
§ 13.4.1 Duties and obligations imposed by the Contract Documents and rights and remedies available thereunder shall be in addition to and not a limitation of duties, obligations, rights and remedies otherwise imposed or available by law.

§ 13.4.2 No action or failure to act by the Owner, Architect or Contractor shall constitute a waiver of a right or duty afforded them under the Contract, nor shall such action or failure to act constitute approval of or acquiescence in a breach thereunder, except as may be specifically agreed in writing.

### § 13.4.3 INVALIDITY.
The invalidity of any part of provision of the Contract Documents shall not impair or affect in any manner whatsoever the validity, enforceability or effect of the remainder of the Contract Documents.

### § 13.5 TESTS AND INSPECTIONS
§ 13.5.1 Tests, inspections and approvals of portions of the Work required by the Contract Documents or by laws, ordinances, rules, regulations or orders of public authorities having jurisdiction shall be made at an appropriate time. Unless otherwise provided, the Contractor shall make arrangements for such tests, inspections and approvals with an independent testing laboratory or entity acceptable to the Owner, or with the appropriate public authority, and shall bear all related costs of tests, inspections and approvals. The Contractor shall give the Architect timely notice of when and where tests and inspections are to be made so that the Architect may be present for such procedures. The Owner shall bear costs of tests, inspections or approvals which do not become requirements until after bids are received or negotiations concluded.

§ 13.5.2 If the Architect, Owner or public authorities having jurisdiction determine that portions of the Work require additional testing, inspection or approval not included under Section 13.5.1, the Architect will, upon written authorization from the Owner, instruct the Contractor to make arrangements for such additional testing, inspection or approval by an entity acceptable to the Owner, and the Contractor shall give timely notice to the Architect of when and where tests and inspections are to be made so that the Architect may be present for such procedures. Such costs, except as provided in Section 13.5.3, shall be at the Owner's expense.

§ 13.5.3 If such procedures for testing, inspection or approval under Sections 13.5.1 and 13.5.2 reveal failure of the portions of the Work to comply with requirements established by the Contract Documents, all costs made necessary by such failure including those of repeated procedures and compensation for the Architect's services and expenses shall be at the Contractor's expense.

§ 13.5.4 Required certificates of testing, inspection or approval shall, unless otherwise required by the Contract Documents, be secured by the Contractor and promptly delivered to the Architect.

§ 13.5.5 If the Architect is to observe tests, inspections or approvals required by the Contract Documents, the Architect will do so promptly and, where practicable, at the normal place of testing.

AIA Document A201™ – 2007. Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987, 1997 and 2007 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 08:44:02 on 06/06/2016 under Order No.7898458378_1 which expires on 04/22/2017, and is not for resale.
User Notes: (2017881168)

Complaint, Exh. A

§ 13.5.6 Tests or inspections conducted pursuant to the Contract Documents shall be made promptly to avoid unreasonable delay in the Work.

## § 13.6 INTEREST

§ 13.6.1 Payments due and unpaid under the Contract Documents shall bear interest from the date payment is due at such rate as the parties may agree upon in the Agreement or, in the absence thereof, at the legal rate prevailing from time to time at the place where the Project is located.

## § 13.7 COMMENCEMENT OF STATUTORY LIMITATION PERIOD

§ 13.7.1 As between the Owner and Contractor:

.1 Before Substantial Completion. As to acts or failures to act occurring prior to the relevant date of Substantial Completion, any applicable statute of limitations shall commence to run and any alleged cause of action shall be deemed to have accrued in any and all events not later than such date of Substantial Completion;

.2 Between Substantial Completion and Final Certificate for Payment. As to acts or failures to act occurring subsequent to the relevant date of Substantial Completion and prior to issuance of the final Certificate for Payment, any applicable statute of limitations shall commence to run and any alleged cause of action shall be deemed to have accrued in any and all events not later than the date of issuance of the final Certificate for Payment; and

.3 After Final Certificate for Payment. As to acts or failures to act occurring after the relevant date of issuance of the final Certificate for Payment, any applicable statute of limitations shall commence to run and any alleged cause of action shall be deemed to have accrued in any and all events not later than the date of any act or failure to act by the Contractor pursuant to any Warranty provided under Section 3.5, the date of any correction of the Work or failure to correct the Work by the Contractor under Section 12.2, or the date of actual commission of any other act or failure to perform any duty or obligation by the Contractor or Owner, whichever occurs last.

## § 13.8 DAVIS-BACON ACT (40 U.S.C 276A) AS SUPPLEMENTED IN DEPARTMENT OF LABOR REGULATIONS (29 C.F.R. PART 5).

§ 13.8.1 The Contractor must comply with the minimum rates for wages for laborers and mechanics as determined by the Secretary of Labor in accordance with the provision of this Act.

## ARTICLE 14   TERMINATION OR SUSPENSION OF THE CONTRACT
## § 14.1 TERMINATION BY THE CONTRACTOR

§ 14.1.1 The Contractor may terminate the Contract if the Work is stopped for a period of 60 consecutive days through no act or fault of the Contractor or a Subcontractor, Sub-subcontractor or their agents or employees or any other persons or entities performing portions of the Work under direct or indirect contract with the Contractor, for any of the following reasons:

.1 Issuance of an order of a court or other public authority having jurisdiction which requires all Work to be stopped;

.2 An act of government, such as a declaration of national emergency which requires all Work to be stopped;

.3 Because the Architect has not issued a Certificate for Payment and has not notified the Contractor of the reason for withholding certification as provided in Section 9.4.1, or because the Owner has not made payment on a Certificate for Payment within the time stated in the Contract Documents; or

.4 The Owner has failed to furnish to the Contractor promptly, upon the Contractor's request, reasonable evidence as required by Section 2.2.1.

§ 14.1.2 The Contractor may terminate the Contract if, through no act or fault of the Contractor or a Subcontractor, Sub-subcontractor or their agents or employees or any other persons or entities performing portions of the Work under direct or indirect contract with the Contractor, repeated suspensions, or delays to the critical path as described in Section 14.3 constitute in the aggregate more than 100 percent of the total number of days scheduled for completion, or 120 days in any 365-day period, whichever is less.

§ 14.1.3 If one of the reasons described in Section 14.1.1 or 14.1.2 exists, the Contractor may, upon seven days' written notice to the Owner and Architect, terminate the Contract and recover from the Owner payment for Work

Init.

AIA Document A201™ – 2007. Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987, 1997 and 2007 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 08:44:02 on 06/06/2016 under Order No.7898458378_1 which expires on 04/22/2017, and is not for resale.
User Notes:                                                                                                                          (2017881168)

Complaint, Exh. A

executed and for proven loss with respect to materials, equipment, tools, and construction equipment and machinery, including reasonable overhead, profit, and damages.

§ 14.1.4 If the Work is stopped for a period of 60 consecutive days through no act or fault of the Contractor or a Subcontractor or their agents or employees or any other persons performing portions of the Work under contract with the Contractor because the Owner has persistently failed to fulfill the Owner's obligations under the Contract Documents with respect to matters important to the progress of the Work, the Contractor may, upon seven additional days' written notice to the Owner and the Architect, terminate the Contract and recover from the Owner as provided in Section 14.1.3.

### § 14.2 TERMINATION BY THE OWNER FOR CAUSE
§ 14.2.1 The Owner may terminate the Contract if the Contractor:
- .1 persistently or repeatedly refuses or fails to supply enough properly skilled workers or proper materials;
- .2 fails to make payment to Subcontractors for materials or labor in accordance with the respective agreements between the Contractor and the Subcontractors;
- .3 persistently disregards laws, ordinances, codes or rules, regulations or orders of a public authority having jurisdiction; or
- .4 otherwise is guilty of substantial breach of a provision of the Contract Documents.

§ 14.2.2 When any of the above reasons exist, the Owner may without prejudice to any other rights or remedies of the Owner and after giving the Contractor and the Contractor's surety, if any, seven days' written notice, terminate employment of the Contractor and may, subject to any prior rights of the surety:
- .1 Take possession of the site and of all materials, equipment, tools, and construction equipment and machinery thereon owned by the Contractor;
- .2 Accept assignment of subcontracts pursuant to Section 5.4; and
- .3 Finish the Work by whatever reasonable method the Owner may deem expedient. Upon request of the Contractor, the Owner shall furnish to the Contractor a detailed accounting of the costs incurred by the Owner in finishing the Work.

§ 14.2.3 When the Owner terminates the Contract for one of the reasons stated in Section 14.2.1, the Contractor shall not be entitled to receive further payment until the Work is finished.

§ 14.2.4 If the unpaid balance of the Contract Sum exceeds costs of finishing the Work, including compensation for the Architect's services and expenses made necessary thereby, and other damages incurred by the Owner and not expressly waived, such excess shall be paid to the Contractor. If such costs and damages exceed the unpaid balance, the Contractor shall pay the difference to the Owner. The amount to be paid to the Contractor or Owner, as the case may be, shall be certified by the Architect, upon application, and this obligation for payment shall survive termination of the Contract.

### § 14.3 SUSPENSION BY THE OWNER FOR CONVENIENCE
§ 14.3.1 The Owner may, without cause, order the Contractor in writing to suspend, delay or interrupt the Work in whole or in part for such period of time as the Owner may determine.

§ 14.3.2 The Contract Sum and Contract Time shall be adjusted for increases in the cost and time caused by suspension, delay or interruption as described in Section 14.3.1. Adjustment of the Contract Sum shall include profit. No adjustment shall be made to the extent:
- .1 that performance is, was or would have been so suspended, delayed or interrupted by another cause for which the Contractor is responsible; or
- .2 that an equitable adjustment is made or denied under another provision of the Contract.

### § 14.4 TERMINATION BY THE OWNER FOR CONVENIENCE
§ 14.4.1 The Owner may, at any time, terminate the Contract for the Owner's convenience and without cause. Termination by Owner under this Subparagraph 14.4 shall be by seven (7) days' prior written notice of termination given to Contractor specifying the extent of termination and the effective date.

Init.

/

AIA Document A201™ – 2007. Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987, 1997 and 2007 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 06:44:02 on 06/06/2016 under Order No.7808458378_1 which expires on 04/22/2017, and is not for resale.
User Notes:                                                                                                               (2017881168)

47

§ 14.4.2 Upon receipt of written notice from the Owner of such termination for the Owner's convenience, the Contractor shall:

.1   cease operations as directed by the Owner in the notice;

.2   take actions necessary, or that the Owner may direct, for the protection and preservation of the Work;

.3   except for Work directed to be performed prior to the effective date of termination stated in the notice, terminate all existing subcontracts and purchase orders and enter into no further subcontracts and purchase orders;

.4   complete the performance of Work not terminated; and

.5   take such other actions as may be necessary or requested by Owner for the protection and reservation of the terminated Work.

§ 14.4.3 In the event of termination for Owner's convenience, Contractor shall be paid:

.1   for Work performed on the terminated portion of the Work before the effective date of termination, for lump sum and Allowance Items, for goods, services and labor meeting the definitions of Costs of the Work under clauses 1 through 5 of Subparagraph 7.3.6 for that Work or, for unit cost items, the cost based upon the units performed before the effective date of termination.   In addition, Contractor shall be paid the cost of settling and paying termination costs under terminated subcontracts or properly chargeable to the terminated portion of the Work;

.2   reasonable costs directly related to such termination as described in detail in invoices and descriptions provided by Contractor and as approved by the Architect, including but not limited to stored materials that cannot be returned to their respective vendors; and

.3   if Contractor would have earned a profit under the Contract had the Work been completed, a pro rata portion of such profit based upon the percentage of completed Work as of the effective date of termination.

§ 14.4.4   In determining amounts due Contractor under this Paragraph 14.4, Owner shall be credited for payments previously made to Contractor for the terminated portion of the Work and claims which Owner has against Contractor under the Contract, and for the value of materials, supplies, equipment or other items to be disposed of by Contractor that are covered under the Contract Sum previously made to Contractor.

*(Paragraphs deleted)*

Init.

AIA Document A201™ – 2007. Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987, 1997 and 2007 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 08:44:02 on 06/06/2016 under Order No.7898458378_1 which expires on 04/22/2017, and is not for resale.
User Notes:                                                                                               (2017881168)

Complaint, Exh. A

## Additions and Deletions Report for
## AIA® Document A201™ – 2007

This Additions and Deletions Report, as defined on page 1 of the associated document, reproduces below all text the author has added to the standard form AIA document in order to complete it, as well as any text the author may have added to or deleted from the original AIA text. Added text is shown underlined. Deleted text is indicated with a horizontal line through the original AIA text.

Note:  This Additions and Deletions Report is provided for information purposes only and is not incorporated into or constitute any part of the associated AIA document. This Additions and Deletions Report and its associated document were generated simultaneously by AIA software at 08:44:02 on 06/08/2016.

PAGE 1

Freedom's Path – Historic Rehabilitation of the Existing Structure;
Building # 7 – Transitional Housing – Approximately 20 units – Single Story
Veterans Administration Campus, Augusta, Georgia 30904

...

FP Augusta II, LLC, as assignee of
Freedom's Path First Step Limited Partnership
Attn: Donald Paxton, Manager
3550 South Tamiami Trail, Suite 301
Sarasota, FL 34239

...

Gruber & Associates Architects, LLC
Attn: Morton M. Gruber, AIA, Manager
245 Peachtree Center Ave, NE, Suite 2445
Atlanta, GA 30303

...

4    ~~ARCHITECT~~ADMINISTRATION OF THE CONTRACT

PAGE 2

~~15    CLAIMS AND DISPUTES~~

PAGE 11

The Contract Documents ~~are enumerated in~~ consist of the Agreement between ~~the~~ Owner and Contractor (hereinafter ~~the Agreement) and consist of the Agreement, Agreement),~~ Conditions of the Contract (General, Supplementary and other Conditions), Drawings, Specifications, Qualifications and Clarifications, Addenda issued prior to execution of the Contract, other documents listed in the Agreement and Modifications issued in writing after execution of the Contract. A Modification is (1) a written amendment to the Contract signed by both parties, (2) a Change Order, (3) a Construction Change Directive or (4) a written order for a minor change in the Work issued by the Architect. Unless specifically enumerated in the Agreement, the Contract Documents do not include ~~the advertisement~~ other documents such as bidding requirements (advertisement or invitation to bid, Instructions to Bidders, sample forms, ~~other information furnished by the Owner in anticipation of receiving bids or proposals, the~~ Contractor's bid ~~or proposal,~~ or portions of Addenda relating to bidding requirements.

Additions and Deletions Report for AIA Document A201™ – 2007. Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987, 1997 and 2007 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 08:44:02 on 06/08/2016 under Order No.7898458378_1 which expires on 04/22/2017, and is not for resale.
User Notes:                                                                                    (2017881168)

1

...

The Contract Documents form the Contract for Construction. The Contract represents the entire and integrated agreement between the parties hereto and supersedes prior negotiations, representations or agreements, either written or oral. The Contract may be amended or modified only by a written Modification. The Contract Documents shall not be construed to create a contractual relationship of any kind (1) between the ~~Contractor and the Architect or the Architect's consultants~~ Architect and Contractor, (2) between the Owner and a Subcontractor or a Sub-subcontractor, (3) between the Owner and ~~the Architect or the Architect's consultants~~ or (4) between any persons or entities other than the Owner and the Contractor. The Architect shall, however, be entitled to performance and enforcement of obligations under the Contract intended to facilitate performance of the Architect's duties.

...

The term "Work" means the construction and services required by the Contract Documents, whether completed or partially completed, and includes all other labor, materials, equipment and services provided or to be provided by the Contractor to fulfill the Contractor's obligations. The Work may constitute the whole or a part of the Project. Contractor acknowledges and agrees that the Contract Documents are adequate and sufficient to provide for the commencement of the Work, and include all Work, whether or not shown or described, which reasonably may be inferred to be required or useful for the completion of the Work in accordance with all applicable laws, codes, and professional standards.  Contractor also acknowledges that it has included in the Contract Sum sufficient money to compensate Contractor for any impacts or delays encountered during performance of the Work as a result of the activities or lack of activity of other Contractors on the site under separate contract with the Owner, and Contractor warrants that it waives any and all claims against Owner arising from the timeliness of the Work of those contractors, and any coordination between Contractor's work and the work of such contractors.

...

The Project is the total construction of which the Work performed under the Contract Documents may be the whole or a part and which may include construction by the Owner ~~and~~ or by separate contractors.

...

§ 1.1.8 INITIAL DECISION MAKER
~~The Initial Decision Maker is the person identified in the Agreement to render initial decisions on Claims in accordance with Section 15.2 and certify termination of the Agreement under Section 14.2.2.~~

§ 1.2.1 The intent of the Contract Documents is to include all items necessary for the proper execution and completion of the Work by the Contractor. Contractor acknowledges that it has carefully reviewed the Contract Documents and that they appear to be complete and consistent, and are sufficient to permit Contractor to establish the Contract Sum, the Project Schedule, and to prepare any required shop drawings.  The Contract Documents are complementary, and what is required by one shall be as binding as if required by all; performance by the Contractor shall be required only to the extent consistent with the Contract Documents and reasonably inferable from them as being necessary to produce the indicated results.

PAGE 12

§ 1.2.3 Unless otherwise stated in the Contract Documents, words ~~that~~ which have well-known technical or construction industry meanings are used in the Contract Documents in accordance with such recognized meanings.

§ 1.2.4    Conflicts or discrepancies among the Contract Documents shall be resolved in the following order of priority:

_____    1.   AIA A102 (2007) Agreement (as amended);

_____    2.   Amendments and revisions of later date take precedence over those of earlier dates;

Additions and Deletions Report for AIA Document A201™ – 2007. Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987, 1997 and 2007 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 08:44:02 on 06/08/2016 under Order No.7868458378_1 which expires on 04/22/2017, and is not for resale.
User Notes:                                                                                                    (2017881168)

Complaint, Exh. A

.3   The A201 General Conditions, as amended;

.4   Drawings and Specifications; Drawings govern Specifications for quantity and location, and Specifications govern Drawings for quality and performance.   In the event of ambiguity in quantity or quality, the greater quantity and the better quality shall govern; and

.5   Figure dimensions govern scale dimensions and large scale Drawings govern small scale Drawings.

~~Terms capitalized in these General Conditions include those that are (1) specifically defined, (2) the titles of numbered articles or (3) the titles of other documents published by the American Institute of Architects.~~§ 1.3.1 Terms capitalized in these General Conditions include those which are (1) specifically defined, (2) the titles of numbered articles or (3) the titles of other documents published by the American Institute of Architects.

~~In the interest of brevity the Contract Documents frequently omit modifying words such as "all" and "any" and articles such as "the" and "an," but the fact that a modifier or an article is absent from one statement and appears in another is not intended to affect the interpretation of either statement.~~§ 1.4.1 In the interest of brevity the Contract Documents frequently omit modifying words such as "all" and "any" and articles such as "the" and "an," but the fact that a modifier or an article is absent from one statement and appears in another is not intended to affect the interpretation of either statement.

§ 1.5
~~OWNERSHIP AND USE OF DRAWINGS, SPECIFICATIONS AND OTHER INSTRUMENTS OF SERVICE~~EXECUTION OF CONTRACT DOCUMENTS

§ 1.5.2 The ~~Contractor, Subcontractors, Sub-subcontractors and material or equipment suppliers are authorized to use and reproduce the Instruments of Service provided to them solely and exclusively for execution of the Work. All copies made under this authorization shall bear the copyright notice, if any, shown on the Instruments of Service. The Contractor, Subcontractors, Sub-subcontractors, and material or equipment suppliers may not use the Instruments of Service on other projects or for additions to this Project outside the scope of the Work without the specific written consent of the Owner, Architect and the Architect's consultants.~~ Contractor warrants and represents that, prior to the commencement of the Work, it shall:   make an inspection of the site, including but not limited to the physical condition of the site, all structures and structures on adjoining properties, the nature and location of the general area, including weather and labor availability; make an inspection of site utilities and utility connection and only subsoil reports available from Owner.   The Contractor shall report any discovered conditions to the Owner.   The Owner shall have no responsibility or liability for the physical condition or safety of the Project site or any improvements located on the Project site.   The Contractor shall be solely responsible for providing safe conditions for the performance of the Work.

§ 1.6
~~TRANSMISSION OF DATA IN DIGITAL FORM~~OWNERSHIP AND USE OF DRAWINGS, SPECIFICATIONS AND OTHER INSTRUMENTS OF SERVICE
~~If the parties intend to transmit Instruments of Service or any other information or documentation in digital form, they shall endeavor to establish necessary protocols governing such transmissions, unless otherwise already provided in the Agreement or the Contract Documents.~~§ 1.6.1 All Drawings, Specifications and other documents prepared by the Architect are and shall remain the property of the Owner, and Owner shall retain all common law, statutory and other reserved rights with respect thereto.   They shall not be used on any other project without the prior written consent of the Owner, and Contractor shall take such action as may be necessary to prevent their use on any other project or for additions to the Project outside the scope of the Work by any Subcontractor, Sub-subcontractor or material or equipment supplier.   The Contractor, Subcontractor, Sub-subcontractors and material and equipment suppliers are granted a limited license to use and reproduce applicable portions of the Drawings, Specifications and other documents prepared by the Architect appropriate to and for use in the execution

Additions and Deletions Report for AIA Document A201™ – 2007. Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987, 1997 and 2007 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 08:44:02 on 06/08/2016 under Order No.7998458378_1 which expires on 04/22/2017, and is not for resale.
User Notes:                                                                                                                                                   (2017661168)

3

of their Work under the Contract Documents.   All copies made under this license shall bear the statutory copyright notice, if any, shown on the Drawings, Specifications and other documents prepared by the Architect.   Submittals or distributions necessary to meet official regulatory requirements or for other purposes relating to completion of the Project are not to be construed as a publication in derogation of the Owner's copyright or other reserved rights.

PAGE 13

§ 2.2.1 ~~Prior to commencement of the Work, the Contractor may request in writing that the Owner provide reasonable evidence that the Owner has made financial arrangements~~ The Owner shall, at the written request of the Contractor, prior to commencement of the Work, furnish to the Contractor reasonable evidence that financial arrangements have been made to fulfill the Owner's obligations under the Contract. ~~Thereafter, the Contractor may only request such evidence if (1) the Owner fails to make payments to the Contractor as the Contract Documents require; (2) a change in the Work materially changes the Contract Sum; or (3) the Contractor identifies in writing a reasonable concern regarding the Owner's ability to make payment when due. The Owner shall furnish such evidence as a condition precedent to commencement or continuation of the Work or the portion of the Work affected by a material change. After the Owner furnishes the evidence, the Owner~~ Furnishing of such evidence shall be a condition precedent to commencement of the Work. After such evidence has been furnished, the Owner shall not materially vary such financial arrangements without prior notice to the Contractor.

§ 2.2.2 Except for permits and ~~fees that~~ fees, including those required under Section 3.7.1, which are the responsibility of the Contractor under the Contract Documents, ~~including those required under Section 3.7.1,~~ the Owner shall secure and pay for necessary approvals, easements, assessments and charges required for construction, use or occupancy of permanent structures or for permanent changes in existing facilities.

...

§ 2.2.4 ~~The Owner shall furnish~~ Upon receipt of a written request from the Contractor, information or services required of the Owner by the Contract Documents ~~with reasonable promptness. The Owner shall also furnish any other information or services under the Owner's control and~~ shall be furnished by the Owner with reasonable promptness. Any other information or services relevant to the Contractor's performance of the Work ~~with reasonable promptness after receiving the Contractor's request~~ under the Owner's control shall be furnished by the Owner after receipt from the Contractor of a written request for such information or services.

§ 2.2.5 Unless otherwise provided in the Contract Documents, the ~~Owner shall furnish to the Contractor one copy of the Contract Documents for purposes of making reproductions pursuant to Section 1.5.2.~~ Contractor will be furnished, free of charge, such copies of Drawings and Project Manuals as are reasonably necessary for execution of the Work.

...

~~If the Contractor fails to correct Work that is not in accordance with the requirements of the Contract Documents as required by Section 12.2 or repeatedly fails to carry out Work in accordance with the Contract Documents, the Owner may issue a written order to the Contractor to stop the Work, or any portion thereof, until the cause for such order has been eliminated; however, the right of the Owner to stop the Work shall not give rise to a duty on the part of the Owner to exercise this right for the benefit of the Contractor or any other person or entity, except to the extent required by Section 6.1.3.~~ § 2.3.1 If the Contractor fails to correct Work which is not in accordance with the requirements of the Contract Documents as required by Section 12.2 or persistently fails to carry out Work in accordance with the Contract Documents, the Owner may issue a written order to the Contractor to stop the Work, or any portion thereof, until the cause for such order has been eliminated; however, the right of the Owner to stop the Work shall not give rise to a duty on the part of the Owner to exercise this right for the benefit of the Contractor or any other person or entity.   This right shall be in addition to, and not in restriction of, the Owner's rights under Subparagraph 12.2 and Article 14.

§ 2.3.2   If suspension of the Work is warranted by reason of unforeseen conditions that could not be anticipated by a reasonable contractor which may adversely affect the quality of the work if such Work were continued, the Owner may suspend the Work by written notice to the Contractor.   In such event, the Contract Time shall be adjusted accordingly, and the Contract Sum shall be adjusted to the extent, if any, that additional costs are incurred by reason

Additions and Deletions Report for AIA Document A201™ – 2007. Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987, 1997 and 2007 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 08:44:02 on 06/06/2016 under Order No.7898458378_1 which expires on 04/22/2017, and is not for resale.
User Notes:                                                                                                                          (2017881166)

4

Complaint, Exh. A

of such suspension.  If the Contractor, in its reasonable judgment, believes that a suspension is warranted by reason of unforeseen circumstances which may adversely affect the quality of the Work if the Work were continued, the Contractor shall immediately notify the Owner and the Architect of such belief and describe with particularity the reasons therefore.

**PAGE 14**

If the Contractor defaults or neglects to carry out the Work in accordance with the Contract Documents and fails within a ten day period after receipt of written notice from the Owner to commence and continue correction of such default or neglect with diligence and promptness, the Owner may, without prejudice to other remedies the Owner may have, correct such deficiencies. In such case an appropriate Change Order shall be issued deducting from payments then or thereafter due the Contractor the reasonable cost of correcting such deficiencies, including Owner's expenses and compensation for the Architect's additional services made necessary by such default, neglect or failure. Such action by the Owner and amounts charged to the Contractor are both subject to prior approval of the Architect. If payments then or thereafter due the Contractor are not sufficient to cover such amounts, the Contractor shall pay the difference to the Owner. § 2.4.1 If the Contractor defaults or neglects to carry out the Work in accordance with the Contract Documents and fails within a seven (7) day period after receipt of written notice from the Owner to commence and continue correction of such default or neglect with diligence and promptness, the Owner may, without waiving its rights against Contractor's Performance Bond, and without prejudice to other remedies, correct such deficiencies or commence and continue to carry out the Work. If payments then or thereafter due the Contractor are not sufficient to cover such amounts, the Contractor shall pay the difference to the Owner.

...

§ 3.1.1 The Contractor is the person or entity identified as such in the Agreement and is referred to throughout the Contract Documents as if singular in number. The Contractor shall be lawfully licensed, if required in the jurisdiction where the Project is located. The Contractor shall designate in writing a representative who shall have express authority to bind the Contractor with respect to all matters under this Contract. The term "Contractor" means the Contractor or the Contractor's authorized representative.

...

§ 3.1.3 The Contractor shall not be relieved of obligations to perform the Work in accordance with the Contract Documents either by activities or duties of the Architect in the Architect's administration of the Contract, or by tests, inspections or approvals required or performed by persons or entities other than the Contractor.

§ 3.1.4  Prior to commencing Work, Contractor shall designate in writing an individual for the project who shall have full authority to bind Contractor on all matters arising out of or relating to this Agreement.

§ 3.2.1 Execution of the Contract by the Contractor is a representation that the Contractor has visited the site, become generally familiar with local conditions under which the Work is to be performed and correlated personal observations with requirements of the Contract Documents. Since the Contract Documents are complementary,  before starting each portion of the Work, the Contractor shall carefully study and compare the various Drawings and other Contract Documents relative to that portion of the Work, as well as the information furnished by the Owner pursuant to Section 2.2.3, shall take field measurements of any existing conditions related to that portion of the Work and shall observe any conditions at the site affecting it. These obligations are for the purpose of facilitating construction by the Contractor and are not for the purpose of discovering errors, omissions, or inconsistencies in the Contract Documents; however, any errors, inconsistencies or omissions discovered by the Contractor shall be reported promptly to the Architect and the Owner as a request for information in such form as the Architect and the Owner may require.
§ 3.2.2 Because the Contract Documents are complementary, the Contractor shall, before starting each portion of the Work, carefully study and compare the various Contract Documents relative to that portion of the Work, as well as the information furnished by the Owner pursuant to Section 2.2.3, shall take field measurements of any existing conditions related to that portion of the Work, and shall observe any conditions at the site affecting it. These obligations are for the purpose of facilitating coordination and construction by the Contractor and are not for the purpose of discovering errors, omissions, or inconsistencies in the Contract Documents; however, the Contractor shall promptly report to the Architect any errors, inconsistencies or omissions discovered by or made known to the

Additions and Deletions Report for AIA Document A201™ – 2007. Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987, 1997 and 2007 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 08:44:02 on 06/08/2016 under Order No.7698458378_1 which expires on 04/22/2017, and is not for resale.
User Notes:                                                                                                                                    (2017881168)

~~Contractor as a request for information in such form as the Architect may require. It~~ Any design errors or omissions noted by the Contractor during this review shall be reported promptly to the Architect, but, except as provided in Subparagraph 3.7.3,   it is recognized that the Contractor's review is made in the Contractor's capacity as a contractor and not as a licensed design ~~professional~~ professional unless otherwise specifically provided in the Contract Documents. The Contractor is not required to ascertain that the Contract Documents are in accordance with applicable laws, statutes, ordinances, building codes, and rules and regulations, but any nonconformity discovered by or made known to the Contractor shall be reported promptly to the Architect.

**§ 3.2.3** ~~The Contractor is not required to ascertain that the Contract Documents are in accordance with applicable laws, statutes, ordinances, codes, rules and regulations, or lawful orders of public authorities, but the Contractor shall promptly report to the Architect any nonconformity discovered by or made known to the Contractor as a request for information in such form as the Architect may require.~~

If the Contractor believes that additional cost or time is involved because of clarifications or instructions issued by the Architect in response to the Contractor's notices or requests for information pursuant to Sections 3.2.1 and 3.2.2, the Contractor shall make Claims as provided in Sections 4.3.6 and 4.3.7.  The Contractor shall not be liable to the Owner or Architect for damages resulting from errors, inconsistencies or omissions in the Contract Documents or for differences between field measurements or conditions and the Contract Documents unless the Contractor recognized such error, inconsistency, omission or difference and knowingly failed to report it to the Architect.

**§ 3.2.4** ~~If the Contractor believes that additional cost or time is involved because of clarifications or instructions the Architect issues in response to the Contractor's notices or requests for information pursuant to Sections 3.2.2 or 3.2.3, the Contractor shall make Claims as provided in Article 15. If the Contractor fails to perform the obligations of Sections 3.2.2 or 3.2.3, the Contractor shall pay such costs and damages to the Owner as would have been avoided if the Contractor had performed such obligations. If the Contractor performs those obligations, the Contractor shall not be liable to the Owner or Architect for damages resulting from errors, inconsistencies or omissions in the Contract Documents, for differences between field measurements or conditions and the Contract Documents, or for nonconformities of the Contract Documents to applicable laws, statutes, ordinances, codes, rules and regulations, and lawful orders of public authorities.~~Notwithstanding anything in Subparagraph 3.2.1 to the contrary, if Contractor discovers through the use of reasonable care and diligence, errors, inconsistencies, or omissions in the Contract Documents yet proceeds without written notice to the Architect and Owner, Contractor shall bear all costs for the damage resulting from any such errors, inconsistencies or omissions and to the extent Owner is required to incur costs or expenses to correct such issues, Contractor shall pay Owner such costs or expenses upon Owner's request. Contractor shall promptly notify the Architect and Owner of any ambiguity, inconsistency or error which it may discover upon examination of the Contract Documents or of the site and local conditions.

**§ 3.2.5**  Notwithstanding anything herein to the contrary, the Contractor shall be responsible for the satisfactory and complete execution of the Work as described in the Contract Documents. The Contractor represents that he has carefully examined all Drawings and Specifications for the Work to be performed; and has notified Owner of any defects or omissions he has noted or observed, and that he has the experience and necessary personnel, equipment, and material at his disposal to complete the Work in a good workmanlike manner in accordance with the Contract Documents without any material defects in the work.

**PAGE 15**

**§ 3.3.1** The Contractor shall supervise and direct the Work, using the Contractor's ~~best~~ reasonable skill and attention. The Contractor shall be solely responsible ~~for,~~ for and have control ~~over,~~ over construction means, methods, techniques, sequences and procedures and for coordinating all portions of the Work under the Contract, unless the Contract Documents give other specific instructions concerning these matters. If the Contract Documents give specific instructions concerning construction means, methods, techniques, sequences or procedures, the Contractor shall evaluate the jobsite safety thereof and, except as stated below, shall be fully and solely responsible for the jobsite safety of such means, methods, techniques, sequences or procedures. If the Contractor determines that such means, methods, techniques, sequences or procedures may not be safe, the Contractor shall give timely written notice to the Owner and Architect and shall not proceed with that portion of the Work without further written instructions from the Architect. If the Contractor is then instructed to proceed with the required means, methods, techniques, sequences or procedures without acceptance of changes proposed by the Contractor, the Owner shall be solely responsible for any ~~loss or damage arising solely from those Owner required means, methods, techniques, sequences or procedures~~ resulting loss or damage.

Additions and Deletions Report for AIA Document A201™ – 2007. Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987, 1997 and 2007 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 08:44:02 on 06/06/2016 under Order No.7898458378_1 which expires on 04/22/2017, and is not for resale.
User Notes:                                                                                                                        (2017861168)

6.

**§ 3.3.2** The Contractor shall be responsible to the Owner for acts and omissions of the Contractor's employees, Subcontractors and their agents and employees, and other persons or entities performing portions of the Work ~~for,~~ for or on behalf ~~of,~~ of the Contractor or any of its Subcontractors.

...

**§ 3.3.4** If any of the Work is required to be inspected or approved by any public authority, the Contractor shall cause such inspection or approval to be performed.

...

**§ 3.4.2** ~~Except in the case of minor changes in the Work authorized by the Architect in accordance with Sections 3.12.8 or 7.4, the~~ The Contractor may make substitutions only with the consent of the Owner, after evaluation by the Architect and Owner and in accordance with a Change ~~Order or Construction Change Directive.~~ Order.

**§ 3.4.3** The Contractor shall enforce strict discipline and good order among the Contractor's employees and other persons carrying out the ~~Work.~~ Contract. The Contractor shall not permit employment of unfit persons or persons not ~~properly~~ skilled in tasks assigned to them.

**§ 3.4.4** The Contractor acknowledges that it is the Contractor's responsibility to hire all personnel for the proper and diligent prosecution of the Work and the Contractor shall use its best efforts to maintain labor peace for the duration of the Project. In the event of a labor dispute, the Contractor shall not be entitled to any increase in the Contract Sum or Time.

**PAGE 16**

~~The Contractor warrants to the Owner and Architect that materials and equipment furnished under the Contract will be of good quality and new unless the Contract Documents require or permit otherwise. The Contractor further warrants that the Work will conform to the requirements of the Contract Documents and will be free from defects, except for those inherent in the quality of the Work the Contract Documents require or permit. Work, materials, or equipment not conforming to these requirements may be considered defective. The Contractor's warranty excludes remedy for damage or defect caused by abuse, alterations to the Work not executed by the Contractor, improper or insufficient maintenance, improper operation, or normal wear and tear and normal usage. If required by the Architect, the Contractor shall furnish satisfactory evidence as to the kind and quality of materials and equipment.~~ **§ 3.5.1** The Contractor warrants that it will furnish all of the materials and labor necessary to complete the Project and all materials and equipment furnished by Contractor will be new and all Work performed and all materials and equipment furnished by Contractor will be of good quality, free from faults and defects and will conform to the Contract Documents in all respects, including, but no limited to kind, quality of materials and workmanship specified. The Contractor shall obtain and deliver to Owner such standard manufacturers' warranties as each equipment manufacturer may furnish with any equipment. The Contractor does not warrant or guarantee the design or sufficiency of the design of the improvements or that the materials and equipment furnished, assuming that they are the materials and equipment specified, will accomplish the purpose intended.

All written warranties shall be addressed and delivered to the Owner as a condition precedent to Contractor's entitlement to Final Payment. At that time, Contractor shall also deliver to Owner a written "Contractor Warranty" representing to Owner that all labor, materials and/or services, all other components of the work shall be free of defect from the time of Substantial Completion for the Work and shall extend for one (1) year from the date of Final Completion and as warranties and guarantees on work, labor, equipment and materials, together with any other warranties or guarantees required by the Contract Documents. Nothing in this Contract shall operate to waive, release or compromise the statutory implied warranties of the Contractor for the Project, its subcontractors and suppliers to the Owner.

The Contractor will indemnify and hold the Owner harmless and defend Owner from and against any loss, damage or expense incurred as a result of a breach of any warranties. All warranties referenced in the Contract Documents shall survive the making of Final Payment to the Contractor or any earlier termination of the Contract. These

Additions and Deletions Report for AIA Document A201™ – 2007. Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987, 1997 and 2007 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 08:44:02 on 06/06/2016 under Order No.7896458378_1 which expires on 04/22/2017, and is not for resale.
User Notes: (2017881168)

Complaint, Exh. A

warranties shall not operate to extinguish or compromise any claim for latent defects or other items of defective work which could not be discovered by Owner upon reasonable inspection; in such case the limitations period for latent defects shall run from the date of discovery in accordance with Florida law.

Contractor warrants that it shall, within forty-eight (48) hours of notice (verbal or written), diligently and continuously pursue any necessary warranty repairs or replacements of defects until corrected and will restore the Work to the condition required by the Contract Documents. Contractor shall restore both surface, subsurface and both collateral and primary conditions disturbed the performance by Contractor during warranty work to their prior pre-warranty work condition.

The Contractor's warranty obligations as specified herein shall apply to encompass and provide coverage for claims associated with water intrusion, water infiltration through the roof, and/or mold and mildew resulting therefrom. However, this provision shall not include warranty coverage for acts of third parties whom the Contractor has not employed, hired, retained or supervised. In addition to the foregoing stipulations, the Contractor shall comply with all other warranties referenced to in any portions of the Contract Documents or otherwise provided by law or in equity, and where warranties overlap, the more stringent requirements shall govern.

...

~~The Contractor shall pay sales, consumer, use and similar taxes for the Work provided by the Contractor that are legally enacted when bids are received or negotiations concluded, whether or not yet effective or merely scheduled to go into effect.~~ § 3.6.1 The Contractor shall pay sales, consumer, use and similar taxes for the Work provided by the Contractor which are legally enacted when bids are received or negotiations concluded, whether or not yet effective or merely scheduled to go into effect.

§ 3.7 ~~PERMITS, FEES, NOTICES AND COMPLIANCE WITH LAWS~~PERMITS, FEES AND NOTICES

§ 3.7.1 Unless otherwise provided in the Contract Documents, the Contractor shall ~~secure and pay for the building permit as well as for other permits, fees, licenses, and inspections by government agencies necessary for proper execution and completion of the Work that~~ assist the Owner in the procurement of all permits, licenses, and certifications necessary for the proper execution and completion of the Work. The Owner shall reimburse the Contractor for all costs incurred to procure the permits, licenses, and certifications, which are customarily secured after execution of the Contract and ~~which~~ are legally required ~~at the time~~when bids are received or negotiations concluded. The Contractor shall assist the Owner in the procure all certificates of inspection, use, occupancy, permits and licenses, pay all charges and fees and give all notice necessary and incidental to the due and lawful prosecution of the Work. Certificates of inspection, use and occupancy shall be delivered to the Owner upon Substantial Completion of the Project in accordance with the approved schedule for the Work. The costs of such procurement, payment and delivery are included within the Contract Sum.

§ 3.7.2 The Contractor shall comply with and give notices required by ~~applicable laws, statutes, ordinances, codes, rules and regulations~~laws, ordinances, rules, regulations and lawful orders of public authorities applicable to performance of the Work.

PAGE 17

§ 3.7.4 Concealed or Unknown Conditions. If the Contractor encounters conditions at the site that are (1) subsurface or otherwise concealed physical conditions that differ materially from those indicated in the Contract Documents or (2) unknown physical conditions of an unusual nature, that differ materially from those ordinarily found to exist and generally recognized as inherent in construction activities of the character provided for in the Contract Documents, the Contractor shall promptly provide notice to the Owner and the Architect before conditions are disturbed and in no event later than ~~21 ten~~ (10) days after first observance of the conditions. The Architect will promptly investigate such conditions and, if the Architect determines that they differ materially and cause an increase or decrease in the Contractor's cost of, or time required for, performance of any part of the Work, will recommend an equitable adjustment in the Contract Sum or Contract Time, or both. If the Architect determines that the conditions at the site are not materially different from those indicated in the Contract Documents and that no change in the terms of the Contract is justified, the Architect shall promptly notify the Owner and Contractor in writing, stating the reasons. If either party disputes the Architect's determination or recommendation, that party may proceed as provided in Article ~~15.~~4.3.

Additions and Deletions Report for AIA Document A201™ – 2007. Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987, 1997 and 2007 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 08:44:02 on 08/08/2016 under Order No.7898458378_1 which expires on 04/22/2017, and is not for resale.
User Notes: (2017881168)

8

§ ~~3.7.5 If, in the course of the Work, the Contractor encounters human remains or recognizes the existence of burial markers, archaeological sites or wetlands not indicated in the Contract Documents, the Contractor shall immediately suspend any operations that would affect them and shall notify the Owner and Architect. Upon receipt of such notice, the Owner shall promptly take any action necessary to obtain governmental authorization required to resume the operations. The Contractor shall continue to suspend such operations until otherwise instructed by the Owner but shall continue with all other operations that do not affect those remains or features. Requests for adjustments in the Contract Sum and Contract Time arising from the existence of such remains or features may be made as provided in Article 15.~~

...

§ 3.8.2 Unless otherwise provided in the Contract ~~Documents,~~ Documents:

...

.2  Contractor's costs for unloading and handling at the site, labor, installation costs, overhead, profit and other expenses contemplated for stated allowance amounts shall ~~be included in the Contract Sum but not in the allowances;~~ include taxes, transportation, installation, labor, materials, profit and overhead; and

...

§ 3.8.3 Materials and equipment under an allowance shall be selected by the Owner ~~with reasonable promptness.~~ in sufficient time to avoid delay in the Work.

...

§ 3.9.1 The Contractor shall employ a competent superintendent and necessary assistants who shall be in attendance at the Project site during performance of the Work. The superintendent shall represent the Contractor, and communications given to the superintendent shall be as binding as if given to the Contractor. Important communications shall be confirmed in writing. Other communications shall be similarly confirmed on written request in each case. The superintendent shall be reasonably satisfactory to the Owner in all respects, and Owner shall have the right for cause, require Contractor to dismiss from the Project any superintendent whose performance is not reasonable satisfactory to Owner, and to replace such superintendent with a superintendent reasonably satisfactory to Owner.   The Contractor shall not replace the superintendent without the consent of the Owner except with another superintendent reasonably satisfactory to the Owner in all respects.

§ 3.9.2 The ~~Contractor, as soon as practicable after award of the Contract, shall furnish in writing to the Owner through the Architect the name and qualifications of a proposed superintendent. The Architect may reply within 14 days to the Contractor in writing stating (1) whether the Owner or the Architect has reasonable objection to the proposed superintendent or (2) that the Architect requires additional time to review. Failure of the Architect to reply within the 14 day period shall constitute notice of no reasonable objection.~~ list of all supervisory personnel, including the Project manager and superintendent, that the Contractor intends to use on the Project and a chain-of-command organizational chart shall be submitted to the Owner for approval at the start of the Work.   The Contractor shall not engage supervisory personnel or utilize an organization and chain-of-command other than as approved by Owner in writing, and shall not change the Project Manager and superintendent or form of organization without the written approval of the Owner.

§ 3.9.3  The Contractor shall ~~not employ a proposed superintendent to whom the Owner or Architect has made reasonable and timely objection. The Contractor shall not change the superintendent without the Owner's consent, which shall not unreasonably be withheld or delayed.~~ conduct at the site of the Project regular progress meetings to be attended by the Contractor, Architect, major Subcontractors and any other Subcontractors, material suppliers or persons required by the Owner or Architect from time to time during the Project. Unless the Owner directs otherwise, the Contractor shall take minutes of the progress meetings and shall provide copies to all attendees within

Additions and Deletions Report for AIA Document A201™ – 2007. Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987, 1997 and 2007 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 08:44:02 on 06/05/2016 under Order No.7898456378_1 which expires on 04/22/2017, and is not for resale.
User Notes:                                                                                                                                   (2017881168)

9

<u>seven (7) days after the date of the meeting.</u>

**PAGE 18**

§ 3.10.1   The Contractor, ~~promptly after being awarded the Contract, shall prepare and submit for the Owner's and Architect's information a Contractor's construction schedule for the Work. The schedule shall not exceed time limits current under the Contract Documents, shall be revised at appropriate intervals as required by the conditions of the Work and Project, shall be related to the entire Project to the extent required by the Contract Documents, and shall provide for expeditious and practicable execution of the Work~~ <u>prior to commencement of the Construction Phase, shall prepare and submit to the Owner and to the Architect, the Contractor's construction schedule (hereinafter the "Original Construction Schedule") for the Work. The Original Construction Schedule shall be based on a time precedence method of scheduling that details the critical path Work items on the schedule and shall be of such form and content as is required by the Owner. The Original Construction Schedule will be prepared in sufficient detail to properly reflect the scope and individual work items and will be sub-divided by building area, site or other major component as deemed necessary by the Owner. The Original Construction Schedule shall delineate the proposed progress of the Work and with such reasonable progress in the Work which will result in all of the Work attaining Substantial Completion within the Contract Time. No Progress Payment shall be due and payable to Contractor unless and until the Owner has received the Original Construction Schedule as required in this paragraph. The Contractor may generate and utilize other schedules with the subcontractors (hereinafter the "Trade Schedules"). These Trade Schedules are solely for Contractor's purposes and shall have no bearing on the Original Construction Schedule.</u>

§ 3.10.2   ~~The Contractor shall prepare a submittal schedule, promptly after being awarded the Contract and thereafter as necessary to maintain a current submittal schedule, and shall submit the schedule(s) for the Architect's approval. The Architect's approval shall not unreasonably be delayed or withheld. The submittal schedule shall (1) be coordinated with the Contractor's construction schedule, and (2) allow the Architect reasonable time to review submittals. If the Contractor fails to submit a submittal schedule, the Contractor shall not be entitled to any increase in Contract Sum or extension of Contract Time based on the time required for review of submittals.~~ <u>At the time the Contractor submits each Application for Progress Payment, the Contractor shall submit to the Owner and to the Architect a written Project update in narrative form with progress photographs, and a  revised Original Construction Schedule (hereinafter the "Updated Construction Schedule") which indicates future scheduling and performance of the Work sufficient to indicate the manner and time in and/at which the Work, if represented to be delayed from the schedule shown on the most recent updated schedule, will be back on schedule and will comport with the Original Construction Schedule. The Updated Construction Schedule shall be of such form and content as is required herein. The Updated Construction Schedule shall incorporate into it all extensions and reductions of the Contract Time which have previously been approved by duly executed Change Orders.</u>

§ 3.10.3   The Contractor shall ~~perform the Work in general accordance with the most recent schedules submitted to the Owner and Architect.~~ <u>prepare and submit to the Owner and to the Architect, simultaneous with submission of the Construction Schedule prior to commencement of the Work, a schedule (hereinafter "Original Submittal Schedule") for the submittal of all required Shop Drawings, Product Data and Samples indicating the dates same will be submitted by the Contractor.  The Original Submittal Schedule shall be coordinated with the Construction Schedule and allow the Architect adequate time to review submittals. The Contractor shall prepare and keep current, for the Architect's approval, a schedule of submittals (the "Submittal Schedule") tracking the actual receipt and review of all submittals.</u>

<u>§ 3.10.4 The Contractor shall perform the Work in general accordance with the most recent schedules submitted to the Owner and Architect.</u>

<u>§ 3.10.5 The Owner or its representative and the Architect shall review the schedule for completing the Work, but the Contractor shall have the sole and exclusive responsibility for completing the Work according to the schedule. Any proposed revisions to the original Construction Schedule, or subsequent updated Construction Schedule, shall be submitted by the Contractor pursuant to the Change Order procedure set forth in Article 7.  The Contractor shall complete each phase of the work in strict conformance with the Construction Schedule, and shall expedite and/or accelerate the Work at its expense if construction falls behind the dates and times set forth in the updated Construction Schedule, unless the date of Substantial Completion has been extended by Change Order prior to the date of the updated Construction Schedule.</u>

Additions and Deletions Report for AIA Document A201™ – 2007. Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987, 1997 and 2007 by The American Institute of Architects. All rights reserved. WARNING: This AIA®  Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA®  Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 08:44:02 on 06/06/2016 under Order No.7898458378_1 which expires on 04/22/2017, and is not for resale.
User Notes:                                                                                                                                        (2017881168)

**10**

## PAGE 19

~~The Contractor shall maintain at the site for the Owner one copy of the Drawings, Specifications, Addenda, Change Orders and other Modifications, in good order and marked currently to indicate field changes and selections made during construction, and one copy of approved Shop Drawings, Product Data, Samples and similar required submittals. These shall be available to the Architect and shall be delivered to the Architect for submittal to the Owner upon completion of the Work as constructed.~~ § 3.11.1 The Contractor shall maintain at the site for the Owner one record copy of the Drawings, Specifications, Addenda, Change Orders and other Modifications, in good order and marked currently to record field changes and selections made during construction, and one record copy of approved Shop Drawings, Product Data, Samples and similar required submittals. These shall be available to the Architect and shall be delivered to the Architect for submittal to the Owner upon completion of the Work, signed by Contractor, certifying that they show complete and exact "as-built" conditions, starting sizes, kind of materials, vital piping, conduit locations and similar matters.

§ 3.11.2   The Contractor shall maintain all approved permit drawings in a manner so as to make them accessible to governmental inspectors and other authorized agencies.   All approved drawings shall be wrapped, marked and delivered to the Owner within 30 days of Final Completion of the Work.

...

§ 3.12.3 Samples are physical examples ~~that~~ which illustrate materials, equipment or workmanship and establish standards by which the Work will be judged.

§ 3.12.4 Shop Drawings, Product Data, Samples and similar submittals are not Contract Documents. ~~Their purpose is to demonstrate the~~ The purpose of their submittal is to demonstrate for those portions of the Work for which submittals are required by the Contract Documents the way by which the Contractor proposes to conform to the information given and the design concept expressed in the Contract ~~Documents for those portions of the Work for which the Contract Documents require submittals. Review by the Architect is subject to the limitations of Section 4.2.7.~~ Documents. Informational submittals upon which the Architect is not expected to take responsive action may be so identified in the Contract Documents. Submittals ~~that~~ which are not required by the Contract Documents may be returned by the Architect without action.

§ 3.12.5 The Contractor shall review for compliance with the Contract Documents, approve and submit to the Architect Shop Drawings, Product Data, Samples and similar submittals required by the Contract Documents ~~in accordance with the submittal schedule approved by the Architect or, in the absence of an approved submittal schedule, with~~ reasonable promptness and in such sequence as to cause no delay in the Work or in the activities of the Owner or of separate contractors.   Submittals which are not marked as reviewed for compliance with the Contract Documents and approved by the Contractor may be returned by the Architect without action.

§ 3.12.6 By approving and submitting Shop Drawings, Product Data, Samples and similar submittals, the Contractor represents ~~to the Owner and Architect~~ that the Contractor has (1) reviewed ~~and approved them, (2)~~ determined and verified materials, field measurements and field construction criteria related thereto, or will do so ~~and (3)~~ so, and has checked and coordinated the information contained within such submittals with the requirements of the Work and of the Contract Documents.

## PAGE 20

§ 3.12.10 The Contractor shall not be required to provide professional services ~~that~~ which constitute the practice of architecture or engineering unless such services are specifically required by the Contract Documents for a portion of the Work or unless the Contractor needs to provide such services in order to carry out the Contractor's responsibilities for construction means, methods, techniques, sequences and procedures. The Contractor shall not be required to provide professional services in violation of applicable law. If professional design services or certifications by a design professional related to systems, materials or equipment are specifically required of the Contractor by the Contract Documents, the Owner and the Architect will specify all performance and design criteria that such services must satisfy. The Contractor shall cause such services or certifications to be provided by a properly licensed design professional, whose signature and seal shall appear on all drawings, calculations,

Additions and Deletions Report for AIA Document A201™ – 2007. Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987, 1997 and 2007 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 08:44:02 on 06/08/2016 under Order No.7888458375_1 which expires on 04/22/2017, and is not for resale.
User Notes:                                                                                      (2017881168)

Complaint, Exh. A

specifications, certifications, Shop Drawings and other submittals prepared by such professional. Shop Drawings and other submittals related to the Work designed or certified by such professional, if prepared by others, shall bear such professional's written approval when submitted to the Architect. The Owner and the Architect shall be entitled to rely upon the adequacy, accuracy and completeness of the services, certifications and ~~or approvals performed or provided~~ by such design professionals, provided the Owner and Architect have specified to the Contractor all performance and design criteria that such services must satisfy. Pursuant to this Section 3.12.10, the Architect will review, approve or take other appropriate action on submittals only for the limited purpose of checking for conformance with information given and the design concept expressed in the Contract Documents. The Contractor shall not be responsible for the adequacy of the performance ~~and or~~ design criteria ~~specified in~~ required by the Contract Documents.

...

~~The Contractor shall confine operations at the site to areas permitted by applicable laws, statutes, ordinances, codes, rules and regulations, and lawful orders of public authorities and the Contract Documents and shall not unreasonably encumber the site with materials or equipment.~~ § 3.13.1 The Contractor shall confine operations at the site to areas permitted by law, ordinances, permits and the Contract Documents and shall not unreasonably encumber the site with materials or equipment, and shall coordinate and not hinder the activities of other contractors at the site.

...

§ 3.14.1 The Contractor shall be responsible for cutting, fitting or patching required to complete the Work or to make its parts fit together properly. ~~All areas requiring cutting, fitting and patching shall be restored to the condition existing prior to the cutting, fitting and patching, unless otherwise required by the Contract Documents.~~

...

§ 3.15.1 The Contractor shall keep the premises and surrounding area free from accumulation of waste materials or rubbish caused by operations under the Contract. At completion of the Work, the Contractor shall remove ~~from and about the Project~~ waste materials, rubbish, the Contractor's tools, construction equipment, machinery and surplus ~~materials from and about the Project~~ materials. The Contractor shall develop and monitor programs to control dust, dirt, noise, vibration, odor, or any other attributes of the construction process which might adversely affect any use of any property areas adjacent to or in the vicinity of the Project site, in accordance with applicable laws and regulations.

§ 3.15.2 If the Contractor fails to clean up as provided in the Contract Documents, the Owner may do so and ~~Owner shall be entitled to reimbursement from the Contractor.~~ the cost thereof shall be charged to the Contractor after a reasonable written notification period.

...

~~The Contractor shall provide the Owner and Architect access to the Work in preparation and progress wherever located.~~ § 3.16.1 The Contractor shall provide the Owner and Architect access to the Work in preparation and progress wherever located.

...

~~The Contractor shall pay all royalties and license fees. The Contractor shall defend suits or claims for infringement of copyrights and patent rights and shall hold the Owner and Architect harmless from loss on account thereof, but shall not be responsible for such defense or loss when a particular design, process or product of a particular manufacturer or manufacturers is required by the Contract Documents, or where the copyright violations are contained in Drawings, Specifications or other documents prepared by the Owner or Architect. However, if the Contractor has reason to believe that the required design, process or product is an infringement of a copyright or a patent, the Contractor shall be responsible for such loss unless such information is promptly furnished to the Architect.~~ § 3.17.1 The Contractor shall pay all royalties and license fees. The Contractor shall defend suits or claims for infringement of copyrights and patent rights and shall hold the Owner and Architect harmless from loss on account thereof, but shall not be responsible for such defense or loss when a particular design, process or product of

Additions and Deletions Report for AIA Document A201™ – 2007. Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987, 1997 and 2007 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 08:44:02 on 06/08/2016 under Order No.7868468378_1 which expires on 04/22/2017, and is not for resale.
User Notes:                                                                                                    (2017881168)

Complaint, Exh. A

a particular manufacturer or manufacturers is required by the Contract Documents or where the copyright violations are contained in Drawings, Specifications or other documents prepared by the Owner or Architect. However, if the Contractor has reason to believe that the required design, process or product is an infringement of a copyright or a patent, the Contractor shall be responsible for such loss unless such information is promptly furnished to the Architect.

## PAGE 21

§ 3.18.1 ~~To the fullest extent permitted by law the Contractor shall indemnify and hold harmless the Owner, Architect, Architect's consultants, and agents and employees of any of them from and against claims, damages, losses and expenses, including but not limited to attorneys' fees, arising out of or resulting from performance of the Work, provided that such claim, damage, loss or expense is attributable to bodily injury, sickness, disease or death, or to injury to or destruction of tangible property (other than the Work itself), but only to the extent caused by the negligent acts or omissions of the Contractor, a Subcontractor, anyone directly or indirectly employed by them or anyone for whose acts they may be liable, regardless of whether or not such claim, damage, loss or expense is caused in part by a party indemnified hereunder. Such obligation shall not be construed to negate, abridge, or reduce other rights or obligations of indemnity that would otherwise exist as to a party or person described in this Section 3.18.~~ The Contractor shall be responsible for initiating, maintaining, and supervising all safety precautions and programs in connection with the Work.  Contractor shall take or shall require its subcontractors to take all reasonable precautions for the safety of, and shall provide all reasonable protection to prevent damages, injury or loss to (1) all employees performing the Work and other persons who may be affect thereby, (2) all the Work and all materials and equipment to be incorporated therein, and (3) other property at the site or adjacent thereto.  Contractor shall provide all notices and persons and property and their protection from damage, injury or loss.

§ 3.18.2 ~~In claims against any person or entity indemnified under this Section 3.18 by an employee of the Contractor, a Subcontractor,~~ To the fullest extent permitted by law, the Contractor shall defend, indemnify and hold harmless the Owner, its agents and employees from and against all claims, damages, losses and expenses, arising from the performance of the Work.  The provision also applies to any such claim, damages, loss or expense that (1) is attributable to bodily injury, sickness, disease or death, or to injury to or destruction of tangible property including the loss of use resulting therefrom, and (2) is caused in whole or in part by any negligent acts or omissions of the Contractor, any subcontractor, and sub-subcontractor, any material or equipment supplier, or anyone directly or indirectly employed by any of them.  Such obligations shall not be construed to negate, abridge, compromise or otherwise reduce any other rights or obligations of indemnity which would otherwise exist as to any party or person described in this paragraph.  In any and all claims against the Owner, or any of their agents or employees by any employee of the Contractor, any subcontractor, anyone directly or indirectly employed by ~~them~~ any of them, or anyone for whose acts ~~they~~ any of them may be liable, the indemnification obligation under ~~Section 3.18.1 shall not be limited by a limitation on~~ this paragraph shall not be limited in any way by any limitation on the amount or type of damages, compensation or benefits payable by or for the Contractor or a Subcontractor under workers' any subcontractor under workers' or workmen's compensation acts, disability benefit acts or other employee benefit acts.  The foregoing indemnity from Contractor shall be applicable to all losses, damages, expenses or claims for damage or injury to any person or property resulting from the negligence, recklessness or intentional wrongful misconduct of Contractor, and persons employed or hired by Contractor relating to the performance of Work as described in this Contract.  This indemnification provision is incorporated by reference into the Contract Documents.  The indemnification as provided in this paragraph shall be subject to a monetary limitation of the combined amount of the total of the required insurance liability limits under this contract, or Five Million Dollars ($5,000,000.00), whichever is greater, and which the Owner and Contractor both acknowledge that this amount bears a reasonable commercial relationship to this Contract.  The Contractor shall promptly remedy all damage or loss to any property caused by the act or omission by the Contractor, any subcontractor, and sub-subcontractor, or anyone directly or indirectly employed by any of them, or by anyone for whose acts any of them may be liable. This indemnification provision shall only be operable to apply to these acts and omissions of the Contractor, it subcontractors, suppliers and consultants that perform labor or provide materials or services relative to this Work. The foregoing obligations of the Contractor are in addition to its other obligations under this Contract.  This provision shall survive the termination or expiration of this Contract.

## ARTICLE 4   ARCHITECT
§ 3.18.3 In claims against any person or entity indemnified under this Section 3.18 by an employee of the Contractor, a Subcontractor, anyone directly or indirectly employed by them or anyone for whose acts they may be

Additions and Deletions Report for AIA Document A201™ – 2007. Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987, 1997 and 2007 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 08:44:02 on 06/06/2016 under Order No.7898456378_1 which expires on 04/22/2017, and is not for resale.
User Notes:                                                                                                                (2017861168)

**13**

liable, the indemnification obligation under Section 3.18.2 shall not be limited by a limitation on amount or type of damages, compensation or benefits payable by or for the Contractor or a Subcontractor under workers' compensation acts, disability benefit acts or other employee benefit acts.

§ 3.18.4 If any claim of lien or stop-notice or any other demand for payment or security therefore, including claims or demands upon performance and payment bond sureties for this Contract, is made or filed with the Owner or the Project by any person claiming that Contractor or any Subcontractor or supplier or any other person claiming under any of them has failed to perform its contractual obligations or to make payment for any labor, services, trust fund contribution, materials, equipment, taxes or other item furnished or obligation uncured for, or in connection with the Work, or if at any time there shall be evidence of such non performance or non payment of any claim or lien or stop-notice or other demand for which, if established, the Owner or the Project might become liable, then the Owner shall have the right to retain from any payment then due or thereafter to become due under the Contract or to be reimbursed by Contractor for an amount sufficient to satisfy, discharge and defend against any such claim or lien or stop-notice or other demand, or any action or proceeding thereon which may be brought to judgment or award.

§3.18.5  The Contractor is responsible for all construction personnel and traffic routing logistics required in the performance of the Work. The Contractor will provide watchmen, barricades, barrels and any other means necessary to control traffic in order to protect the Work and safety of personnel and property.  Contractor acknowledges that portions of the Project will be occupied as buildings are completed and turned over to Owner.  Owner and its residents will have access to access roads, parking areas and completed buildings at all times following completion of the respective building.

## ARTICLE 4    ADMINISTRATION OF THE CONTRACT
### § 4.1 ~~GENERAL~~ ARCHITECT
§ 4.1.1  The ~~Owner shall retain an architect~~ Architect is the person lawfully licensed to practice architecture or ~~an entity lawfully practicing architecture in the jurisdiction where the Project is located. That person or entity is identified as the Architect~~ any entity lawfully practicing architecture identified as such in the Agreement and is referred to throughout the Contract Documents as if singular in number: architects, or such successor Architect as the Owner may appoint by written notice to the Contractor from time to time.

The term "Architect" means the Architect or the Architect's authorized representative.

§ 4.1.2 Duties, responsibilities and limitations of authority of the Architect as set forth in the Contract Documents shall not be restricted, modified or extended without written consent of the Owner, Contractor and Architect. Consent shall not be unreasonably withheld.  The Architect shall reduce to writing via revisions to its drawings and specifications all changes and modifications in the Work, including substitutions, value engineering changes and adjustments, before the Contractor will be deemed to be required to make such changes in the Work.  Additionally, the Architect shall assist with all efforts being undertaken to obtain certificates and approvals of cognizant authorities including the preparation of Conformance Drawings.

§ 4.1.3 ~~If the employment of the Architect is terminated, the Owner shall employ a successor architect as to whom the Contractor has no reasonable objection and whose status under the Contract Documents shall be that of the Architect.~~

### § 4.2 ARCHITECT'S ADMINISTRATION OF THE CONTRACT
§ 4.2.1 The Architect will provide administration of the Contract as described in the Contract ~~Documents and will be an Owner's representative during construction until the date the Architect issues the final Certificate for Payment.~~ Documents,   and may be the Owner's representative (1) during construction, (2) until final payment is due and (3) with the Owner's concurrence, from time to time during the one-year period for correction of Work described in Section 12.2. The Architect will have authority to act on behalf of the Owner only to the extent provided in the Contract ~~Documents~~ Documents, unless otherwise modified in writing in accordance with other provisions of the Contract.   The structural engineer to be designated by the Architect may perform certain functions that would otherwise be performed by Architect.

§ 4.2.2 The ~~Architect~~ Architect, as a representative of the Owner, will visit the site at intervals appropriate to the stage of ~~construction, or as otherwise agreed with the Owner,~~ to become generally familiar with the Contractor's operations (1) to become generally familiar with and to keep the Owner informed about the progress and quality of

Additions and Deletions Report for AIA Document A201™ – 2007. Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987, 1997 and 2007 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 08:44:02 on 06/09/2016 under Order No.7898458378_1 which expires on 04/22/2017, and is not for resale.
User Notes:                                                                                                        (2017881168)

Complaint, Exh. A

the portion of the Work completed, (2) to endeavor to guard the Owner against defects and deficiencies in the Work, and (3) to determine in general if the Work observed is being performed in a manner indicating that the Work, when fully completed, will be in accordance with the Contract Documents. However, the Architect will not be required to make exhaustive or continuous on-site inspections to check the quality or quantity of the Work. The Architect will not have control over, charge of, or responsibility neither have control over or charge of, nor be responsible for, the construction means, methods, techniques, sequences or procedures, or for the safety precautions and programs in connection with the Work, since these are solely the Contractor's rights and responsibilities under the Contract Documents, except as provided in Section 3.3.1. Further, the Architect shall not be empowered to order changes in the Work unless the Owner has expressly agreed to the change in writing.

§ 4.2.3 On the basis of the site visits, the Architect will keep the Owner reasonably informed about the progress and quality of the portion of the Work completed, and report to the Owner (1) known deviations from the Contract Documents and from the most recent construction schedule submitted by the Contractor, and (2) defects and deficiencies observed in the Work. The Architect will not be responsible for the Contractor's failure to perform the Work in accordance with the requirements of the Contract Documents. The Architect will not have control over or charge of and will not be responsible for acts or omissions of the Contractor, Subcontractors, or their agents or employees, or any other persons or entities performing portions of the Work.

§ 4.2.4 COMMUNICATIONS FACILITATING CONTRACT ADMINISTRATION
Communications Facilitating Contract Administration. Except as otherwise provided in the Contract Documents or when direct communications have been specially authorized, Documents, the Owner and Contractor shall endeavor to communicate with each other through the Architect about matters arising out of or relating to the Contract. The Contractor shall provide Owner with a copy of all correspondence it sends to Architect. Communications by and with the Architect's consultants shall be through the Architect. Communications by and with Subcontractors and material suppliers shall be through the Contractor. Communications by and with separate contractors shall be through the Owner.

PAGE 23

§ 4.2.6 The Architect has will not have authority to reject Work that does not conform to the Contract Documents. Documents without the Owner's Agreement. Whenever the Architect considers it necessary or advisable, the Architect will have authority to require inspection or testing of the Work in accordance with Sections 13.5.2 and 13.5.3, whether or not such Work is fabricated, installed or completed. However, neither this authority of the Architect nor a decision made in good faith either to exercise or not to exercise such authority shall give rise to a duty or responsibility of the Architect to the Contractor, Subcontractors, material and equipment suppliers, their agents or employees, or other persons or entities performing portions of the Work.

§ 4.2.7 The Architect will review and approve, approve or take other appropriate action upon, upon the Contractor's submittals such as Shop Drawings, Product Data and Samples, but only for the limited purpose of checking for conformance with information given and the design concept expressed in the Contract Documents. The Architect's action will be taken in accordance with the submittal schedule approved by the Architect or, in the absence of an approved submittal schedule, with reasonable promptness with such reasonable promptness as to cause no delay in the Work or in the activities of the Owner, Contractor or separate contractors, while allowing sufficient time in the Architect's professional judgment to permit adequate review. Review of such submittals is not conducted for the purpose of determining the accuracy and completeness of other details such as dimensions and quantities, or for substantiating instructions for installation or performance of equipment or systems, all of which remain the responsibility of the Contractor as required by the Contract Documents. The Architect's review of the Contractor's submittals shall not relieve the Contractor of the obligations under Sections 3.3, 3.5 and 3.12. The Architect's review shall not constitute approval of safety precautions or, unless otherwise specifically stated by the Architect, of any construction means, methods, techniques, sequences or procedures. The Architect's approval of a specific item shall not indicate approval of an assembly of which the item is a component.

§ 4.2.8 The Architect will may prepare Change Orders and Construction Change Directives, and may authorize minor changes in the Work as provided in Section 7.4. The Architect will investigate and make determinations and recommendations regarding concealed and unknown conditions as provided in Section 3.7.4. Directives for the Owner's signature, but the Architect cannot order changes in the Work without the Owner's written agreement with the proposed document.

Additions and Deletions Report for AIA Document A201™ – 2007. Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987, 1997 and 2007 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 08:44:02 on 06/08/2016 under Order No.7896468378_1 which expires on 04/22/2017, and is not for resale.
User Notes: (2017881168)

Complaint, Exh. A

§ 4.2.9 The Architect will conduct inspections to determine the date or dates of Substantial Completion and the date of final ~~completion; issue Certificates of Substantial Completion pursuant to Section 9.8;~~ completion, will receive and forward to the Owner, for the Owner's review and records, written warranties and related documents required by the Contract and assembled by the ~~Contractor pursuant to Section 9.10; and~~ Contractor, and will issue a final Certificate for Payment ~~pursuant to Section 9.10.~~ upon compliance with the requirements of the Contract Documents.

...

§ 4.2.11 The Architect will interpret and decide matters concerning performance ~~under,~~ under and requirements of, the Contract Documents on written request of either the Owner or Contractor. The Architect's response to such requests will be made in writing within any time limits agreed upon or otherwise with reasonable promptness. If no agreement is made concerning the time within which interpretations required of the Architect shall be furnished in compliance with this Section 4.2, then delay shall not be recognized on account of failure by the Architect to furnish such interpretations until 15 days after written request is made for them.

§ 4.2.12 Interpretations and decisions of the Architect will be consistent with the intent ~~of, of~~ and reasonably inferable ~~from, from~~ the Contract Documents and will be in writing or in the form of drawings. When making such interpretations and initial decisions, the Architect will endeavor to secure faithful performance by both Owner and Contractor, will not show partiality to either and will not be liable for results of interpretations or decisions so rendered in good faith.

**§ 4.3 CLAIMS AND DISPUTES**
§ 4.3.1 Definition. A Claim is a demand or assertion by one of the parties seeking, as a matter of right, adjustment or interpretation of Contract terms, payment of money, extension of time or other relief with respect to the terms of the Contract. The term "Claim" also includes other disputes and matters in question between the Owner and Contractor arising out of or relating to the Contract on only those disputes which arose prior to the date final payment is due. Claims must be initiated by written notice. The responsibility to substantiate Claims shall rest with the party making the Claim.

§ 4.3.2 Time Limits on Claims. Claims by either party must be initiated within 21 days after occurrence of the event giving rise to such Claim or within 21 days after the claimant first recognizes the condition giving rise to the Claim, whichever is later. Claims must be initiated by written notice to the Architect and the other party.   Any claim(s) not initiated within the time limits set forth herein are waived.

~~§ 4.2.13 The Architect's decisions on matters relating to aesthetic effect will be final if consistent with the intent expressed in the Contract Documents.~~

§ 4.3.3 Continuing Contract Performance. Pending final resolution of a Claim except as otherwise agreed in writing or as provided in Section 9.7.1 and Article 14, the Contractor shall proceed diligently with performance of the Contract and the Owner shall continue to make payments in accordance with the Contract Documents.

~~§ 4.2.14 The Architect will review and respond to requests for information about the Contract Documents. The Architect's response to such requests will be made in writing within any time limits agreed upon or otherwise with reasonable promptness. If appropriate, the Architect will prepare and issue supplemental Drawings and Specifications in response to the requests for information.~~

§ 4.3.4 Claims for Concealed or Unknown Conditions. If conditions are encountered at the site which are (1) subsurface or otherwise concealed physical conditions which differ materially from those indicated in the Contract Documents or (2) unknown physical conditions of an unusual nature, which differ materially from those ordinarily found to exist and generally recognized as inherent in construction activities of the character provided for in the Contract Documents, then notice by the observing party shall be given to the other party promptly before conditions are disturbed and in no event later than ten (10) days after first observance of the conditions. The Architect will promptly investigate such conditions and, if they differ materially and cause an increase or decrease in the Contractor's cost of, or time required for, performance of any part of the Work, will recommend an equitable adjustment in the Contract Sum or Contract Time, or both. If the Architect determines that the conditions at the site are not materially different from those indicated in the Contract Documents and that no change in the terms of the

Additions and Deletions Report for AIA Document A201™ – 2007. Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987, 1997 and 2007 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 08:44:02 on 06/06/2016 under Order No.7898458378_1 which expires on 04/22/2017, and is not for resale.
User Notes:                                                                                                          (2017881168)

**16**

Contract is justified, the Architect shall so notify the Owner and Contractor in writing, stating the reasons. Claims by either party in opposition to such determination must be made within 21 days after the Architect has given notice of the decision. If the conditions encountered are materially different, the Contract Sum and Contract Time shall be equitably adjusted, but if the Owner and Contractor cannot agree on an adjustment in the Contract Sum or Contract Time, the adjustment shall be referred to the Architect for initial determination, subject to further proceedings pursuant to Section 4.4.

§ 4.3.5 Claims for Additional Cost. If the Contractor wishes to make Claim for an increase in the Contract Sum, written notice as provided herein shall be given before proceeding to execute the Work. Prior notice is not required for Claims relating to an emergency endangering life or property arising under Section 10.6.

§ 4.3.5.1 Notwithstanding anything to the contrary contained in the Contract Documents, no change in the Work, whether by way of alteration or addition to the Work, or otherwise, shall be the basis for an addition to the Contract Sum or shall result in a change to the Contract Time unless and until such alteration or addition has been authorized by a Change Order or Construction Change Directive executed and issued in accordance with and in strict compliance with the requirements of the Contract Documents. Accordingly, no course of conduct or dealings between the parties, nor express nor implied acceptance of alterations or additions to the Work, and no claim that the Owner has been unjustly enriched by any alteration or addition to the Work, whether or not there is in fact such unjust enrichment, shall be the basis for any claim to an increase in the Contract Sum or change in the Contract Time.

§ 4.3.6 If the Contractor believes additional cost is involved for reasons including but not limited to (1) a written interpretation from the Architect, (2) an order by the Owner to stop the Work where the Contractor was not at fault, (3) a written order for a minor change in the Work issued by the Architect, (4) failure of payment by the Owner, (5) termination of the Contract by the Owner, (6) Owner's suspension or (7) other reasonable grounds, Claim shall be filed in accordance with this Section 4.3.

§ 4.3.7 Claims for Additional Time
§ 4.3.7.1 If the Contractor wishes to make Claim for an increase in the Contract Time, written notice as provided herein shall be given. The Contractor's Claim shall include a fragnet analysis utilizing the most current updated Construction Schedule, establishing the impact on the Project's critical path. In the case of a continuing delay only one Claim is necessary. All claims for time extensions not meeting these requirements are waived.

§ 4.3.7.2 If adverse weather conditions are the basis for a Claim for additional time, such Claim shall be documented by data substantiating that weather conditions were abnormal for the period of time could not have been reasonably anticipated and had an adverse effect on the scheduled construction.

§ 4.3.8 Injury or Damage to Person or Property. If either party to the Contract suffers injury or damage to person or property because of an act or omission of the other party, or of others for whose acts such party is legally responsible, written notice of such injury or damage, whether or not insured, shall be given to the other party within a reasonable time not exceeding 21 days after discovery. The notice shall provide sufficient detail to enable the other party to investigate the matter.

§ 4.3.9 If unit prices are stated in the Contract Documents or subsequently agreed upon, and if quantities originally contemplated are materially changed in a proposed Change Order or Construction Change Directive so that application of such unit prices to quantities of Work proposed will cause substantial inequity to the Owner or Contractor, the applicable unit prices shall be equitably adjusted.

§ 4.3.10 If any Claim by the Contractor against the Owner for monetary damages and/or an increase in the Contract Sum results in litigation, the amount of such Claim, damages or increase will not be shown or proven by the Contractor's use of a "total cost" approach thereto, and the monetary difference between the Contractor's estimated cost of the Work (prepared and utilized by the Contractor in preparing his bid for the Work) and the actual costs incurred by the Contractor in performing the Work shall not be valid, creditable, cognizable, competent or relevant proof of the amount of such Claim, damages or increase; and, additionally, the cumulative effect of Change Orders on the costs incurred by the Contractor in performing the Work shall not be valid, creditable, cognizable, competent or relevant proof of the amount of all or any part of such Claim, damages or increase. Thus, for any calculation or allegation of damages by the Contractor to be valid and compensable, time and material records exclusively and

Additions and Deletions Report for AIA Document A201™ – 2007. Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987, 1997 and 2007 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 08:44:02 on 05/06/2016 under Order No.7896458376_1 which expires on 04/22/2017, and is not for resale.
User Notes: (2017861168)

17

directly tracking the extra costs as they are incurred must be maintained, kept available for the Owner's timely review and submitted by the Contractor.   Nothing herein shall prevent Contractor from presenting evidence of his total costs and related matters for merely demonstrative or illustrative purposes.

## § 4.4 RESOLUTION OF CLAIMS AND DISPUTES
§ 4.4.1 The Contractor shall continue work during the pendency of any dispute or claim that originates during the Project, and shall not stop or slow the progress of the   work pending resolution of such claim or dispute provided Owner pays Contractor undisputed sums due for work performed.

## § 4.5 MEDIATION
§ 4.5.1 Any Claim arising out of or related to the Contract, except Claims relating to aesthetic effect and except those waived as provided for in Sections 4.3.10, 9.10.4 and 9.10.5 shall,   be subject to mediation as a condition precedent to arbitration or the institution of legal or equitable proceedings by either party.

§ 4.5.2 The parties shall endeavor to resolve their Claims by mediation which, unless the parties mutually agree otherwise, shall be in accordance with the Construction Industry Mediation Rules currently in effect or other rules and procedures by agreement by the parties at the time the mediation is scheduled. Request for mediation shall be filed in writing with the other party to the Contract. The request may be made concurrently with the filing of a demand for arbitration but, in such event, mediation shall proceed in advance of legal or equitable proceedings, which shall be stayed pending mediation for a period of 60 days from the date of filing, unless stayed for a longer period by agreement of the parties or court order.

§ 4.5.3 The parties shall share the mediator's fee and any filing fees equally. The mediation and any subsequent hearings shall be held in the place where the Project is located, unless another location is mutually agreed upon. Agreements reached in mediation shall be enforceable as settlement agreements in any court having jurisdiction thereof.

## § 4.6 LITIGATION OF CLAIMS
§ 4.6.1 Any Claim arising out of or related to the Contract, except Claims relating to aesthetic effect and except those waived as provided for in Sections 4.3.2,   9.10.4 and 9.10.5, shall, after decision by the Architect or 30 days after submission of the Claim to the Architect, be subject to litigation exclusively in the County where the project is located.   Prior to litigation, the parties shall endeavor to resolve disputes by mediation in accordance with the provisions of Section 4.5.


**PAGE 26**

§ 5.2.1 Unless otherwise stated in the Contract Documents or the bidding requirements, the Contractor, as soon as practicable after award of the Contract, shall furnish in writing to the Owner ~~through~~ and the Architect the names of persons or entities (including those who are to furnish materials or equipment fabricated to a special design) proposed for each principal portion of the Work. The Architect ~~may reply within 14 days~~ will promptly reply to the Contractor in writing stating (1) whether or not the Owner or the ~~Architect~~ Architect, after due investigation, has reasonable objection to any such proposed person or ~~entity or (2) that the Architect requires additional time for review.~~ entity. Failure of the Owner or Architect to reply ~~within the 14-day period~~ promptly shall constitute notice of no reasonable objection.   Copies of all bids or other proposals from subcontractors and sub-subcontractors shall, upon the request of the Owner, be submitted to the Owner for review.   All subcontractors and sub-subcontractors shall be subject to the reasonable approval of Owner's lender, if any, which approval or denial to be provided within ten days of   submission of list of subcontractors.

...

§ 5.2.4 The Contractor shall not ~~substitute~~ change a Subcontractor, person or entity previously selected if the Owner or Architect makes reasonable objection to such ~~substitution~~ substitute.

§ 5.2.5   Contractor shall contract solely in its own name and behalf, and not in the name or behalf of Owner, with the specified Subcontractor or supplier.   No contractual relation between Owner and Subcontractor shall be created by the Contract Documents or by any subcontract or purchase order except Owner's position as a third party

Additions and Deletions Report for AIA Document A201™ – 2007. Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987, 1997 and 2007 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA®  Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 08:44:02 on 08/08/2016 under Order No.7898458378_1 which expires on 04/22/2017, and is not for resale.
User Notes:                                                                                      (2017881168)

18

beneficiary of each subcontract or purchase order.   Contractor's subcontract form shall be subject to reasonable approval by Owner.   Upon written request, Contractor shall submit to Owner value engineering data reflecting subcontracting pricing.

....

~~By appropriate agreement, written where legally required for validity, the Contractor shall require each Subcontractor, to the extent of the Work to be performed by the Subcontractor, to be bound to the Contractor by terms of the Contract Documents, and to assume toward the Contractor all the obligations and responsibilities, including the responsibility for safety of the Subcontractor's Work, which the Contractor, by these Documents, assumes toward the Owner and Architect. Each subcontract agreement shall preserve and protect the rights of the Owner and Architect under the Contract Documents with respect to the Work to be performed by the Subcontractor so that subcontracting thereof will not prejudice such rights, and shall allow to the Subcontractor, unless specifically provided otherwise in the subcontract agreement, the benefit of all rights, remedies and redress against the Contractor that the Contractor, by the Contract Documents, has against the Owner. Where appropriate, the Contractor shall require each Subcontractor to enter into similar agreements with Sub-subcontractors. The Contractor shall make available to each proposed Subcontractor, prior to the execution of the subcontract agreement, copies of the Contract Documents to which the Subcontractor will be bound, and, upon written request of the Subcontractor, identify to the Subcontractor terms and conditions of the proposed subcontract agreement that may be at variance with the Contract Documents. Subcontractors will similarly make copies of applicable portions of such documents available to their respective proposed Sub-subcontractors.~~ **§ 5.3.1** By appropriate agreement, written where legally required for validity, the Contractor shall require each Subcontractor, to the extent of the Work to be performed by the Subcontractor, to be bound to the Contractor by terms of the Contract Documents, and to assume toward the Contractor all the obligations and responsibilities, including the responsibility for safety of the Subcontractor's Work, which the Contractor, by these Documents, assumes toward the Owner and Architect. Each subcontract agreement shall preserve and protect the rights of the Owner and Architect under the Contract Documents with respect to the Work to be performed by the Subcontractor so that subcontracting thereof will not prejudice such rights, and shall allow to the Subcontractor, unless specifically provided otherwise in the subcontract agreement, the benefit of all rights, remedies and redress against the Contractor that the Contractor, by these Documents, has against the Owner. Where appropriate, the Contractor shall require each Subcontractor to enter into similar agreements with Sub-subcontractors. The Contractor shall make available to each proposed Subcontractor, prior to the execution of the subcontract agreement, copies of the Contract Documents to which the Subcontractor will be bound, and, upon written request of the Subcontractor, identify to the Subcontractor terms and conditions of the proposed subcontract agreement which may be at variance with the Contract Documents. Subcontractors will similarly make copies of applicable portions of such documents available to their respective proposed Sub-subcontractors.

**§ 5.3.2** Notwithstanding any provision of Subparagraph 5.3.1, any part of the Work performed for the Contractor by a Subcontractor or its Sub-subcontractor shall be pursuant to a written Subcontract between the Contractor and such Subcontractor (or the Subcontractor and its Sub-subcontractor at any tier), which shall be prepared on a form of subcontract reasonably satisfactory to the Owner in all respects.   Each such subcontract shall, where the context so requires, contain provisions that:

    .1      require that such Work be performed in accordance with the requirements of the Contract Documents;

    .2      require the Subcontractor to carry and maintain insurance coverage in accordance with the Contact Documents, and to file certificates of such coverage with the Contractor;

    .3      require the Subcontractor to submit certificates and waivers of liens for work completed and paid to it and by its Sub-subcontractors paid in a prior payment application as a condition to the disbursement of the progress payment next due and owing;

    .4      require each Subcontractor to remove all debris created by its activities.

PAGE 27

Additions and Deletions Report for AIA Document A201™ – 2007. Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987, 1997 and 2007 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 08:44:02 on 06/08/2016 under Order No.7898458378_1 which expires on 04/22/2017, and is not for resale.
User Notes:                                               (2017851168)

**19**

Complaint, Exh. A

§ 5.4.1 Each subcontract agreement for a portion of the Work is assigned by the Contractor to the ~~Owner, provided that~~Owner provided that:

.1    assignment is effective only after termination of the Contract by the Owner for cause pursuant to Section 14.2 and only for those subcontract agreements ~~that~~which the Owner accepts by notifying the Subcontractor and Contractor in writing; and

...

~~When the Owner accepts the assignment of a subcontract agreement, the Owner assumes the Contractor's rights and obligations under the subcontract.~~If any subcontract is assigned to Owner pursuant to the foregoing provision, then Owner shall be substituted for the Contractor under any such subcontract, and the Subcontractor shall complete all of its obligations under the Subcontract for the benefit of Owner.

...

~~§ 5.4.3 Upon such assignment to the Owner under this Section 5.4, the Owner may further assign the subcontract to a successor contractor or other entity. If the Owner assigns the subcontract to a successor contractor or other entity, the Owner shall nevertheless remain legally responsible for all of the successor contractor's obligations under the subcontract.~~

...

§ 6.1.1 The Owner reserves the right to perform construction or operations related to and adjacent to the Project with the Owner's own forces, and to award separate contracts in connection with other portions of the Project or other construction or operations on the site under Conditions of the Contract ~~identical or substantially~~ similar to ~~these~~ these, including those portions related to insurance and waiver of subrogation. ~~If the Contractor claims that delay or additional cost is involved because of such action by the Owner, the Contractor shall make such Claim as provided in Article 15.~~

**PAGE 28**

§ 6.1.3 The Owner shall provide for coordination of the activities of the Owner's own forces and of each separate contractor with the Work of the Contractor, who shall cooperate with them. The Contractor shall coordinate and participate with other separate contractors and the Owner in reviewing their construction ~~schedules.~~ schedules when directed to do so. The Contractor shall make any revisions to the construction schedule deemed necessary after a joint review and mutual agreement. The construction schedules shall then constitute the schedules to be used by the Contractor, separate contractors and the Owner until subsequently revised.

~~§ 6.1.4 Unless otherwise provided in the Contract Documents, when the Owner performs construction or operations related to the Project with the Owner's own forces, the Owner shall be deemed to be subject to the same obligations and to have the same rights that apply to the Contractor under the Conditions of the Contract, including, without excluding others, those stated in Article 3, this Article 6 and Articles 10, 11 and 12.~~

...

§ 6.2.3 The Contractor shall reimburse the Owner for costs incurred by the Owner ~~incurs~~ that are payable to a separate contractor because of the Contractor's delays, improperly timed activities or defective construction. The Owner shall be responsible to the Contractor for costs the Contractor incurs because of a separate contractor's delays, improperly timed activities, damage to the Work or defective construction.

Additions and Deletions Report for AIA Document A201™ – 2007. Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987, 1997 and 2007 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 08:44:02 on 06/08/2016 under Order No.7898458378_1 which expires on 04/22/2017, and is not for resale.
User Notes:                                                                    (2017881168)

20

Complaint, Exh. A

§ 6.2.4 The Contractor shall promptly remedy damage wrongfully caused by the Contractor wrongfully causes to completed or partially completed construction or to property of the Owner or separate contractors as provided in Section 10.2.5.

...

If a dispute arises among the Contractor, separate contractors and the Owner as to the responsibility under their respective contracts for maintaining the premises and surrounding area free from waste materials and rubbish, the Owner may clean up and the Architect will allocate the cost among those responsible. § 6.3.1 If a dispute arises among the Contractor, separate contractors and the Owner as to the responsibility under their respective contracts for maintaining the premises and surrounding area free from waste materials and rubbish, the Owner may clean up and the Architect will recommend an allocation of the cost among those responsible, subject to each party's right to seek a review of that determination under Article 4.4.

...

§ 7.1.2 A Change Order shall be based upon agreement among the Owner, Contractor and Architect; a Construction Change Directive requires agreement by the Owner and Architect and may or may not be agreed to by the Contractor; an order for a minor change in the Work may be issued by the Architect alone.Contractor.

PAGE 29

§ 7.2.1 A Change Order is a written instrument prepared by the Architect and signed by the Owner, Contractor and Architect.Architect, stating their agreement upon all of the following:
   .1   The change Change in the Work;

...

   .3   The extent of the adjustment, if any, in the Contract Time.

§ 7.2.2 Methods used in determining adjustments to the Contract Sum may include those listed in Section 7.3.3.

§ 7.2.3 If any Change Order, signed by the Owner and the Contractor, results in or contains an increase in the Contract Sum, the amount of such increase shall be conclusively deemed and held to include the Contractor's costs of and for all applicable taxes, bond premiums, insurance premiums, supervision, overhead, profit, labor, labor impact and materials related to the Change Order and the additional work required and/or contemplated thereby, and Contractor shall be conclusively deemed and held to have waived any known Claim for any additional sum for delays, disruption, acceleration, loss of productivity, ripple effect, inefficiency or any other matter arising out of or in any way related to such Change Order and the additional work contemplated thereby, unless such claim is specifically reserved in such change order.

...

   .4   As provided in Section 7.3.7.7.3.6.

§ 7.3.4 If unit prices are stated in the Contract Documents or subsequently agreed upon, and if quantities originally contemplated are materially changed in a proposed Change Order or Construction Change Directive so that application of such unit prices to quantities of Work proposed will cause substantial inequity to the Owner or Contractor, the applicable unit prices shall be equitably adjusted.Upon receipt of a Construction Change Directive, the Contractor shall promptly proceed with the change in the Work involved and advise the Architect of the Contractor's agreement or disagreement with the method, if any, provided in the Construction Change Directive for determining the proposed adjustment in the Contract Sum or Contract Time.

§ 7.3.5 Upon receipt of a Construction Change Directive, the Contractor shall promptly proceed with the change in the Work involved and advise the Architect of the Contractor's agreement or disagreement with the method, if any, provided in the Construction Change Directive for determining the proposed adjustment in the Contract Sum or Contract Time.A Construction Change Directive signed by the Contractor indicates the  agreement of the

Additions and Deletions Report for AIA Document A201™ – 2007. Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987, 1997 and 2007 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 08:44:02 on 06/06/2016 under Order No.7696458378_1 which expires on 04/22/2017, and is not for resale.
User Notes:                                                                                                              (2017861165)

Complaint, Exh. A

Contractor therewith, including adjustment in Contract Sum and Contract Time or the method for determining them. Such agreement shall be effective immediately and shall be recorded as a Change Order.

**§ 7.3.6** A Construction Change Directive signed by the Contractor indicates the Contractor's agreement therewith, including adjustment in Contract Sum and Contract Time or the method for determining them. Such agreement shall be effective immediately and shall be recorded as a Change Order. If the Contractor does not respond promptly or disagrees with the method for adjustment in the Contract Sum, the method and the adjustment shall be determined by the Architect on the basis of reasonable expenditures and savings of those performing the Work attributable to the change, including, in case of an increase in the Contract Sum, a reasonable allowance for overhead and profit. In such case, and also under Section 7.3.3.3, the Contractor shall keep and present, in such form as the Architect may prescribe, an itemized accounting together with appropriate supporting data. Unless otherwise provided in the Contract Documents, costs for the purposes of this Section 7.3.6 shall be limited to the following:

  **.1**   Costs of labor, including social security, old age and unemployment insurance, fringe benefits required by agreement or custom, and workers' compensation insurance;

  **.2**   Costs of materials, supplies and equipment, including cost of transportation, whether incorporated or consumed;

  **.3**   Rental costs of machinery and equipment, exclusive of hand tools, whether rented from the Contractor or others;

  **.4**   Costs of premiums for all bonds and insurance, permit fees, and sales, use or similar taxes related to the Work; and

  **.5**   Additional costs of supervision and field office personnel directly attributable to the change.

**§ 7.3.7** If the Contractor does not respond promptly or disagrees with the method for adjustment in the Contract Sum, the Architect shall determine the method and the adjustment on the basis of reasonable expenditures and savings of those performing the Work attributable to the change, including, in case of an increase in the Contract Sum, an amount for overhead and profit as set forth in the Agreement, or if no such amount is set forth in the Agreement, a reasonable amount. In such case, and also under Section 7.3.3.3, the Contractor shall keep and present, in such form as the Architect may prescribe, an itemized accounting together with appropriate supporting data. Unless otherwise provided in the Contract Documents, costs for the purposes of this Section 7.3.7 shall be limited to the following:

  **.1**   Costs of labor, including social security, old age and unemployment insurance, fringe benefits required by agreement or custom, and workers' compensation insurance;

  **.2**   Costs of materials, supplies and equipment, including cost of transportation, whether incorporated or consumed;

  **.3**   Rental costs of machinery and equipment, exclusive of hand tools, whether rented from the Contractor or others;

  **.4**   Costs of premiums for all bonds and insurance, permit fees, and sales, use or similar taxes related to the Work; and

  **.5**   Additional costs of supervision and field office personnel directly attributable to the The amount of credit to be allowed by the Contractor to the Owner for a deletion or change which results in a net decrease in the Contract Sum shall be actual net cost as confirmed by the Architect. When both additions and credits covering related Work or substitutions are involved in a change, the allowance for overhead and profit shall be figured on the basis of net increase, if any, with respect to that change.

**§ 7.3.8** The amount of credit to be allowed by the Contractor to the Owner for a deletion or change that results in a net decrease in the Contract Sum shall be actual net cost as confirmed by the Architect. When both additions and credits covering related Work or substitutions are involved in a change, the allowance for overhead and profit shall be figured on the basis of net increase, if any, with respect to that change. Pending final determination of the total cost of a Construction Change Directive to the Owner, amounts not in dispute for such changes in the Work shall be included in Applications for Payment accompanied by a Change Order indicating the parties' agreement with part or all of such costs. For any portion of such cost that remains in dispute, the Architect will make an interim determination for purposes of monthly certification for payment for those costs. That determination of cost shall adjust the Contract Sum on the same basis as a Change Order, subject to the right of either party to disagree and assert a claim in accordance with Article 4.

**§ 7.3.9** Pending final determination of the total cost of a Construction Change Directive to the Owner, the Contractor may request payment for Work completed under the Construction Change Directive in Applications for Payment.

Additions and Deletions Report for AIA Document A201™ – 2007. Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987, 1997 and 2007 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 08:44:02 on 06/09/2016 under Order No.7898458378_1 which expires on 04/22/2017, and is not for resale.
User Notes:                                                                                                  (2017881168)

Complaint, Exh. A

~~The Architect will make an interim determination for purposes of monthly certification for payment for those costs and certify for payment the amount that the Architect determines, in the Architect's professional judgment, to be reasonably justified. The Architect's interim determination of cost shall adjust the Contract Sum on the same basis as a Change Order, subject to the right of either party to disagree and assert a Claim in accordance with Article 15.~~ When the Owner and Contractor agree with the determination made by the Architect concerning the adjustments in the Contract Sum and Contract Time, or otherwise reach agreement upon the adjustments, such agreement shall be effective immediately and shall be recorded by preparation and execution of an appropriate Change Order. ~~§ 7.3.10 When the Owner and Contractor agree with a determination made by the Architect concerning the adjustments in the Contract Sum and Contract Time, or otherwise reach agreement upon the adjustments, such agreement shall be effective immediately and the Architect will prepare a Change Order. Change Orders may be issued for all or any part of a Construction Change Directive.~~

~~The Architect has authority to order minor changes in the Work not involving adjustment in the Contract Sum or extension of the Contract Time and not inconsistent with the intent of the Contract Documents. Such changes will be effected by written order signed by the Architect and shall be binding on the Owner and Contractor.~~ § 7.4.1 The Architect will have authority to order minor changes in the Work not involving adjustment in the Contract Sum or extension of the Contract Time and not inconsistent with the intent of the Contract Documents. Such changes shall be effected by written order and shall be binding on the Owner and Contractor. The Contractor shall carry out such written orders promptly.

### § 7.5  OVERHEAD AND PROFIT

Notwithstanding any provision herein to the contrary, the amounts for combined overhead and profit for Change Orders and Construction Change Directives  are as follows:

1. For the Contractor, for Work performed by the Contractor's own forces or increases in any bond premiums, insurance; five percent (5%) of the cost.

2. For the Contractor, the Work performed by the Contractor's Subcontractor; five percent (5%) of the amount due the Subcontractor.

3. For each Subcontractor or Sub-subcontractors involved, the Work performed by that Subcontractor or Sub-subcontractor's own forces; ten percent (10%) of the cost.

4. For each Subcontractor, the Work performed by the Subcontractor's Sub-subcontractor's; ten percent (10%) of the amount due the Sub-subcontractor.

5. No further tiering of the Sub-subcontractors will be allowed mark-up for overhead and profit.

6. Cost to which overhead and fee is to be applied shall be determined in accordance with Subparagraph 7.3.6.

7. In order to facilitate checking of quotations for extras or credits, all proposals, except those so minor that their propriety can be seen by inspection, shall be accompanied by a complete itemization of costs including labor, materials and Subcontracts. Labor and materials shall be itemized in the manner prescribed above. Where major cost items are Subcontracts, they shall be itemized also.  In no case will a change involving over $100.00 be approved without such itemization.

8. Notwithstanding the above, no mark up for overhead and profit will be allowed for intangible costs such as overhead and profit on lower tier subcontractor.

**PAGE 31**

§ 8.2.2 The Contractor shall not knowingly, except by agreement or instruction of the Owner in writing, prematurely commence operations on the site or elsewhere prior to the effective date of insurance required by Article 11 to be furnished by the Contractor and Owner. The date of commencement of the Work shall not be changed by the

Additions and Deletions Report for AIA Document A201™ – 2007. Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987, 1997 and 2007 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 08:44:02 on 06/06/2016 under Order No.7898458378_1 which expires on 04/22/2017, and is not for resale.
User Notes:                                                                (2017881168)

23

Complaint, Exh. A

effective date of such insurance. Unless the date of commencement is established by the Contract Documents or a notice to proceed given by the Owner, the Contractor shall notify the Owner in writing not less than five days or other agreed period before commencing the Work to permit the timely filing of mortgages, mechanic's liens and other security interests.

§ 8.2.3 The Contractor shall proceed expeditiously with adequate forces and shall achieve Substantial Completion within the Contract Time. In that this Project will be constructed in phases, with certain buildings being occupied before other buildings are completed, the Contractor represents and agrees that the Contract Time has been determined and adjusted with respect to Contractor's need for access. The Contractor shall ascertain, coordinate and minimize the impact of interruption of the operations on the adjacent buildings or occupied buildings. Such interruptions have been anticipated and included in the Contract sum.

....

§ 8.3.1 If the Contractor is delayed at any time in the ~~commencement or progress of the Work by an act or neglect of the Owner or Architect, or of an employee of either, or of a separate contractor employed by the Owner; or by changes ordered in the Work; or by labor disputes, fire, unusual delay in deliveries, unavoidable casualties or other causes beyond the Contractor's control; or by delay authorized by the Owner pending mediation and arbitration; or by other causes that the Architect determines may justify delay, then the Contract Time shall be extended by Change Order for such reasonable time as the Architect may determine.~~ progress of the Work due to causes outside of its control or the control of its subcontractors or suppliers, the Contractor may submit a Change Order requesting an extension of the Contract Time in accordance with the procedures established in Article 7 and 4.3.7. The Contractor warrants by execution of the Contract that the Contractor has accounted for and anticipated foreseeable delays and that the Work can be completed within the Contract Time. The Owner shall not unreasonably withhold approval of a Change Order requesting additional time due to delay when (a) the delay was unforeseeable at the time of the execution of the Contract, (b) the delay was not caused by the Contractor or its subcontractors or suppliers, and (c) the delay could not have been avoided by the Contractor's timely notice to the Owner and (d) the Contractor was not concurrently delaying the project's critical path at the time the delay which is subject of the proposed Change Order occurred. Any extension of the Contract Time shall be net of any foreseeable delays or other delays attributable to the Contractor.

§ 8.3.2 Claims relating to time shall be made in accordance with applicable provisions of ~~Article 15~~ Section 4.3.

§ 8.3.3 This Section 8.3 does not preclude recovery of damages for delay by either party under other provisions of the Contract Documents. However, Contractor shall not seek an increase in the Contract Sum on account of delays, for any delay, unless such delay is caused by the actions or omissions of the Owner, or the Architect, and its consultants.

§ 8.3.4  Contractor's written claims for extension of Contract Time shall be accompanied by detailed dates, correspondence, notices, and any other data which provides proof of the events which are the basis for the claim, that details the critical path Work items on the schedule, justifying the time extension. Said request shall specifically detail the extension of the critical path of the Project caused by the events which underlie the time extension request. Any claim not including said data shall be deemed waived, until such time as contractor provides such data in accordance with the contract documents.

§ 8.3.5  Delays due to tardy shop drawing submittal, tardy material ordering or shipment, or any other delays caused by a supplier or a Subcontractor shall not be deemed a valid cause for delay and shall not be accepted as a basis for Claims for extension of time, as the scheduling and control of suppliers and Subcontractors is a part of the Contractor's responsibility.

§ 8.3.6  Permitting the Contractor to continue and finish the Work or any part of the Work after the dates fixed for completion, or after the dates to which the time for completion may have been extended, shall in no way operate as a waiver on the part of the Owner of any of his rights under the Contract.

§ 8.3.7  Upon request from Owner, Contractor shall develop and submit to Owner for its review and consideration, an early completion acceleration program. Said program shall include an estimate of all additional costs that might be incurred in accelerating the Work, as well as any bonus incentives to be paid to Contractor and its Subcontractors in the event Substantial Completion of the Work by the early completion date requested by Owner. The acceptance of

Additions and Deletions Report for AIA Document A201™ – 2007. Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987, 1997 and 2007 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 08:44:02 on 05/08/2016 under Order No.7898458376_1 which expires on 04/22/2017, and is not for resale.
User Notes:                                                                                                    (2017881168)

Complaint, Exh. A

any such early completion program shall be at Owner's sole discretion. If Owner so elects to accept Contractor's program, an appropriate amendment to the Contract shall be prepared and executed by the parties.

§ 8.3.8 The Owner may, in its sole discretion and for any reason, direct Contractor to accelerate the schedule of performance by providing overtime, extra shifts, Saturday, Sunday and/or holiday Work and/or by having all or any subcontractors or sub-subcontractors designated by the Owner provide overtime, extra shifts, Saturday, Sunday and/or holiday Work to meet any of the scheduled milestones. To the extent such acceleration is required due to Contractor's negligence or failure to timely or properly progress the work, Contractor shall not be compensated for costs associated with a said direction to accelerate, but will be compensated if such acceleration is due to other causes outside the control of the Contractor.

**PAGE 32**

~~The Contract Sum is stated in the Agreement and, including authorized adjustments, is the total amount payable by the Owner to the Contractor for performance of the Work under the Contract Documents.~~§ 9.1.1 The Contract Sum is stated in the Agreement and, including authorized adjustments, is the total amount payable by the Owner to the Contractor for performance of the Work under the Contract Documents.

...

~~Where the Contract is based on a stipulated sum or Guaranteed Maximum Price, the Contractor shall submit to the Architect, before the first Application for Payment, a schedule of values allocating the entire Contract Sum to the various portions of the Work and prepared in such form and supported by such data to substantiate its accuracy as the Architect may require. This schedule, unless objected to by the Architect, shall be used as a basis for reviewing the Contractor's Applications for Payment.~~§ 9.2.1 Before the first Application for Payment, the Contractor shall submit to the Architect a schedule of values allocated to various portions of the Work, prepared in such form and supported by such data to substantiate its accuracy as the Architect may require. This schedule, unless objected to by the Architect, shall be used as a basis for reviewing the Contractor's Applications for Payment.

...

§ 9.3.1 At least ten days before the date established for each progress payment, the Contractor shall submit to the ~~Architect~~Owner an itemized Application for Payment prepared ~~for operations completed~~ in accordance with the schedule of values, ~~if required under Section 9.2, for completed portions of the Work. Such application~~values. Such applications shall be notarized, if required, and supported by such data substantiating the Contractor's right to payment as the Owner or Architect may require, such as copies of requisitions from Subcontractors and material suppliers, and ~~shall reflect~~reflecting retainage if provided for in the Contract Documents. Such Application for Payment shall be certified as correct by Contractor and shall be accompanied by waivers of liens and other documentation from Subcontractors and Sub-subcontractors as reasonably may be required by the Owner for monies previously paid to Contractor. In addition, such Application for Payment shall contain a certification by the Contractor that there are no written claims of mechanics' or materialmen's liens submitted to the Contractor at the date of such Application for Payment, for which Contractor has received payment previously, that the Contractor has no knowledge of any filed mechanics' or materialmen's liens with respect to the Work for which Contractor has received payment previously, that all due and payable bills with respect to the Work have been paid to date or shall be paid from the proceeds of such Application for Payment, that there is no known basis for the filing of any mechanics' or materialmen's liens on the work, and that waivers from all Subcontractors constitute an effective waiver of lien under the laws of the jurisdiction in which the Project is located to the extent of payments that have been made or are to be made concurrently with payment pursuant to such Application for Payment. Upon request by Owner, copies of all Applications for Payment shall be submitted by Contractor directly to Owner.

§ 9.3.1.1 As provided in Section ~~7.3.9,~~7.3.8, such applications may include requests for payment on account of changes in the Work ~~that~~ which have been properly authorized by Construction Change Directives, or by interim determinations of the Architect, but not yet included in Change Orders.

§ 9.3.1.2 ~~Applications for Payment shall~~Such applications may not include requests for payment for portions of the Work for which the Contractor does not intend to pay to a Subcontractor or material supplier, unless such Work has been performed by others whom the Contractor intends to pay.

Additions and Deletions Report for AIA Document A201™ – 2007. Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987, 1997 and 2007 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 08:44:02 on 06/08/2016 under Order No.7898458378_1 which expires on 04/22/2017, and is not for resale.
User Notes: (2017881168)

25

PAGE 33

**§ 9.3.4** Each Application for Payment shall be accompanied by waiver and release upon progress payment forms acceptable to Owner which conform to Florida State law for all work, labor, equipment and material for which payment has been previously mad by prior applications, executed by the Contractor, and each subcontractor that has filed a Notice to Owner. No payment under the Agreement shall be made, except at Owner's option, until and unless such waiver and release forms from the Contractor has been furnished. In the event a Lien has been filed in the mortgage and conveyance records in the jurisdiction of the project by a subcontractor, sub-subcontractor, materialman, rental company or supplier, Owner shall have the option to withhold 125% of the recorded lien amount from the next applicable payment application after notice of the lien has been served on the Owner. Owner's exercise of its option to withhold lien amounts shall not derogate from the obligation to otherwise pay undisputed amounts.

**§ 9.3.5** Notwithstanding anything to the contrary herein or elsewhere contained in the Contract Documents, no payment of or towards the Contract Sum shall be due, owing or payable to the Contractor at any time when the Contractor is in material default in or under the Contract.

**§ 9.4.1** The Architect will, within ~~seven~~ten (10) days after receipt of the Contractor's Application for Payment, either issue to the Owner a Certificate for Payment, with a copy to the Contractor, for such amount as the Architect determines is properly due, or notify the Contractor and Owner in writing of the Architect's reasons for withholding certification in whole or in part as provided in Section 9.5.1.

**§ 9.4.2** The issuance of a Certificate for Payment will constitute a representation by the Architect to the Owner, based on the Architect's evaluation of the Work and the data comprising the Application for Payment, ~~that, to the best of the Architect's knowledge, information and belief,~~ that the Work has progressed to the point indicated and that the information and belief, the quality of the Work is in accordance with the Contract Documents. The foregoing representations are subject to an evaluation of the Work for conformance with the Contract Documents upon Substantial Completion, to results of subsequent tests and inspections, to correction of minor deviations from the Contract Documents prior to completion and to specific qualifications expressed by the Architect. The issuance of a Certificate for Payment will further constitute a representation that the Contractor is entitled to payment in the amount certified. However, the issuance of a Certificate for Payment will not be a representation that the Architect has (1) made exhaustive or continuous on-site inspections to check the quality or quantity of the Work, (2) reviewed construction means, methods, techniques, sequences or procedures, (3) reviewed copies of requisitions received from Subcontractors and material suppliers and other data requested by the Owner to substantiate the Contractor's right to payment, or (4) made examination to ascertain how or for what purpose the Contractor has used money previously paid on account of the Contract Sum.

PAGE 34

**§ 9.5.1** The Architect may withhold a Certificate for Payment in whole or in part, to the extent reasonably necessary to protect the Owner, if in the Architect's opinion the representations to the Owner required by Section 9.4.2 cannot be made. If the Architect is unable to certify payment in the amount of the Application, the Architect will notify the Contractor and Owner as provided in Section 9.4.1. If the Contractor and Architect cannot agree on a revised amount, the Architect will promptly issue a Certificate for Payment for the amount for which the Architect is able to make such representations to the Owner. The Architect may also withhold a Certificate for Payment or, because of subsequently discovered evidence, may nullify the whole or a part of a Certificate for Payment previously issued, to such extent as may be necessary in the Architect's opinion to protect the Owner from loss for which the Contractor is responsible, including loss resulting from acts and omissions described in Section 3.3.2, because of~~of~~:

    .1    defective Work not ~~remedied;~~remedied following written notice from the Owner or Architect;

...

    .3    failure of the Contractor to make payments ~~properly~~when due to Subcontractors or for labor, materials or equipment;

    .4    reasonable evidence that the Work cannot be completed for the unpaid balance of the Contract ~~Sum;~~Sum including retainage;

Additions and Deletions Report for AIA Document A201™ – 2007. Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987, 1997 and 2007 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 08:44:02 on 06/06/2016 under Order No.7898458378_1 which expires on 04/22/2017, and is not for resale.
User Notes:                                (2017881168)

**26**

Complaint, Exh. A

.5    damage to the Owner or ~~a separate~~ another contractor;

...

.7    ~~repeated~~ persistent failure to carry out the Work in accordance with the Contract Documents.

...

~~§ 9.5.3 If the Architect withholds certification for payment under Section 9.5.1.3, the Owner may, at its sole option, issue joint checks to the Contractor and to any Subcontractor or material or equipment suppliers to whom the Contractor failed to make payment for Work properly performed or material or equipment suitably delivered. If the Owner makes payments by joint check, the Owner shall notify the Architect and the Architect will reflect such payment on the next Certificate for Payment.~~

...

§ 9.6.2 The Contractor shall ~~pay each Subcontractor no later than seven days after receipt of payment from the Owner the amount to which the~~ promptly pay each Subcontractor, upon receipt of payment from the Owner, out of the amount paid to the Contractor on account of such Subcontractor's portion of the Work, the amount to which said Subcontractor is entitled, reflecting percentages actually retained from payments to the Contractor on account of ~~the~~ such Subcontractor's portion of the Work. The Contractor shall, by appropriate agreement with each Subcontractor, require each Subcontractor to make payments to Sub-subcontractors in a similar manner.

...

§ 9.6.4 ~~The Owner has the right to request written evidence from the Contractor that the Contractor has properly paid Subcontractors and material and equipment suppliers amounts paid by the Owner to the Contractor for subcontracted Work. If the Contractor fails to furnish such evidence within seven days, the Owner shall have the right to contact Subcontractors to ascertain whether they have been properly paid.~~ Neither the Owner nor Architect shall have an obligation to pay or to see to the payment of money to a ~~Subcontractor,~~ Subcontractor except as may otherwise be required by law.

§ 9.6.5 ~~Contractor payments~~ Payment to material ~~and equipment suppliers~~ shall be treated in a manner similar to that provided in Sections 9.6.2, 9.6.3 and 9.6.4.

PAGE 35

§9.6.8 Unless Contractor is not in default and otherwise requests Owner not to do so as a result of Contractor's good faith dispute with a Subcontractor or supplier, Owner may make payments jointly to the order of Contractor and its Subcontractor or supplier after giving ten days' notice to Contractor of Owner's intention to pay the subcontractor(s).

~~If the Architect does not issue a Certificate for Payment, through no fault of the Contractor, within seven days after receipt of the Contractor's Application for Payment, or if the Owner does not pay the Contractor within seven days after the date established in the Contract Documents the amount certified by the Architect or awarded by binding dispute resolution, then the Contractor may, upon seven additional days' written notice to the Owner and Architect, stop the Work until payment of the amount owing has been received. The Contract Time shall be extended appropriately and the Contract Sum shall be increased by the amount of the Contractor's reasonable costs of shut-down, delay and start-up, plus interest as provided for in the Contract Documents.~~ § 9.7.1 If the Architect does not issue a Certificate for Payment, through no fault of the Contractor, within seven days after receipt of the Contractor's Application for Payment, or if the Owner does not pay the Contractor within seven days after the date established in the Contract Documents the amount certified by the Architect or awarded by arbitration, then the Contractor may, upon fifteen additional days' written notice to the Owner and Architect, stop the Work until payment of the amount owing has been received. The Contract Time shall be extended appropriately and the

Additions and Deletions Report for AIA Document A201™ – 2007. Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987, 1997 and 2007 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 08:44:02 on 06/06/2016 under Order No.7898458378_1 which expires on 04/22/2017, and is not for resale.
User Notes:                                                                                                                              (2017881168)

Complaint, Exh. A

Contract Sum shall be increased by the amount of the Contractor's reasonable costs of shut-down, delay and start-up, plus interest as provided for in the Contract Documents.

...

§ 9.8.1 Substantial Completion is the stage in the progress of the Work when the Work or designated portion thereof is sufficiently complete in accordance with the Contract Documents so that the Owner can occupy or utilize the Work for its intended use.use, and a temporary Certificate of Occupancy has been obtained from the applicable governmental authority.  The Contractor shall secure and deliver to the Owner written warranties and guarantees from its Subcontractors, Sub-subcontractors and suppliers bearing the date of Substantial Completion or some other date as may be agreed to by the Owner and stating the period of warranty as required by the Contract Documents. The Contractor is responsible for the warranty of all Work following Substantial Completion, whether performed by it or by its Subcontractors at any tier.

...

§ 9.8.4 When the Work or designated portion thereof is substantially complete, the Architect will prepare a Certificate of Substantial Completion that which shall establish the date of Substantial Completion, shall establish responsibilities of the Owner and Contractor for security, maintenance, heat, utilities, damage to the Work and insurance, and shall fix the time within which the Contractor shall finish all items on the list accompanying the Certificate. Warranties required by the Contract Documents shall commence on the date of Substantial Completion of the Work or designated portion thereof unless otherwise provided in the Certificate of Substantial Completion.

§ 9.8.5 The Certificate of Substantial Completion shall be submitted to the Owner and Contractor for their written acceptance of responsibilities assigned to them in such Certificate. Upon such acceptance and consent of surety, if any, the Owner shall make payment of retainage applying to such Work or designated portion thereof. Such payment shall be adjusted for Work that is incomplete or not in accordance with the requirements of the Contract Documents, as provided for in the Contract Documents.

**PAGE 36**

§ 9.9.1 The Owner may occupy or use any completed or partially completed portion of the Work at any stage when such portion is designated by separate agreement with the Contractor, provided such occupancy or use is consented to by the insurer as required under Section 11.3.1.5 11.4.1.5 and authorized by public authorities having jurisdiction over the Project.Work. Such partial occupancy or use may commence whether or not the portion is substantially complete, provided the Owner and Contractor have accepted in writing the responsibilities assigned to each of them for payments, retainage, if any, security, maintenance, heat, utilities, damage to the Work and insurance, and have agreed in writing concerning the period for correction of the Work and commencement of warranties required by the Contract Documents. When the Contractor considers a portion substantially complete, the Contractor shall prepare and submit a list to the Architect as provided under Section 9.8.2. Consent of the Contractor to partial occupancy or use shall not be unreasonably withheld. The stage of the progress of the Work shall be determined by written agreement between the Owner and Contractor or, if no agreement is reached, by decision of the Architect.

...

§ 9.10.1 Upon receipt of the Contractor's written notice that the Work is ready for final inspection and acceptance and upon receipt of a final Application for Payment, the Architect will promptly make such inspection and, when the Architect finds the Work acceptable under the Contract Documents and the Contract fully performed, the Architect will promptly issue a final Certificate for Payment stating that to the best of the Architect's knowledge, information and belief, and on the basis of the Architect's on-site visits and inspections, the Work has been completed in accordance with terms and conditions of the Contract Documents and that the entire balance found to be due the Contractor and noted in the final Certificate is due and payable. The Architect's final Certificate for Payment will constitute a further representation that conditions listed in Section 9.10.2 as precedent to the Contractor's being entitled to final payment have been fulfilled.  Neither Final Payment nor the release of any remaining retained percentage shall be due to the Contractor until the Owner has accepted the Work.  The Owner shall accept the Work only after all conditions for Final Payment and release of the retained percentage set forth in the Contract Documents have been satisfied, and each of the following events have occurred:

Additions and Deletions Report for AIA Document A201™ – 2007. Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987, 1997 and 2007 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 08:44:02 on 06/06/2016 under Order No.7898468378_1 which expires on 04/22/2017, and is not for resale.
User Notes:                                                                                    (2017881168)

28

Complaint, Exh. A

(1)     All labor has been performed and material supplied and incorporated into the Work in a good workmanlike manner consistent with the Contract Documents.

(2)     The Work, premises and surrounding area have been cleaned up consistent with Subparagraph 3.15.1.

(3)     All persons, firms and corporations, including all laborers, materialpersons, suppliers and Subcontractors who have furnished equipment, supplied materials or performed work for or in connection with the Work, including but not limited to those persons who could file a claim of lien, have been paid or will be paid in full out of the remaining retained percentage; and those persons, firms and corporations have submitted their final statements with a waiver of all rights to mechanics' lien, stop notice, or recourse against surety of the bond,   subject to final payment.   The Contractor shall make these waivers available to the Owner for inspection by the Owner.   In the event a dispute has arisen between the Contractor and one of the parties listed above in this Article which prevents the Contractor from obtaining the waiver of rights required by this Article from that party, the Contractor may satisfy the requirements of this Article by (a) supplying a payment bond issued by a surety licensed to do business in the State of Florida and acceptable to the Owner to remove the effect of any lien, stop notice or related claim against the Work or the real property upon which the Work is built, and (b) agreeing to defend and indemnify the Owner against all actions filed by persons who have supplied materials to or performed work for or in connection to the Work.   The Contractor shall also have submitted an affidavit to the Owner and lender that all waivers described in this Article have been obtained from all parties described in this Article or that the claims of such parties have been satisfied by the obtaining of a bond.

(4)     All portions of the Work requiring inspection by any governmental authority have been inspected and approved by such authority, and any requisite certificates of occupancy, approvals, licenses and permits have been issued.

(5)     The Owner has received assignments of warranties of all Subcontractors and materialpersons.

§ 9.10.2 Neither final payment nor any remaining retained percentage shall become due until the Contractor submits to the Architect (1) an affidavit a final affidavit stating that payrolls, bills for materials and equipment, and other indebtedness connected with the Work for which the Owner or the Owner's property might be responsible or encumbered  (less amounts withheld by Owner) have been paid or otherwise satisfied, (2) a certificate evidencing that insurance required by the Contract Documents to remain in force after final payment is currently in effect and will not be canceled or allowed to expire until at least 30 days' prior written notice has been given to the Owner, (3) a written statement that the Contractor knows of no substantial reason that the insurance will not be renewable to cover the period required by the Contract Documents, (4) consent of surety, if any, to final payment and (5), if required by the Owner, other data establishing payment or satisfaction of obligations, such as receipts, releases and waivers of liens, liens for which the Contractor has been paid, claims, security interests or encumbrances arising out of the Contract, to the extent and in such form as may be designated by the Owner. If a Subcontractor refuses to furnish a release or waiver required by the Owner, the Contractor may furnish a bond satisfactory to the Owner to indemnify the Owner against such lien. If such lien remains unsatisfied after payments are made, the Contractor shall refund to the Owner all money that the Owner may be compelled to pay in discharging such lien, including all costs and reasonable attorneys' fees.   In no event shall final payment become due until the  Project Architect has issued a Certificate of Substantial Completion (AIA Form G704 or a similar form satisfactory to Owner), unless Owner has received full and unconditional releases of liens from Contractor and all subcontractors and materialmen performing work or supplying materials to the Project that filed a notice to owner, all in form and content satisfactory to Owner.

PAGE 37

§ 9.10.4 The making of final payment shall constitute a waiver of Claims by the Owner except those arising from from:

...

Additions and Deletions Report for AIA Document A201™ – 2007. Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987, 1997 and 2007 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 08:44:02 on 06/06/2016 under Order No.7898458378_1 which expires on 04/22/2017, and is not for resale.
User Notes:                                                                                                                                      (2017881188)

29

~~The Contractor shall be responsible for initiating, maintaining and supervising all safety precautions and programs in connection with the performance of the Contract.~~ § 10.1.1 The Contractor shall be responsible for initiating, maintaining and supervising all safety precautions and programs in connection with the performance of the Contract.

...

§ 10.2.1 The Contractor shall take reasonable precautions for safety of, and shall provide reasonable protection to prevent damage, injury or loss to~~to~~:

**PAGE 38**

§ 10.2.2 The Contractor shall ~~comply with and give notices required by applicable laws, statutes, ordinances, codes, rules and regulations,~~ give notices and comply with applicable laws, ordinances, rules, regulations and lawful orders of public authorities bearing on safety of persons or property or their protection from damage, injury or loss.

...

§ 10.2.5 The Contractor shall promptly remedy damage and loss (other than damage or loss to be insured under property insurance required by the Contract Documents) to property referred to in Sections 10.2.1.2 and 10.2.1.3 caused in whole or in part by the Contractor, a Subcontractor, a Sub-subcontractor, or anyone directly or indirectly employed by any of them, or by anyone for whose acts they may be liable and for which the Contractor is responsible under Sections 10.2.1.2 and 10.2.1.3, except damage or loss attributable to acts or omissions of the Owner or Architect or anyone directly or indirectly employed by either of them, or by anyone for whose acts either of them may be liable, and not attributable to the fault or negligence of the Contractor. The foregoing obligations of the Contractor ~~are in addition to~~ are  separate from and are not to be construed as being included in the Contractor's obligations under Section 3.18.

...

§ 10.2.7 The Contractor shall not load or permit any part of the construction or site to be loaded so as to ~~cause damage or create an unsafe condition.~~ endanger its safety.

§ 10.2.8 ~~INJURY OR DAMAGE TO PERSON OR PROPERTY~~
~~If either party suffers injury or damage to person or property because of an act or omission of the other party, or of others for whose acts such party is legally responsible, written notice of such injury or damage, whether or not insured, shall be given to the other party within a reasonable time not exceeding 21 days after discovery. The notice shall provide sufficient detail to enable the other party to investigate the matter.~~ The Contractor shall provide and maintain in good operating condition suitable and adequate fire protection equipment and services, and shall comply with all reasonable recommendations regarding fire protection made by the representatives of the fire insurance company carrying insurance on the work or by the local fire chief or fire marshal.   The area within the site limits shall be kept orderly and clean, and all combustible rubbish shall be promptly removed from the site.

...

§ 10.3.1 ~~The Contractor is responsible for compliance with any requirements included in the Contract Documents regarding hazardous materials. If the Contractor encounters a hazardous material or substance not addressed in the Contract Documents and if~~ reasonable precautions will be inadequate to prevent foreseeable bodily injury or death to persons resulting from a material or substance, including but not limited to asbestos or polychlorinated biphenyl (PCB), encountered on the site by the Contractor, the Contractor shall, upon recognizing the condition, immediately stop Work in the affected area and report the condition to the Owner and Architect in writing.

§ 10.3.2 ~~Upon receipt of the Contractor's written notice, the~~ The Owner shall obtain the services of a licensed laboratory to verify the presence or absence of the material or substance reported by the Contractor and, in the event such material or substance is found to be present, to ~~cause it to be~~ verify that it has been rendered harmless. Unless otherwise required by the Contract Documents, the Owner shall furnish in writing to the Contractor and Architect the names and qualifications of persons or entities who are to perform tests verifying the presence or absence of such

Additions and Deletions Report for AIA Document A201™ – 2007. Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987, 1997 and 2007 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 08:44:02 on 06/06/2016 under Order No.7895458378_1 which expires on 04/22/2017, and is not for resale.
User Notes:                                                                                                                              (2017881166)

Complaint, Exh. A

material or substance or who are to perform the task of removal or safe containment of such material or substance. The Contractor and the Architect will promptly reply to the Owner in writing stating whether or not either has reasonable objection to the persons or entities proposed by the Owner. If either the Contractor or Architect has an objection to a person or entity proposed by the Owner, the Owner shall propose another to whom the Contractor and the Architect have no reasonable objection. When the material or substance has been rendered harmless, Work in the affected area shall resume upon written agreement of the Owner and Contractor. ~~By Change Order, the~~ The Contract Time shall be extended appropriately and the Contract Sum shall be increased in the amount of the Contractor's reasonable additional costs of shut-down, delay and ~~start-up.~~ start-up, which adjustments shall be accomplished as provided in Article 7.

§ 10.3.3 To the fullest extent permitted by law, the Owner shall indemnify and hold harmless the Contractor, Subcontractors, Architect, Architect's consultants and agents and employees of any of them from and against claims, damages, losses and expenses, including but not limited to attorneys' fees, arising out of or resulting from performance of the Work in the affected area if in fact the material or substance presents the risk of bodily injury or death as described in Section 10.3.1 and has not been rendered harmless, provided that such claim, damage, loss or expense is attributable to bodily injury, sickness, disease or death, or to injury to or destruction of tangible property (other than the Work ~~itself),~~ itself) and provided that such damage, loss or expense is ~~due to the fault or negligence of the~~ not due in whole or in part to the sole negligence of a party seeking indemnity.

§ 10.3.4 The Owner shall not be responsible under ~~this Section 10.3 for materials or substances the Contractor brings to the site unless such materials or substances are required by the Contract Documents. The Owner shall be responsible for materials or substances required by the Contract Documents, except to the extent of the Contractor's fault or negligence in the use and handling of such materials or substances.~~ Section 10.3 for materials and substances brought to the site by the Contractor unless such materials or substances were required by the Contract Documents.

§ 10.3.5 ~~The Contractor shall indemnify the Owner for the cost and expense the Owner incurs (1) for remediation of a material or substance the Contractor brings to the site and negligently handles, or (2) where the Contractor fails to perform its obligations under Section 10.3.1, except to the extent that the cost and expense are due to the Owner's fault or negligence.~~ If, without negligence on the part of the Contractor, the Contractor is held liable for the cost of remediation of a hazardous material or substance solely by reason of performing Work as required by the Contract Documents, the Owner shall indemnify the Contractor for all cost and expense thereby incurred.

~~§ 10.3.6 If, without negligence on the part of the Contractor, the Contractor is held liable by a government agency for the cost of remediation of a hazardous material or substance solely by reason of performing Work as required by the Contract Documents, the Owner shall indemnify the Contractor for all cost and expense thereby incurred.~~

~~§ 10.4 EMERGENCIES~~
~~In an emergency affecting safety of persons or property, the Contractor shall act, at the Contractor's discretion, to prevent threatened damage, injury or loss. Additional compensation or extension of time claimed by the Contractor on account of an emergency shall be determined as provided in Article 15 and Article 7.~~


**PAGE 39**

§ 11.1.1 The Contractor shall purchase from and maintain in a company or companies lawfully authorized to do business in the jurisdiction in which the Project is located such insurance as will protect the Contractor from claims set forth below which may arise out of or result from the Contractor's operations ~~and completed operations~~ under the Contract and for which the Contractor may be legally liable, whether such operations be by the Contractor or by a Subcontractor or by anyone directly or indirectly employed by any of them, or by anyone for whose acts any of them may be liable:

   .1    Claims under workers' compensation, disability benefit and other similar employee benefit acts ~~that which~~ are applicable to the Work to be ~~performed;~~ performed including private entities performing Work at the site and exempt from coverage on account of number of employees or occupation, which entities shall maintain voluntary compensation coverage at the same limits specified for mandatory coverage for the duration of the Project;

Additions and Deletions Report for AIA Document A201™ – 2007. Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987, 1997 and 2007 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 08:44:02 on 06/08/2016 under Order No.7898458378_1 which expires on 04/22/2017, and is not for resale.
User Notes:                   (2017881168)

Complaint, Exh. A

.2   ~~Claims for damages because of bodily injury, occupational sickness or disease, or death of the Contractor's employees;~~Contractor's employees or persons or entities excluded by statute from the requirements of clause but required by the Contract Documents to provide the insurance required by the clause;

...

.8   Claims involving contractual liability insurance applicable to the Contractor's obligations under Section 3.18.

.9   The Contractor and its Subcontractors (unless otherwise agreed to in writing by the Owner) shall purchase and maintain the following insurance for the life of the Contract:

| | Contractor | Subcontractors |
|---|---|---|
| **COMMERCIAL GENERAL LIABILITY** | | |
| **Limits of Liability:** | | |
| General Aggregate | $2,000,000 | $1,000,000 |
| Products/Completed Operations Aggregate | $2,000,000 | $1,000,000 |
| Contractual Liability | $2,000,000 | $1,000,000 |
| Each Occurrence | $1,000,000 | $1,000,000 |
| Personal and Advertising Injury | $1,000,000 | $1,000,000 |
| Fire Legal Liability | $50,000 | $50,000 |
| Medical Payments | $5,000 | $5,000 |

Commercial General Liability Form to be used is CG00 01 10 01
Form includes S, C & U and Contractual Liability.

| | Contractor | Subcontractors |
|---|---|---|
| **COMMERCIAL UMBRELLA LIABILITY** | | |
| **Limits of Liability:** | | |
| General Aggregate | $5,000,000 | $1,000,000 |
| Each Occurrence | $5,000,000 | $1,000,000 |
| Max. Self-Insured Retention / Deductible | $50,000 | $50,000 |

| | Contractor | Subcontractors |
|---|---|---|
| **AUTOMOBILE LIABILITY** | | |
| **Limits of Liability:** | | |
| Bodily Injury or Property Damage Combined Single Limit | $1,000,000 | $1,000,000 |
| Personal Injury Protection (No Fault) | $10,000 | $10,000 |
| Hired – Non-Owned Liability | $1,000,000 | $1,000,000 |

| | Contractor | Subcontractors |
|---|---|---|
| **WORKERS COMPENSATION** | | |
| **Limits of Liability:** | | |
| Workers Compensation | Statutory | Statutory |
| Employer's Liability – Each Accident | $100,000 | $100,000 |
| Employer's Liability – Policy Limit by Disease | $500,000 | $500,000 |
| Employer's Liability – Each Employee by Disease | $100,000 | $100,000 |

§ **11.1.2** The insurance required by Section 11.1.1 shall be written for not less than limits of liability specified in the Contract Documents or required by law, whichever coverage is greater. ~~Coverages, whether written on an occurrence or claims made basis,~~ Coverages shall be written on an "occurrence" basis and shall be maintained without interruption from ~~the date of commencement of the Work until the date of final payment and termination of any coverage required to be maintained after final payment, and, with respect to the Contractor's completed operations coverage, until the expiration of the period for correction of Work or for such other period for maintenance of completed operations coverage as specified in the Contract Documents~~date of commencement of the Work, until Final Completion of the Work.

Additions and Deletions Report for AIA Document A201™ – 2007. Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987, 1997 and 2007 by The American Institute of Architects. All rights reserved. WARNING: This AIA®  Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA®  Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 08:44:02 on 08/08/2016 under Order No.7898468378_1 which expires on 04/22/2017, and is not for resale.
User Notes:                                                                                                      (2017861168)

Complaint, Exh. A

Such coverages shall be maintained by insurance carriers acceptable to Owner in all respects.

§ 11.1.3 Certificates of insurance containing endorsements required herein acceptable to the Owner shall be filed with the Owner prior to commencement of the ~~Work and thereafter upon renewal or replacement of each required policy of insurance.~~ Work. These certificates and the insurance policies required by this Section 11.1 shall contain a provision that coverages afforded under the policies will not be canceled or allowed to expire until at least 30 days' prior written notice has been given to the Owner. ~~An additional certificate evidencing continuation of liability coverage, including coverage for completed operations,~~ If any of the foregoing insurance coverages are required to remain in force after final payment and are reasonably available, an additional certificate evidencing continuation of such coverage shall be submitted with the final Application for Payment as required by Section ~~9.10.2 and thereafter upon renewal or replacement of such coverage until the expiration of the time required by Section 11.1.2.~~ 9.10.2, Information concerning reduction of coverage on account of revised limits or claims paid under the General Aggregate, or both, shall be furnished by the Contractor with reasonable ~~promptness.~~ promptness in accordance with the Contractor's knowledge and belief.  All written notices to be given to Owner shall be given by registered mail, return receipt requested  The Contractor shall furnish to the Owner or Owner's Representative with copies of any endorsements that are subsequently issued amending coverage or limits. Failure of the Contractor to obtain and maintain required insurance shall be grounds for termination of the Contract by the Owner.  The Owner shall be listed as a named additional insured by appropriate endorsements concerning all insurance coverages furnished by Contractor with the exception of Worker's Compensation. The Contractor shall provide Certificates of Insurance evidencing the named additional insured status of the Owner.

§ 11.1.4  The ~~Contractor shall cause the commercial liability coverage required by the Contract Documents to include (1) the Owner, the Architect and the Architect's consultants as additional insureds for claims caused in whole or in part by the Contractor's negligent acts or omissions during the Contractor's operations; and (2) the Owner as an additional insured for claims caused in whole or in part by the Contractor's negligent acts or omissions during the Contractor's completed operations.~~ insurance required by this Paragraph for the Contractor shall be written with a company having at least an "A" policyholder's rating and a minimum Class 15 financial rating as listed in the latest edition of Best's Insurance Guide. The insurance required by this Paragraph for the each Subcontractor shall be written with a company having at least an "B+" policyholder's rating and a minimum Class 5 financial rating as listed in the latest edition of Best's Insurance Guide.

§11.1.5  The Contractor shall carry sufficient comprehensive insurance on equipment at the site and in transit to and from the site. It is expressly understood that the Owner and Architect shall have no liability from damage to equipment.

§11.1.6  The Contractor shall remain fully liable and responsible for all obligations under the Contract Documents, whether or not the insurance provided by him is approved by the Owner or Architect and whether or not it is sufficient in amount, quality and coverage to protect him against such liability, and shall pay and make good all such obligations to the full extent such insurance does not cover them.

PAGE 41

~~The Owner shall be responsible for purchasing and maintaining the Owner's usual liability insurance.~~ § 11.2.1 The Owner shall be responsible for purchasing and maintaining the Owner's usual liability insurance.

§ 11.3 ~~PROPERTY INSURANCE~~ PROJECT MANAGEMENT PROTECTIVE LIABILITY INSURANCE
§ 11.3.1 ~~Unless otherwise provided, the Owner shall purchase and maintain, in a company or companies lawfully authorized to do business in the jurisdiction in which the Project is located, property insurance written on a builder's risk "all-risk" or equivalent policy form in the amount of the initial Contract Sum, plus value of subsequent Contract Modifications and cost of materials supplied or installed by others, comprising total value for the entire Project at the site on a replacement cost basis without optional deductibles. Such property insurance shall be maintained, unless otherwise provided in the Contract Documents or otherwise agreed in writing by all persons and entities who are beneficiaries of such insurance, until final payment has been made as provided in Section 9.10 or until no person or entity other than the Owner has an insurable interest in the property required by this Section 11.3 to be covered, whichever is later. This insurance shall include interests of the Owner, the Contractor, Subcontractors and Sub-subcontractors in the Project.~~ Optionally, the Owner may require the Contractor to purchase and maintain

Additions and Deletions Report for AIA Document A201™ – 2007. Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987, 1997 and 2007 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 08:44:02 on 06/06/2016 under Order No.7898456378_1 which expires on 04/22/2017, and is not for resale.
User Notes:                                                                                                    (2017881168)

Complaint, Exh. A

Project Management Protective Liability insurance from the Contractor's usual sources as primary coverage for the Owner's, Contractor's and Architect's vicarious liability for construction operations under the Contract. Unless otherwise required by the Contract Documents, the Owner shall reimburse the Contractor by increasing the Contract Sum to pay the cost of purchasing and maintaining such optional insurance coverage, and the Contractor shall not be responsible for purchasing any other liability insurance on behalf of the Owner. The minimum limits of liability purchased with such coverage shall be equal to the aggregate of the limits required for Contractor's Liability Insurance under Sections 11.1.1.2 through 11.1.1.5.

~~§ 11.3.1.1 Property insurance shall be on an "all-risk" or equivalent policy form and shall include, without limitation, insurance against the perils of fire (with extended coverage) and physical loss or damage including, without duplication of coverage, theft, vandalism, malicious mischief, collapse, earthquake, flood, windstorm, falsework, testing and startup, temporary buildings and debris removal including demolition occasioned by enforcement of any applicable legal requirements, and shall cover reasonable compensation for Architect's and Contractor's services and expenses required as a result of such insured loss.~~

~~§ 11.3.1.2 If the Owner does not intend to purchase such property insurance required by the Contract and with all of the coverage in the amount described above, the Owner shall so inform the Contractor in writing prior to commencement of the Work. The Contractor may then effect insurance that will protect the interests of the Contractor, Subcontractors and Sub-subcontractors in the Work, and by appropriate Change Order the cost thereof shall be charged to the Owner. If the Contractor is damaged by the failure or neglect of the Owner to purchase or maintain insurance as described above, without so notifying the Contractor in writing, then the Owner shall bear all reasonable costs properly attributable thereto.~~

~~§ 11.3.1.3 If the property insurance requires deductibles, the Owner shall pay costs not covered because of such deductibles.~~

~~§ 11.3.1.4 This property insurance shall cover portions of the Work stored off the site, and also portions of the Work in transit.~~

~~§ 11.3.1.5 Partial occupancy or use in accordance with Section 9.9 shall not commence until the insurance company or companies providing property insurance have consented to such partial occupancy or use by endorsement or otherwise. The Owner and the Contractor shall take reasonable steps to obtain consent of the insurance company or companies and shall, without mutual written consent, take no action with respect to partial occupancy or use that would cause cancellation, lapse or reduction of insurance.~~

**§ 11.3.2** ~~BOILER AND MACHINERY INSURANCE~~
~~The Owner shall purchase and maintain boiler and machinery insurance required by the Contract Documents or by law, which shall specifically cover such insured objects during installation and until final acceptance by the Owner; this insurance shall include interests of the Owner, Contractor, Subcontractors and Sub-subcontractors in the Work, and the Owner and Contractor shall be named insureds.~~To the extent damages are covered by any Project Management Protective Liability insurance, the Owner, Contractor and Architect waive all rights against each other for damages, except such rights as they may have to the proceeds of such insurance. The policy shall provide for such waivers of subrogation by endorsement or otherwise.

**§ 11.3.3** ~~LOSS OF USE INSURANCE~~
~~The Owner, at the Owner's option, may purchase and maintain such insurance as will insure the Owner against loss of use of the Owner's property due to fire or other hazards, however caused. The Owner waives all rights of action against the Contractor for loss of use of the Owner's property, including consequential losses due to fire or other hazards however caused.~~The Owner shall not require the Contractor to include the Owner, Architect or other persons or entities as additional insureds on the Contractor's Liability Insurance coverage under Section 11.1.

~~§ 11.3.4 If the Contractor requests in writing that insurance for risks other than those described herein or other special causes of loss be included in the property insurance policy, the Owner shall, if possible, include such insurance, and the cost thereof shall be charged to the Contractor by appropriate Change Order.~~

~~§ 11.3.5 If during the Project construction period the Owner insures properties, real or personal or both, at or adjacent to the site by property insurance under policies separate from those insuring the Project, or if after final~~

Additions and Deletions Report for AIA Document A201™ – 2007. Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987, 1997 and 2007 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 08:44:02 on 06/06/2016 under Order No.7892458378_1 which expires on 04/22/2017, and is not for resale.
User Notes:                                                                                                            (2017881168)

Complaint, Exh. A

payment property insurance is to be provided on the completed Project through a policy or policies other than those insuring the Project during the construction period, the Owner shall waive all rights in accordance with the terms of Section 11.3.7 for damages caused by fire or other causes of loss covered by this separate property insurance. All separate policies shall provide this waiver of subrogation by endorsement or otherwise.

§ 11.3.6 Before an exposure to loss may occur, the Owner shall file with the Contractor a copy of each policy that includes insurance coverages required by this Section 11.3. Each policy shall contain all generally applicable conditions, definitions, exclusions and endorsements related to this Project. Each policy shall contain a provision that the policy will not be cancelled or allowed to expire, and that its limits will not be reduced, until at least 30 days' prior written notice has been given to the Contractor.

§ 11.3.7 WAIVERS OF SUBROGATION
The Owner and Contractor waive all rights against (1) each other and any of their subcontractors, sub-subcontractors, agents and employees, each of the other, and (2) the Architect, Architect's consultants, separate contractors described in Article 6, if any, and any of their subcontractors, sub-subcontractors, agents and employees, for damages caused by fire or other causes of loss to the extent covered by property insurance obtained pursuant to this Section 11.3 or other property insurance applicable to the Work, except such rights as they have to proceeds of such insurance held by the Owner as fiduciary. The Owner or Contractor, as appropriate, shall require of the Architect, Architect's consultants, separate contractors described in Article 6, if any, and the subcontractors, sub-subcontractors, agents and employees of any of them, by appropriate agreements, written where legally required for validity, similar waivers each in favor of other parties enumerated herein. The policies shall provide such waivers of subrogation by endorsement or otherwise. A waiver of subrogation shall be effective as to a person or entity even though that person or entity would otherwise have a duty of indemnification, contractual or otherwise, did not pay the insurance premium directly or indirectly, and whether or not the person or entity had an insurable interest in the property damaged.

§ 11.3.8 A loss insured under the Owner's property insurance shall be adjusted by the Owner as fiduciary and made payable to the Owner as fiduciary for the insureds, as their interests may appear, subject to requirements of any applicable mortgagee clause and of Section 11.3.10. The Contractor shall pay Subcontractors their just shares of insurance proceeds received by the Contractor, and by appropriate agreements, written where legally required for validity, shall require Subcontractors to make payments to their Sub-subcontractors in similar manner.

§ 11.3.9 If required in writing by a party in interest, the Owner as fiduciary shall, upon occurrence of an insured loss, give bond for proper performance of the Owner's duties. The cost of required bonds shall be charged against proceeds received as fiduciary. The Owner shall deposit in a separate account proceeds so received, which the Owner shall distribute in accordance with such agreement as the parties in interest may reach, or as determined in accordance with the method of binding dispute resolution selected in the Agreement between the Owner and Contractor. If after such loss no other special agreement is made and unless the Owner terminates the Contract for convenience, replacement of damaged property shall be performed by the Contractor after notification of a Change in the Work in accordance with Article 7.

§ 11.3.10 The Owner as fiduciary shall have power to adjust and settle a loss with insurers unless one of the parties in interest shall object in writing within five days after occurrence of loss to the Owner's exercise of this power; if such objection is made, the dispute shall be resolved in the manner selected by the Owner and Contractor as the method of binding dispute resolution in the Agreement. If the Owner and Contractor have selected arbitration as the method of binding dispute resolution, the Owner as fiduciary shall make settlement with insurers or, in the case of a dispute over distribution of insurance proceeds, in accordance with the directions of the arbitrators.

§ 11.4 PERFORMANCE BOND AND PAYMENT BONDPROPERTY INSURANCE
§ 11.4.1 The Owner shall have the right to require the Contractor to furnish bonds covering faithful performance of the Contract and payment of obligations arising thereunder as stipulated in bidding requirements or specifically required in the Contract Documents on the date of execution of the Contract.Unless otherwise provided, the Contractor shall purchase and maintain, in a company or companies lawfully authorized to do business in the jurisdiction in which the Project is located, property insurance written on a builder's risk "all-risk" or equivalent policy form in the amount of the initial Contract Sum, plus value of subsequent Contract Modifications and cost of materials supplied or installed by others, comprising total value for the entire Project at the site on a replacement cost basis without optional deductibles. Such property insurance shall be maintained, unless otherwise provided in

Additions and Deletions Report for AIA Document A201™ – 2007. Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987, 1997 and 2007 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 08:44:02 on 08/05/2016 under Order No.7898458378_1 which expires on 04/22/2017, and is not for resale.
User Notes:                                                                        (2017881168)

the Contract Documents or otherwise agreed in writing by all persons and entities who are beneficiaries of such insurance, until final payment has been made as provided in Section 9.10 or until no person or entity other than the Owner has an insurable interest in the property required by this Section 11.4 to be covered, whichever is later. This insurance shall include interests of the Owner, Subcontractors and Sub-subcontractors in the Project.

§ 11.4.1.1 Property insurance shall be on an "all-risk" or equivalent policy form and shall include, without limitation, insurance against the perils of fire (with extended coverage) and physical loss or damage including, without duplication of coverage, theft, vandalism, malicious mischief, collapse, earthquake, flood, windstorm, falsework, testing and startup, temporary buildings and debris removal including demolition occasioned by enforcement of any applicable legal requirements, and shall cover reasonable compensation for Architect's and Contractor's services and expenses required as a result of such insured loss.

§ 11.4.1.2 If the Owner does not intend to purchase such property insurance required by the Contract and with all of the coverages in the amount described above, the Owner shall so inform the Contractor in writing prior to commencement of the Work. The Contractor may then effect insurance which will protect the interests of the Contractor, Subcontractors and Sub-subcontractors in the Work, and by appropriate Change Order the cost thereof shall be charged to the Owner. If the Contractor is damaged by the failure or neglect of the Owner to purchase or maintain insurance as described above, without so notifying the Contractor in writing, then the Owner shall bear all reasonable costs properly attributable thereto.

§ 11.4.1.3 If the property insurance requires deductibles, the Owner shall pay costs not covered because of such deductibles.

§ 11.4.1.4 This property insurance shall cover portions of the Work stored off the site, and also portions of the Work in transit.

§ 11.4.1.5 Partial occupancy or use in accordance with Section 9.9 shall not commence until the insurance company or companies providing property insurance have consented to such partial occupancy or use by endorsement or otherwise. The Owner and the Contractor shall take reasonable steps to obtain consent of the insurance company or companies and shall, without mutual written consent, take no action with respect to partial occupancy or use that would cause cancellation, lapse or reduction of insurance.

§ 11.4.2 Upon the request of any person or entity appearing to be a potential beneficiary of bonds covering payment of obligations arising under the Contract, the Contractor shall promptly furnish a copy of the bonds or shall authorize a copy to be furnished.LOSS OF USE INSURANCE
§ 11.4.2.1 If during the Project construction period the Owner insures properties, real or personal or both, at or adjacent to the site by property insurance under policies separate from those insuring the Project, or if after final payment property insurance is to be provided on the completed Project through a policy or policies other than those insuring the Project during the construction period, the Owner shall waive all rights in accordance with the terms of Section 11.4.7 for damages caused by fire or other causes of loss covered by this separate property insurance. All separate policies shall provide this waiver of subrogation by endorsement or otherwise.

§ 11.4.2.2 Before an exposure to loss may occur, the Owner shall file with the Contractor a copy of each policy that includes insurance coverages required by this Section 11.4. Each policy shall contain all generally applicable conditions, definitions, exclusions and endorsements related to this Project. Each policy shall contain a provision that the policy will not be canceled or allowed to expire, and that its limits will not be reduced, until at least 30 days' prior written notice has been given to the Contractor.

§ 11.4.2.3 WAIVERS OF SUBROGATION
The Owner and Contractor waive all rights against (1) each other and any of their subcontractors, sub-subcontractors, agents and employees, each of the other, and (2) the Architect, Architect's consultants, separate contractors described in Article 6, if any, and any of their subcontractors, sub-subcontractors, agents and employees, for damages caused by fire or other causes of loss to the extent covered by property insurance obtained pursuant to this Section 11.4 or other property insurance applicable to the Work, except such rights as they have to proceeds of such insurance held by the Owner as fiduciary. The Owner or Contractor, as appropriate, shall require of the Architect, Architect's consultants, separate contractors described in Article 6, if any, and the subcontractors, sub-subcontractors, agents and employees of any of them, by appropriate agreements, written where legally required

Additions and Deletions Report for AIA Document A201™ – 2007. Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987, 1997 and 2007 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 08:44:02 on 06/09/2016 under Order No.7898458376_1 which expires on 04/22/2017, and is not for resale.
User Notes:                                                                                                   (2017881166)

Complaint, Exh. A

for validity, similar waivers each in favor of other parties enumerated herein. The policies shall provide such waivers of subrogation by endorsement or otherwise. A waiver of subrogation shall be effective as to a person or entity even though that person or entity would otherwise have a duty of indemnification, contractual or otherwise, did not pay the insurance premium directly or indirectly, and whether or not the person or entity had an insurable interest in the property damaged.

§ 11.4.2.4 A loss insured under Owner's property insurance shall be adjusted by the Owner as fiduciary and made payable to the Owner as fiduciary for the insureds, as their interests may appear, subject to requirements of any applicable mortgagee clause and of Section 11.4.10. The Contractor shall pay Subcontractors their just shares of insurance proceeds received by the Contractor, and by appropriate agreements, written where legally required for validity, shall require Subcontractors to make payments to their Sub-subcontractors in similar manner.

§ 11.4.2.5 If required in writing by a party in interest, the Owner as fiduciary shall, upon occurrence of an insured loss, give bond for proper performance of the Owner's duties. The cost of required bonds shall be charged against proceeds received as fiduciary. The Owner shall deposit in a separate account proceeds so received, which the Owner shall distribute in accordance with such agreement as the parties in interest may reach, or in accordance with an arbitration award in which case the procedure shall be as provided in Section 4.6. If after such loss no other special agreement is made and unless the Owner terminates the Contract for convenience, replacement of damaged property shall be performed by the Contractor after notification of a Change in the Work in accordance with Article 7.

§ 11.4.2.6 The Owner as fiduciary shall have power to adjust and settle a loss with insurers unless one of the parties in interest shall object in writing within five days after occurrence of loss to the Owner's exercise of this power; if such objection is made, the dispute shall be resolved as provided in Sections 4.5 and 4.6.   The Owner as fiduciary shall, in the case of arbitration, make settlement with insurers in accordance with directions of the arbitrators.   If distribution of insurance proceeds by arbitration is required, the arbitrators will direct such distribution.

§ 11.5 PERFORMANCE BOND AND PAYMENT BOND
§ 11.5.1 The Contractor shall furnish bonds covering faithful performance of the Contract and payment of obligations arising thereunder as stipulated in bidding requirements or specifically required in the Contract Documents on the date of execution of the Contract. The bonds and the surety shall be satisfactory to the Owner. Conditional Payment Bonds are not acceptable, and will not be used on the Project.

§ 11.5.2 Upon the request of any person or entity appearing to be a potential beneficiary of bonds covering payment of obligations arising under the Contract, the Contractor shall promptly furnish a copy of the bonds or shall authorize a copy to be furnished, and shall name Owner's lender(s) as dual obliges under the bonds by appropriate rider.

**PAGE 43**

§ 12.1.1 If a portion of the Work is covered contrary to the Architect's request or to requirements specifically expressed in the Contract Documents, it must, if ~~requested~~ required in writing by the Architect, be uncovered for the Architect's examination and be replaced at the Contractor's expense without change in the Contract Time.

§ 12.1.2 If a portion of the Work has been covered ~~that~~ which the Architect has not specifically requested to examine prior to its being covered, the Architect may request to see such Work and it shall be uncovered by the Contractor. If such Work is in accordance with the Contract Documents, costs of uncovering and replacement shall, by appropriate Change Order, be at the Owner's expense. If such Work is not in accordance with the Contract Documents, ~~such costs and the cost of correction~~ shall be at the Contractor's expense unless the condition was caused by the Owner or a separate contractor in which event the Owner shall be responsible for payment of such costs.

...

~~The Contractor shall promptly correct Work rejected by the Architect or failing to conform to the requirements of the Contract Documents, whether discovered before or after Substantial Completion and whether or not fabricated, installed or completed. Costs of correcting such rejected Work, including additional testing and inspections, the cost of uncovering and replacement, and compensation for the Architect's services and expenses made necessary~~

Additions and Deletions Report for AIA Document A201™ – 2007. Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987, 1997 and 2007 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 08:44:02 on 06/06/2016 under Order No.7898458378_1 which expires on 04/22/2017, and is not for resale.
User Notes:                                                                                         (2017651168)

Complaint, Exh. A

~~thereby, shall be at the Contractor's expense.~~ § 12.2.1.1 The Contractor shall promptly correct Work rejected by the Owner and Architect or failing to conform to the requirements of the Contract Documents, whether discovered before or after Substantial Completion and whether or not fabricated, installed or completed. Costs of correcting such rejected Work, including additional testing and inspections and compensation for the Architect's services and expenses made necessary thereby, shall be at the Contractor's expense.

...

§ 12.2.2.1 Contractor shall be solely responsible and pay for any loss, cost, damage or expense of any sort, including, without limitation, injury to or death of persons and loss or damage to property or other work, arising out of, resulting from or caused by any defective materials or workmanship occurring within one year of Substantial Completion.  Within one year of Substantial Completion, Contractor shall, without cost or expense to Owner and without limitation of Owner's other rights and remedies under the Contract Documents with respect to defective work, remedy all such defects.  In addition to the Contractor's obligations under Section 3.5, if, within one year after the date of Substantial Completion of the Work or designated portion thereof or after the date for commencement of warranties established under Section 9.9.1, or by terms of an applicable special warranty required by the Contract Documents, any of the Work is found to be not in accordance with the requirements of the Contract Documents, the Contractor shall correct it promptly after receipt of written notice from the Owner to do so unless the Owner has previously given the Contractor a written acceptance of such condition. The Owner shall give such notice promptly after discovery of the condition. During the one-year period for correction of Work, if the Owner fails to notify the Contractor and give the Contractor an opportunity to make the correction, the Owner waives the rights to require correction by the Contractor and to make a claim for breach of warranty. If the Contractor fails to correct nonconforming Work within a reasonable time during that period after receipt of notice from the Owner or Architect, the Owner may correct it in accordance with Section 2.4.  When called upon to perform under this Warranty, Contractor shall commence such performance within seven (7) working days of notification and shall complete all work relating thereto with due diligence.  Upon failure of Contractor to do so, Owner may cause such defects to be remedied by a person other than Contractor at Contractor's expense, including furnishing such supervision, materials and/or labor as are necessary to bring the Work up to the required standard.  In the event such defect is in the nature of or causes an emergency condition, Owner may undertake the work of correction and replacement on behalf of and without notice to Contractor.  All reasonable and necessary costs incurred by Owner to remedy such defects (including, without limitation, the cost of emergency work) shall be deducted from any amounts due Contractor, or if such costs exceed the amounts due, Contractor shall promptly pay Owner such excess immediately upon demand and presentation of supporting documentation per 7.3.6.  Contractor shall, at Owner's request, assign to Owner all assignable warranties it obtains from manufacturers or suppliers with respect to any materials, equipment or fixtures incorporated in the Work

§ 12.2.2.2 The one-year period for correction of Work shall be extended with respect to portions of Work first performed after Substantial Completion by the period of time between Substantial Completion and the actual ~~completion of that portion~~ performance of the Work.

**PAGE 44**

§ 12.2.3 The Contractor shall remove from the site portions of the Work ~~that~~ which are not in accordance with the requirements of the Contract Documents and are neither corrected by the Contractor nor accepted by the Owner.

§ 12.2.4 The Contractor shall bear the ~~cost~~ cost, unless covered by insurance, of correcting destroyed or damaged construction, whether completed or partially completed, of the Owner or separate contractors caused by the Contractor's correction or removal of Work ~~that~~ which is not in accordance with the requirements of the Contract Documents.

§ 12.2.5 Nothing contained in this Section 12.2 shall be construed to establish a period of limitation with respect to other obligations which the Contractor ~~has~~ might have under the Contract Documents. Establishment of the one-year period for correction of Work as described in Section 12.2.2 relates only to the specific obligation of the Contractor to correct the Work, and has no relationship to the time within which the obligation to comply with the Contract Documents may be sought to be enforced, nor to the time within which proceedings may be commenced to establish the Contractor's liability with respect to the Contractor's obligations other than specifically to correct the Work.

Additions and Deletions Report for AIA Document A201™ – 2007. Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987, 1997 and 2007 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 08:44:02 on 06/06/2016 under Order No.7898458378_1 which expires on 04/22/2017, and is not for resale.
User Notes:  (2017861168)

Complaint, Exh. A

...

If the Owner prefers to accept Work that is not in accordance with the requirements of the Contract Documents, the Owner may do so instead of requiring its removal and correction, in which case the Contract Sum will be reduced as appropriate and equitable. Such adjustment shall be effected whether or not final payment has been made. § 12.3.1 If the Owner prefers to accept Work which is not in accordance with the requirements of the Contract Documents, the Owner may do so instead of requiring its removal and correction, in which case the Contract Sum will be reduced as appropriate and equitable. Such adjustment shall be effected whether or not final payment has been made.

...

The Contract shall be governed by the law of the place where the Project is located except that, if the parties have selected arbitration as the other method of binding dispute resolution, the Federal Arbitration Act shall govern Section 15.4.§ 13.1.1 The Contract shall be governed by the law of the place where the Project is located.

§ 13.1.2. This Agreement is contingent upon Owner obtaining acceptable financing and successful closing of such financing.  Contractor agrees that if Owner is not successful in obtaining acceptable financing prior to the issuance of a Notice to Proceed, this Agreement is null and void, and contractor shall be reimbursed his actual costs incurred before it receives notice from Owner of its failure to obtain financing.

...

§ 13.2.1 The Owner and Contractor respectively bind themselves, their partners, successors, assigns and legal representatives to the other party hereto and to partners, successors, assigns and legal representatives of such other party in respect to covenants, agreements and obligations contained in the Contract Documents. Except as provided in Section 13.2.2, neither party to the Contract shall assign the Contract as a whole without written consent of the other. If either party attempts to make such an assignment without such consent, that party shall nevertheless remain legally responsible for all obligations under the Contract.
The Contractor's duties under this Contract are not assignable without the written consent of the Owner.  The Contractor may not assign any right to any money due or to become due under this Contract without written consent of Owner.  The Contractor understands and acknowledges that the Owner may assign it rights under this Contract to its lender and the Contractor agrees that following such assignment, all rights of the Owner under this Contract shall be enforceable by the lenders.  The Contractor acknowledges that it will enter into an agreement with such lender pursuant to which, at the lender's request, the Contractor shall complete the Work upon payment of the balance of the Contract Sum.
§ 13.2.2 The Owner may, without consent of the Contractor, assign the Contract to a an institutional lender providing construction financing for the Project, if the lender assumes Project. In such event, the lender shall assume the Owner's rights and obligations under the Contract Documents. The Contractor shall execute all consents reasonably required to facilitate such assignment.

**PAGE 45**

Written notice shall be deemed to have been duly served if delivered in person to the individual, to a member of the firm or entity, or to an officer of the corporation for which it was intended, or if delivered at, or sent by registered or certified mail or by courier service providing proof of delivery to, the last business address known to the party giving notice. § 13.3.1 Written notice shall be deemed to have been duly served if delivered in person to the individual or a member of the firm or entity or to an officer of the corporation for which it was intended, or if delivered at or sent by registered or certified mail to the last business address known to the party giving notice.

...

§ 13.4.2 No action or failure to act by the Owner, Architect or Contractor shall constitute a waiver of a right or duty afforded them under the Contract, nor shall such action or failure to act constitute approval of or acquiescence in a breach there under, thereunder, except as may be specifically agreed in writing.

Additions and Deletions Report for AIA Document A201™ – 2007. Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987, 1997 and 2007 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 08:44:02 on 06/06/2016 under Order No.7898458378_1 which expires on 04/22/2017, and is not for resale.
User Notes:                                                                (2017851166)

Complaint, Exh. A

§ 13.4.3 INVALIDITY.
The invalidity of any part of provision of the Contract Documents shall not impair or affect in any manner whatsoever the validity, enforceability or effect of the remainder of the Contract Documents.

...

§ 13.5.1 Tests, inspections and approvals of portions of the Work ~~shall be made as required by the Contract Documents and by applicable laws, statutes, ordinances, codes, rules and regulations or lawful orders of public authorities~~ required by the Contract Documents or by laws, ordinances, rules, regulations or orders of public authorities having jurisdiction shall be made at an appropriate time. Unless otherwise provided, the Contractor shall make arrangements for such tests, inspections and approvals with an independent testing laboratory or entity acceptable to the Owner, or with the appropriate public authority, and shall bear all related costs of tests, inspections and approvals. The Contractor shall give the Architect timely notice of when and where tests and inspections are to be made so that the Architect may be present for such procedures. The Owner shall bear costs of ~~(1)~~ tests, inspections or approvals ~~that~~ which do not become requirements until after bids are received or negotiations ~~concluded, and (2) tests, inspections or approvals where building codes or applicable laws or regulations prohibit the Owner from delegating their cost to the Contractor.~~ concluded.

PAGE 46

~~Payments due and unpaid under the Contract Documents shall bear interest from the date payment is due at such rate as the parties may agree upon in writing or, in the absence thereof, at the legal rate prevailing from time to time at the place where the Project is located.~~ § 13.6.1 Payments due and unpaid under the Contract Documents shall bear interest from the date payment is due at such rate as the parties may agree upon in the Agreement or, in the absence thereof, at the legal rate prevailing from time to time at the place where the Project is located.

§ 13.7 ~~TIME LIMITS ON CLAIMS~~ COMMENCEMENT OF STATUTORY LIMITATION PERIOD
§ 13.7.1 As between the Owner and Contractor:
~~The Owner and Contractor shall commence all claims and causes of action, whether in contract, tort, breach of warranty or otherwise, against the other arising out of or related to the Contract in accordance with the requirements of the final dispute resolution method selected in the Agreement within the time period specified by applicable law, but in any case not more than 10 years after the date of Substantial Completion of the Work. The Owner and Contractor waive all claims and causes of action not commenced in accordance with this Section 13.7.1_____   Before Substantial Completion.   As to acts or failures to act occurring prior to the relevant date of Substantial Completion, any applicable statute of limitations shall commence to run and any alleged cause of action shall be deemed to have accrued in any and all events not later than such date of Substantial Completion;

   .2   Between Substantial Completion and Final Certificate for Payment.   As to acts or failures to act occurring subsequent to the relevant date of Substantial Completion and prior to issuance of the final Certificate for Payment, any applicable statute of limitations shall commence to run and any alleged cause of action shall be deemed to have accrued in any and all events not later than the date of issuance of the final Certificate for Payment; and

   .3   After Final Certificate for Payment.   As to acts or failures to act occurring after the relevant date of issuance of the final Certificate for Payment, any applicable statute of limitations shall commence to run and any alleged cause of action shall be deemed to have accrued in any and all events not later than the date of any act or failure to act by the Contractor pursuant to any Warranty provided under Section 3.5, the date of any correction of the Work or failure to correct the Work by the Contractor under Section 12.2, or the date of actual commission of any other act or failure to perform any duty or obligation by the Contractor or Owner, whichever occurs last.

§ 13.8   DAVIS-BACON ACT (40 U.S.C 276A) AS SUPPLEMENTED IN DEPARTMENT OF LABOR REGULATIONS (29 C.F.R. PART 5).
§ 13.8.1   The Contractor must comply with the minimum rates for wages for laborers and mechanics as determined by the Secretary of Labor in accordance with the provision of this Act.

...

Additions and Deletions Report for AIA Document A201™ – 2007. Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987, 1997 and 2007 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 08:44:02 on 06/06/2016 under Order No.7898458378_1 which expires on 04/22/2017, and is not for resale.
User Notes:                                                                                                                                          (2017881168)

40

§ **14.1.1** The Contractor may terminate the Contract if the Work is stopped for a period of ~~30~~ 60 consecutive days through no act or fault of the Contractor or a Subcontractor, Sub-subcontractor or their agents or employees or any other persons or entities performing portions of the Work under direct or indirect contract with the Contractor, for any of the following reasons:

.1 Issuance of an order of a court or other public authority having jurisdiction ~~that~~ which requires all Work to be stopped;

.2 An act of government, such as a declaration of national emergency ~~that~~ which requires all Work to be stopped;

...

§ **14.1.2** The Contractor may terminate the Contract if, through no act or fault of the Contractor or a Subcontractor, Sub-subcontractor or their agents or employees or any other persons or entities performing portions of the Work under direct or indirect contract with the Contractor, repeated suspensions, ~~delays or interruptions of the entire Work by the Owner~~ or delays to the critical path as described in Section 14.3 constitute in the aggregate more than 100 percent of the total number of days scheduled for completion, or 120 days in any 365-day period, whichever is less.

§ **14.1.3** If one of the reasons described in Section 14.1.1 or 14.1.2 exists, the Contractor may, upon seven days' written notice to the Owner and Architect, terminate the Contract and recover from the Owner payment for Work ~~executed, including reasonable overhead and profit, costs incurred by reason of such termination,~~ executed and for proven loss with respect to materials, equipment, tools, and construction equipment and machinery, including reasonable overhead, profit, and damages.

§ **14.1.4** If the Work is stopped for a period of 60 consecutive days through no act or fault of the Contractor or a Subcontractor or their agents or employees or any other persons performing portions of the Work under contract with the Contractor because the Owner has ~~repeatedly~~ persistently failed to fulfill the Owner's obligations under the Contract Documents with respect to matters important to the progress of the Work, the Contractor may, upon seven additional days' written notice to the Owner and the Architect, terminate the Contract and recover from the Owner as provided in Section 14.1.3.

**PAGE 47**

§ **14.2.1** The Owner may terminate the Contract if the ~~Contractor~~ Contractor:

.1 persistently or repeatedly refuses or fails to supply enough properly skilled workers or proper materials;

...

.3 ~~repeatedly disregards applicable laws, statutes, ordinances, codes, rules and regulations, or lawful orders of a public authority;~~ persistently disregards laws, ordinances, codes or rules, regulations or orders of a public authority having jurisdiction; or

...

§ **14.2.2** When any of the above reasons exist, the Owner, ~~upon certification by the Initial Decision Maker that sufficient cause exists to justify such action,~~ may without prejudice to any other rights or remedies of the Owner and after giving the Contractor and the Contractor's surety, if any, seven days' written notice, terminate employment of the Contractor and may, subject to any prior rights of the surety:

.1 ~~Exclude the Contractor from the site and take possession~~ Take possession of the site and of all materials, equipment, tools, and construction equipment and machinery thereon owned by the Contractor;

...

.3 Finish the Work by whatever reasonable method the Owner may deem expedient. Upon ~~written~~ request of the Contractor, the Owner shall furnish to the Contractor a detailed accounting of the costs incurred by the Owner in finishing the Work.

Additions and Deletions Report for AIA Document A201™ – 2007. Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987, 1997 and 2007 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 08:44:02 on 06/06/2016 under Order No.7898458378_1 which expires on 04/22/2017, and is not for resale.
User Notes: (2017881168)

**41**

...

**§ 14.2.4** If the unpaid balance of the Contract Sum exceeds costs of finishing the Work, including compensation for the Architect's services and expenses made necessary thereby, and other damages incurred by the Owner and not expressly waived, such excess shall be paid to the Contractor. If such costs and damages exceed the unpaid balance, the Contractor shall pay the difference to the Owner. The amount to be paid to the Contractor or Owner, as the case may be, shall be certified by the ~~Initial Decision Maker,~~ Architect, upon application, and this obligation for payment shall survive termination of the Contract.

...

**§ 14.3.2** The Contract Sum and Contract Time shall be adjusted for increases in the cost and time caused by suspension, delay or interruption as described in Section 14.3.1. Adjustment of the Contract Sum shall include profit. No adjustment shall be made to the ~~extent~~extent:

...

**§ 14.4.1** The Owner may, at any time, terminate the Contract for the Owner's convenience and without cause. Termination by Owner under this Subparagraph 14.4 shall be by seven (7) days' prior written notice of termination given to Contractor specifying the extent of termination and the effective date.

**§ 14.4.2** Upon receipt of written notice from the Owner of such termination for the Owner's convenience, the Contractor ~~shall~~shall:

**PAGE 48**

 .2 take actions necessary, or that the Owner may direct, for the protection and preservation of the Work;and
 .3 except for Work directed to be performed prior to the effective date of termination stated in the notice, terminate all existing subcontracts and purchase orders and enter into no further subcontracts and purchase ~~orders.~~orders;
 .4 complete the performance of Work not terminated; and
 .5 take such other actions as may be necessary or requested by Owner for the protection and reservation of the terminated Work.

**§ 14.4.3** ~~In case of such termination for the Owner's convenience, the Contractor shall be entitled to receive payment for Work executed, and costs incurred by reason of such termination, along with reasonable overhead and profit on the Work not executed.~~the event of termination for Owner's convenience, Contractor shall be paid:
 .1 for Work performed on the terminated portion of the Work before the effective date of termination, for lump sum and Allowance Items, for goods, services and labor meeting the definitions of  Costs of the Work under clauses 1 through 5 of Subparagraph 7.3.6 for that Work or, for unit cost items, the cost based upon the units performed before the effective date of termination.  In addition, Contractor shall be paid the cost of settling and paying termination costs under terminated subcontracts or properly chargeable to the terminated portion of the Work;

  .2 reasonable costs directly related to such termination as described in detail in invoices and descriptions provided by Contractor and as approved by the Architect, including but not limited to stored materials that cannot be returned to their respective vendors; and

  .3 if Contractor would have earned a profit under the Contract had the Work been completed, a pro rata portion of such profit based upon the percentage of completed Work as of the effective date of termination.

**§ 14.4.4**  In determining amounts due Contractor under this Paragraph 14.4, Owner shall be credited for payments previously made to Contractor for the terminated portion of the Work and claims which Owner has against Contractor under the Contract, and for the value of materials, supplies, equipment or other items to be disposed of by Contractor that are covered under the Contract Sum previously made to Contractor.

Additions and Deletions Report for AIA Document A201™ – 2007. Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987, 1997 and 2007 by The American Institute of Architects. All rights reserved. WARNING: This AIA®  Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA®  Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 08:44:02 on 06/09/2016 under Order No.7698458378_1 which expires on 04/22/2017, and is not for resale.
User Notes: (2017881168)

Complaint, Exh. A

**ARTICLE 15   CLAIMS AND DISPUTES**
**§ 15.1 CLAIMS**
**§ 15.1.1 DEFINITION**
A Claim is a demand or assertion by one of the parties seeking, as a matter of right, payment of money, or other relief with respect to the terms of the Contract. The term "Claim" also includes other disputes and matters in question between the Owner and Contractor arising out of or relating to the Contract. The responsibility to substantiate Claims shall rest with the party making the Claim.

**§ 15.1.2 NOTICE OF CLAIMS**
Claims by either the Owner or Contractor must be initiated by written notice to the other party and to the Initial Decision Maker with a copy sent to the Architect, if the Architect is not serving as the Initial Decision Maker. Claims by either party must be initiated within 21 days after occurrence of the event giving rise to such Claim or within 21 days after the claimant first recognizes the condition giving rise to the Claim, whichever is later.

**§ 15.1.3 CONTINUING CONTRACT PERFORMANCE**
Pending final resolution of a Claim, except as otherwise agreed in writing or as provided in Section 9.7 and Article 14, the Contractor shall proceed diligently with performance of the Contract and the Owner shall continue to make payments in accordance with the Contract Documents. The Architect will prepare Change Orders and issue Certificates for Payment in accordance with the decisions of the Initial Decision Maker.

**§ 15.1.4 CLAIMS FOR ADDITIONAL COST**
If the Contractor wishes to make a Claim for an increase in the Contract Sum, written notice as provided herein shall be given before proceeding to execute the Work. Prior notice is not required for Claims relating to an emergency endangering life or property arising under Section 10.4.

**§ 15.1.5 CLAIMS FOR ADDITIONAL TIME**
**§ 15.1.5.1** If the Contractor wishes to make a Claim for an increase in the Contract Time, written notice as provided herein shall be given. The Contractor's Claim shall include an estimate of cost and of probable effect of delay on progress of the Work. In the case of a continuing delay, only one Claim is necessary.

**§ 15.1.5.2** If adverse weather conditions are the basis for a Claim for additional time, such Claim shall be documented by data substantiating that weather conditions were abnormal for the period of time, could not have been reasonably anticipated and had an adverse effect on the scheduled construction.

**§ 15.1.6 CLAIMS FOR CONSEQUENTIAL DAMAGES**
The Contractor and Owner waive Claims against each other for consequential damages arising out of or relating to this Contract. This mutual waiver includes

   .1   damages incurred by the Owner for rental expenses, for losses of use, income, profit, financing, business and reputation, and for loss of management or employee productivity or of the services of such persons; and

   .2   damages incurred by the Contractor for principal office expenses including the compensation of personnel stationed there, for losses of financing, business and reputation, and for loss of profit except anticipated profit arising directly from the Work.

This mutual waiver is applicable, without limitation, to all consequential damages due to either party's termination in accordance with Article 14. Nothing contained in this Section 15.1.6 shall be deemed to preclude an award of liquidated damages, when applicable, in accordance with the requirements of the Contract Documents.

**§ 15.2 INITIAL DECISION**
**§ 15.2.1** Claims, excluding those arising under Sections 10.3, 10.4, 11.3.9, and 11.3.10, shall be referred to the Initial Decision Maker for initial decision. The Architect will serve as the Initial Decision Maker, unless otherwise indicated in the Agreement. Except for those Claims excluded by this Section 15.2.1, an initial decision shall be required as a condition precedent to mediation of any Claim arising prior to the date final payment is due, unless 30 days have passed after the Claim has been referred to the Initial Decision Maker with no decision having been rendered. Unless the Initial Decision Maker and all affected parties agree, the Initial Decision Maker will not decide disputes between the Contractor and persons or entities other than the Owner.

Additions and Deletions Report for AIA Document A201™ – 2007. Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987, 1997 and 2007 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 08:44:02 on 06/06/2016 under Order No.7898458378_1 which expires on 04/22/2017, and is not for resale.
User Notes:                                                                                                          (2017881168)

**43**

Complaint, Exh. A

~~§ 15.2.2 The Initial Decision Maker will review Claims and within ten days of the receipt of a Claim take one or more of the following actions: (1) request additional supporting data from the claimant or a response with supporting data from the other party, (2) reject the Claim in whole or in part, (3) approve the Claim, (4) suggest a compromise, or (5) advise the parties that the Initial Decision Maker is unable to resolve the Claim if the Initial Decision Maker lacks sufficient information to evaluate the merits of the Claim or if the Initial Decision Maker concludes that, in the Initial Decision Maker's sole discretion, it would be inappropriate for the Initial Decision Maker to resolve the Claim.~~

~~§ 15.2.3 In evaluating Claims, the Initial Decision Maker may, but shall not be obligated to, consult with or seek information from either party or from persons with special knowledge or expertise who may assist the Initial Decision Maker in rendering a decision. The Initial Decision Maker may request the Owner to authorize retention of such persons at the Owner's expense.~~

~~§ 15.2.4 If the Initial Decision Maker requests a party to provide a response to a Claim or to furnish additional supporting data, such party shall respond, within ten days after receipt of such request, and shall either (1) provide a response on the requested supporting data, (2) advise the Initial Decision Maker when the response or supporting data will be furnished or (3) advise the Initial Decision Maker that no supporting data will be furnished. Upon receipt of the response or supporting data, if any, the Initial Decision Maker will either reject or approve the Claim in whole or in part.~~

~~§ 15.2.5 The Initial Decision Maker will render an initial decision approving or rejecting the Claim, or indicating that the Initial Decision Maker is unable to resolve the Claim. This initial decision shall (1) be in writing; (2) state the reasons therefor; and (3) notify the parties and the Architect, if the Architect is not serving as the Initial Decision Maker, of any change in the Contract Sum or Contract Time or both. The initial decision shall be final and binding on the parties but subject to mediation and, if the parties fail to resolve their dispute through mediation, to binding dispute resolution.~~

~~§ 15.2.6 Either party may file for mediation of an initial decision at any time, subject to the terms of Section 15.2.6.1.~~

~~§ 15.2.6.1 Either party may, within 30 days from the date of an initial decision, demand in writing that the other party file for mediation within 60 days of the initial decision. If such a demand is made and the party receiving the demand fails to file for mediation within the time required, then both parties waive their rights to mediate or pursue binding dispute resolution proceedings with respect to the initial decision.~~

~~§ 15.2.7 In the event of a Claim against the Contractor, the Owner may, but is not obligated to, notify the surety, if any, of the nature and amount of the Claim. If the Claim relates to a possibility of a Contractor's default, the Owner may, but is not obligated to, notify the surety and request the surety's assistance in resolving the controversy.~~

~~§ 15.2.8 If a Claim relates to or is the subject of a mechanic's lien, the party asserting such Claim may proceed in accordance with applicable law to comply with the lien notice or filing deadlines.~~

~~§ 15.3 MEDIATION~~
~~§ 15.3.1 Claims, disputes, or other matters in controversy arising out of or related to the Contract except those waived as provided for in Sections 9.10.4, 9.10.5, and 15.1.6 shall be subject to mediation as a condition precedent to binding dispute resolution.~~

~~§ 15.3.2 The parties shall endeavor to resolve their Claims by mediation which, unless the parties mutually agree otherwise, shall be administered by the American Arbitration Association in accordance with its Construction Industry Mediation Procedures in effect on the date of the Agreement. A request for mediation shall be made in writing, delivered to the other party to the Contract, and filed with the person or entity administering the mediation. The request may be made concurrently with the filing of binding dispute resolution proceedings but, in such event, mediation shall proceed in advance of binding dispute resolution proceedings, which shall be stayed pending mediation for a period of 60 days from the date of filing, unless stayed for a longer period by agreement of the parties or court order. If an arbitration is stayed pursuant to this Section 15.3.2, the parties may nonetheless proceed to the selection of the arbitrator(s) and agree upon a schedule for later proceedings.~~

Additions and Deletions Report for AIA Document A201™ – 2007. Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987, 1997 and 2007 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 08:44:02 on 06/08/2016 under Order No.7898458378_1 which expires on 04/22/2017, and is not for resale.
User Notes: (2017861168)

44

§ 15.3.3 The parties shall share the mediator's fee and any filing fees equally. The mediation shall be held in the place where the Project is located, unless another location is mutually agreed upon. Agreements reached in mediation shall be enforceable as settlement agreements in any court having jurisdiction thereof.

§ 15.4 ARBITRATION
§ 15.4.1 If the parties have selected arbitration as the method for binding dispute resolution in the Agreement, any Claim, subject to, but not resolved by, mediation shall be subject to arbitration which, unless the parties mutually agree otherwise, shall be administered by the American Arbitration Association in accordance with its Construction Industry Arbitration Rules in effect on the date of the Agreement. A demand for arbitration shall be made in writing, delivered to the other party to the Contract, and filed with the person or entity administering the arbitration. The party filing a notice of demand for arbitration must assert in the demand all Claims then known to that party on which arbitration is permitted to be demanded.

§ 15.4.1.1 A demand for arbitration shall be made no earlier than concurrently with the filing of a request for mediation, but in no event shall it be made after the date when the institution of legal or equitable proceedings based on the Claim would be barred by the applicable statute of limitations. For statute of limitations purposes, receipt of a written demand for arbitration by the person or entity administering the arbitration shall constitute the institution of legal or equitable proceedings based on the Claim.

§ 15.4.2 The award rendered by the arbitrator or arbitrators shall be final, and judgment may be entered upon it in accordance with applicable law in any court having jurisdiction thereof.

§ 15.4.3 The foregoing agreement to arbitrate and other agreements to arbitrate with an additional person or entity duly consented to by parties to the Agreement shall be specifically enforceable under applicable law in any court having jurisdiction thereof.

§ 15.4.4 CONSOLIDATION OR JOINDER
§ 15.4.4.1 Either party, at its sole discretion, may consolidate an arbitration conducted under this Agreement with any other arbitration to which it is a party provided that (1) the arbitration agreement governing the other arbitration permits consolidation, (2) the arbitrations to be consolidated substantially involve common questions of law or fact, and (3) the arbitrations employ materially similar procedural rules and methods for selecting arbitrator(s).

§ 15.4.4.2 Either party, at its sole discretion, may include by joinder persons or entities substantially involved in a common question of law or fact whose presence is required if complete relief is to be accorded in arbitration, provided that the party sought to be joined consents in writing to such joinder. Consent to arbitration involving an additional person or entity shall not constitute consent to arbitration of any claim, dispute or other matter in question not described in the written consent.

§ 15.4.4.3 The Owner and Contractor grant to any person or entity made a party to an arbitration conducted under this Section 15.4, whether by joinder or consolidation, the same rights of joinder and consolidation as the Owner and Contractor under this Agreement.

Additions and Deletions Report for AIA Document A201™ – 2007. Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987, 1997 and 2007 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 08:44:02 on 06/08/2016 under Order No.7898458378_1 which expires on 04/22/2017, and is not for resale.
User Notes:                                                                                                                                      (2017881168)

Complaint, Exh. A

## Certification of Document's Authenticity
*AIA® Document D401™ – 2003*

I, Michael K. Wilson, hereby certify, to the best of my knowledge, information and belief, that I created the attached final document simultaneously with its associated Additions and Deletions Report and this certification at 08:45:01 on 06/06/2016 under Order No. 7898458378_1 from AIA Contract Documents software and that in preparing the attached final document I made no changes to the original text of AIA® Document A201™ – 2007, General Conditions of the Contract for Construction, as published by the AIA in its software, other than those additions and deletions shown in the associated Additions and Deletions Report.

_____
(Signed)

_____
(Title)

_____
(Dated)

AIA Document D401™ – 2003. Copyright © 1992 and 2003 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 08:45:01 on 06/06/2016 under Order No.7898458378_1 which expires on 04/22/2017, and is not for resale.
User Notes:                                                                                          (727872888)

1

Complaint, Exh. A

**Exhibit A: Scope of Work**

**Building #7**

**General summary of proposed work:**

The proposed renovation will rehabilitate 1923 Neuro-Psychiatric Tuberculosis Long-Term Care Facility/Nursing Home Care Unit, converting it into a Housing Facility for Veterans. The renovation will include an attempt for LEED Silver status, new HVAC, electrical & plumbing systems, a restoration of the main entrance, and reconfiguration of the floor plan to accommodate twenty apartments. The building has been nominated for the National Register of Historic Places. The historic details include but are not limited to trim work (exterior and interior), windows, construction type, and finishes, etc.

The new interior building design will incorporate 20 total studio units with a large community space centered in the building. The units will be an average of 375 square feet, and each unit will include a kitchenette area with an under-counter refrigerator, an electric range and microwave oven. Units will also include new flooring, window blinds, central heat and air conditioning, and a private bath with a roll-in shower, vanity and toilet. Each unit will be furnished (by the owner) with a bed, nightstand and seating area.

**Exhibit C**
**FREEDOM'S PATH HOUSING HISTORIC REHABILITATION - DRAWING INDEX**
**Building #7**
**1 Freedom Way, Augusta, Georgia 30904**
**Augusta-Richmond County**

| SHEET | TITLE | SUBTITLE | DATE |
|---|---|---|---|
| C0.0 | COVER SHEET & GENERAL NOTES | | 2014-10-17 |
| - | VA BOUNDARY PLAT | | 2014-10-17 |
| C1.0 | DEMOLITION PLAN | | 2014-10-17 |
| C2.0 | OVERALL LAYOUT PLAN | | 2014-10-17 |
| C2.1 | LAYOUT & STAKING PLAN | | 2014-10-17 |
| C3.0 | GRADING PLAN | | 2014-10-17 |
| C4.0 | UTILITY PLAN | | 2014-10-17 |
| C5.0 | CONSTRUCTION DETAILS I | | 2014-10-17 |
| C5.1 | CONSTRUCTION DETAILS II | | 2014-10-17 |
| C5.2 | CONSTRUCTION DETAILS III | | 2014-10-17 |
| EC1.0 | EROSION SEDIMENTATION & POLLUTION CONTROL NOTES | | 2014-10-17 |
| EC1.1 | EROSION SEDIMENTATION & POLLUTION CONTROL NOTES | | 2014-10-17 |
| EC1.2 | EROSION SEDIMENTATION & POLLUTION CONTROL NOTES | | 2014-10-17 |
| EC2.0 | INITIAL EROSION SEDIMENTATION & POLLUTION CONTROL PLAN | | 2014-10-17 |
| EC2.1 | INTERMEDIATE EROSION SEDIMENTATION & POLLUTION CONTROL NOTES | | 2014-10-17 |
| EC2.2 | FINAL EROSION SEDIMENTATION & POLLUTION CONTROL NOTES | | 2014-10-17 |
| EC3.0 | EROSION SEDIMENTATION & POLLUTION CONTROL DETAILS | | 2014-10-17 |
| EC3.1 | EROSION SEDIMENTATION & POLLUTION CONTROL DETAILS | | 2014-10-17 |
| EC3.2 | EROSION SEDIMENTATION & POLLUTION CONTROL DETAILS | | 2014-10-17 |
| TP1.0 | TREE PROTECTION & REMOVAL PLAN | | 2014-10-17 |
| | | | |
| T1 | COVER SHEET | | 2014-09-05 |
| T2 | TITLE SHEET, INDEX, PROJECT DIRECTORY, PROJECT DATA, APPLICABLE CODES, ABBREVIATIONS, GENERAL NOTES | | 2015-10-28 |
| LS-1 | LIFE SAFETY PLAN | | 2015-10-28 |
| ACC-1 | GENERAL ACCESSIBILITY NOTES & DETAILS | | 2014-10-17 |
| ACC-2 | GENERAL ACCESSIBILITY NOTES & DETAILS | | 2015-10-28 |
| A0.1 | SITE PLANS, UNIT & BUILDING TABULATION | | 2015-10-28 |
| A1.1 | BUILDING FLOOR PLANS | EXISTING & PROPOSED | 2015-10-28 |
| A1.2 | ROOF PLAN | | 2014-10-17 |
| A2.1.1 | EXTERIOR ELEVATIONS | EXISTING & PROPOSED | 2014-10-17 |
| A2.1.2 | PROPOSED EXTERIOR ELEVATIONS | | 2014-10-17 |
| A2.1.3 | PROPOSED EXTERIOR ELEVATIONS | | 2014-10-17 |
| A3.1.1 | | #101, 102, 103, 104, 105 & 106 | 2014-10-17 |
| A3.1.2 | | #107, 108, 109, 110, 111, 112 & COMMON AREAS | 2015-06-22 |
| A3.1.3 | UNIT & COMMON AREA FLOOR PLANS | DINING, COMMUNITY & COMPUTER AREA, ENTRANCE LOBBY | 2015-10-28 |
| A3.1.4 | | #113, 114, 115, 116 & 117 | 2014-10-17 |
| A3.1.5 | | #118, 119 & 120 | 2014-10-17 |
| A3.2.1 | | #101, 102, 103, 104, 105 & 106 | 2014-10-17 |
| A3.2.2 | | #107, 108, 109, 110, 111, 112 & COMMON AREAS | 2015-06-22 |

| A3.2.3 | UNIT & COMMON AREA FIXTURE PLANS | DINING, COMMUNITY & COMPUTER AREA | 2015-10-28 |
|---|---|---|---|
| A3.2.4 | | #113, 114, 115, 116 & 117 | 2014-10-17 |
| A3.2.5 | | #118, 119 & 120 | 2014-10-17 |
| A4.1 | TYPICAL UNIT INTERIOR ELEVATIONS ACCESSIBLE UNIT INTERIOR ELEVATIONS | | 2014-10-17 |
| A4.2 | COMMON AREA INTERIOR ELEVATIONS | | 2015-06-22 |
| A5.1 | DOOR, WINDOW SCHEDULES & DETAILS | | 2015-06-22 |
| A5.2 | EQUIPMENT & FINISH SCHEDULES | | 2015-06-22 |
| A6.1 | WALL SECTION & DETAILS | | 2014-11-07 |
| A6.2 | ENTRANCE STAIRS & RAMP DETAILS | | 2014-10-17 |
| A6.3 | PENETRATION DETAILS | | 2014-09-05 |
| A6.4 | WALL DETAILS | | 2014-09-05 |
| A7.1 | | #101, 102, 103, 104, 105 & 106 | 2015-10-28 |
| A7.2 | | #107, 108, 109, 110, 111, 112 & COMMON AREAS | 2015-06-22 |
| A7.3 | REFLECTED CEILING PLANS | DINING, COMMUNITY & COMPUTER AREA, ENTRANCE LOBBY | 2015-06-22 |
| A7.4 | | #113, 114, 115, 116 & 117 | 2015-06-22 |
| A7.5 | | #118, 119 & 120 | 2015-06-22 |
| M1.1 | MECHANICAL NOTES, DETAILS & SCHEDULES | | 2015-10-28 |
| M1.2 | MECHANICAL FLOOR PLAN | | 2015-10-28 |
| M1.3 | PARTIAL MECHANICAL FLOOR PLAN | | 2015-10-28 |
| M1.4 | PARTIAL MECHANICAL FLOOR PLAN | | 2015-10-28 |
| M1.5 | PARTIAL MECHANICAL FLOOR PLAN | | 2015-10-28 |
| M1.6 | PARTIAL MECHANICAL FLOOR PLAN | | 2015-10-28 |
| M1.7 | PARTIAL MECHANICAL FLOOR PLAN | | 2015-10-28 |
| P1.1 | PLUMBING NOTES, DETAILS & SCHEDULES | | 2015-10-28 |
| P1.2 | PLUMBING FLOOR PLAN | | 2015-10-28 |
| P1.3 | PARTIAL PLUMBING FLOOR PLAN | | 2015-10-28 |
| P1.4 | PARTIAL PLUMBING FLOOR PLAN | | 2015-10-28 |
| P1.5 | PARTIAL PLUMBING FLOOR PLAN | | 2015-10-28 |
| P1.6 | PARTIAL PLUMBING FLOOR PLAN | | 2015-10-28 |
| E0.1 | ELECTRICAL NOTES & DETAILS | | 2015-10-28 |
| E1.1 | ELECTRICAL SCHEDULES | | 2015-10-28 |
| E1.2 | ELECTRICAL NOTES, DETAILS & SCHEDULES | | 2015-10-28 |
| E1.3 | PARTIAL ELECTRICAL FLOOR PLAN | | 2015-10-28 |
| E1.4 | PARTIAL ELECTRICAL FLOOR PLAN | | 2015-10-28 |
| E1.5 | PARTIAL ELECTRICAL FLOOR PLAN | | 2015-10-28 |
| E1.6 | PARTIAL ELECTRICAL FLOOR PLAN | | 2015-10-28 |
| E1.7 | PARTIAL ELECTRICAL FLOOR PLAN | | 2015-10-28 |
| E2.3 | PARTIAL LIGHTING FLOOR PLAN | | 2015-10-28 |
| E2.4 | PARTIAL LIGHTING FLOOR PLAN | | 2015-10-28 |
| E2.5 | PARTIAL LIGHTING FLOOR PLAN | | 2015-10-28 |
| E2.6 | PARTIAL LIGHTING FLOOR PLAN | | 2015-10-28 |
| E2.7 | PARTIAL LIGHTING FLOOR PLAN | | 2015-10-28 |
| E3.1 | ELECTRICAL SITE PLAN | | 2015-10-28 |
| FP1.1 | FIRE PROTECTION FLOOR PLAN | | 2015-10-28 |
| | SPECIFICATIONS | SUBTITLE | DATE |
| | Project Manual | Freedom's Path Housing Historical Rehabilitation Building #7 | 2014-09-05 |
| | ENVIRONMENTAL REPORTS & SPECIFICATIONS | | DATE |
| | Asbestos Survey #7 | | 2016-02-25 |
| | Lead-Containing Paint Survey Report #7 | | 2016-02-25 |

| | Asbestos Abatement Report #7 | | 2016-03-08 |
|---|---|---|---|
| | Lead-Containing Paint Renovation/Demolition Report #7 | | 2016-03-08 |
| | PCB CFC Mercury Demolition Report #7 | | 2016-03-08 |
| | Visual Materials & Visual Mold Assessment #7 | | 2016-03-08 |



Exhibit D

# Proposal

May 23, 2016
Mr. Bob Smith
Beneficial Communities
3550 S Tamiami Trail, Suite 301
Sarasota, FL 34239

Re: Freedoms Path - Augusta Proposal:

**Freedom's Path Housing Historic Rehabilitation of Building #7**

Dear Bob,

On behalf of CORE Construction Services, LLC, I am pleased to submit our proposal for the Freedom's Path Housing Historic Rehabilitation of Building #7

**Budget Summary:**

| Total Proposal Price | $2,456,000.00 |
|---|---|

Enclosed you will find the Basis of Estimate: Assumptions, Qualifications & Clarifications.

We look forward to a successful and enjoyable project together. Thank you for this opportunity, please do not hesitate to contact me directly with any questions or comments.

Respectfully submitted,

*Kyle Culverhouse*

Kyle Culverhouse
Director of Preconstruction
CORE Construction Services, LLC

Complaint, Exh. A

# Basis of Estimate

*FREEDOM'S PATH HISTORIC REHABILITATION OF BLDG. #7*
5/25/16

*Augusta, GA*



**CORE**®
CONSTRUCTION

*Relationships. Solutions. Value... Since 1937.*

The Basis of Estimate is a written explanation clarifying the scope, assumptions and exclusions used in establishing the estimate dated May 23rd, 2016.

All costs are based on Architectural plans for building 7 dated 10/28/15, building 7 Civil drawings dated 5/22/14, building 76 Civil drawings dated 9/4/15, building 7 mechanical/electrical/plumbing drawings dated 9/5/14, specifications for buildings 7 dated 10/28/15, Terracon Environmental Reports dated Feb/March '16 for all 3 buildings, Window Work Assessments for buildings 7 & 76 dated 3/17/16, as well as verbal & emailed RFI Q&A & other information provided by Gruber & Associate architects & Beneficial Communities to CORE Construction.

## Assumptions, Clarifications, & Exclusions

### Schedule

- Anticipated construction start: June 21, 2016
- Duration of Construction: ~16 months (June 21, 2016 – October 19, 2017)
- Substantial Completion: October 19, 2017

### Contingency & Allowances

- o NO Landscape on building #7
- o Crawlspace Repair Allowance: $25,000.00 for Building 7. (more detail needed)
- o Wood truss replacement Allowance on Buildings #7: $6,000.00 total
- o Wood Roof Deck Replacement Allowance on buildings #7: $5,000.00 total
- o Exterior Plaster Repair Allowance on Buildings #7: $7,500.00 total
- o Interior Plaster Repair Allowance on buildings #7: $7,500.00 total
- o Soffit and Fascia Repair Allowance on Buildings #7 & #76: $11,892.00 total

### General Assumptions

- o All labor pricing in this proposal is based upon Davis Bacon Wages classified as 'Residential' construction as per directed by Beneficial Communities.
- o Exterior Elastomeric Paint on the exterior of buildings in lieu of plaster repair
- o Sales Tax is included in this proposal

Complaint, Exh. A

# Basis of Estimate

*FREEDOM'S PATH HISTORIC REHABILITATION OF BLDG. #7*
*5/25/16*

*Augusta, GA*



## Specific Exclusions to Estimate

- Temporary construction fencing does not include barbed wire, razor wire or any other equivalent security measure.
- Temporary construction fencing does not include mid-rails, bottom rails or any other permanent type of construction.
- Any unforeseen conditions.
- Water and sewer impact fees
- Exterior Plaster Restoration other than the plaster repair specifically stated in the Allowances
- Concrete Ceiling Restoration (Orange Peel Finish Only)
- Any and all work not specifically mentioned or included in the scope of work below

## Other scope specific Assumptions and Clarifications:

Demolition/ Off-Site Infrastructure
- o Building Abatement and Demolition
  - o Asbestos abatement and containment as indicated in the report from Terracon dated 2/25/16.
  - o Selective demolition as indicated in the contract documents.
  - o Site lead remediation as indicated in the Environmental Survey.
  - o Legal disposal of all materials generated from abatement and demolition.
  - o Recycle construction debris materials to meet LEED requirements.
  - o LEED Documentation of all materials generated from demolition.

Site Work (Rough)
- o Survey and Layout
  - o Layout to provide site control for Sitework contractors use
- o Clearing
  - o Site tree & brush clearing as required for installation of new paving & utilities
- o Earthwork and Storm Drainage
  - o Site Demo
  - o Cut/Fill to Grades indicated
  - o Aggregate base under pavement as directed by the contract documents
  - o Storm drainage as indicated in the contract documents

Complaint, Exh. A

# Basis of Estimate

*FREEDOM'S PATH HISTORIC REHABILITATION OF BLDG. #7*
*5/25/16*

*Augusta, GA*



- o Site Utilities
  - o New domestic water lines per the contract documents
  - o New Fire lines per the contract documents
  - o New Sanitary sewer services per the contract documents
  - o New Water and sewer connections to existing Mains

- o Storm Water Prevention Plan
  - o Provide a SWPP permit and erosion control plan required

Site Work (Finish)
- o Site Signage and Striping
- o Fencing
  - o Aluminum Ornamental Fence per contract drawings
- o Site Furnishings
  - o Flag pole
- o Site Concrete
  - o Concrete Sidewalks as indicated
  - o Handicap ramps as indicated
  - o Dumpster pads as indicated
  - o Curbs and gutters as indicated
- o Asphalt
  - o New Heavy duty asphalt paving as indicated

Structure
- o Structural Concrete
  - o New Accessible Ramp and Stairs at Building #7 as indicated
  - o New Ramp on West side of Building #7
  - o Light pole bases as indicated
- o Masonry
  - o New Ramp Construction and Cast Stone Cap at Building #7
- o Structural Steel
- o Misc Steel
  - o Handrails as indicated in the contract documents

Enclosure

Complaint, Exh. A

# Basis of Estimate

*FREEDOM'S PATH HISTORIC REHABILITATION OF BLDG. #7*
*5/25/16*

*Augusta, GA*



- o  Wood Trusses & Roof Deck
    - o  Wood Roof Truss Replacement/Repair Allowance of $11,000.00
- o  Rough Carpentry
    - o  In-wall blocking for all Toilet Accessories and Millwork
    - o  Gable Framing for Building

Enclosure

- o  Exterior Plaster
    - o  Exterior Plaster Repair Allowance of $7,500.00 for all buildings total
    - o  New Plaster at Building #7 where lean-to is to be demolished
- o  Fire Stopping
    - o  Top of Fire rated partitions as indicated
    - o  Bottom of Fire rated Partitions as indicated
    - o  Mechanical, Electrical, and Plumbing Penetrations as indicated in the drawings
- o  Louvers & Vents
    - o  Repaint crawlspace vents at Building 7
- o  Roof
    - o  Demo Existing Roof
    - o  30 Year Dimensional Asphalt Shingles
    - o  New 15# roof Felt
    - o  New Sheet metal flashing, trim, 4" aluminum K-style gutters and 3"x4"downspouts
    - o  Plywood Roof Deck Repair/Replacement Allowance of $5,000.00
    - o  Repair/Replace Existing Soffit and Fascia as per the stated allowance
- o  Historic Window Restoration
    - o  Refurbish wood Windows on Building #7
    - o  Replace existing Glass with single pane glass

Finishes

- o  Finished Carpentry & Millwork
    - o  Wood Base
    - o  Wall and Base Cabinets as specified
    - o  Bathroom Vanities as Specified
    - o  Pantry Cabinets as Specified
    - o  Laminate Countertops as specified
- o  Doors, Frames, & Hardware
    - o  Wood Doors at Hallways
    - o  Masonite Doors at interior of Units
    - o  Door Hardware as specified
- o  Access Doors & Frames

Complaint, Exh. A

# Basis of Estimate

*FREEDOM'S PATH HISTORIC REHABILITATION OF BLDG. #7*
*5/25/16*

*Augusta, GA*



- Attic Access Panels
  - Draft stop access Panels
- o Metal Stud & Drywall
  - Non rated walls and rated wall assemblies as indicated in the contract documents
  - Draft Stops as indicated in the contract documents
  - Gypsum ceiling assembly where indicated in the contract documents
  - 30% Shaft wall repair around elevator shafts
  - ACT ceilings in Building #7 as indicated in the contract documents
- o Interior Plaster
  - Skim all interior plaster with Durabond and sand ready to paint
  - Interior Plaster Repair Allowance of $7,500.00
  - New Plaster Ceilings in interior hallways only
- o Tile Package
  - Standard floor prep
  - Floor and wall tile in bathrooms as specified
- o Resilient Flooring
  - Standard Floor Prep
  - VCT where designated
  - Carpet where designated
  - Rubber base as indicated by the contract documents
- o Paint
  - Paint new gyp wall assemblies
  - Paint Gyp Ceilings
  - Paint wood Base
  - Paint exposed structure. All exposed ceilings to receive orange peel texture finish
  - Paint all interior plaster walls
  - Exterior of Building to receive an Elastomeric Coating in lieu of plaster restoration per direction by the owner
  - Paint windows, doors and frames
- o Architectural Wood Restoration
  - Refurbish Existing doors as directed by the contract documents

Specialties
- o Signage
  - Interior Room signage
  - Exterior Building Signage
- o Toilet Partitions & Accessories
  - Shower rods
  - Towel bars

Complaint, Exh. A

# Basis of Estimate

*FREEDOM'S PATH HISTORIC REHABILITATION OF BLDG. #7*
*5/25/16*

*Augusta, GA*



**CORE**
**CONSTRUCTION**

*Relationships. Solutions. Value. ...Since 1937.*

- o  Tub Surrounds
- o  Towel rings
- o  Medicine Cabinets
- o  Install of items outlined in the contract documents
- o  Fire Extinguishers & Cabinets
  - o  Fire Extinguishers and cabinets in the hallways
  - o  3# units in the unit kitchens
- o  Mailboxes
  - o  Mailbox per the contract documents
- o  Wire Shelving
  - o  12" Deep Shelves and rods where indicated in the contract documents

Equipment
- o  Kitchen Appliances and Laundry Appliances as indicated in contract documents
  - o  Dishwashers
  - o  Stoves
  - o  Exhaust Hood
  - o  ADA Compliant Counter Top Microwave
  - o  Under counter Refrigerator
  - o  Disposal
  - o  Washers
  - o  Dryers
- o  Bike Storage
  - o  On Wall Bike Storage in Building #7 Only

Mechanical/Electrical/Plumbing/Fire Protection
- o  Fire Protection
  - o  Automatic Fire Suppression System per the contract documents
- o  Mechanical
  - o  1.5 Ton Split Systems Heat Pump
  - o  1.5 Ton and 4 Ton  Split System
  - o  Grills, Registers and Diffusers
  - o  Fire Dampers
  - o  Volume Control Dampers
  - o  Wall and Roof Caps
  - o  Ceiling mounted Exhaust fans
  - o  Galvanized Low Pressure Ductwork
  - o  Insulated Flex Duct
  - o  Refrigeration and Condensate Piping

Complaint, Exh. A

# Basis of Estimate

*FREEDOM'S PATH HISTORIC REHABILITATION OF BLDG. #7*
*5/25/16*

*Augusta, GA*



- o Operating and Monitoring Controls
- o Electrical
  - o Switchgear
  - o Fixtures and Distribution
  - o Site Lighting and Bollards
  - o Power Service
  - o Fire Alarm
  - o Data & Communications

Miscellaneous Project Costs

- o Testing
  - o Materials and Inspections
- o BIM
  - o Clash detection
  - o Overhead Coordination
  - o Constructability Reviews
- o Commissioning
  - o Commissioning assist for Mechanical, Electrical, Plumbing and Fire Protection
- o Submittal Exchange/ Bluebeam
  - o Provide Submittal Exchange services
  - o Provide Bluebeam integration with construction documents

General Conditions

- o No General Conditions contingent upon the full scope of construction being performed at all buildings concurrently.

Insurance, Bonds, and Builder's Risk

- Provide required General Liability Insurance.
- Provide Subcontractor Insurance.
- Provide Payment and Performance Bond.
- Provide Builder's Risk Insurance.

Complaint, Exh. A

Complaint, Exh. A

Freedom's Path Housing 004 - Augusta, GA

Complaint, Exh. A

Exhibit F

# AIA® Document G702™ – 1992

## Application and Certificate for Payment

| | | |
|---|---|---|
| **TO OWNER:** FP Augusta II, LLC<br>Attn: Donald Paxton, Manager<br>3550 South Tamiami Trail, Suite 301<br>Sarasota, FL 34239 | **PROJECT:** Freedom's Path - Historic Rehabilitation<br>of the Existing Structure:<br>Veterans Administration Campus,<br>Augusta, Georgia 30904 | **APPLICATION NO:** 001<br>**PERIOD TO:**<br>**CONTRACT FOR:** General Construction<br>**CONTRACT DATE:** |
| **FROM CONTRACTOR:** CORE Construction | **VIA ARCHITECT:** Gruber & Associates, LLC<br>Attn: Morton M. Gruber, AIA, Manager<br>245 Peachtree Center Ave. NE, Suite<br>2445   Atlanta, GA 30303 | **PROJECT NOS:** / / |

**Distribution to:**
OWNER:
ARCHITECT:
CONTRACTOR:
FIELD:
OTHER:

## CONTRACTOR'S APPLICATION FOR PAYMENT

Application is made for payment, as shown below, in connection with the Contract.
Continuation Sheet, AIA Document G703, is attached.

| | |
|---|---|
| 1. ORIGINAL CONTRACT SUM .................................................. | $ 0.00 |
| 2. NET CHANGE BY CHANGE ORDERS .................................... | $ 0.00 |
| 3. CONTRACT SUM TO DATE (Line 1 ± 2) ................................ | $ 0.00 |
| 4. TOTAL COMPLETED & STORED TO DATE (Column G on G703) ...... | $ 0.00 |
| 5. RETAINAGE: | |
| a.     % of Completed Work.<br>(Column D + E on G703) | $ 0.00 |
| b.     % of Stored Material<br>(Column F on G703) | $ 0.00 |
| Total Retainage (Lines 5a + 5b or Total in Column I of G703) ...... | $ 0.00 |
| 6. TOTAL EARNED LESS RETAINAGE ................................ | $ 0.00 |
| (Line 4 Less Line 5 Total) | |
| 7. LESS PREVIOUS CERTIFICATES FOR PAYMENT ................ | $ 0.00 |
| (Line 6 from prior Certificate) | |
| 8. CURRENT PAYMENT DUE ......................................... | $ 0.00 |
| 9. BALANCE TO FINISH, INCLUDING RETAINAGE<br>(Line 3 less Line 6) | $ 0.00 |

| CHANGE ORDER SUMMARY | ADDITIONS | DEDUCTIONS |
|---|---|---|
| Total changes approved in previous months by Owner | $ 0.00 | $ 0.00 |
| Total approved this Month | $ 0.00 | $ 0.00 |
| **TOTALS** | $ 0.00 | $ 0.00 |
| NET CHANGES by Change Order | $ | |

The undersigned Contractor certifies that to the best of the Contractor's knowledge, information and belief the Work covered by this Application for Payment has been completed in accordance with the Contract Documents, that all amounts have been paid by the Contractor for Work for which previous Certificates for Payment were issued and payments received from the Owner, and that current payment shown herein is now due.

**CONTRACTOR:**

By: _____   Date: _____

State of:
County of:
Subscribed and sworn to before
me this          day of
Notary Public:
My Commission expires:

## ARCHITECT'S CERTIFICATE FOR PAYMENT

In accordance with the Contract Documents, based on on-site observations and the data comprising this application, the Architect certifies to the Owner that to the best of the Architect's knowledge, information and belief the Work has progressed as indicated, the quality of the Work is in accordance with the Contract Documents, and the Contractor is entitled to payment of the AMOUNT CERTIFIED.

**AMOUNT CERTIFIED** ....................................... $ 0.00

*(Attach explanation if amount certified differs from the amount applied. Initial all figures on this Application and on the Continuation Sheet that are changed to conform with the amount certified.)*

**ARCHITECT:**

By: _____   Date: _____

This Certificate is not negotiable. The AMOUNT CERTIFIED is payable only to the Contractor named herein. Issuance, payment and acceptance of payment are without prejudice to any rights of the Owner or Contractor under this Contract.

AIA Document G702™ – 1992. Copyright © 1953, 1963, 1965, 1971, 1978, 1983 and 1992 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 10:28:36 on 08/07/2018 under Order No.3784658378_1 which expires on 04/22/2017, and is not for resale.
User Notes:                                                                                              (648428601)

Complaint, Exh. A

1

## EXHIBIT G

| CORE CONSTRUCTION | Freedoms Path Building 7 | | |
|---|---|---|---|
| Project Type Project Duration Total GMP | Transitional Housing 16 Months $2,456,151 | | |

| Description | Quantity | Unit | Unit Cost | Extension |
|---|---|---|---|---|
| General Conditions | 1 | LS | $0.00 | $0.00 |
| General Liability | 1 | LS | $22,791 | $22,791.00 |
| Builders Risk | 1 | LS | $14,380 | $14,380.00 |
| Subcontractor Insurance | 1 | LS | $12,281 | $12,281.00 |
| P&P Bond | 1 | LS | $22,878 | $22,878.00 |
| Fee | 1 | LS | $86,491 | $86,491.00 |
| Permits | 1 | LS | $18,233 | $18,233.00 |

| Contractor Contingency Allowance | | | | $177,054.00 |
|---|---|---|---|---|

| | | | | |
|---|---|---|---|---|
| D02 - Remove all countertops, cabinets, plumbing, in room | 1 | ea | $22,045.00 | $22,045.00 |
| D09 - Remove Walls | 630 | ft | $5.00 | $3,150.00 |
| D10 - Retain Existing Door & Frame | 17 | ea | $0.00 | $0.00 |
| D11 - Remove & Retain Existing Door; Return as In-Operable | 10 | ea | $150.00 | $1,500.00 |
| D12 - Remove Door for New Wall Opening | 19 | ea | $70.00 | $1,330.00 |
| D13 - Remove Portion Exist Wall for New Cased Opening | 43 | ft | $9.00 | $387.00 |
| D14 - Remove Double Doors for New Cased Opening | 2 | ea | $300.00 | $600.00 |
| Remove Ramp Structure & Railings | 1 | ea | $1,300.00 | $1,300.00 |
| D16 - Remove LS of Mechanical Equipment, Pad, Piping, etc. | 1 | ea | $50,000.00 | $46,500.00 |
| D17 - Remove Infill Wall & Repair Historic Opening w/New header, | 5 | ea | $700.00 | $3,500.00 |
| D18 - Remove Door; Provide Opening for New Window Frame & Sill | 2 | ea | $70.00 | $140.00 |
| D20 - Remove Handrails in Corridors | 215 | ft | $3.00 | $645.00 |

| | | | | |
|---|---|---|---|---|
| CONFIRMED ASBESTOS-CONTAINING MATERIAL | | | | |
| 12"x12" Floor Tile, Green Mottled | 12,800 | sf | $0.75 | $9,600.00 |
| 1'x1' Ceiling Tile, White | 2,400 | sf | $0.30 | $720.00 |
| Ceramic Tile Floor (Room 110) | 335 | sf | $0.25 | $83.75 |
| 9"x9" Floor Tile, Black | 100 | sf | $0.25 | $25.00 |
| Vibration Dampener | 30 | ft | $10.00 | $300.00 |
| Sink Undercoat, White (Room 137) | 1 | ea | $250.00 | $250.00 |
| 12"x12" Floor Tile, Blue & White (Room 137) | 1,100 | sf | $0.25 | $275.00 |
| | | | | |
| LEAD SOIL REMEDIATION (Per Terracon Lead-in-Soil Report) | | | | |
| Per Terracon report, Paragraph 4.4 | 118 | cy | $60.00 | $24,030.00 |
| | | | | |
| LEAD-BASED PAINT REMOVAL (9 of 10 Samples Tested Positive for LBP | | | | |
| Encapsulation of All Affected Painted Surfaces | | | | |
| Existing Interior Masonry & Plaster Wall | 17,504 | sf | $0.15 | $2,625.60 |
| Existing Interior Perimeter Wall | 14,751 | sf | $0.15 | $2,212.65 |
| Windows to be Refurbished | 69 | ea | $118.08 | $8,147.52 |

| | | | Total: | $129,366.52 |
|---|---|---|---|---|

Complaint, Exh. A

| | | | | |
|---|---|---|---|---|
| Layout | 1 | EA | $3,500.00 | $3,500.00 |
| **Site Demo** | | | | |
| Sawcut & Remove Curb | 20 | ft | $15.00 | $300.00 |
| Demo & Remove Concrete Sidewalk | 382 | sf | $1.50 | $573.00 |
| Demo & Remove Ramp | 1,308 | sf | $2.00 | $2,616.00 |
| **Storm/Roof Drains** | | | | |
| 10" Roof Drain Collectors | 34 | ft | $45.00 | $1,530.00 |
| 8" Roof Drain Collectors | 502 | ft | $42.00 | $21,084.00 |
| 6" Roof Drain Collectors | 405 | ft | $40.00 | $16,200.00 |
| 18" RCP Drainage Pipe | 222 | ft | $45.00 | $9,990.00 |
| Under Dumpster Pad Paving | 108 | sf | $8.50 | $918.00 |
| 4" Graded Aggregate Base Course | 3 | tons | $35.00 | $97.07 |
| Compacted Subgrade - Use Existing | | | | |
| Grading for Sidewalks | 2,300 | sf | $4.69 | $10,787.00 |
| Maryland Street Cut & Repair | 230 | sf | $50.00 | $11,500.00 |
| **Water Distribution** | | | | |
| New 6" DIP Domestic Water Line | 333 | ft | $68.00 | $22,644.00 |
| New 8" DIP Fire Line | 330 | ft | $82.00 | $27,060.00 |
| New 6" Water Meter | 1 | ea | $9,750.00 | $9,750.00 |
| New 6" Double Check Valve | 1 | ea | $9,500.00 | $9,500.00 |
| 8"x8"x6" Tee | 1 | ea | $3,500.00 | $3,500.00 |
| Stub & Cap Ex. Water Connection | 1 | ea | $550.00 | $550.00 |
| New Fire Vault w/Double Detector Check | 1 | ea | $11,500.00 | $11,500.00 |
| Street Cut Water Tie-In - New 8" Tap, Saddle, Valve | 1 | ea | $10,500.00 | $10,500.00 |
| **Sanitary Sewer System** | | | | |
| New 6" PVC Sewer Line | 122 | ft | $85.00 | $10,370.00 |
| New 8" PVC Sewer Line | 333 | ft | $92.00 | $30,636.00 |
| Maryland Ave. Street Cut - Core into Ex. Manhole | 1 | ea | $9,500.00 | $9,500.00 |
| New SS MH | 3 | ea | $3,500.00 | $10,500.00 |
| New SS CO | 2 | ea | $925.00 | $1,850.00 |
| Plug Ex. Sewer Line | 2 | ea | $450.00 | $900.00 |
| **Total** | | | | $257,865.07 |
| New HC Signs | 3 | ea | $175.00 | $525.00 |
| New Crosswalk Striping | 445 | sf | $0.15 | $66.75 |
| HC Painted Symbols | 3 | ea | $268.00 | $804.00 |
| | | | | $0.00 |
| Aluminum Fence | 1,303 | LF | $41.55 | $54,139.65 |
| Flag Pole | 1 | EA | $2,625.00 | $2,625.00 |

| | | | |
|---|---|---|---|
| New 4" Concrete Sidewalk | 3,714 | sf | $4.75 | $17,641.50 |
| HC Ramps | 5 | ea | $850.00 | $4,250.00 |
| New 8" Concrete Dumpster Pad | 108 | sf | $12.00 | $1,296.00 |
| 15' x 2' Turndown | 12 | ft | $35.00 | $420.00 |

| | | | |
|---|---|---|---|
| New Heavy Duty Asphalt Paving | 1,480 | sy | $19.69 | $29,141.20 |
| 1-1/2" Type "E" Topping | | | | |
| Tack Coat | | | | |
| 2" Type "B" Binder | | | | |
| Prime Coat | | | | |
| N/A | | | | |

| | | | |
|---|---|---|---|
| N/A | | | | $0.00 |

| | |
|---|---|
| Total | $172,909.70 |

| | | | |
|---|---|---|---|
| 5" Sloped SOG - 256 SF | 4 | CY | $350.00 | $1,522.20 |
| C.I.P stairs - 17 SF | 1 | CY | $500.00 | $519.44 |
| 1'x1.5'x10' - ftg @ stair bottom | 1 | CY | $450.00 | $275.00 |
| 1.67'x.83'x54' - strip footing | 3 | CY | $450.00 | $1,372.24 |
| 2.33'x.83'x16' - strip ftg | 13 | CY | $450.00 | $5,672.77 |

| | | | |
|---|---|---|---|
| 5" Sloped SOG - 124 | 2 | CY | $350.00 | $737.32 |
| .67'x2'x34' stem wall | 2 | CY | $450.00 | $835.27 |
| 1.5'x1'x39' - strip footing | 2 | CY | $450.00 | $1,072.50 |
| 1'x1'x6' - ftg @ ramp bottom | 0 | CY | $450.00 | $110.00 |

| | | | |
|---|---|---|---|
| Light Pole Bases | 6 | ea | $750.00 | $4,500.00 |

| | | | |
|---|---|---|---|
| Crawlspace Concrete Repair | 1 | ls | $25,000.00 | $25,000.00 |

| | | | |
|---|---|---|---|
| Ramp Side Walls | 297 | SF | | |
| 8" CMU | 354 | EA | $1.25 | $442.97 |
| Mortar | 17 | CF | $14.00 | $233.85 |
| Masonry Sand | 1 | CY | $25.00 | $15.50 |
| Truss Reinforcing | 171 | LF | $0.45 | $77.11 |
| Grout Cells | 15 | CF | $5.18 | $78.45 |
| Labor to install | 354 | EA | $10.00 | $3,543.75 |

| | | | |
|---|---|---|---|
| 8" CMU | 115 | EA | $1.25 | $143.18 |
| Mortar | 5 | CF | $14.00 | $75.59 |
| Masonry Sand | 0 | CY | $25.00 | $5.01 |
| Truss Reinforcing | 55 | LF | $0.45 | $24.92 |
| Grout Cells | 5 | CF | $5.18 | $25.36 |

Complaint, Exh. A

| | | | | |
|---|---|---|---|---|
| Labor to install | 115 | EA | $10.00 | $1,145.45 |
| | | | | |
| 10'x5' - precast cap | 54 | LF | $25.00 | $1,350.00 |
| Install | 54 | LF | $12.00 | $648.00 |
| 20'x6' - precast cap | 16 | LF | $20.00 | $320.00 |
| Install | 16 | LF | $16.00 | $256.00 |
| | | | | |
| N/A | | | | |
| | | | | |
| Handrails | 1 | IS | $52,577.00 | $52,577.00 |
| | | | | |
| Wood Truss/Roof Deck Replacement | 1 | LS | $11,000.00 | $11,000.00 |
| | | | | |
| 2x8 valley boards fastened to existing rafters | 116 | LF | $1.78 | $206.48 |
| Installation | 116 | LF | $2.35 | $272.60 |
| 1.75"x16" M ridge beam | 48 | LF | $3.00 | $144.00 |
| Installation | 48 | LF | $4.00 | $192.00 |
| 2x12 beam | 84 | LF | $2.50 | $210.00 |
| Installation | 84 | LF | $2.35 | $197.40 |
| 2x8 rafters @ 16" oc | 302 | LF | $2.10 | $634.20 |
| Installation | 302 | LF | $2.35 | $709.70 |
| 2x4 post from | 240 | LF | $1.30 | $312.00 |
| Installation | 240 | LF | $2.35 | $564.00 |
| 2x8 joist - sister to existing joist | 530 | LF | $1.78 | $943.40 |
| Installation | 530 | LF | $2.33 | $1,234.90 |
| | | | | |
| Shower Rod | 60 | LF | $2.22 | $133.20 |
| 18" Tower Bar | 45 | LF | $2.22 | $99.90 |
| One Piece Shower Surround | 256 | LF | $2.22 | $568.32 |
| Toilet Paper Holder | 53 | LF | $2.22 | $116.55 |
| (US) Towel Ring | 53 | LF | $2.22 | $116.55 |
| Recessed Medicine Cabinet | 60 | LF | $2.22 | $133.20 |
| Grab Bars | 175 | LF | $2.22 | $388.50 |
| Fold Down Seat | 10 | LF | $2.22 | $22.20 |
| Hand Held Shower | 10 | LF | $2.22 | $22.20 |
| Exhaust Fan With Recirculating | 53 | LF | $2.22 | $116.55 |
| | | | | |
| @ Millwork | 660 | LF | $2.22 | $1,465.20 |
| | | | | |
| Total | | | | $122,332 |
| | | | | |
| N/A | | | | |

| Description | Qty | Unit | Unit Price | Total |
|---|---|---|---|---|
| E04 - Install new windows to match existing historic | 132 | SF | $75.00 | $9,900.00 |
| Existing stucco- repair as needed | 1 | LS | $7,500.00 | $7,500.00 |
| New Plaster @ Demoed Space | 1,642 | SF | $10.00 | $16,420.00 |
| Top of fire rated gypsum walls | 358 | lf | $2.15 | $769.70 |
| Bottom of fire rated gypsum walls | 358 | lf | $2.15 | $769.70 |
| MEP penetrations | 1 | ls | $500.00 | $500.00 |
| Restore & rescreen crawlspace vents | 10 | ea | $150.00 | $1,500.00 |
| Restore & rescreen crawlspace vents | 8 | ea | $150.00 | $1,200.00 |
| **Asphalt Shingles** | | | | |
| Demo existing shingle | 13,812 | sf | $1.00 | $13,812.00 |
| 30 yr. dimensional asphalt shingle roof | 13,812 | sf | $2.50 | $34,530.00 |
| 15# felt underlayment | 15,900 | sf | $0.20 | $3,180.00 |
| Repair fascia as needed (35% of 870 lf) | 304 | lf | $30.74 | $9,344.96 |
| Repair cement fiber soffit as needed (35% of 1,112 s | 390 | sf | $6.00 | $2,340.00 |
| Replace damaged roof deck (35% of 13,812 sf) | 4,900 | sf | $1.75 | $8,575.00 |
| | | | | |
| **Sheet Metal Flashing and Trim** | | | | |
| 4" aluminum k-style gutters | 870 | lf | $8.00 | $6,960.00 |
| 3"x4" aluminum downspouts | 340 | lf | $10.00 | $3,400.00 |
| | | | | |
| N/A | | | | |
| E09 - Refurb windows (wood per wind sched) | 3,470 | SF | $58.00 | $201,260.00 |
| **Total** | | | | $341,961 |
| **Finish Carpentry** | | | | |
| 6" wood base | 3,700 | lf | $4.00 | $14,800.00 |
| | | | | |
| **Residential Casework** | | | | |
| Typical Unit- 15 ea | | | | |
| Wall cabinets | 124 | lf | $100.00 | $12,375.00 |
| Base cabinets | 86 | lf | $125.00 | $10,781.25 |
| Laminate countertops | 506 | sf | $20.00 | $10,125.00 |
| | | | | |
| **ADA Unit- 4 ea** | | | | |
| Wall cabinets | 35 | lf | $100.00 | $3,500.00 |
| Base cabinets | 15 | lf | $125.00 | $1,875.00 |
| Laminate countertops | 135 | sf | $20.00 | $2,700.00 |

| | | | | |
|---|---|---|---|---|
| Common Area- Kitchen | | | | |
| Wall cabinets | 10 | lf | $100.00 | $1,000.00 |
| Base cabinets | 11 | lf | $125.00 | $1,375.00 |
| Laminate countertops | 48 | sf | $20.00 | $950.00 |
| | | | | |
| Common Area- Computer Center | | | | |
| Laminate countertops | 51 | sf | $20.00 | $1,025.00 |
| | | | | |
| Common Area- Laundry Room | | | | |
| Laminate countertops | 14 | sf | $20.00 | $280.00 |
| | | | | |
| Common Area- Lobby Area | | | | |
| Laminate countertops | 13 | sf | $20.00 | $250.00 |
| | | | | |
| **Leafs** | | | | |
| Wood door leafs | 24 | EA | $365.00 | $8,760.00 |
| Masonite door leafs | 54 | EA | $125.00 | $6,750.00 |
| Metal - Rail & Stile w/ Sidelights | 2 | EA | $1,200.00 | $2,400.00 |
| Install | 1 | EA | $11,043.00 | $11,043.00 |
| | | | | |
| Frames (Wd) | 78 | EA | $185.00 | $14,430.00 |
| Install | 78 | EA | $75.00 | $5,850.00 |
| | | | | |
| Hardware Sets | 78 | EA | $300.00 | $23,400.00 |
| Install | 78 | EA | $75.00 | $5,850.00 |
| | | | | |
| AP-1 -22" X 36" ATTIC ACCESS PANELS | 4 | EA | $450.00 | $1,800.00 |
| AP-2 - 36" X 36" DRAFTSTOPS ACCESS PANELS | 10 | EA | $500.00 | $5,000.00 |
| | | | | |
| N/A | | | | |
| | | | | |
| Gypsum Board Assemblies | | | | |
| NON-RATED WALL | 13,681 | SF | $3.75 | $51,303.75 |
| 3-5/8" STUD | | | | |
| 5/8" GYPSUM | | | | |
| FIRE RATED WALL WITHOUT INSULATION | 1,214 | SF | $4.75 | $5,766.50 |
| 3-5/8" STUD 25GA. | | | | |
| 5/8" GYPSUM | | | | |
| 1/2" RESILIENT CHANNEL ONE SIDE | | | | |
| FIRE RATED WALL WITH INSULATION | 4,399 | SF | $5.15 | $22,654.85 |
| 3-5/8" STUD 25GA. | | | | |
| 5/8" GYPSUM | | | | |
| 1/2" RESILIENT CHANNEL ONE SIDE | | | | |
| R11 SAB | | | | |
| 1-HOUR GYPSUM BOARD CEILING | | | | |
| 1-5/8" STUD | 2,850 | SF | $3.75 | $10,687.50 |
| NEW EXTERIOR WALL | | | | |
| NOTE A12 FILL IN EXISTING OPENING WITH NEW | 93 | SF | $7.00 | $651.00 |
| TILE BACKER BOARD | 730 | SF | $2.00 | $1,460.00 |
| DRAFTSTOPS | 3,095 | SF | $4.00 | $12,380.00 |
| Acoustical Ceilings | 1,741 | SF | $2.00 | $3,482.00 |

| | | | | |
|---|---|---|---|---|
| EXISTING INTERIOR MASONRY AND PLASTER WALL REPAIR AS NECESSARY | 1 | ls | $7,500.00 | $7,500.00 |
| Skim Walls W/Durabond | 1 | ls | $89,620.00 | $89,620.00 |
| Common Work Results for Flooring Preparation, Tiling | 284 | SF | $2.50 | $710.00 |
| CERAMIC FLOOR TILE | 284 | SF | $11.00 | $3,124.00 |
| CERAMIC WALL TILE | 2,863 | SF | $11.00 | $31,493.00 |
| Common Work Results for Flooring Preparation | 10,663 | SF | $1.00 | $10,663.00 |
| VCT INCLUDES BATHROOM FLOORS | 10,663 | SF | $2.50 | $26,657.50 |
| RESILIENT BASE | 244 | LF | $2.50 | $610.00 |
| N/A | | | | |
| FINISH AND PAINT GYPSUM WALL | 41,548 | SF | $0.85 | $35,315.80 |
| SEALED CONCRETE | 189 | SF | $0.75 | $141.75 |
| INTERIOR WOOD DOORS & FRAMES | 96 | EA | $50.00 | $4,800.00 |
| 6" WOOD BASE | 3,675 | LF | $2.00 | $7,350.00 |
| METAL ACCESS PANEL | 14 | EA | $25.00 | $350.00 |
| EXPOSED STRUCTURE | 600 | SF | $1.75 | $1,050.00 |
| FINISH AND PAINT GYPSUM BOARD CEILING | 2,850 | SF | $1.75 | $4,987.50 |
| REPAINT EXISTING EXTERIOR WALLS AND COLUMN | 9,509 | SF | $1.75 | $16,640.75 |
| PAINT EXISTING INTERIOR PLASTER WALL AS NEC | 17,504 | SF | $0.85 | $14,878.40 |
| A5.1 - Refurb. Existing Doors Leafs | | | | |
| Refurb Wood door leafs | 13 | EA | $175.00 | $2,275.00 |
| Refurb 'Verify type' door leafs | 5 | EA | $200.00 | $1,000.00 |
| Refurb Frames | 18 | EA | $125.00 | $2,250.00 |
| Replace Hardware Sets | 18 | EA | $450.00 | $8,100.00 |
| Install | 18 | EA | $150.00 | $2,700.00 |
| Removed from Project | | | | $0.00 |
| Total | | | | $526,182 |
| Inside Signage | 62 | EA | $40.00 | $2,480.00 |
| Outside Signage | 1 | lsum | $552.00 | $552.00 |
| Tax(8%) | 1 | lsum | $498.40 | $498.40 |
| Frieght | 62 | EA | $3.00 | $186.00 |
| Install | 62 | EA | $30.00 | $1,860.00 |
| Building 7 | | | | |
| Shower Rod | 20 | EA | $0.00 | |
| 18" Tower Bar | 18 | EA | $0.00 | |
| One Piece Shower Surround | 16 | EA | $0.00 | |
| Toilet Paper Holder | 21 | EA | $0.00 | |

| | | | | |
|---|---|---|---|---|
| (U9) Towel Ring | 21 | EA | $0.00 | |
| Recessed Medicine Cabinet | 20 | EA | $0.00 | |
| Grab Bars (2) | 25 | EA | $0.00 | |
| Fold Down Seat | 4 | EA | $0.00 | |
| Hand Held Shower | 4 | EA | $0.00 | |
| All Accessories | 149 | EA | $71.00 | $6,445.00 |
| | | | | |
| Tax(8%) | 1 | lsum | $1,788.00 | $1,788.00 |
| Frieght | 149 | EA | $3.00 | $447.00 |
| Install | 149 | EA | $35.00 | $3,500.00 |
| | | | | |
| FE | 3 | EA | $33.00 | $99.00 |
| FE for Units | 20 | EA | $25.00 | $500.00 |
| Tax(8%) | 1 | lsum | $48.00 | $48.00 |
| Frieght | 23 | EA | $5.00 | $115.00 |
| Install | 23 | EA | $100.00 | $2,300.00 |
| | | | | |
| N/A | | | $0.00 | |
| | | | | |
| Mailbox | 1 | EA | $1,133.00 | $1,133.00 |
| Tax(8%) | 1 | lsum | $320.00 | $320.00 |
| Frieght | 2 | EA | $100.00 | $200.00 |
| Install | 2 | EA | $250.00 | $500.00 |
| | | | | |
| 12" Deep Shelves/ Rods  (A17) | 22 | EA | $60.00 | $1,320.00 |
| Tax(8%) | 1 | lsum | $264.00 | $264.00 |
| Frieght | 22 | EA | $10.00 | $220.00 |
| Install | 22 | EA | $40.00 | $880.00 |
| | | | | |
| Total | | | | $25,655 |
| | | | | |
| **KITCHEN APPLIANCES** | | | | |
| Dishwasher (To fit Under 36" (H) Counter) | 1 | EA | $450.00 | $450.00 |
| Stove | 20 | EA | $650.00 | $13,000.00 |
| Exhaust Hood | 20 | EA | $350.00 | $7,000.00 |
| ADA Compliant Couter- Top  Microwave (24" x 14" | 20 | EA | $175.00 | $3,500.00 |
| Under Counter Refrigerator (To Fit under 34" (H) | 20 | EA | $275.00 | $5,500.00 |
| Top Mount Refigerator | 1 | EA | $275.00 | $275.00 |
| Disposal | 21 | EA | $75.00 | $1,575.00 |
| | | | | |
| **LAUNDRY APPLIANCES** | | | | |
| Washer | 2 | EA | $850.00 | $1,700.00 |
| Dryer | 2 | EA | $850.00 | $1,700.00 |
| | | | | |
| Tax(8%) | 8 | % | | $2,504.00 |
| Frieght | 107 | EA | $15.00 | $1,605.00 |
| Install | 107 | EA | $75.00 | $6,761.00 |

Complaint, Exh. A

| | | | | |
|---|---|---|---|---|
| N/A | | | | |
| Bike Storage | 1 | EA | $600.00 | $600.00 |
| N/A | | | | |
| N/A | | | | |
| | | | | $600.00 |
| | | | | |
| Automatic Sprinkler System | 12,794 | sf | $2.48 | $31,729.12 |
| Plumbing General | 12,794 | sf | $10.25 | $131,138.50 |
| Mechanical General | 12,794 | sf | $19.49 | $249,355.06 |
| Electrical General | 12,793 | SF | $20.00 | $255,860.00 |
| Data / Comm @ Building 7 | 12,793 | SF | $1.50 | $19,189.50 |
| Fire Alarm | 12,793 | SF | $1.00 | $12,793.00 |
| | | | Total | $700,065 |
| Testing Allowance | 1 | lsum | $20,000.00 | $20,000.00 |
| BIM Allowance | 1 | lsum | $16,666.67 | $16,666.67 |
| Commissioning Allowance | 1 | lsum | $10,000.00 | $10,000.00 |
| Bluebeam/Submittal Exchange | 1 | lsum | $6,666.67 | $6,666.67 |
| Final Clean | 12,793 | SF | $0.35 | $4,477.55 |
| | | | Total | $57,811 |

Complaint, Exh. A

**COMPOSITE EXHIBIT K**

**CONTRACTOR'S INTERIM LIEN WAIVER AND
RELEASE UPON PROGRESS PAYMENT**
(To be provided by Contractor with each Application for Payment)

STATE OF _____
COUNTY OF _____

The undersigned, _____ ("Contractor"), has been engaged under contract with _____ ("Owner") to furnish certain materials, equipment, services, and/or labor for the construction of improvements known as _____, together with all improvements and appurtenances attendant thereto ("Project"), which is located in the City of _____, County of _____, State of _____, and is owned by _____ ("Property Owner") and more particularly described as follows:

_____
_____
_____
_____

(DESCRIBE THE PROPERTY UPON WHICH THE IMPROVEMENTS WERE MADE BY USING EITHER A METES AND BOUNDS DESCRIPTION, THE LAND LOT DISTRICT, BLOCK AND LOT NUMBER, OR STREET ADDRESS OF THE PROJECT.)

Upon receipt of the sum of $_____, Contractor waives and releases any and all liens or claims of liens it has upon the foregoing described property through the date of _____, 20__ ("Current Date") and excepting those rights and liens that Contractor might have in any retained amounts, on account of materials, equipment, services and labor furnished by the undersigned to or on account of said Contractor for said building or premises. Exceptions as follows:

(if no exception or "none" is entered above, undersigned shall be deemed not to have reserved any rights or liens.)

**FOR CONTRACTOR**

Applicable to Application for Payment No(s)._____
Signed: _____
By: _____
Title: _____
Dated: _____

**AFFIDAVIT**

On this _____ day of _____, 20___, before me appeared the above-signed, known or identified to me personally, who, being first duly sworn, did say that s/he is the authorized representative of Contractor and that this document was signed under oath personally on behalf of Contractor.

_____
Notary Public
My Commission Expires: _____

Complaint, Exh. A

## CONTRACTOR'S FINAL UNCONDITIONAL LIEN WAIVER
## AND RELEASE UPON FINAL PAYMENT

STATE OF _____.
COUNTY OF_____

The undersigned, _____ ("Contractor"), has been engaged under contract with _____ ("Owner") to furnish certain materials, equipment, services, and/or labor for the construction of improvements known as _____, together with all improvements and appurtenances attendant thereto ("Project"), which is located in the City of _____, County of _____, State of _____, and is owned by _____ ("Property Owner") and more particularly described as follows:
     (LEGAL)

Upon receipt of the sum of $_____, Contractor waives and releases any and all liens or claims of liens or any right against any labor and/or material bond it has upon the foregoing described property:

     (LEGAL)

Contractor agrees this waiver and release form is in compliance with Stat. §_____

NOTICE: THIS DOCUMENT WAIVES RIGHTS UNCONDITIONALLY AND STATES THAT YOU HAVE BEEN PAID FOR GIVING UP THOSE RIGHTS. THIS DOCUMENT IS ENFORCEABLE AGAINST YOU IF YOU SIGN IT, EVEN IF YOU HAVE NOT BEEN PAID. IF YOU HAVE NOT YET BEEN PAID, USE A CONDITIONAL RELEASE FORM.
## FOR CONTRACTOR

Applicable to Application for Payment(s) ____*all_____
*If all, print "all"
Signed:     _____

By:        _____

Title:     _____
Date:     _____

## AFFIDAVIT

On this _____ day of _____, 2016, before me appeared the above-signed, known or identified to me personally, who, being first duly sworn, did say that she/he is the authorized representative of _____ and that this document was signed under oath personally and on behalf of Contractor.

_____
NOTARY PUBLIC
My commission expires:

## SUBCONTRACTOR'S INTERIM LIEN WAIVER AND RELEASE
## UPON PROGRESS PAYMENT
### (To be provided by Subcontractor with each Application for Payment)

STATE OF _____
COUNTY OF _____

The undersigned, _____ ("Subcontractor"), has been engaged under contract with _____ ("Contractor") to furnish certain materials, equipment, services, and/or labor for the construction of improvements known as _____, together with all improvements and appurtenances attendant thereto ("Project"), which is located in the City of _____, County of _____, State of _____, and is owned by _____ ("Property Owner") and more particularly described as follows:

(Legal Description)

Upon receipt of the sum of $_____, the Subcontractor waives and releases any and all liens or claims of liens it has upon the foregoing described property through the date of _____, 2016 ("Current Date") and excepting those rights and liens that subcontractor might have in any retained amounts, on account of materials, equipment, services and labor furnished by the undersigned to or on account of said Subcontractor for said building or premises. Exceptions as follows:
(If no exception or none is entered above, undersigned shall be deemed not to have reserved any rights or liens.)

### FOR SUBCONTRACTOR.

Applicable to Application for Payment(s) _____

Signed: _____

By: _____

Title: _____

Date: _____

### AFFIDAVIT

On this _____ day of _____, 2016, before me appeared the above-signed, known or identified to me personally, who, being first duly sworn, did say that she/he is the authorized representative of _____ and that this document was signed under oath personally and on behalf of Subcontractor.

_____
NOTARY PUBLIC
My commission expires:

Complaint, Exh. A

## SUBCONTRACTOR'S FINAL UNCONDITIONAL LIEN WAIVER
## AND RELEASE UPON FINAL PAYMENT

STATE OF _____
COUNTY OF _____

The undersigned, _____ ("Subcontractor"), has been engaged under contract with _____ ("Contractor") to furnish certain materials, equipment, services, and/or labor for the construction of improvements at _____, together with all improvements and appurtenances attendant thereto ("Project"), which is located in the City of _____, County of _____, State of _____, and is owned by _____ ("Owner") and more particularly described as follows:

(LEGAL)

Acknowledging receipt of the sum of $_____, Subcontractor hereby waives and releases any and all liens or claims of liens or any right against any labor and/or material bond it has upon the foregoing described property:

(LEGAL)

Subcontractor agrees that this waiver and release form is in compliance with Stat. §_____.

NOTICE: THIS DOCUMENT WAIVES RIGHTS UNCONDITIONALLY AND STATES THAT YOU HAVE BEEN PAID FOR GIVING UP THOSE RIGHTS. THIS DOCUMENT IS ENFORCEABLE AGAINST YOU IF YOU SIGN IT, EVEN IF YOU HAVE NOT BEEN PAID. IF YOU HAVE NOT YET BEEN PAID, USE A CONDITIONAL RELEASE FORM.

FOR SUBCONTRACTOR:
Applicable to Application for Payment No.: __all__ *
*If all, print "all."
Signed: _____

By:        _____

Title:     _____
Date:      _____

### AFFIDAVIT

On this _____ day of _____, 2016, before me appeared the above-signed, known or identified to me personally, who, being first duly sworn, did say that she/he is the authorized representative of _____ and that this document was signed under oath personally and on behalf of Contractor.

_____
NOTARY PUBLIC
My commission expires:

Complaint, Exh. A

# Exhibit B



# AIA® Document A101™ – 2007

## Standard Form of Agreement Between Owner and Contractor *where the basis of payment is a Stipulated Sum*

AGREEMENT made as of the 10th day of June  in the year 2016
*(In words, indicate day, month and year.)*

BETWEEN the Owner:
*(Name, legal status, address and other information)*

Freedom's Path Limited Partnership, as the assignee of
Freedom's Path First Step Limited Partnership
Attn: Donald Paxton, Manager
3550 South Tamiami Trail, Suite 301
Sarasota, FL 34239

and the Contractor:
*(Name, legal status, address and other information)*

CORE Construction
3131 N. I-10 Service Road East, Suite 401
Metairie, LA 70002-6054

for the following Project:
*(Name, location and detailed description)*

Freedom's Path – Historic Rehabilitation of two Existing Structures:
Building #18 – Permanent Supportive Housing – Approximately 28 units – 4 Stories
Building # 76 – Permanent Supportive Housing – Approximately 50 units – 3 Stories
Veterans Administration Campus, Augusta, Georgia 30904

The Architect:
*(Name, legal status, address and other information)*

Gruber & Associates, LLC
Attn: Morton M. Gruber, AIA, Manager
245 Peachtree Center Ave. NE, Suite 2445
Atlanta, GA 30303

The Owner and Contractor agree as follows.

**ADDITIONS AND DELETIONS:**
The author of this document has added information needed for its completion. The author may also have revised the text of the original AIA standard form. An *Additions and Deletions Report* that notes added information as well as revisions to the standard form text is available from the author and should be reviewed. A vertical line in the left margin of this document indicates where the author has added necessary information and where the author has added to or deleted from the original AIA text.

This document has important legal consequences. Consultation with an attorney is encouraged with respect to its completion or modification.

AIA Document A201™–2007, General Conditions of the Contract for Construction, is adopted in this document by reference. Do not use with other general conditions unless this document is modified.

Init.

/

AIA Document A101™ – 2007. Copyright © 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1967, 1974, 1977, 1987, 1991, 1997 and 2007 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 13:42:52 on 06/06/2016 under Order No.7898456378_1 which expires on 04/22/2017, and is not for resale.
User Notes:                                                                                  (1415987785)

1

Complaint, Exh. B

TABLE OF ARTICLES

1      THE CONTRACT DOCUMENTS

2      THE WORK OF THIS CONTRACT

3      DATE OF COMMENCEMENT AND SUBSTANTIAL COMPLETION

4      CONTRACT SUM

5      PAYMENTS

6      DISPUTE RESOLUTION

7      TERMINATION OR SUSPENSION

8      MISCELLANEOUS PROVISIONS

9      ENUMERATION OF CONTRACT DOCUMENTS

10     INSURANCE AND BONDS

ARTICLE 1   THE CONTRACT DOCUMENTS
The Contract Documents consist of this Agreement, Conditions of the Contract (General, Supplementary and other Conditions), Drawings, Specifications, qualifications and clarifications, Addenda issued prior to execution of this Agreement, other documents listed in this Agreement and Modifications issued after execution of this Agreement, all of which form the Contract, and are as fully a part of the Contract as if attached to this Agreement or repeated herein. The Contract represents the entire and integrated agreement between the parties hereto and supersedes prior negotiations, representations or agreements, either written or oral. An enumeration of the Contract Documents, other than a Modification, appears in Article 9.

ARTICLE 2   THE WORK OF THIS CONTRACT
The Contractor shall fully execute the Work as outlined in Exhibit "A" attached hereto in conformance with the Contract Documents and according to the Plans, Specifications, and manufacturer's specifications and generally accepted industry standards.   If there is a conflict between the Plans, specifications and normal industry standards, the document establishing the better quality shall govern.   Any and all modifications to the Work must be approved in writing by the Owner's representative, before the modification is performed.

ARTICLE 3   DATE OF COMMENCEMENT AND SUBSTANTIAL COMPLETION
§ 3.1 The date of commencement of the Work shall be the date of this Agreement unless a different date is stated below or provision is made for the date to be fixed in a notice to proceed issued by the Owner.
*(Paragraph deleted)*
Upon issuance of a Notice to Proceed by Owner.

If, prior to the commencement of the Work, the Owner requires time to file mortgages and other security interests, the Owner's time requirement shall be as follows:

N/A

§ 3.2 The Contract Time shall be measured from the date of commencement.

§ 3.3 The Contractor shall achieve Substantial Completion of the entire Work not later than
*(Paragraphs deleted)*
September 25, 2017 for Building 18, and November 9, 2017 for Building 76.

Init.

/

AIA Document A101™ – 2007. Copyright © 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1967, 1974, 1977, 1987, 1991, 1997 and 2007 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 13:42:52 on 06/06/2016 under Order No. 7898458378_1 which expires on 04/22/2017, and is not for resale.
User Notes:                                                                                                (1415987765)

2

Complaint, Exh. B

## ARTICLE 4   CONTRACT SUM

§ 4.1 The Owner shall pay the Contractor the Contract Sum in current funds for the Contractor's performance of the Contract. The Contract Sum shall be eleven million, seven hundred seventy-four thousand dollars   ($ 11,774,000.00   ), established following the value engineering/buy out process outlined in Section 4.6.

§ 4.2 The Contract Sum is based upon the following alternates, if any, which are described in the Contract Documents and are hereby accepted by the Owner.
*(Paragraph deleted)*
  The Contract Sum includes $25,000.00 to compensate Contractor for Contractor to perform preconstruction investigation of the Project: the Building, the Site and utilities, and to perform testing that Contractor may wish to perform, to thoroughly investigate and acquaint itself to the greatest extent, with all existing conditions of the Project, so as to be able to include in the Contract Sum amounts that are reasonably necessary to construct the Project in accordance with the latest revision of the Plans and Specifications, applicable codes, and any other related investigative reports.

All amounts associated with any alternates are intended to be not-to-exceed amounts.   If Owner elects in writing to have Contractor perform any alternate(s), then the Work associated with such alternate(s) shall be bid on an open-book basis with Owner having full audit rights with respect to such Work.   In the event the actual cost of any such alternate(s) is less than the not-to-exceed amount identified in the Contract Documents, such difference ("Alternate Savings") shall not be shared between Owner and Contractor.   Contractor hereby acknowledges and agrees that Owner shall receive 100% of any Alternate Savings.

§ 4.3 Unit prices, if any:
*(Identify and state the unit price; state quantity limitations, if any, to which the unit price will be applicable.)*

| Item | Units and Limitations | Price Per Unit ($0.00) |
|------|----------------------|------------------------|
| n/a  |                      |                        |

§ 4.4 Allowances included in the Contract Sum, if any:
*(Identify allowance and state exclusions, if any, from the allowance price.)*

| Item | Price |
|------|-------|
| See Schedule of Values, Exhibit G | |

## ARTICLE 5   PAYMENTS
### § 5.1 PROGRESS PAYMENTS
§ 5.1.1 Based upon Applications for Payment submitted to the Architect by the Contractor and Certificates for Payment issued by the Architect, the Owner shall make progress payments on account of the Contract Sum to the Contractor as provided below and elsewhere in the Contract Documents.

§ 5.1.2 The period covered by each Application for Payment shall be one calendar month ending on the last day of the month.   Each Application for Payment shall include the following documents:

    a.   Signed Application for Payment (AIA G702 and G703)
    b.   G702 and G703 in Excel Format (to be forwarded to Owner's lender)
    c.   General Contractor's notarized lien waivers reflecting the total funds paid to date.
    d.   G701 Change Orders, executed with appropriate backup documentation
    e.   Pending Change Order Log (PCO Log), and the Prime Contract Change Order Log (PCCO Log)
    f.   Updated Project Schedule
    g.   Contractor's Vendor Payee List with invoices and Subcontractor's lien waivers for the current month's Application for Payment
    h.   Any additional documents requested by Owner's lender (e.g. surveys, inspection reports, permits or updated insurance certificates)

§ 5.1.3 Provided that an Application for Payment is received by the Architect not later than the last   day of a month, the Owner shall make payment to the Contractor not later than the 15   day of the following   month. If an

Init.

AIA Document A101™ – 2007. Copyright © 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1967, 1974, 1977, 1987, 1991, 1997 and 2007 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 13:42:52 on 06/08/2016 under Order No.7898458378_1 which expires on 04/22/2017, and is not for resale.
User Notes:                                                                                                    (1415987785)

3

Application for Payment is received by the Architect after the application date fixed above, payment shall be made by the Owner not later than thirty   ( 30   ) days after the Architect receives the Application for Payment.

§ 5.1.4 Each Application for Payment shall be based on the most recent schedule of values submitted by the Contractor in accordance with the Contract Documents. The schedule of values shall allocate the entire Contract Sum among the various portions of the Work. The schedule of values shall be prepared in such form and supported by such data to substantiate its accuracy as the Architect may require, and shall establish separate line items for labor and material costs.   This schedule, unless objected to by the Architect, shall be used as a basis for reviewing the Contractor's Applications for Payment.

§ 5.1.5 Applications for Payment shall indicate the percentage of completion of each portion of the Work as of the end of the period covered by the Application for Payment.

§ 5.1.6 Subject to other provisions of the Contract Documents, the amount of each progress payment shall be computed as follows:

   .1   Take that portion of the Contract Sum properly allocable to completed Work as determined by multiplying the percentage completion of each portion of the Work by the share of the Contract Sum allocated to that portion of the Work in the schedule of values, less retainage of ten   percent ( 10   %). Pending final determination of cost to the Owner of changes in the Work, amounts not in dispute shall be included as provided in Section 7.3.9 of AIA Document A201™–2007, General Conditions of the Contract for Construction;

   .2   Add that portion of the Contract Sum properly allocable to materials and equipment delivered and suitably stored at the site for subsequent incorporation in the completed construction, less retainage of ten   percent ( 10   %) when the project reaches fifty percent complete, the Owner will reduce the retainage on subsequent applications for payment to 5%, assuming that the Project, in the Owner's opinion is progressing in accordance with the approved schedule, and the quality of the work is acceptable to Owner.   Owner reserves the right to reinstate ten percent retainage withholding at any time that it determines in its reasonable discretion that the Project is not proceeding in accordance with the approved schedule, the specified quality of the work is not being met, or there is evidence that Contractor is not timely paying Subcontractors and/or suppliers;

   .3   Subtract the aggregate of previous payments made by the Owner; and

   .4   Subtract amounts, if any, for which the Architect has withheld or nullified a Certificate for Payment as provided in Section 9.5 of AIA Document A201–2007.

§ 5.1.7 The progress payment amount determined in accordance with Section 5.1.6 shall be further modified under the following circumstances:

   .1   Add, upon Substantial Completion of the Work, a sum sufficient to increase the total payments to the full amount of the Contract Sum, less such amounts as the Architect shall determine for incomplete Work, retainage applicable to such work and unsettled claims; and

   *(Paragraph deleted)*

   .2   Add, if final completion of the Work is thereafter materially delayed through no fault of the Contractor, any additional amounts payable in accordance with Section 9.10.3 of AIA Document A201–2007.

§ 5.1.8 Reduction or limitation of retainage, if any, shall be as follows:

See Section 5.1.6 above

§ 5.1.9 Except with the Owner's prior approval, the Contractor shall not make advance payments to suppliers for materials or equipment which have not been delivered and stored at the site.

§ 5.2 FINAL PAYMENT
§ 5.2.1 Final payment, constituting the entire unpaid balance of the Contract Sum, shall be made by the Owner to the Contractor when

   .1   the Contractor has fully performed the Contract except for the Contractor's responsibility to correct Work as provided in Section 12.2.2 of AIA Document A201–2007, and to satisfy other requirements stated herein, if any, which extend beyond final payment;

AIA Document A101™ – 2007. Copyright © 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1967, 1974, 1977, 1987, 1991, 1997 and 2007 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 13:42:52 on 06/06/2016 under Order No.7898458378_1 which expires on 04/22/2017, and is not for resale.
User Notes:                                                                                                   (1415967785)

Complaint, Exh. B

.2    a final Certificate for Payment has been issued by the Architect; and
.3    the other conditions for final payment as set forth in the AIA Document A201-2007, as amended have been met.

**§ 5.2.2** The Owner's final payment to the Contractor shall be made no later than 30 days after the issuance of the Architect's final Certificate for Payment, and after the other conditions for final payment contained in Article 9.10 of the General Conditions have been met.

## ARTICLE 6   DISPUTE RESOLUTION

### § 6.1 BINDING DISPUTE RESOLUTION
For any Claim subject to, but not resolved by, mediation pursuant to Section 15.3 of AIA Document A201-2007, the method of binding dispute resolution shall be as follows:
*(Check the appropriate box. If the Owner and Contractor do not select a method of binding dispute resolution below, or do not subsequently agree in writing to a binding dispute resolution method other than litigation, Claims will be resolved by litigation in a court of competent jurisdiction.)*

[  ]   Arbitration pursuant to Section 15.4 of AIA Document A201-2007

[ X ]   Litigation in a court of competent jurisdiction, by judge.   Jury trial is specifically waived by the parties.

[  ]   Other *(Specify)*

### § 6.2 ATTORNEYS' FEES
The parties agree that in any litigation arising from or relating to this Agreement, the prevailing party in such litigation shall recover its reasonable attorney's fees and costs, including all such fees and costs incurred at trial and appellate level.

### § 6.3 JURY TRIAL WAIVER
*(Paragraphs deleted)*
The parties hereto consent to trial by Judge of all disputes arising from or relating to this Agreement, and waive all rights to trial by jury as to any and all such claims and disputes.

## ARTICLE 7   TERMINATION OR SUSPENSION
**§ 7.1** The Contract may be terminated by the Owner or the Contractor as provided in Article 14 of AIA Document A201-2007.

**§ 7.2** The Work may be suspended by the Owner as provided in Article 14 of AIA Document A201-2007.

## ARTICLE 8   MISCELLANEOUS PROVISIONS
**§ 8.1** Where reference is made in this Agreement to a provision of AIA Document A201-2007 or another Contract Document, the reference refers to that provision as amended or supplemented by other provisions of the Contract Documents.

**§ 8.2** Payments due and unpaid under the Contract, which remain unpaid, shall bear interest from the date payment is due at the rate stated below; or in the absence thereof, at the legal rate prevailing from time to time at the place where the Project is located.
*(Insert rate of interest agreed upon, if any.)*

ten percent    % (10)

**§ 8.3** The Owner's representative:
*(Name, address and other information)*

Robert Smith
Beneficial Communities

AIA Document A101™ – 2007. Copyright © 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1967, 1974, 1977, 1987, 1991, 1997 and 2007 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 13:42:52 on 06/06/2016 under Order No.7898458378_1 which expires on 04/22/2017, and is not for resale.
User Notes:                                                                                          (1415967785)

Init.

*/*

5

Complaint, Exh. B

3550 S. Tamiami Trail, Suite 301
Sarasota, FL 34239

**§ 8.4** The Contractor's representative:
*(Name, address and other information)*

Jason Bruzik
CORE Construction
3131 N. I-10 Service Road East, Suite 401
Metairie, LA 70002-6054

**§ 8.5** Neither the Owner's nor the Contractor's representative shall be changed without ten days written notice to the other party.

**§ 8.6** Other provisions:

**§ 8.6.1  NOTICES.**  All notices, demands or other communications required under this Agreement shall be in writing and shall be deemed to have been duly given upon mailing by United States registered or certified mail, return receipt requested, postage prepaid, or by facsimile transmission to:

if to Contractor, to:      Jason Bruzik
                           CORE Construction
                           3131 N. I-10 Road East, Suite 401
                           Metairie, LA 70002-6054

if to Owner, to:           Robert Smith
                           Beneficial Communities
                           3550 S. Tamiami Trail, Suite 301
                           Sarasota, FL 34239

**§ 8.6.2** Contractor shall prepare the job site for storms, protection of property adjacent to and below the Work, and secure any opening into the buildings as related to the Work.  In the event an unexpected storm threatens during non-working hours, Contractor will respond immediately to use its best efforts to protect the job site and adjacent areas from damage.

**§8.6.3**  Contractor shall provide Owner with emergency telephone numbers of its management team at all times during the Project.

**§8.6.4**  The Contractor shall keep full and detailed accounts and exercise such controls as may be necessary for proper financial management under this Contract, and the accounting and control systems shall be satisfactory to the Owner.

**§ 8.6.5**  Contractor shall take reasonable actions to prevent any actions or conditions which could result in a conflict with Owner's best interests.  These obligations shall apply to the activities of Contractor's employees, agents, subcontractors, etc., in their dealings and relations with Owner's current and former employees and their relatives. For example, Contractor's employees, agents, or subcontractors should not make or provide to be made any gifts, extravagant entertainment, trips, payments, loans, or other consideration to Owner's representatives, employees, or their relatives.

**§8.6.6**  Notwithstanding anything in the Contract Documents to the contrary, Owner shall have the right to audit and copy Contractor's Project books and records, at any time, and from time to time.  Contractor shall make all such books and records available for Owner's auditing and copying, including "read only" access to any software or documents to audit information or records maintained in electronic format, during normal business hours as requested by Owner upon thirty (30) days prior notice.  Provided, however, Contractor's general conditions expenses, Unit Prices and insurance and bond premiums are not subject to audit.

Init.

/

**AIA Document A101™ – 2007.** Copyright © 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1967, 1974, 1977, 1987, 1991, 1997 and 2007 by The American Institute of Architects. **All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law.** This document was produced by AIA software at 13:42:52 on 06/06/2016 under Order No.7898458378_1 which expires on 04/22/2017, and is not for resale.
User Notes:                                                                                                              (1415987785)

6

§8.6.7   A failure to assert any rights or remedies available to a party under the terms of the Contract, or a waiver of the right to remedies available to a party by a course of dealing or otherwise shall not be deemed to be a waiver of any other right of remedy under the Contract, unless such waiver of such right or remedy is contained in a writing signed by the party alleged to have waived his other rights or remedies.

§8.6.8   Contractor agrees to comply, at its own expense, with all federal, state and local laws, codes, statutes, ordinances, rules, administrative orders, regulations and requirements applicable to the Project, including but not limited to those dealing with safety.   If Contractor observes that the Contract Documents are at variance therewith, it shall promptly notify Owner and Architect in writing.

§8.6.9   No modification, alteration or waiver of the terms of this Contract shall be binding unless the same shall be in writing, dated subsequent to the date of this Contract and duly executed by the party or parties intended to be bound by it.

§8.6.10   Contractor acknowledges and agrees that Owner is obtaining financing for this Project from Owner's lender ("Lender").   Notwithstanding anything in the Contract Documents to the contrary, Contractor agrees, at no additional cost or expense to Owner, to comply (and to cause all lower tier Subcontractors and suppliers to comply) with any and all requirements reasonable and customary of Owner's Lender, whether such requirements are instituted before or after execution of the Agreement, including execution of Lender consents or assignments. Contractor acknowledges and agrees that this Contract, including Owner's issuance of a notice to proceed hereunder, is contingent upon Owner obtaining a mortgage commitment from a Lender.   In the event Owner is unable to procure such a commitment within one hundred eighty (180) calendar days from the date of full execution of this Agreement, either party may terminate this Contract subject to the terms and conditions enumerated in Article 14 of the AIA A201 (2007) as modified by Owner, upon written notice to the other party with no obligation or liability under this Contract to the other party resulting from such termination.   Contractor acknowledges and agrees that Owner's obligation to make payments of any amounts otherwise due and owing under the Contract Documents is not conditioned upon Lender's approval of those payments unless Lender's non-approval is due to the acts or omission of Contractor, any of its Subcontractors or anyone from whom any of them are liable.   Owner will provide notice to Contractor within two business days of Lender's notice that it has not approved an Application for Payment for reasons due to Contractor, any of its Subcontractors or anyone for whom any of them are liable.

### § 8.7   LIQUIDATED DAMAGES

Contractor shall achieve Substantial Completion of the Work or any portion of the Work by no later than the Substantial Completion Date set forth in Section 3.3 above.   Time is of the essence to the Contract Documents and all obligations thereunder, including but not limited to the date of Substantial Completion.

In the event the Contractor does not achieve Substantial Completion of the Work on or before the Substantial Completion Date set forth in Section 3.3 above for each building Contractor shall pay Owner, as agreed liquidated damages and not as a penalty, the sum of Forty Five Dollars ($45.00) per residential apartment unit per day for each calendar day beyond Substantial Completion Date, or the applicable Substantial Completion date for any building, set forth herein that the Work is not "substantially completed" (as hereinafter defined) by the applicable date unless such delays could be categorized as not within the control of the Contractor, i.e., Owner delays or Weather delays. Contractor acknowledges and agrees that the actual delay damages which Owner will suffer in the event of a delay in achieving Substantial Completion of all or a portion of the project, are difficult, if not impossible, to determine and that the liquidated damages described above are a fair and reasonable estimate of the lost profits and revenue which the Owner is expected to suffer in the event of such delay.

### § 8.8   SPECIAL PROVISIONS APPLICABLE TO LOAN

Contractor agrees that all publicity and advertisements prepared and released by Contractor during construction of the Complex, recognize Owner's Lender as a participant in the funding for the Project.

### ARTICLE 9   ENUMERATION OF CONTRACT DOCUMENTS

§ 9.1 The Contract Documents, except for Modifications issued after execution of this Agreement, are enumerated in the sections below.

AIA Document A101™ – 2007. Copyright © 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1987, 1974, 1977, 1987, 1991, 1997 and 2007 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 13:42:52 on 06/06/2016 under Order No.7898458378_1 which expires on 04/28/2017, and is not for resale.
User Notes:                                                                                    (1415987785)

Init.

/

Complaint, Exh. B

§ 9.1.1 The Agreement is this executed AIA Document A101–2007, Standard Form of Agreement Between Owner and Contractor.

§ 9.1.2 The General Conditions are AIA Document A201–2007, General Conditions of the Contract for Construction.

§ 9.1.3 The Supplementary and other Conditions of the Contract are those contained in the Project Manual (Table deleted)
§ 9.1.4 The Specifications:
(Either list the Specifications here or refer to an exhibit attached to this Agreement.)
List of Plans and Specifications as reflected on Exhibit "C" attached hereto.

| Section | Title | Date | Pages |
|---------|-------|------|-------|

§ 9.1.5 The Drawings:
(Either list the Drawings here or refer to an exhibit attached to this Agreement.)
Title of Drawings and specifications attached hereto as Exhibit "C".

| Number | Title | Date |
|--------|-------|------|

§ 9.1.6 The Addenda, if any:

| Number | Date | Pages |
|--------|------|-------|
| n/a | | |

Portions of Addenda relating to bidding requirements are not part of the Contract Documents unless the bidding requirements are also enumerated in this Article 9.

§ 9.1.7 Additional documents, if any, forming part of the Contract Documents:

.1    AIA Document E201™–2007, Digital Data Protocol Exhibit, if completed by the parties, or the following:

.2    Other documents, if any, listed below:
(Paragraph deleted)

| | |
|---|---|
| Scope of Work | Exhibit "A" |
| A201-2007 General Conditions, as modified | Exhibit "B" |
| Title of Specifications and Drawings | Exhibit "C" |
| Qualifications and Clarifications | Exhibit "D" |
| Construction Schedule | Exhibit "E" |
| Application and Certificate of Payment | Exhibit "F" |
| Schedule of Values | Exhibit "G" |
| Payment Bond | Exhibit "H" |
| Performance Bond | Exhibit "I" |
| Contractor's Certificate of General Liability and Workers Compensation Insurance | Exhibit "J" |
| Sample Contractor and Subcontractor Waivers for Partial and Final Payment | Composite Exhibit "K" |

These documents form the Contract Documents and are as fully a part of the Contract as if repeated herein.   The Contract Documents represent the entire agreement between the parties hereto and supersede prior negotiations, representations or agreement, either written or oral.

Init.

AIA Document A101™– 2007. Copyright © 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1967, 1974, 1977, 1987, 1991, 1997 and 2007 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 13:42:52 on 06/06/2016 under Order No.7888458378_1 which expires on 04/22/2017, and is not for resale.
User Notes:                                                                                                   (1415987785)

8

**ARTICLE 10   INSURANCE AND BONDS**
The Contractor shall purchase and maintain insurance and provide bonds as set forth in Article 11 of AIA Document A201–2007.
*(Paragraph deleted)*

Type of insurance or bond                                Limit of liability or bond amount ($0.00)

This Agreement entered into as of the day and year first written above and is executed in at least three original copies, of which one is to be delivered to the Contractor, one to the Architect for use in the administration of the Contract, and the remainder to the Owner.

_____                        _____
OWNER (Signature)                                       CONTRACTOR (Signature)

Donald W. Paxton,                                       Brad Roberts, President
as Manager of General Partnership                       _____
(Printed name and title)                                (Printed name and title)

Init.

AIA Document A101™ – 2007. Copyright © 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1967, 1974, 1977, 1987, 1991, 1997 and 2007 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 13:42:52 on 08/06/2016 under Order No.7898458370_1 which expires on 04/22/2017, and is not for resale.
User Notes:                                                                         (1415967755)

9

Complaint, Exh. B

## Additions and Deletions Report for
## AIA® Document A101™ – 2007

This Additions and Deletions Report, as defined on page 1 of the associated document, reproduces below all text the author has added to the standard form AIA document in order to complete it, as well as any text the author may have added to or deleted from the original AIA text. Added text is shown underlined. Deleted text is indicated with a horizontal line through the original AIA text.

Note:   This Additions and Deletions Report is provided for information purposes only and is not incorporated into or constitute any part of the associated AIA document. This Additions and Deletions Report and its associated document were generated simultaneously by AIA software at 13:42:52 on 06/06/2016.

### PAGE 1

AGREEMENT made as of the ____ day of June  in the year 2016

...

Freedom's Path Limited Partnership, as the assignee of
Freedom's Path First Step Limited Partnership
Attn: Donald Paxton, Manager
3550 South Tamiami Trail, Suite 301
Sarasota, FL 34239

...

CORE Construction
3131 N. I-10 Service Road East, Suite 401
Metairie, LA 70002-6054

...

Freedom's Path – Historic Rehabilitation of two Existing Structures:
Building #18 – Permanent Supportive Housing – Approximately 28 units – 4 Stories
Building # 76 – Permanent Supportive Housing – Approximately 50 units – 3 Stories
Veterans Administration Campus, Augusta, Georgia 30904

...

Gruber & Associates, LLC
Attn: Morton M. Gruber, AIA, Manager
245 Peachtree Center Ave, NE, Suite 2445
Atlanta, GA 30303

### PAGE 2

The Contract Documents consist of this Agreement, Conditions of the Contract (General, Supplementary and other Conditions), Drawings, Specifications, qualifications and clarifications, Addenda issued prior to execution of this Agreement, other documents listed in this Agreement and Modifications issued after execution of this Agreement, all of which form the Contract, and are as fully a part of the Contract as if attached to this Agreement or repeated herein. The Contract represents the entire and integrated agreement between the parties hereto and supersedes prior negotiations, representations or agreements, either written or oral. An enumeration of the Contract Documents, other than a Modification, appears in Article 9.

...

Additions and Deletions Report for AIA Document A101™ – 2007. Copyright © 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1967, 1974, 1977, 1987, 1991, 1997 and 2007 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 13:42:52 on 06/06/2016 under Order No.7898456378_1 which expires on 04/22/2017, and is not for resale.
User Notes:                                                                          (1415987785)

1

Complaint, Exh. B

The Contractor shall fully execute the Work ~~described in the Contract Documents, except as specifically indicated in the Contract Documents to be the responsibility of others~~ as outlined in Exhibit "A" attached hereto in conformance with the Contract Documents and according to the Plans, Specifications, and manufacturer's specifications and generally accepted industry standards. If there is a conflict between the Plans, specifications and normal industry standards, the document establishing the better quality shall govern. Any and all modifications to the Work must be approved in writing by the Owner's representative, before the modification is performed.

...

~~(Insert the date of commencement if it differs from the date of this Agreement or, if applicable, state that the date will be fixed in a notice to proceed.)~~

Upon issuance of a Notice to Proceed by Owner.

...

N/A

...

**§ 3.3** The Contractor shall achieve Substantial Completion of the entire Work not later than ~~( ) days from the date of commencement, or as follows:~~
~~(Insert number of calendar days. Alternatively, a calendar date may be used when coordinated with the date of commencement. If appropriate, insert requirements for earlier Substantial Completion of certain portions of the Work.)~~

~~Portion of Work~~                    ~~Substantial Completion Date~~

~~, subject to adjustments of this Contract Time as provided in the Contract Documents.~~
~~(Insert provisions, if any, for liquidated damages relating to failure to achieve Substantial Completion on time or for bonus payments for early completion of the Work.)~~

September 25, 2017 for Building 18, and November 9, 2017 for Building 76.

**PAGE 3**

**§ 4.1** The Owner shall pay the Contractor the Contract Sum in current funds for the Contractor's performance of the Contract. The Contract Sum shall be ~~($ ), subject to additions and deductions as provided in the Contract Documents.~~eleven million, seven hundred seventy-four thousand dollars ($ 11,774,000.00 ), established following the value engineering/buy out process outlined in Section 4.6.

...

~~(State the numbers or other identification of accepted alternates. If the bidding or proposal documents permit the Owner to accept other alternates subsequent to the execution of this Agreement, attach a schedule of such other alternates showing the amount for each and the date when that amount expires.)~~

The Contract Sum includes $25,000.00 to compensate Contractor for Contractor to perform preconstruction investigation of the Project; the Building, the Site and utilities, and to perform testing that Contractor may wish to perform, to thoroughly investigate and acquaint itself to the greatest extent, with all existing conditions of the Project, so as to be able to include in the Contract Sum amounts that are reasonably necessary to construct the Project in accordance with the latest revision of the Plans and Specifications, applicable codes, and any other related investigative reports.

Additions and Deletions Report for AIA Document A101™ – 2007. Copyright © 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1967, 1974, 1977, 1987, 1991, 1997 and 2007 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 13:42:52 on 06/08/2016 under Order No.7898458376_1 which expires on 04/22/2017, and is not for resale.
User Notes: (1415987785)

Complaint, Exh. B

All amounts associated with any alternates are intended to be not-to-exceed amounts.  If Owner elects in writing to have Contractor perform any alternate(s), then the Work associated with such alternate(s) shall be bid on an open-book basis with Owner having full audit rights with respect to such Work.  In the event the actual cost of any such alternate(s) is less than the not-to-exceed amount identified in the Contract Documents, such difference ("Alternate Savings") shall not be shared between Owner and Contractor.  Contractor hereby acknowledges and agrees that Owner shall receive 100% of any Alternate Savings.

...

> n/a

...

> See Schedule of Values, Exhibit G

...

**§ 5.1.2** The period covered by each Application for Payment shall be one calendar month ending on the last day of the ~~month, or as follows:~~month.  Each Application for Payment shall include the following documents:

- a.  Signed Application for Payment (AIA G702 and G703)
- b.  G702 and G703 in Excel Format (to be forwarded to Owner's lender)
- c.  General Contractor's notarized lien waivers reflecting the total funds paid to date.
- d.  G701 Change Orders, executed with appropriate backup documentation
- e.  Pending Change Order Log (PCO Log), and the Prime Contract Change Order Log (PCCO Log)
- f.  Updated Project Schedule
- g.  Contractor's Vendor/Payee List with invoices and Subcontractor's lien waivers for the current month's Application for Payment
- h.  Any additional documents requested by Owner's lender (e.g. surveys, inspection reports, permits or updated insurance certificates)

**§ 5.1.3** Provided that an Application for Payment is received by the Architect not later than the last__day of a month, the Owner shall make payment ~~of the certified amount~~ to the Contractor not later than the 15__day of the following __month. If an Application for Payment is received by the Architect after the application date fixed above, payment shall be made by the Owner not later than thirty  ( 30  ) days after the Architect receives the Application for Payment.
~~(Federal, state or local laws may require payment within a certain period of time.)~~

**§ 5.1.4** Each Application for Payment shall be based on the most recent schedule of values submitted by the Contractor in accordance with the Contract Documents. The schedule of values shall allocate the entire Contract Sum among the various portions of the Work. The schedule of values shall be prepared in such form and supported by such data to substantiate its accuracy as the Architect may ~~require.~~ require, and shall establish separate line items for labor and material costs.  This schedule, unless objected to by the Architect, shall be used as a basis for reviewing the Contractor's Applications for Payment.

**§ 5.1.5** Applications for Payment shall ~~show~~ indicate the percentage of completion of each portion of the Work as of the end of the period covered by the Application for Payment.

**PAGE 4**

> .1    Take that portion of the Contract Sum properly allocable to completed Work as determined by multiplying the percentage completion of each portion of the Work by the share of the Contract Sum allocated to that portion of the Work in the schedule of values, less retainage of ten__percent ( 10 %). Pending final determination of cost to the Owner of changes in the Work, amounts not in dispute shall be included as provided in Section 7.3.9 of AIA Document A201™–2007, General Conditions of the Contract for Construction;

Additions and Deletions Report for AIA Document A101™ – 2007. Copyright © 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1967, 1974, 1977, 1987, 1991, 1997 and 2007 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 13:42:52 on 06/06/2016 under Order No.7868456378_1 which expires on 04/22/2017, and is not for resale.
User Notes:                                                                                                          (1415967785)

Complaint, Exh. B

.2    Add that portion of the Contract Sum properly allocable to materials and equipment delivered and suitably stored at the site for subsequent incorporation in the completed construction (or, if approved in advance by the Owner, suitably stored off the site at a location agreed upon in writing), less retainage of ~~percent ( %);~~construction, less retainage of ten ~~percent ( 10 %)~~ when the project reaches fifty percent complete, the Owner will reduce the retainage on subsequent applications for payment to 5%, assuming that the Project, in the Owner's opinion, is progressing in accordance with the approved schedule, and the quality of the work is acceptable to Owner. Owner reserves the right to reinstate ten percent retainage withholding at any time that it determines in its reasonable discretion that the Project is not proceeding in accordance with the approved schedule, the specified quality of the work is not being met, or there is evidence that Contractor is not timely paying Subcontractors and/or suppliers;

...

*(Section 9.8.5 of AIA Document A201–2007 requires release of applicable retainage upon Substantial Completion of Work with consent of surety, if any.)*

...

~~(If it is intended, prior to Substantial Completion of the entire Work, to reduce or limit the retainage resulting from the percentages inserted in Sections 5.1.6.1 and 5.1.6.2 above, and this is not explained elsewhere in the Contract Documents, insert here provisions for such reduction or limitation.)~~ See Section 5.1.6 above

...

.1    the Contractor has fully performed the Contract except for the Contractor's responsibility to correct Work as provided in Section 12.2.2 of AIA Document A201–2007, and to satisfy other ~~requirements,~~ requirements stated herein, if any, which extend beyond final payment;and

.2    a final Certificate for Payment has been issued by the ~~Architect.~~Architect; and

.3    the other conditions for final payment as set forth in the AIA Document A201-2007, as amended have been met.

**§ 5.2.2** The Owner's final payment to the Contractor shall be made no later than 30 days after the issuance of the Architect's final Certificate for Payment, ~~or as follows:~~

and after the other conditions for final payment contained in Article 9.10 of the General Conditions have been met.

**PAGE 5**

**§ 6.1 ~~INITIAL DECISION MAKER~~BINDING DISPUTE RESOLUTION**
~~The Architect will serve as Initial Decision Maker pursuant to Section 15.2 of AIA Document A201–2007, unless the parties appoint below another individual, not a party to this Agreement, to serve as Initial Decision Maker.~~For any Claim subject to, but not resolved by, mediation pursuant to Section 15.3 of AIA Document A201–2007, the method of binding dispute resolution shall be as follows:
~~(If the parties mutually agree, insert the name, address and other contact information of the Initial Decision Maker, if other than the Architect.)~~*(Check the appropriate box. If the Owner and Contractor do not select a method of binding dispute resolution below, or do not subsequently agree in writing to a binding dispute resolution method other than litigation, Claims will be resolved by litigation in a court of competent jurisdiction.)*

[    ]    Arbitration pursuant to Section 15.4 of AIA Document A201–2007

[ X ]    Litigation in a court of competent jurisdiction, by judge. Jury trial is specifically waived by the parties.

[    ]    Other *(Specify)*

Additions and Deletions Report for AIA Document A101™ – 2007. Copyright © 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1987, 1974, 1977, 1987, 1991, 1997 and 2007 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 13:42:52 on 06/08/2016 under Order No.7898458378_1 which expires on 04/22/2017, and is not for resale.
User Notes:                                     (1415967786)

**4**

Complaint, Exh. B

§ 6.2 ~~BINDING DISPUTE RESOLUTION~~ATTORNEYS' FEES
~~For any Claim subject to, but not resolved by, mediation pursuant to Section 15.3 of AIA Document A201-2007, the method of binding dispute resolution shall be as follows:~~The parties agree that in any litigation arising from or relating to this Agreement, the prevailing party in such litigation shall recover its reasonable attorney's fees and costs, including all such fees and costs incurred at trial and appellate level.

§ 6.3 JURY TRIAL WAIVER
*~~(Check the appropriate box. If the Owner and Contractor do not select a method of binding dispute resolution below, or do not subsequently agree in writing to a binding dispute resolution method other than litigation, Claims will be resolved by litigation in a court of competent jurisdiction.)~~*

~~[   ]   Arbitration pursuant to Section 15.4 of AIA Document A201-2007~~

~~[   ]   Litigation in a court of competent jurisdiction~~

~~[   ]   Other *(Specify)*~~

The parties hereto consent to trial by Judge of all disputes arising from or relating to this Agreement, and waive all rights to trial by jury as to any and all such claims and disputes.

...

§ 8.2 Payments due and unpaid under the ~~Contract~~ Contract, which remain unpaid, shall bear interest from the date payment is due at the rate stated below, or in the absence thereof, at the legal rate prevailing from time to time at the place where the Project is located.

...

ten percent    % (10)

...

Robert Smith
Beneficial Communities
3550 S. Tamiami Trail, Suite 301
Sarasota, FL 34239

PAGE 6

Jason Bruzik
CORE Construction
3131 N. I-10 Service Road East, Suite 401
Metairie, LA 70002-6054

...

§ 8.6.1 NOTICES.    All notices, demands or other communications required under this Agreement shall be in writing and shall be deemed to have been duly given upon mailing by United States registered or certified mail, return receipt requested, postage prepaid, or by facsimile transmission to:

| if to Contractor, to: | Jason Bruzik |
|---|---|
| | CORE Construction |
| | 3131 N. I-10 Road East, Suite 401 |
| | Metairie, LA 70002-6054 |
| if to Owner, to: | Robert Smith |
| | Beneficial Communities |

Additions and Deletions Report for AIA Document A101™ – 2007. Copyright © 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1967, 1974, 1977, 1987, 1991, 1997 and 2007 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 13:42:52 on 06/06/2018 under Order No.7898458378_1 which expires on 04/22/2017, and is not for resale.
User Notes:                                                                                                                (1415987785)

5

3550 S. Tamiami Trail, Suite 301
Sarasota, FL 34239

§ 8.6.2 Contractor shall prepare the job site for storms, protection of property adjacent to and below the Work, and secure any opening into the buildings as related to the Work. In the event an unexpected storm threatens during non-working hours, Contractor will respond immediately to use its best efforts to protect the job site and adjacent areas from damage.

§8.6.3 Contractor shall provide Owner with emergency telephone numbers of its management team at all times during the Project.

§8.6.4 The Contractor shall keep full and detailed accounts and exercise such controls as may be necessary for proper financial management under this Contract, and the accounting and control systems shall be satisfactory to the Owner.

§ 8.6.5 Contractor shall take reasonable actions to prevent any actions or conditions which could result in a conflict with Owner's best interests. These obligations shall apply to the activities of Contractor's employees, agents, subcontractors, etc., in their dealings and relations with Owner's current and former employees and their relatives. For example, Contractor's employees, agents, or subcontractors should not make or provide to be made any gifts, extravagant entertainment, trips, payments, loans, or other consideration to Owner's representatives, employees, or their relatives.

§8.6.6 Notwithstanding anything in the Contract Documents to the contrary, Owner shall have the right to audit and copy Contractor's Project books and records, at any time, and from time to time. Contractor shall make all such books and records available for Owner's auditing and copying, including "read-only" access to any software or documents to audit information or records maintained in electronic format, during normal business hours as requested by Owner upon thirty (30) days prior notice. Provided, however, Contractor's general conditions expenses, Unit Prices and insurance and bond premiums are not subject to audit.

§8.6.7 A failure to assert any rights or remedies available to a party under the terms of the Contract, or a waiver of the right to remedies available to a party by a course of dealing or otherwise shall not be deemed to be a waiver of any other right of remedy under the Contract, unless such waiver of such right or remedy is contained in a writing signed by the party alleged to have waived his other rights or remedies.

§8.6.8 Contractor agrees to comply, at its own expense, with all federal, state and local laws, codes, statutes, ordinances, rules, administrative orders, regulations and requirements applicable to the Project, including but not limited to those dealing with safety. If Contractor observes that the Contract Documents are at variance therewith, it shall promptly notify Owner and Architect in writing.

§8.6.9 No modification, alteration or waiver of the terms of this Contract shall be binding unless the same shall be in writing, dated subsequent to the date of this Contract and duly executed by the party or parties intended to be bound by it.

§8.6.10 Contractor acknowledges and agrees that Owner is obtaining financing for this Project from Owner's lender ("Lender"). Notwithstanding anything in the Contract Documents to the contrary, Contractor agrees, at no additional cost or expense to Owner, to comply (and to cause all lower tier Subcontractors and suppliers to comply) with any and all requirements reasonable and customary of Owner's Lender, whether such requirements are instituted before or after execution of the Agreement, including execution of Lender consents or assignments. Contractor acknowledges and agrees that this Contract, including Owner's issuance of a notice to proceed hereunder, is contingent upon Owner obtaining a mortgage commitment from a Lender. In the event Owner is unable to procure such a commitment within one hundred eighty (180) calendar days from the date of full execution of this Agreement, either party may terminate this Contract subject to the terms and conditions enumerated in Article 14 of the AIA A201 (2007) as modified by Owner, upon written notice to the other party with no obligation or liability under this Contract to the other party resulting from such termination. Contractor acknowledges and agrees that Owner's obligation to make payments of any amounts otherwise due and owing under the Contract Documents is not conditioned upon Lender's approval of those payments unless Lender's non-approval is due to the acts or omission of Contractor, any of its Subcontractors or anyone from whom any of them are liable. Owner will

Additions and Deletions Report for AIA Document A101™ – 2007. Copyright © 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1967, 1974, 1977, 1987, 1991, 1997 and 2007 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 13:42:62 on 06/06/2016 under Order No.7898458378_1 which expires on 04/22/2017, and is not for resale.
User Notes:                                                                                                          (1415987785)

6

provide notice to Contractor within two business days of Lender's notice that it has not approved an Application for Payment for reasons due to Contractor, any of its Subcontractors or anyone for whom any of them are liable.

### § 8.7  LIQUIDATED DAMAGES

Contractor shall achieve Substantial Completion of the Work or any portion of the Work by no later than the Substantial Completion Date set forth in Section 3.3 above.   Time is of the essence to the Contract Documents and all obligations thereunder, including but not limited to the date of Substantial Completion.

In the event the Contractor does not achieve Substantial Completion of the Work on or before the Substantial Completion Date set forth in Section 3.3 above for each building Contractor shall pay Owner, as agreed liquidated damages and not as a penalty, the sum of Forty Five Dollars ($45.00) per residential apartment unit per day for each calendar day beyond Substantial Completion Date, or the applicable Substantial Completion date for any building, set forth herein that the Work is not "substantially completed" (as hereinafter defined) by the applicable date unless such delays could be categorized as not within the control of the Contractor, i.e., Owner delays or Weather delays. Contractor acknowledges and agrees that the actual delay damages which Owner will suffer in the event of a delay in achieving Substantial Completion of all or a portion of the project, are difficult, if not impossible, to determine and that the liquidated damages described above are a fair and reasonable estimate of the lost profits and revenue which the Owner is expected to suffer in the event of such delay.

### § 8.8  SPECIAL PROVISIONS APPLICABLE TO LOAN
Contractor agrees that all publicity and advertisements prepared and released by Contractor during construction of the Complex, recognize Owner's Lender as a participant in the funding for the Project.

**PAGE 8**

§ 9.1.3 The Supplementary and other Conditions of the ~~Contract~~ Contract are those contained in the Project Manual

| ~~Document~~ | ~~Title~~ | ~~Date~~ | ~~Pages~~ |
|---|---|---|---|

...

List of Plans and Specifications as reflected on Exhibit "C" attached hereto.

...

Title of Drawings and specifications attached hereto as Exhibit "C".

...

  n/a

...

*(List here any additional documents that are intended to form part of the Contract Documents. AIA Document A201-2007 provides that bidding requirements such as advertisement or invitation to bid, Instructions to Bidders, sample forms and the Contractor's bid are not part of the Contract Documents unless enumerated in this Agreement.   They should be listed here only if intended to be part of the Contract Documents.)*

| Scope of Work | Exhibit "A" |
|---|---|
| A201-2007 General Conditions, as modified | Exhibit "B" |
| Title of Specifications and Drawings | Exhibit "C" |
| Qualifications and Clarifications | Exhibit "D" |

Additions and Deletions Report for AIA Document A101™ – 2007. Copyright © 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1967, 1974, 1977, 1987, 1991, 1997 and 2007 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 13:42:52 on 06/06/2016 under Order No.7898458378_1 which expires on 04/22/2017, and is not for resale.
User Notes:                                                                                          (1415987785)

**7**

| | |
|---|---|
| Construction Schedule | Exhibit "E" |
| Application and Certificate of Payment | Exhibit "F" |
| Schedule of Values | Exhibit "G" |
| Payment Bond | Exhibit "H" |
| Performance Bond | Exhibit "I" |
| Contractor's Certificate of General Liability and Workers Compensation Insurance | Exhibit "J" |
| Sample Contractor and Subcontractor Waivers for Partial and Final Payment | Composite Exhibit "K" |

These documents form the Contract Documents and are as fully a part of the Contract as if repeated herein.  The Contract Documents represent the entire agreement between the parties hereto and supersede prior negotiations, representations or agreement, either written or oral.

**PAGE 9**

*(State bonding requirements, if any, and limits of liability for insurance required in Article 11 of AIA Document A201-2007.)*

...

This Agreement entered into as of the day and year first written ~~above.~~above and is executed in at least three original copies, of which one is to be delivered to the Contractor, one to the Architect for use in the administration of the Contract, and the remainder to the Owner.

...

| | |
|---|---|
| Donald W. Paxton, | |
| as Manager of General Partnership | Jason Bruzik,  Secretary |

Additions and Deletions Report for AIA Document A101™ – 2007. Copyright © 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1967, 1974, 1977, 1987, 1991, 1997 and 2007 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 13:42:52 on 06/06/2016 under Order No.7898458378_1 which expires on 04/22/2017, and is not for resale.
User Notes:                                                                                                    (1415987785)

**8**

## *Certification of Document's Authenticity*
*AIA® Document D401™ – 2003*

I, Michael K. Wilson, hereby certify, to the best of my knowledge, information and belief, that I created the attached final document simultaneously with its associated Additions and Deletions Report and this certification at 13:42:52 on 06/06/2016 under Order No. 7898458378_1 from AIA Contract Documents software and that in preparing the attached final document I made no changes to the original text of AIA® Document A101™ – 2007, Standard Form of Agreement Between Owner and Contractor   where the basis of payment is a Stipulated Sum, as published by the AIA in its software, other than those additions and deletions shown in the associated Additions and Deletions Report.

_____
*(Signed)*


_____
*(Title)*


_____
*(Dated)*

AIA Document D401™ – 2003. Copyright © 1992 and 2003 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 13:42:52 on 06/06/2016 under Order No.7898458378_1 which expires on 04/22/2017, and is not for resale.
User Notes:                                                                                                      (1415987785)

1

Complaint, Exh. B



# AIA® Document A201™ – 2007

## General Conditions of the Contract for Construction

for the following PROJECT:
*(Name and location or address)*
Freedom's Path – Historic Rehabilitation of Two Existing Structures:
Building # 18 – Permanent Supportive Housing – Approximately 28 units – 4 Stories
Building # 76 – Permanent Supportive Housing – Approximately 50 units – 3 Stories
Veterans Administration Campus, Augusta, Georgia 30904

THE OWNER:
*(Name, legal status and address)*
Freedom's Path Limited Partnership, as the assignee of
Freedom's Path First Step Limited Partnership
Attn: Donald Paxton, Manager
3550 South Tamiami Trail, Suite 301
Sarasota, FL 34239

THE ARCHITECT:
*(Name, legal status and address)*
Gruber & Associates Architects, LLC
Attn: Morton M. Gruber, AIA, Manager
245 Peachtree Center Ave. NE, Suite 2445.
Atlanta, GA 30303

ADDITIONS AND DELETIONS:
The author of this document has added information needed for its completion. The author may also have revised the text of the original AIA standard form. An *Additions and Deletions Report* that notes added information as well as revisions to the standard form text is available from the author and should be reviewed. A vertical line in the left margin of this document indicates where the author has added necessary information and where the author has added to or deleted from the original AIA text.

This document has important legal consequences. Consultation with an attorney is encouraged with respect to its completion or modification.

## TABLE OF ARTICLES

1   GENERAL PROVISIONS

2   OWNER

3   CONTRACTOR

4   ADMINISTRATION OF THE CONTRACT

5   SUBCONTRACTORS

6   CONSTRUCTION BY OWNER OR BY SEPARATE CONTRACTORS

7   CHANGES IN THE WORK

8   TIME

9   PAYMENTS AND COMPLETION

10   PROTECTION OF PERSONS AND PROPERTY

11   INSURANCE AND BONDS

12   UNCOVERING AND CORRECTION OF WORK

13   MISCELLANEOUS PROVISIONS

Init.
/
AIA Document A201™ – 2007. Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987, 1997 and 2007 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 08:45:01 on 06/08/2016 under Order No.7898458378_1 which expires on 04/22/2017, and is not for resale.
User Notes:                                                                   (727872888)

1

Complaint, Exh. B

**14**    TERMINATION OR SUSPENSION OF THE CONTRACT

**Init.**

**/**

AIA Document A201™ – 2007. Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987, 1997 and 2007 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 08:45:01 on 06/05/2015 under Order No.7898458378_1 which expires on 04/22/2017, and is not for resale.
User Notes:                                                                                                                     (727872888)

**2**

Complaint, Exh. B

INDEX
(Topics and numbers in bold are section headings.)

**Acceptance of Nonconforming Work**
9.6.6, 9.9.3, **12.3**
Acceptance of Work
9.6.6, 9.8.2, 9.9.3, 9.10.1, 9.10.3, 12.3
**Access to Work**
**3.16**, 6.2.1, 12.1
Accident Prevention
**10**
Acts and Omissions
3.2, 3.3.2, 3.12.8, 3.18, 4.2.3, 8.3.1, 9.5.1, 10.2.5, 10.2.8, 13.4.2, 13.7, 14.1, 15.2
Addenda
1.1.1, 3.11
Additional Costs, Claims for
3.7.4, 3.7.5, 6.1.1, 7.3.7.5, 10.3, 15.1.4
**Additional Inspections and Testing**
9.4.2, 9.8.3, 12.2.1, **13.5**
Additional Insured
11.1.4
**Additional Time, Claims for**
3.2.4, 3.7.4, 3.7.5, 3.10.2, 8.3.2, 15.1.5
**Administration of the Contract**
3.1.3, 4.2, 9.4, 9.5
Advertisement or Invitation to Bid
1.1.1
Aesthetic Effect
4.2.13
**Allowances**
**3.8**, 7.3.8
All-risk Insurance
11.3.1, 11.3.1.1
**Applications for Payment**
4.2.5, 7.3.9, 9.2, 9.3, 9.4, 9.5.1, 9.6.3, 9.7, 9.10, 11.1.3
Approvals
2.1.1, 2.2.2, 2.4, 3.1.3, 3.10.2, 3.12.8, 3.12.9, 3.12.10, 4.2.7, 9.3.2, 13.5.1
**Arbitration**
8.3.1, 11.3.10, 13.1, 15.3.2, 15.4
**ARCHITECT**
**4**
Architect, Definition of
**4.1.1**
Architect, Extent of Authority
2.4, 3.12.7, 4.1, 4.2, 5.2, 6.3, 7.1.2, 7.3.7, 7.4, 9.2, 9.3.1, 9.4, 9.5, 9.6.3, 9.8, 9.10.1, 9.10.3, 12.1, 12.2.1, 13.5.1, 13.5.2, 14.2.2, 14.2.4, 15.1.3, 15.2.1
Architect, Limitations of Authority and Responsibility
2.1.1, 3.12.4, 3.12.8, 3.12.10, 4.1.2, 4.2.1, 4.2.2, 4.2.3, 4.2.6, 4.2.7, 4.2.10, 4.2.12, 4.2.13, 5.2.1, 7.4, 9.4.2, 9.5.3, 9.6.4, 15.1.3, 15.2

Architect's Additional Services and Expenses
2.4, 11.3.1.1, 12.2.1, 13.5.2, 13.5.3, 14.2.4
Architect's Administration of the Contract
3.1.3, 4.2, 3.7.4, 15.2, 9.4.1, 9.5
Architect's Approvals
2.4, 3.1.3, 3.5, 3.10.2, 4.2.7
Architect's Authority to Reject Work
3.5, 4.2.6, 12.1.2, 12.2.1
Architect's Copyright
1.1.7, 1.5
Architect's Decisions
3.7.4, 4.2.6, 4.2.7, 4.2.11, 4.2.12, 4.2.13, 4.2.14, 6.3, 7.3.7, 7.3.9, 8.1.3, 8.3.1, 9.2, 9.4.1, 9.5, 9.8.4, 9.9.1, 13.5.2, 15.2, 15.3
Architect's Inspections
3.7.4, 4.2.2, 4.2.9, 9.4.2, 9.8.3, 9.9.2, 9.10.1, 13.5
Architect's Instructions
3.2.4, 3.3.1, 4.2.6, 4.2.7, 13.5.2
Architect's Interpretations
4.2.11, 4.2.12
Architect's Project Representative
4.2.10
Architect's Relationship with Contractor
1.1.2, 1.5, 3.1.3, 3.2.2, 3.2.3, 3.2.4, 3.3.1, 3.4.2, 3.5, 3.7.4, 3.7.5, 3.9.2, 3.9.3, 3.10, 3.11, 3.12, 3.16, 3.18, 4.1.2, 4.1.3, 4.2, 5.2, 6.2.2, 7, 8.3.1, 9.2, 9.3, 9.4, 9.5, 9.7, 9.8, 9.9, 10.2.6, 10.3, 11.3.7, 12, 13.4.2, 13.5, 15.2
Architect's Relationship with Subcontractors
1.1.2, 4.2.3, 4.2.4, 4.2.6, 9.6.3, 9.6.4, 11.3.7
Architect's Representations
9.4.2, 9.5.1, 9.10.1
Architect's Site Visits
3.7.4, 4.2.2, 4.2.9, 9.4.2, 9.5.1, 9.9.2, 9.10.1, 13.5
Asbestos
10.3.1
Attorneys' Fees
3.18.1, 9.10.2, 10.3.3
Award of Separate Contracts
6.1.1, 6.1.2
**Award of Subcontracts and Other Contracts for Portions of the Work**
**5.2**
**Basic Definitions**
**1.1**
Bidding Requirements
1.1.1, 5.2.1, 11.4.1
Binding Dispute Resolution
9.7, 11.3.9, 11.3.10, 13.1, 15.2.5, 15.2.6.1, 15.3.1, 15.3.2, 15.4.1
**Boiler and Machinery Insurance**
**11.3.2**
Bonds, Lien
7.3.7.4, 9.10.2, 9.10.3
**Bonds, Performance, and Payment**
7.3.7.4, 9.6.7, 9.10.3, 11.3.9, **11.4**

AIA Document A201™ – 2007, Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987, 1997 and 2007 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 08:45:01 on 06/09/2016 under Order No.7898456378_1 which expires on 04/22/2017, and is not for resale.
User Notes: (727872888)

Init.
/

3

Complaint, Exh. B

Building Permit
3.7.1
Capitalization
1.3
Certificate of Substantial Completion
9.8.3, 9.8.4, 9.8.5
Certificates for Payment
4.2.1, 4.2.5, 4.2.9, 9.3.3, 9.4, 9.5, 9.6.1, 9.6.6, 9.7,
9.10.1, 9.10.3, 14.1.1.3, 14.2.4, 15.1.3
Certificates of Inspection, Testing or Approval
13.5.4
Certificates of Insurance
9.10.2, 11.1.3
Change Orders
1.1.1, 2.4, 3.4.2, 3.7.4, 3.8.2.3, 3.11, 3.12.8, 4.2.8,
5.2.3, 7.1.2, 7.1.3, 7.2, 7.3.2, 7.3.6, 7.3.9, 7.3.10,
8.3.1, 9.3.1.1, 9.10.3, 10.3.2, 11.3.1.2, 11.3.4, 11.3.9,
12.1.2, 15.1.3
Change Orders, Definition of
7.2.1
CHANGES IN THE WORK
2.2.1, 3.11, 4.2.8, 7, 7.2.1, 7.3.1, 7.4, 8.3.1, 9.3.1.1,
11.3.9
Claims, Definition of
15.1.1
CLAIMS AND DISPUTES
3.2.4, 6.1.1, 6.3, 7.3.9, 9.3.3, 9.10.4, 10.3.3, 15, 15.4
Claims and Timely Assertion of Claims
15.4.1
Claims for Additional Cost
3.2.4, 3.7.4, 6.1.1, 7.3.9, 10.3.2, 15.1.4
Claims for Additional Time
3.2.4, 3.7.4, 6.1.1, 8.3.2, 10.3.2, 15.1.5
Concealed or Unknown Conditions, Claims for
3.7.4
Claims for Damages
3.2.4, 3.18, 6.1.1, 8.3.3, 9.5.1, 9.6.7, 10.3.3, 11.1.1,
11.3.5, 11.3.7, 14.1.3, 14.2.4, 15.1.6
Claims Subject to Arbitration
15.3.1, 15.4.1
Cleaning Up
3.15, 6.3
Commencement of the Work, Conditions Relating to
2.2.1, 3.2.2, 3.4.1, 3.7.1, 3.10.1, 3.12.6, 5.2.1, 5.2.3,
6.2.2, 8.1.2, 8.2.2, 8.3.1, 11.1, 11.3.1, 11.3.6, 11.4.1,
15.1.4
Commencement of the Work, Definition of
8.1.2
Communications Facilitating Contract
Administration
3.9.1, 4.2.4
Completion, Conditions Relating to
3.4.1, 3.11, 3.15, 4.2.2, 4.2.9, 8.2, 9.4.2, 9.8, 9.9.1,
9.10, 12.2, 13.7, 14.1.2
COMPLETION, PAYMENTS AND
9

Completion, Substantial
4.2.9, 8.1.1, 8.1.3, 8.2.3, 9.4.2, 9.8, 9.9.1, 9.10.3,
12.2, 13.7
Compliance with Laws
1.6, 3.2.3, 3.6, 3.7, 3.12.10, 3.13, 4.1.1, 9.6.4, 10.2.2,
11.1, 11.3, 13.1, 13.4, 13.5.1, 13.5.2, 13.6, 14.1.1,
14.2.1.3, 15.2.8, 15.4.2, 15.4.3
Concealed or Unknown Conditions
3.7.4, 4.2.8, 8.3.1, 10.3
Conditions of the Contract
1.1.1, 6.1.1, 6.1.4
Consent, Written
3.4.2, 3.7.4, 3.12.8, 3.14.2, 4.1.2, 9.3.2, 9.8.5, 9.9.1,
9.10.2, 9.10.3, 11.3.1, 13.2, 13.4.2, 15.4.4.2
Consolidation or Joinder
15.4.4
CONSTRUCTION BY OWNER OR BY
SEPARATE CONTRACTORS
1.1.4, 6
Construction Change Directive, Definition of
7.3.1
Construction Change Directives
1.1.1, 3.4.2, 3.12.8, 4.2.8, 7.1.1, 7.1.2, 7.1.3, 7.3,
9.3.1.1
Construction Schedules, Contractor's
3.10, 3.12.1, 3.12.2, 6.1.3, 15.1.5.2
Contingent Assignment of Subcontracts
5.4, 14.2.2.2
Continuing Contract Performance
15.1.3
Contract, Definition of
1.1.2
CONTRACT, TERMINATION OR
SUSPENSION OF THE
5.4.1.1, 11.3.9, 14
Contract Administration
3.1.3, 4, 9.4, 9.5
Contract Award and Execution, Conditions Relating
to
3.7.1, 3.10, 5.2, 6.1, 11.1.3, 11.3.6, 11.4.1
Contract Documents, Copies Furnished and Use of
1.5.2, 2.2.5, 5.3
Contract Documents, Definition of
1.1.1
Contract Sum
3.7.4, 3.8, 5.2.3, 7.2, 7.3, 7.4, 9.1, 9.4.2, 9.5.1.4,
9.6.7, 9.7, 10.3.2, 11.3.1, 14.2.4, 14.3.2, 15.1.4,
15.2.5
Contract Sum, Definition of
9.1
Contract Time
3.7.4, 3.7.5, 3.10.2, 5.2.3, 7.2.1.3, 7.3.1, 7.3.5, 7.4,
8.1.1, 8.2.1, 8.3.1, 9.5.1, 9.7, 10.3.2, 12.1.1, 14.3.2,
15.1.5.1, 15.2.5
Contract Time, Definition of
8.1.1

AIA Document A201™ – 2007. Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987, 1997 and 2007 by The American
Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized
reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to
the maximum extent possible under the law. This document was produced by AIA software at 08:45:01 on 06/06/2016 under Order No.7896458375_1 which
expires on 04/22/2017, and is not for resale.
User Notes:                                                                                                    (727872888)

4

Complaint, Exh. B

**CONTRACTOR**
3
Contractor, Definition of
3.1, 6.1.2
Contractor's Construction Schedules
3.10, 3.12.1, 3.12.2, 6.1.3, 15.1.5.2
Contractor's Employees
3.3.2, 3.4.3, 3.8.1, 3.9, 3.18.2, 4.2.3, 4.2.6, 10.2, 10.3,
11.1.1, 11.3.7, 14.1, 14.2.1.1
Contractor's Liability Insurance
11.1
Contractor's Relationship with Separate Contractors
and Owner's Forces
3.12.5, 3.14.2, 4.2.4, 6, 11.3.7, 12.1.2, 12.2.4
Contractor's Relationship with Subcontractors
1.2.2, 3.3.2, 3.18.1, 3.18.2, 5, 9.6.2, 9.6.7, 9.10.2,
11.3.1.2, 11.3.7, 11.3.8
Contractor's Relationship with the Architect
1.1.2, 1.5, 3.1.3, 3.2.2, 3.2.3, 3.2.4, 3.3.1, 3.4.2, 3.5,
3.7.4, 3.10, 3.11, 3.12, 3.16, 3.18, 4.1.3, 4.2, 5.2,
6.2.2, 7, 8.3.1, 9.2, 9.3, 9.4, 9.5, 9.7, 9.8, 9.9, 10.2.6,
10.3, 11.3.7, 12, 13.5, 15.1.2, 15.2.1
Contractor's Representations
3.2.1, 3.2.2, 3.5, 3.12.6, 6.2.2, 8.2.1, 9.3.3, 9.8.2
Contractor's Responsibility for Those Performing the
Work
3.3.2, 3.18, 5.3, 6.1.3, 6.2, 9.5.1, 10.2.8
Contractor's Review of Contract Documents
3.2
Contractor's Right to Stop the Work
9.7
Contractor's Right to Terminate the Contract
14.1, 15.1.6
Contractor's Submittals
3.10, 3.11, 3.12.4, 4.2.7, 5.2.1, 5.2.3, 9.2, 9.3, 9.8.2,
9.8.3, 9.9.1, 9.10.2, 9.10.3, 11.1.3, 11.4.2
Contractor's Superintendent
3.9, 10.2.6
Contractor's Supervision and Construction
Procedures
1.2.2, 3.3, 3.4, 3.12.10, 4.2.2, 4.2.7, 6.1.3, 6.2.4,
7.1.3, 7.3.5, 7.3.7, 8.2, 8.10, 12, 14, 15.1.3
Contractual Liability Insurance
11.1.1.8, 11.2
Coordination and Correlation
1.2, 3.2.1, 3.3.1, 3.10, 3.12.6, 6.1.3, 6.2.1
Copies Furnished of Drawings and Specifications
1.5, 2.2.5, 3.11
Copyrights
1.5, 3.17
Correction of Work
2.3, 2.4, 3.7.3, 9.4.2, 9.8.2, 9.8.3, 9.9.1, 12.1.2, 12.2
Correlation and Intent of the Contract Documents
1.2
Cost, Definition of
7.3.7

Costs
2.4, 3.2.4, 3.7.3, 3.8.2, 3.15.2, 5.4.2, 6.1.1, 6.2.3,
7.3.3.3, 7.3.7, 7.3.8, 7.3.9, 9.10.2, 10.3.2, 10.3.6,
11.3, 12.1.2, 12.2.1, 12.2.4, 13.5, 14
Cutting and Patching
3.14, 6.2.5
Damage to Construction of Owner or Separate
Contractors
3.14.2, 6.2.4, 10.2.1.2, 10.2.5, 10.4, 11.1.1, 11.3,
12.2.4
Damage to the Work
3.14.2, 9.9.1, 10.2.1.2, 10.2.5, 10.4, 11.3.1, 12.2.4
Damages, Claims for
3.2.4, 3.18, 6.1.1, 8.3.3, 9.5.1, 9.6.7, 10.3.3, 11.1.1,
11.3.5, 11.3.7, 14.1.3, 14.2.4, 15.1.6
Damages for Delay
6.1.1, 8.3.3, 9.5.1.6, 9.7, 10.3.2
Date of Commencement of the Work, Definition of
8.1.2
Date of Substantial Completion, Definition of
8.1.3
Day, Definition of
8.1.4
Decisions of the Architect
3.7.4, 4.2.6, 4.2.7, 4.2.11, 4.2.12, 4.2.13, 15.2, 6.3,
7.3.7, 7.3.9, 8.1.3, 8.3.1, 9.2, 9.4, 9.5.1, 9.8.4, 9.9.1,
13.5.2, 14.2.2, 14.2.4, 15.1, 15.2
Decisions to Withhold Certification
9.4.1, 9.5, 9.7, 14.1.1.3
Defective or Nonconforming Work, Acceptance,
Rejection and Correction of
2.3, 2.4, 3.5, 4.2.6, 6.2.5, 9.5.1, 9.5.2, 9.6.6, 9.8.2,
9.9.3, 9.10.4, 12.2.1
Definitions
1.1, 2.1.1, 3.1.1, 3.5, 3.12.1, 3.12.2, 3.12.3, 4.1.1,
15.1.1, 5.1, 6.1.2, 7.2.1, 7.3.1, 8.1, 9.1, 9.8.1
Delays and Extensions of Time
3.2, 3.7.4, 5.2.3, 7.2.1, 7.3.1, 7.4, 8.3, 9.5.1, 9.7,
10.3.2, 10.4, 14.3.2, 15.1.5, 15.2.5
Disputes
6.3, 7.3.9, 15.1, 15.2
Documents and Samples at the Site
3.11
Drawings, Definition of
1.1.5
Drawings and Specifications, Use and Ownership of
3.11
Effective Date of Insurance
8.2.2, 11.1.2
Emergencies
10.4, 14.1.1.2, 15.1.4
Employees, Contractor's
3.3.2, 3.4.3, 3.8.1, 3.9, 3.18.2, 4.2.3, 4.2.6, 10.2,
10.3.3, 11.1.1, 11.3.7, 14.1, 14.2.1.1

AIA Document A201™ – 2007. Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987, 1997 and 2007 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 08:45:01 on 06/06/2016 under Order No.7898458378_1 which expires on 04/22/2017, and is not for resale.
User Notes:                                                                                              (727872868)

Init.

/

5

Equipment, Labor, Materials or
1.1.3, 1.1.6, 3.4, 3.5, 3.8.2, 3.8.3, 3.12, 3.13, 3.15.1,
4.2.6, 4.2.7, 5.2.1, 6.2.1, 7.3.7, 9.3.2, 9.3.3, 9.5.1.3,
9.10.2, 10.2.1, 10.2.4, 14.2.1.1, 14.2.1.2
Execution and Progress of the Work
1.1.3, 1.2.1, 1.2.2, 2.2.3, 2.2.5, 3.1, 3.3.1, 3.4.1, 3.5,
3.7.1, 3.10.1, 3.12, 3.14, 4.2, 6.2.2, 7.1.3, 7.3.5, 8.2,
9.5.1, 9.9.1, 10.2, 10.3, 12.2, 14.2, 14.3.1, 15.1.3
Extensions of Time
3.2.4, 3.7.4, 5.2.3, 7.2.1, 7.3, 7.4, 9.5.1, 9.7, 10.3.2,
10.4, 14.3, 15.1.5, 15.2.5
Failure of Payment
9.5.1.3, 9.7, 9.10.2, 13.6, 14.1.1.3, 14.2.1.2
Faulty Work
(See Defective or Nonconforming Work)
Final Completion and Final Payment
4.2.1, 4.2.9, 9.8.2, 9.10, 11.1.2, 11.1.3, 11.3.1, 11.3.5,
12.3, 14.2.4, 14.4.3
Financial Arrangements, Owner's
2.2.1, 13.2.2, 14.1.1.4
Fire and Extended Coverage Insurance
11.3.1.1
GENERAL PROVISIONS
1
Governing Law
13.1
Guarantees (See Warranty)
Hazardous Materials
10.2.4, 10.3
Identification of Subcontractors and Suppliers
5.2.1
Indemnification
3.17, 3.18, 9.10.2, 10.3.3, 10.3.5, 10.3.6, 11.3.1.2,
11.3.7
Information and Services Required of the Owner
2.1.2, 2.2, 3.2.2, 3.12.4, 3.12.10, 6.1.3, 6.1.4, 6.2.5,
9.6.1, 9.6.4, 9.9.2, 9.10.3, 10.3.3, 11.2, 11.4, 13.5.1,
13.5.2, 14.1.1.4, 14.1.4, 15.1.3
Initial Decision
15.2
Initial Decision Maker, Definition of
1.1.8
Initial Decision Maker, Decisions
14.2.2, 14.2.4, 15.2.1, 15.2.2, 15.2.3, 15.2.4, 15.2.5
Initial Decision Maker, Extent of Authority
14.2.2, 14.2.4, 15.1.3, 15.2.1, 15.2.2, 15.2.3, 15.2.4,
15.2.5
Injury or Damage to Person or Property
10.2.8, 10.4
Inspections
3.1.3, 3.3.3, 3.7.1, 4.2.2, 4.2.6, 4.2.9, 9.4.2, 9.8.3,
9.9.2, 9.10.1, 12.2.1, 13.5
Instructions to Bidders
1.1.1
Instructions to the Contractor
3.2.4, 3.3.1, 3.8.1, 5.2.1, 7, 8.2.2, 12, 13.5.2

Instruments of Service, Definition of
1.1.7
Insurance
3.18.1, 6.1.1, 7.3.7, 9.3.2, 9.8.4, 9.9.1, 9.10.2, 11
Insurance, Boiler and Machinery
11.3.2
Insurance, Contractor's Liability
11.1
Insurance, Effective Date of
8.2.2, 11.1.2
Insurance, Loss of Use
11.3.3
Insurance, Owner's Liability
11.2
Insurance, Property
10.2.5, 11.3
Insurance, Stored Materials
9.3.2
INSURANCE AND BONDS
11
Insurance Companies, Consent to Partial Occupancy
9.9.1
Intent of the Contract Documents
1.2.1, 4.2.7, 4.2.12, 4.2.13, 7.4
Interest
13.6
Interpretation
1.2.3, 1.4, 4.1.1, 5.1, 6.1.2, 15.1.1
Interpretations, Written
4.2.11, 4.2.12, 15.1.4
Judgment on Final Award
15.4.2
Labor and Materials, Equipment
1.1.3, 1.1.6, 3.4, 3.5, 3.8.2, 3.8.3, 3.12, 3.13, 3.15.1,
4.2.6, 4.2.7, 5.2.1, 6.2.1, 7.3.7, 9.3.2, 9.3.3, 9.5.1.3,
9.10.2, 10.2.1, 10.2.4, 14.2.1.1, 14.2.1.2
Labor Disputes
8.3.1
Laws and Regulations
1.5, 3.2.3, 3.6, 3.7, 3.12.10, 3.13, 4.1.1, 9.6.4, 9.9.1,
10.2.2, 11.1.1, 11.3, 13.1, 13.4, 13.5.1, 13.5.2, 13.6,
14, 15.2.8, 15.4
Liens
2.1.2, 9.3.3, 9.10.2, 9.10.4, 15.2.8
Limitations, Statutes of
12.2.5, 13.7, 15.4.1.1
Limitations of Liability
2.3, 3.2.2, 3.5, 3.12.10, 3.17, 3.18.1, 4.2.6, 4.2.7,
4.2.12, 6.2.2, 9.4.2, 9.6.4, 9.6.7, 10.2.5, 10.3.3,
11.1.2, 11.2, 11.3.7, 12.2.5, 13.4.2
Limitations of Time
2.1.2, 2.2, 2.4, 3.2.2, 3.10, 3.11, 3.12.5, 3.15.1, 4.2.7,
5.2, 5.3, 5.4.1, 6.2.4, 7.3, 7.4, 8.2, 9.2, 9.3.1, 9.3.3,
9.4.1, 9.5, 9.6, 9.7, 9.8, 9.9, 9.10, 11.1.3, 11.3.1.5,
11.3.6, 11.3.10, 12.2, 13.5, 13.7, 14, 15
Loss of Use Insurance
11.3.3

AIA Document A201™ – 2007. Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987, 1997 and 2007 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 08:45:01 on 06/08/2016 under Order No.7898458378_1 which expires on 04/22/2017, and is not for resale.
User Notes:                                                                                                                      (727872888)

Init.

/

6

Complaint, Exh. B

Material Suppliers
1.5, 3.12.1, 4.2.4, 4.2.6, 5.2.1, 9.3, 9.4.2, 9.6, 9.10.5
Materials, Hazardous
10.2.4, 10.3
Materials, Labor, Equipment and
1.1.3, 1.1.6, 1.5.1, 3.4.1, 3.5, 3.8.2, 3.8.3, 3.12, 3.13,
3.15.1, 4.2.6, 4.2.7, 5.2.1, 6.2.1, 7.3.7, 9.3.2, 9.3.3,
9.5.1.3, 9.10.2, 10.2.1.2, 10.2.4, 14.2.1.1, 14.2.1.2
Means, Methods, Techniques, Sequences and
Procedures of Construction
3.3.1, 3.12.10, 4.2.2, 4.2.7, 9.4.2
Mechanic's Lien
2.1.2, 15.2.8
Mediation
8.3.1, 10.3.5, 10.3.6, 15.2.1, 15.2.5, 15.2.6, 15.3,
15.4.1
Minor Changes in the Work
1.1.1, 3.12.8, 4.2.8, 7.1, 7.4
MISCELLANEOUS PROVISIONS
13
Modifications, Definition of
1.1.1
Modifications to the Contract
1.1.1, 1.1.2, 3.11, 4.1.2, 4.2.1, 5.2.3, 7, 8.3.1, 9.7,
10.3.2, 11.3.1
Mutual Responsibility
6.2
Nonconforming Work, Acceptance of
9.6.6, 9.9.3, 12.3
Nonconforming Work, Rejection and Correction of
2.3, 2.4, 3.5, 4.2.6, 6.2.4, 9.5.1, 9.8.2, 9.9.3, 9.10.4,
12.2.1
Notice
2.2.1, 2.3, 2.4, 3.2.4, 3.3.1, 3.7.2, 3.12.9, 5.2.1, 9.7,
9.10, 10.2.2, 11.1.3, 12.2.2.1, 13.3, 13.5.1, 13.5.2,
14.1, 14.2, 15.2.8, 15.4.1
Notice, Written
2.3, 2.4, 3.3.1, 3.9.2, 3.12.9, 3.12.10, 5.2.1, 9.7, 9.10,
10.2.2, 10.3, 11.1.3, 11.3.6, 12.2.2.1, 13.3, 14, 15.2.8,
15.4.1
Notice of Claims
3.7.4, 10.2.8, 15.1.2, 15.4
Notice of Testing and Inspections
13.5.1, 13.5.2
Observations, Contractor's
3.2, 3.7.4
Occupancy
2.2.2, 9.6.6, 9.8, 11.3.1.5
Orders, Written
1.1.1, 2.3, 3.9.2, 7, 8.2.2, 11.3.9, 12.1, 12.2.2.1,
13.5.2, 14.3.1
OWNER
2
Owner, Definition of
2.1.1

Owner, Information and Services Required of the
2.1.2, 2.2, 3.2.2, 3.12.10, 6.1.3, 6.1.4, 6.2.5, 9.3.2,
9.6.1, 9.6.4, 9.9.2, 9.10.3, 10.3.3, 11.2, 11.3, 13.5.1,
13.5.2, 14.1.1.4, 14.1.4, 15.1.3
Owner's Authority
1.5, 2.1.1, 2.3, 2.4, 3.4.2, 3.8.1, 3.12.10, 3.14.2, 4.1.2,
4.1.3, 4.2.4, 4.2.9, 5.2.1, 5.2.4, 5.4.1, 6.1, 6.3, 7.2.1,
7.3.1, 8.2.2, 8.3.1, 9.3.1, 9.3.2, 9.5.1, 9.6.4, 9.9.1,
9.10.2, 10.3.2, 11.1.3, 11.3.3, 11.3.10, 12.2.2, 12.3,
13.2.2, 14.3, 14.4, 15.2.7
Owner's Financial Capability
2.2.1, 13.2.2, 14.1.1.4
Owner's Liability Insurance
11.2
Owner's Relationship with Subcontractors
1.1.2, 5.2, 5.3, 5.4, 9.6.4, 9.10.2, 14.2.2
Owner's Right to Carry Out the Work
2.4, 14.2.2
Owner's Right to Clean Up
6.3
Owner's Right to Perform Construction and to
Award Separate Contracts
6.1
Owner's Right to Stop the Work
2.3
Owner's Right to Suspend the Work
14.3
Owner's Right to Terminate the Contract
14.2
Ownership and Use of Drawings, Specifications
and Other Instruments of Service
1.1.1, 1.1.6, 1.1.7, 1.5, 2.2.5, 3.2.2, 3.11, 3.17, 4.2.12,
5.3
Partial Occupancy or Use
9.6.6, 9.9, 11.3.1.5
Patching, Cutting and
3.14, 6.2.5
Patents
3.17
Payment, Applications for
4.2.5, 7.3.9, 9.2, 9.3, 9.4, 9.5, 9.6.3, 9.7, 9.8.5, 9.10.1,
14.2.3, 14.2.4, 14.4.3
Payment, Certificates for
4.2.5, 4.2.9, 9.3.3, 9.4, 9.5, 9.6.1, 9.6.6, 9.7, 9.10.1,
9.10.3, 13.7, 14.1.1.3, 14.2.4
Payment, Failure of
9.5.1.3, 9.7, 9.10.2, 13.6, 14.1.1.3, 14.2.1.2
Payment, Final
4.2.1, 4.2.9, 9.8.2, 9.10, 11.1.2, 11.1.3, 11.4.1, 12.3,
13.7, 14.2.4, 14.4.3
Payment Bond, Performance Bond and
7.3.7.4, 9.6.7, 9.10.3, 11.4
Payments, Progress
9.3, 9.6, 9.8.5, 9.10.3, 13.6, 14.2.3, 15.1.3
PAYMENTS AND COMPLETION
9

AIA Document A201™ – 2007. Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987, 1997 and 2007 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 08:45:01 on 06/06/2016 under Order No.7898458378_1 which expires on 04/22/2017, and is not for resale.
User Notes:                                                                                      (727672668)

Init.

/

7

Payments to Subcontractors
5.4.2, 9.5.1.3, 9.6.2, 9.6.3, 9.6.4, 9.6.7, 14.2.1.2
PCB
10.3.1
Performance Bond and Payment Bond
7.3.7.4, 9.6.7, 9.10.3, 11.4
Permits, Fees, Notices and Compliance with Laws
2.2.2, 3.7, 3.13, 7.3.7.4, 10.2.2
PERSONS AND PROPERTY, PROTECTION
OF
10
Polychlorinated Biphenyl
10.3.1
Product Data, Definition of
3.12.2
Product Data and Samples, Shop Drawings
3.11, 3.12, 4.2.7
Progress and Completion
4.2.2, 8.2, 9.8, 9.9.1, 14.1.4, 15.1.3
Progress Payments
9.3, 9.6, 9.8.5, 9.10.3, 13.6, 14.2.3, 15.1.3
Project, Definition of
1.1.4
Project Representatives
4.2.10
Property Insurance
10.2.5, 11.3
PROTECTION OF PERSONS AND PROPERTY
10
Regulations and Laws
1.5, 3.2.3, 3.6, 3.7, 3.12.10, 3.13, 4.1.1, 9.6.4, 9.9.1,
10.2.2, 11.1, 11.4, 13.1, 13.4, 13.5.1, 13.5.2, 13.6, 14,
15.2.8, 15.4
Rejection of Work
3.5, 4.2.6, 12.2.1
Releases and Waivers of Liens
9.10.2
Representations
3.2.1, 3.5, 3.12.6, 6.2.2, 8.2.1, 9.3.3, 9.4.2, 9.5.1,
9.8.2, 9.10.1
Representatives
2.1.1, 3.1.1, 3.9, 4.1.1, 4.2.1, 4.2.2, 4.2.10, 5.1.1,
5.1.2, 13.2.1
Responsibility for Those Performing the Work
3.3.2, 3.18, 4.2.3, 5.3, 6.1.3, 6.2, 6.3, 9.5.1, 10
Retainage
9.3.1, 9.6.2, 9.8.5, 9.9.1, 9.10.2, 9.10.3
Review of Contract Documents and Field
Conditions by Contractor
3.2, 3.12.7, 6.1.3
Review of Contractor's Submittals by Owner and
Architect
3.10.1, 3.10.2, 3.11, 3.12, 4.2, 5.2, 6.1.3, 9.2, 9.8.2
Review of Shop Drawings, Product Data and
Samples by Contractor
3.12

Rights and Remedies
1.1.2, 2.3, 2.4, 3.5, 3.7.4, 3.15.2, 4.2.6, 5.3, 5.4, 6.1,
6.3, 7.3.1, 8.3, 9.5.1, 9.7, 10.2.5, 10.3, 12.2.2, 12.2.4,
13.4, 14, 15.4
Royalties, Patents and Copyrights
3.17
Rules and Notices for Arbitration
15.4.1
Safety of Persons and Property
10.2, 10.4
Safety Precautions and Programs
3.3.1, 4.2.2, 4.2.7, 5.3, 10.1, 10.2, 10.4
Samples, Definition of
3.12.3
Samples, Shop Drawings, Product Data and
3.11, 3.12, 4.2.7
Samples at the Site, Documents and
3.11
Schedule of Values
9.2, 9.3.1
Schedules, Construction
3.10, 3.12.1, 3.12.2, 6.1.3, 15.1.5.2
Separate Contracts and Contractors
1.1.4, 3.12.5, 3.14.2, 4.2.4, 4.2.7, 6, 8.3.1, 12.1.2
Shop Drawings, Definition of
3.12.1
Shop Drawings, Product Data and Samples
3.11, 3.12, 4.2.7
Site, Use of
3.13, 6.1.1, 6.2.1
Site Inspections
3.2.2, 3.3.3, 3.7.1, 3.7.4, 4.2, 9.4.2, 9.10.1, 13.5
Site Visits, Architect's
3.7.4, 4.2.2, 4.2.9, 9.4.2, 9.5.1, 9.9.2, 9.10.1, 13.5
Special Inspections and Testing
4.2.6, 12.2.1, 13.5
Specifications, Definition of
1.1.6
Specifications
1.1.1, 1.1.6, 1.2.2, 1.5, 3.11, 3.12.10, 3.17, 4.2.14
Statute of Limitations
13.7, 15.4.1.1
Stopping the Work
2.3, 9.7, 10.3, 14.1
Stored Materials
6.2.1, 9.3.2, 10.2.1.2, 10.2.4
Subcontractor, Definition of
5.1.1
SUBCONTRACTORS
5
Subcontractors, Work by
1.2.2, 3.3.2, 3.12.1, 4.2.3, 5.2.3, 5.3, 5.4, 9.3.1.2,
9.6.7
Subcontractual Relations
5.3, 5.4, 9.3.1.2, 9.6, 9.10, 10.2.1, 14.1, 14.2.1

AIA Document A201™ – 2007. Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987, 1997 and 2007 by The American
Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized
reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to
the maximum extent possible under the law. This document was produced by AIA software at 06:45:01 on 06/08/2016 under Order No.7898458378_1 which
expires on 04/22/2017, and is not for resale.
User Notes:                                                                                                    (727872688)

Init.

/

8

Submittals
3.10, 3.11, 3.12, 4.2.7, 5.2.1, 5.2.3, 7.3.7, 9.2, 9.3, 9.8, 9.9.1, 9.10.2, 9.10.3, 11.1.3
Submittal Schedule
3.10.2, 3.12.5, 4.2.7
Subrogation, Waivers of
6.1.1, 11.3.7
Substantial Completion
4.2.9, 8.1.1, 8.1.3, 8.2.3, 9.4.2, 9.8, 9.9.1, 9.10.3, 12.2, 13.7
Substantial Completion, Definition of
9.8.1
Substitution of Subcontractors
5.2.3, 5.2.4
Substitution of Architect
4.1.3
Substitutions of Materials
3.4.2, 3.5, 7.3.8
Sub-subcontractor, Definition of
5.1.2
Subsurface Conditions
3.7.4
Successors and Assigns
13.2
Superintendent
3.9, 10.2.6
Supervision and Construction Procedures
1.2.2, 3.3, 3.4, 3.12.10, 4.2.2, 4.2.7, 6.1.3, 6.2.4, 7.1.3, 7.3.7, 8.2, 8.3.1, 9.4.2, 10, 12, 14, 15.1.3
Surety
5.4.1.2, 9.8.5, 9.10.2, 9.10.3, 14.2.2, 15.2.7
Surety, Consent of
9.10.2, 9.10.3
Surveys
2.2.3
Suspension by the Owner for Convenience
14.3
Suspension of the Work
5.4.2, 14.3
Suspension or Termination of the Contract
5.4.1.1, 14
Taxes
3.6, 3.8.2.1, 7.3.7.4
Termination by the Contractor
14.1, 15.1.6
Termination by the Owner for Cause
5.4.1.1, 14.2, 15.1.6
Termination by the Owner for Convenience
14.4
Termination of the Architect
4.1.3
Termination of the Contractor
14.2.2
TERMINATION OR SUSPENSION OF THE CONTRACT
14

Tests and Inspections
3.1.3, 3.3.3, 4.2.2, 4.2.6, 4.2.9, 9.4.2, 9.8.3, 9.9.2, 9.10.1, 10.3.2, 11.4.1, 12.2.1, 13.5
TIME
8
Time, Delays and Extensions of
3.2.4, 3.7.4, 5.2.3, 7.2.1, 7.3.1, 7.4, 8.3, 9.5.1, 9.7, 10.3.2, 10.4, 14.3.2, 15.1.5, 15.2.5
Time Limits
2.1.2, 2.2, 2.4, 3.2.2, 3.10, 3.11, 3.12.5, 3.15.1, 4.2, 5.2, 5.3, 5.4, 6.2.4, 7.3, 7.4, 8.2, 9.2, 9.3.1, 9.3.3, 9.4.1, 9.5, 9.6, 9.7, 9.8, 9.9, 9.10, 11.1.3, 12.2, 13.5, 13.7, 14, 15.1.2, 15.4
Time Limits on Claims
3.7.4, 10.2.8, 13.7, 15.1.2
Title to Work
9.3.2, 9.3.3
Transmission of Data in Digital Form
1.6
UNCOVERING AND CORRECTION OF WORK
12
Uncovering of Work
12.1
Unforeseen Conditions, Concealed or Unknown
3.7.4, 8.3.1, 10.3
Unit Prices
7.3.3.2, 7.3.4
Use of Documents
1.1.1, 1.5, 2.2.5, 3.12.6, 5.3
Use of Site
3.13, 6.1.1, 6.2.1
Values, Schedule of
9.2, 9.3.1
Waiver of Claims by the Architect
13.4.2
Waiver of Claims by the Contractor
9.10.5, 13.4.2, 15.1.6
Waiver of Claims by the Owner
9.9.3, 9.10.3, 9.10.4, 12.2.2.1, 13.4.2, 14.2.4, 15.1.6
Waiver of Consequential Damages
14.2.4, 15.1.6
Waiver of Liens
9.10.2, 9.10.4
Waivers of Subrogation
6.1.1, 11.3.7
Warranty
3.5, 4.2.9, 9.3.3, 9.8.4, 9.9.1, 9.10.4, 12.2.2, 13.7
Weather Delays
15.1.5.2
Work, Definition of
1.1.3
Written Consent
1.5.2, 3.4.2, 3.7.4, 3.12.8, 3.14.2, 4.1.2, 9.3.2, 9.8.5, 9.9.1, 9.10.2, 9.10.3, 11.4.1, 13.2, 13.4.2, 15.4.4.2
Written Interpretations
4.2.11, 4.2.12

Init.

/

AIA Document A201™ – 2007. Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987, 1997 and 2007 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 08:45:01 on 06/06/2016 under Order No.7898458378_1 which expires on 04/22/2017, and is not for resale.
User Notes:                                                                                                                           (727872888)

9

Complaint, Exh. B

Written Notice
2.3, 2.4, 3.3.1, 3.9, 3.12.9, 3.12.10, 5.2.1, 8.2.2, 9.7, 9.10, 10.2.2, 10.3, 11.1.3, 12.2.2, 12.2.4, 13.3, 14, 15.4.1

Written Orders
1.1.1, 2.3, 3.9, 7, 8.2.2, 12.1, 12.2, 13.5.2, 14.3.1, 15.1.2

**Init.**

**/**

AIA Document A201™ – 2007. Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987, 1997 and 2007 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 08:45:01 on 06/06/2016 under Order No.7898468378_1 which expires on 04/22/2017, and is not for resale.
User Notes:                                                                    (727872868)

**10**

## ARTICLE 1   GENERAL PROVISIONS
### § 1.1 BASIC DEFINITIONS
#### § 1.1.1 THE CONTRACT DOCUMENTS
The Contract Documents consist of the Agreement between Owner and Contractor (hereinafter the Agreement), Conditions of the Contract (General, Supplementary and other Conditions), Drawings, Specifications, Qualifications and Clarifications, Addenda issued prior to execution of the Contract, other documents listed in the Agreement and Modifications issued in writing after execution of the Contract. A Modification is (1) a written amendment to the Contract signed by both parties, (2) a Change Order, (3) a Construction Change Directive or (4) a written order for a minor change in the Work issued by the Architect. Unless specifically enumerated in the Agreement, the Contract Documents do not include other documents such as bidding requirements (advertisement or invitation to bid, Instructions to Bidders, sample forms, the Contractor's bid or portions of Addenda relating to bidding requirements.

#### § 1.1.2 THE CONTRACT
The Contract Documents form the Contract for Construction. The Contract represents the entire and integrated agreement between the parties hereto and supersedes prior negotiations, representations or agreements, either written or oral. The Contract may be amended or modified only by a written Modification. The Contract Documents shall not be construed to create a contractual relationship of any kind (1) between the Architect and Contractor, (2) between the Owner and a Subcontractor or Sub-subcontractor, (3) between the Owner and Architect or (4) between any persons or entities other than the Owner and Contractor. The Architect shall, however, be entitled to performance and enforcement of obligations under the Contract intended to facilitate performance of the Architect's duties.

#### § 1.1.3 THE WORK
The term "Work" means the construction and services required by the Contract Documents, whether completed or partially completed, and includes all other labor, materials, equipment and services provided or to be provided by the Contractor to fulfill the Contractor's obligations. The Work may constitute the whole or a part of the Project. Contractor acknowledges and agrees that the Contract Documents are adequate and sufficient to provide for the commencement of the Work, and include all Work, whether or not shown or described, which reasonably may be inferred to be required or useful for the completion of the Work in accordance with all applicable laws, codes, and professional standards. Contractor also acknowledges that it has included in the Contract Sum sufficient money to compensate Contractor for any impacts or delays encountered during performance of the Work as a result of the activities or lack of activity of other Contractors on the site under separate contract with the Owner, and Contractor warrants that it waives any and all claims against Owner arising from the timeliness of the Work of those contractors, and any coordination between Contractor's work and the work of such contractors.

#### § 1.1.4 THE PROJECT
The Project is the total construction of which the Work performed under the Contract Documents may be the whole or a part and which may include construction by the Owner or by separate contractors.

#### § 1.1.5 THE DRAWINGS
The Drawings are the graphic and pictorial portions of the Contract Documents showing the design, location and dimensions of the Work, generally including plans, elevations, sections, details, schedules and diagrams.

#### § 1.1.6 THE SPECIFICATIONS
The Specifications are that portion of the Contract Documents consisting of the written requirements for materials, equipment, systems, standards and workmanship for the Work, and performance of related services.

#### § 1.1.7 INSTRUMENTS OF SERVICE
Instruments of Service are representations, in any medium of expression now known or later developed, of the tangible and intangible creative work performed by the Architect and the Architect's consultants under their respective professional services agreements. Instruments of Service may include, without limitation, studies, surveys, models, sketches, drawings, specifications, and other similar materials.

*(Paragraphs deleted)*

Init.

AIA Document A201™ – 2007. Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987, 1997 and 2007 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 08:45:01 on 06/06/2016 under Order No.7898456378_1 which expires on 04/22/2017, and is not for resale.
User Notes:                                                                                         (727872888)

11

§ 1.2 CORRELATION AND INTENT OF THE CONTRACT DOCUMENTS
§ 1.2.1 The intent of the Contract Documents is to include all items necessary for the proper execution and completion of the Work by the Contractor. Contractor acknowledges that it has carefully reviewed the Contract Documents and that they appear to be complete and consistent, and are sufficient to permit Contractor to establish the Contract Sum, the Project Schedule, and to prepare any required shop drawings.  The Contract Documents are complementary, and what is required by one shall be as binding as if required by all; performance by the Contractor shall be required only to the extent consistent with the Contract Documents and reasonably inferable from them as being necessary to produce the indicated results.

§ 1.2.2 Organization of the Specifications into divisions, sections and articles, and arrangement of Drawings shall not control the Contractor in dividing the Work among Subcontractors or in establishing the extent of Work to be performed by any trade.

§ 1.2.3 Unless otherwise stated in the Contract Documents, words which have well-known technical or construction industry meanings are used in the Contract Documents in accordance with such recognized meanings.

§ 1.2.4   Conflicts or discrepancies among the Contract Documents shall be resolved in the following order of priority:

1.  AIA A101 (2007) Agreement (as amended);

2.  Amendments and revisions of later date take precedence over those of earlier dates;

3.  The A201 General Conditions, as amended;
4.  Drawings and Specifications; Drawings govern Specifications for quantity and location, and Specifications govern Drawings for quality and performance.   In the event of ambiguity in quantity or quality, the greater quantity and the better quality shall govern; and

5.  Figure dimensions govern scale dimensions and large scale Drawings govern small scale Drawings.

§ 1.3 CAPITALIZATION
§ 1.3.1 Terms capitalized in these General Conditions include those which are (1) specifically defined, (2) the titles of numbered articles or (3) the titles of other documents published by the American Institute of Architects.

§ 1.4 INTERPRETATION
§ 1.4.1 In the interest of brevity the Contract Documents frequently omit modifying words such as "all" and "any" and articles such as "the" and "an," but the fact that a modifier or an article is absent from one statement and appears in another is not intended to affect the interpretation of either statement.

§ 1.5 EXECUTION OF CONTRACT DOCUMENTS
§ 1.5.1 The Architect and the Architect's consultants shall be deemed the authors and owners of their respective Instruments of Service, including the Drawings and Specifications, and will retain all common law, statutory and other reserved rights, including copyrights. The Contractor, Subcontractors, Sub-subcontractors, and material or equipment suppliers shall not own or claim a copyright in the Instruments of Service. Submittal or distribution to meet official regulatory requirements or for other purposes in connection with this Project is not to be construed as publication in derogation of the Architect's or Architect's consultants' reserved rights.

§ 1.5.2 The Contractor warrants and represents that, prior to the commencement of the Work, it shall:   make an inspection of the site, including but not limited to the physical condition of the site, all structures, all conditions and structures on adjoining properties, the nature and location of the general area, including weather and labor availability; make an inspection of site utilities and utility connection and only subsoil reports available from Owner. The Contractor shall report any discovered conditions to the Owner.  The Owner shall have no responsibility or liability for the physical condition or safety of the Project site or any improvements located on the Project site.  The Contractor shall be solely responsible for providing safe conditions for the performance of the Work.

Init.

/

AIA Document A201™ – 2007. Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987, 1997 and 2007 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 09:45:15 on 08/07/2016 under Order No.7898458376_1 which expires on 04/22/2017, and is not for resale.
User Notes:                                                                                                                    (1649700461)

Complaint, Exh. B

**§ 1.6 OWNERSHIP AND USE OF DRAWINGS, SPECIFICATIONS AND OTHER INSTRUMENTS OF SERVICE**
§ 1.6.1 All Drawings, Specifications and other documents prepared by the Architect are and shall remain the property of the Owner, and Owner shall retain all common law, statutory and other reserved rights with respect thereto. They shall not be used on any other project without the prior written consent of the Owner, and Contractor shall take such action as may be necessary to prevent their use on any other project or for additions to the Project outside the scope of the Work by any Subcontractor, Sub-subcontractor or material or equipment supplier. The Contractor, Subcontractor, Sub-subcontractors and material and equipment suppliers are granted a limited license to use and reproduce applicable portions of the Drawings, Specifications and other documents prepared by the Architect appropriate to and for use in the execution of their Work under the Contract Documents. All copies made under this license shall bear the statutory copyright notice, if any, shown on the Drawings, Specifications and other documents prepared by the Architect. Submittals or distributions necessary to meet official regulatory requirements or for other purposes relating to completion of the Project are not to be construed as a publication in derogation of the Owner's copyright or other reserved rights.

**ARTICLE 2   OWNER**
**§ 2.1 GENERAL**
§ 2.1.1 The Owner is the person or entity identified as such in the Agreement and is referred to throughout the Contract Documents as if singular in number. The Owner shall designate in writing a representative who shall have express authority to bind the Owner with respect to all matters requiring the Owner's approval or authorization. Except as otherwise provided in Section 4.2.1, the Architect does not have such authority. The term "Owner" means the Owner or the Owner's authorized representative.

§ 2.1.2 The Owner shall furnish to the Contractor within fifteen days after receipt of a written request, information necessary and relevant for the Contractor to evaluate, give notice of or enforce mechanic's lien rights. Such information shall include a correct statement of the record legal title to the property on which the Project is located, usually referred to as the site, and the Owner's interest therein.

**§ 2.2 INFORMATION AND SERVICES REQUIRED OF THE OWNER**
§ 2.2.1 The Owner shall, at the written request of the Contractor, prior to commencement of the Work, furnish to the Contractor reasonable evidence that financial arrangements have been made to fulfill the Owner's obligations under the Contract. Furnishing of such evidence shall be a condition precedent to commencement of the Work. After such evidence has been furnished, the Owner shall not materially vary such financial arrangements without prior notice to the Contractor.

§ 2.2.2 Except for permits and fees, including those required under Section 3.7.1, which are the responsibility of the Contractor under the Contract Documents, the Owner shall secure and pay for necessary approvals, easements, assessments and charges required for construction, use or occupancy of permanent structures or for permanent changes in existing facilities.

§ 2.2.3 The Owner shall furnish surveys describing physical characteristics, legal limitations and utility locations for the site of the Project, and a legal description of the site. The Contractor shall be entitled to rely on the accuracy of information furnished by the Owner but shall exercise proper precautions relating to the safe performance of the Work.

§ 2.2.4 Upon receipt of a written request from the Contractor, information or services required of the Owner by the Contract Documents shall be furnished by the Owner with reasonable promptness. Any other information or services relevant to the Contractor's performance of the Work under the Owner's control shall be furnished by the Owner after receipt from the Contractor of a written request for such information or services.

§ 2.2.5 Unless otherwise provided in the Contract Documents, the Contractor will be furnished, free of charge, such copies of Drawings and Project Manuals as are reasonably necessary for execution of the Work.

**§ 2.3 OWNER'S RIGHT TO STOP THE WORK**
§ 2.3.1 If the Contractor fails to correct Work which is not in accordance with the requirements of the Contract Documents as required by Section 12.2 or persistently fails to carry out Work in accordance with the Contract Documents, the Owner may issue a written order to the Contractor to stop the Work, or any portion thereof, until the

Init.

/

AIA Document A201™ – 2007. Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987, 1997 and 2007 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 08:45:01 on 06/06/2016 under Order No.7898458378_1 which expires on 04/22/2017, and is not for resale.
User Notes:                                                                                                              (727872888)

13

Complaint, Exh. B

cause for such order has been eliminated; however, the right of the Owner to stop the Work shall not give rise to a duty on the part of the Owner to exercise this right for the benefit of the Contractor or any other person or entity. This right shall be in addition to, and not in restriction of, the Owner's rights under Subparagraph 12.2 and Article 14.

§ 2.3.2  If suspension of the Work is warranted by reason of unforeseen conditions that could not be anticipated by a reasonable contractor which may adversely affect the quality of the work if such Work were continued, the Owner may suspend the Work by written notice to the Contractor.  In such event, the Contract Time shall be adjusted accordingly, and the Contract Sum shall be adjusted to the extent, if any, that additional costs are incurred by reason of such suspension.  If the Contractor, in its reasonable judgment, believes that a suspension is warranted by reason of unforeseen circumstances which may adversely affect the quality of the Work if the Work were continued, the Contractor shall immediately notify the Owner and the Architect of such belief and describe with particularity the reasons therefore.

§ 2.4 OWNER'S RIGHT TO CARRY OUT THE WORK
§ 2.4.1 If the Contractor defaults or neglects to carry out the Work in accordance with the Contract Documents and fails within a seven (7) day period after receipt of written notice from the Owner to commence and continue correction of such default or neglect with diligence and promptness, the Owner may, without waiving its rights against Contractor's Performance Bond, and without prejudice to other remedies, correct such deficiencies or commence and continue to carry out the Work. If payments then or thereafter due the Contractor are not sufficient to cover such amounts, the Contractor shall pay the difference to the Owner.

ARTICLE 3   CONTRACTOR
§ 3.1 GENERAL
§ 3.1.1  The Contractor is the person or entity identified as such in the Agreement and is referred to throughout the Contract Documents as if singular in number. The term "Contractor" means the Contractor or the Contractor's authorized representative.

§ 3.1.2 The Contractor shall perform the Work in accordance with the Contract Documents.

§ 3.1.3 The Contractor shall not be relieved of obligations to perform the Work in accordance with the Contract Documents either by activities or duties of the Architect in the Architect's administration of the Contract, or by tests, inspections or approvals required or performed by persons other than the Contractor.

§ 3.1.4   Prior to commencing Work, Contractor shall designate in writing an individual for the project who shall have full authority to bind Contractor on all matters arising out of or relating to this Agreement.

§ 3.2 REVIEW OF CONTRACT DOCUMENTS AND FIELD CONDITIONS BY CONTRACTOR
§ 3.2.1 Since the Contract Documents are complementary,  before starting each portion of the Work, the Contractor shall carefully study and compare the various Drawings and other Contract Documents relative to that portion of the Work, as well as the information furnished by the Owner pursuant to Section 2.2.3, shall take field measurements of any existing conditions related to that portion of the Work and shall observe any conditions at the site affecting it. These obligations are for the purpose of facilitating construction by the Contractor and are not for the purpose of discovering errors, omissions, or inconsistencies in the Contract Documents; however, any errors, inconsistencies or omissions discovered by the Contractor shall be reported promptly to the Architect and the Owner as a request for information in such form as the Architect and the Owner may require.
§ 3.2.2 Any design errors or omissions noted by the Contractor during this review shall be reported promptly to the Architect, but, except as provided in Subparagraph 3.7.3,  it is recognized that the Contractor's review is made in the Contractor's capacity as a contractor and not as a licensed design professional unless otherwise specifically provided in the Contract Documents. The Contractor is not required to ascertain that the Contract Documents are in accordance with applicable laws, statutes, ordinances, building codes, and rules and regulations, but any nonconformity discovered by or made known to the Contractor shall be reported promptly to the Architect.

§ 3.2.3 If the Contractor believes that additional cost or time is involved because of clarifications or instructions issued by the Architect in response to the Contractor's notices or requests for information pursuant to Sections 3.2.1 and 3.2.2, the Contractor shall make Claims as provided in Sections 4.3.6 and 4.3.7.   The Contractor shall not be liable to the Owner or Architect for damages resulting from errors, inconsistencies or omissions in the Contract

AIA Document A201™ – 2007. Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987, 1997 and 2007 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 08:45:01 on 06/06/2016 under Order No.7898458378_1 which expires on 04/22/2017, and is not for resale.
User Notes:                                                                                                    (727672888)

Init.

/

14

Documents or for differences between field measurements or conditions and the Contract Documents unless the Contractor recognized such error, inconsistency, omission or difference and knowingly failed to report it to the Architect.

§ 3.2.4 Notwithstanding anything in Subparagraph 3.2.1 to the contrary, if Contractor discovers through the use of reasonable care and diligence, errors, inconsistencies, or omissions in the Contract Documents yet proceeds without written notice to the Architect and Owner, Contractor shall bear all costs for the damage resulting from any such errors, inconsistencies or omissions and to the extent Owner is required to incur costs or expenses to correct such issues, Contractor shall pay Owner such cost or expenses upon Owner's request. Contractor shall promptly notify the Architect and Owner of any ambiguity, inconsistency or error which it may discover upon examination of the Contract Documents or of the site and local conditions.

§ 3.2.5 Notwithstanding anything herein to the contrary, the Contractor shall be responsible for the satisfactory and complete execution of the Work as described in the Contract Documents. The Contractor represents that he has carefully examined all Drawings and Specifications for the Work to be performed; and has notified Owner of any defects or omissions he has noted or observed, and that he has the experience and necessary personnel, equipment, and material at his disposal to complete the Work in a good workmanlike manner in accordance with the Contract Documents without any material defects in the work.

§ 3.3 SUPERVISION AND CONSTRUCTION PROCEDURES

§ 3.3.1 The Contractor shall supervise and direct the Work, using the Contractor's reasonable skill and attention. The Contractor shall be solely responsible for and have control over construction means, methods, techniques, sequences and procedures and for coordinating all portions of the Work under the Contract, unless the Contract Documents give other specific instructions concerning these matters. If the Contract Documents give specific instructions concerning construction means, methods, techniques, sequences or procedures, the Contractor shall evaluate the jobsite safety thereof and, except as stated below, shall be fully and solely responsible for the jobsite safety of such means, methods, techniques, sequences or procedures. If the Contractor determines that such means, methods, techniques, sequences or procedures may not be safe, the Contractor shall give timely written notice to the Owner and Architect and shall not proceed with that portion of the Work without further written instructions from the Architect. If the Contractor is then instructed to proceed with the required means, methods, techniques, sequences or procedures without acceptance of changes proposed by the Contractor, the Owner shall be solely responsible for any resulting loss or damage.

§ 3.3.2 The Contractor shall be responsible to the Owner for acts and omissions of the Contractor's employees, Subcontractors and their agents and employees, and other persons or entities performing portions of the Work for or on behalf of the Contractor or any of its Subcontractors.

§ 3.3.3 The Contractor shall be responsible for inspection of portions of Work already performed to determine that such portions are in proper condition to receive subsequent Work.

§ 3.3.4 If any of the Work is required to be inspected or approved by any public authority, the Contractor shall cause such inspection or approval to be performed.

§ 3.4 LABOR AND MATERIALS

§ 3.4.1 Unless otherwise provided in the Contract Documents, the Contractor shall provide and pay for labor, materials, equipment, tools, construction equipment and machinery, water, heat, utilities, transportation, and other facilities and services necessary for proper execution and completion of the Work, whether temporary or permanent and whether or not incorporated or to be incorporated in the Work.

§ 3.4.2 The Contractor may make substitutions only with the consent of the Owner, after evaluation by the Architect and Owner and in accordance with a Change Order.

§ 3.4.3 The Contractor shall enforce strict discipline and good order among the Contractor's employees and other persons carrying out the Contract. The Contractor shall not permit employment of unfit persons or persons not skilled in tasks assigned to them.

§ 3.4.4 The Contractor acknowledges that it is the Contractor's responsibility to hire all personnel for the proper

Init.
AIA Document A201™ – 2007. Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987, 1997 and 2007 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 08:45:01 on 06/06/2016 under Order No.7898458378_1 which expires on 04/22/2017, and is not for resale.
User Notes:                                                                  (727872888)

15

Complaint, Exh. B

and diligent prosecution of the Work and the Contractor shall use its best efforts to maintain labor peace for the duration of the Project. In the event of a labor dispute, the Contractor shall not be entitled to any increase in the Contract Sum or Time.

## § 3.5 WARRANTY

§ 3.5.1 The Contractor warrants that it will furnish all of the materials and labor necessary to complete the Project and all materials and equipment furnished by Contractor will be new and all Work performed and all materials and equipment furnished by Contractor will be of good quality, free from faults and defects and will conform to the Contract Documents in all respects, including, but no limited to kind, quality of materials and workmanship specified. The Contractor shall obtain and deliver to Owner such standard manufacturers' warranties as each equipment manufacturer may furnish with any equipment. The Contractor does not warrant or guarantee the design or sufficiency of the design of the improvements or that the materials and equipment furnished, assuming that they are the materials and equipment specified, will accomplish the purpose intended.

All written warranties shall be addressed and delivered to the Owner as a condition precedent to Contractor's entitlement to Final Payment. At that time, Contractor shall also deliver to Owner a written "Contractor Warranty" representing to Owner that all labor, materials and/or services, all other components of the work shall be free of defect from the time of Substantial Completion for the Work and shall extend for one (1) year from the date of Final Completion and as warranties and guarantees on work, labor, equipment and materials, together with any other warranties or guarantees required by the Contract Documents. Nothing in this Contract shall operate to waive, release or compromise the statutory implied warranties of the Contractor for the Project, its subcontractors and suppliers to the Owner.

The Contractor will indemnify and hold the Owner harmless and defend Owner from and against any loss, damage or expense incurred as a result of a breach of any warranties. All warranties referenced in the Contract Documents shall survive the making of Final Payment to the Contractor or any earlier termination of the Contract. These warranties shall not operate to extinguish or compromise any claim for latent defects or other items of defective work which could not be discovered by Owner upon reasonable inspection; in such case the limitations period for latent defects shall run from the date of discovery in accordance with Florida law.

Contractor warrants that it shall, within forty-eight (48) hours of notice (verbal or written), diligently and continuously pursue any necessary warranty repairs or replacements of defects until corrected and will restore the Work to the condition required by the Contract Documents. Contractor shall restore both surface, subsurface and both collateral and primary conditions disturbed the performance by Contractor during warranty work to their prior pre-warranty work condition.

The Contractor's warranty obligations as specified herein shall apply to encompass and provide coverage for claims associated with water intrusion, water infiltration through the roof, and/or mold and mildew resulting therefrom. However, this provision shall not include warranty coverage for acts of third parties whom the Contractor has not employed, hired, retained or supervised. In addition to the foregoing stipulations, the Contractor shall comply with all other warranties referenced to in any portions of the Contract Documents or otherwise provided by law or in equity, and where warranties overlap, the more stringent requirements shall govern.

## § 3.6 TAXES

§ 3.6.1 The Contractor shall pay sales, consumer, use and similar taxes for the Work provided by the Contractor which are legally enacted when bids are received or negotiations concluded, whether or not yet effective or merely scheduled to go into effect.

## § 3.7 PERMITS, FEES AND NOTICES

§ 3.7.1 Unless otherwise provided in the Contract Documents, the Contractor shall assist the Owner in the procurement of all permits, licenses, and certifications necessary for the proper execution and completion of the Work. The Owner shall reimburse the Contractor for all costs incurred to procure the permits, licenses, and certifications, which are customarily secured after execution of the Contract and which are legally required when bids are received or negotiations concluded. The Contractor shall assist the Owner in the procure all certificates of inspection, use, occupancy, permits and licenses, pay all charges and fees and give all notice necessary and incidental to the due and lawful prosecution of the Work. Certificates of inspection, use and occupancy shall be

AIA Document A201™ – 2007. Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987, 1997 and 2007 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 08:46:01 on 06/06/2016 under Order No.7898456378_1 which expires on 04/22/2017, and is not for resale.
User Notes:                                                                                          (727672886)

Complaint, Exh. B

delivered to the Owner upon Substantial Completion of the Project in accordance with the approved schedule for the Work.   The costs of such procurement, payment and delivery are included within the Contract Sum.

§ 3.7.2 The Contractor shall comply with and give notices required by laws, ordinances, rules, regulations and lawful orders of public authorities applicable to performance of the Work.

§ 3.7.3 If the Contractor performs Work knowing it to be contrary to applicable laws, statutes, ordinances, codes, rules and regulations, or lawful orders of public authorities, the Contractor shall assume appropriate responsibility for such Work and shall bear the costs attributable to correction.

§ 3.7.4 Concealed or Unknown Conditions. If the Contractor encounters conditions at the site that are (1) subsurface or otherwise concealed physical conditions that differ materially from those indicated in the Contract Documents or (2) unknown physical conditions of an unusual nature, that differ materially from those ordinarily found to exist and generally recognized as inherent in construction activities of the character provided for in the Contract Documents, the Contractor shall promptly provide notice to the Owner and the Architect before conditions are disturbed and in no event later than ten (10) days after first observance of the conditions. The Architect will promptly investigate such conditions and, if the Architect determines that they differ materially and cause an increase or decrease in the Contractor's cost of, or time required for, performance of any part of the Work, will recommend an equitable adjustment in the Contract Sum or Contract Time, or both. If the Architect determines that the conditions at the site are not materially different from those indicated in the Contract Documents and that no change in the terms of the Contract is justified, the Architect shall promptly notify the Owner and Contractor in writing, stating the reasons. If either party disputes the Architect's determination or recommendation, that party may proceed as provided in Article 4.3.

*(Paragraph deleted)*
§ 3.8 ALLOWANCES
§ 3.8.1 The Contractor shall include in the Contract Sum all allowances stated in the Contract Documents. Items covered by allowances shall be supplied for such amounts and by such persons or entities as the Owner may direct, but the Contractor shall not be required to employ persons or entities to whom the Contractor has reasonable objection.

§ 3.8.2 Unless otherwise provided in the Contract Documents:
  .1   Allowances shall cover the cost to the Contractor of materials and equipment delivered at the site and all required taxes, less applicable trade discounts;
  .2   Contractor's costs for unloading and handling at the site, labor, installation costs, overhead, profit and other expenses contemplated for stated allowance amounts shall include taxes, transportation, installation, labor, materials, profit and overhead; and
  .3   Whenever costs are more than or less than allowances, the Contract Sum shall be adjusted accordingly by Change Order. The amount of the Change Order shall reflect (1) the difference between actual costs and the allowances under Section 3.8.2.1 and (2) changes in Contractor's costs under Section 3.8.2.2.

§ 3.8.3 Materials and equipment under an allowance shall be selected by the Owner in sufficient time to avoid delay in the Work.

§ 3.9 SUPERINTENDENT
§ 3.9.1 The Contractor shall employ a competent superintendent and necessary assistants who shall be in attendance at the Project site during performance of the Work. The superintendent shall represent the Contractor, and communications given to the superintendent shall be as binding as if given to the Contractor. Important communications shall be confirmed in writing. Other communications shall be similarly confirmed on written request in each case. The superintendent shall be reasonably satisfactory to the Owner in all respects, and Owner shall have the right for cause, require Contractor to dismiss from the Project any superintendent whose performance is not reasonable satisfactory to Owner, and to replace such superintendent with a superintendent reasonably satisfactory to Owner.   The Contractor shall not replace the superintendent without the consent of the Owner except with another superintendent reasonably satisfactory to the Owner in all respects.

AIA Document A201™ – 2007. Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987, 1997 and 2007 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 08:45:01 on 06/06/2016 under Order No.7996458376_1 which expires on 04/22/2017, and is not for resale.
User Notes:                                                                                                              (727872880)

Complaint, Exh. B

§ 3.9.2 The list of all supervisory personnel, including the Project manager and superintendent, that the Contractor intends to use on the Project and a chain-of-command organizational chart shall be submitted to the Owner for approval at the start of the Work. The Contractor shall not engage supervisory personnel or utilize an organization and chain-of-command other than as approved by Owner in writing, and shall not change the Project Manager and superintendent or form of organization without the written approval of the Owner.

§ 3.9.3 The Contractor shall conduct at the site of the Project regular progress meetings to be attended by the Contractor, Architect, major Subcontractors and any other Subcontractors, material suppliers or persons required by the Owner or Architect from time to time during the Project. Unless the Owner directs otherwise, the Contractor shall take minutes of the progress meetings and shall provide copies to all attendees within seven (7) days after the date of the meeting.

## § 3.10 CONTRACTOR'S CONSTRUCTION SCHEDULES

§ 3.10.1 The Contractor, prior to commencement of the Construction Phase, shall prepare and submit to the Owner and to the Architect, the Contractor's construction schedule (hereinafter the "Original Construction Schedule") for the Work. The Original Construction Schedule shall be based on a time precedence method of scheduling that details the critical path Work items on the schedule and shall be of such form and content as is required by the Owner. The Original Construction Schedule will be prepared in sufficient detail to properly reflect the scope and individual work items and will be sub-divided by building area, site or other major component as deemed necessary by the Owner. The Original Construction Schedule shall delineate the proposed progress of the Work and with such reasonable progress in the Work which will result in all of the Work attaining Substantial Completion within the Contract Time. No Progress Payment shall be due and payable to Contractor unless and until the Owner has received the Original Construction Schedule as required in this paragraph. The Contractor may generate and utilize other schedules with the subcontractors (hereinafter the "Trade Schedules"). These Trade Schedules are solely for Contractor's purposes and shall have no bearing on the Original Construction Schedule.

§ 3.10.2 At the time the Contractor submits each Application for Progress Payment, the Contractor shall submit to the Owner and to the Architect a written Project update in narrative form with progress photographs, and a revised Original Construction Schedule (hereinafter the "Updated Construction Schedule") which indicates future scheduling and performance of the Work sufficient to indicate the manner and time in and at which the Work, if represented to be delayed from the schedule shown on the most recent updated schedule, will be back on schedule and will comport with the Original Construction Schedule. The Updated Construction Schedule shall be of such form and content as is required herein. The Updated Construction Schedule shall incorporate into it all extensions and reductions of the Contract Time which have previously been approved by duly executed Change Orders.

§ 3.10.3 The Contractor shall prepare and submit to the Owner and to the Architect, simultaneous with submission of the Construction Schedule prior to commencement of the Work, a schedule (hereinafter "Original Submittal Schedule") for the submittal of all required Shop Drawings, Product Data and Samples indicating the dates same will be submitted by the Contractor. The Original Submittal Schedule shall be coordinated with the Construction Schedule and allow the Architect adequate time to review submittals. The Contractor shall prepare and keep current, for the Architect's approval, a schedule of submittals (the "Submittal Schedule") tracking the actual receipt and review of all submittals.

§ 3.10.4 The Contractor shall perform the Work in general accordance with the most recent schedules submitted to the Owner and Architect.

§ 3.10.5 The Owner or its representative and the Architect shall review the schedule for completing the Work, but the Contractor shall have the sole and exclusive responsibility for completing the Work according to the schedule. Any proposed revisions to the original Construction Schedule, or subsequent updated Construction Schedule, shall be submitted by the Contractor pursuant to the Change Order procedure set forth in Article 7. The Contractor shall complete each phase of the work in strict conformance with the Construction Schedule, and shall expedite and/or accelerate the Work at its expense if construction falls behind the dates and times set forth in the updated Construction Schedule, unless the date of Substantial Completion has been extended by Change Order prior to the date of the updated Construction Schedule.

Init.

/

AIA Document A201™ – 2007. Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987, 1997 and 2007 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 09:45:01 on 06/06/2016 under Order No.7906469378_1 which expires on 04/22/2017, and is not for resale.
User Notes:                                                                                              (727872888)

18

Complaint, Exh. B

**§ 3.11 DOCUMENTS AND SAMPLES AT THE SITE**
**§ 3.11.1** The Contractor shall maintain at the site for the Owner one record copy of the Drawings, Specifications, Addenda, Change Orders and other Modifications, in good order and marked currently to record field changes and selections made during construction, and one record copy of approved Shop Drawings, Product Data, Samples and similar required submittals. These shall be available to the Architect and shall be delivered to the Architect for submittal to the Owner upon completion of the Work, signed by Contractor, certifying that they show complete and exact "as-built" conditions, starting sizes, kind of materials, vital piping, conduit locations and similar matters.

**§ 3.11.2** The Contractor shall maintain all approved permit drawings in a manner so as to make them accessible to governmental inspectors and other authorized agencies. All approved drawings shall be wrapped, marked and delivered to the Owner within 30 days of Final Completion of the Work.

**§ 3.12 SHOP DRAWINGS, PRODUCT DATA AND SAMPLES**
**§ 3.12.1** Shop Drawings are drawings, diagrams, schedules and other data specially prepared for the Work by the Contractor or a Subcontractor, Sub-subcontractor, manufacturer, supplier or distributor to illustrate some portion of the Work.

**§ 3.12.2** Product Data are illustrations, standard schedules, performance charts, instructions, brochures, diagrams and other information furnished by the Contractor to illustrate materials or equipment for some portion of the Work.

**§ 3.12.3** Samples are physical examples which illustrate materials, equipment or workmanship and establish standards by which the Work will be judged.

**§ 3.12.4** Shop Drawings, Product Data, Samples and similar submittals are not Contract Documents. The purpose of their submittal is to demonstrate for those portions of the Work for which submittals are required by the Contract Documents the way by which the Contractor proposes to conform to the information given and the design concept expressed in the Contract Documents. Informational submittals upon which the Architect is not expected to take responsive action may be so identified in the Contract Documents. Submittals which are not required by the Contract Documents may be returned by the Architect without action.

**§ 3.12.5** The Contractor shall review for compliance with the Contract Documents, approve and submit to the Architect Shop Drawings, Product Data, Samples and similar submittals required by the Contract Documents with reasonable promptness and in such sequence as to cause no delay in the Work or in the activities of the Owner or of separate contractors. Submittals which are not marked as reviewed for compliance with the Contract Documents and approved by the Contractor may be returned by the Architect without action.

**§ 3.12.6** By approving and submitting Shop Drawings, Product Data, Samples and similar submittals, the Contractor represents that the Contractor has determined and verified materials, field measurements and field construction criteria related thereto, or will do so, and has checked and coordinated the information contained within such submittals with the requirements of the Work and of the Contract Documents.

**§ 3.12.7** The Contractor shall perform no portion of the Work for which the Contract Documents require submittal and review of Shop Drawings, Product Data, Samples or similar submittals until the respective submittal has been approved by the Architect.

**§ 3.12.8** The Work shall be in accordance with approved submittals except that the Contractor shall not be relieved of responsibility for deviations from requirements of the Contract Documents by the Architect's approval of Shop Drawings, Product Data, Samples or similar submittals unless the Contractor has specifically informed the Architect in writing of such deviation at the time of submittal and (1) the Architect has given written approval to the specific deviation as a minor change in the Work, or (2) a Change Order or Construction Change Directive has been issued authorizing the deviation. The Contractor shall not be relieved of responsibility for errors or omissions in Shop Drawings, Product Data, Samples or similar submittals by the Architect's approval thereof.

**§ 3.12.9** The Contractor shall direct specific attention, in writing or on resubmitted Shop Drawings, Product Data, Samples or similar submittals, to revisions other than those requested by the Architect on previous submittals. In the absence of such written notice, the Architect's approval of a resubmission shall not apply to such revisions.

Init.

/

AIA Document A201™ – 2007. Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987, 1997 and 2007 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 08:45:01 on 06/08/2016 under Order No.7896456378_1 which expires on 04/22/2017, and is not for resale.
User Notes:                                                                                          (727872889)

**19**

Complaint, Exh. B

§ 3.12.10 The Contractor shall not be required to provide professional services which constitute the practice of architecture or engineering unless such services are specifically required by the Contract Documents for a portion of the Work or unless the Contractor needs to provide such services in order to carry out the Contractor's responsibilities for construction means, methods, techniques, sequences and procedures. The Contractor shall not be required to provide professional services in violation of applicable law. If professional design services or certifications by a design professional related to systems, materials or equipment are specifically required of the Contractor by the Contract Documents, the Owner and the Architect will specify all performance and design criteria that such services must satisfy. The Contractor shall cause such services or certifications to be provided by a properly licensed design professional, whose signature and seal shall appear on all drawings, calculations, specifications, certifications, Shop Drawings and other submittals prepared by such professional. Shop Drawings and other submittals related to the Work designed or certified by such professional, if prepared by others, shall bear such professional's written approval when submitted to the Architect. The Owner and the Architect shall be entitled to rely upon the adequacy, accuracy and completeness of the services, certifications or approvals performed by such design professionals, provided the Owner and Architect have specified to the Contractor all performance and design criteria that such services must satisfy. Pursuant to this Section 3.12.10, the Architect will review, approve or take other appropriate action on submittals only for the limited purpose of checking for conformance with information given and the design concept expressed in the Contract Documents. The Contractor shall not be responsible for the adequacy of the performance or design criteria required by the Contract Documents.

### § 3.13 USE OF SITE
§ 3.13.1 The Contractor shall confine operations at the site to areas permitted by law, ordinances, permits and the Contract Documents and shall not unreasonably encumber the site with materials or equipment, and shall coordinate and not hinder the activities of other contractors at the site.

### § 3.14 CUTTING AND PATCHING
§ 3.14.1 The Contractor shall be responsible for cutting, fitting or patching required to complete the Work or to make its parts fit together properly.

§ 3.14.2 The Contractor shall not damage or endanger a portion of the Work or fully or partially completed construction of the Owner or separate contractors by cutting, patching or otherwise altering such construction, or by excavation. The Contractor shall not cut or otherwise alter such construction by the Owner or a separate contractor except with written consent of the Owner and of such separate contractor; such consent shall not be unreasonably withheld. The Contractor shall not unreasonably withhold from the Owner or a separate contractor the Contractor's consent to cutting or otherwise altering the Work.

### § 3.15 CLEANING UP
§ 3.15.1 The Contractor shall keep the premises and surrounding area free from accumulation of waste materials or rubbish caused by operations under the Contract. At completion of the Work, the Contractor shall remove from and about the Project waste materials, rubbish, the Contractor's tools, construction equipment, machinery and surplus materials. The Contractor shall develop and monitor programs to control dust, dirt, noise, vibration, odor, or any other attributes of the construction process which might adversely affect any use of any property areas adjacent to or in the vicinity of the Project site, in accordance with applicable laws and regulations.

§ 3.15.2 If the Contractor fails to clean up as provided in the Contract Documents, the Owner may do so and   the cost thereof shall be charged to the Contractor after a reasonable written notification period.

### § 3.16 ACCESS TO WORK
§ 3.16.1 The Contractor shall provide the Owner and Architect access to the Work in preparation and progress wherever located.

### § 3.17 ROYALTIES, PATENTS AND COPYRIGHTS
§ 3.17.1 The Contractor shall pay all royalties and license fees. The Contractor shall defend suits or claims for infringement of copyrights and patent rights and shall hold the Owner and Architect harmless from loss on account thereof, but shall not be responsible for such defense or loss when a particular design, process or product of a particular manufacturer or manufacturers is required by the Contract Documents or where the copyright violations are contained in Drawings, Specifications or other documents prepared by the Owner or Architect. However, if the

**Init.**

**/**

AIA Document A201™ – 2007. Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987, 1997 and 2007 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 08:45:01 on 08/06/2016 under Order No.7898458378_1 which expires on 04/22/2017, and is not for resale.
User Notes:          (727872886)

**20**

Complaint, Exh. B

Contractor has reason to believe that the required design, process or product is an infringement of a copyright or a patent, the Contractor shall be responsible for such loss unless such information is promptly furnished to the Architect.

**§ 3.18 INDEMNIFICATION**

**§ 3.18.1** The Contractor shall be responsible for initiating, maintaining, and supervising all safety precautions and programs in connection with the Work. Contractor shall take or shall require its subcontractors to take all reasonable precautions for the safety of, and shall provide all reasonable protection to prevent damages, injury or loss to (1) all employees performing the Work and other persons who may be affect thereby, (2) all the Work and all materials and equipment to be incorporated therein, and (3) other property at the site or adjacent thereto. Contractor shall provide all notices and persons and property and their protection from damage, injury or loss.

**§ 3.18.2** To the fullest extent permitted by law, the Contractor shall defend, indemnify and hold harmless the Owner, its agents and employees from and against all claims, damages, losses and expenses, arising from the performance of the Work. The provision also applies to any such claim, damages, loss or expense that (1) is attributable to bodily injury, sickness, disease or death, or to injury to or destruction of tangible property including the loss of use resulting therefrom, and (2) is caused in whole or in part by any negligent acts or omissions of the Contractor, any subcontractor, and sub-subcontractor, any material or equipment supplier, or anyone directly or indirectly employed by any of them. Such obligations shall not be construed to negate, abridge, compromise or otherwise reduce any other rights or obligations of indemnity which would otherwise exist as to any party or person described in this paragraph. In any and all claims against the Owner, or any of their agents or employees by any employee of the Contractor, any subcontractor, anyone directly or indirectly employed by any of them, or anyone for whose acts any of them may be liable, the indemnification obligation under this paragraph shall not be limited in any way by any limitation on the amount or type of damages, compensation or benefits payable by or for the Contractor or any subcontractor under workers' or workmen's compensation acts, disability benefit acts or other employee benefit acts. The foregoing indemnity from Contractor shall be applicable to all losses, damages, expenses or claims for damage or injury to any person or property resulting from the negligence, recklessness or intentional wrongful misconduct of Contractor, and persons employed or hired by Contractor relating to the performance of Work as described in this Contract. This indemnification provision is incorporated by reference into the Contract Documents. The indemnification as provided in this paragraph shall be subject to a monetary limitation of the combined amount of the total of the required insurance liability limits under this contract, or Five Million Dollars ($5,000,000.00), whichever is greater, and which the Owner and Contractor both acknowledge that this amount bears a reasonable commercial relationship to this Contract. The Contractor shall promptly remedy all damage or loss to any property caused by the act or omission by the Contractor, any subcontractor, and sub-subcontractor, or anyone directly or indirectly employed by any of them, or by anyone for whose acts any of them may be liable. This indemnification provision shall only be operable to apply to these acts and omissions of the Contractor, it subcontractors, suppliers and consultants that perform labor or provide materials or services relative to this Work. The foregoing obligations of the Contractor are in addition to its other obligations under this Contract. This provision shall survive the termination or expiration of this Contract.

**§ 3.18.3** In claims against any person or entity indemnified under this Section 3.18 by an employee of the Contractor, a Subcontractor, anyone directly or indirectly employed by them or anyone for whose acts they may be liable, the indemnification obligation under Section 3.18.2 shall not be limited by a limitation on amount or type of damages, compensation or benefits payable by or for the Contractor or a Subcontractor under workers' compensation acts, disability benefit acts or other employee benefit acts.

**§ 3.18.4** If any claim of lien or stop-notice or any other demand for payment or security therefore, including claims or demands upon performance and payment bond sureties for this Contract, is made or filed with the Owner or the Project by any person claiming that Contractor or any Subcontractor or supplier or any other person claiming under any of them has failed to perform its contractual obligations or to make payment for any labor, services, trust fund contribution, materials, equipment, taxes or other item furnished or obligation uncured for, or in connection with the Work, or if at any time there shall be evidence of such non performance or non payment of any claim or lien or stop-notice or other demand for which, if established, the Owner or the Project might become liable, then the Owner shall have the right to retain from any payment then due or thereafter to become due under the Contract or to be reimbursed by Contractor for an amount sufficient to satisfy, discharge and defend against any such claim or lien or stop-notice or other demand, or any action or proceeding thereon which may be brought to judgment or award.

AIA Document A201™ – 2007. Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987, 1997 and 2007 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 08:48:01 on 06/06/2016 under Order No.7896458378_1 which expires on 04/22/2017, and is not for resale.
User Notes:                                                                                                      (727872888)

Init.

/

21

Complaint, Exh. B

§3.18.5 The Contractor is responsible for all construction personnel and traffic routing logistics required in the performance of the Work. The Contractor will provide watchmen, barricades, barrels and any other means necessary to control traffic in order to protect the Work and safety of personnel and property. Contractor acknowledges that portions of the Project will be occupied as buildings are completed and turned over to Owner. Owner and its residents will have access to access roads, parking areas and completed buildings at all times following completion of the respective building.

## ARTICLE 4 ADMINISTRATION OF THE CONTRACT
§ 4.1 ARCHITECT
§ 4.1.1 The Architect is the person lawfully licensed to practice architecture or any entity lawfully practicing architecture identified as such in the Agreement and is referred to throughout the Contract Documents as if singular in number. architects, or such successor Architect as the Owner may appoint by written notice to the Contractor from time to time.

The term "Architect" means the Architect or the Architect's authorized representative.

§ 4.1.2 Duties, responsibilities and limitations of authority of the Architect as set forth in the Contract Documents shall not be restricted, modified or extended without written consent of the Owner, Contractor and Architect. Consent shall not be unreasonably withheld. The Architect shall reduce to writing via revisions to its drawings and specifications all changes and modifications in the Work, including substitutions, value engineering changes and adjustments, before the Contractor will be deemed to be required to make such changes in the Work. Additionally, the Architect shall assist with all efforts being undertaken to obtain certificates and approvals of cognizant authorities including the preparation of Conformance Drawings.

*(Paragraph deleted)*
§ 4.2 ARCHITECT'S ADMINISTRATION OF THE CONTRACT
§ 4.2.1 The Architect will provide administration of the Contract as described in the Contract Documents, and may be the Owner's representative (1) during construction, (2) until final payment is due and (3) with the Owner's concurrence, from time to time during the one-year period for correction of Work described in Section 12.2. The Architect will have authority to act on behalf of the Owner only to the extent provided in the Contract Documents, unless otherwise modified in writing in accordance with other provisions of the Contract. The structural engineer to be designated by the Architect may perform certain functions that would otherwise be performed by Architect.

§ 4.2.2 The Architect, as a representative of the Owner, will visit the site at intervals appropriate to the stage of the Contractor's operations (1) to become generally familiar with and to keep the Owner informed about the progress and quality of the portion of the Work completed, (2) to endeavor to guard the Owner against defects and deficiencies in the Work, and (3) to determine in general if the Work is being performed in a manner indicating that the Work, when fully completed, will be in accordance with the Contract Documents. However, the Architect will not be required to make exhaustive or continuous on-site inspections to check the quality or quantity of the Work. The Architect will neither have control over or charge of, nor be responsible for, the construction means, methods, techniques, sequences or procedures, or for the safety precautions and programs in connection with the Work, since these are solely the Contractor's rights and responsibilities under the Contract Documents, except as provided in Section 3.3.1. Further, the Architect shall not be empowered to order changes in the Work unless the Owner has expressly agreed to the change in writing.

§ 4.2.3 The Architect will not be responsible for the Contractor's failure to perform the Work in accordance with the requirements of the Contract Documents. The Architect will not have control over or charge of and will not be responsible for acts or omissions of the Contractor, Subcontractors, or their agents or employees, or any other persons or entities performing portions of the Work.

Init.

*I*

AIA Document A201™ – 2007. Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987, 1997 and 2007 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 08:45:01 on 06/06/2016 under Order No.7898458378_1 which expires on 04/22/2017, and is not for resale.
User Notes: (727072068)

Complaint, Exh. B

§ 4.2.4 Communications Facilitating Contract Administration.   Except as otherwise provided in the Contract Documents, the Owner and Contractor shall endeavor to communicate with each other through the Architect about matters arising out of or relating to the Contract. The Contractor shall provide Owner with a copy of all correspondence it sends to Architect.  Communications by and with the Architect's consultants shall be through the Architect. Communications by and with Subcontractors and material suppliers shall be through the Contractor. Communications by and with separate contractors shall be through the Owner.

§ 4.2.5 Based on the Architect's evaluations of the Contractor's Applications for Payment, the Architect will review and certify the amounts due the Contractor and will issue Certificates for Payment in such amounts.

§ 4.2.6 The Architect will not have authority to reject Work that does not conform to the Contract Documents without the Owner's Agreement. Whenever the Architect considers it necessary or advisable, the Architect will have authority to require inspection or testing of the Work in accordance with Sections 13.5.2 and 13.5.3, whether or not such Work is fabricated, installed or completed. However, neither this authority of the Architect nor a decision made in good faith either to exercise or not to exercise such authority shall give rise to a duty or responsibility of the Architect to the Contractor, Subcontractors, material and equipment suppliers, their agents or employees, or other persons or entities performing portions of the Work.

§ 4.2.7 The Architect will review and approve or take other appropriate action upon the Contractor's submittals such as Shop Drawings, Product Data and Samples, but only for the limited purpose of checking for conformance with information given and the design concept expressed in the Contract Documents. The Architect's action will be taken with such reasonable promptness as to cause no delay in the Work or in the activities of the Owner, Contractor or separate contractors, while allowing sufficient time in the Architect's professional judgment to permit adequate review. Review of such submittals is not conducted for the purpose of determining the accuracy and completeness of other details such as dimensions and quantities, or for substantiating instructions for installation or performance of equipment or systems, all of which remain the responsibility of the Contractor as required by the Contract Documents. The Architect's review of the Contractor's submittals shall not relieve the Contractor of the obligations under Sections 3.3, 3.5 and 3.12. The Architect's review shall not constitute approval of safety precautions or, unless otherwise specifically stated by the Architect, of any construction means, methods, techniques, sequences or procedures. The Architect's approval of a specific item shall not indicate approval of an assembly of which the item is a component.

§ 4.2.8 The Architect may prepare Change Orders and Construction Change Directives for the Owner's signature, but the Architect cannot order changes in the Work without the Owner's written agreement with the proposed document.

§ 4.2.9 The Architect will conduct inspections to determine the date or dates of Substantial Completion and the date of final completion, will receive and forward to the Owner, for the Owner's review and records, written warranties and related documents required by the Contract and assembled by the Contractor, and will issue a final Certificate for Payment upon compliance with the requirements of the Contract Documents.

§ 4.2.10 If the Owner and Architect agree, the Architect will provide one or more project representatives to assist in carrying out the Architect's responsibilities at the site. The duties, responsibilities and limitations of authority of such project representatives shall be as set forth in an exhibit to be incorporated in the Contract Documents.

§ 4.2.11 The Architect will interpret and decide matters concerning performance under and requirements of, the Contract Documents on written request of either the Owner or Contractor. The Architect's response to such requests will be made in writing within any time limits agreed upon or otherwise with reasonable promptness. If no agreement is made concerning the time within which interpretations required of the Architect shall be furnished in compliance with this Section 4.2, then delay shall not be recognized on account of failure by the Architect to furnish such interpretations until 15 days after written request is made for them.

§ 4.2.12 Interpretations and decisions of the Architect will be consistent with the intent of and reasonably inferable from the Contract Documents and will be in writing or in the form of drawings. When making such interpretations and initial decisions, the Architect will endeavor to secure faithful performance by both Owner and Contractor, will not show partiality to either and will not be liable for results of interpretations or decisions so rendered in good faith.

Init.

/

AIA Document A201™ – 2007. Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987, 1997 and 2007 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 08:45:01 on 06/08/2016 under Order No.7895458378_1 which expires on 04/22/2017, and is not for resale.
User Notes:                                                                                                                              (727872888)

## § 4.3 CLAIMS AND DISPUTES

§ 4.3.1 Definition.  A Claim is a demand or assertion by one of the parties seeking, as a matter of right, adjustment or interpretation of Contract terms, payment of money, extension of time or other relief with respect to the terms of the Contract. The term "Claim" also includes other disputes and matters in question between the Owner and Contractor arising out of or relating to the Contract on only those disputes which arose prior to the date final payment is due. Claims must be initiated by written notice. The responsibility to substantiate Claims shall rest with the party making the Claim.

§ 4.3.2 Time Limits on Claims. Claims by either party must be initiated within 21 days after occurrence of the event giving rise to such Claim or within 21 days after the claimant first recognizes the condition giving rise to the Claim, whichever is later. Claims must be initiated by written notice to the Architect and the other party.   Any claim(s) not initiated within the time limits set forth herein are waived.

(Paragraph deleted)
§ 4.3.3 Continuing Contract Performance. Pending final resolution of a Claim except as otherwise agreed in writing or as provided in Section 9.7.1 and Article 14, the Contractor shall proceed diligently with performance of the Contract and the Owner shall continue to make payments in accordance with the Contract Documents.

(Paragraph deleted)
§ 4.3.4 Claims for Concealed or Unknown Conditions. If conditions are encountered at the site which are (1) subsurface or otherwise concealed physical conditions which differ materially from those indicated in the Contract Documents or (2) unknown physical conditions of an unusual nature, which differ materially from those ordinarily found to exist and generally recognized as inherent in construction activities of the character provided for in the Contract Documents, then notice by the observing party shall be given to the other party promptly before conditions are disturbed and in no event later than ten (10) days after first observance of the conditions. The Architect will promptly investigate such conditions and, if they differ materially and cause an increase or decrease in the Contractor's cost of, or time required for, performance of any part of the Work, will recommend an equitable adjustment in the Contract Sum or Contract Time, or both. If the Architect determines that the conditions at the site are not materially different from those indicated in the Contract Documents and that no change in the terms of the Contract is justified, the Architect shall so notify the Owner and Contractor in writing, stating the reasons. Claims by either party in opposition to such determination must be made within 21 days after the Architect has given notice of the decision. If the conditions encountered are materially different, the Contract Sum and Contract Time shall be equitably adjusted, but if the Owner and Contractor cannot agree on an adjustment in the Contract Sum or Contract Time, the adjustment shall be referred to the Architect for initial determination, subject to further proceedings pursuant to Section 4.4.

§ 4.3.5 Claims for Additional Cost.  If the Contractor wishes to make Claim for an increase in the Contract Sum, written notice as provided herein shall be given before proceeding to execute the Work. Prior notice is not required for Claims relating to an emergency endangering life or property arising under Section 10.6.

§ 4.3.5.1  Notwithstanding anything to the contrary contained in the Contract Documents, no change in the Work, whether by way of alteration or addition to the Work, or otherwise, shall be the basis for an addition to the Contract Sum or shall result in a change to the Contract Time unless and until such alteration or addition has been authorized by a Change Order or Construction Change Directive executed and issued in accordance with and in strict compliance with the requirements of the Contract Documents.   Accordingly, no course of conduct or dealings between the parties, nor express nor implied acceptance of alterations nor additions to the Work, and no claim that the Owner has been unjustly enriched by any alteration or addition to the Work, whether or not there is in fact such unjust enrichment, shall be the basis for any claim to an increase in the Contract Sum or change in the Contract Time.

§ 4.3.6 If the Contractor believes additional cost is involved for reasons including but not limited to (1) a written interpretation from the Architect, (2) an order by the Owner to stop the Work where the Contractor was not at fault, (3) a written order for a minor change in the Work issued by the Architect, (4) failure of payment by the Owner, (5) termination of the Contract by the Owner, (6) Owner's suspension or (7) other reasonable grounds, Claim shall be filed in accordance with this Section 4.3.

§ 4.3.7 Claims for Additional Time

AIA Document A201™ – 2007. Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987, 1997 and 2007 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 08:45:01 on 06/08/2016 under Order No.7898458378_1 which expires on 04/22/2017, and is not for resale.
User Notes:                                                                                                                   (727872888)

Init.

/

24

**§ 4.3.7.1** If the Contractor wishes to make Claim for an increase in the Contract Time, written notice as provided herein shall be given. The Contractor's Claim shall include a fragnet analysis utilizing the most current updated Construction Schedule, establishing the impact on the Project's critical path. In the case of a continuing delay only one Claim is necessary. All claims for time extensions not meeting these requirements are waived.

**§ 4.3.7.2** If adverse weather conditions are the basis for a Claim for additional time, such Claim shall be documented by data substantiating that weather conditions were abnormal for the period of time could not have been reasonably anticipated and had an adverse effect on the scheduled construction.

**§ 4.3.8 Injury or Damage to Person or Property.** If either party to the Contract suffers injury or damage to person or property because of an act or omission of the other party, or of others for whose acts such party is legally responsible, written notice of such injury or damage, whether or not insured, shall be given to the other party within a reasonable time not exceeding 21 days after discovery. The notice shall provide sufficient detail to enable the other party to investigate the matter.

**§ 4.3.9** If unit prices are stated in the Contract Documents or subsequently agreed upon, and if quantities originally contemplated are materially changed in a proposed Change Order or Construction Change Directive so that application of such unit prices to quantities of Work proposed will cause substantial inequity to the Owner or Contractor, the applicable unit prices shall be equitably adjusted.

**§ 4.3.10** If any Claim by the Contractor against the Owner for monetary damages and/or an increase in the Contract Sum results in litigation, the amount of such Claim, damages or increase will not be shown or proven by the Contractor's use of a "total cost" approach thereto, and the monetary difference between the Contractor's estimated cost of the Work (prepared and utilized by the Contractor in preparing his bid for the Work) and the actual costs incurred by the Contractor in performing the Work shall not be valid, creditable, cognizable, competent or relevant proof of the amount of such Claim, damages or increase; and, additionally, the cumulative effect of Change Orders on the costs incurred by the Contractor in performing the Work shall not be valid, creditable, cognizable, competent or relevant proof of the amount of all or any part of such Claim, damages or increase. Thus, for any calculation or allegation of damages by the Contractor to be valid and compensable, time and material records exclusively and directly tracking the extra costs as they are incurred must be maintained, kept available for the Owner's timely review and submitted by the Contractor. Nothing herein shall prevent Contractor from presenting evidence of his total costs and related matters for merely demonstrative or illustrative purposes.

## § 4.4 RESOLUTION OF CLAIMS AND DISPUTES
**§ 4.4.1** The Contractor shall continue work during the pendency of any dispute or claim that originates during the Project, and shall not stop or slow the progress of the work pending resolution of such claim or dispute provided Owner pays Contractor undisputed sums due for work performed.

## § 4.5 MEDIATION
**§ 4.5.1** Any Claim arising out of or related to the Contract, except Claims relating to aesthetic effect and except those waived as provided for in Sections 4.3.10, 9.10.4 and 9.10.5 shall, be subject to mediation as a condition precedent to arbitration or the institution of legal or equitable proceedings by either party.

**§ 4.5.2** The parties shall endeavor to resolve their Claims by mediation which, unless the parties mutually agree otherwise, shall be in accordance with the Construction Industry Mediation Rules currently in effect or other rules and procedures by agreement by the parties at the time the mediation is scheduled. Request for mediation shall be filed in writing with the other party to the Contract. The request may be made concurrently with the filing of a demand for arbitration but, in such event, mediation shall proceed in advance of legal or equitable proceedings, which shall be stayed pending mediation for a period of 60 days from the date of filing, unless stayed for a longer period by agreement of the parties or court order.

**§ 4.5.3** The parties shall share the mediator's fee and any filing fees equally. The mediation and any subsequent hearings shall be held in the place where the Project is located, unless another location is mutually agreed upon. Agreements reached in mediation shall be enforceable as settlement agreements in any court having jurisdiction thereof.

Init.

/

AIA Document A201™ – 2007. Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987, 1997 and 2007 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 08:45:01 on 06/06/2016 under Order No.7898458378_1 which expires on 04/22/2017, and is not for resale.
User Notes:                                                                                                        (727872588)

Complaint, Exh. B

**§ 4.6 LITIGATION OF CLAIMS**
**§ 4.6.1** Any Claim arising out of or related to the Contract, except Claims relating to aesthetic effect and except those waived as provided for in Sections 4.3.2, 9.10.4 and 9.10.5, shall, after decision by the Architect or 30 days after submission of the Claim to the Architect, be subject to litigation exclusively in the County where the project is located.   Prior to litigation, the parties shall endeavor to resolve disputes by mediation in accordance with the provisions of Section 4.5.

**ARTICLE 5   SUBCONTRACTORS**
**§ 5.1 DEFINITIONS**
**§ 5.1.1** A Subcontractor is a person or entity who has a direct contract with the Contractor to perform a portion of the Work at the site. The term "Subcontractor" is referred to throughout the Contract Documents as if singular in number and means a Subcontractor or an authorized representative of the Subcontractor. The term "Subcontractor" does not include a separate contractor or subcontractors of a separate contractor.

**§ 5.1.2** A Sub-subcontractor is a person or entity who has a direct or indirect contract with a Subcontractor to perform a portion of the Work at the site. The term "Sub-subcontractor" is referred to throughout the Contract Documents as if singular in number and means a Sub-subcontractor or an authorized representative of the Sub-subcontractor.

**§ 5.2 AWARD OF SUBCONTRACTS AND OTHER CONTRACTS FOR PORTIONS OF THE WORK**
**§ 5.2.1** Unless otherwise stated in the Contract Documents or the bidding requirements, the Contractor, as soon as practicable after award of the Contract, shall furnish in writing to the Owner and the Architect the names of persons or entities (including those who are to furnish materials or equipment fabricated to a special design) proposed for each principal portion of the Work. The Architect will promptly reply to the Contractor in writing stating whether or not the Owner or the Architect, after due investigation, has reasonable objection to any such proposed person or entity. Failure of the Owner or Architect to reply promptly shall constitute notice of no reasonable objection. Copies of all bids or other proposals from subcontractors and sub-subcontractors shall, upon the request of the Owner, be submitted to the Owner for review.   All subcontractors and sub-subcontractors shall be subject to the reasonable approval of Owner's lender, if any, which approval or denial to be provided within ten days of submission of list of subcontractors.

**§ 5.2.2** The Contractor shall not contract with a proposed person or entity to whom the Owner or Architect has made reasonable and timely objection. The Contractor shall not be required to contract with anyone to whom the Contractor has made reasonable objection.

**§ 5.2.3** If the Owner or Architect has reasonable objection to a person or entity proposed by the Contractor, the Contractor shall propose another to whom the Owner or Architect has no reasonable objection. If the proposed but rejected Subcontractor was reasonably capable of performing the Work, the Contract Sum and Contract Time shall be increased or decreased by the difference, if any, occasioned by such change, and an appropriate Change Order shall be issued before commencement of the substitute Subcontractor's Work. However, no increase in the Contract Sum or Contract Time shall be allowed for such change unless the Contractor has acted promptly and responsively in submitting names as required.

**§ 5.2.4** The Contractor shall not change a Subcontractor, person or entity previously selected if the Owner or Architect makes reasonable objection to such substitute.

**§ 5.2.5**   Contractor shall contract solely in its own name and behalf, and not in the name or behalf of Owner, with the specified Subcontractor or supplier.   No contractual relation between Owner and Subcontractor shall be created by the Contract Documents or by any subcontract or purchase order except Owner's position as a third party beneficiary of each subcontract or purchase order.   Contractor's subcontract form shall be subject to reasonable approval by Owner.   Upon written request, Contractor shall submit to Owner value engineering data reflecting subcontracting pricing.

**§ 5.3 SUBCONTRACTUAL RELATIONS**
**§ 5.3.1** By appropriate agreement, written where legally required for validity, the Contractor shall require each Subcontractor, to the extent of the Work to be performed by the Subcontractor, to be bound to the Contractor by terms of the Contract Documents, and to assume toward the Contractor all the obligations and responsibilities,

Init.

/

AIA Document A201™ – 2007. Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987, 1997 and 2007 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 08:45:01 on 06/06/2016 under Order No.7898458378_1 which expires on 04/22/2017, and is not for resale.
User Notes:                                                                                                                      (727872868)

Complaint, Exh. B

including the responsibility for safety of the Subcontractor's Work, which the Contractor, by these Documents, assumes toward the Owner and Architect. Each subcontract agreement shall preserve and protect the rights of the Owner and Architect under the Contract Documents with respect to the Work to be performed by the Subcontractor so that subcontracting thereof will not prejudice such rights, and shall allow to the Subcontractor, unless specifically provided otherwise in the subcontract agreement, the benefit of all rights, remedies and redress against the Contractor that the Contractor, by the Contract Documents, has against the Owner. Where appropriate, the Contractor shall require each Subcontractor to enter into similar agreements with Sub-subcontractors. The Contractor shall make available to each proposed Subcontractor, prior to the execution of the subcontract agreement, copies of the Contract Documents to which the Subcontractor will be bound, and, upon written request of the Subcontractor, identify to the Subcontractor terms and conditions of the proposed subcontract agreement which may be at variance with the Contract Documents. Subcontractors will similarly make copies of applicable portions of such documents available to their respective proposed Sub-subcontractors.

§ 5.3.2  Notwithstanding any provision of Subparagraph 5.3.1, any part of the Work performed for the Contractor by a Subcontractor or its Sub-subcontractor shall be pursuant to a written Subcontract between the Contractor and such Subcontractor (or the Subcontractor and its Sub-subcontractor at any tier), which shall be prepared on a form of subcontract reasonably satisfactory to the Owner in all respects.   Each such subcontract shall, where the context so requires, contain provisions that:

.1      require that such Work be performed in accordance with the requirements of the Contract Documents;

.2      require the Subcontractor to carry and maintain insurance coverage in accordance with the Contact Documents, and to file certificates of such coverage with the Contractor;

.3      require the Subcontractor to submit certificates and waivers of liens for work completed and paid to it and by its Sub-subcontractors paid in a prior payment application as a condition to the disbursement of the progress payment next due and owing;

.4      require each Subcontractor to remove all debris created by its activities.

§ 5.4 CONTINGENT ASSIGNMENT OF SUBCONTRACTS
§ 5.4.1 Each subcontract agreement for a portion of the Work is assigned by the Contractor to the Owner provided that:

.1      assignment is effective only after termination of the Contract by the Owner for cause pursuant to Section 14.2 and only for those subcontract agreements which the Owner accepts by notifying the Subcontractor and Contractor in writing; and

.2      assignment is subject to the prior rights of the surety, if any, obligated under bond relating to the Contract.

If any subcontract is assigned to Owner pursuant to the foregoing provision, then Owner shall be substituted for the Contractor under any such subcontract, and the Subcontractor shall complete all of its obligations under the Subcontract for the benefit of Owner.

§ 5.4.2 Upon such assignment, if the Work has been suspended for more than 30 days, the Subcontractor's compensation shall be equitably adjusted for increases in cost resulting from the suspension.

*(Paragraph deleted)*
ARTICLE 6   CONSTRUCTION BY OWNER OR BY SEPARATE CONTRACTORS
§ 6.1 OWNER'S RIGHT TO PERFORM CONSTRUCTION AND TO AWARD SEPARATE CONTRACTS
§ 6.1.1 The Owner reserves the right to perform construction or operations related to and adjacent to the Project with the Owner's own forces; and to award separate contracts in connection with other portions of the Project or other construction or operations on the site under Conditions of the Contract substantially similar to these, including those portions related to insurance and waiver of subrogation.

Init.

AIA Document A201™ – 2007. Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987, 1997 and 2007 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 08:45:01 on 08/06/2016 under Order No.7898458378_1 which expires on 04/22/2017, and is not for resale.
User Notes:                                                                                                            (727872888)

27

§ 6.1.2 When separate contracts are awarded for different portions of the Project or other construction or operations on the site, the term "Contractor" in the Contract Documents in each case shall mean the Contractor who executes each separate Owner-Contractor Agreement.

§ 6.1.3 The Owner shall provide for coordination of the activities of the Owner's own forces and of each separate contractor with the Work of the Contractor, who shall cooperate with them. The Contractor shall coordinate and participate with other separate contractors and the Owner in reviewing their construction schedules when directed to do so. The Contractor shall make any revisions to the construction schedule deemed necessary after a joint review and mutual agreement. The construction schedules shall then constitute the schedules to be used by the Contractor, separate contractors and the Owner until subsequently revised.

*(Paragraph deleted)*
### § 6.2 MUTUAL RESPONSIBILITY
§ 6.2.1 The Contractor shall afford the Owner and separate contractors reasonable opportunity for introduction and storage of their materials and equipment and performance of their activities, and shall connect and coordinate the Contractor's construction and operations with theirs as required by the Contract Documents.

§ 6.2.2 If part of the Contractor's Work depends for proper execution or results upon construction or operations by the Owner or a separate contractor, the Contractor shall, prior to proceeding with that portion of the Work, promptly report to the Architect apparent discrepancies or defects in such other construction that would render it unsuitable for such proper execution and results. Failure of the Contractor so to report shall constitute an acknowledgment that the Owner's or separate contractor's completed or partially completed construction is fit and proper to receive the Contractor's Work, except as to defects not then reasonably discoverable.

§ 6.2.3 The Contractor shall reimburse the Owner for costs incurred by the Owner that are payable to a separate contractor because of the Contractor's delays, improperly timed activities or defective construction. The Owner shall be responsible to the Contractor for costs the Contractor incurs because of a separate contractor's delays, improperly timed activities, damage to the Work or defective construction.

§ 6.2.4 The Contractor shall promptly remedy damage wrongfully caused by the Contractor to completed or partially completed construction or to property of the Owner or separate contractors as provided in Section 10.2.5.

§ 6.2.5 The Owner and each separate contractor shall have the same responsibilities for cutting and patching as are described for the Contractor in Section 3.14.

### § 6.3 OWNER'S RIGHT TO CLEAN UP
§ 6.3.1 If a dispute arises among the Contractor, separate contractors and the Owner as to the responsibility under their respective contracts for maintaining the premises and surrounding area free from waste materials and rubbish, the Owner may clean up and the Architect will recommend an allocation of the cost among those responsible, subject to each party's right to seek a review of that determination under Article 4.4.

### ARTICLE 7   CHANGES IN THE WORK
### § 7.1 GENERAL
§ 7.1.1 Changes in the Work may be accomplished after execution of the Contract, and without invalidating the Contract, by Change Order, Construction Change Directive or order for a minor change in the Work, subject to the limitations stated in this Article 7 and elsewhere in the Contract Documents.

§ 7.1.2 A Change Order shall be based upon agreement among the Owner, Contractor and Architect; a Construction Change Directive requires agreement by the Owner and Architect and may or may not be agreed to by the Contractor.

§ 7.1.3 Changes in the Work shall be performed under applicable provisions of the Contract Documents, and the Contractor shall proceed promptly, unless otherwise provided in the Change Order, Construction Change Directive or order for a minor change in the Work.

Init.

/

AIA Document A201™ – 2007. Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987, 1997 and 2007 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 08:45:01 on 06/08/2016 under Order No.7898468378_1 which expires on 04/22/2017, and is not for resale.
User Notes:                                                                      (727872888)

28

**§ 7.2 CHANGE ORDERS**
**§ 7.2.1** A Change Order is a written instrument prepared by the Architect and signed by the Owner, Contractor and Architect, stating their agreement upon all of the following:

 .1    Change in the Work;
 .2    The amount of the adjustment, if any, in the Contract Sum; and
 .3    The extent of the adjustment, if any, in the Contract Time.

**§ 7.2.2** Methods used in determining adjustments to the Contract Sum may include those listed in Section 7.3.3.

**§ 7.2.3** If any Change Order, signed by the Owner and the Contractor, results in or contains an increase in the Contract Sum, the amount of such increase shall be conclusively deemed and held to include the Contractor's costs of and for all applicable taxes, bond premiums, insurance premiums, supervision, overhead, profit, labor, labor impact and materials related to the Change Order and the additional work required and/or contemplated thereby, and Contractor shall be conclusively deemed and held to have waived any known Claim for any additional sum for delays, disruption, acceleration, loss of productivity, ripple effect, inefficiency or any other matter arising out of or in any way related to such Change Order and the additional work contemplated thereby, unless such claim is specifically reserved in such change order.

**§ 7.3 CONSTRUCTION CHANGE DIRECTIVES**
**§ 7.3.1** A Construction Change Directive is a written order prepared by the Architect and signed by the Owner and Architect, directing a change in the Work prior to agreement on adjustment, if any, in the Contract Sum or Contract Time, or both. The Owner may by Construction Change Directive, without invalidating the Contract, order changes in the Work within the general scope of the Contract consisting of additions, deletions or other revisions, the Contract Sum and Contract Time being adjusted accordingly.

**§ 7.3.2** A Construction Change Directive shall be used in the absence of total agreement on the terms of a Change Order.

**§ 7.3.3** If the Construction Change Directive provides for an adjustment to the Contract Sum, the adjustment shall be based on one of the following methods:

 .1    Mutual acceptance of a lump sum properly itemized and supported by sufficient substantiating data to permit evaluation;
 .2    Unit prices stated in the Contract Documents or subsequently agreed upon;
 .3    Cost to be determined in a manner agreed upon by the parties and a mutually acceptable fixed or percentage fee; or
 .4    As provided in Section 7.3.6.

**§ 7.3.4** Upon receipt of a Construction Change Directive, the Contractor shall promptly proceed with the change in the Work involved and advise the Architect of the Contractor's agreement or disagreement with the method, if any, provided in the Construction Change Directive for determining the proposed adjustment in the Contract Sum or Contract Time.

**§ 7.3.5** A Construction Change Directive signed by the Contractor indicates the agreement of the Contractor therewith, including adjustment in Contract Sum and Contract Time or the method for determining them. Such agreement shall be effective immediately and shall be recorded as a Change Order.

**§ 7.3.6** If the Contractor does not respond promptly or disagrees with the method for adjustment in the Contract Sum, the method and the adjustment shall be determined by the Architect on the basis of reasonable expenditures and savings of those performing the Work attributable to the change, including, in case of an increase in the Contract Sum, a reasonable allowance for overhead and profit. In such case, and also under Section 7.3.3.3, the Contractor shall keep and present, in such form as the Architect may prescribe, an itemized accounting together with appropriate supporting data. Unless otherwise provided in the Contract Documents, costs for the purposes of this Section 7.3.6 shall be limited to the following:

 .1    Costs of labor, including social security, old age and unemployment insurance, fringe benefits required by agreement or custom, and workers' compensation insurance;

**Init.**

**/**

AIA Document A201™ – 2007. Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987, 1997 and 2007 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 08:45:01 on 05/06/2016 under Order No.7896458378_1 which expires on 04/22/2017, and is not for resale.
User Notes:                                                                                                 (727872888)

Complaint, Exh. B

.2    Costs of materials, supplies and equipment, including cost of transportation, whether incorporated or consumed;

.3    Rental costs of machinery and equipment, exclusive of hand tools, whether rented from the Contractor or others;

.4    Costs of premiums for all bonds and insurance, permit fees, and sales, use or similar taxes related to the Work; and

.5    Additional costs of supervision and field office personnel directly attributable to the change.

**§ 7.3.7**
*(Paragraphs deleted)*
The amount of credit to be allowed by the Contractor to the Owner for a deletion or change which results in a net decrease in the Contract Sum shall be actual net cost as confirmed by the Architect. When both additions and credits covering related Work or substitutions are involved in a change, the allowance for overhead and profit shall be figured on the basis of net increase, if any, with respect to that change.

**§ 7.3.8** Pending final determination of the total cost of a Construction Change Directive to the Owner, amounts not in dispute for such changes in the Work shall be included in Applications for Payment accompanied by a Change Order indicating the parties' agreement with part or all of such costs. For any portion of such cost that remains in dispute, the Architect will make an interim determination for purposes of monthly certification for payment for those costs. That determination of cost shall adjust the Contract Sum on the same basis as a Change Order, subject to the right of either party to disagree and assert a claim in accordance with Article 4.

**§ 7.3.9** When the Owner and Contractor agree with the determination made by the Architect concerning the adjustments in the Contract Sum and Contract Time, or otherwise reach agreement upon the adjustments, such agreement shall be effective immediately and shall be recorded by preparation and execution of an appropriate Change Order.
*(Paragraph deleted)*
**§ 7.4 MINOR CHANGES IN THE WORK**
**§ 7.4.1** The Architect will have authority to order minor changes in the Work not involving adjustment in the Contract Sum or extension of the Contract Time and not inconsistent with the intent of the Contract Documents. Such changes shall be effected by written order and shall be binding on the Owner and Contractor. The Contractor shall carry out such written orders promptly.

**§ 7.5 OVERHEAD AND PROFIT**
Notwithstanding any provision herein to the contrary, the amounts for combined overhead and profit for Change Orders and Construction Change Directives are as follows:

1.    For the Contractor, for Work performed by the Contractor's own forces or increases in any bond premiums, insurance; five percent (5%) of the cost.

2.    For the Contractor, the Work performed by the Contractor's Subcontractor; five percent (5%) of the amount due the Subcontractor.

3.    For each Subcontractor or Sub-subcontractors involved, the Work performed by that Subcontractor or Sub-subcontractor's own forces; ten percent (10%) of the cost.

4.    For each Subcontractor, the Work performed by the Subcontractor's Sub-subcontractor's; ten percent (10%) of the amount due the Sub-subcontractor.

5.    No further tiering of the Sub-subcontractors will be allowed mark-up for overhead and profit.

6.    Cost to which overhead and fee is to be applied shall be determined in accordance with Subparagraph 7.3.6.

7.    In order to facilitate checking of quotations for extras or credits, all proposals, except those so minor that their propriety can be seen by inspection, shall be accomplished by a complete itemization of costs including labor, materials and Subcontracts. Labor and materials shall be

**Init.**

**/**

AIA Document A201™ – 2007. Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987, 1997 and 2007 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 08:45:01 on 06/08/2016 under Order No.7898459378_1 which expires on 04/22/2017, and is not for resale.
User Notes: (727872888)

30

Complaint, Exh. B

itemized in the manner prescribed above. Where major cost items are Subcontracts, they shall be itemized also. In no case will be a change involving over $100.00 be approved without such itemization.

8.   Notwithstanding the above, no mark up for overhead and profit will be allowed for intangible costs such as overhead and profit on lower tier subcontractor.

## ARTICLE 8   TIME
§ 8.1 DEFINITIONS
§ 8.1.1 Unless otherwise provided, Contract Time is the period of time, including authorized adjustments, allotted in the Contract Documents for Substantial Completion of the Work.

§ 8.1.2 The date of commencement of the Work is the date established in the Agreement.

§ 8.1.3 The date of Substantial Completion is the date certified by the Architect in accordance with Section 9.8.

§ 8.1.4 The term "day" as used in the Contract Documents shall mean calendar day unless otherwise specifically defined.

§ 8.2 PROGRESS AND COMPLETION
§ 8.2.1 Time limits stated in the Contract Documents are of the essence of the Contract. By executing the Agreement the Contractor confirms that the Contract Time is a reasonable period for performing the Work.

§ 8.2.2 The Contractor shall not knowingly, except by agreement or instruction of the Owner in writing, prematurely commence operations on the site or elsewhere prior to the effective date of insurance required by Article 11 to be furnished by the Contractor and Owner. The date of commencement of the Work shall not be changed by the effective date of such insurance. Unless the date of commencement is established by the Contract Documents or a notice to proceed given by the Owner, the Contractor shall notify the Owner in writing not less than five days or other agreed period before commencing the Work to permit the timely filing of mortgages, mechanic's liens and other security interests.

§ 8.2.3 The Contractor shall proceed expeditiously with adequate forces and shall achieve Substantial Completion within the Contract Time. In that this Project will be constructed in phases, with certain buildings being occupied before other buildings are completed, the Contractor represents and agrees that the Contract Time has been determined and adjusted with respect to Contractor's need for access. The Contractor shall ascertain, coordinate and minimize the impact of interruption of the operations on the adjacent buildings or occupied buildings. Such interruptions have been anticipated and included in the Contract sum.

§ 8.3 DELAYS AND EXTENSIONS OF TIME
§ 8.3.1 If the Contractor is delayed at any time in the progress of the Work due to causes outside of its control or the control of its subcontractors or suppliers, the Contractor may submit a Change Order requesting an extension of the Contract Time in accordance with the procedures established in Article 7 and 4.3.7. The Contractor warrants by execution of the Contract that the Contractor has accounted for and anticipated foreseeable delays and that the Work can be completed within the Contract Time. The Owner shall not unreasonably withhold approval of a Change Order requesting additional time due to delay when (a) the delay was unforeseeable at the time of the execution of the Contract, (b) the delay was not caused by the Contractor or its subcontractors or suppliers, and (c) the delay could not have been avoided by the Contractor's timely notice to the Owner and (d) the Contractor was not concurrently delaying the project's critical path at the time the delay which is subject of the proposed Change Order occurred. Any extension of the Contract Time shall be net of any foreseeable delays or other delays attributable to the Contractor.
§ 8.3.2 Claims relating to time shall be made in accordance with applicable provisions of Section 4.3.

§ 8.3.3 This Section 8.3 does not preclude recovery of damages for delay by either party under other provisions of the Contract Documents. However, Contractor shall not seek an increase in the Contract Sum on account of delays, for any delay, unless such delay is caused by the actions or omissions of the Owner, or the Architect, and its consultants.

**Init.**

**/**

AIA Document A201™ – 2007. Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987, 1997 and 2007 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 08:45:01 on 06/06/2016 under Order No.7898458378_1 which expires on 04/22/2017, and is not for resale.
User Notes:                                                                                               (727872888)

Complaint, Exh. B

§ 8.3.4  Contractor's written claims for extension of Contract Time shall be accompanied by detailed dates, correspondence, notices, and any other data which provides proof of the events which are the basis for the claim, that details the critical path Work items on the schedule, justifying the time extension. Said request shall specifically detail the extension of the critical path of the Project caused by the events which underlie the time extension request. Any claim not including said data shall be deemed waived, until such time as contractor provides such data in accordance with the contract documents.

§ 8.3.5  Delays due to tardy shop drawing submittal, tardy material ordering or shipment, or any other delays caused by a supplier or a Subcontractor shall not be deemed a valid cause for delay and shall not be accepted as a basis for Claims for extension of time, as the scheduling and control of suppliers and Subcontractors is a part of the Contractor's responsibility.

§ 8.3.6  Permitting the Contractor to continue and finish the Work or any part of the Work after the dates fixed for completion, or after the dates to which the time for completion may have been extended, shall in no way operate as a waiver on the part of the Owner of any of his rights under the Contract.

§ 8.3.7  Upon request from Owner, Contractor shall develop and submit to Owner for its review and consideration, an early completion acceleration program. Said program shall include an estimate of all additional costs that might be incurred in accelerating the Work, as well as any bonus incentives to be paid to Contractor and its Subcontractors in the event Substantial Completion of the Work by the early completion date requested by Owner. The acceptance of any such early completion program shall be at Owner's sole discretion. If Owner so elects to accept Contractor's program, an appropriate amendment to the Contract shall be prepared and executed by the parties.

§ 8.3.8  The Owner may, in its sole discretion and for any reason, direct Contractor to accelerate the schedule of performance by providing overtime, extra shifts, Saturday, Sunday and/or holiday Work and/or by having all or any subcontractors or sub-subcontractors designated by the Owner provide overtime, extra shifts. Saturday, Sunday and/or holiday Work to meet any of the scheduled milestones. To the extent such acceleration is required due to Contractor's negligence or failure to timely or properly progress the work, Contractor shall not be compensated for costs associated with a said direction to accelerate, but will be compensated if such acceleration is due to other causes outside the control of the Contractor.

## ARTICLE 9   PAYMENTS AND COMPLETION
### § 9.1 CONTRACT SUM
§ 9.1.1 The Contract Sum is stated in the Agreement and, including authorized adjustments, is the total amount payable by the Owner to the Contractor for performance of the Work under the Contract Documents.

### § 9.2 SCHEDULE OF VALUES
§ 9.2.1 Before the first Application for Payment, the Contractor shall submit to the Architect a schedule of values allocated to various portions of the Work, prepared in such form and supported by such data to substantiate its accuracy as the Architect may require. This schedule, unless objected to by the Architect, shall be used as a basis for reviewing the Contractor's Applications for Payment.

### § 9.3 APPLICATIONS FOR PAYMENT
§ 9.3.1 At least ten days before the date established for each progress payment, the Contractor shall submit to the Owner an itemized Application for Payment for operations completed in accordance with the schedule of values. Such applications shall be notarized, if required, and supported by such data substantiating the Contractor's right to payment as the Owner or Architect may require, such as copies of requisitions from Subcontractors and material suppliers, and reflecting retainage if provided for in the Contract Documents.  Such Application for Payment shall be certified as correct by Contractor and shall be accompanied by waivers of liens and other documentation from Subcontractors and Sub-subcontractors as reasonably may be required by the Owner for monies previously paid to Contractor.  In addition, such Application for Payment shall contain a certification by the Contractor that there are no written claims of mechanics' or materialmen's liens submitted to the Contractor at the date of such Application for Payment, for which Contractor has received payment previously, that the Contractor has no knowledge of any filed mechanics' or materialmen's liens with respect to the Work for which Contractor has received payment previously, that all due and payable bills with respect to the Work have been paid to date or shall be paid from the

Init.

AIA Document A201™ – 2007. Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987, 1997 and 2007 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 08:46:01 on 08/08/2016 under Order No.7898456378_1 which expires on 04/22/2017, and is not for resale.
User Notes:                                                                                                              (727672888)

proceeds of such Application for Payment, that there is no known basis for the filing of any mechanics' or materialmen's liens on the work, and that waivers from all Subcontractors constitute an effective waiver of lien under the laws of the jurisdiction in which the Project is located to the extent of payments that have been made or are to be made concurrently with payment pursuant to such Application for Payment.  Upon request by Owner, copies of all Applications for Payment shall be submitted by Contractor directly to Owner.

§ 9.3.1.1 As provided in Section 7.3.8, such applications may include requests for payment on account of changes in the Work which have been properly authorized by Construction Change Directives, or by interim determinations of the Architect, but not yet included in Change Orders.

§ 9.3.1.2 Such applications may not include requests for payment for portions of the Work for which the Contractor does not intend to pay to a Subcontractor or material supplier, unless such Work has been performed by others whom the Contractor intends to pay.

§ 9.3.2 Unless otherwise provided in the Contract Documents, payments shall be made on account of materials and equipment delivered and suitably stored at the site for subsequent incorporation in the Work. If approved in advance by the Owner, payment may similarly be made for materials and equipment suitably stored off the site at a location agreed upon in writing. Payment for materials and equipment stored on or off the site shall be conditioned upon compliance by the Contractor with procedures satisfactory to the Owner to establish the Owner's title to such materials and equipment or otherwise protect the Owner's interest, and shall include the costs of applicable insurance, storage and transportation to the site for such materials and equipment stored off the site.

§ 9.3.3 The Contractor warrants that title to all Work covered by an Application for Payment will pass to the Owner no later than the time of payment. The Contractor further warrants that upon submittal of an Application for Payment all Work for which Certificates for Payment have been previously issued and payments received from the Owner shall, to the best of the Contractor's knowledge, information and belief, be free and clear of liens, claims, security interests or encumbrances in favor of the Contractor, Subcontractors, material suppliers, or other persons or entities making a claim by reason of having provided labor, materials and equipment relating to the Work.

§ 9.3.4  Each Application for Payment shall be accompanied by waiver and release upon progress payment forms acceptable to Owner which conform to Florida State law for all work, labor, equipment and material for which payment has been previously mad by prior applications, executed by the Contractor, and each subcontractor that has filed a Notice to Owner.  No payment under the Agreement shall be made, except at Owner's option, until and unless such waiver and release forms from the Contractor has been furnished.  In the event a Lien has been filed in the mortgage and conveyance records in the jurisdiction of the project by a subcontractor, sub-subcontractor, materialman, rental company or supplier, Owner shall have the option to withhold 125% of the recorded lien amount from the next applicable payment application after notice of the lien has been served on the Owner.  Owner's exercise of its option to withhold lien amounts shall not derogate from the obligation to otherwise pay undisputed amounts.

§ 9.3.5  Notwithstanding anything to the contrary herein or elsewhere contained in the Contract Documents, no payment of or towards the Contract Sum shall be due, owing or payable to the Contractor at any time when the Contractor is in material default in or under the Contract.

§ 9.4 CERTIFICATES FOR PAYMENT
§ 9.4.1 The Architect will, within ten (10) days after receipt of the Contractor's Application for Payment, either issue to the Owner a Certificate for Payment, with a copy to the Contractor, for such amount as the Architect determines is properly due, or notify the Contractor and Owner in writing of the Architect's reasons for withholding certification in whole or in part as provided in Section 9.5.1.

§ 9.4.2 The issuance of a Certificate for Payment will constitute a representation by the Architect to the Owner, based on the Architect's evaluation of the Work and the data comprising the Application for Payment, that the Work has progressed to the point indicated and that the information and belief, the quality of the Work is in accordance with the Contract Documents. The foregoing representations are subject to an evaluation of the Work for conformance with the Contract Documents upon Substantial Completion, to results of subsequent tests and inspections, to correction of minor deviations from the Contract Documents prior to completion and to specific qualifications expressed by the Architect. The issuance of a Certificate for Payment will further constitute a

Init.

AIA Document A201™ – 2007. Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987, 1997 and 2007 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 08:45:01 on 06/06/2016 under Order No.7998468378_1 which expires on 04/22/2017, and is not for resale.
User Notes:                                                                                      (727672986)

33

Complaint, Exh. B

representation that the Contractor is entitled to payment in the amount certified. However, the issuance of a Certificate for Payment will not be a representation that the Architect has (1) made exhaustive or continuous on-site inspections to check the quality or quantity of the Work, (2) reviewed construction means, methods, techniques, sequences or procedures, (3) reviewed copies of requisitions received from Subcontractors and material suppliers and other data requested by the Owner to substantiate the Contractor's right to payment, or (4) made examination to ascertain how or for what purpose the Contractor has used money previously paid on account of the Contract Sum.

§ 9.5 DECISIONS TO WITHHOLD CERTIFICATION
§ 9.5.1 The Architect may withhold a Certificate for Payment in whole or in part, to the extent reasonably necessary to protect the Owner, if in the Architect's opinion the representations to the Owner required by Section 9.4.2 cannot be made. If the Architect is unable to certify payment in the amount of the Application, the Architect will notify the Contractor and Owner as provided in Section 9.4.1. If the Contractor and Architect cannot agree on a revised amount, the Architect will promptly issue a Certificate for Payment for the amount for which the Architect is able to make such representations to the Owner. The Architect may also withhold a Certificate for Payment or, because of subsequently discovered evidence, may nullify the whole or a part of a Certificate for Payment previously issued, to such extent as may be necessary in the Architect's opinion to protect the Owner from loss for which the Contractor is responsible, including loss resulting from acts and omissions described in Section 3.3.2, because of:

.1 defective Work not remedied following written notice from the Owner or Architect;

.2 third party claims filed or reasonable evidence indicating probable filing of such claims unless security acceptable to the Owner is provided by the Contractor;

.3 failure of the Contractor to make payments when due to Subcontractors or for labor, materials or equipment;

.4 reasonable evidence that the Work cannot be completed for the unpaid balance of the Contract Sum including retainage;

.5 damage to the Owner or another contractor;

.6 reasonable evidence that the Work will not be completed within the Contract Time, and that the unpaid balance would not be adequate to cover actual or liquidated damages for the anticipated delay; or

.7 persistent failure to carry out the Work in accordance with the Contract Documents.

§ 9.5.2 When the above reasons for withholding certification are removed, certification will be made for amounts previously withheld.

*(Paragraph deleted)*
§ 9.6 PROGRESS PAYMENTS
§ 9.6.1 After the Architect has issued a Certificate for Payment, the Owner shall make payment in the manner and within the time provided in the Contract Documents, and shall so notify the Architect.

§ 9.6.2 The Contractor shall promptly pay each Subcontractor, upon receipt of payment from the Owner, out of the amount paid to the Contractor on account of such Subcontractor's portion of the Work, the amount to which said Subcontractor is entitled, reflecting percentages actually retained from payments to the Contractor on account of such Subcontractor's portion of the Work. The Contractor shall, by appropriate agreement with each Subcontractor, require each Subcontractor to make payments to Sub-subcontractors in a similar manner.

§ 9.6.3 The Architect will, on request, furnish to a Subcontractor, if practicable, information regarding percentages of completion or amounts applied for by the Contractor and action taken thereon by the Architect and Owner on account of portions of the Work done by such Subcontractor.

§ 9.6.4 Neither the Owner nor Architect shall have an obligation to pay or to see to the payment of money to a Subcontractor except as may otherwise be required by law.

§ 9.6.5 Payment to material suppliers shall be treated in a manner similar to that provided in Sections 9.6.2, 9.6.3 and 9.6.4.

§ 9.6.6 A Certificate for Payment, a progress payment, or partial or entire use or occupancy of the Project by the Owner shall not constitute acceptance of Work not in accordance with the Contract Documents.

AIA Document A201™ – 2007. Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987, 1997 and 2007 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 08:45:01 on 08/08/2016 under Order No.7869458378_1 which expires on 04/22/2017, and is not for resale.
User Notes:                                                                                                    (727872888)

Init.

/

34

§ 9.6.7 Unless the Contractor provides the Owner with a payment bond in the full penal sum of the Contract Sum, payments received by the Contractor for Work properly performed by Subcontractors and suppliers shall be held by the Contractor for those Subcontractors or suppliers who performed Work or furnished materials, or both, under contract with the Contractor for which payment was made by the Owner. Nothing contained herein shall require money to be placed in a separate account and not commingled with money of the Contractor, shall create any fiduciary liability or tort liability on the part of the Contractor for breach of trust or shall entitle any person or entity to an award of punitive damages against the Contractor for breach of the requirements of this provision.

§ 9.6.8 Unless Contractor is not in default and otherwise requests Owner not to do so as a result of Contractor's good faith dispute with a Subcontractor or supplier, Owner may make payments jointly to the order of Contractor and its Subcontractor or supplier after giving ten days' notice to Contractor of Owner's intention to pay the subcontractor(s).

§ 9.7 FAILURE OF PAYMENT
§ 9.7.1 If the Architect does not issue a Certificate for Payment, through no fault of the Contractor, within seven days after receipt of the Contractor's Application for Payment, or if the Owner does not pay the Contractor within seven days after the date established in the Contract Documents the amount certified by the Architect or awarded by arbitration, then the Contractor may, upon fifteen additional days' written notice to the Owner and Architect, stop the Work until payment of the amount owing has been received. The Contract Time shall be extended appropriately and the Contract Sum shall be increased by the amount of the Contractor's reasonable costs of shut-down, delay and start-up, plus interest as provided for in the Contract Documents.

§ 9.8 SUBSTANTIAL COMPLETION
§ 9.8.1 Substantial Completion is the stage in the progress of the Work when the Work or designated portion thereof is sufficiently complete in accordance with the Contract Documents so that the Owner can occupy or utilize the Work for its intended use, and a temporary Certificate of Occupancy has been obtained from the applicable governmental authority.  The Contractor shall secure and deliver to the Owner written warranties and guarantees from its Subcontractors, Sub-subcontractors and suppliers bearing the date of Substantial Completion or some other date as may be agreed to by the Owner and stating the period of warranty as required by the Contract Documents. The Contractor is responsible for the warranty of all Work following Substantial Completion, whether performed by it or by its Subcontractors at any tier.

§ 9.8.2 When the Contractor considers that the Work, or a portion thereof which the Owner agrees to accept separately, is substantially complete, the Contractor shall prepare and submit to the Architect a comprehensive list of items to be completed or corrected prior to final payment. Failure to include an item on such list does not alter the responsibility of the Contractor to complete all Work in accordance with the Contract Documents.

§ 9.8.3 Upon receipt of the Contractor's list, the Architect will make an inspection to determine whether the Work or designated portion thereof is substantially complete. If the Architect's inspection discloses any item, whether or not included on the Contractor's list, which is not sufficiently complete in accordance with the Contract Documents so that the Owner can occupy or utilize the Work or designated portion thereof for its intended use, the Contractor shall, before issuance of the Certificate of Substantial Completion, complete or correct such item upon notification by the Architect. In such case, the Contractor shall then submit a request for another inspection by the Architect to determine Substantial Completion.

§ 9.8.4 When the Work or designated portion thereof is substantially complete, the Architect will prepare a Certificate of Substantial Completion which shall establish the date of Substantial Completion, shall establish responsibilities of the Owner and Contractor for security, maintenance, heat, utilities, damage to the Work and insurance, and shall fix the time within which the Contractor shall finish all items on the list accompanying the Certificate. Warranties required by the Contract Documents shall commence on the date of Substantial Completion of the Work or designated portion thereof unless otherwise provided in the Certificate of Substantial Completion.

§ 9.8.5 The Certificate of Substantial Completion shall be submitted to the Owner and Contractor for their written acceptance of responsibilities assigned to them in such Certificate. Upon such acceptance and consent of surety, if any, the Owner shall make payment of retainage applying to such Work or designated portion thereof. Such payment

Init.

/

AIA Document A201™ – 2007. Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987, 1997 and 2007 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 08:45:01 on 06/06/2016 under Order No.7898458378_1 which expires on 04/22/2017, and is not for resale.
User Notes:                                                                                                                                          (727672888)

shall be adjusted for Work that is incomplete or not in accordance with the requirements of the Contract Documents, as provided for in the Contract Documents.

## § 9.9 PARTIAL OCCUPANCY OR USE

§ 9.9.1 The Owner may occupy or use any completed or partially completed portion of the Work at any stage when such portion is designated by separate agreement with the Contractor, provided such occupancy or use is consented to by the insurer as required under Section 11.4.1.5 and authorized by public authorities having jurisdiction over the Work. Such partial occupancy or use may commence whether or not the portion is substantially complete, provided the Owner and Contractor have accepted in writing the responsibilities assigned to each of them for payments, retainage, if any, security, maintenance, heat, utilities, damage to the Work and insurance, and have agreed in writing concerning the period for correction of the Work and commencement of warranties required by the Contract Documents. When the Contractor considers a portion substantially complete, the Contractor shall prepare and submit a list to the Architect as provided under Section 9.8.2. Consent of the Contractor to partial occupancy or use shall not be unreasonably withheld. The stage of the progress of the Work shall be determined by written agreement between the Owner and Contractor or, if no agreement is reached, by decision of the Architect.

§ 9.9.2 Immediately prior to such partial occupancy or use, the Owner, Contractor and Architect shall jointly inspect the area to be occupied or portion of the Work to be used in order to determine and record the condition of the Work.

§ 9.9.3 Unless otherwise agreed upon, partial occupancy or use of a portion or portions of the Work shall not constitute acceptance of Work not complying with the requirements of the Contract Documents.

## § 9.10 FINAL COMPLETION AND FINAL PAYMENT

§ 9.10.1 Upon receipt of written notice that the Work is ready for final inspection and acceptance and upon receipt of a final Application for Payment, the Architect will promptly make such inspection and, when the Architect finds the Work acceptable under the Contract Documents and the Contract fully performed, the Architect will promptly issue a final Certificate for Payment stating that to the best of the Architect's knowledge, information and belief, and on the basis of the Architect's on-site visits and inspections, the Work has been completed in accordance with terms and conditions of the Contract Documents and that the entire balance found to be due the Contractor and noted in the final Certificate is due and payable. The Architect's final Certificate for Payment will constitute a further representation that conditions listed in Section 9.10.2 as precedent to the Contractor's being entitled to final payment have been fulfilled. Neither Final Payment nor the release of any remaining retained percentage shall be due to the Contractor until the Owner has accepted the Work. The Owner shall accept the Work only after all conditions for Final Payment and release of the retained percentage set forth in the Contract Documents have been satisfied, and each of the following events have occurred:

  (1)    All labor has been performed and material supplied and incorporated into the Work in a good workmanlike manner consistent with the Contract Documents.

  (2)    The Work, premises and surrounding area have been cleaned up consistent with Subparagraph 3.15.1.

  (3)    All persons, firms and corporations, including all laborers, materialpersons, suppliers and Subcontractors who have furnished equipment, supplied materials or performed work for or in connection with the Work, including but not limited to those persons who could file a claim of lien, have been paid or will be paid in full out of the remaining retained percentage; and those persons, firms and corporations have submitted their final statements with a waiver of all rights to mechanics' lien, stop notice, or recourse against surety of the bond,   subject to final payment.   The Contractor shall make these waivers available to the Owner for inspection by the Owner.   In the event a dispute has arisen between the Contractor and one of the parties listed above in this Article which prevents the Contractor from obtaining the waiver of rights required by this Article from that party, the Contractor may satisfy the requirements of this Article by (a) supplying a payment bond issued by a surety licensed to do business in the State of Florida and acceptable to the Owner to remove the effect of any lien, stop notice or related claim against the Work or the real property upon which the Work is built, and (b) agreeing to defend and indemnify the Owner against all actions filed by persons who have supplied materials to or performed work for or in connection to the Work.   The Contractor shall also have submitted an affidavit to the Owner and lender that all waivers

**Init.**

**/**

AIA Document A201™ – 2007. Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987, 1997 and 2007 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 08:45:01 on 06/06/2016 under Order No.7898458378_1 which expires on 04/22/2017, and is not for resale.
User Notes:                                                                                                (727872688)

36

Complaint, Exh. B

described in this Article have been obtained from all parties described in this Article or that the claims of such parties have been satisfied by the obtaining of a bond.

(4)   All portions of the Work requiring inspection by any governmental authority have been inspected and approved by such authority; and any requisite certificates of occupancy, approvals, licenses and permits have been issued.

(5)   The Owner has received assignments of warranties of all Subcontractors and materialpersons.

**§ 9.10.2** Neither final payment nor any remaining retained percentage shall become due until the Contractor submits to the Architect (1) a final affidavit stating that payrolls, bills for materials and equipment, and other indebtedness connected with the Work for which the Owner or the Owner's property might be responsible or encumbered have been paid or otherwise satisfied, (2) a certificate evidencing that insurance required by the Contract Documents to remain in force after final payment is currently in effect and will not be canceled or allowed to expire until at least 30 days' prior written notice has been given to the Owner, (3) a written statement that the Contractor knows of no substantial reason that the insurance will not be renewable to cover the period required by the Contract Documents, (4) consent of surety, if any, to final payment and (5), if required by the Owner, other data establishing payment or satisfaction of obligations, such as receipts, releases and waivers of liens for which the Contractor has been paid, claims, security interests or encumbrances arising out of the Contract, to the extent and in such form as may be designated by the Owner. If a Subcontractor refuses to furnish a release or waiver required by the Owner, the Contractor may furnish a bond satisfactory to the Owner to indemnify the Owner against such lien. If such lien remains unsatisfied after payments are made, the Contractor shall refund to the Owner all money that the Owner may be compelled to pay in discharging such lien, including all costs and reasonable attorneys' fees.   In no event shall final payment become due until the   Project Architect has issued a Certificate of Substantial Completion (AIA Form G704 or a similar form satisfactory to Owner), unless Owner has received full and unconditional releases of liens from Contractor and all subcontractors and materialmen performing work or supplying materials to the Project that filed a notice to owner, all in form and content satisfactory to Owner.

**§ 9.10.3** If, after Substantial Completion of the Work, final completion thereof is materially delayed through no fault of the Contractor or by issuance of Change Orders affecting final completion, and the Architect so confirms, the Owner shall, upon application by the Contractor and certification by the Architect, and without terminating the Contract, make payment of the balance due for that portion of the Work fully completed and accepted. If the remaining balance for Work not fully completed or corrected is less than retainage stipulated in the Contract Documents, and if bonds have been furnished, the written consent of surety to payment of the balance due for that portion of the Work fully completed and accepted shall be submitted by the Contractor to the Architect prior to certification of such payment. Such payment shall be made under terms and conditions governing final payment, except that it shall not constitute a waiver of claims.

**§ 9.10.4** The making of final payment shall constitute a waiver of Claims by the Owner except those arising from:
.1    liens, Claims, security interests or encumbrances arising out of the Contract and unsettled;
.2    failure of the Work to comply with the requirements of the Contract Documents; or
.3    terms of special warranties required by the Contract Documents.

**§ 9.10.5** Acceptance of final payment by the Contractor, a Subcontractor or material supplier shall constitute a waiver of claims by that payee except those previously made in writing and identified by that payee as unsettled at the time of final Application for Payment.

**ARTICLE 10   PROTECTION OF PERSONS AND PROPERTY**
**§ 10.1 SAFETY PRECAUTIONS AND PROGRAMS**
**§ 10.1.1** The Contractor shall be responsible for initiating, maintaining and supervising all safety precautions and programs in connection with the performance of the Contract.

**§ 10.2 SAFETY OF PERSONS AND PROPERTY**
**§ 10.2.1** The Contractor shall take reasonable precautions for safety of, and shall provide reasonable protection to prevent damage, injury or loss to:
.1    employees on the Work and other persons who may be affected thereby;

Init.

/

AIA Document A201™ – 2007. Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987, 1997 and 2007 by The American Institute of Architects. All rights reserved. WARNING: This AIA®  Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA®  Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 08:45:01 on 06/06/2016 under Order No.7898456378_1 which expires on 04/22/2017, and is not for resale.
User Notes:                                                                                                                              (727672886)

Complaint, Exh. B

.2    the Work and materials and equipment to be incorporated therein, whether in storage on or off the site, under care, custody or control of the Contractor or the Contractor's Subcontractors or Sub-subcontractors; and

.3    other property at the site or adjacent thereto, such as trees, shrubs, lawns, walks, pavements, roadways, structures and utilities not designated for removal, relocation or replacement in the course of construction.

**§ 10.2.2** The Contractor shall give notices and comply with applicable laws, ordinances, rules, regulations and lawful orders of public authorities bearing on safety of persons or property or their protection from damage, injury or loss.

**§ 10.2.3** The Contractor shall erect and maintain, as required by existing conditions and performance of the Contract, reasonable safeguards for safety and protection, including posting danger signs and other warnings against hazards, promulgating safety regulations and notifying owners and users of adjacent sites and utilities.

**§ 10.2.4** When use or storage of explosives or other hazardous materials or equipment or unusual methods are necessary for execution of the Work, the Contractor shall exercise utmost care and carry on such activities under supervision of properly qualified personnel.

**§ 10.2.5** The Contractor shall promptly remedy damage and loss (other than damage or loss to be insured under property insurance required by the Contract Documents) to property referred to in Sections 10.2.1.2 and 10.2.1.3 caused in whole or in part by the Contractor, a Subcontractor, a Sub-subcontractor, or anyone directly or indirectly employed by any of them, or by anyone for whose acts they may be liable and for which the Contractor is responsible under Sections 10.2.1.2 and 10.2.1.3, except damage or loss attributable to acts or omissions of the Owner or Architect or anyone directly or indirectly employed by either of them, or by anyone for whose acts either of them may be liable, and not attributable to the fault or negligence of the Contractor. The foregoing obligations of the Contractor are separate from and are not to be construed as being included in the Contractor's obligations under Section 3.18.

**§ 10.2.6** The Contractor shall designate a responsible member of the Contractor's organization at the site whose duty shall be the prevention of accidents. This person shall be the Contractor's superintendent unless otherwise designated by the Contractor in writing to the Owner and Architect.

**§ 10.2.7** The Contractor shall not load or permit any part of the construction or site to be loaded so as to endanger its safety.

**§ 10.2.8** The Contractor shall provide and maintain in good operating condition suitable and adequate fire protection equipment and services, and shall comply with all reasonable recommendations regarding fire protection made by the representatives of the fire insurance company carrying insurance on the work or by the local fire chief or fire marshal. The area within the site limits shall be kept orderly and clean, and all combustible rubbish shall be promptly removed from the site.

### § 10.3 HAZARDOUS MATERIALS

**§ 10.3.1** If reasonable precautions will be inadequate to prevent foreseeable bodily injury or death to persons resulting from a material or substance, including but not limited to asbestos or polychlorinated biphenyl (PCB), encountered on the site by the Contractor, the Contractor shall, upon recognizing the condition, immediately stop Work in the affected area and report the condition to the Owner and Architect in writing.

**§ 10.3.2** The Owner shall obtain the services of a licensed laboratory to verify the presence or absence of the material or substance reported by the Contractor and, in the event such material or substance is found to be present, to verify that it has been rendered harmless. Unless otherwise required by the Contract Documents, the Owner shall furnish in writing to the Contractor and Architect the names and qualifications of persons or entities who are to perform tests verifying the presence or absence of such material or substance or who are to perform the task of removal or safe containment of such material or substance. The Contractor and the Architect will promptly reply to the Owner in writing stating whether or not either has reasonable objection to the persons or entities proposed by the Owner. If either the Contractor or Architect has an objection to a person or entity proposed by the Owner, the Owner shall propose another to whom the Contractor and the Architect have no reasonable objection. When the material or

Init.

/

AIA Document A201™ – 2007. Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987, 1997 and 2007 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 08:45:01 on 06/06/2016 under Order No.7898458378_1 which expires on 04/22/2017, and is not for resale.
User Notes:                                                                                (727872688)

Complaint, Exh. B

substance has been rendered harmless, Work in the affected area shall resume upon written agreement of the Owner and Contractor. The Contract Time shall be extended appropriately and the Contract Sum shall be increased in the amount of the Contractor's reasonable additional costs of shut-down, delay and start-up, which adjustments shall be accomplished as provided in Article 7.

§ 10.3.3 To the fullest extent permitted by law, the Owner shall indemnify and hold harmless the Contractor, Subcontractors, Architect, Architect's consultants and agents and employees of any of them from and against claims, damages, losses and expenses, including but not limited to attorneys' fees, arising out of or resulting from performance of the Work in the affected area if in fact the material or substance presents the risk of bodily injury or death as described in Section 10.3.1 and has not been rendered harmless, provided that such claim, damage, loss or expense is attributable to bodily injury, sickness, disease or death, or to injury to or destruction of tangible property (other than the Work itself) and provided that such damage, loss or expense is not due in whole or in part to the sole negligence of a party seeking indemnity.

§ 10.3.4 The Owner shall not be responsible under Section 10.3 for materials and substances brought to the site by the Contractor unless such materials or substances were required by the Contract Documents.

§ 10.3.5 If, without negligence on the part of the Contractor, the Contractor is held liable for the cost of remediation of a hazardous material or substance solely by reason of performing Work as required by the Contract Documents, the Owner shall indemnify the Contractor for all cost and expense thereby incurred.

*(Paragraphs deleted)*
### ARTICLE 11   INSURANCE AND BONDS
### § 11.1 CONTRACTOR'S LIABILITY INSURANCE
§ 11.1.1 The Contractor shall purchase from and maintain in a company or companies lawfully authorized to do business in the jurisdiction in which the Project is located such insurance as will protect the Contractor from claims set forth below which may arise out of or result from the Contractor's operations under the Contract and for which the Contractor may be legally liable,   such operations be by the Contractor or by a Subcontractor or by anyone directly or indirectly employed by any of them, or by anyone for whose acts any of them may be liable:

.1   Claims under workers' compensation, disability benefit and other similar employee benefit acts which are applicable to the Work to be performed including private entities performing Work at the site and exempt from coverage on account of number of employees or occupation, which entities shall maintain voluntary compensation coverage at the same limits specified for mandatory coverage for the duration of the Project;

.2   Contractor's employees or persons or entities excluded by statute from the requirements of clause but required by the Contract Documents to provide the insurance required by the clause;

.3   Claims for damages because of bodily injury, sickness or disease, or death of any person other than the Contractor's employees;

.4   Claims for damages insured by usual personal injury liability coverage;

.5   Claims for damages, other than to the Work itself, because of injury to or destruction of tangible property, including loss of use resulting therefrom;

.6   Claims for damages because of bodily injury, death of a person or property damage arising out of ownership, maintenance or use of a motor vehicle;

.7   Claims for bodily injury or property damage arising out of completed operations; and

.8   Claims involving contractual liability insurance applicable to the Contractor's obligations under Section 3.18.

.9      The Contractor and its Subcontractors (unless otherwise agreed to in writing by the Owner) shall purchase and maintain the following insurance for the life of the Contract:

|  | Contractor | Subcontractors |
|---|---|---|
| **COMMERCIAL GENERAL LIABILITY** | | |
| **Limits of Liability:** | | |
| General Aggregate | $2,000,000 | $1,000,000 |
| Products/Completed Operations Aggregate | $2,000,000 | $1,000,000 |
| Contractual Liability | $2,000,000 | $1,000,000 |
| Each Occurrence | $1,000,000 | $1,000,000 |

**Init.**

**/**

AIA Document A201™ – 2007. Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987, 1997 and 2007 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 08:45:01 on 06/06/2016 under Order No.7898458378_1 which expires on 04/22/2017, and is not for resale.
**User Notes:**                                                                                                      (727872888)

**39**

| | Contractor | Subcontractors |
|---|---|---|
| Personal and Advertising Injury | $1,000,000 | $1,000,000 |
| Fire Legal Liability | $50,000 | $50,000 |
| Medical Payments | $5,000 | $5,000 |

Commercial General Liability Form to be used is CG00 01 10 01
Form includes S, C & U and Contractual Liability.

COMMERCIAL UMBRELLA LIABILITY

Limits of Liability:

| | | |
|---|---|---|
| General Aggregate | $5,000,000 | $1,000,000 |
| Each Occurrence | $5,000,000 | $1,000,000 |
| Max. Self-Insured Retention / Deductible | $50,000 | $50,000 |

AUTOMOBILE LIABILITY

Limits of Liability:

| | | |
|---|---|---|
| Bodily Injury or Property Damage Combined Single Limit | $1,000,000 | $1,000,000 |
| Personal Injury Protection (No Fault) | $10,000 | $10,000 |
| Hired – Non-Owned Liability | $1,000,000 | $1,000,000 |

| | Contractor | Subcontractors |
|---|---|---|

WORKERS COMPENSATION

Limits of Liability:

| | | |
|---|---|---|
| Workers Compensation | Statutory | Statutory |
| Employer's Liability – Each Accident | $100,000 | $100,000 |
| Employer's Liability – Policy Limit by     Disease | $500,000 | $500,000 |
| Employer's Liability – Each Employee by     Disease | $100,000 | $100,000 |

**§ 11.1.2** The insurance required by Section 11.1.1 shall be written for not less than limits of liability specified in the Contract Documents or required by law, whichever coverage is greater. Coverages shall be written on an "occurrence" basis and shall be maintained without interruption from date of commencement of the Work, until Final Completion of the Work.

Such coverages shall be maintained by insurance carriers acceptable to Owner in all respects.

**§ 11.1.3** Certificates of insurance containing endorsements required herein acceptable to the Owner shall be filed with the Owner prior to commencement of the Work. These certificates and the insurance policies required by this Section 11.1 shall contain a provision that coverages afforded under the policies will not be canceled or allowed to expire until at least 30 days' prior written notice has been given to the Owner. If any of the foregoing insurance coverages are required to remain in force after final payment and are reasonably available, an additional certificate evidencing continuation of such coverage shall be submitted with the final Application for Payment as required by Section 9.10.2. Information concerning reduction of coverage on account of revised limits or claims paid under the General Aggregate, or both, shall be furnished by the Contractor with reasonable promptness in accordance with the Contractor's information and belief.   All written notices to be given to Owner shall be given by registered mail, return receipt requested   The Contractor shall furnish to the Owner or Owner's Representative with copies of any endorsements that are subsequently issued amending coverage or limits. Failure of the Contractor to obtain and maintain required insurance shall be grounds for termination of the Contract by the Owner.   The Owner shall be listed as a named additional insured by appropriate endorsements concerning all insurance coverages furnished by Contractor with the exception of Worker's Compensation. The Contractor shall provide Certificates of Insurance evidencing the named additional insured status of the Owner.

**§ 11.1.4**   The insurance required by this Paragraph for the Contractor shall be written with a company having at least an "A" policyholder's rating and a minimum Class 15 financial rating as listed in the latest edition of Best's

Init.

/

AIA Document A201™ – 2007. Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987, 1997 and 2007 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 08:45:01 on 06/06/2016 under Order No.7698458378_1 which expires on 04/22/2017, and is not for resale.
User Notes:                                                                                                                            (727872888)

Complaint, Exh. B

Insurance Guide. The insurance required by this Paragraph for the each Subcontractor shall be written with a company having at least an "B+" policyholder's rating and a minimum Class 5 financial rating as listed in the latest edition of Best's Insurance Guide.

§11.1.5  The Contractor shall carry sufficient comprehensive insurance on equipment at the site and in transit to and from the site. It is expressly understood that the Owner and Architect shall have no liability from damage to equipment.

§11.1.6  The Contractor shall remain fully liable and responsible for all obligations under the Contract Documents, whether or not the insurance provided by him is approved by the Owner or Architect and whether or not it is sufficient in amount, quality and coverage to protect him against such liability, and shall pay and make good all such obligations to the full extent such insurance does not cover them.

### § 11.2 OWNER'S LIABILITY INSURANCE
§ 11.2.1 The Owner shall be responsible for purchasing and maintaining the Owner's usual liability insurance.

### § 11.3 PROJECT MANAGEMENT PROTECTIVE LIABILITY INSURANCE
§ 11.3.1 Optionally, the Owner may require the Contractor to purchase and maintain Project Management Protective Liability Insurance from the Contractor's usual sources as primary coverage for the Owner's, Contractor's and Architect's vicarious liability for construction operations under the Contract. Unless otherwise required by the Contract Documents, the Owner shall reimburse the Contractor by increasing the Contract Sum to pay the cost of purchasing and maintaining such optional insurance coverage, and the Contractor shall not be responsible for purchasing any other liability insurance on behalf of the Owner. The minimum limits of liability purchased with such coverage shall be equal to the aggregate of the limits required for Contractor's Liability Insurance under Sections 11.1.1.2 through 11.1.1.5.

*(Paragraphs deleted)*
§ 11.3.2 To the extent damages are covered by Project Management Protective Liability Insurance, the Owner, Contractor and Architect waive all rights against each other for damages, except such rights as they may have to the proceeds of such insurance. The policy shall provide for such waivers of subrogation by endorsement or otherwise.

§ 11.3.3 The Owner shall not require the Contractor to include the Owner, Architect or other persons or entities as additional insureds on the Contractor's Liability Insurance coverage under Section 11.1.

*(Paragraphs deleted)*
### § 11.4 PROPERTY INSURANCE
§ 11.4.1 Unless otherwise provided, the Contractor shall purchase and maintain, in a company or companies lawfully authorized to do business in the jurisdiction in which the Project is located, property insurance written on a builder's risk "all-risk" or equivalent policy form in the amount of the initial Contract Sum, plus value of subsequent Contract Modifications and cost of materials supplied or installed by others, comprising total value for the entire Project at the site on a replacement cost basis without optional deductibles. Such property insurance shall be maintained, unless otherwise provided in the Contract Documents or otherwise agreed in writing by all persons and entities who are beneficiaries of such insurance, until final payment has been made as provided in Section 9.10 or until no person or entity other than the Owner has an insurable interest in the property required by this Section 11.4 to be covered, whichever is later. This insurance shall include interests of the Owner, the Contractor, Subcontractors and Sub-subcontractors in the Project.

§ 11.4.1.1 Property insurance shall be on an "all-risk" or equivalent policy form and shall include, without limitation, insurance against the perils of fire (with extended coverage) and physical loss or damage including, without duplication of coverage, theft, vandalism, malicious mischief, collapse, earthquake, flood, windstorm, falsework, testing and startup, temporary buildings and debris removal including demolition occasioned by enforcement of any applicable legal requirements, and shall cover reasonable compensation for Architect's and Contractor's services and expenses required as a result of such insured loss.

§ 11.4.1.2 If the Owner does not intend to purchase such property insurance required by the Contract and with all of the coverages in the amount described above, the Owner shall so inform the Contractor in writing prior to commencement of the Work. The Contractor may then effect insurance which will protect the interests of the

Init.

/

AIA Document A201™ – 2007. Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987, 1997 and 2007 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 08:46:01 on 08/08/2016 under Order No.7898458378_1 which expires on 04/22/2017, and is not for resale.
User Notes:                                                                                                                                                  (727872888)

Complaint, Exh. B

Contractor, Subcontractors and Sub-subcontractors in the Work, and by appropriate Change Order the cost thereof shall be charged to the Owner. If the Contractor is damaged by the failure or neglect of the Owner to purchase or maintain insurance as described above, without so notifying the Contractor in writing, then the Owner shall bear all reasonable costs properly attributable thereto.

§ 11.4.1.3 If the property insurance requires deductibles, the Owner shall pay costs not covered because of such deductibles.

§ 11.4.1.4 This property insurance shall cover portions of the Work stored off the site, and also portions of the Work in transit.

§ 11.4.1.5 Partial occupancy or use in accordance with Section 9.9 shall not commence until the insurance company or companies providing property insurance have consented to such partial occupancy or use by endorsement or otherwise. The Owner and the Contractor shall take reasonable steps to obtain consent of the insurance company or companies and shall, without mutual written consent, take no action with respect to partial occupancy or use that would cause cancellation, lapse or reduction of insurance.

§ 11.4.2 LOSS OF USE INSURANCE
§ 11.4.2.1 If during the Project construction period the Owner insures properties, real or personal or both, at or adjacent to the site by property insurance under policies separate from those insuring the Project, or if after final payment property insurance is to be provided on the completed Project through a policy or policies other than those insuring the Project during the construction period, the Owner shall waive all rights in accordance with the terms of Section 11.4.7 for damages caused by fire or other causes of loss covered by this separate property insurance. All separate policies shall provide this waiver of subrogation by endorsement or otherwise.

§ 11.4.2.2 Before an exposure to loss may occur, the Owner shall file with the Contractor a copy of each policy that includes insurance coverages required by this Section 11.4. Each policy shall contain all generally applicable conditions, definitions, exclusions and endorsements related to this Project. Each policy shall contain a provision that the policy will not be canceled or allowed to expire, and that its limits will not be reduced, until at least 30 days' prior written notice has been given to the Contractor.

§ 11.4.2.3 WAIVERS OF SUBROGATION
The Owner and Contractor waive all rights against (1) each other and any of their subcontractors, sub-subcontractors, agents and employees, each of the other, and (2) the Architect, Architect's consultants, separate contractors described in Article 6, if any, and any of their subcontractors, sub-subcontractors, agents and employees, for damages caused by fire or other causes of loss to the extent covered by property insurance obtained pursuant to this Section 11.4 or other property insurance applicable to the Work, except such rights as they have to proceeds of such insurance held by the Owner as fiduciary. The Owner or Contractor, as appropriate, shall require of the Architect, Architect's consultants, separate contractors described in Article 6, if any, and the subcontractors, sub-subcontractors, agents and employees of any of them, by appropriate agreements, written where legally required for validity, similar waivers each in favor of other parties enumerated herein. The policies shall provide such waivers of subrogation by endorsement or otherwise. A waiver of subrogation shall be effective as to a person or entity even though that person or entity would otherwise have a duty of indemnification, contractual or otherwise, did not pay the insurance premium directly or indirectly, and whether or not the person or entity had an insurable interest in the property damaged.

§ 11.4.2.4 A loss insured under Owner's property insurance shall be adjusted by the Owner as fiduciary and made payable to the Owner as fiduciary for the insureds, as their interests may appear, subject to requirements of any applicable mortgagee clause and of Section 11.4.10. The Contractor shall pay Subcontractors their just shares of insurance proceeds received by the Contractor, and by appropriate agreements, written where legally required for validity, shall require Subcontractors to make payments to their Sub-subcontractors in similar manner.

§ 11.4.2.5 If required in writing by a party in interest, the Owner as fiduciary shall, upon occurrence of an insured loss, give bond for proper performance of the Owner's duties. The cost of required bonds shall be charged against proceeds received as fiduciary. The Owner shall deposit in a separate account proceeds so received, which the Owner shall distribute in accordance with such agreement as the parties in interest may reach, or in accordance with an arbitration award in which case the procedure shall be as provided in Section 4.6. If after such loss no other

Init.

/

AIA Document A201™ – 2007. Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987, 1997 and 2007 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 08:45:01 on 06/08/2016 under Order No.7896458378_1 which expires on 04/22/2017, and is not for resale.
User Notes:                                                                 (727872868)

Complaint, Exh. B

special agreement is made and unless the Owner terminates the Contract for convenience, replacement of damaged property shall be performed by the Contractor after notification of a Change in the Work in accordance with Article 7.

§ 11.4.2.6 The Owner as fiduciary shall have power to adjust and settle a loss with insurers unless one of the parties in interest shall object in writing within five days after occurrence of loss to the Owner's exercise of this power; if such objection is made, the dispute shall be resolved as provided in Sections 4.5 and 4.6.   The Owner as fiduciary shall, in the case of arbitration, make settlement with insurers in accordance with directions of the arbitrators.   If distribution of insurance proceeds by arbitration is required, the arbitrators will direct such distribution.

## § 11.5 PERFORMANCE BOND AND PAYMENT BOND
§ 11.5.1 The Contractor shall furnish bonds covering faithful performance of the Contract and payment of obligations arising thereunder as stipulated in bidding requirements or specifically required in the Contract Documents on the date of execution of the Contract.   The bonds and the surety shall be satisfactory to the Owner. Conditional Payment Bonds are not acceptable, and will not be used on the Project.

§ 11.5.2 Upon the request of any person or entity appearing to be a potential beneficiary of bonds covering payment of obligations arising under the Contract, the Contractor shall promptly furnish a copy of the bonds or shall authorize a copy to be furnished, and shall name Owner's lender(s) as dual obliges under the bonds by appropriate rider.

## ARTICLE 12   UNCOVERING AND CORRECTION OF WORK
## § 12.1 UNCOVERING OF WORK
§ 12.1.1 If a portion of the Work is covered contrary to the Architect's request or to requirements specifically expressed in the Contract Documents, it must, if required in writing by the Architect, be uncovered for the Architect's examination and be replaced at the Contractor's expense without change in the Contract Time.

§ 12.1.2 If a portion of the Work has been covered which the Architect has not specifically requested to examine prior to its being covered, the Architect may request to see such Work and it shall be uncovered by the Contractor. If such Work is in accordance with the Contract Documents, costs of uncovering and replacement shall, by appropriate Change Order, be at the Owner's expense. If such Work is not in accordance with the Contract Documents, correction shall be at the Contractor's expense unless the condition was caused by the Owner or a separate contractor in which event the Owner shall be responsible for payment of such costs.

## § 12.2 CORRECTION OF WORK
## § 12.2.1 BEFORE OR AFTER SUBSTANTIAL COMPLETION
§ 12.2.1.1 The Contractor shall promptly correct Work rejected by the Owner and Architect or failing to conform to the requirements of the Contract Documents, whether discovered before or after Substantial Completion and whether or not fabricated, installed or completed. Costs of correcting such rejected Work, including additional testing and inspections and compensation for the Architect's services and expenses made necessary thereby, shall be at the Contractor's expense.

## § 12.2.2 AFTER SUBSTANTIAL COMPLETION
§ 12.2.2.1 Contractor shall be solely responsible and pay for any loss, cost, damage or expense of any sort, including, without limitation, injury to or death of persons and loss or damage to property or other work, arising out of, resulting from or caused by any defective materials or workmanship occurring within one year of Substantial Completion.   Within one year of Substantial Completion, Contractor shall, without cost or expense to Owner and without limitation of Owner's other rights and remedies under the Contract Documents with respect to defective work, remedy all such defects.   In addition to the Contractor's obligations under Section 3.5, if, within one year after the date of Substantial Completion of the Work or designated portion thereof or after the date for commencement of warranties established under Section 9.9.1, or by terms of an applicable special warranty required by the Contract Documents, any of the Work is found to be not in accordance with the requirements of the Contract Documents, the Contractor shall correct it promptly after receipt of written notice from the Owner to do so unless the Owner has previously given the Contractor a written acceptance of such condition. The Owner shall give such notice promptly after discovery of the condition. During the one-year period for correction of Work, if the Owner fails to notify the Contractor and give the Contractor an opportunity to make the correction, the Owner waives the rights to require correction by the Contractor and to make a claim for breach of warranty. If the Contractor fails to

Init.

/

AIA Document A201™ – 2007. Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987, 1997 and 2007 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 08:45:01 on 06/06/2016 under Order No.7898458378_1 which expires on 04/22/2017, and is not for resale.
User Notes:                                                                                                                              (727872866)

Complaint, Exh. B

correct nonconforming Work within a reasonable time during that period after receipt of notice from the Owner or Architect, the Owner may correct it in accordance with Section 2.4. When called upon to perform under this Warranty, Contractor shall commence such performance within seven (7) working days of notification and shall complete all work relating thereto with due diligence. Upon failure of Contractor to do so, Owner may cause such defects to be remedied by a person other than Contractor at Contractor's expense, including furnishing such supervision, materials and/or labor as are necessary to bring the Work up to the required standard. In the event such defect is in the nature of or causes an emergency condition, Owner may undertake the work of correction and replacement on behalf of and without notice to Contractor. All reasonable and necessary costs incurred by Owner to remedy such defects (including, without limitation, the cost of emergency work) shall be deducted from any amounts due Contractor, or if such costs exceed the amounts due, Contractor shall promptly pay Owner such excess immediately upon demand and presentation of supporting documentation per 7.3.6. Contractor shall, at Owner's request, assign to Owner all assignable warranties it obtains from manufacturers or suppliers with respect to any materials, equipment or fixtures incorporated in the Work

§ 12.2.2.2 The one-year period for correction of Work shall be extended with respect to portions of Work first performed after Substantial Completion by the period of time between Substantial Completion and the actual performance of the Work;

§ 12.2.2.3 The one-year period for correction of Work shall not be extended by corrective Work performed by the Contractor pursuant to this Section 12.2.

§ 12.2.3 The Contractor shall remove from the site portions of the Work which are not in accordance with the requirements of the Contract Documents and are neither corrected by the Contractor nor accepted by the Owner.

§ 12.2.4 The Contractor shall bear the cost, unless covered by insurance, of correcting destroyed or damaged construction, whether completed or partially completed, of the Owner or separate contractors caused by the Contractor's correction or removal of Work which is not in accordance with the requirements of the Contract Documents.

§ 12.2.5 Nothing contained in this Section 12.2 shall be construed to establish a period of limitation with respect to other obligations which the Contractor might have under the Contract Documents. Establishment of the one-year period for correction of Work as described in Section 12.2.2 relates only to the specific obligation of the Contractor to correct the Work, and has no relationship to the time within which the obligation to comply with the Contract Documents may be sought to be enforced, nor to the time within which proceedings may be commenced to establish the Contractor's liability with respect to the Contractor's obligations other than specifically to correct the Work.

§ 12.3 ACCEPTANCE OF NONCONFORMING WORK
§ 12.3.1 If the Owner prefers to accept Work which is not in accordance with the requirements of the Contract Documents, the Owner may do so instead of requiring its removal and correction, in which case the Contract Sum will be reduced as appropriate and equitable. Such adjustment shall be effected whether or not final payment has been made.

ARTICLE 13   MISCELLANEOUS PROVISIONS
§ 13.1 GOVERNING LAW
§ 13.1.1 The Contract shall be governed by the law of the place where the Project is located.

§ 13.1.2 This Agreement is contingent upon Owner obtaining acceptable financing and successful closing of such financing. Contractor agrees that if Owner is not successful in obtaining acceptable financing prior to the issuance of a Notice to Proceed, this Agreement is null and void, and contractor shall be reimbursed his actual costs incurred before it receives notice from Owner of its failure to obtain financing.

§ 13.2 SUCCESSORS AND ASSIGNS
§ 13.2.1 The Owner and Contractor respectively bind themselves, their partners, successors, assigns and legal representatives to the other party hereto and to partners, successors, assigns and legal representatives of such other party in respect to covenants, agreements and obligations contained in the Contract Documents. The Contractor's duties under this Contract are not assignable without the written consent of the Owner. The Contractor may not assign any right to any money due or to become due under this Contract without written consent of Owner. The

Init.

/

AIA Document A201™ – 2007. Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987, 1997 and 2007 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 08:45:01 on 06/06/2016 under Order No.7898458378_1 which expires on 04/22/2017, and is not for resale.
User Notes:                                                                                                                     (727672888)

44

Complaint, Exh. B

Contractor understands and acknowledges that the Owner may assign it rights under this Contract to its lender and the Contractor agrees that following such assignment, all rights of the Owner under this Contract shall be enforceable by the lenders.  The Contractor acknowledges that it will enter into an agreement with such lender pursuant to which, at the lender's request, the Contractor shall complete the Work upon payment of the balance of the Contract Sum.

§ 13.2.2 The Owner may, without consent of the Contractor, assign the Contract to an institutional lender providing construction financing for the Project. In such event, the lender shall assume the Owner's rights and obligations under the Contract Documents. The Contractor shall execute all consents reasonably required to facilitate such assignment.

### § 13.3 WRITTEN NOTICE
§ 13.3.1 Written notice shall be deemed to have been duly served if delivered in person to the individual or a member of the firm or entity or to an officer of the corporation for which it was intended, or if delivered at or sent by registered or certified mail to the last business address known to the party giving notice.

### § 13.4 RIGHTS AND REMEDIES
§ 13.4.1 Duties and obligations imposed by the Contract Documents and rights and remedies available thereunder shall be in addition to and not a limitation of duties, obligations, rights and remedies otherwise imposed or available by law.

§ 13.4.2 No action or failure to act by the Owner, Architect or Contractor shall constitute a waiver of a right or duty afforded them under the Contract, nor shall such action or failure to act constitute approval of or acquiescence in a breach thereunder, except as may be specifically agreed in writing.

### § 13.4.3 INVALIDITY.
The invalidity of any part of provision of the Contract Documents shall not impair or affect in any manner whatsoever the validity, enforceability or effect of the remainder of the Contract Documents.

### § 13.5 TESTS AND INSPECTIONS
§ 13.5.1 Tests, inspections and approvals of portions of the Work required by the Contract Documents or by laws, ordinances, rules, regulations or orders of public authorities having jurisdiction shall be made at an appropriate time. Unless otherwise provided, the Contractor shall make arrangements for such tests, inspections and approvals with an independent testing laboratory or entity acceptable to the Owner, or with the appropriate public authority, and shall bear all related costs of tests, inspections and approvals. The Contractor shall give the Architect timely notice of when and where tests and inspections are to be made so that the Architect may be present for such procedures. The Owner shall bear costs of tests, inspections or approvals which do not become requirements until after bids are received or negotiations concluded.

§ 13.5.2 If the Architect, Owner or public authorities having jurisdiction determine that portions of the Work require additional testing, inspection or approval not included under Section 13.5.1, the Architect will, upon written authorization from the Owner, instruct the Contractor to make arrangements for such additional testing, inspection or approval by an entity acceptable to the Owner, and the Contractor shall give timely notice to the Architect of when and where tests and inspections are to be made so that the Architect may be present for such procedures. Such costs, except as provided in Section 13.5.3, shall be at the Owner's expense.

§ 13.5.3 If such procedures for testing, inspection or approval under Sections 13.5.1 and 13.5.2 reveal failure of the portions of the Work to comply with requirements established by the Contract Documents, all costs made necessary by such failure including those of repeated procedures and compensation for the Architect's services and expenses shall be at the Contractor's expense.

§ 13.5.4 Required certificates of testing, inspection or approval shall, unless otherwise required by the Contract Documents, be secured by the Contractor and promptly delivered to the Architect.

§ 13.5.5 If the Architect is to observe tests, inspections or approvals required by the Contract Documents, the Architect will do so promptly and, where practicable, at the normal place of testing.

**Init.**

**/**

AIA Document A201™ – 2007. Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987, 1997 and 2007 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 08:45:01 on 06/06/2016 under Order No.7898458378_1 which expires on 04/22/2017, and is not for resale.
User Notes:                                                                                          (727872888)

**45**

Complaint, Exh. B

§ 13.5.6 Tests or inspections conducted pursuant to the Contract Documents shall be made promptly to avoid unreasonable delay in the Work.

**§ 13.6 INTEREST**
§ 13.6.1 Payments due and unpaid under the Contract Documents shall bear interest from the date payment is due at such rate as the parties may agree upon in the Agreement or, in the absence thereof, at the legal rate prevailing from time to time at the place where the Project is located.

**§ 13.7 COMMENCEMENT OF STATUTORY LIMITATION PERIOD**
§ 13.7.1 As between the Owner and Contractor:

.1    Before Substantial Completion.  As to acts or failures to act occurring prior to the relevant date of Substantial Completion, any applicable statute of limitations shall commence to run and any alleged cause of action shall be deemed to have accrued in any and all events not later than such date of Substantial Completion;

.2    Between Substantial Completion and Final Certificate for Payment.  As to acts or failures to act occurring subsequent to the relevant date of Substantial Completion and prior to issuance of the final Certificate for Payment, any applicable statute of limitations shall commence to run and any alleged cause of action shall be deemed to have accrued in any and all events not later than the date of issuance of the final Certificate for Payment; and

.3    After Final Certificate for Payment.  As to acts or failures to act occurring after the relevant date of issuance of the final Certificate for Payment, any applicable statute of limitations shall commence to run and any alleged cause of action shall be deemed to have accrued in any and all events not later than the date of any act or failure to act by the Contractor pursuant to any Warranty provided under Section 3.5, the date of any correction of the Work or failure to correct the Work by the Contractor under Section 12.2, or the date of actual commission of any other act or failure to perform any duty or obligation by the Contractor or Owner, whichever occurs last.

**§ 13.8   DAVIS-BACON ACT (40 U.S.C 276A) AS SUPPLEMENTED IN DEPARTMENT OF LABOR REGULATIONS (29 C.F.R. PART 5).**
§ 13.8.1   The Contractor must comply with the minimum rates for wages for laborers and mechanics as determined by the Secretary of Labor in accordance with the provision of this Act.

**ARTICLE 14   TERMINATION OR SUSPENSION OF THE CONTRACT**
**§ 14.1 TERMINATION BY THE CONTRACTOR**
§ 14.1.1 The Contractor may terminate the Contract if the Work is stopped for a period of 60 consecutive days through no act or fault of the Contractor or a Subcontractor, Sub-subcontractor or their agents or employees or any other persons or entities performing portions of the Work under direct or indirect contract with the Contractor, for any of the following reasons:

.1    Issuance of an order of a court or other public authority having jurisdiction which requires all Work to be stopped;

.2    An act of government, such as a declaration of national emergency which requires all Work to be stopped;

.3    Because the Architect has not issued a Certificate for Payment and has not notified the Contractor of the reason for withholding certification as provided in Section 9.4.1, or because the Owner has not made payment on a Certificate for Payment within the time stated in the Contract Documents; or

.4    The Owner has failed to furnish to the Contractor promptly, upon the Contractor's request, reasonable evidence as required by Section 2.2.1.

§ 14.1.2 The Contractor may terminate the Contract if, through no act or fault of the Contractor or a Subcontractor, Sub-subcontractor or their agents or employees or any other persons or entities performing portions of the Work under direct or indirect contract with the Contractor, repeated suspensions, or delays to the critical path as described in Section 14.3 constitute in the aggregate more than 100 percent of the total number of days scheduled for completion, or 120 days in any 365-day period, whichever is less.

§ 14.1.3 If one of the reasons described in Section 14.1.1 or 14.1.2 exists, the Contractor may, upon seven days' written notice to the Owner and Architect, terminate the Contract and recover from the Owner payment for Work

Init.

/

AIA Document A201™ – 2007. Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987, 1997 and 2007 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 08:45:01 on 06/08/2016 under Order No.7898458378_1 which expires on 04/22/2017, and is not for resale.
User Notes:                                                                                          (727872868)

46

executed and for proven loss with respect to materials, equipment, tools, and construction equipment and machinery, including reasonable overhead, profit, and damages.

§ **14.1.4** If the Work is stopped for a period of 60 consecutive days through no act or fault of the Contractor or a Subcontractor or their agents or employees or any other persons performing portions of the Work under contract with the Contractor because the Owner has persistently failed to fulfill the Owner's obligations under the Contract Documents with respect to matters important to the progress of the Work, the Contractor may, upon seven additional days' written notice to the Owner and the Architect, terminate the Contract and recover from the Owner as provided in Section 14.1.3.

## § 14.2 TERMINATION BY THE OWNER FOR CAUSE
§ **14.2.1** The Owner may terminate the Contract if the Contractor:

- .1    persistently or repeatedly refuses or fails to supply enough properly skilled workers or proper materials;
- .2    fails to make payment to Subcontractors for materials or labor in accordance with the respective agreements between the Contractor and the Subcontractors;
- .3    persistently disregards laws, ordinances, codes or rules, regulations or orders of a public authority having jurisdiction; or
- .4    otherwise is guilty of substantial breach of a provision of the Contract Documents.

§ **14.2.2** When any of the above reasons exist, the Owner, may without prejudice to any other rights or remedies of the Owner and after giving the Contractor and the Contractor's surety, if any, seven days' written notice, terminate employment of the Contractor and may, subject to any prior rights of the surety:

- .1    Take possession of the site and of all materials, equipment, tools, and construction equipment and machinery thereon owned by the Contractor;
- .2    Accept assignment of subcontracts pursuant to Section 5.4; and
- .3    Finish the Work by whatever reasonable method the Owner may deem expedient. Upon request of the Contractor, the Owner shall furnish to the Contractor a detailed accounting of the costs incurred by the Owner in finishing the Work.

§ **14.2.3** When the Owner terminates the Contract for one of the reasons stated in Section 14.2.1, the Contractor shall not be entitled to receive further payment until the Work is finished.

§ **14.2.4** If the unpaid balance of the Contract Sum exceeds costs of finishing the Work, including compensation for the Architect's services and expenses made necessary thereby, and other damages incurred by the Owner and not expressly waived, such excess shall be paid to the Contractor. If such costs and damages exceed the unpaid balance, the Contractor shall pay the difference to the Owner. The amount to be paid to the Contractor or Owner, as the case may be, shall be certified by the Architect, upon application, and this obligation for payment shall survive termination of the Contract.

## § 14.3 SUSPENSION BY THE OWNER FOR CONVENIENCE
§ **14.3.1** The Owner may, without cause, order the Contractor in writing to suspend, delay or interrupt the Work in whole or in part for such period of time as the Owner may determine.

§ **14.3.2** The Contract Sum and Contract Time shall be adjusted for increases in the cost and time caused by suspension, delay or interruption as described in Section 14.3.1. Adjustment of the Contract Sum shall include profit. No adjustment shall be made to the extent:

- .1    that performance is, was or would have been so suspended, delayed or interrupted by another cause for which the Contractor is responsible; or
- .2    that an equitable adjustment is made or denied under another provision of the Contract.

## § 14.4 TERMINATION BY THE OWNER FOR CONVENIENCE
§ **14.4.1** The Owner may, at any time, terminate the Contract for the Owner's convenience and without cause. Termination by Owner under this Subparagraph 14.4 shall be by seven (7) days' prior written notice of termination given to Contractor specifying the extent of termination and the effective date.

Init.

/

AIA Document A201™ – 2007. Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987, 1997 and 2007 by The American Institute of Architects. **All rights reserved. WARNING: This AIA®  Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA®  Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law.** This document was produced by AIA software at 08:45:01 on 06/06/2016 under Order No.7898458378_1 which expires on 04/22/2017, and is not for resale.
User Notes:                                                      (727872888)

Complaint, Exh. B

§ 14.4.2 Upon receipt of written notice from the Owner of such termination for the Owner's convenience, the Contractor shall:

   .1    cease operations as directed by the Owner in the notice;

   .2    take actions necessary, or that the Owner may direct, for the protection and preservation of the Work;

   .3    except for Work directed to be performed prior to the effective date of termination stated in the notice, terminate all existing subcontracts and purchase orders and enter into no further subcontracts and purchase orders;

   .4    complete the performance of Work not terminated; and

   .5    take such other actions as may be necessary or requested by Owner for the protection and reservation of the terminated Work.

§ 14.4.3 In the event of termination for Owner's convenience, Contractor shall be paid:

   .1    for Work performed on the terminated portion of the Work before the effective date of termination, for lump sum and Allowance Items, for goods, services and labor meeting the definitions of  Costs of the Work under clauses 1 through 5 of Subparagraph 7.3.6 for that Work or, for unit cost items, the cost based upon the units performed before the effective date of termination.   In addition, Contractor shall be paid the cost of settling and paying termination costs under terminated subcontracts or properly chargeable to the terminated portion of the Work;

   .2    reasonable costs directly related to such termination as described in detail in invoices and descriptions provided by Contractor and as approved by the Architect, including but not limited to stored materials that cannot be returned to their respective vendors; and

   .3    if Contractor would have earned a profit under the Contract had the Work been completed, a pro rata portion of such profit based upon the percentage of completed Work as of the effective date of termination.

§ 14.4.4  In determining amounts due Contractor under this Paragraph 14.4, Owner shall be credited for payments previously made to Contractor for the terminated portion of the Work and claims which Owner has against Contractor under the Contract, and for the value of materials, supplies, equipment or other items to be disposed of by Contractor that are covered under the Contract Sum previously made to Contractor.

*(Paragraphs deleted)*

AIA Document A201™ – 2007. Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987, 1997 and 2007 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA®  Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 08:45:01 on 08/08/2016 under Order No.7898458378_1 which expires on 04/22/2017, and is not for resale.
User Notes:                                                                                                                    (727872888)

Complaint, Exh. B

# Additions and Deletions Report for
## AIA® Document A201™ – 2007

This Additions and Deletions Report, as defined on page 1 of the associated document, reproduces below all text the author has added to the standard form AIA document in order to complete it, as well as any text the author may have added to or deleted from the original AIA text. Added text is shown underlined. Deleted text is indicated with a horizontal line through the original AIA text.

Note: This Additions and Deletions Report is provided for information purposes only and is not incorporated into or constitute any part of the associated AIA document. This Additions and Deletions Report and its associated document were generated simultaneously by AIA software at 08:45:01 on 06/06/2016.

### PAGE 1

Freedom's Path – Historic Rehabilitation of Two Existing Structures:
Building # 18 – Permanent Supportive Housing – Approximately 28 units – 4 Stories
Building # 76 – Permanent Supportive Housing – Approximately 50 units – 3 Stories
Veterans Administration Campus, Augusta, Georgia 30904

...

*(Name, legal status and address)*
Freedom's Path Limited Partnership, as the assignee of
Freedom's Path First Step Limited Partnership
Attn: Donald Paxton, Manager
3550 South Tamiami Trail, Suite 301
Sarasota, FL 34239

...

*(Name, legal status and address)*
Gruber & Associates Architects, LLC
Attn: Morton M. Gruber, AIA, Manager
245 Peachtree Center Ave. NE, Suite 2445
Atlanta, GA 30303

...

4        ~~ARCHITECT~~ADMINISTRATION OF THE CONTRACT

### PAGE 2

~~15        CLAIMS AND DISPUTES~~

### PAGE 11

The Contract Documents ~~are enumerated in~~ consist of the Agreement between ~~the~~ Owner and Contractor (hereinafter the ~~Agreement) and consist of the Agreement,~~ Agreement), Conditions of the Contract (General, Supplementary and other Conditions), Drawings, Specifications, Qualifications and Clarifications, Addenda issued prior to execution of the Contract, other documents listed in the Agreement and Modifications issued in writing after execution of the Contract. A Modification is (1) a written amendment to the Contract signed by both parties, (2) a Change Order, (3) a Construction Change Directive or (4) a written order for a minor change in the Work issued by the Architect. Unless specifically enumerated in the Agreement, the Contract Documents do not include ~~the advertisement~~ other documents such as bidding requirements (advertisement or invitation to bid, Instructions to Bidders, sample forms, ~~other information furnished by the Owner in anticipation of receiving bids or proposals, the~~ Contractor's bid ~~or proposal,~~ or portions of Addenda relating to bidding requirements.

Additions and Deletions Report for AIA Document A201™ – 2007. Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987, 1997 and 2007 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 08:45:01 on 06/06/2016 under Order No.7898456378_1 which expires on 04/22/2017, and is not for resale.
User Notes:                                                              (727872888)

1

...

The Contract Documents form the Contract for Construction. The Contract represents the entire and integrated agreement between the parties hereto and supersedes prior negotiations, representations or agreements, either written or oral. The Contract may be amended or modified only by a written Modification. The Contract Documents shall not be construed to create a contractual relationship of any kind (1) between the Contractor and the Architect or the Architect's consultants, Architect and Contractor, (2) between the Owner and a Subcontractor or a Sub-subcontractor, (3) between the Owner and the Architect or the Architect's consultants or (4) between any persons or entities other than the Owner and the Contractor. The Architect shall, however, be entitled to performance and enforcement of obligations under the Contract intended to facilitate performance of the Architect's duties.

...

The term "Work" means the construction and services required by the Contract Documents, whether completed or partially completed, and includes all other labor, materials, equipment and services provided or to be provided by the Contractor to fulfill the Contractor's obligations. The Work may constitute the whole or a part of the Project. Contractor acknowledges and agrees that the Contract Documents are adequate and sufficient to provide for the commencement of the Work, and include all Work, whether or not shown or described, which reasonably may be inferred to be required or useful for the completion of the Work in accordance with all applicable laws, codes, and professional standards. Contractor also acknowledges that it has included in the Contract Sum sufficient money to compensate Contractor for any impacts or delays encountered during performance of the Work as a result of the activities or lack of activity of other Contractors on the site under separate contract with the Owner; and Contractor warrants that it waives any and all claims against Owner arising from the timeliness of the Work of those contractors, and any coordination between Contractor's work and the work of such contractors.

...

The Project is the total construction of which the Work performed under the Contract Documents may be the whole or a part and which may include construction by the Owner and or by separate contractors.

...

**§ 1.1.8 INITIAL DECISION MAKER**
The Initial Decision Maker is the person identified in the Agreement to render initial decisions on Claims in accordance with Section 15.2 and certify termination of the Agreement under Section 14.2.2.

**§ 1.2.1** The intent of the Contract Documents is to include all items necessary for the proper execution and completion of the Work by the Contractor. Contractor acknowledges that it has carefully reviewed the Contract Documents and that they appear to be complete and consistent, and are sufficient to permit Contractor to establish the Contract Sum, establish the Project Schedule, and to prepare any required shop drawings. The Contract Documents are complementary, and what is required by one shall be as binding as if required by all; performance by the Contractor shall be required only to the extent consistent with the Contract Documents and reasonably inferable from them as being necessary to produce the indicated results.

**PAGE 12**

**§ 1.2.3** Unless otherwise stated in the Contract Documents, words that which have well-known technical or construction industry meanings are used in the Contract Documents in accordance with such recognized meanings.

**§ 1.2.4** Conflicts or discrepancies among the Contract Documents shall be resolved in the following order of priority:

       1. AIA A102 (2007) Agreement (as amended);

Additions and Deletions Report for AIA Document A201™ – 2007. Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987, 1997 and 2007 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 08:45:01 on 06/06/2016 under Order No.7898458378_1 which expires on 04/22/2017, and is not for resale.
User Notes: (727872888)

2

Complaint, Exh. B

2.   Amendments and revisions of later date take precedence over those of earlier dates;

3.   The A201 General Conditions, as amended;

4.   Drawings and Specifications; Drawings govern Specifications for quantity and location, and Specifications govern Drawings for quality and performance.   In the event of ambiguity in quantity or quality, the greater quantity and the better quality shall govern; and

5.   Figure dimensions govern scale dimensions and large scale Drawings govern small scale Drawings.

...

~~Terms capitalized in these General Conditions include those that are (1) specifically defined, (2) the titles of numbered articles or (3) the titles of other documents published by the American Institute of Architects.~~ § 1.3.1 Terms capitalized in these General Conditions include those which are (1) specifically defined, (2) the titles of numbered articles or (3) the titles of other documents published by the American Institute of Architects.

...

~~In the interest of brevity the Contract Documents frequently omit modifying words such as "all" and "any" and articles such as "the" and "an," but the fact that a modifier or an article is absent from one statement and appears in another is not intended to affect the interpretation of either statement.~~ § 1.4.1 In the interest of brevity the Contract Documents frequently omit modifying words such as "all" and "any" and articles such as "the" and "an," but the fact that a modifier or an article is absent from one statement and appears in another is not intended to affect the interpretation of either statement.

§ 1.5
~~OWNERSHIP AND USE OF DRAWINGS, SPECIFICATIONS AND OTHER INSTRUMENTS OF SERVICE~~EXECUTION OF CONTRACT DOCUMENTS

...

§ 1.5.2 The ~~Contractor, Subcontractors, Sub-subcontractors and material or equipment suppliers are authorized to use and reproduce the Instruments of Service provided to them solely and exclusively for execution of the Work. All copies made under this authorization shall bear the copyright notice, if any, shown on the Instruments of Service. The Contractor, Subcontractors, Sub-subcontractors, and material or equipment suppliers may not use the Instruments of Service on other projects or for additions to this Project without the specific written consent of the Owner, Architect and the Architect's consultants.~~ Contractor warrants and represents that, prior to the commencement of the Work, it shall:   make an inspection of the site, including but not limited to the physical condition of the site; all structures, all conditions and structures on adjoining properties, the nature and location of the general area, including weather and labor availability; make an inspection of site utilities and utility connection and only subsoil reports available from Owner.   The Contractor shall report any discovered conditions to the Owner.   The Owner shall have no responsibility or liability for the physical condition or safety of the Project site or any improvements located on the Project site;   The Contractor shall be solely responsible for providing safe conditions for the performance of the Work.

§ 1.6
~~TRANSMISSION OF DATA IN DIGITAL FORM~~OWNERSHIP AND USE OF DRAWINGS, SPECIFICATIONS AND OTHER INSTRUMENTS OF SERVICE
~~If the parties intend to transmit Instruments of Service or any other information or documentation in digital form, they shall endeavor to establish necessary protocols governing such transmissions, unless otherwise already provided in the Agreement or the Contract Documents.~~§ 1.6.1 All Drawings, Specifications and other documents prepared by the Architect are and shall remain the property of the Owner, and Owner shall retain all common law, statutory and other reserved rights with respect thereto.   They shall not be used on any other project without the prior written consent of the Owner, and Contractor shall take such action as may be necessary to prevent their use on any other project or for additions to the Project outside the scope of the Work by any Subcontractor, Sub-subcontractor or material or equipment supplier.   The Contractor, Subcontractor, Sub-subcontractors and material and equipment suppliers are granted a limited license to use and reproduce applicable portions of the

Additions and Deletions Report for AIA Document A201™ – 2007. Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987, 1997 and 2007 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 08:45:01 on 06/06/2016 under Order No.7896456378_1 which expires on 04/22/2017, and is not for resale.
User Notes:                                                                                                                                    (727872888)

3.

Complaint, Exh. B

Drawings, Specifications and other documents prepared by the Architect appropriate to and for use in the execution of their Work under the Contract Documents.   All copies made under this license shall bear the statutory copyright notice, if any, shown on the Drawings, Specifications and other documents prepared by the Architect.   Submittals or distributions necessary to meet official regulatory requirements or for other purposes relating to completion of the Project are not to be construed as a publication in derogation of the Owner's copyright or other reserved rights.

**PAGE 13**

§ 2.2.1 ~~Prior to commencement of the Work, the Contractor may request in writing that the Owner provide reasonable evidence that the Owner has made financial arrangements~~ The Owner shall, at the written request of the Contractor, prior to commencement of the Work, furnish to the Contractor reasonable evidence that financial arrangements have been made to fulfill the Owner's obligations under the Contract. ~~Thereafter, the Contractor may only request such evidence if (1) the Owner fails to make payments to the Contractor as the Contract Documents require; (2) a change in the Work materially changes the Contract Sum; or (3) the Contractor identifies in writing a reasonable concern regarding the Owner's ability to make payment when due. The Owner shall furnish such evidence as a condition precedent to commencement or continuation of the Work or the portion of the Work affected by a material change. After the Owner furnishes the evidence, the Owner~~ Furnishing of such evidence shall be a condition precedent to commencement of the Work. After such evidence has been furnished, the Owner shall not materially vary such financial arrangements without prior notice to the Contractor.

§ 2.2.2 Except for permits and ~~fees that~~ fees, including those required under Section 3.7.1, which are the responsibility of the Contractor under the Contract Documents, ~~including those required under Section 3.7.1,~~ the Owner shall secure and pay for necessary approvals, easements, assessments and charges required for construction, use or occupancy of permanent structures or for permanent changes in existing facilities.

…

§ 2.2.4 ~~The Owner shall furnish~~ Upon receipt of a written request from the Contractor, information or services required of the Owner by the Contract Documents ~~with reasonable promptness. The Owner shall also furnish any other information or services under the Owner's control and~~ shall be furnished by the Owner with reasonable promptness. ~~Any other information or services relevant to the Contractor's performance of the Work with reasonable promptness after receiving the Contractor's~~ under the Owner's control shall be furnished by the Owner after receipt from the Contractor of a written request for such information or services.

§ 2.2.5 Unless otherwise provided in the Contract Documents, the ~~Owner shall furnish to the Contractor one copy of the Contract Documents for purposes of making reproductions pursuant to Section 1.5.2.~~ Contractor will be furnished, free of charge, such copies of Drawings and Project Manuals as are reasonably necessary for execution of the Work.

…

~~If the Contractor fails to correct Work that is not in accordance with the requirements of the Contract Documents as required by Section 12.2 or repeatedly fails to carry out Work in accordance with the Contract Documents, the Owner may issue a written order to the Contractor to stop the Work, or any portion thereof, until the cause for such order has been eliminated; however, the right of the Owner to stop the Work shall not give rise to a duty on the part of the Owner to exercise this right for the benefit of the Contractor or any other person or entity, except to the extent required by Section 6.1.3.~~ § 2.3.1 If the Contractor fails to correct Work which is not in accordance with the requirements of the Contract Documents as required by Section 12.2 or persistently fails to carry out Work in accordance with the Contract Documents, the Owner may issue a written order to the Contractor to stop the Work, or any portion thereof, until the cause for such order has been eliminated; however, the right of the Owner to stop the Work shall not give rise to a duty on the part of the Owner to exercise this right for the benefit of the Contractor or any other person or entity.   This right shall be in addition to, and not in restriction of, the Owner's rights under Subparagraph 12.2 and Article 14.

§ 2.3.2   If suspension of the Work is warranted by reason of unforeseen conditions that could not be anticipated by a reasonable contractor which may adversely affect the quality of the work if such Work were continued, the Owner may suspend the Work by written notice to the Contractor.   In such event, the Contract Time shall be adjusted

Additions and Deletions Report for AIA Document A201™ – 2007. Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987, 1997 and 2007 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 08:45:01 on 06/08/2016 under Order No.7898466378_1 which expires on 04/22/2017, and is not for resale.
User Notes:                                                                                                    (727872668)

4

Complaint, Exh. B

accordingly, and the Contract Sum shall be adjusted to the extent, if any, that additional costs are incurred by reason of such suspension.  If the Contractor, in its reasonable judgment, believes that a suspension is warranted by reason of unforeseen circumstances which may adversely affect the quality of the Work if the Work were continued, the Contractor shall immediately notify the Owner and the Architect of such belief and describe with particularity the reasons therefore.

**PAGE 14**

~~If the Contractor defaults or neglects to carry out the Work in accordance with the Contract Documents and fails within a ten-day period after receipt of written notice from the Owner to commence and continue correction of such default or neglect with diligence and promptness, the Owner may, without prejudice to other remedies the Owner may have, correct such deficiencies. In such case an appropriate Change Order shall be issued deducting from payments then or thereafter due the Contractor the reasonable cost of correcting such deficiencies, including Owner's expenses and compensation for the Architect's additional services made necessary by such default, neglect or failure. Such action by the Owner and amounts charged to the Contractor are both subject to prior approval of the Architect. If payments then or thereafter due the Contractor are not sufficient to cover such amounts, the Contractor shall pay the difference to the Owner.~~ § 2.4.1 If the Contractor defaults or neglects to carry out the Work in accordance with the Contract Documents and fails within a seven (7) day period after receipt of written notice from the Owner to commence and continue correction of such default or neglect with diligence and promptness, the Owner may, without waiving its rights against Contractor's Performance Bond, and without prejudice to other remedies, correct such deficiencies or commence and continue to carry out the Work. If payments then or thereafter due the Contractor are not sufficient to cover such amounts, the Contractor shall pay the difference to the Owner.

...

§ 3.1.1 The Contractor is the person or entity identified as such in the Agreement and is referred to throughout the Contract Documents as if singular in number. The ~~Contractor shall be lawfully licensed, if required in the jurisdiction where the Project is located. The Contractor shall designate in writing a representative who shall have express authority to bind the Contractor with respect to all matters under this Contract. The~~ term "Contractor" means the Contractor or the Contractor's authorized representative.

...

§ 3.1.3 The Contractor shall not be relieved of obligations to perform the Work in accordance with the Contract Documents either by activities or duties of the Architect in the Architect's administration of the Contract, or by tests, inspections or approvals required or performed by persons ~~or entities~~ other than the Contractor.

§ 3.1.4   Prior to commencing Work, Contractor shall designate in writing an individual for the project who shall have full authority to bind Contractor on all matters arising out of or relating to this Agreement.

§ 3.2.1 ~~Execution of the Contract by the Contractor is a representation that the Contractor has visited the site, become generally familiar with local conditions under which the Work is to be performed and correlated personal observations with requirements of the Contract Documents.~~ Since the Contract Documents are complementary,  before starting each portion of the Work, the Contractor shall carefully study and compare the various Drawings and other Contract Documents relative to that portion of the Work, as well as the information furnished by the Owner pursuant to Section 2.2.3, shall take field measurements of any existing conditions related to that portion of the Work and shall observe any conditions at the site affecting it. These obligations are for the purpose of facilitating construction by the Contractor and are not for the purpose of discovering errors, omissions, or inconsistencies in the Contract Documents; however, any errors, inconsistencies or omissions discovered by the Contractor shall be reported promptly to the Architect and the Owner as a request for information in such form as the Architect and the Owner may require.

§ 3.2.2 ~~Because the Contract Documents are complementary, the Contractor shall, before starting each portion of the Work, carefully study and compare the various Contract Documents relative to that portion of the Work, as well as the information furnished by the Owner pursuant to Section 2.2.3, shall take field measurements of any existing conditions related to that portion of the Work, and shall observe any conditions at the site affecting it. These obligations are for the purpose of facilitating coordination and construction by the Contractor and are not for the purpose of discovering errors, omissions, or inconsistencies in the Contract Documents; however, the Contractor~~

Additions and Deletions Report for AIA Document A201™ – 2007. Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987, 1997 and 2007 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 08:45:01 on 06/06/2016 under Order No.7898456376_1 which expires on 04/22/2017, and is not for resale.
User Notes:                                                                              (727872658)

Complaint, Exh. B

~~shall promptly report to the Architect any errors, inconsistencies or omissions discovered by or made known to the Contractor as a request for information in such form as the Architect may require. It~~ Any design errors or omissions noted by the Contractor during this review shall be reported promptly to the Architect, but, except as provided in Subparagraph 3.7.3,  it is recognized that the Contractor's review is made in the Contractor's capacity as a contractor and not as a licensed design ~~professional~~ professional unless otherwise specifically provided in the Contract Documents. The Contractor is not required to ascertain that the Contract Documents are in accordance with applicable laws, statutes, ordinances, building codes, and rules and regulations, but any nonconformity discovered by or made known to the Contractor shall be reported promptly to the Architect.

§ 3.2.3 ~~The Contractor is not required to ascertain that the Contract Documents are in accordance with applicable laws, statutes, ordinances, codes, rules and regulations, or lawful orders of public authorities, but the Contractor shall promptly report to the Architect any nonconformity discovered by or made known to the Contractor as a request for information in such form as the Architect may require.~~

If the Contractor believes that additional cost or time is involved because of clarifications or instructions issued by the Architect in response to the Contractor's notices or requests for information pursuant to Sections 3.2.1 and 3.2.2, the Contractor shall make Claims as provided in Sections 4.3.6 and 4.3.7.  The Contractor shall not be liable to the Owner or Architect for damages resulting from errors, inconsistencies or omissions in the Contract Documents or for differences between field measurements and the Contract Documents unless the Contractor recognized such error, inconsistency, omission or difference and knowingly failed to report it to the Architect.

§ 3.2.4 ~~If the Contractor believes that additional cost or time is involved because of clarifications or instructions the Architect issues in response to the Contractor's notices or requests for information pursuant to Sections 3.2.2 or 3.2.3, the Contractor shall make Claims as provided in Article 15. If the Contractor fails to perform the obligations of Sections 3.2.2 or 3.2.3, the Contractor shall pay such costs and damages to the Owner as would have been avoided if the Contractor had performed such obligations.  If the Contractor performs those obligations, the Contractor shall not be liable to the Owner or Architect for damages resulting from errors, inconsistencies or omissions in the Contract Documents, for differences between field measurements or conditions and the Contract Documents, or for nonconformities of the Contract Documents to applicable laws, statutes, ordinances, codes, rules and regulations, and lawful orders of public authorities.~~Notwithstanding anything in Subparagraph 3.2.1 to the contrary, if Contractor discovers through the use of reasonable care and diligence, errors, inconsistencies, or omissions in the Contract Documents yet proceeds without written notice to the Architect and Owner, Contractor shall bear all costs for the damage resulting from any such errors, inconsistencies or omissions and to the extent Owner is required to incur costs or expenses to correct such issues, Contractor shall pay Owner such cost or expenses upon Owner's request. Contractor shall promptly notify the Architect and Owner of any ambiguity, inconsistency or error which it may discover upon examination of the Contract Documents or of the site and local conditions.

§ 3.2.5  Notwithstanding anything herein to the contrary, the Contractor shall be responsible for the satisfactory and complete execution of the Work as described in the Contract Documents. The Contractor represents that he has carefully examined all Drawings and Specifications for the Work to be performed; and has notified Owner of any defects or omissions he has noted or observed, and that he has the experience and necessary personnel, equipment, and material at his disposal to complete the Work in a good workmanlike manner in accordance with the Contract Documents without any material defects in the work.

**PAGE 15**

§ 3.3.1 The Contractor shall supervise and direct the Work, using the Contractor's ~~best~~ reasonable skill and attention. The Contractor shall be solely responsible ~~for,~~ for and have control ~~over,~~ over construction means, methods, techniques, sequences and procedures and for coordinating all portions of the Work under the Contract, unless the Contract Documents give other specific instructions concerning these matters. If the Contract Documents give specific instructions concerning construction means, methods, techniques, sequences or procedures, the Contractor shall evaluate the jobsite safety thereof and, except as stated below, shall be fully and solely responsible for the jobsite safety of such means, methods, techniques, sequences or procedures. If the Contractor determines that such means, methods, techniques, sequences or procedures may not be safe, the Contractor shall give timely written notice to the Owner and Architect and shall not proceed with that portion of the Work without further written instructions from the Architect. If the Contractor is then instructed to proceed with the required means, methods, techniques, sequences or procedures without acceptance of changes proposed by the Contractor, the Owner shall be

Additions and Deletions Report for AIA Document A201™ – 2007. Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987, 1997 and 2007 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 08:45:01 on 06/06/2016 under Order No.7898458378_1 which expires on 04/22/2017, and is not for resale.
User Notes:                                                                                                          (727872668)

Complaint, Exh. B

solely responsible for any ~~loss or damage arising solely from those Owner-required means, methods, techniques, sequences, or procedures,~~ resulting loss or damage.

§ 3.3.2 The Contractor shall be responsible to the Owner for acts and omissions of the Contractor's employees, Subcontractors and their agents and employees, and other persons or entities performing portions of the Work ~~for,~~ for or on behalf ~~of,~~ of the Contractor or any of its Subcontractors.

...

§ 3.3.4  If any of the Work is required to be inspected or approved by any public authority, the Contractor shall cause such inspection or approval to be performed.

...

§ 3.4.2 ~~Except in the case of minor changes in the Work authorized by the Architect in accordance with Sections 3.12.8 or 7.4, the~~ The Contractor may make substitutions only with the consent of the Owner, after evaluation by the Architect and Owner and in accordance with a Change ~~Order or Construction Change Directive.~~Order.

§ 3.4.3 The Contractor shall enforce strict discipline and good order among the Contractor's employees and other persons carrying out the ~~Work.~~ Contract. The Contractor shall not permit employment of unfit persons or persons not ~~properly~~ skilled in tasks assigned to them.

§ 3.4.4  The Contractor acknowledges that it is the Contractor's responsibility to hire all personnel for the proper and diligent prosecution of the Work and the Contractor shall use its best efforts to maintain labor peace for the duration of the Project.   In the event of a labor dispute, the Contractor shall not be entitled to any increase in the Contract Sum or Time.

**PAGE 16**

~~The Contractor warrants to the Owner and Architect that materials and equipment furnished under the Contract will be of good quality and new unless the Contract Documents require or permit otherwise. The Contractor further warrants that the Work will conform to the requirements of the Contract Documents and will be free from defects, except for those inherent in the quality of the Work the Contract Documents require or permit. Work, materials, or equipment not conforming to these requirements may be considered defective. The Contractor's warranty excludes remedy for damage or defect caused by abuse, alterations to the Work not executed by the Contractor, improper or insufficient maintenance, improper operation, or normal wear and tear and normal usage. If required by the Architect, the Contractor shall furnish satisfactory evidence as to the kind and quality of materials and equipment.~~§ 3.5.1 The Contractor warrants that it will furnish all of the materials and labor necessary to complete the Project and all materials and equipment furnished by Contractor will be new and all Work performed and all materials and equipment furnished by Contractor will be of good quality, free from faults and defects and will conform to the Contract Documents in all respects, including, but no limited to kind, quality of materials and workmanship specified.  The Contractor shall obtain and deliver to Owner such standard manufacturers' warranties as each equipment manufacturer may furnish with any equipment.   The Contractor does not warrant or guarantee the design or sufficiency of the design of the improvements or that the materials and equipment furnished, assuming that they are the materials and equipment specified, will accomplish the purpose intended.

All written warranties shall be addressed and delivered to the Owner as a condition precedent to Contractor's entitlement to Final Payment.   At that time, Contractor shall also deliver to Owner a written "Contractor Warranty" representing to Owner that all labor, materials and/or services, all other components of work shall be free of defect from the time of Substantial Completion for the Work and shall extend for one (1) year from the date of Final Completion and as warranties and guarantees on work, labor, equipment and materials, together with any other warranties or guarantees required by the Contract Documents.   Nothing in this Contract shall operate to waive, release or compromise the statutory implied warranties of the Contractor for the Project, its subcontractors and suppliers to the Owner.

Additions and Deletions Report for AIA Document A201™ – 2007. Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987, 1997 and 2007 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 08:45:01 on 06/08/2016 under Order No.7898458378_1 which expires on 04/22/2017, and is not for resale.
User Notes:                                                                                                                              (727872688)

Complaint, Exh. B

The Contractor will indemnify and hold the Owner harmless and defend Owner from and against any loss, damage or expense incurred as a result of a breach of any warranties.   All warranties referenced in the Contract Documents shall survive the making of Final Payment to the Contractor or any earlier termination of the Contract.   These warranties shall not operate to extinguish or compromise any claim for latent defects or other items of defective work which could not be discovered by Owner upon reasonable inspection; in such case the limitations period for latent defects shall run from the date of discovery in accordance with Florida law.

Contractor warrants that it shall, within forty-eight (48) hours of notice (verbal or written), diligently and continuously pursue any necessary warranty repairs or replacements of defects until corrected and will restore the Work to the condition required by the Contract Documents.   Contractor shall restore both surface, subsurface and both collateral and primary conditions disturbed the performance by Contractor during warranty work to their prior pre-warranty work condition.

The Contractor's warranty obligations as specified herein shall apply to encompass and provide coverage for claims associated with water intrusion, water infiltration through the roof, and/or mold and mildew resulting therefrom. However, this provision shall not include warranty coverage for acts of third parties whom the Contractor has not employed, hired, retained or supervised.   In addition to the foregoing stipulations, the Contractor shall comply with all other warranties referenced to in any portions of the Contract Documents or otherwise provided by law or in equity, and where warranties overlap, the more stringent requirements shall govern.

...

~~The Contractor shall pay sales, consumer, use and similar taxes for the Work provided by the Contractor that are legally enacted when bids are received or negotiations concluded, whether or not yet effective or merely scheduled to go into effect.~~ § 3.6.1 The Contractor shall pay sales, consumer, use and similar taxes for the Work provided by the Contractor which are legally enacted when bids are received or negotiations concluded, whether or not yet effective or merely scheduled to go into effect.

**§ 3.7 ~~PERMITS, FEES, NOTICES AND COMPLIANCE WITH LAWS~~PERMITS, FEES AND NOTICES**
**§ 3.7.1** Unless otherwise provided in the Contract Documents, the Contractor shall ~~secure and pay for the building permit as well as for other permits, fees, licenses, and inspections by government agencies necessary for proper execution and completion of the Work that~~ assist the Owner in the procurement of all permits, licenses, and certifications necessary for the proper execution and completion of the Work.   The Owner shall reimburse the Contractor for all costs incurred to procure the permits, licenses, and certifications, which are customarily secured after execution of the Contract and ~~which are~~ legally required ~~at the time~~ when bids are received or negotiations concluded.   The Contractor shall assist the Owner in the procure all certificates of inspection, use, occupancy, permits and licenses, pay all charges and fees and give all notice necessary and incidental to the due and lawful prosecution of the Work.   Certificates of inspection, use and occupancy shall be delivered to the Owner upon Substantial Completion of the Project in accordance with the approved schedule for the Work.   The costs of such procurement, payment and delivery are included within the Contract Sum.

**§ 3.7.2** The Contractor shall comply with and give notices required by ~~applicable laws, statutes, ordinances, codes, rules and regulations~~ laws, ordinances, rules, regulations and lawful orders of public authorities applicable to performance of the Work.

**PAGE 17**

**§ 3.7.4 Concealed or Unknown Conditions.** If the Contractor encounters conditions at the site that are (1) subsurface or otherwise concealed physical conditions that differ materially from those indicated in the Contract Documents or (2) unknown physical conditions of an unusual nature, that differ materially from those ordinarily found to exist and generally recognized as inherent in construction activities of the character provided for in the Contract Documents, the Contractor shall promptly provide notice to the Owner and the Architect before conditions are disturbed and in no event later than ~~21~~ (10) days after first observance of the conditions. The Architect will promptly investigate such conditions and, if the Architect determines that they differ materially and cause an increase or decrease in the Contractor's cost of, or time required for, performance of any part of the Work, will recommend an equitable adjustment in the Contract Sum or Contract Time, or both. If the Architect determines that the conditions at the site are not materially different from those indicated in the Contract Documents and that no

Additions and Deletions Report for AIA Document A201™ – 2007. Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987, 1997 and 2007 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 08:45:01 on 06/06/2016 under Order No.7898468378_1 which expires on 04/22/2017, and is not for resale.
User Notes:                                                                                                                              (727872888)

Complaint, Exh. B

change in the terms of the Contract is justified, the Architect shall promptly notify the Owner and Contractor in writing, stating the reasons. If either party disputes the Architect's determination or recommendation, that party may proceed as provided in Article ~~15.~~ 4.3.

**§ 3.7.5** ~~If, in the course of the Work, the Contractor encounters human remains or recognizes the existence of burial markers, archaeological sites or wetlands not indicated in the Contract Documents, the Contractor shall immediately suspend any operations that would affect them and shall notify the Owner and Architect. Upon receipt of such notice, the Owner shall promptly take any action necessary to obtain governmental authorization required to resume the operations. The Contractor shall continue to suspend such operations until otherwise instructed by the Owner but shall continue with all other operations that do not affect those remains or features. Requests for adjustments in the Contract Sum and Contract Time arising from the existence of such remains or features may be made as provided in Article 15.~~

**§ 3.8.2** Unless otherwise provided in the Contract ~~Documents,~~ Documents:

    **.2** Contractor's costs for unloading and handling at the site, labor, installation costs, overhead, profit and other expenses contemplated for stated allowance amounts shall ~~be included in the Contract Sum but not in the allowances;~~ include taxes, transportation, installation, labor, materials, profit and overhead; and

**§ 3.8.3** Materials and equipment under an allowance shall be selected by the Owner ~~with reasonable promptness~~ in sufficient time to avoid delay in the Work.

**§ 3.9.1** The Contractor shall employ a competent superintendent and necessary assistants who shall be in attendance at the Project site during performance of the Work. The superintendent shall represent the Contractor, and communications given to the superintendent shall be as binding as if given to the Contractor. Important communications shall be confirmed in writing. Other communications shall be similarly confirmed on written request in each case. The superintendent shall be reasonably satisfactory to Owner in all respects, and Owner shall have the right for cause, require Contractor to dismiss from the Project any superintendent whose performance is not reasonable satisfactory to Owner, and to replace such superintendent with a superintendent reasonably satisfactory to Owner. The Contractor shall not replace the superintendent without the consent of the Owner except with another superintendent reasonably satisfactory to the Owner in all respects.

**§ 3.9.2** The ~~Contractor, as soon as practicable after award of the Contract, shall furnish in writing to the Owner through the Architect the name and qualifications of a proposed superintendent. The Architect may reply within 14 days to the Contractor in writing stating (1) whether the Owner or the Architect has reasonable objection to the proposed superintendent or (2) that the Architect requires additional time to review. Failure of the Architect to reply within the 14 day period shall constitute notice of no reasonable objection.~~ list of all supervisory personnel, including the Project manager and superintendent, that the Contractor intends to use on the Project and a chain-of-command organizational chart shall be submitted to the Owner for approval at the start of the Work. The Contractor shall not engage supervisory personnel or utilize an organization and chain-of-command other than as approved by Owner in writing, and shall not change the Project Manager and superintendent or form of organization without the written approval of the Owner.

**§ 3.9.3** The Contractor shall ~~not employ a proposed superintendent to whom the Owner or Architect has made reasonable and timely objection. The Contractor shall not change the superintendent without the Owner's consent, which shall not unreasonably be withheld or delayed.~~ conduct at the site of the Project regular progress meetings to

Additions and Deletions Report for AIA Document A201™ – 2007. Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987, 1997 and 2007 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 08:45:01 on 06/06/2016 under Order No.7898458378_1 which expires on 04/22/2017, and is not for resale.
User Notes:    (727672886)

Complaint, Exh. B

be attended by the Contractor, Architect, major Subcontractors and any other Subcontractors, material suppliers or persons required by the Owner or Architect from time to time during the Project. Unless the Owner directs otherwise, the Contractor shall take minutes of the progress meetings and shall provide copies to all attendees within seven (7) days after the date of the meeting.

**PAGE 18**

§ 3.10.1  The Contractor, ~~promptly after being awarded the Contract, shall prepare and submit for the Owner's and Architect's information a Contractor's construction schedule for the Work. The schedule shall not exceed time limits current under the Contract Documents, shall be revised at appropriate intervals as required by the conditions of the Work and Project, shall be related to the entire Project to the extent required by the Contract Documents, and shall provide for expeditious and practicable execution of the Work~~ prior to commencement of the Construction Phase, shall prepare and submit to the Owner and to the Architect, the Contractor's construction schedule (hereinafter the "Original Construction Schedule") for the Work. The Original Construction Schedule shall be based on a time precedence method of scheduling that details the critical path Work items on the schedule and shall be of such form and content as is required by the Owner.  The Original Construction Schedule will be prepared in sufficient detail to properly reflect the scope and individual work items and will be sub-divided by building area, site or other major component as deemed necessary by the Owner.  The Original Construction Schedule shall delineate the proposed progress of the Work and with such reasonable progress in the Work which will result in all of the Work attaining Substantial Completion within the Contract Time. No Progress Payment shall be due and payable to Contractor unless and until the Owner has received the Original Construction Schedule as required in this paragraph.  The Contractor may generate and utilize other schedules with the subcontractors (hereinafter the "Trade Schedules"). These Trade Schedules are solely for Contractor's purposes and shall have no bearing on the Original Construction Schedule.

§ 3.10.2  ~~The Contractor shall prepare a submittal schedule, promptly after being awarded the Contract and thereafter as necessary to maintain a current submittal schedule, and shall submit the schedule(s) for the Architect's approval. The Architect's approval shall not unreasonably be delayed or withheld. The submittal schedule shall (1) be coordinated with the Contractor's construction schedule, and (2) allow the Architect reasonable time to review submittals. If the Contractor fails to submit a submittal schedule, the Contractor shall not be entitled to any increase in Contract Sum or extension of Contract Time based on the time required for review of submittals.~~ At the time the Contractor submits each Application for Progress Payment, the Contractor shall submit to the Owner and to the Architect a written Project update in narrative form with progress photographs, and a  revised Original Construction Schedule (hereinafter the "Updated Construction Schedule") which indicates future scheduling and performance of the Work sufficient to indicate the manner and time in and at which the Work, if represented to be delayed from the schedule shown on the most recent updated schedule, will be back on schedule and will comport with the Original Construction Schedule. The Updated Construction Schedule shall be of such form and content as is required herein. The Updated Construction Schedule shall incorporate into it all extensions and reductions of the Contract Time which have previously been approved by duly executed Change Orders.

§ 3.10.3   The Contractor shall ~~perform the Work in general accordance with the most recent schedules submitted to the Owner and Architect.~~ prepare and submit to the Owner and to the Architect, simultaneous with submission of the Construction Schedule prior to commencement of the Work, a schedule (hereinafter "Original Submittal Schedule") for the submittal of all required Shop Drawings, Product Data and Samples indicating the dates same will be submitted by the Contractor.  The Original Submittal Schedule shall be coordinated with the Construction Schedule and allow the Architect adequate time to review submittals.  The Contractor shall prepare and keep current, for the Architect's approval, a schedule of submittals (the "Submittal Schedule") tracking the actual receipt and review of all submittals.

§ 3.10.4 The Contractor shall perform the Work in general accordance with the most recent schedules submitted to the Owner and Architect.

§ 3.10.5 The Owner or its representative and the Architect shall review the schedule for completing the Work, but the Contractor shall have the sole and exclusive responsibility for completing the Work according to the schedule. Any proposed revisions to the original Construction Schedule, or subsequent updated Construction Schedule, shall be submitted by the Contractor pursuant to the Change Order procedure set forth in Article 7.  The Contractor shall complete each phase of the work in strict conformance with the Construction Schedule, and shall expedite and/or

Additions and Deletions Report for AIA Document A201™ – 2007. Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987, 1997 and 2007 by The American Institute of Architects. All rights reserved. WARNING: This AIA®  Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA®  Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 08:45:01 on 06/08/2016 under Order No.7898458378_1 which expires on 04/22/2017, and is not for resale.
User Notes:                                                                                                            (727672888)

**10**

accelerate the Work at its expense if construction falls behind the dates and times set forth in the updated Construction Schedule, unless the date of Substantial Completion has been extended by Change Order prior to the date of the updated Construction Schedule.

**PAGE 19**

~~The Contractor shall maintain at the site for the Owner one copy of the Drawings, Specifications, Addenda, Change Orders and other Modifications, in good order and marked currently to indicate field changes and selections made during construction, and one copy of approved Shop Drawings, Product Data, Samples and similar required submittals. These shall be available to the Architect and shall be delivered to the Architect for submittal to the Owner upon completion of the Work as a record of the Work as constructed.~~ § 3.11.1 The Contractor shall maintain at the site for the Owner one record copy of the Drawings, Specifications, Addenda, Change Orders and other Modifications, in good order and marked currently to record field changes and selections made during construction, and one record copy of approved Shop Drawings, Product Data, Samples and similar required submittals. These shall be available to the Architect and shall be delivered to the Architect for submittal to the Owner upon completion of the Work, signed by Contractor, certifying that they show complete and exact "as-built" conditions, starting sizes, kind of materials, vital piping, conduit locations and similar matters.

§ 3.11.2   The Contractor shall maintain all approved permit drawings in a manner so as to make them accessible to governmental inspectors and other authorized agencies.   All approved drawings shall be wrapped, marked and delivered to the Owner within 30 days of Final Completion of the Work.

...

§ 3.12.3 Samples are physical examples ~~that~~ which illustrate materials, equipment or workmanship and establish standards by which the Work will be judged.

§ 3.12.4 Shop Drawings, Product Data, Samples and similar submittals are not Contract Documents. ~~Their purpose is to demonstrate the~~ The purpose of their submittal is to demonstrate for those portions of the Work for which submittals are required by the Contract Documents the way by which the Contractor proposes to conform to the information given and the design concept expressed in the Contract Documents ~~for those portions of the Work for which the Contract Documents require submittals. Review by the Architect is subject to the limitations of Section 4.2.7.~~ Documents. Informational submittals upon which the Architect is not expected to take responsive action may be so identified in the Contract Documents. Submittals ~~that~~ which are not required by the Contract Documents may be returned by the Architect without action.

§ 3.12.5 The Contractor shall review for compliance with the Contract Documents, approve and submit to the Architect Shop Drawings, Product Data, Samples and similar submittals required by the Contract Documents in ~~accordance with the submittal schedule approved by the Architect or, in the absence of an approved submittal schedule, with~~ reasonable promptness and in such sequence as to cause no delay in the Work or in the activities of the Owner or of separate contractors.   Submittals which are not marked as reviewed for compliance with the Contract Documents and approved by the Contractor may be returned by the Architect without action.

§ 3.12.6 By approving and submitting Shop Drawings, Product Data, Samples and similar submittals, the Contractor represents ~~to the Owner and Architect~~ that the Contractor has (1) reviewed ~~and approved them,~~ (2) determined and verified materials, field measurements and field construction criteria related thereto, or will do ~~so and, (3)~~ so, and has checked and coordinated the information contained within such submittals with the requirements of the Work and of the Contract Documents.

**PAGE 20**

§ 3.12.10 The Contractor shall not be required to provide professional services ~~that~~ which constitute the practice of architecture or engineering unless such services are specifically required by the Contract Documents for a portion of the Work or unless the Contractor needs to provide such services in order to carry out the Contractor's responsibilities for construction means, methods, techniques, sequences and procedures. The Contractor shall not be required to provide professional services in violation of applicable law. If professional design services or certifications by a design professional related to systems, materials or equipment are specifically required of the

Additions and Deletions Report for AIA Document A201™ – 2007. Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987, 1997 and 2007 by The American Institute of Architects. All rights reserved. WARNING: This AIA®  Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA®  Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 08:45:01 on 06/06/2016 under Order No.7898458378_1 which expires on 04/22/2017, and is not for resale.
User Notes:                                                                                                                          (727872888)

11

Contractor by the Contract Documents, the Owner and the Architect will specify all performance and design criteria that such services must satisfy. The Contractor shall cause such services or certifications to be provided by a properly licensed design professional, whose signature and seal shall appear on all drawings, calculations, specifications, certifications, Shop Drawings and other submittals prepared by such professional. Shop Drawings and other submittals related to the Work designed or certified by such professional, if prepared by others, shall bear such professional's written approval when submitted to the Architect. The Owner and the Architect shall be entitled to rely upon the adequacy, accuracy and completeness of the services, certifications and_or approvals performed or provided by such design professionals, provided the Owner and Architect have specified to the Contractor all performance and design criteria that such services must satisfy. Pursuant to this Section 3.12.10, the Architect will review, approve or take other appropriate action on submittals only for the limited purpose of checking for conformance with information given and the design concept expressed in the Contract Documents. The Contractor shall not be responsible for the adequacy of the performance and_or design criteria specified in_required by the Contract Documents.

...

~~The Contractor shall confine operations at the site to areas permitted by applicable laws, statutes, ordinances, codes, rules and regulations, and lawful orders of public authorities and the Contract Documents and shall not unreasonably encumber the site with materials or equipment~~§ 3.13.1 The Contractor shall confine operations at the site to areas permitted by law, ordinances, permits and the Contract Documents and shall not unreasonably encumber the site with materials or equipment, and shall coordinate and not hinder the activities of other contractors at the site.

...

§ 3.14.1 The Contractor shall be responsible for cutting, fitting or patching required to complete the Work or to make its parts fit together properly. ~~All areas requiring cutting, fitting and patching shall be restored to the condition existing prior to the cutting, fitting and patching, unless otherwise required by the Contract Documents.~~

...

§ 3.15.1 The Contractor shall keep the premises and surrounding area free from accumulation of waste materials or rubbish caused by operations under the Contract. At completion of the Work, the Contractor shall remove from and about the Project waste materials, rubbish, the Contractor's tools, construction equipment, machinery and surplus. ~~materials from and about the Project~~materials.   The Contractor shall develop and monitor programs to control dust, dirt, noise, vibration, odor, or any other attributes of the construction process which might adversely affect any use of any property areas adjacent to or in the vicinity of the Project site, in accordance with applicable laws and regulations.

§ 3.15.2 If the Contractor fails to clean up as provided in the Contract Documents, the Owner may do so and ~~Owner shall be entitled to reimbursement from the Contractor.~~the cost thereof shall be charged to the Contractor after a reasonable written notification period.

...

~~The Contractor shall provide the Owner and Architect access to the Work in preparation and progress wherever located.~~§ 3.16.1 The Contractor shall provide the Owner and Architect access to the Work in preparation and progress wherever located.

...

~~The Contractor shall pay all royalties and license fees. The Contractor shall defend suits or claims for infringement of copyrights and patent rights and shall hold the Owner and Architect harmless from loss on account thereof, but shall not be responsible for such defense or loss when a particular design, process or product of a particular manufacturer or manufacturers is required by the Contract Documents, or where the copyright violations are contained in Drawings, Specifications or other documents prepared by the Owner or Architect. However, if the Contractor has reason to believe that the required design, process or product is an infringement of a copyright or a patent, the Contractor shall be responsible for such loss unless such information is promptly furnished to the~~

Additions and Deletions Report for AIA Document A201™ – 2007. Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987, 1997 and 2007 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 08:45:01 on 06/06/2016 under Order No.7898458376_1 which expires on 04/22/2017, and is not for resale.
User Notes:                                                                                                          (727872888)

Complaint, Exh. B

~~Architect.~~§ 3.17.1 The Contractor shall pay all royalties and license fees. The Contractor shall defend suits or claims for infringement of copyrights and patent rights and shall hold the Owner and Architect harmless from loss on account thereof, but shall not be responsible for such defense or loss when a particular design, process or product of a particular manufacturer or manufacturers is required by the Contract Documents or where the copyright violations are contained in Drawings, Specifications or other documents prepared by the Owner or Architect. However, if the Contractor has reason to believe that the required design, process or product is an infringement of a copyright or a patent, the Contractor shall be responsible for such loss unless such information is promptly furnished to the Architect.

**PAGE 21**

§ 3.18.1 ~~To the fullest extent permitted by law the Contractor shall indemnify and hold harmless the Owner, Architect, Architect's consultants, and agents and employees of any of them from and against claims, damages, losses and expenses, including but not limited to attorneys' fees, arising out of or resulting from performance of the Work, provided that such claim, damage, loss or expense is attributable to bodily injury, sickness, disease or death, or to injury to or destruction of tangible property (other than the Work itself), but only to the extent caused by the negligent acts or omissions of the Contractor, a Subcontractor, anyone directly or indirectly employed by them or anyone for whose acts they may be liable, regardless of whether or not such claim, damage, loss or expense is caused in part by a party indemnified hereunder. Such obligation shall not be construed to negate, abridge, or reduce other rights or obligations of indemnity that would otherwise exist as to a party or person described in this Section 3.18.~~The Contractor shall be responsible for initiating, maintaining, and supervising all safety precautions and programs in connection with the Work.  Contractor shall take or shall require its subcontractors to take all reasonable precautions for the safety of, and shall provide all reasonable protection to prevent damages, injury or loss to (1) all employees performing the Work and other persons who may be affect thereby, (2) all the Work and all materials and equipment to be incorporated therein, and (3) other property at the site or adjacent thereto.  Contractor shall provide all notices and persons and property and their protection from damage, injury or loss.

§ 3.18.2 ~~In claims against any person or entity indemnified under this Section 3.18 by an employee of the Contractor, a Subcontractor,~~ To the fullest extent permitted by law, the Contractor shall defend, indemnify and hold harmless the Owner, its agents and employees from and against all claims, damages, losses and expenses, arising from the performance of the Work.  The provision also applies to any such claim, damages, loss or expense that (1) is attributable to bodily injury, sickness, disease or death, or to injury to or destruction of tangible property including the loss of use resulting therefrom, and (2) is caused in whole or in part by any negligent acts or omissions of the Contractor, any subcontractor, and sub-subcontractor, any material or equipment supplier, or anyone directly or indirectly employed by any of them.  Such obligations shall not be construed to negate, abridge, compromise or otherwise reduce any other rights or obligations of indemnity which would otherwise exist as to any party or person described in this paragraph.  In any and all claims against the Owner, or any of their agents or employees by any employee of the Contractor, any subcontractor, ~~anyone~~ directly or indirectly employed by ~~them~~ any of them, or anyone for whose acts ~~they~~ any of them may be liable, the indemnification obligation under ~~Section 3.18.1 shall not be limited by a limitation on~~ this paragraph shall not be limited in any way by any limitation on the amount or type of damages, compensation or benefits payable by or for the Contractor or ~~a Subcontractor under workers'~~ any subcontractor under workers' or workmen's compensation acts, disability benefit acts or other employee benefit acts.  The foregoing indemnity from Contractor shall be applicable to all losses, damages, expenses or claims for damage or injury to any person or property resulting from the negligence, recklessness or intentional wrongful misconduct of Contractor, and persons employed or hired by Contractor relating to the performance of Work as described in this Contract.  This indemnification provision is incorporated by reference into the Contract Documents.  The indemnification as provided in this paragraph shall be subject to a monetary limitation of the combined amount of the total of the required insurance liability limits under this contract, or Five Million Dollars ($5,000,000.00), whichever is greater, and which the Owner and Contractor both acknowledge that this amount bears a reasonable commercial relationship to this Contract.  The Contractor shall promptly remedy all damage or loss to any property caused by the act or omission by the Contractor, any subcontractor, and sub-subcontractor, or anyone directly or indirectly employed by any of them, or by anyone for whose acts any of them may be liable. This indemnification provision shall only be operable to apply to these acts and omissions of the Contractor, it subcontractors, suppliers and consultants that perform labor or provide materials or services relative to this Work. The foregoing obligations of the Contractor are in addition to its other obligations under this Contract.  This provision shall survive the termination or expiration of this Contract.

Additions and Deletions Report for AIA Document A201™ – 2007. Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987, 1997 and 2007 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 08:45:01 on 06/06/2016 under Order No.7898468378_1 which expires on 04/22/2017, and is not for resale.
User Notes:   (727872666)

Complaint, Exh. B

ARTICLE 4   ARCHITECT

§ 3.18.3 In claims against any person or entity indemnified under this Section 3.18 by an employee of the Contractor, a Subcontractor, anyone directly or indirectly employed by them or anyone for whose acts they may be liable, the indemnification obligation under Section 3.18.2 shall not be limited by a limitation on amount or type of damages, compensation or benefits payable by or for the Contractor or a Subcontractor under workers' compensation acts, disability benefit acts or other employee benefit acts.

§ 3.18.4 If any claim of lien or stop-notice or any other demand for payment or security therefore, including claims or demands upon performance and payment bond sureties for this Contract, is made or filed with the Owner or the Project by any person claiming that Contractor or any Subcontractor or supplier or any other person claiming under any of them has failed to perform its contractual obligations or to make payment for any labor, services, trust fund contribution, materials, equipment, taxes or other item furnished or obligation uncured for, or in connection with the Work, or if at any time there shall be evidence of such non performance or non payment of any claim or lien or stop-notice or other demand for which, if established, the Owner or the Project might become liable, then the Owner shall have the right to retain from any payment then due or thereafter to become due under the Contract or to be reimbursed by Contractor for an amount sufficient to satisfy, discharge and defend against any such claim or lien or stop-notice or other demand, or any action or proceeding thereon which may be brought to judgment or award.

§3.18.5  The Contractor is responsible for all construction personnel and traffic routing logistics required in the performance of the Work. The Contractor will provide watchmen, barricades, barrels and any other means necessary to control traffic in order to protect the Work and safety of personnel and property.   Contractor acknowledges that portions of the Project will be occupied as buildings are completed and turned over to Owner.   Owner and its residents will have access to access roads, parking areas and completed buildings at all times following completion of the respective building.

ARTICLE 4    ADMINISTRATION OF THE CONTRACT
§ 4.1 GENERAL ARCHITECT
§ 4.1.1  The Owner shall retain an architect  Architect is the person lawfully licensed to practice architecture or an entity lawfully practicing architecture in the jurisdiction where the Project is located. That person or entity is identified as the Architect any entity lawfully practicing architecture identified as such in the Agreement and is referred to throughout the Contract Documents as if singular in number. architects, or such successor Architect as the Owner may appoint by written notice to the Contractor from time to time.

The term "Architect" means the Architect or the Architect's authorized representative.

§ 4.1.2 Duties, responsibilities and limitations of authority of the Architect as set forth in the Contract Documents shall not be restricted, modified or extended without written consent of the Owner, Contractor and Architect. Consent shall not be unreasonably withheld.   The Architect shall reduce to writing via revisions to its drawings and specifications all changes and modifications in the Work, including substitutions, value engineering changes and adjustments, before the Contractor will be deemed to be required to make such changes in the Work.   Additionally, the Architect shall assist with all efforts being undertaken to obtain certificates and approvals of cognizant authorities including the preparation of Conformance Drawings.

§ 4.1.3 If the employment of the Architect is terminated, the Owner shall employ a successor architect as to whom the Contractor has no reasonable objection and whose status under the Contract Documents shall be that of the Architect.

§ 4.2 ARCHITECT'S ADMINISTRATION OF THE CONTRACT
§ 4.2.1 The Architect will provide administration of the Contract as described in the Contract Documents and will be an Owner's representative during construction until the date the Architect issues the final Certificate for Payment. Documents,   and may be the Owner's representative (1) during construction, (2) until final payment is due and (3) with the Owner's concurrence, from time to time during the one-year period for correction of Work described in Section 12.2. The Architect will have authority to act on behalf of the Owner only to the extent provided in the Contract Documents Documents, unless otherwise modified in writing in accordance with other provisions of the Contract.   The structural engineer to be designated by the Architect may perform certain functions that would otherwise be performed by Architect.

Additions and Deletions Report for AIA Document A201™ – 2007. Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987, 1997 and 2007 by The American Institute of Architects. All rights reserved. WARNING: This AIA®  Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA®  Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 08:45:01 on 06/06/2016 under Order No.7898456378_1 which expires on 04/22/2017, and is not for resale.
User Notes:                                                                                                                    (727872888)

14

§ 4.2.2 The ~~Architect~~ Architect, as a representative of the Owner, will visit the site at intervals appropriate to the stage of ~~construction, or as otherwise agreed with the Owner, to become generally familiar with~~ the Contractor's ~~operations~~ (1) to become generally familiar with and to keep the Owner informed about the progress and quality of the portion of the Work completed, (2) to endeavor to guard the Owner against defects and deficiencies in the Work, and (3) to determine in general if the Work ~~observed~~ is being performed in a manner indicating that the Work, when fully completed, will be in accordance with the Contract Documents. However, the Architect will not be required to make exhaustive or continuous on-site inspections to check the quality or quantity of the Work. The Architect will ~~not have control over, charge of, or responsibility~~ neither have control over or charge of, nor be responsible for, the construction means, methods, techniques, sequences or procedures, or for the safety precautions and programs in connection with the Work, since these are solely the Contractor's rights and responsibilities under the Contract Documents, except as provided in Section 3.3.1.  Further, the Architect shall not be empowered to order changes in the Work unless the Owner has expressly agreed to the change in writing.

§ 4.2.3 ~~On the basis of the site visits, the Architect will keep the Owner reasonably informed about the progress and quality of the portion of the Work completed, and report to the Owner (1) known deviations from the Contract Documents and from the most recent construction schedule submitted by the Contractor, and (2) defects and deficiencies observed in the Work.~~ The Architect will not be responsible for the Contractor's failure to perform the Work in accordance with the requirements of the Contract Documents. The Architect will not have control over or charge of and will not be responsible for acts or omissions of the Contractor, Subcontractors, or their agents or employees, or any other persons or entities performing portions of the Work.

§ 4.2.4 ~~COMMUNICATIONS FACILITATING CONTRACT ADMINISTRATION~~ Communications Facilitating Contract Administration.   Except as otherwise provided in the Contract ~~Documents or when direct communications have been specially authorized,~~ Documents, the Owner and Contractor shall endeavor to communicate with each other through the Architect about matters arising out of or relating to the Contract. The Contractor shall provide Owner with a copy of all correspondence it sends to Architect. Communications by and with the Architect's consultants shall be through the Architect. Communications by and with Subcontractors and material suppliers shall be through the Contractor. Communications by and with separate contractors shall be through the Owner.

**PAGE 23**

§ 4.2.6 The Architect ~~has~~ will not have authority to reject Work that does not conform to the Contract ~~Documents. Documents without the Owner's Agreement.~~ Whenever the Architect considers it necessary or advisable, the Architect will have authority to require inspection or testing of the Work in accordance with Sections 13.5.2 and 13.5.3, whether or not such Work is fabricated, installed or completed. However, neither this authority of the Architect nor a decision made in good faith either to exercise or not to exercise such authority shall give rise to a duty or responsibility of the Architect to the Contractor, Subcontractors, material and equipment suppliers, their agents or employees, or other persons or entities performing portions of the Work.

§ 4.2.7 The Architect will review ~~and approve,~~ approve or take other appropriate action ~~upon,~~ upon the Contractor's submittals such as Shop Drawings, Product Data and Samples, but only for the limited purpose of checking for conformance with information given and the design concept expressed in the Contract Documents. The Architect's action will be taken ~~in accordance with the submittal schedule approved by the Architect or, in the absence of an approved submittal schedule, with reasonable promptness~~ with such reasonable promptness as to cause no delay in the Work or in the activities of the Owner, Contractor or separate contractors, while allowing sufficient time in the Architect's professional judgment to permit adequate review. Review of such submittals is not conducted for the purpose of determining the accuracy and completeness of other details such as dimensions and quantities, or for substantiating instructions for installation or performance of equipment or systems, all of which remain the responsibility of the Contractor as required by the Contract Documents. The Architect's review of the Contractor's submittals shall not relieve the Contractor of the obligations under Sections 3.3, 3.5 and 3.12. The Architect's review shall not constitute approval of safety precautions or, unless otherwise specifically stated by the Architect, of any construction means, methods, techniques, sequences or procedures. The Architect's approval of a specific item shall not indicate approval of an assembly of which the item is a component.

§ 4.2.8 The Architect ~~will~~ may prepare Change Orders and Construction Change ~~Directives, and may authorize minor changes in the Work as provided in Section 7.4. The Architect will investigate and make determinations and~~

Additions and Deletions Report for AIA Document A201™ – 2007. Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987, 1997 and 2007 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 08:45:01 on 06/06/2016 under Order No.7896458378_1 which expires on 04/22/2017, and is not for resale.
User Notes:                                                                                                              (727872888)

15

Complaint, Exh. B

~~recommendations regarding concealed and unknown conditions as provided in Section 3.7.4.~~Directives for the Owner's signature, but the Architect cannot order changes in the Work without the Owner's written agreement with the proposed document.

§ 4.2.9 The Architect will conduct inspections to determine the date or dates of Substantial Completion and the date of final ~~completion; issue Certificates of Substantial Completion pursuant to Section 9.8;~~ completion, will receive and forward to the Owner, for the Owner's review and records, written warranties and related documents required by the Contract and assembled by the ~~Contractor pursuant to Section 9.10; and~~ Contractor, and will issue a final Certificate for Payment ~~pursuant to Section 9.10.~~upon compliance with the requirements of the Contract Documents.

...

§ 4.2.11 The Architect will interpret and decide matters concerning performance ~~under, under~~ and requirements of, the Contract Documents on written request of either the Owner or Contractor. The Architect's response to such requests will be made in writing within any time limits agreed upon or otherwise with reasonable promptness. If no agreement is made concerning the time within which interpretations required of the Architect shall be furnished in compliance with this Section 4.2, then delay shall not be recognized on account of failure by the Architect to furnish such interpretations until 15 days after written request is made for them.

§ 4.2.12 Interpretations and decisions of the Architect will be consistent with the intent ~~of, of~~ and reasonably inferable ~~from, from~~ the Contract Documents and will be in writing or in the form of drawings. When making such interpretations and initial decisions, the Architect will endeavor to secure faithful performance by both Owner and Contractor, will not show partiality to either and will not be liable for results of interpretations or decisions so rendered in good faith.

## § 4.3 CLAIMS AND DISPUTES
§ 4.3.1 Definition.   A Claim is a demand or assertion by one of the parties seeking, as a matter of right, adjustment or interpretation of Contract terms, payment of money, extension of time or other relief with respect to the terms of the Contract. The term "Claim" also includes other disputes and matters in question between the Owner and Contractor arising out of or relating to the Contract on only those disputes which arose prior to the date final payment is due. Claims must be initiated by written notice. The responsibility to substantiate Claims shall rest with the party making the Claim.

§ 4.3.2 Time Limits on Claims. Claims by either party must be initiated within 21 days after occurrence of the event giving rise to such Claim or within 21 days after the claimant first recognizes the condition giving rise to the Claim, whichever is later. Claims must be initiated by written notice to the Architect and the other party.   Any claim(s) not initiated within the time limits set forth herein are waived.

~~§ 4.2.13 The Architect's decisions on matters relating to aesthetic effect will be final if consistent with the intent expressed in the Contract Documents.~~.

§ 4.3.3 Continuing Contract Performance. Pending final resolution of a Claim except as otherwise agreed in writing or as provided in Section 9.7.1 and Article 14, the Contractor shall proceed diligently with performance of the Contract and the Owner shall continue to make payments in accordance with the Contract Documents.

~~§ 4.2.14 The Architect will review and respond to requests for information about the Contract Documents. The Architect's response to such requests will be made in writing within any time limits agreed upon or otherwise with reasonable promptness. If appropriate, the Architect will prepare and issue supplemental Drawings and Specifications in response to the requests for information.~~

§ 4.3.4 Claims for Concealed or Unknown Conditions. If conditions are encountered at the site which are (1) subsurface or otherwise concealed physical conditions which differ materially from those indicated in the Contract Documents or (2) unknown physical conditions of an unusual nature, which differ materially from those ordinarily found to exist and generally recognized as inherent in construction activities of the character provided for in the Contract Documents, then notice by the observing party shall be given to the other party promptly before conditions are disturbed and in no event later than ten (10) days after first observance of the conditions. The Architect will promptly investigate such conditions and, if they differ materially and cause an increase or decrease in the

Additions and Deletions Report for AIA Document A201™ – 2007. Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987, 1997 and 2007 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 08:45:01 on 06/08/2016 under Order No.7898458378_1 which expires on 04/22/2017, and is not for resale.
User Notes:                                                                                                    (727872888)

Contractor's cost of, or time required for, performance of any part of the Work, will recommend an equitable adjustment in the Contract Sum or Contract Time; or both. If the Architect determines that the conditions at the site are not materially different from those indicated in the Contract Documents and that no change in the terms of the Contract is justified, the Architect shall so notify the Owner and Contractor in writing, stating the reasons. Claims by either party in opposition to such determination must be made within 21 days after the Architect has given notice of the decision. If the conditions encountered are materially different, the Contract Sum and Contract Time shall be equitably adjusted, but if the Owner and Contractor cannot agree on an adjustment in the Contract Sum or Contract Time, the adjustment shall be referred to the Architect for initial determination, subject to further proceedings pursuant to Section 4.4.

§ 4.3.5 Claims for Additional Cost. If the Contractor wishes to make Claim for an increase in the Contract Sum, written notice as provided herein shall be given before proceeding to execute the Work. Prior notice is not required for Claims relating to an emergency endangering life or property arising under Section 10.6.

§ 4.3.5.1 Notwithstanding anything to the contrary contained in the Contract Documents, no change in the Work, whether by way of alteration or addition to the Work, or otherwise, shall be the basis for an addition to the Contract Sum or shall result in a change to the Contract Time unless and until such alteration or addition has been authorized by a Change Order or Construction Change Directive executed and issued in accordance with and in strict compliance with the requirements of the Contract Documents. Accordingly, no course of conduct or dealings between the parties, nor express nor implied acceptance of alterations nor additions to the Work, and no claim that the Owner has been unjustly enriched by any alteration or addition to the Work, whether or not there is in fact such unjust enrichment, shall be the basis for any claim to an increase in the Contract Sum or change in the Contract Time.

§ 4.3.6 If the Contractor believes additional cost is involved for reasons including but not limited to (1) a written interpretation from the Architect, (2) an order by the Owner to stop the Work where the Contractor was not at fault, (3) a written order for a minor change in the Work issued by the Architect, (4) failure of payment by the Owner, (5) termination of the Contract by the Owner, (6) Owner's suspension or (7) other reasonable grounds, Claim shall be filed in accordance with this Section 4.3.

§ 4.3.7 Claims for Additional Time
§ 4.3.7.1 If the Contractor wishes to make Claim for an increase in the Contract Time, written notice as provided herein shall be given. The Contractor's Claim shall include a fragnet analysis utilizing the most current updated Construction Schedule, establishing the impact on the Project's critical path. In the case of a continuing delay only one Claim is necessary. All claims for time extensions not meeting these requirements are waived.

§ 4.3.7.2 If adverse weather conditions are the basis for a Claim for additional time, such Claim shall be documented by data substantiating that weather conditions were abnormal for the period of time could not have been reasonably anticipated and had an adverse effect on the scheduled construction.

§ 4.3.8 Injury or Damage to Person or Property. If either party to the Contract suffers injury or damage to person or property because of an act or omission of the other party, or of others for whose acts such party is legally responsible, written notice of such injury or damage, whether or not insured, shall be given to the other party within a reasonable time not exceeding 21 days after discovery. The notice shall provide sufficient detail to enable the other party to investigate the matter.

§ 4.3.9 If unit prices are stated in the Contract Documents or subsequently agreed upon, and if quantities originally contemplated are materially changed in a proposed Change Order or Construction Change Directive so that application of such unit prices to quantities of Work proposed will cause substantial inequity to the Owner or Contractor, the applicable unit prices shall be equitably adjusted.

§ 4.3.10 If any Claim by the Contractor against the Owner for monetary damages and/or an increase in the Contract Sum results in litigation, the amount of such Claim, damages or increase will not be shown or proven by the Contractor's use of a "total cost" approach thereto, and the monetary difference between the Contractor's estimated cost of the Work (prepared and utilized by the Contractor in preparing his bid for the Work) and the actual costs incurred by the Contractor in performing the Work shall not be valid, creditable, cognizable, competent or relevant proof of the amount of such Claim, damages or increase; and, additionally, the cumulative effect of such Change Orders

Additions and Deletions Report for AIA Document A201™ – 2007. Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987, 1997 and 2007 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 08:45:01 on 06/06/2016 under Order No.7898456378_1 which expires on 04/22/2017, and is not for resale.
User Notes:                                                                          (727872888)

Complaint, Exh. B

on the costs incurred by the Contractor in performing the Work shall not be valid, creditable, cognizable, competent or relevant proof of the amount of all or any part of such Claim, damages or increase. Thus, for any calculation or allegation of damages by the Contractor to be valid and compensable, time and material records exclusively and directly tracking the extra costs as they are incurred must be maintained, kept available for the Owner's timely review and submitted by the Contractor.  Nothing herein shall prevent Contractor from presenting evidence of his total costs and related matters for merely demonstrative or illustrative purposes.

## § 4.4 RESOLUTION OF CLAIMS AND DISPUTES
**§ 4.4.1** The Contractor shall continue work during the pendency of any dispute or claim that originates during the Project, and shall not stop or slow the progress of the   work pending resolution of such claim or dispute provided Owner pays Contractor undisputed sums due for work performed.

## § 4.5 MEDIATION
**§ 4.5.1** Any Claim arising out of or related to the Contract, except Claims relating to aesthetic effect and except those waived as provided for in Sections 4.3.10, 9.10.4 and 9.10.5 shall,   be subject to mediation as a condition precedent to arbitration or the institution of legal or equitable proceedings by either party.

**§ 4.5.2** The parties shall endeavor to resolve their Claims by mediation which, unless the parties mutually agree otherwise, shall be in accordance with the Construction Industry Mediation Rules currently in effect or other rules and procedures by agreement by the parties at the time the mediation is scheduled. Request for mediation shall be filed in writing with the other party to the Contract. The request may be made concurrently with the filing of a demand for arbitration but, in such event, mediation shall proceed in advance of legal or equitable proceedings, which shall be stayed pending mediation for a period of 60 days from the date of filing, unless stayed for a longer period by agreement of the parties or court order.

**§ 4.5.3** The parties shall share the mediator's fee and any filing fees equally. The mediation and any subsequent hearings shall be held in the place where the Project is located, unless another location is mutually agreed upon. Agreements reached in mediation shall be enforceable as settlement agreements in any court having jurisdiction thereof.

## § 4.6 LITIGATION OF CLAIMS
**§ 4.6.1** Any Claim arising out of or related to the Contract, except Claims relating to aesthetic effect and except those waived as provided for in Sections 4.3.2,   9.10.4 and 9.10.5, shall, after decision by the Architect or 30 days after submission of the Claim to the Architect, be subject to litigation exclusively in the County where the project is located.   Prior to litigation, the parties shall endeavor to resolve disputes by mediation in accordance with the provisions of Section 4.5.


**PAGE 26**

§ 5.2.1 Unless otherwise stated in the Contract Documents or the bidding requirements, the Contractor, as soon as practicable after award of the Contract, shall furnish in writing to the Owner ~~through~~ and the Architect the names of persons or entities (including those who are to furnish materials or equipment fabricated to a special design) proposed for each principal portion of the Work. The Architect ~~may reply within 14 days~~ will promptly reply to the Contractor in writing stating ~~(1)~~ whether or not the Owner or the ~~Architect~~ Architect, after due investigation, has reasonable objection to any such proposed person or ~~entity or (2) that the Architect requires additional time for review.~~ entity. Failure of the Owner or Architect to reply ~~within the 14-day period~~ promptly shall constitute notice of no reasonable objection.   Copies of all bids or other proposals from subcontractors and sub-subcontractors shall, upon the request of the Owner, be submitted to the Owner for review.   All subcontractors and sub-subcontractors shall be subject to the reasonable approval of Owner's lender, if any, which approval or denial to be provided within ten days of   submission of list of subcontractors.

...

§ 5.2.4 The Contractor shall not ~~substitute~~ change a Subcontractor, person or entity previously selected if the Owner or Architect makes reasonable objection to such ~~substitution~~ substitute.

Additions and Deletions Report for AIA Document A201™ – 2007. Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987, 1997 and 2007 by The American Institute of Architects. All rights reserved. WARNING: This AIA®  Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA®  Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 08:45:01 on 06/06/2016 under Order No.7896458378_1 which expires on 04/22/2017, and is not for resale.
User Notes:                                                                                                              (727672886)

18

§ 5.2.5   Contractor shall contract solely in its own name and behalf, and not in the name or behalf of Owner, with the specified Subcontractor or supplier.   No contractual relation between Owner and Subcontractor shall be created by the Contract Documents or by any subcontract or purchase order except Owner's position as a third party beneficiary of each subcontract or purchase order.   Contractor's subcontract form shall be subject to reasonable approval by Owner.   Upon written request, Contractor shall submit to Owner value engineering data reflecting subcontracting pricing.

~~By appropriate agreement, written where legally required for validity, the Contractor shall require each Subcontractor, to the extent of the Work to be performed by the Subcontractor, to be bound to the Contractor by terms of the Contract Documents, and to assume toward the Contractor all the obligations and responsibilities, including the responsibility for safety of the Subcontractor's Work, which the Contractor, by these Documents, assumes toward the Owner and Architect. Each subcontract agreement shall preserve and protect the rights of the Owner and Architect under the Contract Documents with respect to the Work to be performed by the Subcontractor so that subcontracting thereof will not prejudice such rights, and shall allow to the Subcontractor, unless specifically provided otherwise in the subcontract agreement, the benefit of all rights, remedies and redress against the Contractor that the Contractor, by the Contract Documents, has against the Owner. Where appropriate, the Contractor shall require each Subcontractor to enter into similar agreements with Sub-subcontractors. The Contractor shall make available to each proposed Subcontractor, prior to the execution of the subcontract agreement, copies of the Contract Documents to which the Subcontractor will be bound, and, upon written request of the Subcontractor, identify to the Subcontractor terms and conditions of the proposed subcontract agreement that may be at variance with the Contract Documents. Subcontractors will similarly make copies of applicable portions of such documents available to their respective proposed Sub-subcontractors.~~ § 5.3.1 By appropriate agreement, written where legally required for validity, the Contractor shall require each Subcontractor, to the extent of the Work to be performed by the Subcontractor, to be bound to the Contractor by terms of the Contract Documents, and to assume toward the Contractor all the obligations and responsibilities, including the responsibility for safety of the Subcontractor's Work, which the Contractor, by these Documents, assumes toward the Owner and Architect. Each subcontract agreement shall preserve and protect the rights of the Owner and Architect under the Contract Documents with respect to the Work to be performed by the Subcontractor so that subcontracting thereof will not prejudice such rights, and shall allow to the Subcontractor, unless specifically provided otherwise in the subcontract agreement, the benefit of all rights, remedies and redress against the Contractor that the Contractor, by the Contract Documents, has against the Owner. Where appropriate, the Contractor shall require each Subcontractor to enter into similar agreements with Sub-subcontractors. The Contractor shall make available to each proposed Subcontractor, prior to the execution of the subcontract agreement, copies of the Contract Documents to which the Subcontractor will be bound, and, upon written request of the Subcontractor, identify to the Subcontractor terms and conditions of the proposed subcontract agreement which may be at variance with the Contract Documents. Subcontractors will similarly make copies of applicable portions of such documents available to their respective proposed Sub-subcontractors.

§ 5.3.2   Notwithstanding any provision of Subparagraph 5.3.1, any part of the Work performed for the Contractor by a Subcontractor or its Sub-subcontractor shall be pursuant to a written Subcontract between the Contractor and such Subcontractor (or the Subcontractor and its Sub-subcontractor at any tier), which shall be prepared on a form of subcontract reasonably satisfactory to the Owner in all respects.   Each such subcontract shall, where the context so requires, contain provisions that:

  .1  require that such Work be performed in accordance with the requirements of the Contract Documents;

  .2  require the Subcontractor to carry and maintain insurance coverage in accordance with the Contact Documents, and to file certificates of such coverage with the Contractor;

  .3  require the Subcontractor to submit certificates and waivers of liens for work completed and paid to it and by its Sub-subcontractors paid in a prior payment application as a condition to the disbursement of the progress payment next due and owing;

  .4  require each Subcontractor to remove all debris created by its activities.

Additions and Deletions Report for AIA Document A201™ – 2007. Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987, 1997 and 2007 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 08:45:01 on 08/08/2016 under Order No.7898458378_1 which expires on 04/22/2017, and is not for resale.
User Notes:                      (727872888)

19

Complaint, Exh. B

**PAGE 27**

**§ 5.4.1** Each subcontract agreement for a portion of the Work is assigned by the Contractor to the ~~Owner, provided that~~Owner provided that:

.1  assignment is effective only after termination of the Contract by the Owner for cause pursuant to Section 14.2 and only for those subcontract agreements ~~that~~ which the Owner accepts by notifying the Subcontractor and Contractor in writing; and

...

~~When the Owner accepts the assignment of a subcontract agreement, the Owner assumes the Contractor's rights and obligations under the subcontract.~~If any subcontract is assigned to Owner pursuant to the foregoing provision, then Owner shall be substituted for the Contractor under any such subcontract, and the Subcontractor shall complete all of its obligations under the Subcontract for the benefit of Owner.

...

~~§ 5.4.3 Upon such assignment to the Owner under this Section 5.4, the Owner may further assign the subcontract to a successor contractor or other entity. If the Owner assigns the subcontract to a successor contractor or other entity, the Owner shall nevertheless remain legally responsible for all of the successor contractor's obligations under the subcontract.~~

...

**§ 6.1.1** The Owner reserves the right to perform construction or operations related to and adjacent to the Project with the Owner's own forces, and to award separate contracts in connection with other portions of the Project or other construction or operations on the site under Conditions of the Contract ~~identical or substantially~~ similar to ~~these~~ these, including those portions related to insurance and waiver of subrogation. ~~If the Contractor claims that delay or additional cost is involved because of such action by the Owner, the Contractor shall make such Claim as provided in Article 15.~~

**PAGE 28**

**§ 6.1.3** The Owner shall provide for coordination of the activities of the Owner's own forces and of each separate contractor with the Work of the Contractor, who shall cooperate with them. The Contractor shall coordinate and participate with other separate contractors and the Owner in reviewing their construction ~~schedules.~~ schedules when directed to do so. The Contractor shall make any revisions to the construction schedule deemed necessary after a joint review and mutual agreement. The construction schedules shall then constitute the schedules to be used by the Contractor, separate contractors and the Owner until subsequently revised.

~~§ 6.1.4 Unless otherwise provided in the Contract Documents, when the Owner performs construction or operations related to the Project with the Owner's own forces, the Owner shall be deemed to be subject to the same obligations and to have the same rights that apply to the Contractor under the Conditions of the Contract, including, without excluding others, those stated in Article 3, this Article 6 and Articles 10, 11 and 12.~~

...

**§ 6.2.3** The Contractor shall reimburse the Owner for costs incurred by the Owner ~~incurs~~ that are payable to a separate contractor because of the Contractor's delays, improperly timed activities or defective construction. The Owner shall be responsible to the Contractor for costs the Contractor incurs because of a separate contractor's delays, improperly timed activities, damage to the Work or defective construction.

Additions and Deletions Report for AIA Document A201™ – 2007. Copyright© 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987, 1997 and 2007 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 08:45:01 on 06/08/2016 under Order No.7898458378_1 which expires on 04/22/2017, and is not for resale.
User Notes:                                                                                              (727872888)

**20**

§ 6.2.4 The Contractor shall promptly remedy damage wrongfully caused by the Contractor ~~wrongfully causes~~ to completed or partially completed construction or to property of the Owner or separate contractors as provided in Section 10.2.5.

...

~~If a dispute arises among the Contractor, separate contractors and the Owner as to the responsibility under their respective contracts for maintaining the premises and surrounding area free from waste materials and rubbish, the Owner may clean up and the Architect will allocate the cost among those responsible.~~ § 6.3.1 If a dispute arises among the Contractor, separate contractors and the Owner as to the responsibility under their respective contracts for maintaining the premises and surrounding area free from waste materials and rubbish, the Owner may clean up and the Architect will recommend an allocation of the cost among those responsible, subject to each party's right to seek a review of that determination under Article 4.4.

...

§ 7.1.2 A Change Order shall be based upon agreement among the Owner, Contractor and Architect; a Construction Change Directive requires agreement by the Owner and Architect and may or may not be agreed to by the ~~Contractor; an order for a minor change in the Work may be issued by the Architect alone.~~Contractor.

PAGE 29

§ 7.2.1 A Change Order is a written instrument prepared by the Architect and signed by the Owner, Contractor and ~~Architect~~ Architect, stating their agreement upon all of the following:

.1    ~~The change~~ Change in the Work;

...

.3    The extent of the adjustment, if any, in the Contract Time.

§ 7.2.2 Methods used in determining adjustments to the Contract Sum may include those listed in Section 7.3.3.

§ 7.2.3 If any Change Order, signed by the Owner and the Contractor, results in or contains an increase in the Contract Sum, the amount of such increase shall be conclusively deemed and held to include the Contractor's costs of and for all applicable taxes, bond premiums, insurance premiums, supervision, overhead, profit, labor, labor impact and materials related to the Change Order and the additional work required and/or contemplated thereby, and Contractor shall be conclusively deemed and held to have waived any known Claim for any additional sum for delays, disruption, acceleration, loss of productivity, ripple effect, inefficiency or any other matter arising out of or in any way related to such Change Order and the additional work contemplated thereby, unless such claim is specifically reserved in such change order.

...

.4    As provided in Section ~~7.3.7~~7.3.6.

§ 7.3.4 ~~If unit prices are stated in the Contract Documents or subsequently agreed upon, and if quantities originally contemplated are materially changed in a proposed Change Order or Construction Change Directive so that application of such unit prices to quantities of Work proposed will cause substantial inequity to the Owner or Contractor, the applicable unit prices shall be equitably adjusted.~~Upon receipt of a Construction Change Directive, the Contractor shall promptly proceed with the change in the Work involved and advise the Architect of the Contractor's agreement or disagreement with the method, if any, provided in the Construction Change Directive for determining the proposed adjustment in the Contract Sum or Contract Time.

§ 7.3.5 ~~Upon receipt of a Construction Change Directive, the Contractor shall promptly proceed with the change in the Work involved and advise the Architect of the Contractor's agreement or disagreement with the method, if any, provided in the Construction Change Directive for determining the proposed adjustment in the Contract Sum or~~

Additions and Deletions Report for AIA Document A201™ – 2007. Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987, 1997 and 2007 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 08:45:01 on 06/06/2016 under Order No.7898456378_1 which expires on 04/22/2017, and is not for resale.
User Notes:                                                                                                    (727872886)

Complaint, Exh. B

~~Contract Time.~~A Construction Change Directive signed by the Contractor indicates the  agreement of the Contractor therewith, including adjustment in Contract Sum and Contract Time or the method for determining them. Such agreement shall be effective immediately and shall be recorded as a Change Order.

**§ 7.3.6** ~~A Construction Change Directive signed by the Contractor indicates the Contractor's agreement therewith, including adjustment in Contract Sum and Contract Time or the method for determining them. Such agreement shall be effective immediately and shall be recorded as a Change Order.~~If the Contractor does not respond promptly or disagrees with the method for adjustment in the Contract Sum, the method and the adjustment shall be determined by the Architect on the basis of reasonable expenditures and savings of those performing the Work attributable to the change, including, in case of an increase in the Contract Sum, a reasonable allowance for overhead and profit. In such case, and also under Section 7.3.3.3, the Contractor shall keep and present, in such form as the Architect may prescribe, an itemized accounting together with appropriate supporting data. Unless otherwise provided in the Contract Documents, costs for the purposes of this Section 7.3.6 shall be limited to the following:

 .1   Costs of labor, including social security, old age and unemployment insurance, fringe benefits required by agreement or custom, and workers' compensation insurance;
 .2   Costs of materials, supplies and equipment, including cost of transportation, whether incorporated or consumed;
 .3   Rental costs of machinery and equipment, exclusive of hand tools, whether rented from the Contractor or others;
 .4   Costs of premiums for all bonds and insurance, permit fees, and sales, use or similar taxes related to the Work; and
 .5   Additional costs of supervision and field office personnel directly attributable to the change.

**§ 7.3.7** ~~If the Contractor does not respond promptly or disagrees with the method for adjustment in the Contract Sum, the Architect shall determine the method and the adjustment on the basis of reasonable expenditures and savings of those performing the Work attributable to the change, including, in case of an increase in the Contract Sum, an amount for overhead and profit as set forth in the Agreement, or if no such amount is set forth in the Agreement, a reasonable amount. In such case, and also under Section 7.3.3.3, the Contractor shall keep and present, in such form as the Architect may prescribe, an itemized accounting together with appropriate supporting data. Unless otherwise provided in the Contract Documents, costs for the purposes of this Section 7.3.7 shall be limited to the following:~~

 ~~.1   Costs of labor, including social security, old age and unemployment insurance, fringe benefits required by agreement or custom, and workers' compensation insurance;~~
 ~~.2   Costs of materials, supplies and equipment, including cost of transportation, whether incorporated or consumed;~~
 ~~.3   Rental costs of machinery and equipment, exclusive of hand tools, whether rented from the Contractor or others;~~
 ~~.4   Costs of premiums for all bonds and insurance, permit fees, and sales, use or similar taxes related to the Work; and~~
 ~~.5       Additional costs of supervision and field office personnel directly attributable to the~~The amount of credit to be allowed by the Contractor to the Owner for a deletion or change which results in a net decrease in the Contract Sum shall be actual net cost as confirmed by the Architect. When both additions and credits covering related Work or substitutions are involved in a change, the allowance for overhead and profit shall be figured on the basis of net increase, if any, with respect to that change.

**§ 7.3.8** ~~The amount of credit to be allowed by the Contractor to the Owner for a deletion or change that results in a net decrease in the Contract Sum shall be actual net cost as confirmed by the Architect. When both additions and credits covering related Work or substitutions are involved in a change, the allowance for overhead and profit shall be figured on the basis of net increase, if any, with respect to that change.~~Pending final determination of the total cost of a Construction Change Directive to the Owner, amounts not in dispute for such changes in the Work shall be included in Applications for Payment accompanied by a Change Order indicating the parties' agreement with part or all of such costs. For any portion of such cost that remains in dispute, the Architect will make an interim determination for purposes of monthly certification for payment for those costs. That determination of cost shall adjust the Contract Sum on the same basis as a Change Order, subject to the right of either party to disagree and assert a claim in accordance with Article 4.

Additions and Deletions Report for AIA Document A201™ – 2007. Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987, 1997 and 2007 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 08:45:01 on 08/06/2016 under Order No.7898458378_1 which expires on 04/22/2017, and is not for resale.
User Notes:                                                                                                                          (727872868)

Complaint, Exh. B

§ 7.3.9 ~~Pending final determination of the total cost of a Construction Change Directive to the Owner, the Contractor may request payment for Work completed under the Construction Change Directive in Applications for Payment. The Architect will make an interim determination for purposes of monthly certification for payment for those costs and certify for payment the amount that the Architect determines, in the Architect's professional judgment, to be reasonably justified. The Architect's interim determination of cost shall adjust the Contract Sum on the same basis as a Change Order, subject to the right of either party to disagree and assert a Claim in accordance with Article 15.~~ When the Owner and Contractor agree with the determination made by the Architect concerning the adjustments in the Contract Sum and Contract Time, or otherwise reach agreement upon the adjustments, such agreement shall be effective immediately and shall be recorded by preparation and execution of an appropriate Change Order.
§ 7.3.10 ~~When the Owner and Contractor agree with a determination made by the Architect concerning the adjustments in the Contract Sum and Contract Time, or otherwise reach agreement upon the adjustments, such agreement shall be effective immediately and the Architect will prepare a Change Order. Change Orders may be issued for all or any part of a Construction Change Directive.~~

~~The Architect has authority to order minor changes in the Work not involving adjustment in the Contract Sum or extension of the Contract Time and not inconsistent with the intent of the Contract Documents. Such changes shall be effected by written order signed by the Architect and shall be binding on the Owner and Contractor.~~ § 7.4.1 The Architect will have authority to order minor changes in the Work not involving adjustment in the Contract Sum or extension of the Contract Time and not inconsistent with the intent of the Contract Documents. Such changes shall be effected by written order and shall be binding on the Owner and Contractor. The Contractor shall carry out such written orders promptly.

### § 7.5  OVERHEAD AND PROFIT
Notwithstanding any provision herein to the contrary, the amounts for combined overhead and profit for Change Orders and Construction Change Directives  are as follows:

1. For the Contractor, for Work performed by the Contractor's own forces or increases in any bond premiums, insurance; five percent (5%) of the cost.

2. For the Contractor, the Work performed by the Contractor's Subcontractor; five percent (5%) of the amount due the Subcontractor.

3. For each Subcontractor or Sub-subcontractors involved, the Work performed by that Subcontractor or Sub-subcontractor's own forces; ten percent (10%) of the cost.

4. For each Subcontractor, the Work performed by the Subcontractor's Sub-subcontractor's; ten percent (10%) of the amount due the Sub-subcontractor.

5. No further tiering of the Sub-subcontractors will be allowed mark-up for overhead and profit.

6. Cost to which overhead and fee is to be applied shall be determined in accordance with Subparagraph 7.3.6.

7. In order to facilitate checking of quotations for extras or credits, all proposals, except those so minor that their propriety can be seen by inspection, shall be accomplished by a complete itemization of costs including labor, materials and Subcontracts. Labor and materials shall be itemized in the manner prescribed above. Where major cost items are Subcontracts, they shall be itemized also.  In no case will be a change involving over $100.00 be approved without such itemization.

8. Notwithstanding the above, no mark up for overhead and profit will be allowed for intangible costs such as overhead and profit on lower tier subcontractor.

PAGE 31

Additions and Deletions Report for AIA Document A201™ – 2007. Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987, 1997 and 2007 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 08:45:01 on 06/06/2016 under Order No.7898456378_1 which expires on 04/22/2017, and is not for resale.
User Notes:                                                                                                                                    (727872888)

23

Complaint, Exh. B

§ 8.2.2 The Contractor shall not knowingly, except by agreement or instruction of the Owner in writing, prematurely commence operations on the site or elsewhere prior to the effective date of insurance required by Article 11 to be furnished by the Contractor and Owner. The date of commencement of the Work shall not be changed by the effective date of such insurance. Unless the date of commencement is established by the Contract Documents or a notice to proceed given by the Owner, the Contractor shall notify the Owner in writing not less than five days or other agreed period before commencing the Work to permit the timely filing of mortgages, mechanic's liens and other security interests.

§ 8.2.3 The Contractor shall proceed expeditiously with adequate forces and shall achieve Substantial Completion within the Contract Time.  In that this Project will be constructed in phases, with certain buildings being occupied before other buildings are completed, the Contractor represents and agrees that the Contract Time has been determined and adjusted with respect to Contractor's need for access.  The Contractor shall ascertain, coordinate and minimize the impact of interruption of the operations on the adjacent buildings or occupied buildings. Such interruptions have been anticipated and included in the Contract sum.

...

§ 8.3.1 If the Contractor is delayed at any time in the ~~commencement or progress of the Work by an act or neglect of the Owner or Architect, or of an employee of either, or of a separate contractor employed by the Owner, or by changes ordered in the Work, or by labor disputes, fire, unusual delay in deliveries, unavoidable casualties or other causes beyond the Contractor's control; or by delay authorized by the Owner pending mediation and arbitration; or by other causes that the Architect determines may justify delay, then the Contract Time shall be extended by Change Order for such reasonable time as the Architect may determine.~~ progress of the Work due to causes outside of its control or the control of its subcontractors or suppliers, the Contractor may submit a Change Order requesting an extension of the Contract Time in accordance with the procedures established in Article 7 and 4.3.7.  The Contractor warrants by execution of the Contract that the Contractor has accounted for and anticipated foreseeable delays and that the Work can be completed within the Contract Time.  The Owner shall not unreasonably withhold approval of a Change Order requesting additional time due to delay when (a) the delay was unforeseeable at the time of the execution of the Contract, (b) the delay was not caused by the Contractor or its subcontractors or suppliers, and (c) the delay could not have been avoided by the Contractor's timely notice to the Owner and (d) the Contractor was not concurrently delaying the project's critical path at the time the delay which is subject of the proposed Change Order occurred.  Any extension of the Contract Time shall be net of any foreseeable delays or other delays attributable to the Contractor.

§ 8.3.2 Claims relating to time shall be made in accordance with applicable provisions of ~~Article 15.~~ Section 4.3.

§ 8.3.3 This Section 8.3 does not preclude recovery of damages for delay by either party under other provisions of the Contract Documents.  However, Contractor shall not seek an increase in the Contract Sum on account of delays, for any delay, unless such delay is caused by the actions or omissions of the Owner, or the Architect, and its consultants.

§ 8.3.4  Contractor's written claims for extension of Contract Time shall be accompanied by detailed dates, correspondence, notices, and any other data which provides proof of the events which are the basis for the claim, that details the critical path Work items on the schedule, justifying the time extension.  Said request shall specifically detail the extension of the critical path of the Project caused by the events which underlie the time extension request.  Any claim not including said data shall be deemed waived, until such time as contractor provides such data in accordance with the contract documents.

§ 8.3.5  Delays due to tardy shop drawing submittal, tardy material ordering or shipment, or any other delays caused by a supplier or a Subcontractor shall not be deemed a valid cause for delay and shall not be accepted as a basis for Claims for extension of time, as the scheduling and control of suppliers and Subcontractors is a part of the Contractor's responsibility.

§ 8.3.6  Permitting the Contractor to continue and finish the Work or any part of the Work after the dates fixed for completion, or after the dates to which the time for completion may have been extended, shall in no way operate as a waiver on the part of the Owner of any of his rights under the Contract.

§ 8.3.7  Upon request from Owner, Contractor shall develop and submit to Owner for its review and consideration,

Additions and Deletions Report for AIA Document A201™ – 2007. Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987, 1997 and 2007 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 08:45:01 on 06/06/2016 under Order No.7086458376_1 which expires on 04/22/2017, and is not for resale.
User Notes:                                                                                                                      (727872888)

24

Complaint, Exh. B

an early completion acceleration program. Said program shall include an estimate of all additional costs that might be incurred in accelerating the Work, as well as any bonus incentives to be paid to Contractor and its Subcontractors in the event Substantial Completion of the Work by the early completion date requested by Owner. The acceptance of any such early completion program shall be at Owner's sole discretion. If Owner so elects to accept Contractor's program, an appropriate amendment to the Contract shall be prepared and executed by the parties.

§ 8.3.8   The Owner may, in its sole discretion and for any reason, direct Contractor to accelerate the schedule of performance by providing overtime, extra shifts, Saturday, Sunday and/or holiday Work and/or by having all or any subcontractors or sub-subcontractors designated by the Owner provide overtime, extra shifts, Saturday, Sunday and/or holiday Work to meet any of the scheduled milestones. To the extent such acceleration is required due to Contractor's negligence or failure to timely or properly progress the work, Contractor shall not be compensated for costs associated with a said direction to accelerate, but will be compensated if such acceleration is due to other causes outside the control of the Contractor.

PAGE 32

~~The Contract Sum is stated in the Agreement and, including authorized adjustments, is the total amount payable by the Owner to the Contractor for performance of the Work under the Contract Documents.~~§ 9.1.1 The Contract Sum is stated in the Agreement and, including authorized adjustments, is the total amount payable by the Owner to the Contractor for performance of the Work under the Contract Documents.

....

~~Where the Contract is based on a stipulated sum or Guaranteed Maximum Price, the Contractor shall submit to the Architect, before the first Application for Payment, a schedule of values allocating the entire Contract Sum to the various portions of the Work and prepared in such form and supported by such data to substantiate its accuracy as the Architect may require. This schedule, unless objected to by the Architect, shall be used as a basis for reviewing the Contractor's Applications for Payment.~~§ 9.2.1 Before the first Application for Payment, the Contractor shall submit to the Architect a schedule of values allocated to various portions of the Work, prepared in such form and supported by such data to substantiate its accuracy as the Architect may require. This schedule, unless objected to by the Architect, shall be used as a basis for reviewing the Contractor's Applications for Payment.

...

§ 9.3.1 At least ten days before the date established for each progress payment, the Contractor shall submit to the ~~Architect~~ Owner an itemized Application for Payment ~~prepared~~ for operations completed in accordance with the schedule of values, ~~if required under Section 9.2,~~ for completed portions of the Work. Such ~~application~~ values. Such applications shall be notarized, if required, and supported by such data substantiating the Contractor's right to payment as the Owner or Architect may require, such as copies of requisitions from Subcontractors and material suppliers, and ~~shall reflect~~ reflecting retainage if provided for in the Contract Documents.  Such Application for Payment shall be certified as correct by Contractor and shall be accompanied by waivers of liens and other documentation from Subcontractors and Sub-subcontractors as reasonably may be required by the Owner for monies previously paid to Contractor.  In addition, such Application for Payment shall contain a certification by the Contractor that there are no written claims of mechanics' or materialmen's liens submitted to the Contractor at the date of such Application for Payment, for which Contractor has received payment previously, that the Contractor has no knowledge of any filed mechanics' or materialmen's liens with respect to the Work for which Contractor has received payment previously, that all due and payable bills with respect to the Work have been paid to date or shall be paid from the proceeds of such Application for Payment, that there is no known basis for the filing of any mechanics' or materialmen's liens on the work, and that waivers from all Subcontractors constitute an effective waiver of lien under the laws of the jurisdiction in which the Project is located to the extent of payments that have been made or are to be made concurrently with payment pursuant to such Application for Payment.  Upon request by Owner, copies of all Applications for Payment shall be submitted by Contractor directly to Owner.

§ 9.3.1.1 As provided in Section ~~7.3.9,~~ 7.3.8, such applications may include requests for payment on account of changes in the Work ~~that~~ which have been properly authorized by Construction Change Directives, or by interim determinations of the Architect, but not yet included in Change Orders.

Additions and Deletions Report for AIA Document A201™ – 2007. Copyright @ 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987, 1997 and 2007 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 08:45:01 on 06/06/2016 under Order No.7898456378_1 which expires on 04/22/2017, and is not for resale.
User Notes:                                                                                                                              (727672888)

§ 9.3.1.2 ~~Applications for Payment shall~~ Such applications may not include requests for payment for portions of the Work for which the Contractor does not intend to pay to a Subcontractor or material supplier, unless such Work has been performed by others whom the Contractor intends to pay.

**PAGE 33**

§ 9.3.4  Each Application for Payment shall be accompanied by waiver and release upon progress payment forms acceptable to Owner which conform to Florida State law for all work, labor, equipment and material for which payment has been previously mad by prior applications, executed by the Contractor, and each subcontractor that has filed a Notice to Owner.  No payment under the Agreement shall be made, except at Owner's option, until and unless such waiver and release forms from the Contractor has been furnished.  In the event a Lien has been filed in the mortgage and conveyance records in the jurisdiction of the project by a subcontractor, sub-subcontractor, materialman, rental company or supplier, Owner shall have the option to withhold 125% of the recorded lien amount from the next applicable payment application after notice of the lien has been served on the Owner.  Owner's exercise of its option to withhold lien amounts shall not derogate from the obligation to otherwise pay undisputed amounts.

§ 9.3.5  Notwithstanding anything to the contrary herein or elsewhere contained in the Contract Documents, no payment of or towards the Contract Sum shall be due, owing or payable to the Contractor at any time when the Contractor is in material default in or under the Contract.

§ 9.4.1 The Architect will, within ~~seven~~ ten (10) days after receipt of the Contractor's Application for Payment, either issue to the Owner a Certificate for Payment, with a copy to the Contractor, for such amount as the Architect determines is properly due, or notify the Contractor and Owner in writing of the Architect's reasons for withholding certification in whole or in part as provided in Section 9.5.1.

§ 9.4.2 The issuance of a Certificate for Payment will constitute a representation by the Architect to the Owner, based on the Architect's evaluation of the Work and the data comprising the Application for Payment, ~~that, to the best of the Architect's knowledge, information and belief,~~ that the Work has progressed to the point indicated and that the information and belief, the quality of the Work is in accordance with the Contract Documents. The foregoing representations are subject to an evaluation of the Work for conformance with the Contract Documents upon Substantial Completion, to results of subsequent tests and inspections, to correction of minor deviations from the Contract Documents prior to completion and to specific qualifications expressed by the Architect. The issuance of a Certificate for Payment will further constitute a representation that the Contractor is entitled to payment in the amount certified. However, the issuance of a Certificate for Payment will not be a representation that the Architect has (1) made exhaustive or continuous on-site inspections to check the quality or quantity of the Work, (2) reviewed construction means, methods, techniques, sequences or procedures, (3) reviewed copies of requisitions received from Subcontractors and material suppliers and other data requested by the Owner to substantiate the Contractor's right to payment, or (4) made examination to ascertain how or for what purpose the Contractor has used money previously paid on account of the Contract Sum.

**PAGE 34**

§ 9.5.1 The Architect may withhold a Certificate for Payment in whole or in part, to the extent reasonably necessary to protect the Owner, if in the Architect's opinion the representations to the Owner required by Section 9.4.2 cannot be made. If the Architect is unable to certify payment in the amount of the Application, the Architect will notify the Contractor and Owner as provided in Section 9.4.1. If the Contractor and Architect cannot agree on a revised amount, the Architect will promptly issue a Certificate for Payment for the amount for which the Architect is able to make such representations to the Owner. The Architect may also withhold a Certificate for Payment or, because of subsequently discovered evidence, may nullify the whole or a part of a Certificate for Payment previously issued, to such extent as may be necessary in the Architect's opinion to protect the Owner from loss for which the Contractor is responsible, including loss resulting from acts and omissions described in Section 3.3.2, because of ~~of~~:

    .1    defective Work not ~~remedied;~~ remedied following written notice from the Owner or Architect;

...

Additions and Deletions Report for AIA Document A201™ – 2007. Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987, 1997 and 2007 by The American Institute of Architects. **All rights reserved. WARNING: This AIA®  Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA®  Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law.** This document was produced by AIA software at 08:45:01 on 05/08/2018 under Order No.7898456379_1 which expires on 04/22/2017, and is not for resale.
User Notes:                                                      **26**

Complaint, Exh. B

.3 failure of the Contractor to make payments ~~properly~~ when due to Subcontractors or for labor, materials or equipment;

.4 reasonable evidence that the Work cannot be completed for the unpaid balance of the Contract ~~Sum;~~ Sum including retainage;

.5 damage to the Owner or ~~a separate~~ another contractor;

...

.7 ~~repeated~~ persistent failure to carry out the Work in accordance with the Contract Documents.

...

§ ~~9.5.3 If the Architect withholds certification for payment under Section 9.5.1.3, the Owner may, at its sole option, issue joint checks to the Contractor and to any Subcontractor or material or equipment suppliers to whom the Contractor failed to make payment for Work properly performed or material or equipment suitably delivered. If the Owner makes payments by joint check, the Owner shall notify the Architect and the Architect will reflect such payment on the next Certificate for Payment.~~

...

§ 9.6.2 The Contractor shall ~~pay each Subcontractor no later than seven days after receipt of payment from the Owner the amount to which the~~ promptly pay each Subcontractor, upon receipt of payment from the Owner, out of the amount paid to the Contractor on account of such Subcontractor's portion of the Work, the amount to which said Subcontractor is entitled, reflecting percentages actually retained from payments to the Contractor on account of ~~the~~ such Subcontractor's portion of the Work. The Contractor shall, by appropriate agreement with each Subcontractor, require each Subcontractor to make payments to Sub-subcontractors in a similar manner.

...

§ 9.6.4 ~~The Owner has the right to request written evidence from the Contractor that the Contractor has properly paid Subcontractors and material and equipment suppliers amounts paid by the Owner to the Contractor for subcontracted Work. If the Contractor fails to furnish such evidence within seven days, the Owner shall have the right to contact Subcontractors to ascertain whether they have been properly paid.~~ Neither the Owner nor Architect shall have an obligation to pay or to see to the payment of money to a ~~Subcontractor,~~ Subcontractor except as may otherwise be required by law.

§ 9.6.5 ~~Contractor payments~~ Payment to material and equipment suppliers shall be treated in a manner similar to that provided in Sections 9.6.2, 9.6.3 and 9.6.4.

**PAGE 35**

§9.6.8 Unless Contractor is not in default and otherwise requests Owner not to do so as a result of Contractor's good faith dispute with a Subcontractor or supplier, Owner may make payments jointly to the order of Contractor and its Subcontractor or supplier after giving ten days' notice to Contractor of Owner's intention to pay the subcontractor(s).

~~If the Architect does not issue a Certificate for Payment, through no fault of the Contractor, within seven days after receipt of the Contractor's Application for Payment, or if the Owner does not pay the Contractor within seven days after the date established in the Contract Documents the amount certified by the Architect or awarded by binding dispute resolution, then the Contractor may, upon seven additional days' written notice to the Owner and Architect, stop the Work until payment of the amount owing has been received. The Contract Time shall be extended appropriately and the Contract Sum shall be increased by the amount of the Contractor's reasonable costs of shut-down, delay and start-up, plus interest as provided for in the Contract Documents.~~ § 9.7.1 If the Architect does not issue a Certificate for Payment, through no fault of the Contractor, within seven days after receipt of the Contractor's Application for Payment, or if the Owner does not pay the Contractor within seven days after the date

Additions and Deletions Report for AIA Document A201™ – 2007. Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987, 1997 and 2007 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 08:45:01 on 06/06/2016 under Order No.7898458378_1 which expires on 04/22/2017, and is not for resale.
User Notes:                                                                                                                                          (727872666)

27

established in the Contract Documents the amount certified by the Architect or awarded by arbitration, then the Contractor may, upon fifteen additional days' written notice to the Owner and Architect, stop the Work until payment of the amount owing has been received. The Contract Time shall be extended appropriately and the Contract Sum shall be increased by the amount of the Contractor's reasonable costs of shut-down, delay and start-up, plus interest as provided for in the Contract Documents.

...

§ 9.8.1 Substantial Completion is the stage in the progress of the Work when the Work or designated portion thereof is sufficiently complete in accordance with the Contract Documents so that the Owner can occupy or utilize the Work for its intended use.use, and a temporary Certificate of Occupancy has been obtained from the applicable governmental authority. The Contractor shall secure and deliver to the Owner written warranties and guarantees from its Subcontractors, Sub-subcontractors and suppliers bearing the date of Substantial Completion or some other date as may be agreed to by the Owner and stating the period of warranty as required by the Contract Documents. The Contractor is responsible for the warranty of all Work following Substantial Completion, whether performed by it or by its Subcontractors at any tier.

...

§ 9.8.4 When the Work or designated portion thereof is substantially complete, the Architect will prepare a Certificate of Substantial Completion that which shall establish the date of Substantial Completion, shall establish responsibilities of the Owner and Contractor for security, maintenance, heat, utilities, damage to the Work and insurance, and shall fix the time within which the Contractor shall finish all items on the list accompanying the Certificate. Warranties required by the Contract Documents shall commence on the date of Substantial Completion of the Work or designated portion thereof unless otherwise provided in the Certificate of Substantial Completion.

§ 9.8.5 The Certificate of Substantial Completion shall be submitted to the Owner and Contractor for their written acceptance of responsibilities assigned to them in such Certificate. Upon such acceptance and consent of surety, if any, the Owner shall make payment of retainage applying to such Work or designated portion thereof. Such payment shall be adjusted for Work that is incomplete or not in accordance with the requirements of the Contract Documents, as provided for in the Contract Documents.

PAGE 36

§ 9.9.1 The Owner may occupy or use any completed or partially completed portion of the Work at any stage when such portion is designated by separate agreement with the Contractor, provided such occupancy or use is consented to by the insurer as required under Section 11.3.1.5 11.4.1.5 and authorized by public authorities having jurisdiction over the Project. Work. Such partial occupancy or use may commence whether or not the portion is substantially complete, provided the Owner and Contractor have accepted in writing the responsibilities assigned to each of them for payments, retainage, if any, security, maintenance, heat, utilities, damage to the Work and insurance, and have agreed in writing concerning the period for correction of the Work and commencement of warranties required by the Contract Documents. When the Contractor considers a portion substantially complete, the Contractor shall prepare and submit a list to the Architect as provided under Section 9.8.2. Consent of the Contractor to partial occupancy or use shall not be unreasonably withheld. The stage of the progress of the Work shall be determined by written agreement between the Owner and Contractor or, if no agreement is reached, by decision of the Architect.

...

§ 9.10.1 Upon receipt of the Contractor's written notice that the Work is ready for final inspection and acceptance and upon receipt of a final Application for Payment, the Architect will promptly make such inspection and, when the Architect finds the Work acceptable under the Contract Documents and the Contract fully performed, the Architect will promptly issue a final Certificate for Payment stating that to the best of the Architect's knowledge, information and belief, and on the basis of the Architect's on-site visits and inspections, the Work has been completed in accordance with terms and conditions of the Contract Documents and that the entire balance found to be due the Contractor and noted in the final Certificate is due and payable. The Architect's final Certificate for Payment will constitute a further representation that conditions listed in Section 9.10.2 as precedent to the Contractor's being entitled to final payment have been fulfilled. Neither Final Payment nor the release of any remaining retained

Additions and Deletions Report for AIA Document A201™ – 2007. Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987, 1997 and 2007 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 08:45:01 on 08/06/2016 under Order No.7898458378_1 which expires on 04/22/2017, and is not for resale.
User Notes:                                                                                                              (727872888)

Complaint, Exh. B

percentage shall be due to the Contractor until the Owner has accepted the Work.  The Owner shall accept the Work only after all conditions for Final Payment and release of the retained percentage set forth in the Contract Documents have been satisfied, and each of the following events have occurred:

(1)      All labor has been performed and material supplied and incorporated into the Work in a good workmanlike manner consistent with the Contract Documents.

(2)      The Work, premises and surrounding area have been cleaned up consistent with Subparagraph 3.15.1.

(3)      All persons, firms and corporations, including all laborers, materialpersons, suppliers and Subcontractors who have furnished equipment, supplied materials or performed work for or in connection with the Work, including but not limited to those persons who could file a claim of lien, have been paid or will be paid in full out of the remaining retained percentage; and those persons, firms and corporations have submitted their final statements with a waiver of all rights to mechanics' lien, stop notice, or recourse against surety of the bond, subject to final payment.  The Contractor shall make these waivers available to the Owner for inspection by the Owner.  In the event a dispute has arisen between the Contractor and one of the parties listed above in this Article which prevents the Contractor from obtaining the waiver of rights required by this Article from that party, the Contractor may satisfy the requirements of this Article by (a) supplying a payment bond issued by a surety licensed to do business in the State of Florida and acceptable to the Owner to remove the effect of any lien, stop notice or related claim against the Work or the real property upon which the Work is built, and (b) agreeing to defend and indemnify the Owner against all actions filed by persons who have supplied materials to or performed work for or in connection to the Work.  The Contractor shall also have submitted an affidavit to the Owner and lender that all waivers described in this Article have been obtained from all parties described in this Article or that the claims of such parties have been satisfied by the obtaining of a bond.

(4)      All portions of the Work requiring inspection by any governmental authority have been inspected and approved by such authority, and any requisite certificates of occupancy, approvals, licenses and permits have been issued.

(5)      The Owner has received assignments of warranties of all Subcontractors and materialpersons.

§ 9.10.2 Neither final payment nor any remaining retained percentage shall become due until the Contractor submits to the Architect (1) ~~an affidavit~~ a final affidavit stating that payrolls, bills for materials and equipment, and other indebtedness connected with the Work for which the Owner or the Owner's property might be responsible or encumbered  ~~(less amounts withheld by Owner)~~ have been paid or otherwise satisfied, (2) a certificate evidencing that insurance required by the Contract Documents to remain in force after final payment is currently in effect and will not be canceled or allowed to expire until at least 30 days' prior written notice has been given to the Owner, (3) a written statement that the Contractor knows of no substantial reason that the insurance will not be renewable to cover the period required by the Contract Documents, (4) consent of surety, if any, to final payment and (5), if required by the Owner, other data establishing payment or satisfaction of obligations, such as receipts, releases and waivers of ~~liens,~~ liens for which the Contractor has been paid, claims, security interests or encumbrances arising out of the Contract, to the extent and in such form as may be designated by the Owner. If a Subcontractor refuses to furnish a release or waiver required by the Owner, the Contractor may furnish a bond satisfactory to the Owner to indemnify the Owner against such lien. If such lien remains unsatisfied after payments are made, the Contractor shall refund to the Owner all money that the Owner may be compelled to pay in discharging such lien, including all costs and reasonable attorneys' fees.  In no event shall final payment become due until the  Project Architect has issued a Certificate of Substantial Completion (AIA Form G704 or a similar form satisfactory to Owner), unless Owner has received full and unconditional releases of liens from Contractor and all subcontractors and materialmen performing work or supplying materials to the Project that filed a notice to owner, all in form and content satisfactory to Owner.

**PAGE 37**

§ 9.10.4 The making of final payment shall constitute a waiver of Claims by the Owner except those arising ~~from~~ from:

Additions and Deletions Report for AIA Document A201™ – 2007. Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987, 1997 and 2007 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 08:45:01 on 06/06/2016 under Order No.7898458376_1 which expires on 04/22/2017, and is not for resale.
User Notes:                                                                            (727872880)

29

Complaint, Exh. B

...

~~The Contractor shall be responsible for initiating, maintaining and supervising all safety precautions and programs in connection with the performance of the Contract.~~ § 10.1.1 The Contractor shall be responsible for initiating, maintaining and supervising all safety precautions and programs in connection with the performance of the Contract.

...

§ 10.2.1 The Contractor shall take reasonable precautions for safety of, and shall provide reasonable protection to prevent damage, injury or loss to:o:

PAGE 38

§ 10.2.2 The Contractor shall ~~comply with and give notices required by applicable laws, statutes, ordinances, codes, rules and regulations,~~ give notices and comply with applicable laws, ordinances, rules, regulations and lawful orders of public authorities bearing on safety of persons or property or their protection from damage, injury or loss.

...

§ 10.2.5 The Contractor shall promptly remedy damage and loss (other than damage or loss to be insured under property insurance required by the Contract Documents) to property referred to in Sections 10.2.1.2 and 10.2.1.3 caused in whole or in part by the Contractor, a Subcontractor, a Sub-subcontractor, or anyone directly or indirectly employed by any of them, or by anyone for whose acts they may be liable and for which the Contractor is responsible under Sections 10.2.1.2 and 10.2.1.3, except damage or loss attributable to acts or omissions of the Owner or Architect or anyone directly or indirectly employed by either of them, or by anyone for whose acts either of them may be liable, and not attributable to the fault or negligence of the Contractor. The foregoing obligations of the Contractor ~~are in addition to~~ are  separate from and are not to be construed as being included in the Contractor's obligations under Section 3.18.

...

§ 10.2.7 The Contractor shall not load or permit any part of the construction or site to be loaded so as to ~~cause damage or create an unsafe condition.~~ endanger its safety.

§ 10.2.8 ~~INJURY OR DAMAGE TO PERSON OR PROPERTY~~
~~If either party suffers injury or damage to person or property because of an act or omission of the other party, or of others for whose acts such party is legally responsible, written notice of such injury or damage, whether or not insured, shall be given to the other party within a reasonable time not exceeding 21 days after discovery. The notice shall provide sufficient detail to enable the other party to investigate the matter.~~ The Contractor shall provide and maintain in good operating condition suitable and adequate fire protection equipment and services, and shall comply with all reasonable recommendations regarding fire protection made by the representatives of the fire insurance company carrying insurance on the work or by the local fire chief or fire marshal.   The area within the site limits shall be kept orderly and clean, and all combustible rubbish shall be promptly removed from the site.

...

§ 10.3.1 ~~The Contractor is responsible for compliance with any requirements included in the Contract Documents regarding hazardous materials. If the Contractor encounters a hazardous material or substance not addressed in the Contract Documents and if~~ reasonable precautions will be inadequate to prevent foreseeable bodily injury or death to persons resulting from a material or substance, including but not limited to asbestos or polychlorinated biphenyl (PCB), encountered on the site by the Contractor, the Contractor shall, upon recognizing the condition, immediately stop Work in the affected area and report the condition to the Owner and Architect in writing.

§ 10.3.2 ~~Upon receipt of the Contractor's written notice, the~~ The Owner shall obtain the services of a licensed laboratory to verify the presence or absence of the material or substance reported by the Contractor and, in the event

Additions and Deletions Report for AIA Document A201™ – 2007, Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987, 1997 and 2007 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 08:45:01 on 06/06/2016 under Order No.7898458378_1 which expires on 04/22/2017, and is not for resale.
User Notes:                                                                                                                                     (727672866)

such material or substance is found to be present, to ~~cause it to be~~ verify that it has been rendered harmless. Unless otherwise required by the Contract Documents, the Owner shall furnish in writing to the Contractor and Architect the names and qualifications of persons or entities who are to perform tests verifying the presence or absence of such material or substance or who are to perform the task of removal or safe containment of such material or substance. The Contractor and the Architect will promptly reply to the Owner in writing stating whether or not either has reasonable objection to the persons or entities proposed by the Owner. If either the Contractor or Architect has an objection to a person or entity proposed by the Owner, the Owner shall propose another to whom the Contractor and the Architect have no reasonable objection. When the material or substance has been rendered harmless, Work in the affected area shall resume upon written agreement of the Owner and Contractor. ~~By Change Order, the~~ The Contract Time shall be extended appropriately and the Contract Sum shall be increased in the amount of the Contractor's reasonable additional costs of shut-down, delay and ~~start-up~~ start-up, which adjustments shall be accomplished as provided in Article 7.

§ 10.3.3 To the fullest extent permitted by law, the Owner shall indemnify and hold harmless the Contractor, Subcontractors, Architect, Architect's consultants and agents and employees of any of them from and against claims, damages, losses and expenses, including but not limited to attorneys' fees, arising out of or resulting from performance of the Work in the affected area if in fact the material or substance presents the risk of bodily injury or death as described in Section 10.3.1 and has not been rendered harmless, provided that such claim, damage, loss or expense is attributable to bodily injury, sickness, disease or death, or to injury to or destruction of tangible property (other than the Work ~~itself),~~ ~~except to the extent that~~ itself) and provided that such damage, loss or expense is ~~due to the fault or negligence of the~~ not due in whole or in part to the sole negligence of a party seeking indemnity.

§ 10.3.4 The Owner shall not be responsible ~~under this Section 10.3 for materials or substances the Contractor brings to the site unless such materials or substances are required by the Contract Documents. The Owner shall be responsible for materials or substances required by the Contract Documents, except to the extent of the Contractor's fault or negligence in the use and handling of such materials or substances.~~ Section 10.3 for materials and substances brought to the site by the Contractor unless such materials or substances were required by the Contract Documents.

§ 10.3.5 ~~The Contractor shall indemnify the Owner for the cost and expense the Owner incurs (1) for remediation of a material or substance the Contractor brings to the site and negligently handles, or (2) where the Contractor fails to perform its obligations under Section 10.3.1, except to the extent that the cost and expense are due to the Owner's fault or negligence.~~ If, without negligence on the part of the Contractor, the Contractor is held liable for the cost of remediation of a hazardous material or substance solely by reason of performing Work as required by the Contract Documents, the Owner shall indemnify the Contractor for all cost and expense thereby incurred.

§ ~~10.3.6 If, without negligence on the part of the Contractor, the Contractor is held liable by a government agency for the cost of remediation of a hazardous material or substance solely by reason of performing Work as required by the Contract Documents, the Owner shall indemnify the Contractor for all cost and expense thereby incurred.~~

§ ~~10.4 EMERGENCIES~~
~~In an emergency affecting safety of persons or property, the Contractor shall act, at the Contractor's discretion, to prevent threatened damage, injury or loss. Additional compensation or extension of time claimed by the Contractor on account of an emergency shall be determined as provided in Article 15 and Article 7.~~


PAGE 39

§ 11.1.1 The Contractor shall purchase from and maintain in a company or companies lawfully authorized to do business in the jurisdiction in which the Project is located such insurance as will protect the Contractor from claims set forth below which may arise out of or result from the Contractor's operations ~~and completed operations~~ under the Contract and for which the Contractor may be legally liable, ~~whether~~ such operations be by the Contractor or by a Subcontractor or by anyone directly or indirectly employed by any of them, or by anyone for whose acts any of them may be liable:

    .1    Claims under workers' compensation, disability benefit and other similar employee benefit acts ~~that~~ which are applicable to the Work to be ~~performed;~~ performed including private entities performing Work at the site and exempt from coverage on account of number of employees or occupation, which

Additions and Deletions Report for AIA Document A201™ – 2007. Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987, 1997 and 2007 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 08:45:01 on 06/09/2016 under Order No.7898458378_1 which expires on 04/22/2017, and is not for resale.
User Notes:        (727872868)

Complaint, Exh. B

entities shall maintain voluntary compensation coverage at the same limits specified for mandatory coverage for the duration of the Project;

.2   ~~Claims for damages because of bodily injury, occupational sickness or disease, or death of the Contractor's employees;~~ Contractor's employees or persons or entities excluded by statute from the requirements of clause but required by the Contract Documents to provide the insurance required by the clause;

...

.8   Claims involving contractual liability insurance applicable to the Contractor's obligations under Section 3.18.

.9   The Contractor and its Subcontractors (unless otherwise agreed to in writing by the Owner) shall purchase and maintain the following insurance for the life of the Contract

|  | Contractor | Subcontractors |
|---|---|---|
| **COMMERCIAL GENERAL LIABILITY** | | |
| **Limits of Liability:** | | |
| _____   General Aggregate | $2,000,000 | $1,000,000 |
| _____   Products/Completed Operations Aggregate | $2,000,000 | $1,000,000 |
| _____   Contractual Liability | $2,000,000 | $1,000,000 |
| _____   Each Occurrence | $1,000,000 | $1,000,000 |
| _____   Personal and Advertising Injury | $1,000,000 | $1,000,000 |
| _____   Fire Legal Liability | $50,000 | $50,000 |
| _____   Medical Payments | $5,000 | $5,000 |

Commercial General Liability Form to be used is CG00 01 10 01
Form includes S, C & U and Contractual Liability.

| **COMMERCIAL UMBRELLA LIABILITY** | | |
|---|---|---|
| **Limits of Liability:** | | |
| _____   General Aggregate | $5,000,000 | $1,000,000 |
| _____   Each Occurrence | $5,000,000 | $1,000,000 |
| _____   Max. Self-Insured Retention / Deductible | $50,000 | $50,000 |

| **AUTOMOBILE LIABILITY** | | |
|---|---|---|
| **Limits of Liability:** | | |
| _____   Bodily Injury or Property Damage | $1,000,000 | $1,000,000 |
| _____   Combined Single Limit | | |
| _____   Personal Injury Protection (No Fault) | $10,000 | $10,000 |
| _____   Hired – Non-Owned Liability | $1,000,000 | $1,000,000 |

|  | Contractor | Subcontractors |
|---|---|---|
| **WORKERS COMPENSATION** | | |
| **Limits of Liability:** | | |
| _____   Workers Compensation | Statutory | Statutory |
| _____   Employer's Liability – Each Accident | $100,000 | $100,000 |
| _____   Employer's Liability – Policy Limit by        Disease | $500,000 | $500,000 |
| _____   Employer's Liability – Each Employee by        Disease | $100,000 | $100,000 |

**§ 11.1.2** The insurance required by Section 11.1.1 shall be written for not less than limits of liability specified in the Contract Documents or required by law, whichever coverage is greater. ~~Coverages, whether written on an occurrence or claims made basis,~~ Coverages shall be written on an "occurrence" basis and shall be maintained without interruption from ~~the date of commencement of the Work until the date of final payment and termination of any coverage required to be maintained after final payment, and, with respect to the Contractor's completed operations coverage, until the expiration of the period for correction of Work or for such other period for~~

Additions and Deletions Report for AIA Document A201™ – 2007. Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987, 1997 and 2007 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 08:45:01 on 06/06/2016 under Order No.7898458376_1 which expires on 04/22/2017, and is not for resale.
User Notes:                                                                                                                      (727872888)

Complaint, Exh. B

~~maintenance of completed operations coverage as specified in the Contract Documents.~~date of commencement of the Work, until Final Completion of the Work.

Such coverages shall be maintained by insurance carriers acceptable to Owner in all respects.

§ 11.1.3 Certificates of insurance containing endorsements required herein acceptable to the Owner shall be filed with the Owner prior to commencement of the ~~Work and thereafter upon renewal or replacement of each required policy of insurance.~~ Work. These certificates and the insurance policies required by this Section 11.1 shall contain a provision that coverages afforded under the policies will not be canceled or allowed to expire until at least 30 days' prior written notice has been given to the Owner. ~~An additional certificate evidencing continuation of liability coverage, including coverage for completed operations,~~ If any of the foregoing insurance coverages are required to remain in force after final payment and are reasonably available, an additional certificate evidencing continuation of such coverage shall be submitted with the final Application for Payment as required by Section ~~9.10.2 and thereafter upon renewal or replacement of such coverage until the expiration of the time required by Section 11.1.2.~~ 9.10.2. Information concerning reduction of coverage on account of revised limits or claims paid under the General Aggregate, or both, shall be furnished by the Contractor with reasonable ~~promptness.~~ promptness in accordance with the Contractor's information and belief.  All written notices to be given to Owner shall be given by registered mail, return receipt requested  The Contractor shall furnish to the Owner or Owner's Representative with copies of any endorsements that are subsequently issued amending coverage or limits. Failure of the Contractor to obtain and maintain required insurance shall be grounds for termination of the Contract by the Owner.  The Owner shall be listed as a named additional insured by appropriate endorsements concerning all insurance coverages furnished by Contractor with the exception of Worker's Compensation. The Contractor shall provide Certificates of Insurance evidencing the named additional insured status of the Owner.

§ 11.1.4  The ~~Contractor shall cause the commercial liability coverage required by the Contract Documents to include (1) the Owner, the Architect and the Architect's consultants as additional insureds for claims caused in whole or in part by the Contractor's negligent acts or omissions during the Contractor's operations; and (2) the Owner as an additional insured for claims caused in whole or in part by the Contractor's negligent acts or omissions during the Contractor's completed operations.~~insurance required by this Paragraph for the Contractor shall be written with a company having at least an "A" policyholder's rating and a minimum Class 15 financial rating as listed in the latest edition of Best's Insurance Guide. The insurance required by this Paragraph for the each Subcontractor shall be written with a company having at least an "B+" policyholder's rating and a minimum Class 5 financial rating as listed in the latest edition of Best's Insurance Guide.

§11.1.5  The Contractor shall carry sufficient comprehensive insurance on equipment at the site and in transit to and from the site. It is expressly understood that the Owner and Architect shall have no liability from damage to equipment.

§11.1.6  The Contractor shall remain fully liable and responsible for all obligations under the Contract Documents, whether or not the insurance provided by him is approved by the Owner or Architect and whether or not it is sufficient in amount, quality and coverage to protect him against such liability, and shall pay and make good all such obligations to the full extent such insurance does not cover them.

PAGE 41

~~The Owner shall be responsible for purchasing and maintaining the Owner's usual liability insurance.~~ § 11.2.1 The Owner shall be responsible for purchasing and maintaining the Owner's usual liability insurance.

§ 11.3 ~~PROPERTY INSURANCE~~PROJECT MANAGEMENT PROTECTIVE LIABILITY INSURANCE
§ 11.3.1 ~~Unless otherwise provided, the Owner shall purchase and maintain, in a company or companies lawfully authorized to do business in the jurisdiction in which the Project is located, property insurance written on a builder's risk "all risk" or equivalent policy form in the amount of the initial Contract Sum, plus value of subsequent Contract Modifications and cost of materials supplied or installed by others, comprising total value for the entire Project at the site on a replacement cost basis without optional deductibles. Such property insurance shall be maintained, unless otherwise provided in the Contract Documents or otherwise agreed in writing by all persons and entities who are beneficiaries of such insurance, until final payment has been made as provided in Section 9.10 or until no person or entity other than the Owner has an insurable interest in the property required by this Section 11.3 to be covered,~~

Additions and Deletions Report for AIA Document A201™ – 2007. Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987, 1997 and 2007 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 08:45:01 on 06/08/2016 under Order No.7898468378_1 which expires on 04/22/2017, and is not for resale.
User Notes:                                                                                                                                              (727872868)

Complaint, Exh. B

whichever is later. This insurance shall include interests of the Owner, the Contractor, Subcontractors and Sub-subcontractors in the Project. Optionally, the Owner may require the Contractor to purchase and maintain Project Management Protective Liability insurance from the Contractor's usual sources as primary coverage for the Owner's, Contractor's and Architect's vicarious liability for construction operations under the Contract. Unless otherwise required by the Contract Documents, the Owner shall reimburse the Contractor by increasing the Contract Sum to pay the cost of purchasing and maintaining such optional insurance coverage, and the Contractor shall not be responsible for purchasing any other liability insurance on behalf of the Owner. The minimum limits of liability purchased with such coverage shall be equal to the aggregate of the limits required for Contractor's Liability Insurance under Sections 11.1.1.2 through 11.1.1.5.

§ 11.3.1.1 Property insurance shall be on an "all-risk" or equivalent policy form and shall include, without limitation, insurance against the perils of fire (with extended coverage) and physical loss or damage including, without duplication of coverage, theft, vandalism, malicious mischief, collapse, earthquake, flood, windstorm, falsework, testing and startup, temporary buildings and debris removal including demolition occasioned by enforcement of any applicable legal requirements, and shall cover reasonable compensation for Architect's and Contractor's services and expenses required as a result of such insured loss.

§ 11.3.1.2 If the Owner does not intend to purchase such property insurance required by the Contract and with all of the coverages in the amount described above, the Owner shall so inform the Contractor in writing prior to commencement of the Work. The Contractor may then effect insurance that will protect the interests of the Contractor, Subcontractors and Sub-subcontractors in the Work, and by appropriate Change Order the cost thereof shall be charged to the Owner. If the Contractor is damaged by the failure or neglect of the Owner to purchase or maintain insurance as described above, without so notifying the Contractor in writing, then the Owner shall bear all reasonable costs properly attributable thereto.

§ 11.3.1.3 If the property insurance requires deductibles, the Owner shall pay costs not covered because of such deductibles.

§ 11.3.1.4 This property insurance shall cover portions of the Work stored off the site, and also portions of the Work in transit.

§ 11.3.1.5 Partial occupancy or use in accordance with Section 9.9 shall not commence until the insurance company or companies providing property insurance have consented to such partial occupancy or use by endorsement or otherwise. The Owner and the Contractor shall take reasonable steps to obtain consent of the insurance company or companies and shall, without mutual written consent, take no action with respect to partial occupancy or use that would cause cancellation, lapse or reduction of insurance.

§ 11.3.2 BOILER AND MACHINERY INSURANCE
The Owner shall purchase and maintain boiler and machinery insurance required by the Contract Documents or by law, which shall specifically cover such insured objects during installation and until final acceptance by the Owner; this insurance shall include interests of the Owner, Contractor, Subcontractors and Sub-subcontractors in the Work, and the Owner and Contractor shall be named insureds. To the extent damages are covered by Project Management Protective Liability insurance, the Owner, Contractor and Architect waive all rights against each other for damages, except such rights as they may have to the proceeds of such insurance. The policy shall provide for such waivers of subrogation by endorsement or otherwise.

§ 11.3.3 LOSS OF USE INSURANCE
The Owner, at the Owner's option, may purchase and maintain such insurance as will insure the Owner against loss of use of the Owner's property due to fire or other hazards, however caused. The Owner waives all rights of action against the Contractor for loss of use of the Owner's property, including consequential losses due to fire or other hazards however caused. The Owner shall not require the Contractor to include the Owner, Architect or other persons or entities as additional insureds on the Contractor's Liability Insurance coverage under Section 11.1.

§ 11.3.4 If the Contractor requests in writing that insurance for risks other than those described herein or other special causes of loss be included in the property insurance policy, the Owner shall, if possible, include such insurance, and the cost thereof shall be charged to the Contractor by appropriate Change Order.

Additions and Deletions Report for AIA Document A201™ – 2007. Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987, 1997 and 2007 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 08:45:01 on 06/06/2016 under Order No.7898458378_1 which expires on 04/22/2017, and is not for resale.
User Notes:                                                                                      (727872888)

Complaint, Exh. B

~~§ 11.3.5 If during the Project construction period the Owner insures properties, real or personal or both, at or adjacent to the site by property insurance under policies separate from those insuring the Project, or if after final payment property insurance is to be provided on the completed Project through a policy or policies other than those insuring the Project during the construction period, the Owner shall waive all rights in accordance with the terms of Section 11.3.7 for damages caused by fire or other causes of loss covered by this separate property insurance. All separate policies shall provide this waiver of subrogation by endorsement or otherwise.~~

~~§ 11.3.6 Before an exposure to loss may occur, the Owner shall file with the Contractor a copy of each policy that includes insurance coverages required by this Section 11.3. Each policy shall contain all generally applicable conditions, definitions, exclusions and endorsements related to this Project. Each policy shall contain a provision that the policy will not be cancelled or allowed to expire, and that its limits will not be reduced, until at least 30 days' prior written notice has been given to the Contractor.~~

~~§ 11.3.7 WAIVERS OF SUBROGATION~~
~~The Owner and Contractor waive all rights against (1) each other and any of their subcontractors, sub-subcontractors, agents and employees, each of the other, and (2) the Architect, Architect's consultants, separate contractors described in Article 6, if any, and any of their subcontractors, sub-subcontractors, agents and employees, for damages caused by fire or other causes of loss to the extent covered by property insurance obtained pursuant to this Section 11.3 or other property insurance applicable to the Work, except such rights as they have to proceeds of such insurance held by the Owner as fiduciary. The Owner or Contractor, as appropriate, shall require of the Architect, Architect's consultants, separate contractors described in Article 6, if any, and the subcontractors, sub-subcontractors, agents and employees of any of them, by appropriate agreements, written where legally required for validity, similar waivers each in favor of other parties enumerated herein. The policies shall provide such waivers of subrogation by endorsement or otherwise. A waiver of subrogation shall be effective as to a person or entity even though that person or entity would otherwise have a duty of indemnification, contractual or otherwise, did not pay the insurance premium directly or indirectly, and whether or not the person or entity had an insurable interest in the property damaged.~~

~~§ 11.3.8 A loss insured under the Owner's property insurance shall be adjusted by the Owner as fiduciary and made payable to the Owner as fiduciary for the insureds, as their interests may appear, subject to requirements of any applicable mortgagee clause and of Section 11.3.10. The Contractor shall pay Subcontractors their just shares of insurance proceeds received by the Contractor, and by appropriate agreements, written where legally required for validity, shall require Subcontractors to make payments to their Sub-subcontractors in similar manner.~~

~~§ 11.3.9 If required in writing by a party in interest, the Owner as fiduciary shall, upon occurrence of an insured loss, give bond for proper performance of the Owner's duties. The cost of required bonds shall be charged against proceeds received as fiduciary. The Owner shall deposit in a separate account proceeds so received, which the Owner shall distribute in accordance with such agreement as the parties in interest may reach, or as determined in accordance with the method of binding dispute resolution selected in the Agreement between the Owner and Contractor. If after such loss no other special agreement is made unless the Owner terminates the Contract for convenience, replacement of damaged property shall be performed by the Contractor after notification of a Change in the Work in accordance with Article 7.~~

~~§ 11.3.10 The Owner as fiduciary shall have power to adjust and settle a loss with insurers unless one of the parties in interest shall object in writing within five days after occurrence of loss to the Owner's exercise of this power; if such objection is made, the dispute shall be resolved in the manner selected by the Owner and Contractor as the method of binding dispute resolution in the Agreement. If the Owner and Contractor have selected arbitration as the method of binding dispute resolution, the Owner as fiduciary shall make settlement with insurers or, in the case of a dispute over distribution of insurance proceeds, in accordance with the directions of the arbitrators.~~

§ 11.4 ~~PERFORMANCE BOND AND PAYMENT BOND~~PROPERTY INSURANCE
§ 11.4.1 ~~The Owner shall have the right to require the Contractor to furnish bonds covering faithful performance of the Contract and payment of obligations arising thereunder as stipulated in bidding requirements or specifically required in the Contract Documents on the date of execution of the Contract.~~Unless otherwise provided, the Contractor shall purchase and maintain, in a company or companies lawfully authorized to do business in the jurisdiction in which the Project is located, property insurance written on a builder's risk "all-risk" or equivalent policy form in the amount of the initial Contract Sum, plus value of subsequent Contract Modifications and cost of

Additions and Deletions Report for AIA Document A201™ – 2007. Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987, 1997 and 2007 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 08:45:01 on 06/06/2016 under Order No.7898458378_1 which expires on 04/22/2017, and is not for resale.
User Notes:                                                                                          (727672888)

Complaint, Exh. B

materials supplied or installed by others, comprising total value for the entire Project at the site on a replacement cost basis without optional deductibles. Such property insurance shall be maintained, unless otherwise provided in the Contract Documents or otherwise agreed in writing by all persons and entities who are beneficiaries of such insurance, until final payment has been made as provided in Section 9.10 or until no person or entity other than the Owner has an insurable interest in the property required by this Section 11.4 to be covered, whichever is later. This insurance shall include interests of the Owner, the Contractor, Subcontractors and Sub-subcontractors in the Project.

**§ 11.4.1.1** Property insurance shall be on an "all-risk" or equivalent policy form and shall include, without limitation, insurance against the perils of fire (with extended coverage) and physical loss or damage including, without duplication of coverage, theft, vandalism, malicious mischief, collapse, earthquake, flood, windstorm, falsework, testing and startup, temporary buildings and debris removal including demolition occasioned by enforcement of any applicable legal requirements, and shall cover reasonable compensation for Architect's and Contractor's services and expenses required as a result of such insured loss.

**§ 11.4.1.2** If the Owner does not intend to purchase such property insurance required by the Contract and with all of the coverages in the amount described above, the Owner shall so inform the Contractor in writing prior to commencement of the Work. The Contractor may then effect insurance which will protect the interests of the Contractor, Subcontractors and Sub-subcontractors in the Work, and by appropriate Change Order the cost thereof shall be charged to the Owner. If the Contractor is damaged by the failure or neglect of the Owner to purchase or maintain insurance as described above, without so notifying the Contractor in writing, then the Owner shall bear all reasonable costs properly attributable thereto.

**§ 11.4.1.3** If the property insurance requires deductibles, the Owner shall pay costs not covered because of such deductibles.

**§ 11.4.1.4** This property insurance shall cover portions of the Work stored off the site, and also portions of the Work in transit.

**§ 11.4.1.5** Partial occupancy or use in accordance with Section 9.9 shall not commence until the insurance company or companies providing property insurance have consented to such partial occupancy or use by endorsement or otherwise. The Owner and the Contractor shall take reasonable steps to obtain consent of the insurance company or companies and shall, without mutual written consent, take no action with respect to partial occupancy or use that would cause cancellation, lapse or reduction of insurance.

**§ 11.4.2** ~~Upon the request of any person or entity appearing to be a potential beneficiary of bonds covering payment of obligations arising under the Contract, the Contractor shall promptly furnish a copy of the bonds or shall authorize a copy to be furnished.~~ LOSS OF USE INSURANCE
**§ 11.4.2.1** If during the Project construction period the Owner insures properties, real or personal or both, at or adjacent to the site by property insurance under policies separate from those insuring the Project, or if after final payment property insurance is to be provided on the completed Project through a policy or policies other than those insuring the Project during the construction period, the Owner shall waive all rights in accordance with the terms of Section 11.4.7 for damages caused by fire or other causes of loss covered by this separate property insurance. All separate policies shall provide this waiver of subrogation by endorsement or otherwise.

**§ 11.4.2.2** Before an exposure to loss may occur, the Owner shall file with the Contractor a copy of each policy that includes insurance coverages required by this Section 11.4. Each policy shall contain all generally applicable conditions, definitions, exclusions and endorsements related to this Project. Each policy shall contain a provision that the policy will not be canceled or allowed to expire, and that its limits will not be reduced, until at least 30 days' prior written notice has been given to the Contractor.

**§ 11.4.2.3** WAIVERS OF SUBROGATION
The Owner and Contractor waive all rights against (1) each other and any of their subcontractors, sub-subcontractors, agents and employees, each of the other, and (2) the Architect, Architect's consultants, separate contractors described in Article 6, if any, and any of their subcontractors, sub-subcontractors, agents and employees, for damages caused by fire or other causes of loss to the extent covered by property insurance obtained pursuant to this Section 11.4 or other property insurance applicable to the Work, except such rights as they have to proceeds of such insurance held by the Owner as fiduciary. The Owner or Contractor, as appropriate, shall require of the

Additions and Deletions Report for AIA Document A201™ – 2007. Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987, 1997 and 2007 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 08:45:01 on 06/08/2016 under Order No.7898458378_1 which expires on 04/22/2017, and is not for resale.
User Notes: (727872888)

Complaint, Exh. B

Architect, Architect's consultants, separate contractors described in Article 6, if any, and the subcontractors, sub-subcontractors, agents and employees of any of them, by appropriate agreements, written where legally required for validity, similar waivers each in favor of other parties enumerated herein. The policies shall provide such waivers of subrogation by endorsement or otherwise. A waiver of subrogation shall be effective as to a person or entity even though that person or entity would otherwise have a duty of indemnification, contractual or otherwise, did not pay the insurance premium directly or indirectly, and whether or not the person or entity had an insurable interest in the property damaged.

§ 11.4.2.4 A loss insured under Owner's property insurance shall be adjusted by the Owner as fiduciary and made payable to the Owner as fiduciary for the insureds, as their interests may appear, subject to requirements of any applicable mortgagee clause and of Section 11.4.10. The Contractor shall pay Subcontractors their just shares of insurance proceeds received by the Contractor, and by appropriate agreements, written where legally required for validity, shall require Subcontractors to make payments to their Sub-subcontractors in similar manner.

§ 11.4.2.5 If required in writing by a party in interest, the Owner as fiduciary shall, upon occurrence of an insured loss, give bond for proper performance of the Owner's duties. The cost of required bonds shall be charged against proceeds received as fiduciary. The Owner shall deposit in a separate account proceeds so received, which the Owner shall distribute in accordance with such agreement as the parties in interest may reach, or in accordance with an arbitration award in which case the procedure shall be as provided in Section 4.6. If after such loss no other special agreement is made and unless the Owner terminates the Contract for convenience, replacement of damaged property shall be performed by the Contractor after notification of a Change in the Work in accordance with Article 7.

§ 11.4.2.6 The Owner as fiduciary shall have power to adjust and settle a loss with insurers unless one of the parties in interest shall object in writing within five days after occurrence of loss to the Owner's exercise of this power; if such objection is made, the dispute shall be resolved as provided in Sections 4.5 and 4.6.   The Owner as fiduciary shall, in the case of arbitration, make settlement with insurers in accordance with directions of the arbitrators.   If distribution of insurance proceeds by arbitration is required, the arbitrators will direct such distribution.

## § 11.5 PERFORMANCE BOND AND PAYMENT BOND
§ 11.5.1 The Contractor shall furnish bonds covering faithful performance of the Contract and payment of obligations arising thereunder as stipulated in bidding requirements or specifically required in the Contract Documents on the date of execution of the Contract.   The bonds and the surety shall be satisfactory to the Owner. Conditional Payment Bonds are not acceptable, and will not be used on the Project.

§ 11.5.2 Upon the request of any person or entity appearing to be a potential beneficiary of bonds covering payment of obligations arising under the Contract, the Contractor shall promptly furnish a copy of the bonds or shall authorize a copy to be furnished, and shall name Owner's lender(s) as dual obliges under the bonds by appropriate rider.

## PAGE 43

§ 12.1.1 If a portion of the Work is covered contrary to the Architect's request or to requirements specifically expressed in the Contract Documents, it must, if ~~requested~~ required in writing by the Architect, be uncovered for the Architect's examination and be replaced at the Contractor's expense without change in the Contract Time.

§ 12.1.2 If a portion of the Work has been covered ~~that~~ which the Architect has not specifically requested to examine prior to its being covered, the Architect may request to see such Work and it shall be uncovered by the Contractor. If such Work is in accordance with the Contract Documents, costs of uncovering and replacement shall, by appropriate Change Order, be at the Owner's expense. If such Work is not in accordance with the Contract Documents, ~~such costs and the cost of correction~~ shall be at the Contractor's expense unless the condition was caused by the Owner or a separate contractor in which event the Owner shall be responsible for payment of such costs.

...

~~The Contractor shall promptly correct Work rejected by the Architect or failing to conform to the requirements of the Contract Documents, whether discovered before or after Substantial Completion and whether or not fabricated,~~

Additions and Deletions Report for AIA Document A201™ – 2007, Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987, 1997 and 2007 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 08:45:01 on 08/06/2016 under Order No.7898458378_1 which expires on 04/22/2017, and is not for resale.
User Notes:                                                                                          (727872888)

Complaint, Exh. B

installed or completed. Costs of correcting such rejected Work, including additional testing and inspections, the cost of uncovering and replacement, and compensation for the Architect's services and expenses made necessary thereby, shall be at the Contractor's expense. § 12.2.1.1 The Contractor shall promptly correct Work rejected by the Owner and Architect or failing to conform to the requirements of the Contract Documents, whether discovered before or after Substantial Completion and whether or not fabricated, installed or completed. Costs of correcting such rejected Work, including additional testing and inspections and compensation for the Architect's services and expenses made necessary thereby, shall be at the Contractor's expense.

...

§ 12.2.2.1 Contractor shall be solely responsible and pay for any loss, cost, damage or expense of any sort, including, without limitation, injury to or death of persons and loss or damage to property or other work, arising out of, resulting from or caused by any defective materials or workmanship occurring within one year of Substantial Completion.   Within one year of Substantial Completion, Contractor shall, without cost or expense to Owner and without limitation of Owner's other rights and remedies under the Contract Documents with respect to defective work, remedy all such defects.   In addition to the Contractor's obligations under Section 3.5, if, within one year after the date of Substantial Completion of the Work or designated portion thereof or after the date for commencement of warranties established under Section 9.9.1, or by terms of an applicable special warranty required by the Contract Documents, any of the Work is found to be not in accordance with the requirements of the Contract Documents, the Contractor shall correct it promptly after receipt of written notice from the Owner to do so unless the Owner has previously given the Contractor a written acceptance of such condition. The Owner shall give such notice promptly after discovery of the condition. During the one-year period for correction of Work, if the Owner fails to notify the Contractor and give the Contractor an opportunity to make the correction, the Owner waives the rights to require correction by the Contractor and to make a claim for breach of warranty. If the Contractor fails to correct nonconforming Work within a reasonable time during that period after receipt of notice from the Owner or Architect, the Owner may correct it in accordance with Section 2.4.   When called upon to perform under this Warranty, Contractor shall commence such performance within seven (7) working days of notification and shall complete all work relating thereto with due diligence.   Upon failure of Contractor to do so, Owner may cause such defects to be remedied by a person other than Contractor at Contractor's expense, including furnishing such supervision, materials and/or labor as are necessary to bring the Work up to the required standard.   In the event such defect is in the nature of or causes an emergency condition, Owner may undertake the work of correction and replacement on behalf of and without notice to Contractor.   All reasonable and necessary costs incurred by Owner to remedy such defects (including, without limitation, the cost of emergency work) shall be deducted from any amounts due Contractor, or if such costs exceed the amounts due, Contractor shall promptly pay Owner such excess immediately upon demand and presentation of supporting documentation per 7.3.6.   Contractor shall, at Owner's request, assign to Owner all assignable warranties it obtains from manufacturers or suppliers with respect to any materials, equipment or fixtures incorporated in the Work

§ 12.2.2.2 The one-year period for correction of Work shall be extended with respect to portions of Work first performed after Substantial Completion by the period of time between Substantial Completion and the actual completion of that portion performance of the Work.

PAGE 44

§ 12.2.3 The Contractor shall remove from the site portions of the Work that which are not in accordance with the requirements of the Contract Documents and are neither corrected by the Contractor nor accepted by the Owner.

§ 12.2.4 The Contractor shall bear the cost cost, unless covered by insurance, of correcting destroyed or damaged construction, whether completed or partially completed, of the Owner or separate contractors caused by the Contractor's correction or removal of Work that which is not in accordance with the requirements of the Contract Documents.

§ 12.2.5 Nothing contained in this Section 12.2 shall be construed to establish a period of limitation with respect to other obligations which the Contractor has might have under the Contract Documents. Establishment of the one-year period for correction of Work as described in Section 12.2.2 relates only to the specific obligation of the Contractor to correct the Work, and has no relationship to the time within which the obligation to comply with the Contract

Additions and Deletions Report for AIA Document A201™ – 2007. Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987, 1997 and 2007 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 09:46:01 on 06/09/2016 under Order No.7698455378_1 which expires on 04/22/2017, and is not for resale.
User Notes:                                                                                                (727872688)

Complaint, Exh. B

Documents may be sought to be enforced, nor to the time within which proceedings may be commenced to establish the Contractor's liability with respect to the Contractor's obligations other than specifically to correct the Work.

...

~~If the Owner prefers to accept Work that is not in accordance with the requirements of the Contract Documents, the Owner may do so instead of requiring its removal and correction, in which case the Contract Sum will be reduced as appropriate and equitable. Such adjustment shall be effected whether or not final payment has been made.~~ § 12.3.1 If the Owner prefers to accept Work which is not in accordance with the requirements of the Contract Documents, the Owner may do so instead of requiring its removal and correction, in which case the Contract Sum will be reduced as appropriate and equitable. Such adjustment shall be effected whether or not final payment has been made.

...

~~The Contract shall be governed by the law of the place where the Project is located except that, if the parties have selected arbitration as the method of binding dispute resolution, the Federal Arbitration Act shall govern Section 15.4.~~ § 13.1.1 The Contract shall be governed by the law of the place where the Project is located.

§ 13.1.2  This Agreement is contingent upon Owner obtaining acceptable financing and successful closing of such financing.  Contractor agrees that if Owner is not successful in obtaining acceptable financing prior to the issuance of a Notice to Proceed, this Agreement is null and void, and contractor shall be reimbursed his actual costs incurred before it receives notice from Owner of its failure to obtain financing.

...

§ 13.2.1 The Owner and Contractor respectively bind themselves, their partners, successors, assigns and legal representatives to the other party hereto and to partners, successors, assigns and legal representatives of such other party in respect to covenants, agreements and obligations contained in the Contract Documents. ~~Except as provided in Section 13.2.2, neither party to the Contract shall assign the Contract as a whole without written consent of the other. If either party attempts to make such an assignment without such consent, that party shall nevertheless remain legally responsible for all obligations under the Contract.~~
The Contractor's duties under this Contract are not assignable without the written consent of the Owner.  The Contractor may not assign any right to any money due or to become due under this Contract without written consent of Owner.  The Contractor understands and acknowledges that the Owner may assign it rights under this Contract to its lender and the Contractor agrees that following such assignment, all rights of the Owner under this Contract shall be enforceable by the lenders.  The Contractor acknowledges that it will enter into an agreement with such lender pursuant to which, at the lender's request, the Contractor shall complete the Work upon payment of the balance of the Contract Sum.
§ 13.2.2 The Owner may, without consent of the Contractor, assign the Contract to ~~a~~ an institutional lender providing construction financing for the ~~Project, if the lender assumes~~ Project. In such event, the lender shall assume the Owner's rights and obligations under the Contract Documents. The Contractor shall execute all consents reasonably required to facilitate such assignment.

**PAGE 45**

~~Written notice shall be deemed to have been duly served if delivered in person to the individual, to a member of the firm or entity, or to an officer of the corporation for which it was intended; or if delivered at, or sent by registered or certified mail or by courier service providing proof of delivery to, the last business address known to the party giving notice.~~ § 13.3.1 Written notice shall be deemed to have been duly served if delivered in person to the individual or a member of the firm or entity or to an officer of the corporation for which it was intended, or if delivered at or sent by registered or certified mail to the last business address known to the party giving notice.

...

§ 13.4.2 No action or failure to act by the Owner, Architect or Contractor shall constitute a waiver of a right or duty afforded them under the Contract, nor shall such action or failure to act constitute approval of or acquiescence in a breach ~~there under,~~ thereunder, except as may be specifically agreed in writing.

Additions and Deletions Report for AIA Document A201™ – 2007. Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987, 1997 and 2007 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 08:45:01 on 06/08/2016 under Order No.7898456378_1 which expires on 04/22/2017, and is not for resale.
User Notes:                                                                                                          (727872888)

Complaint, Exh. B

**§ 13.4.3 INVALIDITY.**
The invalidity of any part of provision of the Contract Documents shall not impair or affect in any manner whatsoever the validity, enforceability or effect of the remainder of the Contract Documents.

...

**§ 13.5.1** Tests, inspections and approvals of portions of the Work ~~shall be made as required by the Contract Documents and by applicable laws, statutes, ordinances, codes, rules and regulations or lawful orders of public authorities.~~ required by the Contract Documents or by laws, ordinances, rules, regulations or orders of public authorities having jurisdiction shall be made at an appropriate time. Unless otherwise provided, the Contractor shall make arrangements for such tests, inspections and approvals with an independent testing laboratory or entity acceptable to the Owner, or with the appropriate public authority, and shall bear all related costs of tests, inspections and approvals. The Contractor shall give the Architect timely notice of when and where tests and inspections are to be made so that the Architect may be present for such procedures. The Owner shall bear costs of ~~(1)~~ tests, inspections or approvals ~~that~~ which do not become requirements until after bids are received or negotiations ~~concluded, and (2) tests, inspections or approvals where building codes or applicable laws or regulations prohibit the Owner from delegating their cost to the Contractor.~~ concluded.

**PAGE 46**

~~Payments due and unpaid under the Contract Documents shall bear interest from the date payment is due at such rate as the parties may agree upon in writing or, in the absence thereof, at the legal rate prevailing from time to time at the place where the Project is located.~~ **§ 13.6.1** Payments due and unpaid under the Contract Documents shall bear interest from the date payment is due at such rate as the parties may agree upon in the Agreement or, in the absence thereof, at the legal rate prevailing from time to time at the place where the Project is located.

**§ 13.7 ~~TIME LIMITS ON CLAIMS~~COMMENCEMENT OF STATUTORY LIMITATION PERIOD**
**§ 13.7.1** As between the Owner and Contractor:
~~The Owner and Contractor shall commence all claims and causes of action, whether in contract, tort, breach of warranty or otherwise, against the other arising out of or related to the Contract in accordance with the requirements of the final dispute resolution method selected in the Agreement within the time period specified by applicable law, but in any case not more than 10 years after the date of Substantial Completion of the Work. The Owner and Contractor waive all claims and causes of action not commenced in accordance with this Section 13.7.~~**.1** Before Substantial Completion. As to acts or failures to act occurring prior to the relevant date of Substantial Completion, any applicable statute of limitations shall commence to run and any alleged cause of action shall be deemed to have accrued in any and all events not later than such date of Substantial Completion;

**.2** Between Substantial Completion and Final Certificate for Payment. As to acts or failures to act occurring subsequent to the relevant date of Substantial Completion and prior to issuance of the final Certificate for Payment, any applicable statute of limitations shall commence to run and any alleged cause of action shall be deemed to have accrued in any and all events not later than the date of issuance of the final Certificate for Payment; and

**.3** After Final Certificate for Payment. As to acts or failures to act occurring after the relevant date of issuance of the final Certificate for Payment, any applicable statute of limitations shall commence to run and any alleged cause of action shall be deemed to have accrued in any and all events not later than the date of any act or failure to act by the Contractor pursuant to any Warranty provided under Section 3.5, the date of any correction of the Work or failure to correct the Work by the Contractor under Section 12.2, or the date of actual commission of any other act or failure to perform any duty or obligation by the Contractor or Owner, whichever occurs last.

**§ 13.8 DAVIS-BACON ACT (40 U.S.C 276A) AS SUPPLEMENTED IN DEPARTMENT OF LABOR REGULATIONS (29 C.F.R. PART 5).**
**§ 13.8.1** The Contractor must comply with the minimum rates for wages for laborers and mechanics as determined by the Secretary of Labor in accordance with the provision of this Act.

...

Additions and Deletions Report for AIA Document A201™ – 2007. Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987, 1997 and 2007 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 08:45:01 on 06/08/2016 under Order No.7898468378_1 which expires on 04/22/2017, and is not for resale.
User Notes:                                                                                                    (727872888)

40

Complaint, Exh. B

**§ 14.1.1** The Contractor may terminate the Contract if the Work is stopped for a period of 30 60 consecutive days through no act or fault of the Contractor or a Subcontractor, Sub-subcontractor or their agents or employees or any other persons or entities performing portions of the Work under direct or indirect contract with the Contractor, for any of the following reasons:

 .1 Issuance of an order of a court or other public authority having jurisdiction that which requires all Work to be stopped;

 .2 An act of government, such as a declaration of national emergency that which requires all Work to be stopped;

**§ 14.1.2** The Contractor may terminate the Contract if, through no act or fault of the Contractor or a Subcontractor, Sub-subcontractor or their agents or employees or any other persons or entities performing portions of the Work under direct or indirect contract with the Contractor, repeated suspensions, delays or interruptions of the entire Work by the Owner or delays to the critical path as described in Section 14.3 constitute in the aggregate more than 100 percent of the total number of days scheduled for completion, or 120 days in any 365-day period, whichever is less.

**§ 14.1.3** If one of the reasons described in Section 14.1.1 or 14.1.2 exists, the Contractor may, upon seven days' written notice to the Owner and Architect, terminate the Contract and recover from the Owner payment for Work executed, including reasonable overhead and profit, costs incurred by reason of such termination, executed and for proven loss with respect to materials, equipment, tools, and construction equipment and machinery, including reasonable overhead, profit, and damages.

**§ 14.1.4** If the Work is stopped for a period of 60 consecutive days through no act or fault of the Contractor or a Subcontractor or their agents or employees or any other persons performing portions of the Work under contract with the Contractor because the Owner has repeatedly persistently failed to fulfill the Owner's obligations under the Contract Documents with respect to matters important to the progress of the Work, the Contractor may, upon seven additional days' written notice to the Owner and the Architect, terminate the Contract and recover from the Owner as provided in Section 14.1.3.

**PAGE 47**

**§ 14.2.1** The Owner may terminate the Contract if the Contractor Contractor:

 .1 persistently or repeatedly refuses or fails to supply enough properly skilled workers or proper materials;

 .3 repeatedly disregards applicable laws, statutes, ordinances, codes, rules and regulations, or lawful orders of a public authority; persistently disregards laws, ordinances, codes or rules, regulations or orders of a public authority having jurisdiction; or

**§ 14.2.2** When any of the above reasons exist, the Owner, upon certification by the Initial Decision Maker that sufficient cause exists to justify such action, may without prejudice to any other rights or remedies of the Owner and after giving the Contractor and the Contractor's surety, if any, seven days' written notice, terminate employment of the Contractor and may, subject to any prior rights of the surety:

 .1 Exclude the Contractor from the site and take possession Take possession of the site and of all materials, equipment, tools, and construction equipment and machinery thereon owned by the Contractor;

Additions and Deletions Report for AIA Document A201™ – 2007. Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987, 1997 and 2007 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 08:45:01 on 06/06/2016 under Order No.7898458378_1 which expires on 04/22/2017, and is not for resale.
User Notes: (727872888) **41**

.3   Finish the Work by whatever reasonable method the Owner may deem expedient. Upon ~~written~~ request of the Contractor, the Owner shall furnish to the Contractor a detailed accounting of the costs incurred by the Owner in finishing the Work.

...

§ 14.2.4 If the unpaid balance of the Contract Sum exceeds costs of finishing the Work, including compensation for the Architect's services and expenses made necessary thereby, and other damages incurred by the Owner and not expressly waived, such excess shall be paid to the Contractor. If such costs and damages exceed the unpaid balance, the Contractor shall pay the difference to the Owner. The amount to be paid to the Contractor or Owner, as the case may be, shall be certified by the ~~Initial Decision Maker,~~ Architect, upon application, and this obligation for payment shall survive termination of the Contract.

...

§ 14.3.2 The Contract Sum and Contract Time shall be adjusted for increases in the cost and time caused by suspension, delay or interruption as described in Section 14.3.1. Adjustment of the Contract Sum shall include profit. No adjustment shall be made to the ~~extent~~extent:

...

§ 14.4.1 The Owner may, at any time, terminate the Contract for the Owner's convenience and without cause. Termination by Owner under this Subparagraph 14.4 shall be by seven (7) days' prior written notice of termination given to Contractor specifying the extent of termination and the effective date.

§ 14.4.2 Upon receipt of written notice from the Owner of such termination for the Owner's convenience, the Contractor ~~shall~~shall:

**PAGE 48**

.2   take actions necessary, or that the Owner may direct, for the protection and preservation of the Work;and

.3   except for Work directed to be performed prior to the effective date of termination stated in the notice, terminate all existing subcontracts and purchase orders and enter into no further subcontracts and purchase ~~orders~~orders;

.4   complete the performance of Work not terminated; and

.5   take such other actions as may be necessary or requested by Owner for the protection and reservation of the terminated Work.

§ 14.4.3 ~~In case of such termination for the Owner's convenience, the Contractor shall be entitled to receive payment for Work executed, and costs incurred by reason of such termination, along with reasonable overhead and profit on the Work not executed,~~the event of termination for Owner's convenience, Contractor shall be paid:

.1   for Work performed on the terminated portion of the Work before the effective date of termination, for lump sum and Allowance Items, for goods, services and labor meeting the definitions of  Costs of the Work under clauses 1 through 5 of Subparagraph 7.3.6 for that Work or, for unit cost items, the cost based upon the units performed before the effective date of termination.  In addition, Contractor shall be paid the cost of settling and paying termination costs under terminated subcontracts or properly chargeable to the terminated portion of the Work;

.2   reasonable costs directly related to such termination as described in detail in invoices and descriptions provided by Contractor and as approved by the Architect, including but not limited to stored materials that cannot be returned to their respective vendors; and

.3   if Contractor would have earned a profit under the Contract had the Work been completed, a pro rata portion of such profit based upon the percentage of completed Work as of the effective date of termination.

§ 14.4.4  In determining amounts due Contractor under this Paragraph 14.4, Owner shall be credited for payments

Additions and Deletions Report for AIA Document A201™ – 2007. Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987, 1997 and 2007 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 08:45:01 on 06/06/2016 under Order No.7898456378_1 which expires on 04/22/2017, and is not for resale.
User Notes:                                                                                                                      (727872686)

Complaint, Exh. B

previously made to Contractor for the terminated portion of the Work and claims which Owner has against Contractor under the Contract, and for the value of materials, supplies, equipment or other items to be disposed of by Contractor that are covered under the Contract Sum previously made to Contractor.

ARTICLE 15   CLAIMS AND DISPUTES
§ 15.1 CLAIMS
§ 15.1.1 DEFINITION
A Claim is a demand or assertion by one of the parties seeking, as a matter of right, payment of money, or other relief with respect to the terms of the Contract. The term "Claim" also includes other disputes and matters in question between the Owner and Contractor arising out of or relating to the Contract. The responsibility to substantiate Claims shall rest with the party making the Claim.

§ 15.1.2 NOTICE OF CLAIMS
Claims by either the Owner or Contractor must be initiated by written notice to the other party and to the Initial Decision Maker with a copy sent to the Architect, if the Architect is not serving as the Initial Decision Maker. Claims by either party must be initiated within 21 days after occurrence of the event giving rise to such Claim or within 21 days after the claimant first recognizes the condition giving rise to the Claim, whichever is later.

§ 15.1.3 CONTINUING CONTRACT PERFORMANCE
Pending final resolution of a Claim, except as otherwise agreed in writing or as provided in Section 9.7 and Article 14, the Contractor shall proceed diligently with performance of the Contract and the Owner shall continue to make payments in accordance with the Contract Documents. The Architect will prepare Change Orders and issue Certificates for Payment in accordance with the decisions of the Initial Decision Maker.

§ 15.1.4 CLAIMS FOR ADDITIONAL COST
If the Contractor wishes to make a Claim for an increase in the Contract Sum, written notice as provided herein shall be given before proceeding to execute the Work. Prior notice is not required for Claims relating to an emergency endangering life or property arising under Section 10.4.

§ 15.1.5 CLAIMS FOR ADDITIONAL TIME
§ 15.1.5.1 If the Contractor wishes to make a Claim for an increase in the Contract Time, written notice as provided herein shall be given. The Contractor's Claim shall include an estimate of cost and of probable effect of delay on progress of the Work. In the case of a continuing delay, only one Claim is necessary.

§ 15.1.5.2 If adverse weather conditions are the basis for a Claim for additional time, such Claim shall be documented by data substantiating that weather conditions were abnormal for the period of time, could not have been reasonably anticipated and had an adverse effect on the scheduled construction.

§ 15.1.6 CLAIMS FOR CONSEQUENTIAL DAMAGES
The Contractor and Owner waive Claims against each other for consequential damages arising out of or relating to this Contract. This mutual waiver includes
  .1   damages incurred by the Owner for rental expenses, for losses of use, income, profit, financing, business and reputation, and for loss of management or employee productivity or of the services of such persons; and
  .2   damages incurred by the Contractor for principal office expenses including the compensation of personnel stationed there, for losses of financing, business and reputation, and for loss of profit except anticipated profit arising directly from the Work.

This mutual waiver is applicable, without limitation, to all consequential damages due to either party's termination in accordance with Article 14. Nothing contained in this Section 15.1.6 shall be deemed to preclude an award of liquidated damages, when applicable, in accordance with the requirements of the Contract Documents.

§ 15.2 INITIAL DECISION
§ 15.2.1 Claims, excluding those arising under Sections 10.3, 10.4, 11.3.9, and 11.3.10, shall be referred to the Initial Decision Maker for initial decision. The Architect will serve as the Initial Decision Maker, unless otherwise indicated in the Agreement. Except for those Claims excluded by this Section 15.2.1, an initial decision shall be required as a condition precedent to mediation of any Claim arising prior to the date final payment is due, unless 30

Additions and Deletions Report for AIA Document A201™ – 2007. Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987, 1997 and 2007 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 08:45:01 on 06/06/2016 under Order No.7898456378_1 which expires on 04/22/2017, and is not for resale.
User Notes:                                                                         (727872888)

**43**

Complaint, Exh. B

days have passed after the Claim has been referred to the Initial Decision Maker with no decision having been rendered. Unless the Initial Decision Maker and all affected parties agree, the Initial Decision Maker will not decide disputes between the Contractor and persons or entities other than the Owner.

§ 15.2.2 The Initial Decision Maker will review Claims and within ten days of the receipt of a Claim take one or more of the following actions: (1) request additional supporting data from the claimant or a response with supporting data from the other party, (2) reject the Claim in whole or in part, (3) approve the Claim, (4) suggest a compromise, or (5) advise the parties that the Initial Decision Maker is unable to resolve the Claim if the Initial Decision Maker lacks sufficient information to evaluate the merits of the Claim or if the Initial Decision Maker concludes that, in the Initial Decision Maker's sole discretion, it would be inappropriate for the Initial Decision Maker to resolve the Claim.

§ 15.2.3 In evaluating Claims, the Initial Decision Maker may, but shall not be obligated to, consult with or seek information from either party or from persons with special knowledge or expertise who may assist the Initial Decision Maker in rendering a decision. The Initial Decision Maker may request the Owner to authorize retention of such persons at the Owner's expense.

§ 15.2.4 If the Initial Decision Maker requests a party to provide a response to a Claim or to furnish additional supporting data, such party shall respond, within ten days after receipt of such request, and shall either (1) provide a response on the requested supporting data, (2) advise the Initial Decision Maker when the response or supporting data will be furnished or (3) advise the Initial Decision Maker that no supporting data will be furnished. Upon receipt of the response or supporting data, if any, the Initial Decision Maker will either reject or approve the Claim in whole or in part.

§ 15.2.5 The Initial Decision Maker will render an initial decision approving or rejecting the Claim, or indicating that the Initial Decision Maker is unable to resolve the Claim. This initial decision shall (1) be in writing; (2) state the reasons therefor; and (3) notify the parties and the Architect, if the Architect is not serving as the Initial Decision Maker, of any change in the Contract Sum or Contract Time or both. The initial decision shall be final and binding on the parties but subject to mediation and, if the parties fail to resolve their dispute through mediation, to binding dispute resolution.

§ 15.2.6 Either party may file for mediation of an initial decision at any time, subject to the terms of Section 15.2.6.1.

§ 15.2.6.1 Either party may, within 30 days from the date of an initial decision, demand in writing that the other party file for mediation within 60 days of the initial decision. If such a demand is made and the party receiving the demand fails to file for mediation within the time required, then both parties waive their rights to mediate or pursue binding dispute resolution proceedings with respect to the initial decision.

§ 15.2.7 In the event of a Claim against the Contractor, the Owner may, but is not obligated to, notify the surety, if any, of the nature and amount of the Claim. If the Claim relates to a possibility of a Contractor's default, the Owner may, but is not obligated to, notify the surety and request the surety's assistance in resolving the controversy.

§ 15.2.8 If a Claim relates to or is the subject of a mechanic's lien, the party asserting such Claim may proceed in accordance with applicable law to comply with the lien notice or filing deadlines.

§ 15.3 MEDIATION
§ 15.3.1 Claims, disputes, or other matters in controversy arising out of or related to the Contract except those waived as provided for in Sections 9.10.4, 9.10.5, and 15.1.6 shall be subject to mediation as a condition precedent to binding dispute resolution.

§ 15.3.2 The parties shall endeavor to resolve their Claims by mediation which, unless the parties mutually agree otherwise, shall be administered by the American Arbitration Association in accordance with its Construction Industry Mediation Procedures in effect on the date of the Agreement. A request for mediation shall be made in writing, delivered to the other party to the Contract, and filed with the person or entity administering the mediation. The request may be made concurrently with the filing of binding dispute resolution proceedings but, in such event, mediation shall proceed in advance of binding dispute resolution proceedings, which shall be stayed pending

Additions and Deletions Report for AIA Document A201™ – 2007. Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987, 1997 and 2007 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 08:45:01 on 06/06/2016 under Order No.7896458378_1 which expires on 04/22/2017, and is not for resale.
User Notes:                                                                                          (727872888)

44

mediation for a period of 60 days from the date of filing, unless stayed for a longer period by agreement of the parties or court order. If an arbitration is stayed pursuant to this Section 15.3.2, the parties may nonetheless proceed to the selection of the arbitrator(s) and agree upon a schedule for later proceedings.

§ 15.3.3 The parties shall share the mediator's fee and any filing fees equally. The mediation shall be held in the place where the Project is located, unless another location is mutually agreed upon. Agreements reached in mediation shall be enforceable as settlement agreements in any court having jurisdiction thereof.

§ 15.4 ARBITRATION

§ 15.4.1 If the parties have selected arbitration as the method for binding dispute resolution in the Agreement, any Claim subject to, but not resolved by, mediation shall be subject to arbitration which, unless the parties mutually agree otherwise, shall be administered by the American Arbitration Association in accordance with its Construction Industry Arbitration Rules in effect on the date of the Agreement. A demand for arbitration shall be made in writing, delivered to the other party to the Contract, and filed with the person or entity administering the arbitration. The party filing a notice of demand for arbitration must assert in the demand all Claims then known to that party on which arbitration is permitted to be demanded.

§ 15.4.1.1 A demand for arbitration shall be made no earlier than concurrently with the filing of a request for mediation, but in no event shall it be made after the date when the institution of legal or equitable proceedings based on the Claim would be barred by the applicable statute of limitations. For statute of limitations purposes, receipt of a written demand for arbitration by the person or entity administering the arbitration shall constitute the institution of legal or equitable proceedings based on the Claim.

§ 15.4.2 The award rendered by the arbitrator or arbitrators shall be final, and judgment may be entered upon it in accordance with applicable law in any court having jurisdiction thereof.

§ 15.4.3 The foregoing agreement to arbitrate and other agreements to arbitrate with an additional person or entity duly consented to by parties to the Agreement shall be specifically enforceable under applicable law in any court having jurisdiction thereof.

§ 15.4.4 CONSOLIDATION OR JOINDER

§ 15.4.4.1 Either party, at its sole discretion, may consolidate an arbitration conducted under this Agreement with any other arbitration to which it is a party provided that (1) the arbitration agreement governing the other arbitration permits consolidation, (2) the arbitrations to be consolidated substantially involve common questions of law or fact, and (3) the arbitrations employ materially similar procedural rules and methods for selecting arbitrator(s).

§ 15.4.4.2 Either party, at its sole discretion, may include by joinder persons or entities substantially involved in a common question of law or fact whose presence is required if complete relief is to be accorded in arbitration, provided that the party sought to be joined consents in writing to such joinder. Consent to arbitration involving an additional person or entity shall not constitute consent to arbitration of any claim, dispute or other matter in question not described in the written consent.

§ 15.4.4.3 The Owner and Contractor grant to any person or entity made a party to an arbitration conducted under this Section 15.4, whether by joinder or consolidation, the same rights of joinder and consolidation as the Owner and Contractor under this Agreement.

Additions and Deletions Report for AIA Document A201™ – 2007. Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987, 1987 and 2007 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 08:45:01 on 06/06/2016 under Order No. 7898458378_1 which expires on 04/22/2017, and is not for resale.
User Notes:                                                                                (727872888)

Complaint, Exh. B

## *Certification of Document's Authenticity*
*AIA® Document D401™ – 2003*

I, Michael K. Wilson, hereby certify, to the best of my knowledge, information and belief, that I created the attached final document simultaneously with its associated Additions and Deletions Report and this certification at 08:44:02 on 06/06/2016 under Order No. 7898458378_t from AIA Contract Documents software and that in preparing the attached final document I made no changes to the original text of AIA® Document A201™ – 2007, General Conditions of the Contract for Construction, as published by the AIA in its software, other than those additions and deletions shown in the associated Additions and Deletions Report.

_____

(Signed)


_____

(Title)


_____

(Dated)

AIA Document D401™ – 2003. Copyright © 1992 and 2003 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 08:44:02 on 06/06/2016 under Order No.7898458378_1 which expires on 04/22/2017, and is not for resale.
User Notes:                                                                                                          (2017661168)

1

Complaint, Exh. B

**Exhibit A: Scope of Work**

**Building #18**

**General summary of proposed work:**

The proposed renovation will rehabilitate the 1914 chapel for a Catholic Convent and School, converting it into a Housing Facility for Veterans. The renovation will include an attempt for LEED Silver status, new HVAC, electrical & plumbing systems, a restoration of the exterior facades, and reconfiguration of the floor plans to accommodate 28 apartments. The building has been nominated for the National Register of Historic Places. The historic details include but are not limited to trim work (exterior and interior), windows, construction type, and finishes, etc.

The new interior building design will incorporate 4 efficiency units on the first floor and 8 efficiency units per floor on floors two through four, with additional community space on all floors. Each floor will be served by a fully accessible elevator. The units will be an average of 500 square feet, and each unit will include a fully equipped kitchen with a refrigerator, dishwasher, electric range and microwave oven. Units will also include new flooring, window blinds, central heat and air conditioning, and a private bath with full tub, vanity and toilet. Each unit will be furnished (by the owner) with a bed, nightstand, table and chairs and seating area.

**Exhibit A: Scope of Work**

**Building #76**

**General summary of proposed work:**

The proposed renovation will rehabilitate the 1945 Neuro-Psychiatric Infirmary building, converting it into a Permanent Housing Facility for Homeless Veterans. The renovation will include an attempt for LEED Silver status, new HVAC, electrical & plumbing systems, a restoration of the main entrance stairs, and reconfiguration of the floor plan to accommodate fifty apartments. The building has been nominated for the National Register of Historic Places. The historic details include but are not limited to trim work (exterior and interior), windows, construction type, and finishes, etc.

The redeveloped building will contain 50 one bedroom, one bath units of approximately 700 square feet. Each floor will be served by a fully accessible elevator. Each unit will include central heat and air conditioning and a complete kitchen which includes a dishwasher, microwave, refrigerator and range. All units will be furnished with a bed, dresser, table, and seating. The units will provide for independent housing with traditional amenities including an outdoor pavilion/picnic area, garden area, technology/computer center, fitness center, and community TV lounge with a warming kitchen.

**Exhibit C**
**FREEDOM'S PATH HOUSING HISTORIC REHABILITATION - DRAWING INDEX**
**Building #18**
**1 Freedom Way, Augusta, Georgia 30904**
**Augusta-Richmond County**

| | DRAWINGS | | |
|---|---|---|---|
| SHEET | TITLE | SUBTITLE | FINALS |
| C1.0 | COVER SHEET | | 2015-10-14 |
| C1.1 | NOTES & LEGEND | | 2015-10-14 |
| C1.2 | EXISTING CONDITIONS & DEMOLITION PLAN | | 2015-10-14 |
| C2.0 | SITE & LAYOUT PLAN | | 2015-10-14 |
| C2.1 | GRADING & STROM DRAINAGE PLAN | | 2015-10-14 |
| C3.0 | UTILITY PLAN | | 2015-10-14 |
| C4.0 | PROFILES | | 2015-10-14 |
| C5.0 | MISCELLANEOUS DETAILS | | 2015-10-14 |
| C5.1 | MISCELLANEOUS DETAILS | | 2015-10-14 |
| C5.2 | MISCELLANEOUS DETAILS | | 2015-10-14 |
| C5.3 | MISCELLANEOUS DETAILS | | 2015-10-14 |
| C5.4 | MISCELLANEOUS DETAILS | | 2015-10-14 |
| C6.0 | INITIAL EROSION CONTROL PLAN | | 2015-10-14 |
| C6.1 | INTERMEDIATE EROSION CONTROL PLAN | | 2015-10-14 |
| C6.2 | FINAL EROSION CONTROL PLAN | | 2015-10-14 |
| C6.3 | EROSION CONTROL MONITORING PLAN & DETAILS | | 2015-10-14 |
| C6.4 | EROSION CONTROL DETAILS | | 2015-10-14 |
| | | | |
| T1 | COVER SHEET | | 2015-10-28 |
| T2 | TITLE SHEET, INDEX, PROJECT DIRECTORY, PROJECT DATA, APPLICABLE CODES, ABBREVIATIONS, GENERAL NOTES | | 2015-10-28 |
| LS-1 | LIFE SAFETY PLAN | | 2015-10-28 |
| ACC-1 | GENERAL ACCESSIBILITY NOTES & DETAILS | | 2015-06-30 |
| ACC-2 | GENERAL ACCESSIBILITY NOTES & DETAILS | | 2015-10-28 |
| A0.1 | SITE PLANS, UNIT & BUILDING TABULATION | | 2015-10-28 |
| A0.2 | DUMPSTER PLANS, ELEVATIONS & DETAILS | | 2015-06-30 |
| A1.1 | | FIRST FLOOR | 2015-10-28 |
| A1.2 | EXISTING & PROPOSED FLOOR PLANS | SECOND & THIRD FLOOR | 2015-10-28 |
| A1.3 | | FOURTH FLOOR | 2015-10-28 |
| A2 | ROOF PLAN | | 2015-10-28 |
| A3.1 | EXTERIOR ELEVATIONS | | 2015-10-28 |
| A3.2 | EXTERIOR ELEVATIONS | | 2015-10-28 |
| A4.1.1 | | 1ST FLOOR PART #1 | 2015-10-28 |
| A4.1.2 | | 1ST FLOOR PART #2 | 2015-10-28 |
| A4.2.1 | | 2ND & 3RD FLOOR PART #1 | 2015-10-28 |
| A4.2.2 | UNIT & COMMON AREA DIMENSIONED FLOOR PLANS | 2ND & 3RD FLOOR PART #2 | 2015-10-28 |
| A4.3.1 | | 4TH FLOOR PART #1 | 2015-10-28 |
| A4.3.2 | | 4TH FLOOR PART #2 | 2015-10-28 |
| A5.1.1 | | 1ST FLOOR PART #1 | 2015-10-28 |
| A5.1.2 | | 1ST FLOOR PART #2 | 2015-10-28 |
| A5.2.1 | | 2ND & 3RD FLOOR PART #1 | 2015-10-28 |
| A5.2.2 | UNIT & COMMON AREA FIXTURE PLANS | 2ND & 3RD FLOOR PART #2 | 2015-10-28 |
| A5.3.1 | | 4TH FLOOR PART #1 | 2015-10-28 |
| A5.3.2 | | 4TH FLOOR PART #2 | 2015-10-28 |

Complaint, Exh. B

| | | | |
|---|---|---|---|
| A6.1 | UNIT INTERIOR ELEVATIONS | | 2015-06-30 |
| A6.2 | UNIT INTERIOR ELEVATIONS | | 2015-06-30 |
| A6.3 | UNIT INTERIOR ELEVATIONS | | 2015-06-30 |
| A6.4 | UNIT INTERIOR ELEVATIONS | | 2015-06-30 |
| A6.5 | UNIT INTERIOR ELEVATIONS | | 2015-06-30 |
| A6.6 | COMMON AREA INTERIOR ELEVATIONS | | 2015-06-30 |
| A7.1 | WINDOW SCHEDULES, TYPES & DETAILS | | 2015-06-30 |
| A7.2 | DOOR SCHEDULES, TYPES & DETAILS | | 2015-10-28 |
| A7.3 | EQUIPMENT & FINISH SCHEDULES | | 2015-10-28 |
| A8.1 | BUILDING SECTIONS | | 2015-10-28 |
| A8.2 | BUILDING & WALL SECTIONS | | 2015-10-28 |
| A9 | PENETRATION & WALL DETAILS | | 2015-10-28 |
| A10.1 | | 1ST FLOOR | 2015-10-28 |
| A10.2 | REFLECTED CEILING PLANS | 2ND & 3RD FLOOR | 2015-10-28 |
| A10.3 | | 4TH FLOOR | 2015-10-28 |
| M0.1 | MECHANICAL NOTES, DETAILS, SCHEDULES | | 2015-10-28 |
| M1.0 | MECHANICAL FIRST FLOOR PLAN PART #1 | | 2015-10-28 |
| M1.1 | MECHANICAL FIRST FLOOR PLAN PART #2 | | 2015-10-28 |
| M1.2 | MECHANICAL SECOND & THIRD FLOOR PLAN | | 2015-10-28 |
| M1.3 | MECHANICAL FOURTH FLOOR PLAN | | 2015-10-28 |
| P0.1 | PLUMBING NOTES, DETAILS & SCHEDULES | | 2015-10-28 |
| P0.2 | PLUMBING RISERS | | 2015-10-28 |
| **P1.0** | **PLUMBING FIRST FLOOR PLAN** | | **2016-01-04** |
| **P1.1** | **PLUMBING SECOND & THIRD FLOOR PLAN** | | **2016-01-04** |
| **P1.2** | **PLUMBING FOURTH FLOOR PLAN** | | **2016-01-04** |
| P1.3 | PLUMBING FOURTH FLOOR PLAN | | 2015-10-28 |
| E0.1 | ELECTRICAL NOTES, DETAILS & SCHEDULES | | 2015-10-28 |
| E1.0 | ELECTRICAL FIRST FLOOR PLAN PART #1 | | 2015-10-28 |
| E1.1 | ELECTRICAL FIRST FLOOR PLAN PART #2 | | 2015-10-28 |
| E1.2 | ELECTRICAL SECOND & THIRD FLOOR PLAN | | 2015-10-28 |
| E1.3 | ELECTRICAL FOURTH FLOOR PLAN | | 2015-10-28 |
| E1.4 | ELECTRICAL FIRST FLOOR PLAN | | 2015-10-28 |
| E1.5 | ELECTRICAL SECOND & THIRD FLOOR PLAN | | 2015-10-28 |
| E1.6 | ELECTRICAL FOURTH FLOOR PLAN | | 2015-10-28 |
| E2.0 | COMCHECK & RISER DIAGRAMS | | 2015-10-28 |
| E2.1 | PANELS | | 2015-10-28 |
| E2.2 | PANELS | | 2015-10-28 |
| FP0.1 | FIRE PROTECTION NOTES | | 2015-10-28 |
| FP1.0 | FIRE PROTECTION FLOOR PLAN | | 2015-10-28 |
| **SPECIFICATIONS** | | **SUBTITLE** | **DATE** |
| | Project Manual | Freedom's Path Housing Historical Rehabilitation Building #18 | 2014-09-05 |
| **ENVIRONMENTAL REPORTS & SPECIFICATIONS** | | | **DATE** |
| | Asbestos Abatement Report #18 | | 2016-03-14 |
| | Asbestos Survey #18 | | 2016-03-05 |
| | Lead-Containing Paint Renovation/Demolition Report #18 | | 2016-03-14 |
| | Lead Containing Paint Survey Report #18 | | 2016-03-01 |
| | PCB and Mercury Removal Report #18 | | 2016-03-14 |
| | Visual Materials & Visual Mold Assessment #18 | | 2016-03-14 |

**Exhibit C**
**FREEDOM'S PATH HOUSING HISTORIC REHABILITATION - DRAWING INDEX**
**Building #76**
**1 Freedom Way, Augusta, Georgia 30904**
**Augusta-Richmond County**

| SHEET | TITLE | SUB-TITLE | DATE |
|---|---|---|---|
| C0.0 | COVER SHEET & GENERAL NOTES | | 2015-09-14 |
| - | VA BOUNDARY PLAT | | 2015-09-14 |
| C1.0 | DEMOLITION PLAN | | 2015-09-14 |
| C2.0 | OVERALL LAYOUT PLAN | | 2015-09-14 |
| C2.1 | LAYOUT & STAKING PLAN | | 2015-09-14 |
| C3.0 | GRADING PLAN | | 2015-09-14 |
| C4.0 | UTILITY PLAN | | 2015-09-14 |
| C5.0 | CONSTRUCTION DETAILS I | | 2015-09-14 |
| C5.1 | CONSTRUCTION DETAILS II | | 2015-09-14 |
| EC1.0 | EROSION SEDIMENTATION & POLLUTION CONTROL NOTES | | 2015-09-14 |
| EC1.1 | EROSION SEDIMENTATION & POLLUTION CONTROL NOTES | | 2015-09-14 |
| EC1.2 | EROSION SEDIMENTATION & POLLUTION CONTROL NOTES | | 2015-09-14 |
| EC2.0 | INITIAL EROSION SEDIMENTATION & POLLUTION CONTROL PLAN | | 2015-09-14 |
| EC2.1 | INTERMEDIATE EROSION SEDIMENTATION & POLLUTION CONTROL NOTES | | 2015-09-14 |
| EC2.2 | FINAL EROSION SEDIMENTATION & POLLUTION CONTROL NOTES | | 2015-09-14 |
| EC3.0 | EROSION SEDIMENTATION & POLLUTION CONTROL DETAILS | | 2015-09-14 |
| EC3.1 | EROSION SEDIMENTATION & POLLUTION CONTROL DETAILS | | 2015-09-14 |
| EC3.2 | EROSION SEDIMENTATION & POLLUTION CONTROL DETAILS | | 2015-09-14 |
| | | | |
| T1 | COVER SHEET | | 2015-06-30 |
| T2 | TITLE SHEET, INDEX, PROJECT DIRECTORY, PROJECT DATA, APPLICABLE CODES, ABBREVIATIONS, GENERAL NOTES | | 2015-10-28 |
| LS-1 | LIFE SAFETY PLAN | | 2015-10-28 |
| ACC-1 | GENERAL ACCESSIBILITY NOTES & DETAILS | | 2015-06-30 |
| ACC-2 | GENERAL ACCESSIBILITY NOTES & DETAILS | | 2015-10-28 |
| A0.1 | SITE PLANS, UNIT & BUILDING TABULATION | | 2015-10-28 |
| A0.2 | PAVILION & PICNIC AREA PLANS & DETAILS | | 2015-06-30 |
| A0.3 | TRASH ENCLOSURE | | 2015-06-30 |
| 76-A1.1 | | EXISTING & PROPOSED | 2015-10-28 |
| 76-A1.2 | BUILDING FLOOR PLANS | EXISTING & PROPOSED | 2015-10-28 |
| 76-A1.3 | | EXISTING & PROPOSED | 2015-10-28 |
| 76-A2 | ROOF PLAN | | 2015-06-30 |
| 76-A3.1 | EXTERIOR ELEVATIONS | | 2015-06-30 |
| 76-A3.2 | EXTERIOR ELEVATIONS | | 2015-06-30 |
| 76-A3.3 | BUILDING SECTION | | 2015-06-30 |
| 76-A4.1.1 | | BUILDING PART #1 & #1a | 2015-10-28 |
| 76-A4.1.2 | GROUND FLOOR UNITS & COMMON AREA PLANS | BUILDING PART #2 | 2015-10-28 |
| 76-A4.1.3 | | BUILDING PART #3 | 2015-10-28 |
| 76-A4.1.4 | | BUILDING PART #4 | 2015-10-28 |
| 76-A4.1.5 | | BUILDING PART #5 | 2015-10-28 |
| 76-A4.2.1 | | BUILDING PART #1 | 2015-10-28 |
| 76-A4.2.2 | | BUILDING PART #2 | 2015-10-28 |
| 76-A4.2.3 | FIRST FLOOR UNITS & COMMON AREA PLANS | BUILDING PART #3 | 2015-10-28 |

| | | | |
|---|---|---|---|
| 76-A4.2.4 | | BUILDING PART #4 | 2015-10-28 |
| 76-A4.2.5 | | BUILDING PART #5 | 2015-10-28 |
| 76-A4.3.1 | | BUILDING PART #1 | 2015-10-28 |
| 76-A4.3.2 | | BUILDING PART #2 | 2015-10-28 |
| 76-A4.3.3 | SECOND FLOOR UNITS & COMMON AREA PLANS | BUILDING PART #3 | 2015-10-28 |
| 76-A4.3.4 | | BUILDING PART #4 | 2015-10-28 |
| 76-A4.3.5 | | BUILDING PART #5 | 2015-10-28 |
| 76-A5.1 | UNIT INTERIOR ELEVATIONS | | 2015-10-28 |
| 76-A5.2 | UNIT INTERIOR ELEVATIONS | | 2015-10-28 |
| 76-A5.3 | UNIT INTERIOR ELEVATIONS | | 2015-10-28 |
| 76-A5.4 | UNIT INTERIOR ELEVATIONS | | 2015-10-28 |
| 76-A5.5 | UNIT INTERIOR ELEVATIONS | | 2015-10-28 |
| 76-A5.6 | UNIT INTERIOR ELEVATIONS | | 2015-06-30 |
| 76-A5.7 | COMMON AREA INTERIOR ELEVATIONS | | 2015-10-28 |
| 76-A6.1 | DOOR, WINDOW SCHEDULES & DETAILS | | 2015-10-28 |
| 76-A6.2 | EQUIPMENT & FINISH SCHEDULES | | 2015-10-28 |
| 76-A7.1 | WALL DETAILS & STAIR DETAILS | | 2015-06-30 |
| 76-A7.2 | SECTION FOR NEW STAIRS #3 & #4 | | 2015-06-30 |
| 76-A7.3 | PENETRATION DETAILS | | 2015-06-30 |
| 76-A8.1.1 | | BUILDING PART #1 & #1a | 2015-10-28 |
| 76-A8.1.2 | GROUND FLOOR UNITS & COMMON AREA | BUILDING PART #2 | 2015-10-28 |
| 76-A8.1.3 | REFLECTED CEILING PLANS | BUILDING PART #3 | 2015-10-28 |
| 76-A8.1.4 | | BUILDING PART #4 | 2015-10-28 |
| 76-A8.1.5 | | BUILDING PART #5 | 2015-10-28 |
| 76-A8.2.1 | | BUILDING PART #1 | 2015-10-28 |
| 76-A8.2.2 | FIRST FLOOR UNITS & COMMON AREA REFLECTED | BUILDING PART #2 | 2015-10-28 |
| 76-A8.2.3 | CEILING PLANS | BUILDING PART #3 | 2015-10-28 |
| 76-A8.2.4 | | BUILDING PART #4 | 2015-10-28 |
| 76-A8.2.5 | | BUILDING PART #5 | 2015-10-28 |
| 76-A8.3.1 | | BUILDING PART #1 | 2015-10-28 |
| 76-A8.3.2 | SECOND FLOOR UNITS & COMMON AREA | BUILDING PART #2 | 2015-10-28 |
| 76-A8.3.3 | REFLECTED CEILING PLANS | BUILDING PART #3 | 2015-10-28 |
| 76-A8.3.4 | | BUILDING PART #4 | 2015-10-28 |
| 76-A8.3.5 | | BUILDING PART #5 | 2015-10-28 |
| 76-S0.1 | STRUCTURAL NOTES | | 2015-06-30 |
| 76-S1.0 | GROUND FLOOR DEMO PLAN | | 2015-06-30 |
| 76-S1.1 | FIRST FLOOR DEMO PLAN | | 2015-06-30 |
| 76-S1.2 | SECOND FLOOR DEMO PLAN | | 2015-06-30 |
| 76-S2.0 | FOUNDATION PLAN | | 2015-06-30 |
| 76-S2.1 | FIRST FLOOR FRAMING PLAN | | 2015-06-30 |
| 76-S2.2 | SECOND FLOOR FRAMING PLAN | | 2015-10-28 |
| 76-S3.0 | FRAMING DETAILS | | 2015-10-28 |
| 76-M0.1 | MECHANICAL NOTES, DETAILS & SCHEDULES | | 2015-10-28 |
| 76-M1.0 | MECHANICAL GROUND FLOOR PLAN | | 2015-10-28 |
| 76-M1.1 | MECHANICAL FIRST FLOOR PLAN | | 2015-10-28 |
| 76-M1.2 | MECHANICAL SECOND FLOOR PLAN | | 2015-10-28 |
| 76-P0.1 | PLUMBING NOTES, DETAILS & SCHEDULES | | 2015-10-28 |
| 76-P0.2 | PLUMBING RISERS | | 2015-10-28 |
| 76-P1.0 | GROUND FLOOR PLUMBING PLAN | | 2015-10-28 |
| 76-P1.1 | FIRST FLOOR PLUMBING PLAN | | 2015-10-28 |
| 76-P1.2 | SECOND FLOOR PLUMBING PLAN | | 2015-10-28 |
| 76-E0.1 | ELECTRICAL NOTES, DETAILS & SCHEDULES | | 2015-10-28 |
| 76-E1.1 | PARTIAL ELECTRICAL GROUND FLOOR PLAN | | 2015-10-28 |
| 76-E1.2 | PARTIAL ELECTRICAL GROUND FLOOR PLAN | | 2015-10-28 |
| 76-E1.3 | PARTIAL ELECTRICAL GROUND FLOOR PLAN | | 2015-10-28 |

| 76-E1.4 | PARTIAL ELECTRICAL GROUND FLOOR PLAN | | 2015-10-28 |
|---|---|---|---|
| 76-E1.5 | PARTIAL ELECTRICAL GROUND FLOOR PLAN | | 2015-10-28 |
| 76-E2.1 | PARTIAL ELECTRICAL FIRST FLOOR PLAN | | 2015-10-28 |
| 76-E2.2 | PARTIAL ELECTRICAL FIRST FLOOR PLAN | | 2015-10-28 |
| 76-E2.3 | PARTIAL ELECTRICAL FIRST FLOOR PLAN | | 2015-10-28 |
| 76-E2.4 | PARTIAL ELECTRICAL FIRST FLOOR PLAN | | 2015-10-28 |
| 76-E2.5 | PARTIAL ELECTRICAL FIRST FLOOR PLAN | | 2015-10-28 |
| 76-E3.1 | PARTIAL ELECTRICAL SECOND FLOOR PLAN | | 2015-10-28 |
| 76-E3.2 | PARTIAL ELECTRICAL SECOND FLOOR PLAN | | 2015-10-28 |
| 76-E3.3 | PARTIAL ELECTRICAL SECOND FLOOR PLAN | | 2015-10-28 |
| 76-E3.4 | PARTIAL ELECTRICAL SECOND FLOOR PLAN | | 2015-10-28 |
| 76-E3.5 | PARTIAL ELECTRICAL SECOND FLOOR PLAN | | 2015-10-28 |
| 76-E4.1 | GROUND FLOOR LIGHTING PLAN | | 2015-10-28 |
| 76-E4.2 | FIRST FLOOR LIGHTING PLAN | | 2015-10-28 |
| 76-E4.3 | SECOND FLOOR LIGHTING PLAN | | 2015-10-28 |
| 76-E5.1 | ELECTRICAL PANELS | | 2015-10-28 |
| 76-E5.2 | ELECTRICAL PANELS | | 2015-10-28 |
| 76-FP1.1 | FIRE PROTECTION FLOOR PLAN | | 2015-10-28 |
| **SPECIFICATIONS** | | **SUBTITLE** | **DATE** |
| | Project Manual | Freedom's Path Housing Historical Rehabilitation Building #76 | 2014-09-05 |
| **ENVIRONMENTAL REPORTS & SPECIFICATIONS** | | | **DATE** |
| | Asbestos Survey #76 | | 2016-02-29 |
| | Lead Containing Paint Survey Report #76 | | 2016-02-25 |
| | Visual Materials and Visual Mold Assessment Report #76 | | 2016-02-29 |
| | Asbestos Abatement #76 | | 2016-03-11 |
| | Lead-Containing Paint Demolition Report #76 | | 2016-03-11 |

Complaint, Exh. B



**Exhibit D**

*Relationships. Solutions. Value. ...Since 1937.*

# Proposal

May 23, 2016
Mr. Bob Smith
Beneficial Communities
3550 S Tamiami Trail, Suite 301
Sarasota, FL 34239

Re:  Freedoms Path - Augusta Proposal:

**Freedom's Path Housing Historic Rehabilitation of Buildings #76 & #18**

Dear Bob,

On behalf of CORE Construction Services, LLC, I am pleased to submit our proposal for the Freedom's Path Housing Historic Rehabilitation of Buildings #76 & #18.

**Budget Summary:**

**Total Proposal Price**                                    **$11,774,000.00**

Enclosed you will find the Basis of Estimate: Assumptions, Qualifications & Clarifications

We look forward to a successful and enjoyable project together.  Thank you for this opportunity, please do not hesitate to contact me directly with any questions or comments.

Respectfully submitted,

*Kyle Culverhouse*

Kyle Culverhouse
Director of Preconstruction
CORE Construction Services, LLC

Complaint, Exh. B

## Basis of Estimate

*FREEDOM'S PATH HISTORIC REHABILITATION OF BLDGS. #76 & #18*
*5/23/16*

*Augusta, GA*



The Basis of Estimate is a written explanation clarifying the scope, assumptions and exclusions used in establishing the estimate dated May 23rd, 2016.

All costs are based on Architectural plans (for buildings 76 & 18) dated 10/28/15, building 7 Civil drawings dated 5/22/14, building 76 Civil drawings dated 9/4/15, building 18 Civil drawings dated 10/18/15, building 76 mechanical/electrical/plumbing drawings dated 6/22/15, building 18 mechanical/electrical/plumbing drawings dated 6/30/15, specifications for buildings 76 & 18 dated 10/28/15, Terracon Environmental Reports dated Feb/March '16 for all 3 buildings, Window Work Assessments for building 76 dated 3/17/16, as well as verbal & emailed RFI Q&A & other information provided by Gruber & Associate architects & Beneficial Communities to CORE Construction.

# Assumptions, Clarifications, & Exclusions

## Schedule

- Anticipated construction start: June 21, 2016
- Duration of Construction; ~16 months (June 21, 2016 – October 19, 2017)
- Substantial Completion: October 19, 2017

## Contingency & Allowances

- o Landscape Allowance of $120,000.00 for all buildings total.
- o Wood truss replacement Allowance on Building #76: $6,000.00 total
- o Wood Roof Deck Replacement Allowance on building #76: $5,000.00 total
- o Exterior Plaster Repair Allowance on Building #76: $7,500.00 total
- o Interior Plaster Repair Allowance on building #76: $7,500.00 total
- o Soffit and Fascia Repair Allowance on Buildings#76: $31,864.00
- o No plaster repair in building 18. All partitions are to be drywall.

## General Assumptions

- o All labor pricing in this proposal is based upon Davis Bacon Wages classified as 'Residential' construction as per directed by Beneficial Communities.
- o Exterior Elastomeric Paint on the exterior of building in lieu of plaster repair per owner's direction
- o Sales Tax is included in this proposal

---

Complaint, Exh. B

# Basis of Estimate

*FREEDOM'S PATH HISTORIC REHABILITATION OF BLDGS. #76 & #18*
5/23/16

*Augusta, GA*



## Specific Exclusions to Estimate

- Temporary construction fencing does not include barbed wire, razor wire or any other equivalent security measure.
- Temporary construction fencing does not include mid-rails, bottom rails or any other permanent type of construction.
- Any unforeseen conditions.
- Water and sewer impact fees
- Exterior Plaster Restoration other than the plaster repair specifically stated in the Allowances
- Concrete Ceiling Restoration (Orange Peel Finish Only)
- Any and all work not specifically mentioned or included in the scope of work below.

## Other scope specific Assumptions and Clarifications:

Demolition/ Off-Site Infrastructure
- o  Building Abatement and Demolition
  - o  Asbestos abatement and containment as indicated in the report from Terracon dated 2/25/16.
  - o  Selective demolition as indicated in the contract documents.
  - o  Site lead remediation as indicated in the Environmental Survey.
  - o  Legal disposal of all materials generated from abatement and demolition.
  - o  Recycle construction debris materials to meet LEED requirements.
  - o  LEED Documentation of all materials generated from demolition.

Site Work (Rough)
- o  Survey and Layout
  - o  Layout to provide site control for Sitework contractors use
- o  Clearing
  - o  Site tree & brush clearing as required for installation of new paving & utilities
- o  Earthwork and Storm Drainage
  - o  Site Demo
  - o  Cut/Fill to Grades indicated
  - o  Aggregate base under pavement as directed by the contract documents
  - o  Storm drainage as indicated in the contract documents

---

Complaint, Exh. B

## Basis of Estimate

*FREEDOM'S PATH HISTORIC REHABILITATION OF BLDGS. #76 & #18*
*5/23/16*

*Augusta, GA*



- o Storm drainage improvements to building #76 as per email from Cranston Engineers dated May 20, 216
- o Site Utilities
  - o Required temporary sewer tie-ins for one (1) temporary construction office.
  - o Required temporary water meter for construction use and the temporary construction office.
  - o New domestic water lines per the contract documents
  - o New Fire lines per the contract documents
  - o New Sanitary sewer services per the contract documents
  - o New Water and sewer connections to existing Mains

- o Storm Water Prevention Plan
  - o Provide a SWPP permit and erosion control plan required

Site Work (Finish)
- o Site Signage and Striping
- o Landscaping
  - o Allowance of $120,000 for all Buildings
- o Fencing
  - o Aluminum Ornamental Fence per contract drawings
  - o Wood fence at the transformer at Building #76
- o Site Concrete
  - o Concrete Sidewalks as indicated
  - o Handicap ramps as indicated
  - o Dumpster pads as indicated
  - o Curbs and gutters as indicated
  - o New Pervious Concrete at Building #18 as indicated
  - o Removable bollards at Building 18
- o Asphalt
  - o New Heavy duty asphalt paving as indicated
- o Special Construction
  - o New Picnic Area
  - o New Pavilion

Structure

---

Complaint, Exh. B

# Basis of Estimate

*FREEDOM'S PATH HISTORIC REHABILITATION OF BLDGS. #76 & #18*
*5/23/16*

*Augusta, GA*



- o Structural Concrete
  - o Light pole bases as indicated
  - o New slabs for Pavilion and Picnic areas
  - o Repair exterior stairs at Building #76
  - o Slab patch for plumbing Work on Building #18 & #76
- o Masonry
  - o New Trash Enclosures at building #76 and #18
  - o New Masonry to Recreate Historic Stairs at Building #76
- o Structural Steel
  - o Structural Steel at Building #76 as indicated in the contract documents
- o Misc Steel
  - o Handrails as indicated in the contract documents

Enclosure

- o Wood Trusses
  - o Wood Roof Truss Replacement/Repair Allowance of $6,000.00 for all buildings total.
- o Rough Carpentry
  - o In-wall blocking for all Toilet Accessories and Millwork
  - o Pavilion Framing
- o Gypcrete
  - o Gypcrete floor leveling placement at previously enclosed porches

Enclosure

- o Exterior Plaster
  - o Exterior Plaster Repair Allowance of $7,500.00 for all buildings total
- o Fire Stopping
  - o Top of Fire rated partitions as indicated
  - o Bottom of Fire rated Partitions as indicated
  - o Mechanical, Electrical, and Plumbing Penetrations as indicated in the drawings
- o Louvers & Vents
  - o Repaint crawlspace vents at Building 7
  - o Clean and repair Attic Louvers at Building 18
- o Roof
  - o Demo Existing Roof
  - o 30 Year Dimensional Asphalt Shingles
  - o New 15# roof Felt
  - o New Sheet metal flashing, trim, 4" aluminum K-style gutters and 3"x4"downspouts

Complaint, Exh. B

# Basis of Estimate

*FREEDOM'S PATH HISTORIC REHABILITATION OF BLDGS. #76 & #18*
*5/23/16*

*Augusta, GA*



CORE
CONSTRUCTION

Relationships. Solutions. Value. ...since 1947.

- o Plywood Roof Deck Repair/Replacement Allowance of $5,000.00 for all buildings total.
  - o New SBS roof at Building 18
  - o Repair/Replace Existing Soffit and Fascia as per the stated allowance
- o Exterior Masonry Repair/Restoration
  - o At Building #18, repair Existing planters, terrace, stone sills , and exterior brick  as necessary
- o Historic Window Restoration
  - o Refurbish wood Windows
  - o Refurbish Steel Windows on building #76
  - o Replace existing Glass with single pane glass

## Finishes

- o Finished Carpentry & Millwork
  - o Wood Base
  - o Wall and Base Cabinets as specified
  - o Bathroom Vanities as Specified
  - o Pantry Cabinets as Specified
  - o Laminate Countertops as specified
- o Doors, Frames, & Hardware
  - o Wood Doors at Hallways
  - o Masonite Doors at interior of Units
  - o Metal doors at exterior openings where indicated at Building #76
  - o Door Hardware as specified
- o Access Doors & Frames
  - o Attic Access Panels
  - o Draft stop access Panels
- o Interior Glass & Glazing
  - o New Type C Interior Windows in Building #76 as indicated
  - o Full Length Mirrors in Fitness Center as indicated
- o Metal Stud & Drywall
  - o Non rated walls and rated wall assemblies as indicated in the contract documents
  - o Draft Stops as indicated in the contract documents
  - o Gypsum ceiling assembly where indicated in the contract documents
  - o 30% Shaft wall repair around elevator shafts
  - o ACT ceilings in Building #7 as indicated in the contract documents
- o Interior Plaster
  - o Skim all interior plaster with Durabond and sand ready to paint
  - o Interior Plaster Repair Allowance of $7,500.00 for all buildings total

Complaint, Exh. B

# Basis of Estimate

*FREEDOM'S PATH HISTORIC REHABILITATION OF BLDGS. #76 & #18*
*5/23/16*

*Augusta, GA*



**CORE**
**CONSTRUCTION**

*Relationships. Solutions. Value. ...Since 1937.*

- o   New Plaster Ceilings in interior hallways only
- o   Tile Package
  - o   Standard floor prep
  - o   Floor and wall tile in bathrooms as specified
- o   Resilient Flooring
  - o   Standard Floor Prep
  - o   VCT where designated
  - o   Carpet where designated
  - o   Rubber base as indicated by the contract documents
  - o   Rubber stair treads as indicated by the contract documents
- o   Terrazzo
  - o   Restore existing terrazzo treads as indicated
  - o   Restore existing Terrazzo flooring as indicated
- o   Paint
  - o   Paint new gyp wall assemblies
  - o   Paint Gyp Ceilings
  - o   Paint wood Base
  - o   Paint exposed structure. All exposed ceilings to receive orange peel texture finish
  - o   Paint all interior plaster walls
  - o   Exterior of buildings to receive an Elastomeric Coating in lieu of plaster restoration per direction by the owner
  - o   Paint windows, doors and frames
- o   Architectural Wood Restoration
  - o   Refurbish Existing doors as directed by the contract documents
  - o   Restore Stairs on building #76 as directed by the contract documents
  - o   Restore Balcony, Balustrade rail, and columns at Building #18


Specialties

- o   Signage
  - o   Interior Room signage
  - o   Exterior Building Signage
- o   Toilet Partitions & Accessories
  - o   Shower rods
  - o   Towel bars
  - o   Tub Surrounds
  - o   Towel rings
  - o   Medicine Cabinets
  - o   Install of items outlined in the contract documents
- o   Fire Extinguishers & Cabinets

Complaint, Exh. B

# Basis of Estimate
*FREEDOM'S PATH HISTORIC REHABILITATION OF BLDGS. #76 & #18*
*5/23/16*

*Augusta, GA*



CORE CONSTRUCTION

*Relationships · Solutions · Value ...Since 1937*

- o   Fire Extinguishers and cabinets in the hallways
- o   3# units in the unit kitchens
- o   Canopies
  - o   Canvas Awning at Building #76
- o   Mailboxes
  - o   Mailbox per the contract documents
- o   Wire Shelving
  - o   12" Deep Shelves and rods where indicated in the contract documents

Equipment
- o   Kitchen Appliances and Laundry Appliances as indicated in contract documents
  - o   Dishwashers
  - o   Stoves
  - o   Exhaust Hood
  - o   ADA Compliant Counter Top Microwave
  - o   Under counter Refrigerator
  - o   Disposal
  - o   Washers
  - o   Dryers
- o   Conveying Equipment
  - o   New Elevator in Building #76
  - o   Refurbish Existing Elevator in Building #18

Mechanical/Electrical/Plumbing/Fire Protection
- o   Fire Protection
  - o   Automatic Fire Suppression System per the contract documents
- o   Mechanical
  - o   1.5 Ton Split Systems Heat Pump
  - o   1.5 Ton and 4 Ton  Split System
  - o   Grills, Registers and Diffusers
  - o   Fire Dampers
  - o   Volume Control Dampers
  - o   Wall and Roof Caps
  - o   Ceiling mounted Exhaust fans
  - o   Galvanized Low Pressure Ductwork
  - o   Insulated Flex Duct
  - o   Refrigeration and Condensate Piping
  - o   Operating and Monitoring Controls
- o   Electrical

Complaint, Exh. B

# Basis of Estimate
*FREEDOM'S PATH HISTORIC REHABILITATION OF BLDGS. #76 & #18*
*5/23/16*

*Augusta, GA*



- o  Switchgear
- o  Fixtures and Distribution
- o  Site Lighting and Bollards
- o  Power Service
- o  Fire Alarm
- o  Data & Communications

Miscellaneous Project Costs

- o  Testing
  - o  Materials and Inspections
- o  BIM
  - o  Clash detection
  - o  Overhead Coordination
  - o  Constructability Reviews
- o  Commissioning
  - o  Commissioning assist for Mechanical, Electrical, Plumbing and Fire Protection
- o  Submittal Exchange/ Bluebeam
  - o  Provide Submittal Exchange services
  - o  Provide Bluebeam integration with construction documents

General Conditions

- o  Field Offices
  - o  Provide field offices with required utilities, meeting space, office supplies and equipment for duration of the project.

- o  Personnel
  - o  Provide required personnel for duration of the project.

Insurance, Bonds, and Builder's Risk

- • Provide required General Liability Insurance.
- • Provide Subcontractor Insurance.
- • Provide Payment and Performance Bond.
- • Provide Builder's Risk Insurance.

Complaint, Exh. B

Complaint, Exh. B

Complaint, Exh. B

Freedom's Path Brunning 003 - Augusta, GA

Freedoms Path Housing OO3 - Augusta, GA

Complaint, Exh. B

Exhibit F

# ▓AIA® Document G702™ – 1992

## Application and Certificate for Payment

| | | |
|---|---|---|
| **TO OWNER:** Freedom's Path Limited Partnership<br>Attn: Donald Paxton, Manager<br>3550 South Tamiami Trail, Suite 301<br>Sarasota, FL 34239 | **PROJECT:** Freedom's Path - Historic Rehabilitation<br>of the Existing Structure:<br>Veterans Administration Campus;<br>Augusta, Georgia 30904 | **APPLICATION NO:** 001<br>**PERIOD TO:**<br>**CONTRACT FOR:** General Construction<br>**CONTRACT DATE:** | **Distribution to:**<br>OWNER:<br>ARCHITECT: |
| **FROM CONTRACTOR:** CORE Construction | **VIA ARCHITECT:** Gruber & Associates, LLC<br>Attn: Morton M. Gruber, AIA, Manager<br>245 Peachtree Center Ave. NE, Suite<br>2445 Atlanta, GA 30303 | **PROJECT NOS:** / / | CONTRACTOR:<br>FIELD:<br>OTHER: |

## CONTRACTOR'S APPLICATION FOR PAYMENT

Application is made for payment, as shown below, in connection with the Contract.
Continuation Sheet, AIA Document G703, is attached.

| | |
|---|---|
| 1. ORIGINAL CONTRACT SUM .................................................. | $ 0.00 |
| 2. NET CHANGE BY CHANGE ORDERS ....................................... | $ 0.00 |
| 3. CONTRACT SUM TO DATE (Line 1 ± 2) ................................... | $ 0.00 |
| 4. TOTAL COMPLETED & STORED TO DATE (Column G on G703) .... | $ 0.00 |

5. RETAINAGE:

| | | |
|---|---|---|
| a. ___ % of Completed Work<br>(Column D + E on G703) | $ 0.00 | |
| b. ___ % of Stored Material<br>(Column F on G703) | | |
| Total Retainage (Lines 5a + 5b or Total in Column I of G703) ... | | $ 0.00 |

| | |
|---|---|
| 6. TOTAL EARNED LESS RETAINAGE ........................................ | $ 0.00 |
| (Line 4 Less Line 5 Total) | |
| 7. LESS PREVIOUS CERTIFICATES FOR PAYMENT ...................... | $ 0.00 |
| (Line 6 from prior Certificate) | |
| 8. CURRENT PAYMENT DUE ................................................... | $ 0.00 |
| 9. BALANCE TO FINISH, INCLUDING RETAINAGE<br>(Line 3 less Line 6) | $ 0.00 |

| CHANGE ORDER SUMMARY | ADDITIONS | DEDUCTIONS |
|---|---|---|
| Total changes approved in previous months by Owner | $ 0.00 | $ 0.00 |
| Total approved this Month | $ 0.00 | $ 0.00 |
| **TOTALS** | $ 0.00 | $ 0.00 |
| NET CHANGES by Change Order | $ 0.00 | |

The undersigned Contractor certifies that to the best of the Contractor's knowledge, information and belief the Work covered by this Application for Payment has been completed in accordance with the Contract Documents, that all amounts have been paid by the Contractor for Work for which previous Certificates for Payment were issued and payments received from the Owner, and that current payment shown herein is now due.

**CONTRACTOR:**

By: _____ Date: _____

State of:
County of:
Subscribed and sworn to before
me this ___ day of ___
Notary Public:
My Commission expires:

## ARCHITECT'S CERTIFICATE FOR PAYMENT

In accordance with the Contract Documents, based on on-site observations and the data comprising this application, the Architect certifies to the Owner that to the best of the Architect's knowledge, information and belief the Work has progressed as indicated, the quality of the Work is in accordance with the Contract Documents, and the Contractor is entitled to payment of the AMOUNT CERTIFIED.

**AMOUNT CERTIFIED** ................................................. $ 0.00
(Attach explanation if amount certified differs from the amount applied. Initial all figures on this Application and on the Continuation Sheet that are changed to conform with the amount certified.)

**ARCHITECT:**

By: _____ Date: _____

This Certificate is not negotiable. The AMOUNT CERTIFIED is payable only to the Contractor named herein. Issuance, payment and acceptance of payment are without prejudice to any rights of the Owner or Contractor under this Contract.

AIA Document G702™ – 1992. Copyright © 1953, 1963, 1965, 1971, 1978, 1983 and 1992 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 10:29:14 on 08/07/2016 under Order No.7898456378_1 which expires on 04/22/2017, and is not for resale.
User Notes: (1716411335)

Complaint, Exh. B

1

# EXHIBIT G

| CORE CONSTRUCTION | Freedoms Path Building 18 | | | |
|---|---|---|---|---|
| **Project Type** | | Transitional Housing | | |
| **Project Duration** | | 16 Months | | |
| **Total GMP** | | $3,684,044 | | |
| | **Qnty** | **Unit** | **Unit Cost** | **Extension** |
| General Conditions | 1 | LS | $281,058.00 | $281,058.00 |
| General Liability | 1 | LS | $30,990.00 | $30,990.00 |
| Builders Risk | 1 | LS | $21,211.00 | $21,211.00 |
| Subcontractor Insurance | 1 | LS | $24,792.00 | $24,792.00 |
| P&P Bond | 1 | LS | $37,167.00 | $37,167.00 |
| Fee | 1 | LS | $171,039.00 | $171,039.00 |
| Permits | 1 | LS | $18,420.00 | $18,420.00 |
| Conditions/Contingencies | | | | $3,914,177.00 |
| | | | | |
| **1st Floor** | | | | |
| D01 - Remove all radiators @ windows | 14 | ea | $175.00 | $2,450.00 |
| D02 - Remove All Cabinets, Countertops, Appliance | 7 | ea | $35.00 | $245.00 |
| D09 - Remove Walls | 160 | ft | $5.00 | $800.00 |
| Note 10 - Retain Door as Shown | 13 | ea | | $0.00 |
| D11 - Remove Existing Door | 8 | ea | $35.00 | $280.00 |
| D16 - Remove All Mech. Equipment on Site | 1 | ea | $73,919.00 | $73,919.00 |
| D12 - Remove Door for New Wall Opening | 3 | ea | $70.00 | $210.00 |
| D13 - Remove Portion of Wall for New Opening | 6 | ft | $1.50 | $9.00 |
| D14 - Remove Double Doors | 1 | ea | $70.00 | $70.00 |
| D17 - Retain Ext. Doors, Repair or Replace as Neces | 4 | ea | | $0.00 |
| D18 - Remove Chase Through Floors for new mech | 1 | ea | $6,500.00 | $6,500.00 |
| | | | | $0.00 |
| **2nd & 3rd Floors (Double Qtys)** | | | | $0.00 |
| D01 - Remove All Existing Radiators @ windows | 2 | ea | $175.00 | $350.00 |
| D02 - Remove All Countertops, Cabinets, Appliances | 8 | ea | $35.00 | $280.00 |
| D09 - Remove Existing Walls | 434 | ft | $1.50 | $651.00 |
| D11 - Remove Door | 25 | ea | $35.00 | $875.00 |
| D13: Remove Portion Existing Wall for New Door | 3 | ft | $175.00 | $525.00 |
| D18 - Remove Chase from Floor | 0 | ea | $6,500.00 | $0.00 |
| D21 - Remove Elevator, Retain Shaft | 1 | ea | $15,000.00 | $15,000.00 |
| | | | | |
| **CONFIRMED ASBESTOS-CONTAINING MATERIAL** | | | | |
| Brown Glue Dots (Scattered Throughout Building) R | 1 | LS | $35,500.00 | $35,500.00 |
| | | | | |
| **LEAD SOIL REMEDIATION (Per Terracon Lead-In-Soil Report)** | | | | |
| Per Terracon report, Paragraph 4.4 | 52 | cy | $60.00 | $3,120.00 |
| | | | | |
| **LEAD-BASED PAINT REMOVAL (2 of 21 Samples were over the concentration limit)** | | | | |
| Encapsulation of All Affected Painted Surfaces | | | | |
| Existing Interior Masonry & Plaster Wall | 11,654 | sf | $1.00 | $11,654.00 |
| Existing Perimeter Wall | 15,312 | sf | $1.00 | $15,312.00 |
| Shaft Wall | 1,192 | sf | $1.00 | $1,192.00 |
| Existing Wall | 8,086 | sf | $1.00 | $8,086.00 |

| | | | | |
|---|---|---|---|---|
| Windows to be Refurbished | 120 | ea | $1.00 | $120.00 |
| Total | | | | $177,148.00 |
| Layout | 1 | EA | $3,500.00 | $3,500.00 |
| **Site Demo** | | | | |
| Remove Storage Building | 1 | ea | $750.00 | $750.00 |
| Demo Existing Sidewalk, Curb & Gutter | 830 | sf | $0.85 | $705.50 |
| Install "Sidewalk Closed Signs" | 5 | ea | $125.00 | $625.00 |
| **Storm Drainage** | | | | |
| New Grate Trap | 2 | ea | $3,000.00 | $6,000.00 |
| 15" RCP Drainage Pipe | 310 | ft | $42.00 | $13,020.00 |
| New Drainage Manhole | 3 | ea | $2,500.00 | $7,500.00 |
| 8" PVC Drainage | 80 | ft | $27.00 | $2,160.00 |
| Tie-In Existing | 2 | ea | $850.00 | $1,700.00 |
| Flared End Section (Pipe End Unit) | 1 | ea | $1,500.00 | $1,500.00 |
| New Rip-Rap Section | 890 | sf | $35.00 | $31,150.00 |
| **Earthwork** | | | | |
| 6" Graded Aggregate Base | 384 | tons | $25.00 | $9,600.74 |
| Compacted Subgrade - Use existing | | | | |
| 14" #57 Limestone Base | 659 | tons | $25.00 | $16,476.62 |
| Compacted Subgrade - Use existing | | | | |
| Under New 6" Concrete Paving | 1,832 | sf | $1.00 | $1,832.00 |
| 8" Graded Aggregate Base | 71 | tons | $25.00 | $1,764.15 |
| Compacted Subgrade - Use existing | | | | |
| Under 8" Dumpster Pad | 150 | sf | $1.00 | $150.00 |
| 6" Graded Aggregate Base | 6 | tons | $25.00 | $144.44 |
| Compacted Subgrade - Use existing | | | | |
| Grading for Sidewalks | 2,546 | sf | $1.00 | $2,546.00 |
| 3" G.A.B. ?? | | | | |
| **Water Distribution** | | | | |
| New 6" PVC FW Line | 105 | ft | $60.00 | $6,300.00 |
| New 3" PVC FW Line | 264 | ft | $50.00 | $13,200.00 |
| New 1.5" Water Service | 370 | ft | $30.00 | $11,100.00 |
| New Water Meter | 1 | ea | $9,750.00 | $9,750.00 |
| 6" Tapping Valve & Sleeve | 1 | ea | $4,500.00 | $4,500.00 |
| Double Check Valve Assembly, Fire Vault | 1 | ea | $9,500.00 | $9,500.00 |
| New Fire Hydrant Assembly | 1 | ea | $3,750.00 | $3,750.00 |
| New Post Indicator Water Valve | 1 | ea | $1,750.00 | $1,750.00 |
| Tie-In Existing F.D.C | 1 | ea | $4,500.00 | $4,500.00 |
| Tie In | 1 | ea | $10,000.00 | $10,000.00 |
| **Sanitary Sewer System** | | | | |
| New SS Line - 6"? | 45 | ft | $60.00 | $2,700.00 |

Complaint, Exh. B

| | Total | | | $178,174.35 |
|---|---|---|---|---|

| | | | | |
|---|---|---|---|---|
| New HC Parking Sign | 2 | ea | $175.00 | $350.00 |
| New Painted Arrows | 4 | ea | $75.00 | $300.00 |
| Painted Crosswalks | 2 | ea | $700.00 | $1,400.00 |
| Allowance | 1 | lsum | $40,000.00 | $40,000.00 |
| No Fencing Shown | | | | |
| N/A | | | | |
| New Pervious Concrete | 7,333 | sf | $22.20 | $162,792.60 |
| Stone under Pervious | 475 | TN | $30.00 | $14,250.00 |
| 24' Curb & Gutter | 1,272 | ft | $24.00 | $30,528.00 |
| Removable Bollards | 2 | ea | $6,500.00 | $13,000.00 |
| New Concrete Sidewalk Pavement | 2,545 | sf | $4.50 | $11,452.50 |
| New Concrete Pavement (per C5.4) | 1,832 | sf | $6.00 | $10,992.00 |
| HC Ramps | 4 | ea | $850.00 | $3,400.00 |
| New Transformer Slab | 67 | sf | $5.00 | $335.00 |
| Truncated Domes | 4 | ea | $200.00 | $800.00 |
| New Dumpster Pad (8") | 150 | sf | $15.00 | $2,250.00 |
| Turndown ~ 1'(w) x 2'(h) | 32 | lf | $24.00 | $768.00 |
| New Heavy Duty Asphalt Paving | 1,108 | sy | $18.00 | $19,944.00 |
| 1-1/2" Type "E" Topping | | | | |
| Tack Coat | | | | |
| 2" Type "B" Binder | | | | |
| Prime Coat | | | | |
| N/A | | | | |
| N/A | | | | |

| | Total | | | |
|---|---|---|---|---|

| | | | | |
|---|---|---|---|---|
| Repair Terrace & Planters as necessary | | | $0.00 | in Masonry |
| A07 - Retain Existing exit area, repair & refurbish st... | 1 | LS | $0.00 | in Masonry |
| Repair low brick/conc wall as necessary | 32 | LF | $0.00 | in Masonry |

Complaint, Exh. B

| Description | Qty | Unit | Unit Price | Total |
|---|---|---|---|---|
| Retain Balconies & rails, repair as necessary | 96 | SF | $50.00 | $4,800.00 |
| Repair/Retain column surround if possible | 1 | EA | $1,500.00 | $1,500.00 |
| Light Pole Bases | 6 | ea | $850.00 | $5,100.00 |
| Slab Patch for Plumbing Work | 784 | sf | $12.00 | $9,408.00 |
| A0.2 - Trash Enclosure | 170 | SF | | |
| 8" CMU | 203 | EA | $1.25 | $253.70 |
| Mortar | 10 | CF | $14.00 | $133.94 |
| Masonry Sand | 0 | CY | $25.00 | $8.88 |
| Truss Reinforcing | 98 | LF | $0.45 | $44.16 |
| Grout Cells | 9 | CF | $5.18 | $44.93 |
| Labor to Install | 203 | EA | $12.00 | $2,435.52 |
| Misc Steel | 1 | LS | $2,750.00 | $2,750.00 |
| H Structural | | | | |
| N/A | | | | |
| Shower Rod | 156 | LF | $2.22 | $346.32 |
| 18" Tower Bar | 228 | LF | $2.22 | $505.05 |
| One Piece Shower Surround | 832 | LF | $2.22 | $1,847.04 |
| Toilet Paper Holder | 148 | LF | $2.22 | $327.45 |
| (U9) Towel Ring | 120 | LF | $2.22 | $266.40 |
| Recessed Medicine Cabinet | 162 | LF | $2.22 | $359.64 |
| Grab Bars | 665 | LF | $2.22 | $1,476.30 |
| Fold Down Seat | 13 | LF | $2.22 | $27.75 |
| Hand Held Shower | 15 | LF | $2.22 | $33.30 |
| © Millwork | 1,600 | LF | $2.22 | $3,552.00 |
| Total | | | | 155,220 |
| N/A | | | | |
| N/A | | | | |
| N/A | | | | $0.00 |

| | | | | |
|---|---|---|---|---|
| Top of fire rated gypsum walls | 900 | lf | $2.15 | $1,935.00 |
| Bottom of fire rated gypsum walls | 900 | lf | $2.15 | $1,935.00 |
| MEP penetrations | 1 | ls | $3,000.00 | $3,000.00 |
| | | | | |
| Clean & repair attic louvers | 7 | ea | $500.00 | $3,500.00 |
| Clean & repair attic louvers | 7 | ea | $500.00 | $3,500.00 |
| | | | | |
| Repair Membrane Roof @ Porch & Above Door | 1 | ls | $10,220.00 | $10,220.00 |
| | | | | $0.00 |
| | | | | |
| Asphalt Shingles | | | | |
| Demo existing shingle | 7,414 | sf | $1.00 | $7,414.00 |
| 30 yr dimensional asphalt shingle roof | 7,414 | sf | $2.50 | $18,535.00 |
| 15# felt underlayment | 8,600 | sf | $0.20 | $1,720.00 |
| Repair fascia as needed (35% of 402 lf) | 140 | lf | $6.00 | $840.00 |
| Repair cement fiber soffit as needed (35% of 1,036 | 364 | sf | $6.00 | $2,184.00 |
| Replace damaged roof deck (35% of 7,414 sf) | 2,594 | sf | $1.75 | $4,539.50 |
| | | | | $22,413.00 |
| | | | | |
| Sheet Metal Flashing and Trim | | | | |
| 4" aluminum k-style gutters | 402 | lf | $12.00 | $4,824.00 |
| 3"x4" aluminum downspouts | 288 | lf | $15.00 | $4,320.00 |
| | | | | |
| | | | | |
| | | | | |
| A (A0.1) - Repair Existing Planters at necessary | 1 | LS | $5,000.00 | $5,000.00 |
| A4.1.1 (A0.1) - Clean & repair existing brick & concrete | 2,623 | SF | $2.50 | $6,557.50 |
| A1.1 - 1st flr plan | | | | |
| A0.1 - Retain existing exit area, repair & refurbish stn | 1 | LS | $2,500.00 | $2,500.00 |
| A3.1/A3.2 - Elevs | | | | |
| Clean Cast stone sills | 295 | LF | $10.00 | $2,950.00 |
| Clean Cast stone panels | 266 | SF | $15.00 | $3,990.00 |
| Clean Concrete Beam w/ stone finish below sills | 162 | SF | $15.00 | $2,430.00 |
| Lift | 5 | day | $600.00 | $3,000.00 |
| Clean existing brick "as necessary" | 11,969 | SF | $2.00 | $23,938.00 |
| A3.2 - Elevs | | | | |
| Repair low brick/conc wall as necessary | 32 | LF | $60.00 | $1,920.00 |
| | | | | |
| A3.1 & A3.2 - Elevs | | | | |
| Restore Windows | 2,168 | SF | $22.50 | $48,780.00 |
| | | | | |
| Total | | | | $191,945 |
| | | | | |
| | | | | |
| Finish Carpentry | | | | |

| | | | | |
|---|---|---|---|---|
| 6" wood base | 6,200 | lf | $4.00 | $24,800.00 |
| Repair existing wood columns (2'6 dia. X 18'6) | 10 | ea | $2,000.00 | $20,000.00 |
| Repair existing wood columns (2'6 dia. X 3'4) | 10 | ea | $500.00 | $5,000.00 |
| | | | | |
| Residential Casework | | | | |
| Unit 101 | | | $0.00 | $0.00 |
| Wall cabinets | 20 | lf | $100.00 | $1,950.00 |
| Base cabinets | 11 | lf | $125.00 | $1,375.00 |
| Laminate countertops | 60 | sf | $20.00 | $1,196.00 |
| Pantry | 2 | lf | $250.00 | $375.00 |
| Bathroom vanities | 0 | lf | $125.00 | $0.00 |
| | | | | |
| Unit 102 | | | | |
| Wall cabinets | 17 | lf | $100.00 | $1,700.00 |
| Base cabinets | 10 | lf | $125.00 | $1,218.75 |
| Laminate countertops | 30 | sf | $20.00 | $596.00 |
| Pantry | 2 | lf | $250.00 | $375.00 |
| Bathroom vanities | 4 | lf | $125.00 | $500.00 |
| | | | | |
| Unit 103 | | | | |
| Wall cabinets | 14 | lf | $100.00 | $1,400.00 |
| Base cabinets | 9 | lf | $125.00 | $1,093.75 |
| Laminate countertops | 65 | sf | $20.00 | $1,296.00 |
| Pantry | 2 | lf | $250.00 | $375.00 |
| Bathroom vanities | 4 | lf | $125.00 | $500.00 |
| | | | | |
| Unit 104 | | | | |
| Wall cabinets | 21 | lf | $100.00 | $2,075.00 |
| Base cabinets | 10 | lf | $125.00 | $1,187.50 |
| Laminate countertops | 55 | sf | $20.00 | $1,100.00 |
| Pantry | 2 | lf | $250.00 | $375.00 |
| Bathroom vanities | 4 | lf | $125.00 | $500.00 |
| | | | | |
| Units 201, 301, & 401 | | | | |
| Wall cabinets | 56 | lf | $100.00 | $5,625.00 |
| Base cabinets | 35 | lf | $125.00 | $4,312.50 |
| Laminate countertops | 101 | sf | $20.00 | $2,025.00 |
| Pantry | 5 | lf | $250.00 | $1,125.00 |
| Bathroom vanities | 3 | lf | $125.00 | $312.50 |
| | | | | |
| Units 202, 302, & 402 | | | | |
| Wall cabinets | 37 | lf | $100.00 | $3,675.00 |
| Base cabinets | 27 | lf | $125.00 | $3,375.00 |
| Laminate countertops | 83 | sf | $20.00 | $1,650.00 |
| Pantry | 5 | lf | $250.00 | $1,125.00 |
| Bathroom vanities | 12 | lf | $125.00 | $1,500.00 |
| | | | | |
| Units 203 & 303 | | | | |
| Wall cabinets | 25 | lf | $100.00 | $2,450.00 |
| Base cabinets | 14 | lf | $125.00 | $1,687.50 |
| Laminate countertops | 112 | sf | $20.00 | $2,233.00 |
| Pantry | 2 | lf | $250.00 | $375.00 |
| Bathroom vanities | 0 | lf | $125.00 | $0.00 |
| | | | | |
| Units 403 | | | | |
| Wall cabinets | 12 | lf | $100.00 | $1,225.00 |
| Base cabinets | 10 | lf | $125.00 | $1,187.50 |

Complaint, Exh. B

| | | | | |
|---|---|---|---|---|
| Laminate countertops | 50 | sf | $20.00 | $991.60 |
| Pantry | 2 | lf | $250.00 | $375.00 |
| Bathroom vanities | 0 | lf | $125.00 | $0.00 |
| | | | | |
| **Units 204, 304, & 404** | | | | |
| Wall cabinets | 23 | lf | $100.00 | $2,325.00 |
| Base cabinets | 26 | lf | $125.00 | $3,281.25 |
| Laminate countertops | 81 | sf | $20.00 | $1,612.60 |
| Pantry | 5 | lf | $250.00 | $1,125.00 |
| Bathroom vanities | 8 | lf | $125.00 | $937.50 |
| | | | | |
| **Units 205, 305, & 405** | | | | |
| Wall cabinets | 33 | lf | $100.00 | |
| Base cabinets | 32 | lf | $125.00 | $4,031.25 |
| Laminate countertops | 103 | sf | $20.00 | $2,062.60 |
| Pantry | 5 | lf | $250.00 | $1,125.00 |
| Bathroom vanities | 12 | lf | $125.00 | $1,500.00 |
| | | | | |
| **Units 206, 306, & 406** | | | | |
| Wall cabinets | 38 | lf | $100.00 | $3,750.00 |
| Base cabinets | 28 | lf | $125.00 | $3,468.75 |
| Laminate countertops | 101 | sf | $20.00 | $2,025.00 |
| Pantry | 5 | lf | $250.00 | $1,125.00 |
| Bathroom vanities | 11 | lf | $125.00 | $1,406.25 |
| | | | | |
| **Units 207, 307, & 407** | | | | |
| Wall cabinets | 50 | lf | $100.00 | $5,025.00 |
| Base cabinets | 29 | lf | $125.00 | $3,562.50 |
| Laminate countertops | 86 | sf | $20.00 | $1,725.00 |
| Pantry | 5 | lf | $250.00 | $1,125.00 |
| Bathroom vanities | 10 | lf | $125.00 | $1,218.75 |
| | | | | |
| **Units 208, 308, & 408** | | | | |
| Wall cabinets | 32 | lf | $100.00 | $3,225.00 |
| Base cabinets | 25 | lf | $125.00 | $3,093.75 |
| Laminate countertops | 122 | sf | $20.00 | $2,437.60 |
| Pantry | 5 | lf | $250.00 | $1,125.00 |
| Bathroom vanities | 10 | lf | $125.00 | $1,218.75 |
| | | | | |
| **Common Area- Computer Room** | | | | |
| Wall cabinets | 6 | lf | $100.00 | $600.00 |
| Base cabinets | 4 | lf | $125.00 | $437.50 |
| Laminate countertops | 39 | sf | $20.00 | $780.00 |
| | | | | |
| **Leafs** | | | | |
| Wood door leafs | 14 | EA | $275.00 | $3,850.00 |
| Masonite door leafs | 90 | EA | $200.00 | $18,000.00 |
| Install | 104 | EA | $125.00 | $13,000.00 |
| | | | | |
| Frames (WD) | 104 | EA | $175.00 | $18,200.00 |
| Install | 104 | EA | $110.00 | $11,440.00 |
| | | | | |
| Hardware Sets | 104 | EA | $450.00 | $46,800.00 |
| Install | 104 | EA | $150.00 | $15,600.00 |

| | | | | |
|---|---|---|---|---|
| AP-1 - 22" X 36" ATTIC ACCESS PANELS | 2 | EA | $450.00 | $900.00 |
| AP-2 - 36" X 36" DRAFTSTOPS ACCESS PANELS | 5 | EA | $500.00 | $2,500.00 |

| | | | | |
|---|---|---|---|---|
| N/A | | | | |

| | | | | |
|---|---|---|---|---|
| Gypsum Board Assemblies | | | | |
| NON RATED WALL | 12,022 | SF | $3.75 | $45,082.50 |
| 3-5/8" STUD | | | | |
| 5/8" GYPSUM | | | | |
| 1-HOUR RATED WALL WITH INSULATION | 4,531 | SF | $4.25 | $19,256.75 |
| 3-5/8" STUD 25GA | | | | |
| 5/8" GYPSUM | | | | |
| 1/2" RESILIENT CHANNEL ONE SIDE | | | | |
| R11 SAB | | | | |
| 1-HOUR RATED WALL WITHOUT INSULATION | 2,334 | SF | $4.25 | $9,919.50 |
| 3-5/8" STUD 25GA | | | | |
| 5/8" GYPSUM | | | | |
| 1/2" RESILIENT CHANNEL ONE SIDE | | | | |
| 1-HOUR RATED CEILING ON 4TH FLOOR | 4,982 | SF | $3.75 | $18,682.50 |
| 2 LAYER OF 5/8" GYPSUM | | | | |
| GYPSUM CEILING | 14,963 | SF | $4.00 | $59,852.00 |
| REPAIR SHAFTWALL AROUND ELEVATOR 30% REP | 358 | SF | $4.75 | $1,698.60 |
| DRAFTSTOP | 3,056 | SF | $3.50 | $10,696.00 |
| Acoustical Ceilings (NOT USED) | | | $0.00 | $0.00 |

| | | | | |
|---|---|---|---|---|
| Walls Determined to be Gyp | | | | $0.00 |
| | | | | $0.00 |

| | | | | |
|---|---|---|---|---|
| Common Work Results for Flooring Preparation | 1,703 | SF | $2.50 | $4,257.50 |
| Tiling | | | | |
| CERAMIC TILE | 1,703 | SF | $12.00 | $20,436.00 |

| | | | | |
|---|---|---|---|---|
| Common Work Results for Flooring Preparation | 16,532 | SF | $2.50 | $41,330.00 |
| Resilient Flooring | | | | |
| VCT | 16,532 | SF | $2.50 | $41,330.00 |
| RESILIENT BASE | 636 | LF | $2.50 | $1,590.00 |
| RUBBER STAIR TREADS | 84 | EA | $65.00 | $5,460.00 |

| | | | | |
|---|---|---|---|---|
| N/A | | | | |

| | | | | |
|---|---|---|---|---|
| FINISH AND PAINT GYPSUM WALL | 37,680 | SF | $0.85 | $32,028.00 |
| SEALED CONCRETE | 638 | SF | $1.00 | $638.00 |
| INTERIOR WOOD DOORS & FRAMES | 140 | EA | $100.00 | $14,000.00 |
| HM DOORS | 4 | EA | $100.00 | $400.00 |
| 6" WOOD BASE | 6,116 | LF | $1.00 | $6,116.00 |
| FINISH AND PAINT GYPSUM BOARD CEILING | 19,944 | SF | $1.00 | $19,944.00 |

Complaint, Exh. B

| | | | | $0.00 |
|---|---|---|---|---|
| | | | | |
| A12 - Exist & Proposed - 2nd & 3rd Flr | | | | |
| Repair balcony Handrails as necessary | 93 | LF | $0.00 | $0.00 |
| | | | | |
| A13 - 4th floor Plan | | | | |
| Repair Ballustrade rail as necessary | 56 | LF | $35.00 | $1,960.00 |
| | | | | |
| A3.1 - Exterior Elevations | | | | |
| Repair columns as necessary - 1' dia x 18' tall | 10 | EA | $150.00 | $1,500.00 |
| Provide "Opaque screen" to hide condensors behin | 164 | SF | | $0.00 |
| Repair Metal handrails as necessary | 93 | LF | | $0.00 |
| Repair louvers as necessary | 149 | SF | $100.00 | $14,900.00 |
| A4.1-A4.3.2 - Floor Plans | | | | |
| A18 - Repair stairs as necessary | 1,152 | SF | $25.00 | $28,800.00 |
| A18 - Repair handrails/guardrails | 204 | LF | $15.00 | $3,060.00 |
| | | | | |
| A4.12 - 1st flr plan - part #2 | | | | |
| A08 - provide new floor in mechanical chase | 17 | SF | $45.00 | $765.00 |
| | | | | |
| A6.1 - Refurb  Existing Doors | | | | |
| Leafs | | | | |
| Refurb Wood door leafs | 22 | EA | $175.00 | $3,850.00 |
| Refurb "Verify type" door leafs | 14 | EA | $200.00 | $2,800.00 |
| Refurb HM door leafs | 4 | EA | $250.00 | $1,000.00 |
| | | | | |
| Refurb Frames | 36 | EA | $125.00 | $4,500.00 |
| | | | | |
| Replace Hardware Sets | 40 | EA | $450.00 | $18,000.00 |
| Install | 40 | EA | $150.00 | $6,000.00 |
| | | | | |
| N/A | | | | $0.00 |
| | | | | |
| Total | | | | $???.??? |
| | | | | |
| Inside Signage | 78 | EA | $40.00 | $3,120.00 |
| Tax(8%) | 1 | lsum | $278.00 | $278.00 |
| Frieght | 78 | EA | $3.00 | $234.00 |
| Install | 78 | EA | $75.00 | $5,850.00 |
| | | | | |
| Shower Rod | 52 | EA | $0.00 | |
| 18" Tower Bar | 91 | EA | $0.00 | |
| One Piece Shower Surround | 52 | EA | $0.00 | |
| Toilet Paper Holder | 59 | EA | $0.00 | |
| (US) Towel Ring | 48 | EA | $0.00 | |
| Recessed Medicine Cabinet | 54 | EA | $0.00 | |
| Grab Bars (2) | 95 | EA | $0.00 | |
| Fold Down Seat | 5 | EA | $0.00 | |
| Hand Held Shower | 6 | EA | $0.00 | |
| All Accessories | 462 | EA | $80.00 | $36,960.00 |

| | | | | |
|---|---|---|---|---|
| Tax(8%) | 1 | lsum | $900.00 | $900.00 |
| Install | 1 | EA | $9,208.00 | $9,208.00 |
| | | | | |
| FE Cabinets | 4 | EA | $33.00 | $132.00 |
| FE in Units | 28 | EA | $25.00 | $700.00 |
| Tax(8%) | 1 | lsum | $67.00 | $67.00 |
| Frieght | 4 | EA | $5.00 | $20.00 |
| Install | 32 | EA | $100.00 | $3,200.00 |
| | | | | |
| N/A | | | | |
| | | | | |
| Mailbox | 1 | EA | $2,000.00 | $2,000.00 |
| Tax(8%) | 1 | lsum | $480.00 | $480.00 |
| Frieght | 3 | EA | $100.00 | $300.00 |
| Install | 3 | EA | $500.00 | $1,500.00 |
| | | | | |
| 2'-0" Deep Min & Contain One Rod and One Shelf | 19 | EA | $75.00 | $1,425.00 |
| New Lined Closet To Contain 5 Shelves (AOS) | 14 | EA | $75.00 | $1,050.00 |
| Tax(8%) | 1 | lsum | $396.00 | $396.00 |
| Frieght | 33 | EA | $10.00 | $330.00 |
| Install | 33 | EA | $75.00 | $2,475.00 |
| | | | | |
| | | | | $70,625 |
| | | | | |
| KITCHEN APPLIANCES | | | | |
| Dishwasher (To Fit Under 36" (H) Counter) | 24 | EA | $425.00 | $10,200.00 |
| Dishwasher (To Fit Under 34" (H) Counter) | 4 | EA | $425.00 | $1,700.00 |
| Stove | 28 | EA | $600.00 | $16,800.00 |
| Exhaust Hood | 4 | EA | $350.00 | $1,400.00 |
| Microwave and Hood Combo | 24 | EA | $450.00 | $10,800.00 |
| ADA Compliant Counter Top Microwave | 5 | EA | $250.00 | $1,250.00 |
| Standard Top Mount Refrigerator | 24 | EA | $400.00 | $9,600.00 |
| Accessible Side By Side Refrigerator | 4 | EA | $1,000.00 | $4,000.00 |
| Disposal | 28 | EA | $75.00 | $2,100.00 |
| | | | | |
| LAUNDRY APPLIANCES | | | | |
| Washer | 2 | EA | $850.00 | $1,700.00 |
| Dryer | 2 | EA | $850.00 | $1,700.00 |
| | | | | |
| Tax(8%) | 1 | lsum | $5,864.00 | $5,864.00 |
| Frieght | 149 | EA | $15.00 | $2,235.00 |
| Install | 149 | EA | $75.00 | $11,175.00 |
| | | | | |
| OFOI | | | | |

| | | | | |
|---|---|---|---|---|
| N/A | | | | |
| New Elevator Verify Condition of Surrounding Walls | 1 | EA | $150,000.00 | $150,000.00 |
| N/A | | | | $0.00 |
| Total | | | | $280,534 |
| Automatic Sprinkler System | 26,752 | sf | $1.36 | $36,382.72 |
| Plumbing General | 26,752 | sf | $9.71 | $259,761.92 |
| Mechanical General | 26,752 | sf | $15.25 | $407,968.00 |
| Electrical General | 26,752 | SF | $12.70 | $339,750.40 |
| Data / Comm @ Building 18 | 26,752 | SF | $1.50 | $40,128.00 |
| Fire Alarm | 26,752 | SF | $1.00 | $26,752.00 |
| Total | | | | $1,110,743 |
| Testing Allowance | 1 | lsum | $20,000.00 | $20,000.00 |
| BIM Allowance | 1 | lsum | $16,666.67 | $16,666.67 |
| Commissioning Allowance | 1 | lsum | $10,000.00 | $10,000.00 |
| Bluebeam/Submittal Exchange | 1 | lsum | $6,666.67 | $6,666.67 |
| Final Clean | 1 | lsum | $9,363.00 | $9,363.00 |
| Total | | | | $62,696 |

## EXHIBIT G

| CORE CONSTRUCTION | Freedoms Path Building 76 | | |
|---|---|---|---|
| **Project Type** | | Transitional Housing | |
| **Project Duration** | | 16 Months | |
| **Total GMP** | | $8,090,558 | |
| | **Quantity** | **Unit** | **Unit Price** | **Extension** |

| Description | Quantity | Unit | Unit Price | Extension |
|---|---|---|---|---|
| General Conditions | 1 | LS | $392,010.00 | $392,010.00 |
| General Liability | 1 | LS | $68,904.00 | $68,904.00 |
| Builders Risk | 1 | LS | $47,367.00 | $47,367.00 |
| Subcontractor Insurance | 1 | LS | $40,453.00 | $40,453.00 |
| P&P Bond | 1 | LS | $79,462.00 | $79,462.00 |
| Fee | 1 | LS | $526,958.00 | $526,958.00 |
| Permits | 1 | LS | $45,000.00 | $45,000.00 |
| **General Conditions, Contingency, & Fees** | | | | **$1,200,154.00** |

| | Quantity | Unit | Unit Price | Extension |
|---|---|---|---|---|
| **Ground Floor** | | | | $0.00 |
| D09 - Remove Walls | 390 | ft | $5.00 | $1,950.00 |
| D10 - Retain Existing Door for Repair | 11 | ea | $0.00 | $0.00 |
| D11 - Remove Existing Door, Frame & Hardware | 8 | ea | $70.00 | $560.00 |
| D13 - Remove Existing Wall & Provide Opening | 21 | ea | $70.00 | $1,470.00 |
| D15 - Remove Existing Ramp | 1 | ea | $13,125.00 | $13,125.00 |
| D16 - Remove All Mech. Equipment on Site | 1 | ea | $72,207.00 | $72,207.00 |
| D18 - Remove Existing Window | 2 | ea | $175.00 | $350.00 |
| D19 - Remove Existing Door for New Window Ope | 6 | ea | $70.00 | $420.00 |
| D23 - Remove Window for New | 2 | ea | $175.00 | $350.00 |
| D24 - Remove Exist Door | 4 | ea | $35.00 | $140.00 |
| D26 - Remove Elevator & All Associated Equipmen | 1 | ea | $25,000.00 | $25,000.00 |
| | | | | $0.00 |
| **1st Floor** | | | | $0.00 |
| D09 - Remove Existing Walls | 439 | ft | $5.00 | $2,195.00 |
| D10 - Retain Existing Door; Repair Door & Frame a | 12 | ea | $0.00 | $0.00 |
| D11 - Remove Door, Frame, Hardware | 29 | ea | $70.00 | $2,030.00 |
| D13 - Remove Existing Wall for New Opening | 16 | ft | $5.00 | $80.00 |
| D17 - Remove New Wall As Needed for Window O | 3 | ft | $75.00 | $225.00 |
| D22 - Remove Window Screen & Associated Hardw | 95 | ft | $75.00 | $7,125.00 |
| D24 - Remove Existing Door | 1 | ea | $35.00 | $35.00 |
| D25 - Remove Concrete Slab | 200 | sf | $10.00 | $2,000.00 |
| | | | | $0.00 |
| **2nd Floor** | | | | $0.00 |
| D09 - Remove Existing Walls | 375 | ft | $5.00 | $1,875.00 |
| D10 - Retain Door; Repair & Restore as Nec. | 8 | ea | $0.00 | $0.00 |
| D11 - Remove Door, Frame, Hardware | 26 | ea | $70.00 | $1,820.00 |
| D13 - Remove Wall for New Door Opening | 10 | ft | $5.00 | $50.00 |
| D22 - Remove Window Screen & Hardware | 93 | ft | $75.00 | $6,975.00 |
| D25 - Remove Concrete Slab for New Stairs | 197 | sf | $10.00 | $1,970.00 |

| CONFIRMED ASBESTOS-CONTAINING MATERIAL | | | | |
|---|---|---|---|---|
| 12"x12" Floor Tile, Brown w/dark brown streaks | 53,300 | sf | $1.45 | $77,285.00 |
| Gasket & Adhesive Fittings | 20 | ea | $50.00 | $1,000.00 |
| Sink, undercoat (in Room 3) | 1 | ea | $250.00 | $250.00 |

Complaint, Exh. B

| | | | | |
|---|---|---|---|---|
| Pipe Valve Insulation & Mastic | 1,000 | ft | $5.00 | $5,000.00 |
| Window Glazing (Exterior); Window Frame Caulk | 343 | ea | $75.00 | $25,725.00 |
| Piping (Thermal Insulation) Friable | 1,000 | ft | $5.00 | $5,000.00 |
| Cement Panel (20 sf / Ea Wall Mounted Radiators) | 100 | sf | $3.00 | $300.00 |
| | | | | |
| **LEAD SOIL REMEDIATION (Per Terracon Lead-in-Soil Report)** | | | | |
| Per Terracon report, Paragraph 4.4 | 235 | cy | $60.00 | $14,100.00 |
| | | | | |
| **LEAD-BASED PAINT REMOVAL (14 of 15 Paint Chip Samples Contained Lead** | | | | |
| Encapsulation of All Affected Painted Surfaces | 11,098 | | $1.00 | $0.00 |
| Existing Interior Masonry & Plaster Wall | 11,098 | sf | $1.00 | $11,098.00 |
| Existing Interior Perimeter Wall | 39,017 | sf | $1.00 | $39,017.00 |
| Existing Shaftwall | 1,342 | sf | $1.00 | $1,342.00 |
| Windows to be Refurbished | 343 | ea | $350.00 | $120,050.00 |

| | | | | |
|---|---|---|---|---|
| Total | | | | 44,100.00 |

| | | | | |
|---|---|---|---|---|
| Layout | 1 | EA | $3,500.00 | $3,500.00 |

| | | | | |
|---|---|---|---|---|
| **Site Demo** | | | | |
| Demo Existing Asphalt | 18,911 | sf | $0.65 | $12,292.15 |
| Demo Ex. Sidewalk | 4,410 | sf | $0.85 | $3,748.50 |
| Demo Sidewalk Ramp & Stairs | 1,430 | sf | $0.85 | $1,215.50 |
| Remove Curb & Gutter | 193 | ft | $2.00 | $386.00 |
| Demo Existing Loading Dock & Ramp | 1 | ea | $2,500.00 | $2,500.00 |
| Demo Existing Inlet | 1 | ea | $850.00 | $850.00 |
| Sawcut Asphalt | 131 | ft | $2.50 | $327.50 |
| Remove Underground Fuel Tank | 1 | ea | $10,000.00 | $10,000.00 |
| Remove Generator | 1 | ea | $500.00 | $500.00 |
| Remove Transformer | 1 | ea | $500.00 | $500.00 |
| | | | | |
| **Storm Drainage** | | | | |
| 18" RCP Drainage Pipe | 118 | ft | $45.00 | $5,310.00 |
| New Drop Inlet | 3 | ea | $2,500.00 | $7,500.00 |
| New 18" Pipe Upgrades | 1 | ls | $21,000.00 | $21,000.00 |
| **Earthwork** | | | | |
| Under New Asphalt Paving | 36,505 | sf | $0.50 | $18,252.50 |
| 8" Graded Aggregate Base | 1,874 | tons | $20.00 | $37,480.00 |
| Compacted Subgrade - Use existing | | | | $0.00 |
| | | | | $0.00 |
| Under New Concrete Trash Enclosure | 220 | sf | $1.00 | $220.00 |
| 4" Gravel (Include Under Apron (2' wide) | 6 | tons | $25.00 | $150.00 |
| | | | | $0.00 |
| Grading for Sidewalks | 8,870 | sf | $1.00 | $8,870.00 |

| | | | | |
|---|---|---|---|---|
| **Water Distribution** | | | | |
| New 4" Service Water Line | 175 | ft | $80.00 | $14,000.00 |
| 8" DIP Fire Line | 140 | ft | $82.00 | $11,480.00 |
| Water Tie-In to Existing | 2 | ea | $8,000.00 | $16,000.00 |
| Stub, Cap Existing Water Line to VA Loop | 2 | ea | $500.00 | $1,000.00 |
| | | | | |
| **Sanitary Sewer System** | | | | |
| New 6" DIP Sewer Line | 135 | ft | $55.00 | $7,425.00 |

Complaint, Exh. B

| | | | | |
|---|---|---|---|---|
| New Sewer CO | 1 | ea | $850.00 | $850.00 |
| Total | | | | $185,357.15 |
| New HC Signs | 5 | ea | $175.00 | $875.00 |
| Site Signage | 6 | ea | $175.00 | $1,050.00 |
| New Crosswalk Striping | 830 | sf | $0.15 | $124.50 |
| New HC Painted Symbols | 5 | ea | $268.00 | $1,340.00 |
| Allowance | 1 | lsum | $80,000.00 | $80,000.00 |
| Aluminum Fence | 640 | LF | $41.55 | $26,592.00 |
| Wood Fence | 487 | LF | $20.00 | $9,740.00 |
| N/A | | | | |
| HC Ramps | 6 | ea | $850.00 | $5,100.00 |
| New Concrete Sidewalk | 7,220 | sf | $4.25 | $30,685.00 |
| New Curb & Gutter (7"x12") | 1,990 | ft | $14.00 | $27,860.00 |
| New Heavy Duty Asphalt Paving | 2,575 | sy | $19.69 | $50,701.75 |
| 1-1/2" Type "E" Topping | | | | |
| Tack Coat | | | | |
| 2" Type "B" Binder | | | | |
| Prime Coat | | | | |
| Picnic Table Area | | | | |
| Square Table w/ 4 Connected Benches | 1 | ea | $2,000.00 | $2,000.00 |
| Square Table w/ 2 Connected Benches (ADA) | 1 | ea | $1,600.00 | $1,600.00 |
| Pavilion Area | | | | |
| Square Table w/ 4 Connected Benches | 1 | ea | $2,000.00 | $2,000.00 |
| Square Table w/ 2 Connected Benches (ADA) | 1 | ea | $1,600.00 | $1,600.00 |
| Total | | | | $241,158.25 |
| 4 EA - 16'x4'x1' - spread footings | 10 | CY | $625.00 | $6,518.52 |
| Set Anchor Bolts | 8 | EA | $425.00 | $3,400.00 |
| 6" Slab on grade above spread footings | 265 | SF | $15.00 | $3,975.00 |
| Dowel / Epoxy into surrounding slab | 162 | LF | $9.00 | $1,458.00 |
| 4" Slab on grade at Pavilion | 347 | SF | $15.00 | $5,205.00 |
| 4" Slab on grade at Pavilion | 347 | SF | $15.00 | $5,205.00 |

Complaint, Exh. B

| | | | | |
|---|---|---|---|---|
| A07 - Repair Exterior Stairs | 160 | SF | $71.00 | $11,360.00 |
| A08 - Restore Entrance Stairs | 196 | SF | $71.00 | $13,916.00 |
| | | | | |
| Light Pole Bases | 11 | ea | $750.00 | $8,250.00 |
| | | | | |
| Plumbing Patch Back | 1 | ls | $16,608.00 | $16,608.00 |
| Gypcrete Topping | 1 | ls | $4,500.00 | $4,500.00 |
| | | | | |
| A0.3 - Trash Enclosure | 181 | SF | | |
| 8" CMU | 216 | EA | $1.25 | $270.61 |
| Mortar | 10 | CF | $14.00 | $142.87 |
| Masonry Sand | 0 | CY | $25.00 | $9.47 |
| Truss Reinforcing | 105 | LF | $0.45 | $47.10 |
| Grout Cells | 9 | CF | $5.18 | $47.93 |
| Labor to Install | 216 | EA | $12.00 | $2,597.89 |
| | | | | |
| A7.1 - Recreate Historic Stairs | 210 | SF | | |
| 8" CMU | 251 | EA | $1.25 | $313.21 |
| Mortar | 12 | CF | $14.00 | $165.35 |
| Masonry Sand | 0 | CY | $25.00 | $10.96 |
| Truss Reinforcing | 121 | LF | $0.45 | $54.52 |
| Grout Cells | 11 | CF | $5.18 | $55.47 |
| Labor to Install | 251 | EA | $15.00 | $3,758.52 |
| | | | | |
| Stair Side Walls | 96 | SF | | |
| 8" CMU | 115 | EA | $1.25 | $143.18 |
| Mortar | 5 | CF | $14.00 | $75.59 |
| Masonry Sand | 0 | CY | $25.00 | $5.01 |
| Truss Reinforcing | 55 | LF | $0.45 | $24.92 |
| Grout Cells | 5 | CF | $5.18 | $25.36 |
| Labor to Install | 115 | EA | $12.00 | $1,374.55 |
| | | | | |
| Rebar Material | 0 | TN | $950.00 | |
| | | | | |
| 6/A7.1 - Granite @ Historic Stairs | | | | |
| '1.33"x5" - granite cap on side walls | 54 | LF | $75.00 | $4,050.00 |
| Install | 54 | LF | $25.00 | $1,350.00 |
| granite Steps & landing - 5" thick | 108 | SF | $60.00 | $6,480.00 |
| Install | 108 | SF | $25.00 | $2,700.00 |
| | | | | |
| Structural Steel & Misc Steel | 1 | LS | $81,512.00 | $81,512.00 |
| Repair Metal handrails as necessary. | | | | |
| Stair Stringers | | | | |
| Landings | | | | |
| Beams | | | | |
| Columns | | | | |
| Base Plates | | | | |
| Anchor Bolts | | | | |
| Misc Steel | | | | |
| Install / Erect | | | | |

Complaint, Exh. B

In Steel

| | | | | |
|---|---|---|---|---|
| **A0.2 - Pavilion Structure** | | | | |
| 20'x5.67' - 9' EA – Trusses at Pavilion | 350 | SF | $8.00 | $2,800.00 |
| Misc clips | 350 | SF | $0.75 | $262.50 |
| Install | 350 | SF | $2.00 | $700.00 |
| Wood Truss: Installation | 1 | | $7,500.00 | $7,500.00 |
| **@ Toilet Accessories** | | | | |
| Shower Rod | 93 | LF | $2.22 | $206.46 |
| 24" Tower Bar | 45 | LF | $2.22 | $99.90 |
| One Piece Shower Surround | 448 | LF | $2.22 | $994.56 |
| Toilet Paper Holder | 60 | LF | $2.22 | $133.20 |
| (U9) Towel Ring | 70 | LF | $2.22 | $155.40 |
| Recessed Medicine Cabinet | 75 | LF | $2.22 | $166.50 |
| Grab Bars | 364 | LF | $2.22 | $808.08 |
| Fold Down Seat | 8 | LF | $2.22 | $16.65 |
| Hand Held Shower | 10 | LF | $2.22 | $22.20 |
| **@ Millwork** | 3,000 | LF | $2.22 | $6,660.00 |
| 3.5"x12" - Wolmanized Parallam Beam | 67 | LF | $15.00 | $1,005.00 |
| Install | 67 | LF | $6.00 | $402.00 |
| 5/4x6 Fascia @ pavilion | 73 | LF | $6.00 | $438.00 |
| Install | 73 | LF | $3.00 | $219.00 |
| 4x6 kneed brace | 23 | LF | $8.00 | $184.00 |
| Install | 23 | LF | $4.00 | $92.00 |
| Simpson connectors | 1 | LS | $750.00 | $750.00 |
| Install | 1 | LS | $200.00 | $200.00 |
| T1-11 paneling at ceiling | 364 | SF | $3.50 | $1,273.15 |
| Install | 364 | SF | $1.50 | $545.64 |
| 6x6 wood post | 33 | LF | $6.00 | $198.00 |
| Install | 33 | LF | $2.50 | $82.50 |
| 2" dia x 2' – steel pipe anchor | 4 | EA | $35.00 | $140.00 |
| Install | 4 | EA | $25.00 | $100.00 |
| | | | | $211,765 |
| N/A | | | | |
| | 1 | ls | $148,550.00 | $148,550.00 |
| Existing stucco- repair allowance | 1 | ls | $7,500.00 | $7,500.00 |

Complaint, Exh. B

| Description | Qty | Unit | Unit Price | Total |
|---|---|---|---|---|
| Top of fire rated gypsum walls | 1,912 | lf | $2.15 | $4,110.80 |
| Bottom of fire rated gypsum walls | 1,912 | lf | $2.15 | $4,110.80 |
| MEP penetrations | 1 | ls | $2,500.00 | $2,500.00 |
| | | | | |
| N/A | | | | |
| | | | | |
| **Asphalt Shingles** | | | | |
| Demo existing shingle | 19,532 | sf | $0.15 | $2,929.80 |
| 30 yr. dimensional asphalt shingle roof | 19,210 | sf | $2.50 | $48,025.00 |
| 15# felt underlayment | 22,100 | sf | $0.20 | $4,420.00 |
| Repair fascia as needed (35% of 1,120 lf) | 392 | lf | $6.00 | $2,352.00 |
| Repair cement fiber soffit as needed (35% of 1,700 | 596 | sf | $6.00 | $3,576.00 |
| Replace damaged roof deck (35% of 19,210 sf) | 6,800 | sf | $1.75 | $11,900.00 |
| | | | | |
| Sheet Metal Flashing and Trim | | | | |
| 4" aluminum k-style gutters | 1,120 | lf | $12.00 | $13,440.00 |
| 3"x4" aluminum downspouts | 816 | lf | $15.00 | $12,240.00 |
| Deck Repair | 1 | ls | $20,190.00 | $20,190.00 |
| | | | | |
| N/A | | | | |
| | | | | |
| A3.1-A3.3 - Exterior Elevations | | | | |
| Restore Windows | 6,873 | SF | $79.00 | $542,967.00 |
| | | | | |
| Total | | | | $823.00 |
| | | | | |
| **Finish Carpentry** | | | | |
| 6" wood base | 14,000 | lf | $4.00 | $56,000.00 |
| | | | | |
| Residential Casework | | | | |
| Units 002 & 019 | | | | |
| Wall cabinets | 27 | lf | $100.00 | $2,700.00 |
| Base cabinets | 16 | lf | $125.00 | $2,000.00 |
| Laminate countertops | 105 | sf | $20.00 | $2,100.00 |
| Pantry | 3 | lf | $250.00 | $750.00 |
| Bathroom vanities | 8 | lf | $125.00 | $1,000.00 |
| | | | | |
| Units 003, 004, 017 & 018 | | | | |
| Wall cabinets | 54 | lf | $100.00 | $5,400.00 |
| Base cabinets | 32 | lf | $125.00 | $4,000.00 |
| Laminate countertops | 210 | sf | $20.00 | $4,200.00 |
| Pantry | 6 | lf | $250.00 | $1,500.00 |
| Bathroom vanities | 16 | lf | $125.00 | $2,000.00 |
| | | | | |
| Unit 005 | | | | |
| Wall cabinets | 14 | lf | $100.00 | $1,350.00 |

| | | | | |
|---|---|---|---|---|
| Base cabinets | 8 | lf | $125.00 | $1,000.00 |
| Laminate countertops | 53 | sf | $20.00 | $1,050.00 |
| Pantry | 2 | lf | $250.00 | $375.00 |
| Bathroom vanities | 4 | lf | $125.00 | $500.00 |
| | | | | |
| **Unit 016** | | | | |
| Wall cabinets | 14 | lf | $100.00 | $1,350.00 |
| Base cabinets | 8 | lf | $125.00 | $1,000.00 |
| Laminate countertops | 53 | sf | $20.00 | $1,050.00 |
| Pantry | 2 | lf | $250.00 | $375.00 |
| Bathroom vanities | 5 | lf | $125.00 | $625.00 |
| | | | | |
| **Units 006 & 013** | | | | |
| Wall cabinets | 27 | lf | $100.00 | $2,700.00 |
| Base cabinets | 16 | lf | $125.00 | $2,000.00 |
| Laminate countertops | 105 | sf | $20.00 | $2,100.00 |
| Pantry | 3 | lf | $250.00 | $750.00 |
| Bathroom vanities | 8 | lf | $125.00 | $1,000.00 |
| | | | | |
| **Units 007 & 014** | | | | |
| Wall cabinets | 27 | lf | $100.00 | $2,700.00 |
| Base cabinets | 16 | lf | $125.00 | $2,000.00 |
| Laminate countertops | 105 | sf | $20.00 | $2,100.00 |
| Pantry | 3 | lf | $250.00 | $750.00 |
| Bathroom vanities | 0 | lf | $125.00 | $0.00 |
| | | | | |
| **Units 102, 118, 202, & 219** | | | | |
| Wall cabinets | 47 | lf | $100.00 | $4,700.00 |
| Base cabinets | 29 | lf | $125.00 | $3,625.00 |
| Laminate countertops | 134 | sf | $20.00 | $2,684.00 |
| Pantry | 6 | lf | $250.00 | $1,500.00 |
| Bathroom vanities | 4 | lf | $125.00 | $500.00 |
| | | | | |
| **Units 103, 104, 117, 118, 203, 204, 217, & 218** | | | | |
| Wall cabinets | 112 | lf | $100.00 | $11,200.00 |
| Base cabinets | 68 | lf | $125.00 | $8,500.00 |
| Laminate countertops | 293 | sf | $20.00 | $5,868.00 |
| Pantry | 12 | lf | $250.00 | $3,000.00 |
| Bathroom vanities | 32 | lf | $125.00 | $4,000.00 |
| | | | | |
| **Units 105, 116, 205, & 216** | | | | |
| Wall cabinets | 44 | lf | $100.00 | $4,400.00 |
| Base cabinets | 34 | lf | $125.00 | $4,250.00 |
| Laminate countertops | 148 | sf | $20.00 | $2,966.00 |
| Pantry | 6 | lf | $250.00 | $1,500.00 |
| Bathroom vanities | 16 | lf | $125.00 | $2,000.00 |
| | | | | |
| **Units 107, 108, 113, 114, 207, 208, 213, & 214** | | | | |
| Wall cabinets | 162 | lf | $100.00 | $16,200.00 |
| Base cabinets | 77 | lf | $125.00 | $9,580.00 |
| Laminate countertops | 56 | sf | $20.00 | $1,116.60 |
| Pantry | 12 | lf | $250.00 | $3,000.00 |
| Bathroom vanities | 32 | sf | $125.00 | $4,000.00 |
| | | | | |
| **Units 109 & 112** | | | | |
| Wall cabinets | 25 | lf | $100.00 | $2,450.00 |
| Base cabinets | 16 | lf | $125.00 | $1,937.50 |

| | | | |
|---|---|---|---|
| Laminate countertops | 38 | sf | $20.00 | $756.80 |
| Pantry | 3 | lf | $250.00 | $750.00 |
| Bathroom vanities | 8 | lf | $125.00 | $1,000.00 |
| | | | |
| **Units 110, 111, 210, & 211** | | | |
| Wall cabinets | 53 | lf | $100.00 | $5,300.00 |
| Base cabinets | 39 | lf | $125.00 | $4,875.00 |
| Laminate countertops | 158 | sf | $20.00 | $3,150.00 |
| Pantry | 6 | lf | $250.00 | $1,500.00 |
| Bathroom vanities | 16 | lf | $125.00 | $2,000.00 |
| | | | |
| **Unit 201** | | | |
| Wall cabinets | 17 | lf | $100.00 | $1,700.00 |
| Base cabinets | 9 | lf | $125.00 | $1,062.50 |
| Laminate countertops | 53 | sf | $20.00 | $1,060.00 |
| Pantry | 2 | lf | $250.00 | $375.00 |
| Bathroom vanities | 4 | lf | $125.00 | $500.00 |
| | | | |
| **Unit 220** | | | |
| Wall cabinets | 17 | lf | $100.00 | $1,700.00 |
| Base cabinets | 9 | lf | $125.00 | $1,062.50 |
| Laminate countertops | 53 | sf | $20.00 | $1,060.00 |
| Pantry | 2 | lf | $250.00 | $375.00 |
| Bathroom vanities | 4 | lf | $125.00 | $500.00 |
| | | | |
| **Units 206 & 215** | | | $0.00 |
| Wall cabinets | 32 | lf | $100.00 | $3,150.00 |
| Base cabinets | 20 | lf | $125.00 | $2,500.00 |
| Laminate countertops | 114 | sf | $20.00 | $2,270.00 |
| Pantry | 3 | lf | $250.00 | $750.00 |
| Bathroom vanities | 8 | lf | $125.00 | $1,000.00 |
| | | | |
| **Units 106 & 115** | | | |
| Wall cabinets | 26 | lf | $100.00 | $2,600.00 |
| Base cabinets | 21 | lf | $125.00 | $2,562.50 |
| Laminate countertops | 115 | sf | $20.00 | $2,295.00 |
| Pantry | 3 | lf | $250.00 | $750.00 |
| Bathroom vanities | 0 | lf | $125.00 | $0.00 |
| | | | |
| **Units 209 & 212** | | | |
| Wall cabinets | 21 | lf | $100.00 | $2,100.00 |
| Base cabinets | 18 | lf | $125.00 | $2,250.00 |
| Laminate countertops | 88 | sf | $20.00 | $1,750.00 |
| Pantry | 3 | lf | $250.00 | $750.00 |
| Bathroom vanities | 0 | lf | $125.00 | $0.00 |
| | | | |
| **Common Area- Kitchen** | | | |
| Wall cabinets | 10 | lf | $100.00 | $1,000.00 |
| Base cabinets | 6 | lf | $125.00 | $687.50 |
| Laminate countertops | 33 | sf | $20.00 | $650.00 |
| | | | |
| **Common Area- Computer Room** | | | |
| Laminate countertops | 13 | sf | $40.00 | $534.00 |
| | | | |
| Leafs | | | |
| Wood door leafs | 64 | EA | $365.00 | $23,360.00 |

| | | | | |
|---|---|---|---|---|
| Masonite door leafs | 342 | EA | $125.00 | $42,750.00 |
| Metal door leafs | 7 | EA | $1,200.00 | $8,400.00 |
| Install | 413 | EA | $75.00 | $30,975.00 |
| Frames (Wkt) | 413 | EA | $185.00 | $76,405.00 |
| Install | 413 | EA | $75.00 | $30,975.00 |
| Hardware Sets | 413 | EA | $300.00 | $123,900.00 |
| Install | 413 | EA | $111.00 | $45,843.00 |
| AP-1 - 22" X 36" ATTIC ACCESS PANELS | 4 | EA | $450.00 | $1,800.00 |
| AP-2 - 36" X 36" DRAFTSTOPS ACCESS PANELS | 6 | EA | $500.00 | $3,000.00 |
| New interior window type C | 12 | SF | $65.00 | $780.00 |
| Full-length mirrors in Fitness Center | 378 | SF | $15.00 | $5,670.00 |
| Gypsum Board Assemblies | | | | |
| NON-RATED WALL | 35,896 | SF | $6.00 | $215,376.00 |
| 3-5/8" STUD | | | | |
| 1/2" GYPSUM | | | | |
| NON-RATED WALL | 4,051 | SF | $6.75 | $27,344.25 |
| 6" STUD | | | | |
| 1/2" GYPSUM | | | | |
| FIRE RATED WALL WITH INSULATION | 10,157 | SF | $8.00 | $81,256.00 |
| 3-5/8" STUD 25GA | | | | |
| 5/8" GYPSUM | | | | |
| 1/2" RESILIENT CHANNEL | | | | |
| R11 SAB | | | | |
| FIRE RATED WALL WITHOUT INSULATION | 12,311 | SF | $6.75 | $83,099.25 |
| 3-5/8" STUD 25GA | | | | |
| 5/8" GYPSUM | | | | |
| 1/2" RESILIENT CHANNEL | | | | |
| FURR WALL | 3,073 | SF | $5.25 | $16,133.25 |
| GYPSUM CEILING | 7,519 | SF | $5.20 | $39,098.80 |
| EXISTING SHAFTWALL 30% REPAIR | 403 | SF | $6.50 | $2,616.90 |
| DRAFTSTOP | 6,959 | SF | $5.00 | $34,795.00 |
| Acoustical Ceilings (NOT USED) | | | $0.00 | $0.00 |
| EXISTING INTERIOR MASONRY AND PLASTER WA | 1 | ls | $7,500.00 | $7,500.00 |
| Plaster Ceilings | 6,285 | SF | $16.00 | $100,560.00 |
| Skim w/ Durabond | 1 | ls | $208,966.00 | $208,966.00 |
| N/A | | | | |
| Common Work Results for Flooring Preparation | 39,491 | SF | $1.75 | $69,109.25 |
| VCT | 32,192 | SF | $1.75 | $56,336.00 |
| RESILIENT BASE | 2,595 | LF | $1.75 | $4,541.25 |
| RUBBER STAIR TREADS | 177 | EA | $60.00 | $10,620.00 |
| CARPET | 811 | SY | $35.00 | $28,392.70 |

| | | | | |
|---|---|---|---|---|
| RESTORE EXISTING TERRAZZO STAIR TREADS 70% | 67 | EA | $35.00 | $2,352.00 |
| RESTORE EXISTING TERRAZZO 70% REPAIR | 710 | SF | $10.00 | $7,098.00 |
| NOTE A12 RETAIN AND RESTORE EXISTING STAIRS, ORGINAL TERRAZZO FLOORING | | | | |
| | | | | |
| FINISH AND PAINT GYPSUM WALL | 127,117 | SF | $1.25 | $158,896.25 |
| SEALED CONCRETE | 2,012 | SF | $1.00 | $2,012.00 |
| INTERIOR WOOD DOORS & FRAMES | 432 | EA | $35.00 | $15,120.00 |
| HOLLOW METAL DOOR | 7 | EA | $35.00 | $245.00 |
| 6" WOOD BASE | 13,939 | LF | $2.00 | $27,878.00 |
| METAL ACCESS PANEL | 10 | EA | $25.00 | $250.00 |
| FINISH AND PAINT GYPSUM BOARD CEILING | 7,519 | SF | $1.25 | $9,398.75 |
| Elastomeric Coating on Exterior | 1 | LS | $97,196.00 | $97,196.00 |
| PAINT EXISTING INTERIOR PLASTER WALL AS NEC | 11,098 | SF | $1.75 | $19,421.50 |
| | | | | |
| A11-A13 - Floor Plans | | | | |
| A14 - Refurbish Stair Plans | 628 | SF | $35.00 | $21,980.00 |
| | | | | |
| A5.1 - Refurb. Existing Doors | | | | |
| Leafs | | | | |
| Refurb Wood door leafs | 26 | EA | $175.00 | $4,550.00 |
| | | | | |
| Refurb Frames | 26 | EA | $125.00 | $3,250.00 |
| | | | | |
| Replace Hardware Sets | 26 | EA | $450.00 | $11,700.00 |
| Install | 26 | EA | $150.00 | $3,900.00 |
| | | | | |
| Removed from Project | | | | $0.00 |
| | | | | |
| Total | | | | |
| | | | | |
| Inside Signage | 205 | EA | $35.00 | $7,175.00 |
| Outside Signage | 1 | lsum | $650.00 | $650.00 |
| Tax(0%) | 1 | lsum | $1,528.00 | $1,528.00 |
| Frieght | 205 | EA | $3.00 | $615.00 |
| Install | 205 | EA | $40.00 | $8,200.00 |
| | | | | |
| Building 7 | | | | |
| Shower Rod | 31 | EA | $0.00 | |
| 24" Tower Bar | 18 | EA | $0.00 | |
| One Piece Shower Surround | 28 | EA | $0.00 | |
| Toilet Paper Holder | 24 | EA | $0.00 | |
| (U9) Towel Ring | 28 | EA | $0.00 | |
| Recessed Medicine Cabinet | 25 | EA | $0.00 | |
| Grab Bars (2) | 52 | EA | $0.00 | |
| Fold Down Seat | 3 | EA | $0.00 | |
| Hand Held Shower | 4 | EA | $0.00 | |
| All Accessories | 213 | EA | $70.00 | $14,910.00 |

Complaint, Exh. B

| | | | | |
|---|---|---|---|---|
| Tax(8%) | 1 | lsum | $1,193.00 | $1,193.00 |
| Frieght | 213 | EA | $3.00 | $639.00 |
| Install | 213 | EA | $32.00 | $6,816.00 |

| | | | | |
|---|---|---|---|---|
| FE for Common Areas | 3 | EA | $33.00 | $99.00 |
| FE for Units | 50 | EA | $25.00 | $1,250.00 |
| Tax(8%) | 8 | % | $0.00 | $108.00 |
| Frieght | 1 | EA | $40.00 | $40.00 |
| Install | 53 | EA | $100.00 | $5,300.00 |

| | | | | |
|---|---|---|---|---|
| 2/A6.1 | | | | |
| Canvas awning with SS frame | 32 | SF | $70.00 | $2,240.00 |

| | | | | |
|---|---|---|---|---|
| Mailbox | 1 | LS | $4,850.00 | $4,850.00 |
| Tax(8%) | 1 | lsum | $388.00 | $388.00 |
| Frieght | 6 | EA | $0.00 | $0.00 |
| Install | 6 | EA | $250.00 | $1,500.00 |

| | | | | |
|---|---|---|---|---|
| 2'-0" Deep Min & Contain One Rod and One Shelf | 24 | EA | $150.00 | $3,600.00 |
| New Lined Closet To Contain 5 Shelves (AOS) | 24 | EA | $150.00 | $3,600.00 |
| Tax(8%) | 1 | lsum | $84.00 | $84.00 |
| Frieght | 24 | EA | $10.00 | $240.00 |
| Install | 24 | EA | $150.00 | $3,600.00 |

| | | | | |
|---|---|---|---|---|
| | Total | | | 108,029 |

| | | | | |
|---|---|---|---|---|
| KITCHEN APPLIANCES | | | | |
| Diswasher (To Fit Under 36" (H) Counter) | 46 | EA | $450.00 | $20,700.00 |
| Diswasher (To Fit Under 34" (H) Counter) | 6 | EA | $450.00 | $2,700.00 |
| Stove | 51 | EA | $650.00 | $33,150.00 |
| Exhaust Hood | 6 | EA | $350.00 | $2,100.00 |
| Microwave and Hood Combo | 45 | EA | $450.00 | $20,250.00 |
| Counter- Top Mount Refrigerator | 44 | EA | $275.00 | $12,100.00 |
| Accessible Side By Side Refrigerator | 8 | EA | $1,300.00 | $10,400.00 |
| Disposal | 52 | EA | $75.00 | $3,900.00 |
| LAUNDRY APPLIANCES | | | | |
| Washer | 6 | EA | $850.00 | $5,100.00 |
| Dryer | 6 | EA | $850.00 | $5,100.00 |
| | | | | |
| Tax(8%) | 8 | % | | $10,000.00 |
| Freight | 270 | EA | $15.00 | $4,050.00 |
| Install | 270 | EA | $75.00 | $20,250.00 |

| | | | | |
|---|---|---|---|---|
| N/A | | | | |

| N/A | | | | |
|---|---|---|---|---|
| Lifts, Scaffolding | 1 | ls | $92,200.00 | $92,200.00 |
| New Elevator Verify Condition of Surrounding Wall | 1 | EA | $115,580.00 | $115,580.00 |
| Total | | | | $277,790 |
| Automatic Sprinkler System | 53,306 | sf | $1.19 | $63,434.14 |
| Plumbing General | 53,306 | sf | $8.56 | $456,299.36 |
| Mechanical General | 53,306 | sf | $16.35 | $871,553.10 |
| Electrical General | 53,306 | SF | $12.14 | $647,134.84 |
| Data / Comm @ Building 76 | 53,306 | SF | $1.50 | $79,959.00 |
| Fire Alarm | 53,306 | SF | $1.00 | $53,306.00 |
| Total | | | | $2,171,686 |
| Testing Allowance | 1 | lsum | $20,000.00 | $20,000.00 |
| BIM Allowance | 1 | lsum | $16,666.67 | $16,666.67 |
| Commissioning/Leed Documentation | 1 | lsum | $294,623.00 | $294,623.00 |
| Bluebeam/Submittal Exchange | 1 | lsum | $6,666.67 | $6,666.67 |
| Photo Documentation | 53,306 | SF | $0.35 | $18,657.10 |
| Total | | | | $356,613 |

**COMPOSITE EXHIBIT K**

**CONTRACTOR'S INTERIM LIEN WAIVER AND**
**RELEASE UPON PROGRESS PAYMENT**
(To be provided by Contractor with each Application for Payment)

STATE OF _____
COUNTY OF _____

The undersigned, _____ ("Contractor"), has been engaged under contract with _____ ("Owner") to furnish certain materials, equipment, services, and/or labor for the construction of improvements known as _____, together with all improvements and appurtenances attendant thereto ("Project"), which is located in the City of _____, County of _____, State of _____, and is owned by _____ ("Property Owner") and more particularly described as follows:

_____

_____

_____

(DESCRIBE THE PROPERTY UPON WHICH THE IMPROVEMENTS WERE MADE BY USING EITHER A METES AND BOUNDS DESCRIPTION, THE LAND LOT DISTRICT, BLOCK AND LOT NUMBER, OR STREET ADDRESS OF THE PROJECT.)

Upon receipt of the sum of $_____, Contractor waives and releases any and all liens or claims of liens it has upon the foregoing described property through the date of _____, 20__ ("Current Date") and excepting those rights and liens that Contractor might have in any retained amounts, on account of materials, equipment, services and labor furnished by the undersigned to or on account of said Contractor for said building or premises. Exceptions as follows.

(if no exception or "none" is entered above, undersigned shall be deemed not to have reserved any rights or liens.)

**FOR CONTRACTOR**

Applicable to Application for Payment No(s). _____
Signed: _____
By: _____
Title: _____
Dated: _____

**AFFIDAVIT**

On this _____ day of _____, 20___, before me appeared the above-signed, known or identified to me personally, who, being first duly sworn, did say that s/he is the authorized representative of Contractor and that this document was signed under oath personally on behalf of Contractor.

_____
Notary Public
My Commission Expires: _____

Complaint, Exh. B

## CONTRACTOR'S FINAL UNCONDITIONAL LIEN WAIVER
## AND RELEASE UPON FINAL PAYMENT

STATE OF _____
COUNTY OF_____

The undersigned, _____ ("Contractor"), has been engaged under contract with _____ ("Owner") to furnish certain materials, equipment, services, and/or labor for the construction of improvements known as _____, together with all improvements and appurtenances attendant thereto ("Project"), which is located in the City of _____, County of _____, State of _____, and is owned by _____ ("Property Owner") and more particularly described as follows:

    (LEGAL)

Upon receipt of the sum of $_____, Contractor waives and releases any and all liens or claims of liens or any right against any labor and/or material bond it has upon the foregoing described property:

    (LEGAL)

Contractor agrees this waiver and release form is in compliance with Stat. §_____

NOTICE:  THIS DOCUMENT WAIVES RIGHTS UNCONDITIONALLY AND STATES THAT YOU HAVE BEEN PAID FOR GIVING UP THOSE RIGHTS.  THIS DOCUMENT IS ENFORCEABLE AGAINST YOU IF YOU SIGN IT, EVEN IF YOU HAVE NOT BEEN PAID.  IF YOU HAVE NOT YET BEEN PAID, USE A CONDITIONAL RELEASE FORM.
### FOR CONTRACTOR

Applicable to Application for Payment(s) ____*all_____
*If all, print "all"
Signed:    _____

By:    _____

Title:    _____
Date:    _____

### AFFIDAVIT

On this _____ day of _____, 2016, before me appeared the above-signed, known or identified to me personally, who, being first duly sworn, did say that she/he is the authorized representative of _____ and that this document was signed under oath personally and on behalf of Contractor.

_____
NOTARY PUBLIC
My commission expires:

Complaint, Exh. B

**SUBCONTRACTOR'S INTERIM LIEN WAIVER AND RELEASE**
**UPON PROGRESS PAYMENT**
**(To be provided by Subcontractor with each Application for Payment)**

STATE OF _____
COUNTY OF _____

The undersigned, _____ ("Subcontractor"), has been engaged under contract with _____ ("Contractor") to furnish certain materials, equipment, services, and/or labor for the construction of improvements known as _____, together with all improvements and appurtenances attendant thereto ("Project"), which is located in the City of _____, County of _____, State of _____, and is owned by _____ ("Property Owner") and more particularly described as follows:

(Legal Description)

Upon receipt of the sum of $_____, the Subcontractor waives and releases any and all liens or claims of liens it has upon the foregoing described property through the date of _____, 2016 ("Current Date") and excepting those rights and liens that subcontractor might have in any retained amounts, on account of materials, equipment, services and labor furnished by the undersigned to or on account of said Subcontractor for said building or premises. Exceptions as follows:
(If no exception or none is entered above, undersigned shall be deemed not to have reserved any rights or liens.)

**FOR SUBCONTRACTOR.**

Applicable to Application for Payment(s) _____

Signed: _____

By: _____

Title: _____

Date: _____

**AFFIDAVIT**

On this _____ day of _____, 2016, before me appeared the above-signed, known or identified to me personally, who, being first duly sworn, did say that she/he is the authorized representative of _____ and that this document was signed under oath personally and on behalf of Subcontractor.

_____
NOTARY PUBLIC
My commission expires:

## SUBCONTRACTOR'S FINAL UNCONDITIONAL LIEN WAIVER
## AND RELEASE UPON FINAL PAYMENT

STATE OF _____
COUNTY OF _____

    The undersigned, _____ ("Subcontractor"), has been engaged under contract with _____ ("Contractor") to furnish certain materials, equipment, services, and/or labor for the construction of improvements at _____, together with all improvements and appurtenances attendant thereto ("Project"), which is located in the City of _____, County of _____, State of _____, and is owned by _____ ("Owner") and more particularly described as follows:

    (LEGAL)

    Acknowledging receipt of the sum of $_____, Subcontractor hereby waives and releases any and all liens or claims of liens or any right against any labor and/or material bond it has upon the foregoing described property:

    (LEGAL)

    Subcontractor agrees that this waiver and release form is in compliance with Stat. §_____.

NOTICE: THIS DOCUMENT WAIVES RIGHTS UNCONDITIONALLY AND STATES THAT YOU HAVE BEEN PAID FOR GIVING UP THOSE RIGHTS. THIS DOCUMENT IS ENFORCEABLE AGAINST YOU IF YOU SIGN IT, EVEN IF YOU HAVE NOT BEEN PAID. IF YOU HAVE NOT YET BEEN PAID, USE A CONDITIONAL RELEASE FORM.

**FOR SUBCONTRACTOR:**
Applicable to Application for Payment No. _all_ *
*If all, print "all."
Signed: _____

By:      _____

Title:     _____
Date:     _____

### AFFIDAVIT

    On this _____ day of _____, 2016, before me appeared the above-signed, known or identified to me personally, who, being first duly sworn, did say that she/he is the authorized representative of _____ and that this document was signed under oath personally and on behalf of Contractor.


_____
NOTARY PUBLIC
My commission expires:

Complaint, Exh. B

Composite Exhibit C

**OLYMPIA STRUCTURES**
**Development & Construction Consulting, Management, Construction Claims Forensics**
**ORLANDO – CHAPEL HILL**
**765 Longwood Markham Road**
**Sanford, FL 32771**
**(407) 900-4526**
**www.OlympiaStructures.com**



May 15, 2018

Dennis Hoffman
CORE Construction
3131 N. 1-10 Service Road East, Suite 401
Metairie, LA 70002-6054

**Reference:**     **Notice of Liquated Damages Claim**
                 **FP Augusta II – Building #7**

Mr. Hoffman:

Pursuant to the Notice of Delay letter submitted on December 8, 2017 and the Substantial Completion date of February 12, 2018, it is determined that the project was delivered a total of sixty-seven (67) days after the contractual completion date of December 8, 2017.  The Liquidated Damages as defined by the AIA A101 Agreement, Article 8.7 is defined to be a total of $45 per day per unit.  Given that Building 7 includes a total of 20 apartment units, the total amount of Liquidated Damages calculates to be $60,300.

Please be advised that a Liquidated Damages claim in the amount of $60,300 will be pursued as per the terms of the Agreement.  We reserve all rights and defenses regarding this matter.

Should you have any questions, feel free to contact me.

Thank you,

**OLYMPIA STRUCTURES**

**Farshad Charmforoosh**
**President**

Attachment:     2017-12-08-Letter-Notice of Delay
                2018-05-07-Substantial Completion

**C:**     Don Paxton
         Mike Wilson

Complaint, Ex. C



**OLYMPIA STRUCTURES**
Development & Construction Consulting, Management, Construction Claims Forensics
**ORLANDO – CHAPEL HILL**
765 Longwood Markham Road
Sanford, FL 32771
(407) 900-4526
www.OlympiaStructures.com

May 15, 2018

Dennis Hoffman
CORE Construction
3131 N. 1-10 Service Road East, Suite 401
Metairie, LA 70002-6054

**Reference:**     **Notice of Liquated Damages Claim**
                   **Freedom's Path LP – Building #18**

Mr. Hoffman:

Pursuant to the Notice of Delay letter submitted on January 8, 2018 and the Substantial Completion date of April 24, 2018, it is determined that the project was delivered a total of one hundred and twelve (112) days after the contractual completion date of January 3, 2018. The Liquidated Damages as defined by the AIA A101 Agreement, Article 8.7 is defined to be a total of $45 per day per unit. Given that Building 18 includes a total of 28 apartment units, the total amount of Liquidated Damages calculates to be $141,120.

Please be advised that a Liquidated Damages claim in the amount of $141,120 will be pursued as per the terms of the Agreement. We reserve all rights and defenses regarding this matter.

Should you have any questions, feel free to contact me.

Thank you,

**OLYMPIA STRUCTURES**

**Farshad Charmforoosh**
**President**

Attachment:     2018-01-08-Letter-Notice of Delay
                2018-05-07-Substantial Completion

C:     Don Paxton
       Mike Wilson

**OLYMPIA STRUCTURES**
Development & Construction Consulting, Management, Construction Claims Forensics
ORLANDO – CHAPEL HILL
765 Longwood Markham Road
Sanford, FL 32771
(407) 900-4526
www.OlympiaStructures.com



June 14, 2018

Jason Bruzik
CORE Construction
3131 N. 1-10 Service Road East, Suite 401
Metairie, LA 70002-6054

Reference:     **Notice of Liquated Damages Claim**
               **Freedom's Path LP – Building #76**

Mr. Bruzik:

Pursuant to the Notice of Delay letter submitted on February 16, 2018 and the Substantial Completion date of June 8, 2018, it is determined that the project was delivered a total of one hundred and twelve (112) days after the contractual completion date of February 16, 2018.  The Liquidated Damages as defined by the AIA A101 Agreement, Article 8.7 is defined to be a total of $45 per day per unit.  Given that Building 76 includes a total of 50 apartment units, the total amount of Liquidated Damages calculates to be $252,000.

Please be advised that a Liquidated Damages claim in the amount of $252,000 will be pursued as per the terms of the Agreement.  We reserve all rights and defenses regarding this matter.

Should you have any questions, feel free to contact me.

Thank you,

**OLYMPIA STRUCTURES**

**Farshad Charmforoosh**
**President**

Attachment:   2018-02-16-Letter-Notice of Delay
              2018-06-08-Substantial Completion

C:      Don Paxton
        Mike Wilson

Complaint, Ex. C

EFILED IN OFFICE
CLERK OF SUPERIOR COURT
RICHMOND COUNTY, GEORGIA

**2019RCCV00055**

CARL C. BROWN JR.
JAN 29, 2019 04:42 PM

Hattie Holmes Sullivan, Clerk
Richmond County, Georgia

**IN THE SUPERIOR COURT OF RICHMOND COUNTY, GEORGIA**

**Civil Action File No. 2019RCCV00055**

|  |  |  |
|---|---|---|
| **FP Augusta II, LLC** | ) | |
| **Freedom's Path Limited Partnership** | ) | |
| **Plaintiffs** | ) | |
| | ) | |
| **v.** | ) | **Judge: CARL C. BROWN JR.** |
| | ) | |
| **CORE Construction Services, LLC, DBA COR...** | ) | |
| **Defendant** | ) | |

## STANDING ORDER FOR MEDIATION IN CIVIL CASES

In accordance with the mandate of the Georgia Constitution of 1983 that the judicial branch of government provide "speedy, efficient and inexpensive resolution of disputes and prosecutions," and pursuant to Uniform Superior Court Rule 1.2 as well as the Georgia Supreme Court's Alternative Dispute Resolution Rules encouraging the use of alternative dispute resolution by the courts of this state, the following **Standing Order for Mediation in Civil Cases** is hereby entered.  As set forth herein, all contested civil matters filed in the Superior Courts of the Augusta Judicial Circuit, **unless exempted**, as set forth below, must be mediated in accordance with this Order.

**MEDIATION REQUIRED.**

Mediation is a prerequisite to a case's placement on the trial calendar, and **must be conducted in compliance with this Order**. All such mediations shall be conducted in accordance with the rules of the Augusta Judicial Circuit ADR Program (hereinafter "AJC ADR Program".)

The parties shall agree upon a mediator from the roster of mediators registered by the Georgia Office of Dispute Resolution (http://godr.org/) who have been chosen for service in the AJC ADR Program. A copy of the roster may be obtained by contacting the AJC ADR Program Director, Debbie Goode (hereafter "ADR Director"), at 706-821-2357 or dgoode@augustaga.gov.

Parties shall contact the mediator directly and schedule the mediation. The plaintiff's counsel shall provide the date of the mediation and the name of the mediator selected and agreed to by all parties, by completing the attached Notice of Mediation Status form (Attachment A hereto) which must be provided by email or U.S. mail to the ADR Director, **prior to the scheduled session.** Unless otherwise agreed, the parties shall share the cost of the mediator equally, and should be prepared to pay the mediator at the conclusion of the session. Should the parties fail to agree upon a mediator, the court or the ADR Director will appoint one for them and may set the fee. If any party is unable to afford the cost of mediation, they may contact the ADR Office to request an Application for Fee Waiver/Fee Reduction.

Should the parties desire to use a mediator not on the AJC ADR Program roster, they are permitted **to petition the court** to utilize any mediator **provided he/she is registered with the Georgia Office of Dispute Resolution in the appropriate category.** If approved, **prior to mediation,** Plaintiff shall notify the ADR Director in writing of the name of the mediator, and the time and location of mediation. He/she shall be paid in accordance with the agreement of the parties and said mediator.

2

The parties and their counsel shall negotiate in ***good faith*** to resolve all issues in this case with the mediator. Within ***seven*** calendar days after mediation the parties shall notify the ADR Director whether mediation was successful by completing and submitting to the ADR Director a copy of the attached Attestation Form (Attachment B hereto,) as set forth below in the provision of this order entitled Attestation of Mediation Participation or Exemption. In the absence of settlement, the parties lose none of their rights to a final hearing or trial.

Compliance with this Order does not require the parties to reach a settlement. The mediator has no authority to compel settlement. Any settlement is entirely voluntary.

**APPEARANCE.**

The presence of parties at all mediation conferences is required unless the court excuses attendance for good cause shown. The requirement that a party appear at a mediation conference is satisfied if the following persons are physically present:

    (a)    The party and/or:

        (1)    The party's representative who has:

            (i)    Full authority to settle without further consultation; and

            (ii)    A full understanding of the dispute and full knowledge of the facts;

        (2)    A representative of an insurance carrier for any insured party if that representative has full authority to settle without further consultation, except that telephone consultations with persons immediately available are permitted. Appearance of an insurance carrier's representative by telephone is only permitted if all parties agree to such telephonic appearance.

**DISCRETIONARY EXEMPTIONS.**

Any party may petition the court to exempt the case from mediation by filing a Mediation Exemption Petition, a copy of which shall also be provided to the ADR Director.  An exemption from mediation may be requested for the following reasons:

(a)     The issue(s) to be considered has been previously mediated by a mediator registered with the Georgia Office of Dispute Resolution;

(b)     The issue(s) presents a question of law only;

(c)     Good cause shown before the judge to whom the case is assigned.

Any exemption shall be within the discretion of the court.


**MANDATORY EXEMPTIONS.**

The following shall be exempt from mediation except upon petition of all parties or upon *sua sponte* motion of the court:

(a)     Appeals from rulings of administrative agencies;

(b)     Forfeitures of seized properties;

(c)     Bond validations; and

(d)     Declaratory relief.


**CONFIDENTIALITY AND PRIVILEGE.**

The Georgia Supreme Court Alternative Dispute Resolution Rules and the Augusta Judicial Circuit Alternative Dispute Resolution Rules provide protections, immunities, and benefits to parties, counsel, and registered neutrals in properly conducted court-connected mediations.  All submissions provided to a registered mediator, discussions, representations, and statements made

4

in connection with a court-connected mediation proceeding shall remain confidential and privileged consistent with Georgia law. Parties and neutrals acting in a court-annexed or court-referred ADR process are entitled to these confidentiality and immunity protections. (Supreme Court ADR Rule 6.1 and 6.2.) Non-registered mediators do not have the confidentiality or immunity protections provided by the Supreme Court of Georgia.

## ATTESTATION OF MEDIATION PARTICIPATION OR EXEMPTION.

Prior to requesting a pretrial conference or trial date, the requesting party is directed to complete and submit a filed copy of the attached Attestation Form to the ADR Director. The original attestation shall be filed with the Clerk of Court. Failure to attest will result in continuance of the matter until compliance is demonstrated.

## EFFECTIVE DATE OF ORDER

This Order shall become effective the date it is filed and shall apply to all civil cases except those exempted as described above.

**SO ORDERED** this _____ day of _____, 20___.


_____
Judge, Superior Court
Augusta Judicial Circuit

5

**IN THE SUPERIOR COURT OF _____ COUNTY, GEORGIA**

**CIVIL ACTION FILE NO. _____**

|  |  |
|---|---|
| _____, | ) |
| **PLAINTIFF,** | ) |
|  | ) |
| **VS.** | ) |
|  | ) |
| _____, | ) |
| **DEFENDANT.** | ) |

**NOTICE OF MEDIATION STATUS**
**(Attachment A)**

☐ I do hereby confirm that the parties in the above styled action have selected and agreed

to the following registered mediator:

        Mediator's Name: _____

        Date of Mediation: _____

☐ Parties request a mediator be assigned by the AJC ADR Program.

☐ Granted an Exemption (See copy attached.)

This _____ day of _____, 20\_\_\_.

        _____

        Plaintiff's Counsel

        Printed Name: _____

**IN THE SUPERIOR COURT OF _____ COUNTY, GEORGIA**

**CIVIL ACTION FILE NO. _____**

| | |
|---|---|
| _____, **PLAINTIFF,** | ) ) ) |
| **VS.** | ) ) |
| _____, **DEFENDANT.** | ) ) ) |

**ATTESTATION FORM**
**(Attachment B)**

I do hereby attest that the parties in the above styled action have;

    ☐  **Attended Mediation:**

        Date: _____

        Mediator's Name: _____

        Outcome: _____

    ☐  **Granted an Exemption** (See copy attached.)

This _____ day of _____, 20\_\_\_.

_____
Requesting Party's Signature

Printed Name: _____

**Sworn to and subscribed before me,**
**This \_\_\_\_\_ day of _____, _____.**

_____
Notary Public
My Commission expires: _____